# EXHIBIT 1

*Confidential Treatment Requested*

<u>EXHIBIT A</u>

| Name | Title | Employer | Business Address | Home Address | Earliest Date on Which Person Become Privy to Information About Transaction |
|------|-------|----------|------------------|--------------|------------------------------------------------------------------------------|
| Candace Adargo | Support Staff | Windes & McClaughry Accountancy Corporation | 111 W. Ocean Blvd 22nd Floor Long Beach, CA 90802 | | July 31, 2013 |
| Dave Anderson | President & CEO | Celestron | 2835 Columbia Street, Torrance, CA 90503 USA | | May 23, 2013 |
| Victor Aniceto | V.P. International Sales | Celestron | 2835 Columbia Street, Torrance, CA 90503 USA | | July 15, 2013 |
| Richard Arthur | Senior Corporate Specialist | National Corporate Research, Ltd. | 523 W. 6th Street, Suite 544, Los Angeles, CA 90014 | | July 12, 2013 |
| David Bobby | Vice President | Rosenthal & Rosenthal | 1370 Broadway NY, NY 10018 | | April 17, 2013 |
| Cheryl Cabieles | Support Services | Windes & McClaughry Accountancy Corporation | 111 W. Ocean Blvd 22nd Floor Long Beach, CA 90802 | | July 31, 2013 |
| Amir Cannon | Director of Operations | Celestron | 2835 Columbia Street, Torrance, CA 90503 USA | | July 15, 2013 |
| Jeffrey Carrick | Audit Manager | Windes & McClaughry Accountancy Corporation | 111 W. Ocean Blvd 22nd Floor Long Beach, CA 90802 | | July 31, 2013 |
| Alba Chavez | Associate | Baker Tilly Mexico | Blvd. Agua Caliente 4558 Piso 11 Ofic. Torres de Agua Caliente  1105 | | August 5, 2013 |
| Jack Chen | Director | Pacific Telescope Corp. | Unit160, 11880 Hammersmith Way, Richmond, BC, Canada | | May 23, 2013 |

HIGHLY CONFIDENTIAL                                                      NSE00001252

*Confidential Treatment Requested*

| Name | Title | Employer | Business Address | Home Address | Earliest Date on Which Person Become Privy to Information About Transaction |
|---|---|---|---|---|---|
| James Chiu | V.P. Sales | Ningbo Sunny Electronic Co., Ltd. | No. 199 Anshan Road, Chengong New Area, Yu Yao, Jiangsu, China | | May 23, 2013 |
| Ryan Choate | Audit Senior Manager | Windes & McClaughry Accountancy Corporation | 111 W. Ocean Blvd 22nd Floor Long Beach, CA 90802 | | July 31, 2013 |
| Shen Chong | President | Abacus Translation Services | 401 N. Garfield Ave #1 Alhambra, CA 91801 | | August 5, 2013 |
| Farha Chowdry | Associate | Sheppard Mullin Richter & Hampton LLP | 379 Lytton Ave Palo Alto, CA 94301 | | June 4, 2013 |
| Carrie Chung | Audit Manager | Windes & McClaughry Accountancy Corporation | 111 W. Ocean Blvd 22nd Floor Long Beach, CA 90802 | | July 31, 2013 |
| Will Chuchawat | Partner | Sheppard Mullin Richter & Hampton LLP | 333 South Hope Street, 43rd Floor Los Angeles, CA 90071 | | May 24, 2013 |
| Paul Cowie | Partner | Sheppard Mullin Richter & Hampton LLP | 379 Lytton Ave Palo Alto, CA 94301 | | June 14, 2013 |
| Christopher G. Dorman | Attorney | Phillips Lytle LLP | 620 Eighth Avenue New York, NY 10018 | | July 1, 2013 |
| Rachael Franklin | Executive Assistant | Windes & McClaughry Accountancy Corporation | 18201 Von Karman Ave. Suite 1060 Irvine, CA 92612 | | July 31, 2013 |
| Keith Gercken | Partner | Sheppard Mullin Richter & | 17th Floor Four Embarcadero | | June 5, 2013 |

HIGHLY CONFIDENTIAL                    NSE00001253

*Confidential Treatment Requested*

| Name | Title | Employer | Business Address | Home Address | Earliest Date on Which Person Become Privy to Information About Transaction |
|---|---|---|---|---|---|
| | | Hampton LLP | Center San Francisco, CA 94111 | | |
| Ben Hauck | V.P. Domestic Sales | Celestron | 2835 Columbia Street, Torrance, CA 90503 USA | | July 16, 2013 |
| Salvador Hernandez | Partner | Baker Tilly Mexico | Ejército Nacional 7695 E 7 Ciudad Juarez, Chih. | | August 2, 2013 |
| Keith Higgins | Support Staff | Windes & McClaughry Accountancy Corporation | 111 W. Ocean Blvd 22nd Floor Long Beach, CA 90802 | | July 31, 2013 |
| Brent Horstman | Partner | Sheppard Mullin Richter & Hampton LLP | 333 South Hope Street, 43rd Floor Los Angeles, CA 90071 | | June 30, 2013 |
| Laurence Huen | Consultant | Laurence Huen | Unit115, 11960 Hammersmith Way, Richmond, BC, Canada | | May 23, 2013 |
| Susan Hwang | Special Counsel | Sheppard Mullin Richter & Hampton LLP | 333 South Hope Street, 43rd Floor Los Angeles, CA 90071 | | June 16, 2013 |
| Eric Kopit | Director of Product Development | Celestron | 2835 Columbia Street, Torrance, CA 90503 USA | | July 15, 2013 |
| Thomas Lauria | Sr. Vice President | Rosenthal & Rosenthal | 1370 Broadway NY, NY 10018 | | April 18, 2013 |
| Corey Lee | SVP Product Development | Celestron | 2835 Columbia Street, Torrance, CA 90503 USA | | June 6, 2013 |

HIGHLY CONFIDENTIAL                                                                     NSE00001254

*Confidential Treatment Requested*

| Name | Title | Employer | Business Address | Home Address | Earliest Date on Which Person Become Privy to Information About Transaction |
|---|---|---|---|---|---|
| Samuel Leung | First Vice President | East West Bank | 135 N. Los Robles Ave, Pasadena, CA 91101 | | June 17, 2013 |
| Malika Levarlet | Associate | Sheppard Mullin Richter & Hampton LLP | 1300 I Street, N.W. 11th Floor East Washington, D.C. 20005 | | June 4, 2013 |
| Lauren Lewis | Associate | Sheppard Mullin Richter & Hampton LLP | 379 Lytton Ave. Palo Alto, CA 94301 | | July 5, 2013 |
| Amy Lo | Vice President | East West Bank | 135 N. Los Robles Ave, Pasadena, CA 91101 | | June 28, 2013 |
| Joseph Lupica | Consultant | Lupica Consulting Services | 16461 Ladona Circle Huntington Beach, CA, 92649 USA | | May 23, 2013 |
| Robert L. Magielnicki | Partner | Sheppard Mullin Richter & Hampton LLP | 1300 I Street, N.W. 11th Floor East Washington, D.C. 20005 | | June 4, 2013 |
| Thad McBride | Partner | Sheppard Mullin Richter & Hampton LLP | 1300 I Street NW Washington, DC 20005 | | June 6, 2013 |
| Sean McFerson | Tax Partner | Windes & McClaughry Accountancy Corporation | 111 W. Ocean Blvd 22nd Floor | | August 8, 2013 |
| Edgar Mercado | Audit Senior Accountant | Windes & McClaughry Accountancy Corporation | 111 W. Ocean Blvd 22nd Floor Long Beach, CA 90802 | | July 31, 2013 |
| Michelle Meskill | Marketing Manager | Celestron | 2835 Columbia Street, Torrance, | | July 15, 2013 |

HIGHLY CONFIDENTIAL                    NSE00001255

*Confidential Treatment Requested*

| Name | Title | Employer | Business Address | Home Address | Earliest Date on Which Person Become Privy to Information About Transaction |
|------|-------|----------|------------------|--------------|------------------------------------------------------------------------------|
| | | | CA 90503 USA | ███████ | |
| Marilyn T. Newmark | Secretary | Phillips Lytle LLP | 620 Eighth Avenue New York, NY 10018 | ███████ | July 1, 2013 |
| Peter Ni | President | Ningbo Sunny Electronic Co., Ltd. | No. 199 Anshan Road, Chengong New Area, Yu Yao, Jiangsu, China | ███████ | May 23, 2013 |
| James Occhiogrosso | Exec. Vice President | Rosenthal & Rosenthal | 1370 Broadway NY, NY 10018 | ███████ | April 18, 2013 |
| Kerry O'Neill | Associate | Sheppard Mullin Richter & Hampton LLP | 30 Rockefeller Plaza, 39th Floor New York, NY 10112 | ███████ | June 16, 2013 |
| Nika B. Palama | Associate | Sheppard Mullin Richter & Hampton LLP | 70 W. Madison St., Fl. 48, Chicago, IL 60602 | ███████ | June 14, 2013 |
| JeAnne Reyes | Summer Associate | Sheppard Mullin Richter Hampton, LLP until July 26, 2013 | 379 Lytton Ave. Palo Alto, CA 94301 | ███████ | June 21, 2013 |
| Paul Roth | CFO | Celestron | 2835 Columbia Street, Torrance, CA 90503 USA | ███████ | June 6, 2013 |
| Ron Ryland | Partner | Sheppard Mullin Richter & Hampton LLP | 70 W. Madison St., Fl. 48, Chicago, IL 60602 | ███████ | July 15, 2013 |
| Jason Schendel | Partner | Sheppard Mullin Richter & Hampton LLP | 379 Lytton Ave. Palo Alto, CA 94301 | ███████ | June 4, 2013 |
| Lyle | Audit Partner | Windes & | 18201 Von | ███████ | July 31, 2013 |

HIGHLY CONFIDENTIAL

NSE00001256

*Confidential Treatment Requested*

| Name | Title | Employer | Business Address | Home Address | Earliest Date on Which Person Become Privy to Information About Transaction |
|---|---|---|---|---|---|
| Scheppele | | McClaughry Accountancy Corporation | Karman Ave. Suite 1060 Irvine, CA 92612 | | |
| David Shen | President | Suzhou Synta Optical Technology Co., Ltd. | No.65, YushanRoad, New District, Suzhou, Jiangsu, China | | May 23, 2013 |
| Sylvia Shen | Director | Pacific Telescope Corp. | Unit160, 11880 Hammersmith Way, Richmond, BC, Canada | | May 23, 2013 |
| Jung Son | Partner | Sheppard Mullin Richter & Hampton LLP | 379 Lytton Ave. Palo Alto, CA 94301 | | June 5, 2013 |
| Rajesh Sood | Managing Director | FocalPoint Securities, LLC | 11150 Santa Monica Blvd, Suite 1550 Los Angeles, CA 90025 | | May 24, 2013 |
| John Stigi | Partner | Sheppard Mullin Richter & Hampton LLP | 1901 Avenue of the Stars, 16th Fl. Los Angeles, CA 90067 | | June 30, 2013 |
| Duane Stullich | Managing Director | FocalPoint Securities, LLC | 11150 Santa Monica Blvd, Suite 1550 Los Angeles, CA 90025 | | May 24, 2013 |
| Anup Suresh | Attorney | Sheppard Mullin Richter & Hampton LLP | 379 Lytton Ave., Palo Alto, CA 94301 | | August 5, 2013 |
| Cindy Tan | Vice President | East West Bank | 135 N. Los Robles Ave, Pasadena, CA 91101 | | June 28, 2013 |
| John Tishler | Partner | Sheppard Mullin Richter & | 12275 El Camino Real, Suite 200, San | | May 25, 2013 |

HIGHLY CONFIDENTIAL

NSE00001257

| Name | Title | Employer | Business Address | Home Address | Earliest Date on Which Person Become Privy to Information About Transaction |
|---|---|---|---|---|---|
| | | Hampton LLP | Diego, CA 92130 | | |
| Joey Tongson | Legal Assistant | Sheppard Mullin Richter & Hampton LLP | 379 Lytton Ave. Palo Alto, CA 94301 | | June 19, 2013 |
| Cynthia Whitaker | Legal Assistant | Sheppard Mullin Richter & Hampton LLP | 379 Lytton Ave. Palo Alto, CA 94301 | | June 17, 2013 |
| Carol Xu | Intern | Sheppard Mullin Richter & Hampton LLP | 26th Floor, Wheelock Square, 1717 Nanjing Road West, Shanghai, China | | May 24, 2013 |
| Bessie Yin | First Vice President | East West Bank | 135 N. Los Robles Ave, Pasadena, CA 91101 | | June 28, 2013 |
| Joey Zhuang | Paralegal | Sheppard Mullin Richter & Hampton LLP | 15th Floor, China World Tower 1, Beijing, China | | June 24, 2013 |
| James Zimmerman | Partner | Sheppard Mullin Richter & Hampton LLP | 15th Floor, China World Tower 1, Beijing, China | | June 24, 2013 |
| Elizabeth Zukley | Office Administrator | Sheppard Mullin | 70 W. Madison St., Fl. 48, Chicago, IL 60602 | | July 2, 2013 |

HIGHLY CONFIDENTIAL

*Confidential Treatment Requested*

## EXHIBIT B

The following is a detailed chronology setting forth the dates and descriptions of all significant meetings, communications, events, and developments leading up to the corporate disclosure.

On May 17, 2013, MEAD signed an Agreement and Plan of Merger ("JOC Merger Agreement") with a wholly-owned subsidiary of Jinghua Optics and JOC North America LLC ("JOC"). JOC and MEAD issued a press release announcing the execution of the JOC Merger Agreement on the afternoon of May 17, 2013. Following such public announcement of the JOC Merger Agreement, Ningbo Sunny Electronic Co., Ltd. (the "Ningbo") and its affiliates began considering a potential strategic transaction with MEAD.

After a number of discussions with its consultants and advisors, including Ningbo's outside legal counsel, Sheppard Mullin Richter & Hampton, LLP ("SMRH"), Ningbo determined to submit an unsolicited offer to acquire MEAD. On June 11, 2013, SMRH, on behalf of Ningbo, delivered to MEAD a non-binding indication of interest which indicated that Ningbo or its wholly-owned subsidiary would purchase all of the outstanding MEAD common stock for the aggregate purchase price of $5,500,000 (or $4.21 per share) pursuant to a merger agreement on substantially the same terms as the JOC Merger Agreement.

After receipt of Ningbo's unsolicited indication of interest on June 11, 2013, the MEAD Board of Directors (the "MEAD Board") held a special meeting. The MEAD Board determined that the proposal from Ningbo would reasonably be expected to result in or lead to a proposal superior to the JOC Merger Agreement and authorized MEAD's management to engage in negotiations and discussions with Ningbo in compliance with the terms of the JOC Merger Agreement.

On June 12, 2013, as required by the terms of the JOC Merger Agreement, MEAD notified JOC of Ningbo's proposal and provided JOC with a copy of the proposal. On June 13, 2013, Ningbo signed a confidentiality agreement with MEAD, and on June 14, 2013, MEAD first provided Ningbo and SMRH with access to due diligence materials regarding MEAD through a virtual data room.

On June 18, 2013, the MEAD Board held a special meeting and discussed with MEAD's outside legal counsel, O'Neil LLP ("O'Neil"), the preparation of the first draft of the merger agreement with Ningbo. Also on June 18, 2013, Mr. Joseph Lupica resigned as President and CEO of Celestron and, thereafter, began providing consulting services to Ningbo in connection with the transaction.

On June 21, 2013, MIT Capital, Inc. ("MITC") commenced a tender offer ("MITC Tender Offer") to purchase the outstanding shares of MEAD common stock for a purchase price of $3.65 per share. Also on June 21, 2013, the MEAD Board held a special meeting. The MEAD Board first discussed the initial draft of the merger agreement with Ningbo prepared by O'Neil, which had been sent to the MEAD Board prior to the meeting. Next, the MEAD Board discussed the MITC Tender Offer. The MEAD Board concluded that, although the price in the MITC Tender Offer was $0.20 higher than the price in the JOC Merger Agreement, the MITC

HIGHLY CONFIDENTIAL                                          NSE00001259

*Confidential Treatment Requested*

Tender Offer was subject to many conditions and tentatively concluded not to make any recommendation regarding the MITC Tender Offer. Instead, the MEAD Board directed MEAD's management to release a "stop, look and listen" press release urging MEAD's stockholders not to accept or reject the MITC Tender Offer until MEAD had filed with the Securities and Exchange Commission a solicitation/recommendation statement as to whether MEAD recommends acceptance or rejection of the MITC Tender Offer, expresses no opinion, or is unable to take a position.

On June 22, 2013, O'Neil delivered a first draft of an Agreement and Plan of Merger (the "Merger Agreement") to SMRH. Between June 22 and June 28, 2013, O'Neil and SMRH engaged in a number of discussions regarding the terms of the Merger Agreement. On June 28, 2013, SMRH delivered a revised draft of the Merger Agreement to O'Neil, which O'Neil forwarded to the MEAD Board and management.

Also on June 28, 2013, Mr. Peter Ni, an affiliate of Ningbo, caused Sunny Optics, Inc. (the "Buyer") and Sunny Optics Merger Sub, Inc. ("Merger Sub") to be formed in the State of Delaware, both of which were formed in connection with the Merger Agreement and the transactions contemplated thereby. Mr. Ni is the sole stockholder of Buyer and Buyer is the sole stockholder of Merger Sub. In addition, Mr. Ni is also the sole director and sole officer of both Buyer and Merger Sub.

On July 2, 2013, the MEAD Board held a special meeting. The MEAD Board again discussed the terms of the MITC Tender Offer. The MEAD Board concluded that the previously executed JOC Merger Agreement was superior to the conditional MITC Tender Offer.

On July 3, 2013, the MEAD Board held a special meeting. The MEAD Board reviewed the terms of the Merger Agreement and the other aspects of Ningbo's proposal. The MEAD Board then determined in good faith that Ningbo's proposal was superior to the JOC Merger Agreement. Consequently, the MEAD Board directed MEAD's management to provide JOC five business days prior written notice of MEAD's intention to accept Ningbo's proposal, all as required under the JOC Merger Agreement. On July 5, 2013, MEAD filed with the SEC a solicitation/recommendation statement on Schedule 14D-9 recommending that MEAD's stockholders reject the MITC Tender Offer. On July 5, 2013, Ningbo provided a revised proposal to MEAD. On July 5, 2013, MEAD provided JOC five business days prior written notice of MEAD's intention to accept Ningbo's proposal, all as required under the JOC Merger Agreement. On July 11, 2013, JOC notified MEAD that JOC would not be increasing its offer to acquire MEAD and JOC waived the remainder of the five business day notice period required under the JOC Merger Agreement.

On July 16, 2013, Buyer and Merger Sub signed the Merger Agreement with MEAD and MEAD terminated the JOC Merger Agreement. Also on July 16, 2013, Buyer entered into a Note Purchase Agreement with MEAD. Pursuant to the Note Purchase Agreement, Buyer loaned MEAD $250,000, all of which was used to pay the $250,000 termination fee payable by MEAD to JOC pursuant to the JOC Merger Agreement. In addition, the executive officers of MEAD entered into a voting agreement with Buyer. MEAD and Ningbo issued a joint press release announcing the merger on the afternoon of July 16, 2013.

HIGHLY CONFIDENTIAL                                                    NSE00001260

*Confidential Treatment Requested*

Below are specific responses to items B.1-B.6 of your Request:

1.  As described above, the initial contact between Ningbo and MEAD regarding a potential business combination involving the two companies occurred on June 11, 2013 when Ningbo delivered an unsolicited non-binding indication of interest to MEAD.

2.  Ningbo did not use an investment banker in connection with this transaction.

3.  As noted above, pricing was discussed and terms were contemplated by Ningbo after the May 17, 2013 announcement of the JOC Merger Agreement, however, pricing and terms of the transaction were not discussed with MEAD until after Ningbo delivered the unsolicited non-binding indication of interest on June 11, 2013.

4.  As described above, the preliminary due diligence began on June 14, 2013.   Due diligence continued until the corporate disclosure.

5.  As described above, Ningbo executed a Nondisclosure Agreement with MEAD on June 13, 2013.

6.  Ningbo was first apprised of the proposed business combination with MEAD on or about May 23, 2013, following the announcement of the JOC Merger Agreement. The Board of Directors of Buyer formally approved the transaction by Action by Written Consent by Sole Director on July 16, 2013.

HIGHLY CONFIDENTIAL                                                              NSE00001261

*Confidential Treatment Requested*

# EXHIBIT C-1

## SUNNY OPTICS, INC. AND SUNNY OPTICS MERGER SUB, INC. BOARD AND STOCKHOLDER MINUTES

**ACTION BY WRITTEN CONSENT OF THE SOLE DIRECTOR**
**OF**
**SUNNY OPTICS, INC.**

July 16, 2013

The undersigned, constituting the sole member of the Board of Directors (the "Board") of Sunny Optics, Inc., a Delaware corporation (the "Company"), hereby consents in writing to the adoption of the following resolutions, pursuant to Section 141(f) of the Delaware General Corporation Law (the "DGCL"):

### A.      AGREEMENT AND PLAN OF MERGER

**WHEREAS,** the Board has been presented with and has carefully reviewed the Agreement and Plan of Merger, substantially in the form attached hereto as Exhibit A (the "Sunny Merger Agreement"), by and among Meade Instruments Corp., a Delaware corporation ("Meade"), the Company, and Sunny Optics Merger Sub, Inc., a Delaware corporation (the "Merger Sub"), pursuant to which Merger Sub will merge with and into Meade, with Meade surviving as a wholly owned subsidiary of the Company (the "Merger");

**WHEREAS,** in connection with the Merger, Merger Sub was created as a wholly owned subsidiary of the Company, with the Company being the sole stockholder of Merger Sub;

**WHEREAS,** after due consideration and deliberation, the undersigned has determined that entering into the Sunny Merger Agreement and the transactions contemplated by the Sunny Merger Agreement, including the Merger, is fair to, and in the best interests of, the Company and its sole stockholder;

**WHEREAS,** after due consideration and deliberation, the undersigned has determined that the creation of Merger Sub as a wholly owned subsidiary of the Company, is fair to, and in the best interest of, the Company and its sole stockholder;

**WHEREAS,** after due consideration and deliberation, the undersigned has determined that entering into all other agreements and documents to be executed by the Company in connection with the Sunny Merger Agreement, including the Voting Agreement, in substantially the form attached hereto as Exhibit B (collectively, with such other agreements and documents are referred to herein as the "Merger Transaction Documents"), and performance of the transactions contemplated thereby, are fair to, and in the best interests of, the Company and its sole stockholder; and

**NOW, THEREFORE, BE IT HEREBY RESOLVED,** that the terms and conditions of the Sunny Merger Agreement, the Merger and the Merger Transaction Documents, the consummation of the transactions contemplated thereby, the performance by the Company of its obligations thereunder and the compliance by the Company with the terms and conditions thereof be, and they hereby are, in all respects adopted, approved, ratified and confirmed;

SMRH:409301049.3

HIGHLY CONFIDENTIAL                                                    NSE00001263

**RESOLVED, FURTHER,** that the officers of the Company are hereby authorized and directed to execute and deliver on behalf of the Company the Sunny Merger Agreement and the Merger Transaction Documents, to make such changes and amendments to such agreements as they may deem necessary or appropriate (the Board's approval of such changes and amendments shall be evidenced by the execution and delivery of the respective document by any such officer) and thereafter to cause the Company to perform all of its obligations and duties with respect to such agreements;

**RESOLVED, FURTHER,** that the officers of the Company are hereby authorized and directed to solicit Peter Ni, as sole stockholder of the Company, for his approval of the Merger, the Sunny Merger Agreement and the Merger Transaction Documents;

**RESOLVED, FURTHER,** that the prior actions by the officers of the Company in connection with the creation of the Merger Sub, the Merger, the Sunny Merger Agreement and the Merger Transaction Documents are hereby approved, adopted and ratified in all respects; and

**RESOLVED, FURTHER,** that the officers of the Company are hereby authorized and directed to execute and deliver all documents, file all certificates and notifications with appropriate federal, state and local authorities and take such additional actions as may be necessary or appropriate to carry out the intent of the foregoing resolutions.

### B. APPROVAL OF SECURED CONVERTIBLE PROMISSORY NOTE FINANCING

**WHEREAS,** Meade, JOC North America LLC ("JOC") and JOCNA Inc. entered into an Agreement and Plan of Merger dated May 17, 2013 (the "JOC Merger Agreement" and, together with the Sunny Merger Agreement, the "Merger Agreements"). In connection with the execution of the Sunny Merger Agreement, Meade will become obligated to pay JOC a $250,000 termination fee (the "Termination Fee") pursuant to the terms of the JOC Merger Agreement;

**WHEREAS,** the Company has agreed to loan up to an additional aggregate principal amount of $500,000 (in two additional tranches) to Meade upon the occurrence of a delay in the closing of the Merger caused in connection with an Antitrust Proceeding or an Antitrust Order (as those terms are defined in the Sunny Merger Agreement);

**WHEREAS,** in the judgment of the Board, it is deemed to be in the best interests of the Company and its sole stockholder that the Company loan up to an aggregate of $750,000 of capital to Meade (the "Bridge Financing") pursuant to the terms of that certain Secured Convertible Note Purchase Agreement (the "Note Purchase Agreement"), such loan amounts to be evidenced by Secured Convertible Promissory Notes (the "Notes") and to be secured by the assets of Meade pursuant to the terms of the Security Agreement (the "Security Agreement");

**WHEREAS,** the Note Purchase Agreement, the Notes and Security Agreement (collectively, the "Bridge Agreements"), are substantially in the forms attached hereto as Exhibits C, D, E, F and G respectively; and

**WHEREAS,** the Board has determined that the Bridge Financing is just and reasonable to the Company and its sole stockholder.

HIGHLY CONFIDENTIAL

**NOW, THEREFORE, BE IT RESOLVED,** that the form, terms and provisions of the Bridge Agreements be, and the same hereby are, adopted and approved;

**RESOLVED FURTHER,** that the form, terms and provisions of the Notes to be issued to Meade, be, and they hereby are, adopted and approved;

**RESOLVED FURTHER,** that the proper officers of the Company be, and each of them hereby is, authorized and directed to negotiate, execute and deliver, in the name and on behalf of the Company, the Bridge Agreements and the Notes, and any other related agreements and documents deemed necessary by the officers of the Company to effectuate the Bridge Financing (the "Bridge Transaction Documents"), in such number of counterparts as such officers shall deem advisable, and with such changes therein and additions thereto as may be approved by such officers (the execution thereof by such officers to be conclusive evidence of approval of any such changes or additions);

**RESOLVED FURTHER,** that the proper officers of the Company be, and they hereby are, authorized and directed to take all actions necessary and appropriate to deliver the Bridge Transaction Documents and any other related agreements and documents, and to perform the Company's obligations thereunder; and

**RESOLVED FURTHER,** that the proper officers of the Company, each with full power to act alone, be and each of them hereby is, authorized, directed and empowered, on behalf and in the name of the Company, to carry out and fully perform the terms and provisions of each document delivered pursuant to the foregoing resolutions, make all such arrangements, to do and perform all such acts and things, including, without limitation, soliciting appropriate consents or waivers from the sole stockholder (if applicable), and to execute and deliver all such instruments, documents, certificates and other documents as they may deem necessary or appropriate in order to effectuate fully the purpose of each and all of the foregoing resolutions and the transactions contemplated thereby (hereby ratifying and confirming any and all actions taken heretofore and hereafter by such officers to accomplish such purposes).

## C.   INTERCREDITOR AND SUBORDINATION AGREEMENT

**WHEREAS,** the Board has been presented with and carefully reviewed the Intercreditor and Subordination Agreement, substantially in the form attached hereto as Exhibit H (the "Subordination Agreement"), by and among Rosenthal & Rosenthal, Inc. ("Rosenthal"), the Company and Meade pursuant to which the parties wish to define their relative rights of payment of debt;

**WHEREAS,** Meade and Rosenthal are party to certain agreements, security agreements and other documents, which include the Financing Agreement dated December 28, 2012 by and between Meade and Rosenthal (the "Loan Agreement") as well as the Loan Documents (as such term is defined in the Loan Agreement), pursuant to which Rosenthal makes loans and provides other financial accommodations (the "Senior Loan") to Meade.   All documents executed in connection with the Senior Loan, as the same may be amended from time to time, are hereinafter collectively referred to as the "Senior Creditor Documents";

HIGHLY CONFIDENTIAL                                     NSE00001265

**WHEREAS,** the Company intends to make one or more loans to Meade as contemplated in the Bridge Financing whereby Meade intends to issue Notes to the Company;

**WHEREAS,** in connection with the issuance of the Notes, Meade agrees and is obligated to make payments ("Subordinated Debt") to the Company pursuant to and as evidenced by the Notes;

**WHEREAS,** the Subordinated Debt is secured by the lien and security interest of the Company in the assets and property described in the, and granted pursuant to the Security Agreement contemplated in the Bridge Financing;

**WHEREAS,** after due consideration and deliberation, the undersigned has determined that entering into the Subordination Agreement and the transactions contemplated by the Subordination Agreement, is fair to, and in the best interests of, the Company and its sole stockholder;

**NOW, THEREFORE, BE IT RESOLVED,** that the form, terms and provisions of the Subordination Agreement be, and the same hereby are, adopted and approved;

**RESOLVED FURTHER,** that the proper officers of the Company be, and each of them hereby is, authorized and directed to negotiate, execute and deliver, in the name and on behalf of the Company, the Subordination Agreement, and any other related agreements and documents deemed necessary by the officers of the Company to effectuate the transaction, in such number of counterparts as such officers shall deem advisable, and with such changes therein and additions thereto as may be approved by such officers (the execution thereof by such officers to be conclusive evidence of approval of any such changes or additions); and

**RESOLVED FURTHER,** that the proper officers of the Company be, and they hereby are, authorized and directed to take all actions necessary and appropriate to deliver the Subordination Agreement and any other related agreements and documents, and to perform the Company's obligations thereunder.

### D.   ESCROW AGREEMENT

**WHEREAS,** the Board has been presented with and carefully reviewed the Escrow Agreement, substantially in the form attached hereto as Exhibit I (the "Escrow Agreement"), by and among Meade, the Company and JPMorgan Chase Bank, NA (the "Escrow Agent") pursuant to which the Company agrees to deposit with the Escrow Agent the sum of $500,000 in connection with the Merger; and

**WHEREAS,** after due consideration and deliberation, the undersigned has determined that entering into the Escrow Agreement and the transactions contemplated by the Escrow Agreement, is fair to, and in the best interests of, the Company and its sole stockholder.

**NOW, THEREFORE, BE IT RESOLVED,** that the form, terms and provisions of the Escrow Agreement be, and the same hereby are, adopted and approved;

SMRH:409301049.3                                  -4-

HIGHLY CONFIDENTIAL                                                                    NSE00001266

**RESOLVED FURTHER,** that the proper officers and authorized persons of the Company, including but not limited to, Peter Ni and Joseph A. Lupica, Jr., be, and each of them hereby is, authorized and directed to negotiate, execute and deliver, in the name and on behalf of the Company, the Escrow Agreement, and any other related agreements and documents deemed necessary by the officers or authorized persons of the Company to effectuate the transaction, in such number of counterparts as such officers or authorized persons shall deem advisable, and with such changes therein and additions thereto as may be approved by such officers or authorized persons (the execution thereof by such officers or authorized persons to be conclusive evidence of approval of any such changes or additions); and

**RESOLVED FURTHER,** that the proper officers and authorized persons named herein of the Company be, and they hereby are, authorized and directed to take all actions necessary and appropriate to deliver the Escrow Agreement and any other related agreements and documents, and to perform the Company's obligations thereunder.

## E.    DEMAND PROMISSORY NOTE

**WHEREAS,** the Board has been presented with and carefully reviewed the Demand Promissory Note, substantially in the form attached hereto as <u>Exhibit J</u> (the "<u>Demand Note</u>"), in which Peter Ni intends to loan the Company the principal amount of One Million Dollars ($1,000,000.00);

**WHEREAS,** the Demand Note will be issued by the Company to Peter Ni upon Mr. Ni's loaning the Company the principal amount of One Million Dollars ($1,000,000.00); and

**WHEREAS,** after due consideration and deliberation, the undersigned has determined that issuing the Demand Note, is fair to, and in the best interests of, the Company and its sole stockholder.

**NOW, THEREFORE, BE IT RESOLVED,** that the form, terms and provisions of the Demand Note be, and the same hereby are, adopted and approved;

**RESOLVED FURTHER,** that the proper officers of the Company, be, and each of them hereby is, authorized and directed to negotiate, execute and deliver, in the name and on behalf of the Company, the Demand Note, and any other related agreements and documents deemed necessary by the officers of the Company to effectuate the transaction, in such number of counterparts as such officers shall deem advisable, and with such changes therein and additions thereto as may be approved by such officers (the execution thereof by such officers to be conclusive evidence of approval of any such changes or additions); and

**RESOLVED FURTHER,** that the proper officers of the Company be, and they hereby are, authorized and directed to take all actions necessary and appropriate to deliver the Demand Note and any other related agreements and documents, and to perform the Company's obligations thereunder.

HIGHLY CONFIDENTIAL                                                          NSE00001267

### F.    APPOINTMENT OF AUTHORIZED SIGNATORY

**WHEREAS**, the Board has determined that it is in the best interests of the Company to appoint Joseph A. Lupica, Jr. as an "Authorized Signatory" of the Company for the express purpose of executing and filing the following U.S. Securities and Exchange Commission documents: (i) the FORM ID – Uniform Application for Access Codes to File on EDGAR (the "FORM ID") and (ii) the Schedule 13D disclosing the Company's beneficial ownership of Meade (the "Schedule 13D").

**NOW, THEREFORE, BE IT RESOLVED**, that Joseph A. Lupica, Jr. be, and is hereby is, appointed as Authorized Signatory of the Company, authorized on behalf of the Company to do or cause to be done all such acts or things, to pay all such fees and expenses, and to sign and deliver, or cause to be signed and delivered, each of the FORM ID and the Schedule 13D, and any such related documents, in the name and on behalf of the Company, as the case may be, or otherwise, as deemed by the Board to be necessary or advisable or convenient in order to carry out or perform the business of the Company.

### G.    OMNIBUS RESOLUTIONS

**NOW, THEREFORE, BE IT HEREBY RESOLVED,** that each of the officers of the Company is authorized and empowered to take such other actions and sign such other documents as may be necessary or advisable to carry out the intent and accomplish the purposes of the foregoing resolutions; and

**RESOLVED, FURTHER,** that the Company is hereby authorized and directed to pay any and all fees, costs and expenses arising in connection with any of the foregoing resolutions.

[Remainder of the Page Intentionally Left Blank]

HIGHLY CONFIDENTIAL                                                                                      NSE00001268

IN WITNESS WHEREOF, the undersigned has executed this Action by Written Consent of the Sole Director as of the date first set forth above.

Director:

_____

Peter Ni

SIGNATURE PAGE TO ACTION BY WRITTEN CONSENT OF THE SOLE DIRECTOR OF SUNNY OPTICS, INC.