1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
       A Limited Liability Partnership
2      Including Professional Corporations
   LEO D. CASERIA, Cal. Bar No. 240323
3  333 South Hope Street, 43rd Floor
   Los Angeles, California 90071-1422
4  Telephone:    213.620.1780
   Facsimile:    213.620.1398
5  E-mail:       lcaseria@sheppardmullin.com

6  MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
   DYLAN I. BALLARD, Cal. Bar No. 253929
7  Four Embarcadero Center, 17th Floor
   San Francisco, CA 94111
8  Telephone:    415.434.9100
   Facsimile:    415.434.3947
9  E-mail:       mscarborough@sheppardmullin.com
                 dballard@sheppardmullin.com
10
   Attorneys for Defendants NINGBO SUNNY
11 ELECTRONIC CO., LTD., SUNNY OPTICS,
   INC., and MEADE INSTRUMENTS CORP.
12

13                  UNITED STATES DISTRICT COURT
14
          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
15

16
   OPTRONIC TECHNOLOGIES, INC. d/b/a      Case No. 5:16-cv-06370-EJD
17 Orion Telescopes & Binoculars, a California
   corporation,                          **STIPULATION AND [PROPOSED]
18                                        ORDER REGARDING PRODUCTION OF
                  Plaintiff,              ELECTRONICALLY STORED
19                                        INFORMATION AND HARD COPY
            v.                            DOCUMENTS**
20
   NINGBO SUNNY ELECTRONIC CO., LTD.,
21 SUNNY OPTICS, INC., MEADE
   INSTRUMENTS CORP., and DOES 1-25,
22                                        Complaint Filed: November 1, 2016
                  Defendants.            First Amended Complaint Filed: November 3,
23                                        2017
                                          Trial Date:  None Set
24

25

26

27

28

1    The parties, by and through their undersigned counsel, stipulate that the following

2  Production Stipulation and Order Regarding Production of Electronically Stored Information and

3  Certain Hard Copy Documents ("Production Stipulation and Order") shall govern the parties in the

4  above-captioned case (the "Litigation"), and jointly request that it be entered as an Order of the

5  Court.

6    I.    GENERAL PROVISIONS

7    A.    This Production Stipulation and Order will only govern the production of

8  electronically stored information ("ESI") and certain hard copy documents (collectively,

9  "Document" or "Documents").  This Production Stipulation and Order creates no obligation upon

10 the producing party to convert paper documents into electronic form.  Hard copy paper documents

11 may be produced solely in paper form, in which case they will not be subject to this Production

12 Stipulation and Order.  This Production Stipulation and Order shall not apply to, and creates no

13 obligation upon any party to reprocess or reproduce, any Documents that were processed and

14 produced in connection with this or any other matter prior to the Court's entry of this Order.

15 However, if a party maintains responsive documents in both hard copy and electronic form in the

16 ordinary course of business, the documents shall be produced in electronic form.

17    B.    TIFF Image Files:  The parties agree that all Documents, with the exception of the

18 hard copy documents discussed in subsection A, above, and documents produced in accordance

19 with subjection F and Section III.C., below, will be produced as single-page black and white

20 Group IV TIFF image files of at least 300 dpi resolution.  Page size shall be 8.5 x 11 inches unless

21 in the reasonable judgment of the producing party, a particular item requires a different page size.

22 Each image file will use the Bates number of the page as its unique file name.  Original document

23 orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to

24 portrait and landscape to landscape).

25    C.    Text Files:  Each Document produced under this Production Stipulation and Order

26 shall be accompanied by a single, multipage text file containing all of the text for that item, not

27 one text file per page.  Each text file shall be named to use the Bates number of the first page of

28 the corresponding production item.

-1-

i.       OCR:  The parties will provide searchable OCR text of any paper documents, including spreadsheets maintained in paper form, that were scanned or otherwise converted into electronic form prior to the time the documents are first produced in this litigation.  The parties acknowledge, however, that not all documents lend themselves to the generation of accurate OCR.

ii.       ESI:  The text of each ESI item shall be extracted directly from the ESI native file. For contacts and calendars collected and/or processed after the execution date of this Production Stipulation and Order, user-modifiable fields should be extracted and produced as text.

iii.       Redacted Documents:  The parties will provide searchable OCR text for any redacted TIFF files.

iv.       Foreign Language Text:  The parties will use industry standards, software, and techniques, or their reasonable equivalents, to attempt to ensure that all technologies and processes used to collect, process and produce the text of any Document – including all TIFF conversion and OCR processes, and the extraction of text from native files – preserves all foreign language text, punctuation and other characteristics as they exist in the source native file.  A party may request the producing party to explain the industry standards, software, and techniques, or their reasonable equivalents used by the producing party to preserve foreign language text.  Such request shall not be refused by the producing party absent good cause.

D.       Bates Numbering:

i.       Each TIFF image produced under this Production Stipulation and Order should be assigned a Bates number that must always:  (1) be unique across the entire document production; (2) maintain a constant length of eight numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given document.  This requirement shall not apply to documents processed for production prior to the entry of this Production Stipulation and Order.

ii.       The producing party will identify the Bates number range of each production in a cover letter or production log accompanying the production.  If a producing party skips a Bates number or set of Bates numbers in a production, the producing party will identify and note the gap in the cover letter or production log accompanying the production.

iii.     The producing party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size.  The producing party will take reasonable care to ensure that the Bates number does not obscure any part of the underlying image.  If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.

E.     Parent-Child Relationships:  Parent-child relationships for all embedded ESI documents (e.g., the association between an attachment and its parent e-mail, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields specified in Appendix 2.  For example, if a party is producing an e-mail with embedded attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent e-mail.

F.     Color:  If an original ESI document contains color text, markings or graphics, and the receiving party believes it is necessary to view such document in its original color to understand its full meaning or content, then the receiving party may request that the ESI document be produced in color format.  Such request shall not be refused by the producing party absent good cause.  The production of such documents and/or ESI in color shall be made in single-page JPEG or PDF format or, if the original color image is not in JPEG format, the producing party may produce either in native, PDF, or TIFF format.  All requirements for productions stated in this Production Stipulation and Order regarding productions in TIFF black and white format apply to any productions of documents and/or ESI made in color JPEG, PDF, or TIFF format.

G.     Confidentiality Designations:  If a particular paper document or ESI item has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such item/document, in the lower left-hand corner of the document as specified in section I.D.iii, or as close thereto as possible while preserving the underlying image.  No party may attach to any filing or any correspondence addressed to the Court, Magistrate, or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy

-3-

(whether electronic or otherwise) of any native format document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the producing party, appears on the document.

H.     Load Files:  All productions will be provided with data load files and image load file as detailed in Appendix 1.  The load file should be in standard, delimited format (e.g., Concordance, IPRO, Summation DII, or the like).  The image load file must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the corresponding image load file for that production.  Each deliverable volume should limit directory contents to approximately 5000 files per folder.

II.     PRODUCTION OF CERTAIN HARD COPY DOCUMENTS

A.     Coding Fields:  All coding information defined in Appendix 2 as applicable to "All Items" shall be produced in the data load file accompanying production of paper documents that were scanned or otherwise converted into electronic form prior to the time the documents are first produced in this litigation.  Nothing in this Production Stipulation and Order shall be deemed to require manual coding of documents, or to otherwise require any producing party to scan or otherwise convert hard copy documents into ESI for purposes of production.

B.     Unitization of Paper Documents.  Paper documents should be logically unitized for production.  Therefore, when scanning or producing paper documents, distinct documents should not be merged into a single file or database record, and distinct documents shall not be split into multiple files or database records.  The parties will make their reasonable best efforts to unitize documents correctly.  This provision does not obligate any party to produce documents in a manner other than which those documents were kept in the ordinary course of business.

C.     File/Binder Structures (Parent-Child Unitization):  Where multiple documents were organized into groups, such as folders, clipped bundles and binders, each distinct document shall be unitized as described in Section II.B.  above.  With respect to documents processed after the

-4-

entry of this Production Stipulation and Order, the parties shall make reasonable efforts to unitize parent-child groups as specified in Section I.E.

D.    Identification:  Where a document or a document group such as folder, clipped bundle, or binder has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

E.    Custodian Identification:  The parties will utilize reasonable best efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates stamp order.

III.    PRODUCTION OF ELECTRONICALLY STORED INFORMATION

A.    System Files:  ESI productions shall be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology.  The parties recognize that to reduce the document review population, additional file types will need to be excluded.  Upon request of a receiving party, a producing party shall identify any additional standard, readable, and reviewable file types which have been excluded from its document review population for any production made prior to the date of this stipulation.

i.    If a party excludes from review a standard, readable, and reviewable file type not within the industry standard, that party must disclose such an exclusion to the other parties.  Any party to whom such disclosure is made will have five business days to object.  Any objection not made in this period will be waived.  If objections are made, the relevant parties will meet and confer to resolve them.

B.    Metadata Fields and Processing:

i.    ESI items processed after the execution date of this Production Stipulation and Order shall be processed in a manner that preserves the source native file and all metadata without modification, including their existing time, date and time-zone metadata consistent with the requirements provided in this Production Stipulation and Order.

ii.    Auto date/time stamps:  ESI items processed after the execution date of this Production Stipulation and Order shall be processed so as to preserve and display the date/time

-5-

shown in the document as it was last saved or modified by the custodian or end user, not the date of collection or processing.  If this is not technically possible, the producing party shall use its reasonable best efforts to display the field code in the document.

iii.      Hidden text:  ESI items shall be produced, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

iv.      ESI items shall be produced with all of the metadata and coding fields set forth in Appendix 2.

v.      This Production Stipulation and Order does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the document; provided, however, that the producing party must populate the (a) BegBates, (b) EndBates, (c) BegAttach, and (d) EndAttach.  These fields should be populated for all produced ESI, as well as paper Documents converted to electronic form subsequent to the Court's entry of this Production Stipulation and Order, regardless of whether the fields can be populated pursuant to an automated process.

vi.      No party shall modify the date or time as contained in any original ESI.

C.      Production of Native Items:

i.      The parties agree in sections I.B.  and III.B.iv that ESI shall be produced as TIFF images with an accompanying data load file, which will contain the ESI metadata listed in Appendix 2 hereto.  The exception to this rule shall be spreadsheet-application files (e.g., MS Excel), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), for which all ESI items shall be produced in native format.  In the case of personal database (e.g. MS Access) files containing confidential or privileged information, the parties shall meet and confer to determine the appropriate form of production.  In addition to producing the above file types in native format, the producing party shall produce a single-page TIFF slipsheet indicating that a native item was produced.  The corresponding load file shall include NativeFileLink information for each native file that is produced.  Further, the parties agree to meet and confer prior to producing native file types other

-6-

than MS PowerPoint, MS Excel, and multimedia audio/visual file types such as .wav, .mpeg and .avi.

ii. The parties agree to meet and confer to the extent that there is data in database-application files, such as SQL and SAP, to determine the best reasonable form of production of usable data.

iii. Through the pendency of this Litigation, the producing party shall exercise reasonable, good faith efforts to maintain all preserved and collected native files in a manner that does not materially alter or modify the file or the metadata.

D. Requests for Other Native Files:  A receiving party may request that the producing party produce the native file corresponding to a static image, for good cause shown and subject to reasonable objection by the producing party.  The request for production of any specific native file(s) shall include Bates numbers of the TIFF documents to identify the corresponding native file.  Any subsequent production of the native file will include the Bates number of the first page of the Bates range that corresponds to the previously produced TIFF image which should be applied as a prefix to the file name.

E. Redaction:

i. The parties agree that where ESI items need to be redacted, they shall be produced solely in TIFF with each redaction clearly indicated.  Any unaffected data fields specified in section III.B.v, supra, shall be provided.

ii. If the items redacted and partially withheld from production are PowerPoint- type presentation decks or Excel-type spreadsheets as addressed in section III.D., *supra*, and the native items are also withheld, the entire ESI item must be produced in TIFF format, including all unprivileged pages, hidden fields and other information that does not print when opened as last saved by the custodian or end-user.  For PowerPoint-type presentation decks, this shall include, but is not limited to, any speaker notes.  For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values, annotations and notes.  The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images

-7-

SMRH:485851295.1

STIPULATION AND [PROPOSED] ORDER REGARDING PRODUCTION OF
ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS
Case No. 5:16-cv-06370-EJD

1    are formatted so as to be legible.  For example, column widths should be formatted so that the

2    numbers in the column will display rather than "#########."

3          iii.      If the items redacted and partially withheld from production are audio/visual files,

4    the producing party shall provide the unredacted portions of the content.  If the content is a voice

5    recording, the parties shall meet and confer to discuss the appropriate manner for the producing

6    party to produce the unredacted portion of the content.

7          F.      Password-Protected or Encrypted Files:  With respect to any ESI items that are

8    password-protected or encrypted, the Producing Party will take reasonable steps based on industry

9    standards to break the protection so that the document can be reviewed and/or produced.  In the

10   event that encrypted or password-protected documents, which are reasonably likely to be

11   responsive to Plaintiffs' document requests, remain for a particular custodian after such reasonable

12   efforts have been made, the Producing Party shall let the Receiving Party know the total number

13   of such documents and each individual Producing Party shall meet and confer with the Receiving

14   Party.

15        G.      De-duplication:

16        i.      The producing party need only produce a single copy of a particular ESI item, and

17   may de-duplicate ESI vertically by custodian, or horizontally (globally) across the population of

18   records.

19        ii.      Duplicates shall be identified by using industry standard MD5 or SHA-1 algorithms

20   only to create and compare hash values for exact matches only.  Any other methodology for

21   identification of duplicates must be discussed with the receiving party and approved in writing

22   before implementation.  The resulting hash value for each item shall be reflected in the HashValue

23   field specified in Appendix 2.

24        iii.      With respect to an email chain, the parties are permitted to produce the longest

25   unique chain and the parties do not need to separately produce the lesser-included emails unless

26   those lesser-included emails include unique attachments not included in the longest chain. If a

27   lesser-included email includes a unique attachment, then the lesser-included email must be

28   separately produced with the attachment.

1    IV.    MISCELLANEOUS PROVISIONS

2        A.    Objections Preserved:  Nothing in this Production Stipulation and Order shall be

3    interpreted to require disclosure of either irrelevant information or relevant information protected

4    by the attorney-client privilege, work-product doctrine, or any other applicable privilege or

5    immunity.  Except as provided expressly herein, the parties do not waive any objections as to the

6    production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

7        B.    Modifications:  Recognizing that each producing party may experience production

8    issues due to, among other things, individual and/or proprietary electronic mail or other data

9    systems that may not be fully compatible with the technical specifications set forth herein, any

10   practice or procedure set forth herein may be varied by agreement of the parties, confirmed in

11   writing, to accommodate such issues and/or where such variance is deemed appropriate to

12   facilitate the timely and economical production of documents or ESI.  No party shall unreasonably

13   object to any such variance and any dispute as to a variance shall be resolved through a meet and

14   confer process and, if agreement cannot be reached, by presentation to the Court for resolution.

15       C.    Cost Allocation:  The parties expressly reserve the rights to seek costs under the

16   Federal Rules of Civil Procedure in connection with disputes unaddressed by this stipulation and

17   with respect to proposed variances therefrom.

18       D.    No Waiver of Privilege and Clawback Rights: The production of documents by a

19   producing party shall, to the maximum extent permitted by law, be governed by Federal Rule of

20   Civil Procedure 26(b)(5) and Federal Rule of Evidence 502 regarding the inadvertent production

21   of material protected by the attorney-client privilege, the work product doctrine, or any other

22   privilege or protection from disclosure recognized under applicable law. A party's inadvertent

23   disclosure in connection with this action of information that the disclosing party believes is

24   protected by the attorney-client privilege, the work product doctrine, or any other privilege or

25   immunity from discovery ("Protected Information") shall not constitute a waiver with respect to

26   such privilege or immunity in this or any other action.

27

28

SMRH:485851295.1                              STIPULATION AND [PROPOSED] ORDER REGARDING PRODUCTION OF
                                             ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS
                                             Case No. 5:16-cv-06370-EJD

i.      Notification by the Disclosing Party: In the event of an inadvertent disclosure of Protected Information, the disclosing party may provide notice in writing to the receiving party or parties advising of the inadvertent disclosure, requesting return of the Protected Information, and asserting the basis of the clawback request. Upon such notice, the receiving party or parties shall make no further use of the Protected Information, shall immediately segregate the Protected Information in a manner that will prevent any further disclosure or dissemination, and shall take reasonable steps to retrieve the Protected Information to the extent it was disclosed or disseminated prior to receipt of the notice. Within ten (10) business days of receiving the notice of inadvertent disclosure, the receiving party shall take reasonable steps to return all Protected Information in its possession, custody, or control, or shall provide written confirmation that such information has been deleted. The receiving party's reasonable steps shall not require the return or destruction of Protected Information that is stored on backup storage media made in accordance with regular data backup procedures for disaster recovery purposes.  Backup storage media will not be restored for purposes of returning or certifying destruction of Protected Information, but such retained information shall continue to be treated in accordance with this Order.

ii.     Notification by the Receiving Party: In the event a receiving party receives information that appears on its face to be subject to the attorney-client privilege, the work product doctrine, or any other privilege or immunity from discovery, the receiving party shall refrain from reviewing the information any more than is essential to ascertain that the information is privileged, and shall immediately notify the disclosing party in writing that he or she possesses information that appears on its face to be privileged. The disclosing party shall then have ten (10) business days after receiving the notice to request the return of the information. If the disclosing party requests return of the information, the receiving party shall immediately return the information to the disclosing party and destroy any other copies, and confirm the return and destruction of the materials in writing.

iii.    Disputes: The return of any discovery material to the disclosing party shall not in any way preclude the receiving party from asking the Court for a ruling that the disclosed information was never privileged or otherwise immune from discovery; however, the receiving

-10-

1 party may not assert as a basis for the relief it seeks the fact or circumstance that such allegedly

2 privileged documents were inadvertently produced in this action. In the event there is a dispute

3 over whether the information at issue is protected from disclosure by virtue of a privilege or

4 immunity from discovery, counsel shall undertake reasonable, good faith efforts to resolve the

5 issue without intervention from the Court. To the extent counsel cannot resolve the issue, they will

6 submit the issue to the Magistrate Judge assigned to this action in accordance with the Magistrate

7 Judge's individual practices and the local rules. The party asserting the privilege shall bear the

8 burden of persuasion with respect to the applicability of the privilege. Allegedly privileged

9 documents shall remain protected against disclosure and use during the pendency of any dispute

10 over their status.

11       iv.    Nothing herein is intended to alter or diminish counsel's obligations under

12 applicable ethics rules.

13

14 **IT IS SO ORDERED.**

15

16

17 Dated: <u>March 29, 2018</u>

18                        Susan van Keulen
                       United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

SMRH:485851295.1                          STIPULATION AND [PROPOSED] ORDER REGARDING PRODUCTION OF
ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS
Case No. 5:16-cv-06370-EJD

1  Dated:  March 29, 2018

2                                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3

4                       By      _____
                                        /s/ Leo D. Caseria
5                                      LEO D. CASERIA

6                               Attorneys for Defendants NINGBO SUNNY
                               ELECTRONIC CO., LTD., SUNNY OPTICS, INC.,
7                                 and MEADE INSTRUMENTS CORP.

8

9

10  Dated:  March 29, 2018

11                                   BRAUNHAGEY & BORDEN, LLP

12

13                      By      _____
                                        /s/ J. Noah Hagey
14                                     J. NOAH HAGEY

15                              Attorneys for Plaintiff OPTRONIC TECHNOLOGIES
                                 INC. d/b/a Orion Telescopes & Binoculars

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        -12-

Appendix 1:  Production Delivery Requirements

Image Load Files

- Image load (cross-reference) files should be produced in Concordance Image (Opticon) format.

- The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (e.g., ABC001.OPT).

- The volume names should be consecutive (e.g., ABC001, ABC002, et seq.).

- There should be one row in the load file for every TIFF image in the production.

- Every image in the delivery volume should be cross-referenced in the image load file.

- The imageID key should be named the same as the Bates number of the page.

- Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), i.e., a separate volume should be created for each piece of media delivered.

- Files that are the first page of a logical document should include a "Y" where appropriate.

Subsequent pages of all documents (regular document, e-mail, or attachment) should include a blank in the appropriate position.

Sample Concordance Image (Opticon) Load File:

MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,,,,,
MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,,,,,
MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,,,,,

Concordance Data Load Files:

- Data load files should be produced in Concordance .DAT format.

- The data load file should use standard Concordance delimiters:

- Comma - ¶ (ASCII 20);

- Quote - þ (ASCII 254);

- Newline - ® (ASCII174).

- The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.

- All date fields should be produced in mm/dd/yyyy format, if possible.

- All attachments should sequentially follow the parent document/email.

-13-

- Use carriage-return to indicate the start of the next record.

- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (e.g., ABC001.DAT).

- The volume names should be consecutive (e.g., ABC001, ABC002, et seq.).

- If foreign language / Unicode text exists, the .DAT file shall be in UTF-8 or UTF-16 format where appropriate, consistent with section I.C.iv.

Sample Concordance .DAT Load File:

þBegBatesþþBegAttachþþEndAttachþþPgCountþþCustodianþ

OCR/Extracted Text Files

- OCR or Extracted Text files shall be provided in a separate \OCR\ directory containing Document level text files.

- If Foreign Language/Unicode text exists, TEXT files shall be in appropriate UTF-8 or UTF-16 format, consistent with section I.C.iv.

Appendix 2:  ESI Metadata and Coding Fields

The chart below describes the metadata fields to be produced in generic, commonly used terms which the producing party is to adapt to the specific types of ESI it is producing, to the extent such metadata fields exist associated with the original electronic documents and are automatically generated as part of the electronic data discovery process.   Any ambiguity about a metadata field is to be discussed with the receiving party prior to processing the subject ESI for production.

| Field Name | Field Description |
| --- | --- |
| BegBates | First Bates number (production number) of an item |
| EndBates | Last Bates number (production number) of an item<br><br>**The EndBates field should be populated for single-page items. |
| BegAttach | First Bates number of family group. |
| EndAttach | Last Bates number of attachment range (i.e., Bates number of the last page of the last attachment) |
| PgCount | Number of pages in the item |
| Custodian | Name of person from whose files the item is produced |
| CustodianOther | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de-duplicated |
| FileSize | Size (in kilobytes) of the source native file |
| SourceFilePath | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename.  Any container name (such as ZIP or PST containers) is included in the path. |
| HashValue | The MD5 or SHA-1 hash value of the file. |
| NativeFileLink | Hyperlink path for documents provided in native format only.<br><br>**The linked file must be named per the BegBates value. |
| SourceParty | Name of party producing the item |
| RecordType | Indicates item type (e.g., paper, email, edoc, image, attachment) |
| Application | Indicates software application that generated the ESI item (e.g., Outlook, word, etc.) |
| File Extension | Indicates file extension of source native file |
| DateSent (mm/dd/yyyy) | Date email or calendar item was sent |

-15-

| Field Name | Field Description |
|---|---|
| LastModDate (mm/dd/yyyy) | Date the item was last modified |
| TimeSent (hh:mmAM/PM) | Time email or calendar item was sent |
| DateReceived | Date email or calendar item was received |
| TimeReceived | Time email or calendar item was received |
| To | The names and SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | The name and SMTP email address of the sender of the email or calendar item |
| CC | The names and SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |
| BCC | The names and SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |
| AttachCount | Number of attached, embedded or grouped items |
| DateCreated (mm/dd/yyyy) | Date the item was created |
| TimeCreated (hh:mm AM/PM) | Time the item was created |
| ModifiedBy | Person who last modified or saved the item, as populated in the metadata or document properties of the native file |
| LastModTime (hh:mm AM/PM) | Time the item was last modified |
| LastAccessDate (mm/dd/yyyy) | Date the item was last accessed |
| LastAccessTime (hh:mm AM/PM) | Time the item was last accessed |
| LastPrintDate (mm/dd/yyyy) | Date the item was last printed |
| LastPrintTime (hh:mm AM/PM) | Time the item was last printed |
| FileName | The filename of the source native file for an ESI item |

| Field Name | Field Description |
|---|---|
| Title | Any value populated in the Title field of the source file metadata or item properties |
| Subject | Any value populated in the Subject field of the source file metadata or document properties (e.g., subject line of email or calendar item) |
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document properties |
| TextPath | Full relative path to the current location of the document-level text file specified in Paragraph I.C of this ESI Stipulation and Order. |
| Redacted | User-generated field that will indicate redactions.  "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted. Otherwise, blank. |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Leo D. Caseria, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

*/s/ Leo D. Caseria*
Leo D. Caseria

STIPULATION AND [PROPOSED] ORDER REGARDING PRODUCTION OF
ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS
Case No. 5:16-cv-06370-EJD