United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC, <br> Plaintiff, <br> v. <br> NINGBO SUNNY ELECTRONIC CO., LTD., et al., <br> Defendants. | Case No. 16-cv-06370-EJD (VKD) <br><br> **ORDER RE JOINT DISCOVERY DISPUTE LETTER RE DEPOSITIONS OF CHIU AND NI** <br><br> Re: Dkt. No. 175 |

Plaintiff Optronic Technologies, Inc. ("Orion") moves for sanctions or other remedies against defendants, arguing that two defense witnesses, both executives of defendant Ningbo Sunny Electronics Co. ("Ningbo Sunny"), refused to answer questions during their recent depositions. The Court finds this dispute suitable for disposition without a hearing.

## I. BACKGROUND

On September 13-14, 2018 and September 18-19, 2018 Orion took the depositions of James Chiu and Peter Ni, Vice President and CEO, respectively, of defendant Ningbo Sunny in Orion's counsel's offices. Both witnesses reside outside the United States. Orion claims that the witnesses improperly refused to answer questions on grounds other than privilege, and otherwise obstructed Orion's questioning. Orion believes that the witnesses were coached to refuse to answer basic questions, depending on the nature of the objection made by defense counsel. Orion requests that, as a sanction, Ningbo Sunny be precluded from presenting evidence on the subjects on which Messrs. Chiu and Ni refused to answer questions. Alternatively, Orion requests that the Court compel these witnesses to return to the United States for a further deposition.

Defendants contend that Orion's counsel often posed vague, conclusory, argumentative, and legally loaded questions, such as asking the witness to opine whether certain companies were "competitors" of Ningbo Sunny—an issue of some significance in an antitrust case. According to defendants, the witnesses did not refuse to answer, but simply asked for clarification or said that they did not know the answer to Orion's questions. Additionally, defendants deny that any coaching took place, arguing that defense counsel stated proper objections, using the minimum language necessary to assert the bases for the objections. Further, defendants point out that both witnesses (who had traveled from China to the United States the day before) were jet-lagged, had to testify through interpreters, and sat for 13 and 14 hours of deposition in 80+ degree heat because Orion's counsel's offices were not air-conditioned. Finally, defendants argue that Orion's counsel wasted time during the depositions and that Orion should not be given an opportunity to conduct a further, open-ended deposition of either witness. Defendants contend that Orion's remedy, if any remedy is needed, is to cross-examine the witnesses at trial and attempt to impeach them with deposition testimony that Orion believes is evasive or not credible.

## II. DISCUSSION

A witness may not refuse to answer questions in a deposition except to preserve a claim of privilege. Fed. R. Civ. P. 30(c)(2). Otherwise, a party or witness may terminate a deposition in order to seek a protective order limiting the scope of the examination. *Id.*

The Court has reviewed the excerpts of the depositions of Messrs. Chiu and Ni submitted with the parties' joint discovery dispute letter. The Court has also viewed excerpts of the video of both witnesses' depositions that were provided to the Court.

These depositions were conducted under challenging circumstances. Orion's counsel was required to ask questions through a translator who not only had to translate his questions and the witnesses' answers, but also had translate defendants' counsel's frequent objections. No one appears to dispute that the witnesses were tired and suffered from jet lag, and that during at least some of the deposition time the deposition room was uncomfortably warm.

These challenges were compounded by counsels' and the witnesses' own conduct during the deposition. For example, Orion's counsel questioned each witness repeatedly about Ningbo

Sunny's "competitors." To each such question, defendants' counsel made a laundry list of objections, including that the question was "overbroad" and "called for a legal conclusion." Whether or not they were coached to do so, the witnesses responded that such questions were too broad and that they could not respond because they were not lawyers, and generally avoided answering. Eventually, Orion's counsel asked questions directed to the facts that might make a company a competitor or not a competitor, such as the nature of the telescopes supplied by different companies (Chiu dep. 248:1-251:2). These questions drew fewer objections, and the witnesses were more forthcoming in their responses.

On no occasion did counsel for defendants instruct Mr. Ni or Mr. Chiu not to answer a question. Orion responds that counsel did not have to give such an instruction because the witnesses were coached not to answer questions to which particular objections were made. It is not evident to the Court from the parties' submissions that such improper coaching indeed took place. And while it is clear that neither Mr. Ni nor Mr. Chiu were particularly forthcoming in response to questions to which defendants' counsel made objections, Orion's counsel could have mitigated this difficulty by asking questions that sought testimony about facts, rather than about characterizations of the facts.

The Court has considered each of the specific deposition testimony excerpts on which Orion basis its motion and considered whether the witness' conduct warrants a remedy or sanctions.

*First*, Orion argues that Mr. Ni improperly refused to answer questions about whether Celestron ever "helped" Ningbo Sunny purchase a business. Orion says that even after counsel gave examples of what "help" could encompass, Mr. Ni still said he could not answer the question because he did not know what "help" means. Orion does not say why this sought-after testimony is relevant to any claim or defense in the case. The Court assumes that this questioning is directed to whether Celestron agreed to pay Ningbo Sunny for products in advance of when those payments otherwise would have been due and whether Celestron extended credit to Ningbo Sunny. If so, then it appears that Orion did obtain testimony on this point. *See* Dkt. No. 171-6 at 7 (summarizing testimony from Ni and Chiu). It is not clear from Orion's portion of the joint

3

discovery dispute letter whether it expected other information beyond the testimony the witnesses eventually provided. In any event, the series of questions on which Orion focuses is a good example of an exchange in which the witness could have been more forthcoming and the questioning could have focused more on eliciting facts, rather than a characterization of the facts—*e.g.* "Did Celestron ever provide financing for Ningbo Sunny to acquire a business?"

*Second*, Orion argues that Mr. Ni and Mr. Chiu improperly refused to answer questions about which companies were Ningbo Sunny's "competitors," as each claimed not to understand the term "competitor" or claimed that it was a legal term that they could not address because they were both non-lawyers. Again, Orion does not say why this sought-after testimony is relevant to any claim or defense in the case. However, the Court infers that the testimony is relevant to Orion's claims that Ningbo Sunny has colluded with its competitors in the marketplace with respect to pricing, trade terms, and division of the relevant markets in violation of the antitrust laws. Defendants are correct that the term "competitor" has legal implications, and Orion is correct that these witnesses refused to any questions based on a layperson's understanding of the term. As noted above, this is another area of testimony in which the witnesses could have been more forthcoming and the questioning could have sought to elicit facts and not a characterization of the facts—*e.g.* "Which other companies sell low-end telescopes besides Ningbo Sunny?"

*Third*, Orion argues that Mr. Ni improperly refused to answer any questions that he considered hypothetical, including (1) whether he would ever allow Ningbo Sunny to borrow money from Synta or Celestron, (2) whether there would be anything wrong with Ningbo Sunny entering into an agreement with Synta to divide up the market between their respective product offerings, and (3) whether it would be appropriate for Ningbo Sunny to take business advice or direction from Synta.[1] Defendants object that the problem with these questions is not merely that they involve hypotheticals, but that they sought the witness's view of whether the hypothetical

---

[1] The portion of the parties' discovery letter regarding Orion's hypothetical questions has been redacted, apparently on the ground that defendants designated the entire transcript of Mr. Ni's deposition "Highly Confidential—Attorneys' Eyes Only." However, in Mr. Chiu's declaration submitted by defendants in support of sealing (Dkt. No. 179), Mr. Chiu does not ask that this portion of his deposition transcript be sealed. Inasmuch as this discussion concerns Orion's purely hypothetical questions, the Court agrees that sealing is not warranted.

4

conduct was or was not legal. Mr. Ni certainly avoided answering these kinds of questions. But Orion does not explain why it believes the answers to these questions, asked in the form of hypotheticals, are relevant to a claim or defense in the case, particularly from this fact witness.

## III. CONCLUSION

Having considered the specific deposition testimony at issue, the Court cannot say that Ningbo Sunny's witnesses were so evasive, or that defending counsel's conduct was so improper, that further depositions of these witnesses or other sanctions are warranted here. However, the participants in these depositions did not conduct themselves particularly well, at least as reflected in the excerpts of the depositions provided to the Court. The parties and their counsel should reflect on that conduct and make some changes going forward, consistent with the discussion above. Toward that end, in all future depositions in the case, where defending counsel (for any witness) wishes to preserve an objection to the form of the question, counsel must limit his or her spoken objections to "objection as to form." If pressed by the attorney taking the deposition for an explanation of the objection, defending counsel may of course provide the explanation.

**IT IS SO ORDERED.**

Dated: November 5, 2018

VIRGINIA K. DEMARCHI
United States Magistrate Judge