UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC,<br><br>Plaintiff,<br><br>v.<br><br>NINGBO SUNNY ELECTRONIC CO., LTD., et al.,<br><br>Defendants. | Case No. 5:16-cv-06370-EJD<br><br>**ORDER DENYING MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 44 |

Presently before the Court is Defendants' Motion to Dismiss the First Amended Complaint ("FAC"). Orion brings claims under Sections 1 and 2 of the Sherman Act, Section 7 of the Clayton Act, and related California state laws. The Court previously dismissed the original complaint and granted leave to amend. Dkt. 38 ("Prior Order"). Having considered the parties' submissions and heard oral argument, the Court now denies this Motion for the reasons discussed below.

### I. Factual Allegations

Two manufacturers dominate the supply market for telescopes in the United States: Defendant Ningbo Sunny Electronic Co., Ltd. ("Ningbo") and another that entered into a settlement agreement with Orion prior to this litigation (the "Settling Manufacturer"). FAC ¶ 2. Ningbo has two subsidiaries: Sunny Optics, Inc. and Meade Instruments, Inc. ("Meade") (collectively "Defendants"). *Id.* ¶ 1. Meade was an independent manufacturer and distributor of telescopes, until Ningbo acquired it in 2013. *Id.* ¶¶ 12, 46. Before the acquisition Defendants were not involved in the distribution market. *Id.* ¶ 76. The Settling Manufacturer has wholly-owned distributor subsidiaries (the "Settling Distributors") (collectively the "Settling Parties"). *Id.* ¶ 14. Defendants and the Settling Parties are ostensible competitors and present themselves as such. *Id.* ¶¶ 32-33.

In this matter, the relevant market is the U.S. market for low to medium-end telescopes,

which are generally used by beginner to intermediate recreational astronomers. *Id*. ¶ 26. Orion, who operates in this market, selects or designs the telescopes it wishes to sell, and then it contracts with a manufacturer to build the telescopes. *Id.* ¶ 24. Orion generally purchases its telescopes on credit, so that it will remit payment to the manufacturer within 30 to 90 days of receiving the telescopes. *Id.* ¶ 28.

Orion alleges that Ningbo and the Settling Manufacturer have agreed to divide the broader manufacturing supply market so that Ningbo controls the market for low and medium-end telescopes while the Settling Manufacturer controls the market for high-end ones. *Id.* ¶¶ 1-2. The Settling Manufacturer made low to medium-end telescopes before ceding that portion of the market to Ningbo as part of the conspiracy. *Id.* ¶ 2. Ningbo now controls 75 percent of the manufacturing market for low to medium-end telescopes. *Id.* ¶ 54. Ningbo has least one manufacturing competitor in that market, JOC, but it is only a "minor" one. *Id.* ¶ 74(a). Orion alleges that this agreement has given Defendants and the Settling Manufacturer monopoly power over their respective markets for telescopes. *Id.* ¶¶ 32-34 & n.1. As part of this conspiracy, they also agreed to fix prices. *Id.* ¶ 27. Orion further alleges that Defendants and the Settling Parties conspired to block JOC from acquiring Meade. *Id.* ¶¶ 70-74. Absent this illegal conspiracy, JOC would have acquired Meade and diversified the manufacturing market. *Id.* ¶¶ 77-79.

## II. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The factual allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899–900 (9th Cir.2007). However, a court is not obliged to accept "[t]hreadbare recitals of the elements of a cause of action" or "mere conclusory statements." *Iqbal*, 556 U.S. at 678. The plaintiff must show "more than a sheer possibility that a defendant acted unlawfully." *Id*.

Case No.: 5:16-cv-06370-EJD
ORDER DENYING MOTION TO DISMISS
2

### III. Section 1 of the Sherman Act

Defendants first challenge the FAC's claim under Section 1 of the Sherman Act. They maintain that the FAC does not cure the flaws that led the Court to dismiss the original complaint. The Court did so because (1) the original complaint suggested that Defendants enjoyed monopoly power before their conspiracy with the Settling Parties, making such an agreement implausible, and (2) that even if the original complaint had alleged a plausible agreement, it did not sufficiently allege unlawful conduct. Prior Order at 12-13.

On the first point, Orion has clarified the timeline. Defendants' alleged monopoly came about because of—and after—the alleged conspiracy. Under the conspiracy, Defendants and the Settling Manufacturer divided the market between them. FAC ¶¶ 33-35. Before this agreement, the Settling Manufacturer had produced low-end model telescopes, but with the agreement, it transferred the specifications, dies, and molds used for at least some low-end telescopes to Ningbo. *Id.* ¶ 36. Now, each produces telescopes for its allocated market, and avoids competition with the other. FAC ¶¶ 43, 47, 52. Orion alleges that "[a]bsent" this conspiracy, "Ningbo Sunny would hold no monopoly power." *Id*. ¶¶ 33-36 & n.1. Thus, the alleged conspiracy is what brought about Defendants' alleged monopoly power.

Defendants argue that the Court should reject this clarification of the timeline because it contradicts the original complaint, but the Court is not persuaded. Defendants base this argument on one phrase in one paragraph of the original complaint, which they read as alleging the implausible timeline. Compl. ¶ 99. But that paragraph does not even refer to the Settling Parties, and, in the previous Order, the Court did not cite the paragraph in finding the original claim implausible. Compl. ¶ 99; Prior Order at 12. Rather, the Court dismissed the original claim because "[t]he Complaint, *in its [then] present form*, support[ed]" Defendants' argument. Prior Order at 12 (emphasis added). In clarifying the alleged timeline, Orion did not contradict the original complaint.

On the second point, the Court found that Orion had failed to adequately plead that Defendants and the Settling Parties had engaged in unlawful conduct. To cure this defect, Orion attached FINRA documents produced by Defendants showing when certain individuals became

Case No.: 5:16-cv-06370-EJD
ORDER DENYING MOTION TO DISMISS
3

aware of Defendants' plan to acquire Meade, and that Ningbo only began considering an acquisition in response to Meade and JOC's public announcement of their intention to merge. FAC Ex. 1 at 2-8, 9[1]; Mot. at 5. Specifically, Exhibit 1 and the new factual allegations indicate that JOC announced its intention to acquire Meade on May 16 or 17, 2013. FAC ¶ 74(a); Ex. 1 at 9. On May 23, 2013, Ningbo began thinking about acquiring Meade. Ex. 1 at 9-11. That same day, the President of the Settling Manufacturer, his sister, and other employees of the Settling Parties learned of Ningbo's plan to acquire Meade. FAC ¶¶ 74(a)-(c); Ex. 1 at 6, 7, 9, 11. Ningbo submitted its unsolicited bid to Meade on June 11, 2019—over two weeks later. FAC ¶¶ 74(a)-(c); Ex. 1 at 9-11.

Defendants contend that that Exhibit 1 raises no suspicion because there could be many reasons for Ningbo to share information about its intended acquisition in advance, but they only specifically address one: poaching employees from the Settling Parties to work at Meade. Mot at 6. To be sure, the FAC does allege that certain of the employees of the Settling Parties with the advance knowledge began working at Meade. FAC ¶¶ 74(g)-(i). But this argument misses the point for two reasons. First, it does not explain why the President of the Settling Manufacturer and his sister knew of the plan. It is not plausible that Ningbo sought to recruit its ostensible competitor's leadership to work for its subsidiary.

Second, Exhibit 1 reinforces the other allegations of an unlawful conspiracy. Orion alleges that Ningbo has shared certain sensitive information—such as the amount of money it invested in Meade—with the Settling Manufacturer that it would not share unless there was a conspiracy. FAC ¶ 84. The Settling Manufacturer's advance knowledge of the plan bolsters this allegation. Orion alleges that the President of the Settling Manufacturer and his family members have ownership interests in Ningbo. FAC ¶¶ 57, 83. This allegation aligns with the President of the Settling Manufacturer and his sister receiving the advance knowledge. Orion's allegations that the Settling Parties and Defendants "share[]" staff are supported by employees of the Settling Parties leaving their employment to take jobs with Meade after the acquisition. *See* FAC ¶¶ 60-67. These

---

[1] Pincites to Exhibit 1 refer to the ECF page numbers.

Case No.: 5:16-cv-06370-EJD
ORDER DENYING MOTION TO DISMISS
4

allegations, considered together, support an inference that the leadership of Ningbo and of the Settling Parties, despite being competitors, sought to prevent a competing manufacturer from expanding. FAC ¶¶ 42, 46, 74, 94. Taking the allegations in the light most favorable to the plaintiff, they imply that Defendants and the Settling Parties entered a conspiracy to unlawfully select or limit their competition. *See Helix Milling Co. v. Terminal Flour Mills Co.*, 523 F.2d 1317, 1320 (9th Cir. 1975). These allegations do *not* "just as easily suggest rational, legal business behavior." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1130 (9th Cir. 2015).

Exhibit 1 and the new allegations, when considered with other allegations, support an inference that Ningbo and the Settling Manufacturer's alleged division of the market arises from an unlawfully conspiracy, not lawful unilateral action. The advance knowledge implies that Ningbo saw no danger in informing its manufacturing competitor that it intended to acquire another factory. Coupled with the specific factual allegations that the Settling Parties and Defendants share other sensitive information related to pricing, credit, and Ningbo's manufacturing capabilities and capacity, they support the conclusion that Ningbo and the Settling Manufacturers conspired to divide the market. *Id.* ¶¶ 60-67, 82. These allegations are not merely consistent with a unlawful conspiracy to allocate the market; they plausibly suggest one. *Name.Space*, 795 F.3d at 1129; *United States v. Brown*, 936 F.2d 1042, 1045 (9th Cir. 1991).

Defendants attack each allegation separately, attempting to pick apart the FAC. However, "[i]n cases such as this, plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Russell v. Nat'l Collegiate Athletic Ass'n*, 2012 WL 1747496, at *3 (N.D. Cal. May 16, 2012) (denying motion to dismiss Sherman Act claims and quoting *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962)); *see also Church & Dwight Co. v. Mayer Labs., Inc.*, 2011 WL 1225912, at *16 (N.D. Cal. Apr. 1, 2011) (collecting cases and stating, "the Court considers the effects of [the defendant's] conduct in the aggregate, including, as appropriate, cumulative or synergistic effects."). When the allegations and Exhibit 1 are seen as points of light in a broader constellation instead of as solitary stars drifting through the aether, they plausibly

Case No.: 5:16-cv-06370-EJD
ORDER DENYING MOTION TO DISMISS
5

suggest a conspiracy to restrain trade. The Motion to Dismiss is DENIED as to Orion's claim under Section 1 of the Sherman Act.

### IV. Section 2 of the Sherman Act

In the previous order, the Court dismissed the claim based on Section 2 because Orion failed to sufficiently plead barriers to entry for potential competitors and barriers to expansion for existing competitors. Prior Order at 14-15. In their Motion, Defendants contend that the FAC failed to correct this flaw and that the FAC fails to allege the anticompetitive conduct necessary for a Section 2 claim.

The FAC contains new allegations that detail the barriers that have prevented any new manufacturers from joining the market for low to medium-end telescopes in the past 10 years. FAC ¶ 42. These allegations describe a specific intellectual property right that beginner consumers "demand," but is held by Defendants and the Settling Parties. *Id.* ¶ 40. Orion also alleges that high capital investment costs in software and the specialized physical components of telescopes turn off potential entrants. *Id.* ¶¶ 23, 38. And the relative absence of independent distributors limits or precludes any return on investment from building a new factory. *Id.* ¶ 38; 45. These allegations go beyond merely "recit[ing] the elements of a cause of action," as was the case with the cursory list of barriers alleged in the original complaint. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014); *see* Compl. ¶¶ 30-31. The FAC adequately alleges barriers to entry. Defendants maintain that Orion fails to allege any barriers to expansion by existing competitors, but they overlook Ningbo's alleged actions to prevent JOC from merging with Meade and thereby expanding its manufacturing capabilities. Ningbo's displacement of JOC was itself a barrier to expansion. *Id.* ¶¶ 46-48, 74, 94. Defendants complain that this allegation is just a repeat of an allegation of anticompetitive conduct, but that does not mean it cannot also be a barrier to expansion. *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 200 F. Supp. 3d 1012, 1021 (N.D. Cal. 2016) (finding that the defendant's alleged anticompetitive schemes prevented existing competitors from expanding). The efficacy of these barriers is illustrated by Orion's allegation that since Defendants cut off its supply of telescopes in 2016, it has been unable obtain an alternative source of supply. FAC ¶ 43. Defendants' 75

Case No.: 5:16-cv-06370-EJD
ORDER DENYING MOTION TO DISMISS

6

percent share of the supply market for low to medium-end telescopes with the alleged barriers to entry and expansion are sufficient at this stage of the litigation.

Possessing monopoly power and charging monopoly prices are, on their own, not enough to sustain a claim under Section 2. "[T]he possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive conduct." *Verizon Commcins Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). Defendants argue that Orion has not sufficiently pled anticompetitive conduct. The Court disagrees. As discussed above, Orion has adequately pled that Ningbo obtained its monopoly through an allegedly unlawful conspiracy to restrict competition and to allocate the market. "Such an overlap between § 1 and § 2 claims is not unusual." *Church & Dwight Co.*, 2011 WL 1225912, at *7.

The Motion to dismiss is denied as to the Section 2 claim.

### V. Clayton Act Section 7 Standing

The Court dismissed Orion's original claim under Section 7 of the Clayton Act because the original complaint failed to plead an injury flowing from Defendants' conduct that antitrust laws are intended to prevent. Specifically, the Court reasoned that Defendants' acquisition of Meade had a neutral effect on competition, *i.e.*, that Orion had alleged harm to itself as a competitor, not harm to competition. Defendants argue that the FAC has not fixed this flaw.

The Court disagrees. As discussed above, the FAC adequately alleges that Ningbo and the Settling Parties conspired to acquire Meade, which erected a barrier to a competitor's expansion. The acquisition allowed Defendants to increase their market share, to stifle competition, and to attain monopoly power. Orion alleges that it has been injured by these harms to competition among telescope manufacturers. For example, Orion has been forced to pay supracompetitive prices to Ningbo for its supply while Meade and the Settling Distributors can purchase supply from Meade at below cost. FAC ¶¶ 78, 88. This is the sort of harm that antitrust laws seek to prevent. Accordingly, the Court DENIES the Motion as to the Clayton Act claim.

### VI. State Law Claims

The Court did not consider Orion's state law claims in the first Order because it found that Orion had not adequately plead the federal law claims. Defendants argue that Orion's state law

Case No.: 5:16-cv-06370-EJD
ORDER DENYING MOTION TO DISMISS

7

claims should be dismissed for the same reasons as the federal law claims. Because the denies the Motion as to the federal law claims, it also DENIES the Motion as to the state law claims.

### VII. Conclusion

The Court finds that new allegations and Exhibit 1 provide Orion with the fuel that it needed to achieve lift off. Defendants' Motion to Dismiss is DENIED.

Defendants are to answer the FAC within 21 days of this Order. A Trial Setting Conference is set for May 2, 2019 at 11:00 a.m. The parties shall file a Joint Trial Setting Conference Statement no later than April 22, 2019.

**IT IS SO ORDERED.**

Dated: March 29, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-06370-EJD
ORDER DENYING MOTION TO DISMISS
8