SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
LEO D. CASERIA, Cal. Bar No. 240323
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:    213.620.1780
Facsimile:    213.620.1398
E-mail:       lcaseria@sheppardmullin.com

MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
DYLAN I. BALLARD, Cal. Bar No. 253929
NADEZHDA NIKONOVA, Cal. Bar No. 293728
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:    415.434.9100
Facsimile:    415.434.3947
E-mail:       mscarborough@sheppardmullin.com
              dballard@sheppardmullin.com
              nnikonova@sheppardmullin.com

DAVID R. GARCIA, Cal. Bar No. 151349
1901 Avenue of the Stars, 16th Floor
Los Angeles, California 90067
Telephone:    310.228.3700
Facsimile:    310.228.3701
E-mail:       drgarcia@sheppardmullin.com

Attorneys for Defendants NINGBO SUNNY
ELECTRONIC CO., LTD., SUNNY OPTICS,
INC., and MEADE INSTRUMENTS CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC. d/b/a Orion Telescopes & Binoculars, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>NINGBO SUNNY ELECTRONIC CO., LTD., SUNNY OPTICS, INC., MEADE INSTRUMENTS CORP., and DOES 1-25,<br><br>Defendants. | Case No. 5:16-cv-06370-EJD-VKD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE CERTAIN TESTIMONY OF ORION'S ECONOMIC EXPERT DR. ZONA**<br><br>Date:     September 12, 2019<br>Time:     9:00 am<br>Judge:   Hon. Edward J. Davila<br>Location:   Courtroom 1 – 5th Floor |

**PUBLIC REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 12, 2019, in Courtroom 1, 5th Floor, 280 South 1st Street, San Jose, California, before the Honorable Edward J. Davila, Defendants Ningbo Sunny Electronic Co. Ltd., Sunny Optics Inc., and Meade Instruments Corp. do and hereby move the Court, under Rule 702 of the Federal Rules of Evidence to strike certain of the testimony of Dr. Zona, damages expert for Plaintiff Orion, as that testimony is unreliable, irrelevant, and not based on "sufficient facts or data" as defined by Rule 702 and the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the declaration of Nadezhda Nikonova, the complete files and records in this action, oral argument of counsel, authorities that may be presented at or before the hearing, and such other and further matters as this Court may consider.

Dated:  July 25, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    _____
       */s/ David R. Garcia*
       DAVID R. GARCIA

Attorneys for Defendants NINGBO SUNNY ELECTRONIC CO., LTD., SUNNY OPTICS, INC., and MEADE INSTRUMENTS CORP.

Defendants Ningbo Sunny Electronic Co. Ltd. ("Ningbo Sunny"), Sunny Optics Inc. ("Sunny Optics"), and Meade Instruments Corp. ("Meade") (collectively, "Defendants") respectfully move this Court to strike the testimony of Dr. Zona because his testimony is divorced from the facts of this case, and his damages estimates are based on unsupported speculation of plaintiff Orion's executive.  Instead of relying on actual facts and data from this case, Dr. Zona substitutes theoretical economic and mathematical assumptions to generate insupportably high alleged damages.  This is precisely the type of unreliable guesswork, divorced from the facts while cloaked in economic theory, that will confuse a jury, and so must be excluded as part of the court's gatekeeping role under Rule 702 and *Daubert*.

## I.    LEGAL STANDARD

In deciding whether to admit expert testimony under Federal Rule of Evidence 702, the District Court performs a gatekeeping role, to ensure that proffered testimony "is not only relevant but reliable" and is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 591, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  Fed. R. Evid. 702 requires expert testimony to be based on sufficient facts or data, the product of reliable principles and methods, and reliably apply the principles and methods to the facts of the case.  "The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted."  Fed. R. Evid. 702 Advisory Committee's Note.[1]

The purpose of the *Daubert* assessment is to exclude speculative or unreliable testimony to ensure accurate, unbiased decision-making by the trier of fact; speculative or unreliable testimony should be excluded.  *See Kumho Tire*, 526 U.S. at 157 ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing

---

[1] The burden is on the proponent of the expert testimony — here, Orion — to show, by a preponderance of the evidence, that the admissibility requirements are satisfied. *Lust By & Through Lust v. Merrell Dow Pharms.*, 89 F.3d 594, 598 (9th Cir. 1996); Fed. R. Evid. 702 Advisory Committee's Notes.

data only by the *ipse dixit* of the expert") (citing *GE v. Joiner*, 522 U.S. 136, 146 (1997)); *Volterra Semiconductor Corp. v. Primarion, Inc.*, 799 F.Supp.2d 1092, 1098-99 (N.D. Cal. 2011) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict"); *Lanphere Enters. v. Jiffy Lube Int'l, Inc.*, 138 F. App'x 20, 22 (9th Cir. 2005) (the court may exclude expert testimony if "there is simply too great an analytical gap between the data and the opinion proffered"); FRE 702 Advisory Committee Note ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it'").[2]

Expert testimony that is not sufficiently tied to the specific facts of the case should not be admitted. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Conclusions and methodology are not entirely distinct from one another. … A court may conclude that there is simply too great an analytic gap between the data and the opinion proffered"); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1055-1056 (8th Cir. 2000) ("In recent years the Supreme Court has put renewed emphasis on the importance of the 'fit' of an expert's opinion to the data or facts in the case . . . Even a theory that might meet certain *Daubert* factors, such as peer review and publication, testing, known or potential error rate, and general acceptance, should not be admitted if it does not apply to the specific facts of the case."); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) ("an expert's inference or assertion must be derived by the scientific method to be admissible"); *In re NCAA Ath. Grant-In-Aid Cap Antitrust Litig.*, 2018 WL 4241981, at *6 (N.D. Cal. Sep. 3, 2018) (excluding expert opinion that "assumes, without any economic analysis as support, [] the type and degree of the economic relationships" because "[t]he gap between Dr. Elzinga's opinions on market definition and the legal or economic support for them is too large").

---

[2] *Daubert* lists factors to consider when undertaking this gatekeeping determination, including, but not limited to: "(1) whether a theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential error rate, and (4) whether it is generally accepted in the scientific community." *Wagner v. Cnty. of Maricopa*, 673 F.3d 977, 989 (9th Cir. 2012) (citing *Daubert*, 509 U.S. at 593-94).

Similarly, "an expert may not rely merely on the self-serving projections of his client," like resting a valuation on a client's "mere say-so." *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3505003, at *3 (N.D. Cal. June 2, 2015); *see also United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 2018 WL 5013580, at *2 (N.D. Cal. Oct. 16, 2018).  Courts routinely exclude economic expert testimony under *Daubert* that "rests on faulty assumptions."  *See Clear-View*, 2015 WL 3505003, at *2-3; *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) ("proffered expert testimony should be excluded if it is speculative or conjectural . . . admission of expert testimony based on speculative assumptions is an abuse of discretion"); *Scentsational Tech., LLC v. Pepsi, Inc.*, 2018 WL 1889763, *16 (S.D.N.Y. April 18, 2018) (excluding expert opinion that assumes likelihood of business success "without taking into account" the company's "business," "past performance," "the market as a whole," expected costs, "historical performance," and "any risk").

## II.    ARGUMENT

Most of Dr. Zona's expert opinions are so far removed from actual the facts of this case that they must be excluded.  In attempting to estimate the highest possible damages for his client, Dr. Zona continuously makes unsupported assumptions, uses theoretical models that do not rely on actual facts or data from this case, and relies on the self-serving projections of his client — fatal errors that render his expert opinions speculative and inadmissible.

### A.    DR. ZONA'S ECONOMIC MODELS ARE TOO THEORETICAL AND TOO FAR REMOVED FROM THE SPECIFIC FACTS OF THIS CASE TO BE ADMISSIBLE

Dr. Zona relies on two theoretical economic models, rather than actual data, to estimate Defendants' alleged overcharges.  The portions of Dr. Zona's models described below should be stricken because they do not rely on sufficient facts and because they are not tied to the facts of this specific case.  *See Concord Boat*, 207 F.3d at 1056 ("Even a theory that might meet certain *Daubert* factors, such as peer review and publication, testing, known or potential error rate, and general acceptance, should not be admitted if it does not apply to the ***specific facts of the case***") (emphasis added)).

Dr. Zona's "empirical" model (Zona Report at ¶¶ 82-105)[3] fails to calculate actual overcharges that his client Orion allegedly suffered on telescopes it purchased from Defendants during the alleged relevant period.  Instead, Dr. Zona averages overcharges from *other* cartel cases (that he gets from an academic article) that have nothing to do with telescopes, and applies the average overcharge to *this* case.  *Id*. at ¶¶ 97-102.  His only two criteria in choosing which other cartel overcharges to average are ███████████████████████████████████████████ – that is Dr. Zona's only connection to this case.  *Id*. (██████████████████████████████████████ ████); Zona Dep. Tr. at 159:3-19 ("██████████████████████████████████ ██████").[4]  Again, ***not a single overcharge that Dr. Zona averages involves a telescope product or the defendants in this case***.  Zona Dep. Tr. at 158:15-23 ("█████████████████ ████████████████████████████████████████████████ ████████████████████████████").

This "analysis" is so far removed from the facts of this case that it cannot be admissible under Rule 702 and *Daubert*.  This is not a "battle of the experts" issue that goes to weight; this is a threshold issue of whether an economic expert can substitute overcharges from *unrelated cases* to estimate an overcharge in *this* case.  Dr. Zona should be precluded from presenting this overcharge to a jury.  *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (*Daubert* is intended to "ensure that the courtroom door remains closed to junk science").

Dr. Zona's alternative "structural" model fares no better because it relies on "███ ████████████████████████████████████████████████."  Zona Expert Report at ¶¶ 106, 118.  A "structural model is only as reliable as its component parts." *Laumann v. NHL*, 117 F. Supp. 3d 299, 316 (S.D.N.Y. 2015).  Rather than deriving the amount defendants actually overcharged Orion, Dr. Zona substitutes theory and a mathematical

---

[3] Dr. Zona's Expert Report is attached as **Exhibit A** to the Declaration of Nadezhda Nikonova ("Nikonova Decl.").

[4] Excerpts from Dr. Zona's Deposition Transcript cited herein are attached as **Exhibit B** to the Nikonova Decl.

equation to calculate what Orion's theoretical profit would have been if the telescope market went from being an alleged monopoly (a theoretical market with a single firm) to a duopoly (a theoretical market with two firms).  Zona Expert Report at ¶¶ 106-118.  To derive ████████████, Dr. Zona does not use: ████████████████████████████████████████████ ██████.  This theoretical model is too far removed from actual facts and data in this case to be presented to a jury.  *See Laumann v. NHL*, 117 F. Supp. 3d at 315-316 (excluding an expert's structural model where the "estimates do not rely on sufficient data about consumer tastes and preferences.  Instead, time and time again, Dr. Noll substitutes mathematical assumptions for actual, readily-obtainable information").

Dr. Zona describes the "structural model" in his own publication as "useful for settlement purposes, alternative dispute resolution proceedings, or evaluation of the case purposes" (rather than actual merits damage calculation) because the model "require[s] little data and can be done quickly and cheaply."  Zona Dep. Tr., Def. Ex. 357 [5] (J. Douglas Zona, *Structural Approaches to Estimating Overcharges in Price Fixing Cases*, ANTITRUST L. J., 77 No. 2 (2011)).  Dr. Zona's structural model (███████████████████) in this case uses even less actual data than the theoretical model in his article, and so cannot meet the *Daubert* standard.

Dr. Zona continues his strategy of doing analyses "quickly and cheaply" by relying entirely on an FTC "working paper" to estimate a price elasticity of demand instead of actually doing the work to analyze the consumer telescope industry and/or Orion's telescope sales to estimate the elasticity necessary for his "empirical" damages calculation.  *See* Zona Report ¶¶ 94, 96; Zona Dep. Tr., Def. Ex. 358 (FTC working paper).[6]  The FTC working paper is far removed from the specific facts of *this* litigation.  First, the paper describes an analysis conducted in 2002,

[5] Exhibit 357 to Dr. Zona's Deposition is attached as **Exhibit C** to the Nikonova Decl.

[6] The elasticity calculation is a necessary component to Dr. Zona's "empirical" damages calculation.  *See generally* Zona Expert Report at ¶¶ 82-105.  Exhibit 358 to Dr. Zona's Deposition is attached at **Exhibit D** to the Nikonova Decl.

well before the relevant period alleged in this case.  And Dr. Zona did *no* independent analysis to check if the demand remained the same between 2002 and 2017, a period of 15 years.

Second, the working paper uses eBay bidding data for *used* telescopes, *not new* telescopes sold through retailor Orion as in this case.  *Id*. at Def. Ex. 358.  The authors of the FTC working paper admit that it is "reasonable to suspect that data collected from eBay is going to give higher elasticities of demand than data collected from a specialty telescope retailer."  Def. Ex. 358 at 17.  Indeed, the authors caution us against relying on the working paper because "much more research needs to be done before an accurate conclusion can be drawn about the overall value of using data from online auctions for antitrust purposes."  Def. Ex. 358 at 18-19.

Third, the working paper estimates the elasticity of demand for only three specific telescopes sold by Meade, one of the four alleged conspirators in this case – one Schmidt-Cassegrain telescope and two Maksutov-Cassegrain telescope.  Def. Ex. 358 (the three telescopes are (1) Meade ETX 90 EC; (2) Meade ETX 125 EC; (3) Meade LX 200).  The products at issue in *this* case go well beyond these three particular telescope models, well beyond just Schmidt-Cassegrain and Maksutov-Cassegrain telescope types, and beyond manufacturer Meade.  Dr. Sasian, Orion's telescope industry expert, agrees                                  . Sasian Dep. Tr. at 208:7-209:7 [7] ("

                              "); *id*. at 200:22-208:6 (

                              ); *see also* Zona Dep. Tr. at 179:8-180:10 ("

                                                                      .").

Dr. Zona cannot make sweeping generalized conclusions about the price elasticity of all Orion products, a critical part of antitrust damage estimation, based only on three telescopes picked by the FTC.  *See, e.g.*, *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 20128134012, at *22

---

[7] Excerpts from Dr. Sasian's Deposition Transcript cited herein are attached as **Exhibit E** to the Nikonova Decl.

(C.D. Cal. Apr. 27, 2012) (excluding expert testimony that relied on a review of four internet URLs to make a "sweeping conclusion" regarding a "large body of shared memory" about a certain game); *id.* at \*22 (an expert "cannot reliably extrapolate his broad conclusion from the 'small sample' he used," because it is "too great an analytical gap between the data and the opinion offered"); *United States v. Vista Hospice Care, Inc.*, 2016 WL 3449833, at \*11-13 (N.D. Tex. June 20, 2016) (excluding expert opinion because "one may confidently draw inferences about the whole [only] from a representative sample of the whole").

Dr. Zona should not be allowed to substitute a dated FTC working paper for his own analysis because there is simply "too great of an analytical gap between the data and the opinion offered." *Joiner*, 522 U.S. at 146 ("nothing . . . requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

**B.    DR. ZONA'S REMAINING DAMAGES ARE BASED ON SELF-SERVING SPECULATION BY ORION'S CHIEF EXECUTIVE AND MUST BE EXCLUDED**

Dr. Zona makes many unfounded assumptions in creating a but-for world in which Orion would have ███████████████████████████████████████████████████████████

███████████████████████████████. Dr. Zona assumes █████████████████████

██████████████████████████████ based solely on a projection by Peter Moreo communicated to Dr. Zona during an telephone interview. Zona Report at ¶¶ 120-121, fn. 67-68 (████████

████████████████████████████████████████████████████████████████████████

████████████"). Dr. Zona also assumes that the ██████████████████████

██████████████████████████████████████████████████ based on the same interview with Peter Moreo. Zona Report p. 36, ¶¶ 125-126 (██████████████

████████████████████████████████████████████████████████████████████████

████████████████).

Dr. Zona's only basis is oral speculation by Orion's Chief Executive in a telephone interview. *See id.* at fn. 67-68 (████████████████████████████); Zona Dep. Tr. at 35:14-36:5 ("███████████████████████████████████████████████████████████

████████████████████"); *id.* at 210:11-18 ("███████████████████"). But under settled

law, Dr. Zona's blind reliance on the "self-serving" speculation of Orion executive Peter Moreo regarding projected synergies and increased profits must be excluded. *Clear-View*, 2015 WL 3505003, at *3 ("an expert may not rely merely on the self-serving projections of his client," including resting a valuation on a client's "mere say-so").

Dr. Zona's conclusory statements that Mr. Moreo's projections are reliable because they are "█████████████████████████████" (Zona Dep. Tr. at 210:11-18) are *ipse dixit* that cannot be tested or verified. *Id*. at 36:1-5 (███████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████"); *GPNE*, 2014 WL 1494247, at *4-5 (an expert's "'experience' cannot be tested or 'subjected to peer review and publication,' nor is there a 'known or potential rate of error'"); *Joiner*, 522 U.S. at 146 (courts need not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert" because "there is simply too great an analytical gap between the data and the opinion proffered"); FRE 702 Advisory Committee Note (courts should not "simply 'tak[e] the expert's word for it'").

Courts routinely preclude experts from parroting unreliable lay testimony or unsupported speculation in the guise of expert opinion. *See, e.g.*, *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 292 (3d Cir. 2012) (affirming district court's exclusion of expert's opinion relying on financial projections "without knowing the circumstances under which such projections were created or the assumptions on which they were based"); *Scentsational Tech.*, 2018 WL 1889763, at *16 (excluding damages expert opinion as "unreliable" because it rested on "speculations by ST executives," explaining that the expert's "models of profit projections ultimately rely on revenue projections made by ST executives in an email regarding what they hoped to make . . . [the expert] points to no sales data or independent market report indicating that the business venture could make sales and be profitable. Simply put, his data points are untested; analysis of lost profits must rely on more than conversations with a plaintiff's executive and internal emails regarding the hoped-for revenues."); *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 888 (E.D. Wis. 2010) ("Use of outdated or suspect data as the base of an expert's testimony are proper grounds to exclude that testimony") (citing *Marcel v. Placid Oil Co.*, 11 F.3d 563, 567–68 (5th Cir.1994)).

Accordingly, these portions of Dr. Zona's expert report and testimony should be stricken.

## C.   CONCLUSORY OPINIONS THAT DEFENDANTS' DATA ARE UNUSABLE DO NOT EXCUSE DR. ZONA FROM MEETING HIS BURDEN UNDER RULE 702

Dr. Zona asserts, with no citation or any analysis in his backup production, that the  . Zona Expert Report at ¶ 9 (" "); Zona Dep. Tr. at 65:24-66:20 (" "); *id.* at 68:22-69:3 (" ").

Dr. Zona's unsupported, clearly self-serving, assertion is *ipse dixit* because he provided no actual work to support his conclusion.  FRE 702 Adv. Comm. Note ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it'"); *Ellis*, 657 F.3d at 982 ("an expert's inference or assertion must be derived by the scientific method to be admissible"); *GPNE*, 2014 WL 1494247, at *4 (expert analysis cannot be a "black box into which data is fed at one end and from which an answer emerges at the other"—an expert must present a testable methodology); *Joiner*, 522 U.S. at 146 (courts need not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert" because "there is simply too great an analytical gap between the data and the opinion proffered").

Instead of doing the hard work of analyzing actual documents and data produced by the defendants in this case, Dr. Zona estimates Defendants' damages based on Orion's data, Orion's self-serving projections, and unsupported and faulty assumptions in the form of theoretical models that are inapplicable to the case at hand.

## III.   CONCLUSION

For the foregoing reasons, the Court should grant defendants' Motion and strike portions of the expert report of Dr. Zona, and preclude him from offering such opinions or testimony in this case.

Dated:  July 25, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By        */s/ David R. Garcia*

DAVID R. GARCIA

Attorneys for Defendants NINGBO SUNNY
ELECTRONIC CO., LTD., SUNNY OPTICS, INC.,
and MEADE INSTRUMENTS CORP.


### FILER'S ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I, Leo D. Caseria, attest that the signatory of this document, and on whose behalf the filing is submitted, concurs with the filing's content and has authorized the filing.

July 25, 2019                                    /s/ Leo D. Caseria

                                                 Leo D. Caseria

SMRH:4838-6111-1965.2

Case No. 5:16-cv-06370-EJD-VKD

DEFENDANTS' MOTION TO STRIKE EXPERT TESTIMONY OF DR. ZONA