SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
LEO D. CASERIA, Cal. Bar No. 240323
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:    213.620.1780
Facsimile:    213.620.1398
E-mail:        lcaseria@sheppardmullin.com

MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
DYLAN I. BALLARD, Cal. Bar No. 253929
NADEZHDA NIKONOVA, Cal. Bar No. 293728
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:    415.434.9100
Facsimile:    415.434.3947
E-mail:        mscarborough@sheppardmullin.com
               dballard@sheppardmullin.com
               nnikonova@sheppardmullin.com

DAVID R. GARCIA, Cal. Bar No. 151349
1901 Avenue of the Stars, 16th Floor
Los Angeles, California 90067
Telephone:    310.228.3700
Facsimile:    310.228.3701
E-mail:        drgarcia@sheppardmullin.com

Attorneys for Defendants NINGBO SUNNY
ELECTRONIC CO., LTD., SUNNY OPTICS,
INC., and MEADE INSTRUMENTS CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC. d/b/a Orion Telescopes & Binoculars, a California corporation,<br><br>              Plaintiff,<br><br>        v.<br><br>NINGBO SUNNY ELECTRONIC CO., LTD., SUNNY OPTICS, INC., MEADE INSTRUMENTS CORP., and DOES 1-25,<br><br>              Defendants. | Case No. 5:16-cv-06370-EJD-VKD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE THE TESTIMONY OF ORION'S TELESCOPE TECHNOLOGY EXPERT DR. SASIAN**<br><br>Date:      September 12, 2019<br>Time:     9:00 am<br>Judge:   Hon. Edward J. Davila<br>Location:  Courtroom 1 – 5th Floor |

**PUBLIC REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Case No. 5:16-cv-06370-EJD-VKD

SMRH:4824-5824-5277.3                    DEFENDANTS' MOTION TO STRIKE EXPERT TESTIMONY OF DR. SASIAN

# TABLE OF CONTENTS

**Page**

I.    LEGAL STANDARD .................................................................................................1

II.   ANALYSIS ...............................................................................................................4

    A.    DR. SASIAN PARROTS CONCLUSORY STATEMENTS MADE BY THE PLAINTIFF AND HIS SOLE CONCLUSION IS AN UNSUPPORTED ASSERTION FOR WHICH HE CITES NO PROOF ..................5

    B.    DR. SASIAN'S "METHODOLOGY" IS NOT REPLICABLE OR SUPPORTED ........................................................................................................8

    C.    DR. SASIAN IS NOT QUALIFIED TO TESTIFY TO DEFENDANTS' MANUFACTURING CAPABILITIES, AND DID NOTHING TO BECOME QUALIFIED ..........................................................................................9

    D.    DR. SASIAN'S TESTIMONY USURPS THE ROLE OF THE JURY ..................11

III.  CONCLUSION .......................................................................................................12

SMRH:4824-5824-5277.3    DEFENDANTS' MOTION TO STRIKE EXPERT TESTIMONY OF DR. SASIAN

**TABLE OF AUTHORITIES**

**Page(s)**

Federal Cases

*640 Octavia, LLC v. Pieper*
    2019 U.S. Dist. LEXIS 41903 (N.D. Cal. Mar. 14, 2019) ........................................................3

*Amorgianos v. Nat'l R.R. Passenger Corp.*
    303 F.3d 256 (2d Cir. 2002) ........................................................................................................3

*Cano v. Cont'l Airlines, Inc.*
    193 Fed. Appx. 664 (9th Cir. 2006) ............................................................................................2

*Clear-View Techs., Inc. v. Rasnick*
    2015 WL 3505003 (N.D. Cal. June 2, 2015) ..............................................................................3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
    509 U.S. 579 (1993) ............................................................................................................ passim

*Domingo ex rel. Domingo v. T.K.*
    289 F.3d 600 (9th Cir. 2002).......................................................................................................4

*Ellis v. Costco Wholesale Corp.*
    657 F.3d 970 (9th Cir. 2011)........................................................................................................3

*In re Fosamax Products Liability Litig.*
    645 F. Supp. 2d 164 (S.D.N.Y. 2009).........................................................................................3

*GE v. Joiner*
    522 U.S. 136 (1997) .....................................................................................................................2

*GPNE Corp. v. Apple, Inc.*
    2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) .............................................................2, 3, 9, 11

*In re Intel Corp. Microprocessor Antitrust Litig.*
    2010 WL 8591815 (D. Del. July 28, 2010)..................................................................................9

*Kumho Tire Co. v. Carmichael*
    526 U.S. 137 (1999) .....................................................................................................................1

*Lanphere Enters. v. Jiffy Lube Int'l, Inc.*
    138 F. App'x 20 (9th Cir. 2005)...................................................................................................2

*Lust By & Through Lust v. Merrell Dow Pharms.*
    89 F.3d 594 (9th Cir. 1996)..........................................................................................................1

*Mullins v. Premier Nutrition Corp.*
    178 F. Supp. 3d 867 (N.D. Cal. 2016) .........................................................................................3

SMRH:4824-5824-5277.3            DEFENDANTS' MOTION TO STRIKE EXPERT TESTIMONY OF DR. SASIAN

*Perez v. State Farm Mut. Auto. Ins. Co.*
  2012 WL 3116355 (N.D. Cal. July 31, 2012) ....................................................................3, 6, 7

*Scentsational Technologies, LLC v. Pepsi, Inc.*
  2018 WL 1889763 (S.D.N.Y. April 18, 2018)...........................................................2, 7, 10, 11

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*
  2018 U.S. Dist. LEXIS 178076 (N.D. Cal. Oct. 16, 2018) .........................................................3

*United States v. Cerna*
  2010WL 11627594 (N.D. Cal. Dec. 17, 2010) ...........................................................................9

*United States v. Mejia*
  545 F.3d 179 (2d. Cir. 2008).....................................................................................................3

*United States v. Sayre*
  434 F. App'x 622 (9th Cir. 2011)...............................................................................................2

*Volterra Semiconductor Corp. v. Primarion, Inc.*
  799 F.Supp.2d 1092 (N.D. Cal. 2011) .......................................................................................2

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Federal Rules of Evidence
  104(a) .........................................................................................................................................1
  702 .................................................................................................................................... *passim*

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 12, 2019, in Courtroom 1, 5th Floor, 280 South 1st Street, San Jose, California, before the Honorable Edward J. Davila, Defendants Ningbo Sunny Electronic Co. Ltd., Sunny Optics Inc., and Meade Instruments Corp. do and hereby move the Court, under Rules 104(a) and 702 of the Federal Rules of Evidence, to strike the report and testimony of Dr. Jose Sasian, telescope technology expert for Plaintiff Orion, and preclude him from testifying at trial, as Dr. Sasian is not qualified, and his testimony is unreliable, irrelevant, and not based on "sufficient facts or data" as defined by those rules and the interpretation of those rules as specified by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the declaration of Nadezhda Nikonova, the complete files and records in this action, oral argument of counsel, authorities that may be presented at or before the hearing, and such other and further matters as this Court may consider.

Dated:  July 25, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     <u>          */s/ David R. Garcia*          </u>
DAVID R. GARCIA

Attorneys for Defendants NINGBO SUNNY ELECTRONIC CO., LTD., SUNNY OPTICS, INC., and MEADE INSTRUMENTS CORP.

Defendants Ningbo Sunny Electronic Co. Ltd. ("Ningbo Sunny"), Sunny Optics Inc. ("Sunny Optics"), and Meade Instruments Corp. ("Meade") (collectively, "Defendants") respectfully move this Court to strike the testimony of Dr. Sasian because he is unqualified to testify about Defendants' telescope manufacturing capability, and his testimony is unreliable, irrelevant, and not based on sufficient facts or data. Dr. Sasian's purported expert opinion is that Defendants and alleged co-conspirator Synta theoretically could have the technological capability to make *some* of each other's telescopes. Dr. Sasian's testimony is not relevant or helpful to a jury because counsel for plaintiff wrote ███████ of his report, and he admits that he █████ ████████████████████████████████████████████████████████ ██████ to support his ultimate conclusion. Dr. Sasian's "methodology" is therefore not replicable, and is tantamount to accepting facts from Plaintiff or its counsel as true and then asserting them as his expert opinion. Dr. Sasian has no expertise or knowledge regarding the financial and business considerations relating to telescope manufacturing and does not factor such considerations into his purported opinions. He is also not qualified to offer any opinions regarding the purely technical aspects of telescope manufacturing as ███████████████████ ████████████████████████████████████. Dr. Sasian's entire testimony must be excluded because it does not come close to meeting the requirements of Rule 702 and *Daubert*.

## I.    LEGAL STANDARD

In deciding whether to admit expert testimony under Federal Rule of Evidence 702, the district court performs a gatekeeping role, ensuring that proffered testimony "is not only relevant but reliable" and that it "is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 591, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 152 (1999).[1]

---

[1] The burden is on the proponent of the expert testimony — here, Orion — to show that the admissibility requirements are satisfied by a preponderance of the evidence. *Lust By & Through Lust v. Merrell Dow Pharms.*, 89 F.3d 594, 598 (9th Cir. 1996); Fed. R. Evid. 702 Advisory Committee's Notes.

A qualified expert may only testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

Courts consider the following non-exhaustive factors to determine if an expert's proposed methodology is scientifically valid: (1) whether the theory or methodology can be (and has been) tested, (2) whether it has been subjected to peer review and publication, (3) whether it has a known or potential rate of error, and (4) whether it is a "generally accepted" methodology or theory in the scientific community.  *Daubert*, 509 U.S. at 593-94.

The court need not admit an expert opinion that is connected to the underlying data "only by the *ipse dixit* of the expert."  *GE v. Joiner*, 522 U.S. 136, 146 (1997); *see also* FRE 702 Adv. Comm. Note ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it'").  The court "may exclude such testimony if it determines that there is simply too great an analytical gap between the data and the opinion proffered."  *See, e.g., Lanphere Enters. v. Jiffy Lube Int'l, Inc.*, 138 F. App'x 20, 22 (9th Cir. 2005); *see also United States v. Sayre*, 434 F. App'x 622, 624 (9th Cir. 2011); *Cano v. Cont'l Airlines, Inc.*, 193 Fed. Appx. 664, 665-666 (9th Cir. 2006) (affirming district court's exclusion of expert witness); *Volterra Semiconductor Corp. v. Primarion, Inc.*, 799 F.Supp.2d 1092, 1098-99 (N.D. Cal. 2011).

"[C]onclusory opinions — often referred to by courts as *ipse dixit* — fail to provide a methodology that would allow a court to assess reliability.  *Ipse dixit* opinions are therefore excludable on that basis."  *Scentsational Technologies, LLC v. Pepsi, Inc.*, 2018 WL 1889763, at *3 (S.D.N.Y. April 18, 2018) (collecting authorities).[2]  "Experts must follow some discernable methodology, and may not be a ***black box*** into which data is fed at one end and from which an answer emerges at the other."  *GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *4 (N.D. Cal. Apr. 16, 2014) (emphasis added).  Courts in this district routinely exclude expert opinion evidence

---

[2] *Ipse dixit* – "an assertion made but not proved."  MERRIAM-WEBSTER DICTIONARY.

that is connected to existing data only by the expert's conclusory opinion. *See*, *e.g.*, *640 Octavia, LLC v. Pieper*, 2019 U.S. Dist. LEXIS 41903, at \*6-7 (N.D. Cal. Mar. 14, 2019); *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 900-901 (N.D. Cal. 2016); *GPNE*, 2014 WL 1494247, at \*4 (collecting authorities).

Courts find it "particularly troubling" when an expert relies on documents "sent to him by Plaintiffs' counsel" without making an "effort to seek out sources that would support a contrary view" because "the sources consulted may have been systematically skewed towards demonstrating" the expert's ultimate conclusion. *Perez v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 3116355, at \*5-6 (N.D. Cal. July 31, 2012). The "lack of an articulated methodology for choosing which sources to rely upon" renders the expert's analysis "far too subjective to constitute a workable methodology. . . that this is precisely the type of *ipse dixit* that is not permissible under *Daubert*." *Id*. Furthermore, "an expert may not rely merely on the self-serving projections of his client," including resting a valuation on a client's "mere say-so." *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3505003, at \*3 (N.D. Cal. June 2, 2015); *accord United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 2018 U.S. Dist. LEXIS 178076, at \*6 (N.D. Cal. Oct. 16, 2018).

Expert testimony similarly cannot "simply address lay matters which the jury is capable of understanding" on its own. *In re Fosamax Products Liability Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) ("the testimony is not helpful if it usurp[s] . . . the role of the jury in applying law to the facts before it"); *see also United States v. Mejia*, 545 F.3d 179, 194 (2d. Cir. 2008) ("Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own").

"Ultimately, the purpose of the [*Daubert*] assessment is to exclude speculative or unreliable testimony to ensure accurate, unbiased decision-making by the trier of fact." *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 2018 WL 5013580, at \*1 (N.D. Cal. Oct. 16, 2018). The *Daubert* inquiry is intended to "ensure that the courtroom door remains closed to ***junk science***," and it is thus "critical that an expert's analysis be reliable at every step." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (emphasis added); *accord Ellis v.*

-3-

*Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) ("Under *Daubert*, the trial court **must** act as a gatekeeper to exclude **junk science** that does not meet [Rule] 702's reliability standards … [*Daubert*] requires a court to admit or exclude evidence based on its scientific reliability and relevance. Thus, an expert's inference or assertion **must be derived by the scientific method** to be admissible.") (emphasis added).  "The reasoning between steps in a theory must be based on objective, verifiable evidence and scientific methodology of the kind traditionally used by experts in the field."  *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002).

## II.    ANALYSIS

Plaintiff Orion retained Dr. Sasian to analyze one issue: ███████████████ ████████████████████████████ Deposition Transcript of Jose Sasian, Ph.D., May 14, 2019 ("Sasian Dep. Tr.")[3] at 79:25-80:4 ███████████ *see also id.* at 80:24-81:1 ████████████████████████████ Dr. Sasian admitted that his opinion only goes to ████████████████████████████ (*id.* at 82:1-9) from a ██████████████████ (*id.* at 81:8-11), ***not*** whether ████████████████████ ████████████████████████████████ ████████████ *Id.* at 82:18-83:19; 84:5-15.  That is because Dr. Sasian has no expertise in financial matters or commercialization matters.  *Id*.  As explained below, he has never ████ ██████████████████████████

Dr. Sasian concludes that Defendants "are capable of manufacturing similar consumer telescopes" by reviewing printouts of telescope products from Orion's website that Orion's counsel selected.  Dr. Sasian admitted that ██████████████████████ ████████████████████████ *Id*. at 96:3-97:1.  In other words, his entire expert testimony is a "black box" where products selected by counsel and Orion's CEO (Peter Moreo) enter on one end, and his answer emerges at the other, without a replicable or verifiable methodology.  This is precisely the type of "junk science" that should be excluded.

---

[3] Excerpts from Dr. Sasian's Deposition Transcript cited herein are attached as **Exhibit A** to the Declaration of Nadezhda Nikonova.

### A.   DR. SASIAN PARROTS CONCLUSORY STATEMENTS MADE BY THE PLAINTIFF AND HIS SOLE CONCLUSION IS AN UNSUPPORTED ASSERTION FOR WHICH HE CITES NO PROOF

Orion's counsel wrote ▮ of Dr. Sasian's report.  Sasian Dep. Tr. at 48:23-49:4.  The basis of Dr. Sasian's report and expert opinions is ▮▮▮▮▮▮▮▮▮▮▮ *See id.* at 46:3-10 ▮▮▮▮▮▮▮▮ *id.* at 53:2-9 ▮▮▮▮▮▮▮▮▮▮ In offering an opinion on Defendants' manufacturing capabilities, Dr. Sasian ▮▮▮▮▮▮▮



SMRH:4824-5824-5277.3

Case No. 5:16-cv-06370-EJD-VKD
DEFENDANTS' MOTION TO STRIKE EXPERT TESTIMONY OF DR. SASIAN



Sasian Dep. Tr. at 54:11-23; 55:3-11; 55:23-56: 8; 57:19-58:2; 59:2-21; 66:9-16; *see also* *id.* at 224:6-23

Dr. Sasian's reliance on documents "sent to him by Plaintiffs' counsel" is "particularly troubling" because he made no "effort to seek out sources that would support a contrary view" and, as a result, the "sources" that Dr. Sasian consulted "may have been systematically skewed towards demonstrating" his ultimate conclusion. *See Perez*, 2012 WL 3116355, at *5-6. Dr. Sasian's "lack of an articulated methodology for choosing which sources to rely upon" renders his analysis "far too subjective to constitute a workable methodology." *Id.* Dr. Sasian's opinion is not based on "sufficient facts or data" as required by Rule 702, and must be excluded.

SMRH:4824-5824-5277.3

Case No. 5:16-cv-06370-EJD-VKD
DEFENDANTS' MOTION TO STRIKE EXPERT TESTIMONY OF DR. SASIAN

When asked how Dr. Sasian knows that his opinion is accurate if he only looked at documents that support his opinion and did not ask to see documents that might contradict his opinion, he stated: ███████████████████████ Sasian Dep. Tr. at 58:3-9. That is "precisely the type of *ipse dixit* that is not permissible under *Daubert*."  *See Perez*, 2012 WL 3116355, at *5-6; *see also* FRE 702 Advisory Committee's Note ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it'").

Moreover, **counsel wrote most of Dr. Sasian's report**.  Dr. Sasian ███████ ███████████████████████████ Sasian Dep. Tr. at 48:23-49:4. Counsel seems to have written ██████████████████████ ████████████████████████████████ ███████████████████████ Sasian Dep. Tr. at 67:9-11, 68:3-20, 69:4-6, 70:1-22, 73:6-8 ████████████████ █████████████████████

Dr. Sasian admits that ███████████████████████ ████████████████████ *Id*. at 69:14-19, 77:10-78:18 ████████████████████ ███████ And Dr. Sasian admits that he did not ████████████████ █████████████████████ *Id*. at 79:3-11.  Dr. Sasian also admitted that he did not know ████████████████████████ ████ *Id.* at 169:19-23.

As Dr. Sasian explained, ████████████████████ *Id.* at 176:14-17. "It is inappropriate for experts to become a vehicle for a factual or speculative narrative that simply accumulates and puts together pieces of a story.  Acting simply as a narrator of the facts does not convey opinions that are based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology. "  *Scentsational Technologies, LLC v. Pepsi, Inc.*, 2018 WL 1889763, at *8 (internal cites and quotes omitted).  Accordingly, Dr. Sasian's report should be stricken.

**B.      DR. SASIAN'S "METHODOLOGY" IS NOT REPLICABLE OR SUPPORTED**

Dr. Sasian's "methodology" consists entirely of reviewing certain products listed on Orion's consumer-facing website that were selected by Orion's counsel and/or Mr. Moreo. *See* Sasian Dep. Tr. at 139:2-18 ██████████████████████████ ██████████████████████████████████████████████████████ Such a methodology is not based on "reliable principles and methods," as required by Rule 702.

For example, Dr. Sasian's conclusions about two types of consumer telescopes are based on his review of specifications of "the StarBlast 4.5 EQ" telescope and the "AstroView 90-millimeter EQ" telescope, which "████████████████████████████████. *Id*. at 129:25-130:20.  Dr. Sasian exercised no "independent expertise" in selecting these supposedly representative telescope products.  *Id*. ████████████████████ █████████████████████████ ████) (objection omitted); *id*. at 133:9-17 █████████████████████ █████); *id*. at 137:16-18 ██████████████████████████████████  *id*. at 137:22-138:23 and 146:2-147:9 (██████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████).

By looking at Orion's website printouts for these products, Dr. Sasian compares only the "diameter and mount" of the telescopes; no other components.  *Id.* at 140:19-141:2.  He concludes, without further explanation or any citation, ███████████████████████ █████████████████████████████████████████████  *Id*. at 124:6-9; 128:4-129:21.  Dr. Sasian's opinion is filtered through ██████████████████ ████████████████████████████████ without *any* citation to such opinions or industry publications.  *Id*. at 143:15-144:4.

Dr. Sasian's methodology of reading "spec" sheets and forming his opinion exclusively based on his limited experience cannot meet the *Daubert* standard because this methodology cannot be tested, has not been subjected to peer review and publication, has an unknown error rate,

-8-                                                 Case No. 5:16-cv-06370-EJD-VKD

and is not a generally accepted methodology in the scientific community. *See* 509 U.S. at 593-94. An expert's "'experience' cannot be tested or 'subjected to peer review and publication,' nor is there a 'known or potential rate of error.'" *GPNE*, 2014 WL 1494247, at *4 (holding that expert analysis cannot be a "black box into which data is fed at one end and from which an answer emerges at the other"—an expert must present a testable methodology).

Dr. Sasian's methodology cannot be verified or replicated, and his conclusion is pure *ipse dixit* that is not permissible under *Daubert*. *See id*.; *United States v. Cerna*, 2010WL 11627594, at *6 (N.D. Cal. Dec. 17, 2010) ("Even where the reliability of expert testimony is largely dependent on the expert's experience, the witness must still explain how the experience leads to the conclusions reached, why the experience provides a sufficient basis for the opinions, and how the experience is reliably applied to the facts"); *In re Intel Corp. Microprocessor Antitrust Litig.*, 2010 WL 8591815, at *25-26 (D. Del. July 28, 2010) (Special Master excluding expert because "this is precisely the type of 'analysis' that should be excluded because this method has not been subject to peer review, the potential rate of error is unknown, no standards exist to control the technique's operation, and there is no indication that the method is generally accepted").

### C. DR. SASIAN IS NOT QUALIFIED TO TESTIFY TO DEFENDANTS' MANUFACTURING CAPABILITIES, AND DID NOTHING TO BECOME QUALIFIED

Dr. Sasian is not qualified to testify as an expert on Defendants' telescope manufacturing or telescope technology. He has never visited or seen the Defendants' manufacturing plants. Sasian Dep. Tr. at 24:19-22, 25:8-13, 25:21-24, 26:1-27:3 (                                                      ). His publications do not relate directly to consumer telescopes, the product at issue in this case. *Id*. at 34:11-16. His education and degrees are in "optical sciences, optical engineering," not telescope technology. *Id*. at 17:2-19. Indeed, Dr. Sasian has never been qualified as an expert in "telescope technology," and none of Dr. Sasian's previous expert testimony related to telescope technology. *Id*. at 38:23-25                                                      *id*. at 39:4-43:2 (

SMRH:4824-5824-5277.3 DEFENDANTS' MOTION TO STRIKE EXPERT TESTIMONY OF DR. SASIAN

████████████████████████████████████████████████████████████████
████████████████████).

Similarly, Dr. Sasian has no expertise in large-scale telescope product manufacturing in the United States (the relevant geographic market in this case) or any foreign country (like China, where most of the telescopes at issue in this case are manufactured).  Except for an understanding of optics and lenses, Dr. Sasian has little *verifiable* expertise in the many other components of telescopes, or what is necessary for defendants to manufacture those products.  Dr. Sasian's experience on ██████████████████████████████████████████ is inapposite because those telescopes were not consumer telescopes.  *Id*. at 115:19-116:4.

Dr. Sasian has not attempted to gain the requisite knowledge.  As he admits, expertise in optics/lenses alone is not equivalent to being an expert on all seven components of a consumer telescope (optics, tube, mount, software, focuser, viewfinder, accessories (Sasian Report, p. 7, ¶ 20)[4]: ████████████████████████████████
████████████████████████████████ Sasian Dep. Tr. at 29:2-24.  For example, he is least experienced with ████████████████.  *Id*. at 29:25-30:6.  As explained above, Dr. Sasian did not look at any documents produced by defendants, and did not use his independent judgment to choose the products he analyzed to reach his conclusion.  *See id*. at 61:1-9, 64:1-2, 66:9-16.  Instead, the few documents and depositions Dr. Sasian reviewed were cherry-picked by ████████████████.  *Id*. at 224:6-23 ████████████
████████████████████████.

The inquiry into a proposed expert's qualifications is a threshold question that seeks to determine whether the proposed expert is, in fact, an expert at all in the area in which he or she intends to testify.  *See Daubert*, 509 U.S. at 593 n.10.  Whether a proposed expert has the requisite qualifications depends on his or her educational background, training, and experience in the field(s) relevant to the opinions he or she seeks to express.  *Id*.  Like in the recent *Scentsational* case, Dr. Sasian "has no demonstrated expertise in a number of the areas in which [he] offers

---

[4] Dr. Sasian's Expert Report is attached as **Exhibit B** to the Declaration of Nadezhda Nikonova.

SMRH:4824-5824-5277.3   DEFENDANTS' MOTION TO STRIKE EXPERT TESTIMONY OF DR. SASIAN

opinions. . . . [he] does not have demonstrated expertise in large-scale product commercialization in the United States or any foreign country. Nor does [he] appear to have expertise in various components that undergird all aspects of what is broadly encompassed within the concept of successful commercialization. . . in any case, experience on one project—[a non-consumer telescope for Dr. Sasian]—certainly does not qualify [him] as an expert witness in the area of commercialization." 2018 WL 1889763, at *6. Dr. Sasian's professional experience in optics "does not constitute 'sufficient facts or data,' or 'reliable principles and methods.'" *GPNE*, 2014 WL 1494247, at *4. While his naked assertion of his own purported expertise is *ipse dixit*.

### D.    DR. SASIAN'S TESTIMONY USURPS THE ROLE OF THE JURY

Expert testimony must assist the trier of fact in order to be admissible. *Daubert*, 509 U.S. at 591. Here, the jury can read the lens diameter and mount type on a spec sheet, hear from fact witnesses about actual manufacturing capability, and see actual purchase orders and sales invoices to determine to what extent defendants could have manufactured certain telescopes.

For example, one of Dr. Sasian's "key" opinions is that Suzhou Synta and Ningbo Sunny are both able to manufacture the popular StarBlast 4.5 EQ telescope but refused to do so at the same time in competition with one another, as described in the section above. *See also* Sasian Dep. Tr. at 220:5-17; Sasian Report, p. 14, ¶ 47. The entirety of his analysis consists of ▮▮▮▮ ▮▮▮▮▮▮▮▮ from Orion's website. Sasian Dep. Tr. at 137:8-139:18. After Dr. Sasian was shown *actual* purchase orders and invoices in his deposition and asked to compare product identification numbers and dates, Dr. Sasian confirmed that the ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.* at 157:7-170:5. ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ *Id.* But no specialized knowledge is needed to understand that two companies selling the exact same product at the exact same time could both make that product. A jury or judge looking at this fact could make their own inference. *See id.* at 134:8-135:25.

SMRH:4824-5824-5277.3

## III.    CONCLUSION

For the foregoing reasons, the Court should grant defendants' Motion and strike Dr. Sasian's expert report and preclude him from offering any opinions or testimony in this case. Dr. Sasian is not qualified and his irrelevant testimony is the product of "junk science" because it is not based on "scientific knowledge" and not "derived by the scientific method," as required under Rule 702 and *Daubert*, 509 U.S. at 590, 593, 597.

Dated:  July 25, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    _____
    */s/ David R. Garcia*
    DAVID R. GARCIA

Attorneys for Defendants NINGBO SUNNY
ELECTRONIC CO., LTD., SUNNY OPTICS, INC.,
and MEADE INSTRUMENTS CORP.

### FILER'S ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I, Leo D. Caseria, attest that the signatory of this document, and on whose behalf the filing is submitted, concurs with the filing's content and has authorized the filing.

July 25, 2019                                    /s/ Leo D. Caseria
                                                  Leo D. Caseria