J. Noah Hagey, Esq. (SBN: 262331)
    hagey@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
    borden@braunhagey.com
Jeffrey M. Theodore, Esq. (SBN: 324823)
    theodore@braunhagey.com
Ronald J. Fisher, Esq. (SBN: 298660)
    fisher@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone:  (415) 599-0210
Facsimile:  (415) 276-1808

ATTORNEYS FOR PLAINTIFF
OPTRONIC TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC., d/b/a Orion Telescopes & Binoculars ®, a California corporation,<br><br>            Plaintiff,<br><br>        v.<br><br>NINGBO SUNNY ELECTRONIC CO., LTD., SUNNY OPTICS, INC., MEADE INSTRUMENTS CORP., and DOES 1 - 25,<br><br>            Defendants. | Case No: 5:16-cv-06370-EJD-VKD<br><br>**PLAINTIFF OPTRONIC TECHNOLOGIES, INC.'S MOTION TO PRECLUDE TESTIMONY BY JEFFREY REDMAN**<br><br>Date: September 12, 2019<br>Time: 9:00 am<br>Judge: Hon. Edward J. Davila<br>Location: Courtroom 1 – 5th Floor |

ORION'S MOTION TO PRECLUDE TESTIMONY OF JEFFREY REDMAN

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................. 1

INTRODUCTION ............................................................................................................... 2

FACTS ................................................................................................................................. 3

ARGUMENT ...................................................................................................................... 5

I.    MR. REDMAN IS NOT QUALIFIED TO CRITIQUE DR. ZONA'S ANALYSIS......... 5

    A.    Mr. Redman Lacks the Education and Training to Qualify as an Expert on Antitrust Damages ................................................................................................. 6

        1.    Mr. Redman Is Not an Economist or Accountant...................................... 6

        2.    Contrary to His C.V., Mr. Redman Does Not Hold Any Teaching Positions................................................................................................. 9

    B.    Contrary to His C.V., Mr. Redman Has No Experience Analyzing Antitrust Damages ................................................................................................. 9

II.   MR. REDMAN'S TESTIMONY IS NOT RELIABLE OR RELEVANT ..................... 12

    A.    Mr. Redman's Analysis Is Contrary to Well-Established Antitrust Law and Economic Theory........................................................................................ 12

    B.    Mr. Redman Did Not Understand the Regression Analysis Dr. Zona Performed and Thus Could Not Validly Critique It ........................................... 14

    C.    Mr. Redman's Testimony Is Separately Unhelpful Because It Is Cumulative..... 15

III.  MR. REDMAN SHOULD NOT BE ALLOWED TO TESTIFY ABOUT DR. SASIAN'S OPINIONS.................................................................................................. 17

    A.    The Testimony Mr. Redman Intends to Give Is Not Rebuttal Testimony............ 17

    B.    Redman Lacks the Education and Training to Offer Any Rebuttal Testimony on Telescope Manufacturing ........................................................................... 19

CONCLUSION.................................................................................................................... 20

ORION'S MOTION TO PRECLUDE TESTIMONY OF JEFFREY REDMAN

**TABLE OF AUTHORITIES**

**CASES**

*Attachmate Corp. v. Health Net, Inc.*,
   Case No. C09-1161 MJP, 2010 WL 11561517 (W.D. Wash. Sept. 27, 2010)............................ 19
*Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*,
   175 F.3d 18 (1st Cir. 1999).................................................................................................. 5, 7
*Crown Cork & Seal Co., Inc. v. Credit Suisse First Boston Corp.*,
   2013 WL 978980 (S.D.N.Y. Mar. 12, 2013)............................................................................. 6
*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)........................................................................................................ 3, 4, 5
*GSI Tech., Inc. v. Cypress Semiconductor Corp.*,
   Case No. 5:11-cv-03613-EJD, 2015 WL 364796 (N.D. Cal. Jan. 27, 2015) ................................ 5
*In re Titanium Dioxide Antitrust Litig.*, Civ. Action,
   No. RDB-10-0318, 2013 WL 1855980 (D. Md. May 1, 2013)...................................................... 8
*In re Worldcom, Inc.*,
   371 B.R. 33 (Bankr. S.D.N.Y. 2007)............................................................................... passim
*Rothe Dev., Inc. v. Dep't of Defense*,
   107 F.Supp.3d 183 (D.D.C. 2015)....................................................................................... 8, 11
*Thomas J. Kline, Inc. v. Lorillard, Inc.*,
   878 F.2d 791 (4th Cir. 1989) ................................................................................................... 8
*United States ex rel. Jordan v. Northrop Grumman Corp.*,
   No. CV 95-2985 ABC (EX), 2003 WL 27366247 (C.D. Cal. Feb. 24, 2003) ............................. 16
*United States v. SKW Metals & Alloys, Inc.*,
   195 F.3d 83 (2d Cir. 1999) .................................................................................................... 10
*Virginia Vermiculite Ltd. v. W.R. Grace &Co-Conn.*,
   98 F.Supp.2d 729 (W.D. Va. 2000) .................................................................................. 11, 13
*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ............................................................................................... 17

**RULES**

F.R.C.P. 26......................................................................................................................... 17, 19
Fed. R. Evid. 702(a)................................................................................................................ 6, 8
Fed.R.Civ.Pro. 26(b)(2)(D)(ii)..................................................................................................... 19
Federal Rule of Evidence 403...................................................................................................... 15
Federal Rule of Evidence 702........................................................................................................ 5

**OTHER AUTHORITIES**

*Distinguishing Participants from Nonparticipants in a Price-Fixing Conspiracy: Liability and Damages*,
   28 Am. Bus. L.J. 33 (1990) ............................................................................................... 13, 14

ORION'S MOTION TO PRECLUDE TESTIMONY OF JEFFREY REDMAN

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 12, 2019, in Courtroom 1, 5th Floor, 280 South 1st Street, San Jose, California, before the Honorable Edward J. Davila, Plaintiff Optronic Technologies, Inc., does and hereby moves the Court to exclude the testimony of Jeffrey Dean Redman, putative expert for Defendants and preclude him from testifying at trial, as Mr. Redman is not qualified, his testimony is unreliable, irrelevant, and unnecessary, and his opinions are not proper rebuttal opinions as more fully set forth below.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the declaration of Matthew Borden, the complete files and records in this action, oral argument of counsel, authorities that may be presented at or before the hearing, and such other and further matters as this Court may consider.

Plaintiff Optronic Technologies, Inc. d/b/a Orion Telescopes & Binoculars ("Orion") respectfully submits this Motion to preclude any testimony by Jeffrey Redman.

**INTRODUCTION**

Defendants seek to offer the "expert" testimony of certified fraud examiner Jeffrey Redman ("Mr. Redman") to rebut the econometric analyses and opinions of Orion's expert economist, J. Douglas Zona, Ph.D. ("Dr. Zona"), and the technical analyses and opinions of Orion's expert on telescope manufacturing, Jose Sasian, Ph.D. ("Dr. Sasian").  While Mr. Redman claims to be an expert on a smorgasbord of topics, he is not an expert on either of the subjects about which Orion intends to offer expert testimony and is therefore unqualified to rebut either opinion.

Unlike Dr. Zona (or Defendants' other purported rebuttal expert), Mr. Redman is not an economist.  Nor is he an accountant.  His exclusive credentials are that he has an undergraduate degree in "management" and got a certification as a fraud examiner.  He is incapable of criticizing Dr. Zona's econometric analysis, which he repeatedly admitted he did not understand.  He also testified that he does not know how to run the regressions used by Dr. Zona.  He has no relevant experience calculating damages or testifying in antitrust cases, and his criticisms of Dr. Zona are not based on professionally accepted methodologies for economists.  In fact, they contravene basic principles of antitrust economics that the leading antitrust treatise, Areeda & Hovenkamp, has described as "uncontroversial" and which are generally accepted by those who – unlike Mr. Redman – actually have studied economics.  His proposed testimony will not aid the trier of fact and is a thinly-veiled effort to present Defendants' unsubstantiated arguments as authoritative expert opinion.

To rebut Dr. Zona, Defendants have also retained the Ph.D. economist Celeste Saravia, who was unwilling to offer the "economic" opinions to which Mr. Redman was willing to sign his name.  While his analysis has no foundation in economic principles or expertise, Mr. Redman's bottom-line conclusions essentially parrot those of Dr. Saravia.  Defendants are not entitled to present the same opinions to the jury twice, and Mr. Redman's testimony should be excluded as cumulative and unnecessary.  Dr. Saravia does not need a faithful echo in the form of a certified fraud examiner.

Mr. Redman is also unqualified to offer any critique of Dr. Sasian. Mr. Redman does not purport to have any specialized knowledge about lens making, telescope manufacturing, or even telescopes. He is thus incapable of rebutting any of Dr. Sasian's opinions, which are exclusively limited to telescope manufacturing.

Pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), this Court acts as a gatekeeper to keep out unreliable expert testimony. Mr. Redman is unqualified to offer any rebuttal opinion in this case, and his methodologies are unreliable. He should be precluded from testifying at trial.

**FACTS**

Pursuant to the Court's Scheduling Order (Dkt. No. 187) and Rule 26, Orion timely disclosed that it intended to offer expert testimony at trial from Dr. Zona and Dr. Sasian. (Declaration of Matthew Borden in Support of Motion to Exclude Redman ("Borden Decl.") ¶ 2.)

Orion's expert Dr. Zona is a Ph.D. economist with extensive experience in antitrust theory and application of econometric principles in antitrust cases. He has published articles on antitrust principles and has "present[ed] at conferences and meetings relating to econometrics and antitrust, including on multiple instances before the ABA Section of Antitrust Law, to the Antitrust Division of the United States Department of Justice, and to the Antitrust Law Section of the New York State Bar Association." (Borden Decl., Ex. 5 at ¶¶ 1, 2 & Appendix A.) Dr. Zona analyzed Orion's damages using sophisticated econometric techniques, which included determining that Sunny and Synta had market power, examining barriers to entry, running regression analyses, and constructing a but-for model of the market and subjecting it to various cross-checks to assess its validity. (*Id.* ¶¶ 43-131.)

Orion's expert Dr. Sasian is a tenured Professor in the field of Optical Sciences and Astronomy. (Borden Decl., Ex. 6 at ¶ 9.) He has rendered "an opinion as to whether Sunny and Synta are capable of manufacturing similar consumer telescopes." (*Id.* ¶ 4.) Dr. Sasian analyzed whether the two companies had "sufficient technical expertise, manufacturing experience and intellectual property" to manufacture similar products and determined that they did. (*Id.* ¶¶ 5, 36-68.) At no point in his report did Dr. Sasian offer any financial or business opinion as to whether it

would be *feasible or profitable* for Sunny or Synta to produce such products, nor would Dr. Sasian be qualified to offer any such testimony.

Defendants did not disclose any experts at the deadline for affirmative expert reports. Borden Decl. ¶ 2. After Orion raised this issue with the Court, Defendants represented that they intended to only offer rebuttal expert testimony that would not exceed the scope of the expert reports Orion produced. (*Id*., Ex. 9 (5/2/2019 Trial Setting Conference Transcript at 9:22-10:4.)

On May 31, 2019, Defendants disclosed two rebuttal experts: Celeste Saravia, Ph.D., and Mr. Redman. Both witnesses intend to rebut the opinions by Dr. Zona, Orion's expert economist. Both also argue that the analysis of Orion's telescope manufacturing expert Dr. Sasian does not take into account the feasibility of Sunny and Synta competing against one another – an issue on which Dr. Sasian did not opine. (Borden Decl., Ex. 1 at ¶ 15; Borden Decl., Ex. 3 at ¶ 7.)

Though he purports to rebut Dr. Zona, Mr. Redman is not an economist or an accountant. (Redman Dep. (Borden Decl., Ex. 2, Redman Dep. 28:19-20, 20:9-18.) He testified that he is a certified fraud examiner, which is a certification that can be obtained through an on-line course. (*Id*. 28:3-14.) He also has an undergraduate degree in "management." (Borden Decl. Ex. 2, C.V.) Mr. Redman has never testified as a damages expert in any antitrust case. (Borden Decl. Ex. 2, Redman Dep. 66:7-14, 71:21-72:4.) While his CV states that he submitted expert affidavits in a case called *Matsuo Electric*, Mr. Redman admitted at his deposition that his declarations in that case concerned the defendant's ability to pay a fine, rather than any antitrust analysis. (*Id.* 41:9-25.) Similarly, in the other antitrust case he could remember, *Eagle Eyes Traffic*, Mr. Redman admitted that the declaration he submitted and the scope of his work was to create a "summary of revenue, if you will," rather than calculate antitrust damages. (*Id*. 55:8-10.)

Mr. Redman also is not a technical expert in telescopes or telescope manufacturing. (Borden Decl. Ex. 2, Redman Dep. 284:23-285:25.) He has no science degree, has never manufactured or designed a telescope or a lens, and has no "insight into the different types of telescopes. (*Id*.)

Nonetheless, Mr. Redman purports to rebut the econometric analyses of Dr. Zona and the technical analyses of Dr. Sasian.

ORION'S MOTION TO PRECLUDE TESTIMONY OF JEFFREY REDMAN

**<u>ARGUMENT</u>**

Pursuant to Federal Rule of Evidence 702, expert testimony is inadmissible unless it meets all of the following requirements. First, the witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Second, if the witness is qualified as an expert, he or she may testify only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case." *Id.*

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court provided the framework for the admissibility of expert testimony under Rule 702: Courts must act as "gatekeepers" to determine "whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. "Read together, *Daubert* and Rule 702 broadly require that an expert not only be qualified, but also that the expert's testimony be reliable and relevant." *GSI Tech., Inc. v. Cypress Semiconductor Corp.*, Case No. 5:11-cv-03613-EJD, 2015 WL 364796 (N.D. Cal. Jan. 27, 2015), *1 (Davila, J.) (citing *Daubert*, 509 U.S. at 589-91). Further, "[t]he court's gatekeeping function on expert evidence extends to economic analysis and the economic expert's conclusions must be arrived at in a scientifically sound and methodologically reliable fashion." *In re Worldcom, Inc.*, 371 B.R. 33, 41 (Bankr. S.D.N.Y. 2007) (citing *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 175 F.3d 18, 34 & n. 12 (1st Cir. 1999).

**I.     MR. REDMAN IS NOT QUALIFIED TO CRITIQUE DR. ZONA'S ANALYSIS**

Mr. Redman lacks the requisite education and experience to critique Dr. Zona's econometric analyses or to render an expert opinion on the calculation of antitrust damages. He is not an economist or accountant, and he has no relevant experience in antitrust cases.

ORION'S MOTION TO PRECLUDE TESTIMONY OF JEFFREY REDMAN

### A.     Mr. Redman Lacks the Education and Training to Qualify as an Expert on Antitrust Damages

A person is only qualified to provide expert testimony if his or her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).  Where an individual lacks the training and expertise in the area on which he or she seeks to offer testimony, the testimony must be excluded.  *See*, *e.g.*, *Crown Cork & Seal Co., Inc. v. Credit Suisse First Boston Corp.*, 2013 WL 978980, *7 (S.D.N.Y. Mar. 12, 2013) (law professor who held a degree from Yale Law School, had taught at Harvard and Columbia, and had practiced law for six years at Cravath, Swaine and Moore not qualified to offer expert opinion on damages because he was neither economist nor accountant).  Mr. Redman does not meet this standard because the scope of his testimony is limited to rebutting the testimony of Orion's expert economist Dr. Zona, and he lacks the education and training to address the econometric analyses contained in Dr. Zona's report.

### 1.     Mr. Redman Is Not an Economist or Accountant

Dr. Zona has a Ph.D. in economics.  (Borden Decl., Ex. 5 at ¶ 1.)  He has extensive experience with antitrust theory, applying econometric principles in antitrust cases, publishing articles on antitrust principles, and has "present[ed] at conferences and meetings relating to econometrics and antitrust, including on multiple instances before the ABA Section of Antitrust Law, to the Antitrust Division of the United States Department of Justice, and to the Antitrust Law Section of the New York State Bar Association." (*Id.* ¶ 2, Appendix A.)  He analyzed Orion's damages using sophisticated econometric techniques, which included determining that Sunny and Synta had market power, examining barriers to entry, running regression analyses, and constructing a but-for model of the market and subjecting it to various cross-checks to assess its validity.  (*Id.* ¶¶ 43-131.)

Mr. Redman is not an economist.  (Borden Decl., Ex. 2, Redman Dep. 28:19-20.)  He does not have a doctorate degree, master's degree, or undergraduate degree in economics or accounting. (*Id.* 24:9-17; Borden Decl., Ex. 1, C.V. at 2.)  His only supposed credentials are that he holds a Bachelor of Science in "management" and the "designation" of "Certified Fraud Examiner from the

ORION'S MOTION TO PRECLUDE TESTIMONY OF JEFFREY REDMAN

Association of Certified Fraud Examiners." (Borden Decl., Ex. 1 at 2.)[1]  This does not enable him to offer an expert critique of a real economist.  In fact, he testified that he lacks expertise in the basic economic foundation of Dr. Zona's analysis:

> Q. Have you ever run a regression in an antitrust case?
> A. Not that I can think of. I don't know. Not that I can think of.
> Q. Do you have any training in econometrics?
> A. I would say no.

(Borden Decl. Ex. 2, Redman Dep. 29:6-11.)

At his deposition, Mr. Redman attempted to fix these admissions by claiming that he had "taken some courses related to regression and use of regression in litigation." (*Id*. 29:13-17.)  He then clarified that "some courses," plural, actually consisted only of one single, week-long course that he took at work, roughly 15 years ago.  (*Id*. 29:18-30:12.)  Mr. Redman then conceded that other than that single week-long class offered at his job, he has no training in econometrics.  (*Id*. 29:10-11, 30:13-16.)  He then went on to explain that he did not know whether experts usually use regression to calculate damages in Sherman Act cases, but that he did not believe it was necessary. (*Id*. 94-96.)

Mr. Redman also had no training or experience performing basic antitrust analyses:

> Q. Have you ever calculated price elasticity in an antitrust case?
> A. I have not.
> Q. Have you ever calculated an overcharge in an antitrust case? [objection]
> THE WITNESS: I have calculated overcharges many times. Whether it's specific to an antitrust case or not, I don't know.
> BY MR. THEODORE:
> Q. Okay. Sitting here right now, you can't think of an instance in which you've calculated a -- an overcharge in an antitrust case?
> A. That is correct.
> Q. What -- what training do you have regarding the calculation of overcharges in an antitrust case? [objection]
> THE WITNESS: Specific to antitrust cases, I don't think there is any specific training that I've had.

---

[1] To acquire the designation of "Certified Fraud Examiner" from the Association of Certified Fraud Examiners, an applicant need only join the Association, take an examination (which can be done online via self-study), and pay a $400 fee.  No other education or qualification is needed. *See* https://www.acfe.com/become-cfe-qualifications.aspx.

ORION'S MOTION TO PRECLUDE TESTIMONY OF JEFFREY REDMAN

(*Id.* at 97:25-98:20.)  Despite not having any training or education on the topic, Mr. Redman purports to criticize Dr. Zona's overcharge and other calculations, which are determined through the regression analyses and other econometrics Dr. Zona performed.  (*See* Borden Decl. Ex. 5, Zona Report ¶¶ 76-118.)  By his own admission, Mr. Redman is not qualified to level such criticisms.

In his report, Mr. Redman claimed to be applying "accounting" principles in his purported rebuttal of Dr. Zona.  (*See* Borden Decl. Ex. 1 at ¶ 8.)  Such principles are not relevant to critique an econometric analysis.  But even if they were, Redman is not an accountant either.  At his deposition, Mr. Redman claimed that he was "trained in accounting," but admitted that he is not a certified accountant, has no degree in accounting, has no permit to practice as an accountant, and cannot do any of the things that accountants do, such as sign audits or financial reports.  (Borden Decl., Ex. 2, Redman Dep. 20:9-25:1.)  He cannot be qualified to render an expert opinion on a topic where he is not even licensed to practice.

Given Mr. Redman's lack of education on the topic of the opinion he is attempting to rebut, and in light of his admissions about his lack of expertise, Mr. Redman is not qualified to dispute Dr. Zona's econometric analyses.  Fed. R. Evid. 702(a).  Indeed, a district court may abuse its "considerable discretion" when it admits the testimony of an expert who "by her own admission, [is] not an economist" and has no education, training, or experience in antitrust issues.  *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799-800 (4th Cir. 1989); *see also Rothe Dev., Inc. v. Dep't of Defense*, 107 F.Supp.3d 183, 202-03 (D.D.C. 2015) (plaintiff's proffered expert, who had no formal education or training in statistical or econometric analysis and had never worked with regression models, was not qualified to refute regression analysis of defendant's expert, a doctor of economics).  Mr. Redman is not qualified to offer expert rebuttal testimony because Orion's "experts are economists, [while he] is not.  Therefore his proffered rebuttals … are outside his competence."  *In re Titanium Dioxide Antitrust Litig.*, Civ. Action No. RDB-10-0318, 2013 WL 1855980 (D. Md. May 1, 2013), at *6-7 (excluding professor of law and economics at Yale Law School from rebutting economic experts because doing so would be "outside his competence as a law professor").

ORION'S MOTION TO PRECLUDE TESTIMONY OF JEFFREY REDMAN

### 2.      Contrary to His C.V., Mr. Redman Does Not Hold Any Teaching Positions

Mr. Redman claims in the "Qualifications" section of his Report that he teaches classes on forensic accounting and damages as a guest lecturer for a number of organizations and universities. (Borden Decl., Ex. 1, Redman Report ¶¶ 5-6.)  However, he admitted at deposition that he has never held a formal teaching position.  (Borden Decl., Ex. 2, Redman Dep. 25:19-26:7.)  Rather, he claimed that he "provide[s] insight" to students on forensic accounting by lecturing either at "a single class" or for a "day or two."  (*Id*. 26:19-27:21.)  Mr. Redman further clarified that the "forensic accounting" he conducts and teaches is "applying financial and accounting skill to evaluating situations, whether it's fraud investigations or damages calculations or, basically, tracing money."  (*Id*. 25:12-18.)  Investigating and calculating fraud damages and tracing money are obviously not the same as analyzing the economics of antitrust damages, and this irrelevant experience cannot qualify Mr. Redman to offer rebuttal testimony to an economist in a complex antitrust case.

### B.      Contrary to His C.V., Mr. Redman Has No Experience Analyzing Antitrust Damages

In addition to lacking relevant education and training, Mr. Redman also lacks any experience that would qualify him as an expert to critique Dr. Zona's work.  For example, Mr. Redman did not know whether he had ever calculated an overcharge in an antitrust case.  (Borden Decl., Ex. 2, Redman Dep. 98:3-13.)  Mr. Redman attempted to spackle over his lack of expertise by making inaccurate claims about his experience in his Report and C.V., which he was forced to disavow after extended questioning.

While Mr. Redman claims in his C.V. and initially at his deposition to have experience in multiple antitrust cases, his deposition testimony revealed that none of his experience is remotely relevant to the work he was asked to do here.  For example, while he claims at pages 3-4 of his C.V. that he filed affidavits in an antitrust case called *United States v. Matsuo Elec. Co., Ltd.*, Case No. CR-17-73-JD (N.D. Cal. 2018), Mr. Redman ultimately admitted that he did not calculate antitrust injury or damages or evaluate liability in that case.  (Borden Decl., Ex. 2, Redman Dep. 41:14-25.)  Rather, he opined on the defendant's financial situation and its ability to pay a fine.  (*Id*.

ORION'S MOTION TO PRECLUDE TESTIMONY OF JEFFREY REDMAN

41:9-13.) In other words, Mr. Redman simply performed standard analysis of a company's financial condition in a case that happened to also involve antitrust issues that were unrelated to his work.

Mr. Redman also tried to claim at his deposition that he provided a calculation of damages in an antitrust case called *United States v. Eagle Eyes Traffic Indus. Co., Ltd.*, No. CR 11-0488 RS (N.D. Cal. 2012). (*Id*. 48:12-19.) On further examination, however, he was forced to admit that rather than calculating *damages* in that case, he actually calculated "the amount of affected commerce, which then the DOJ used as part of sentencing." (*Id*. 49:6-9.) He further clarified that his work involved looking at the company's "sales data" associated with certain products and "summariz[ing] that information." (*Id*. 49:15-25.) He finally admitted that his work was "summary of revenue, if you will. It's not really a damage calculation." (*Id*. 55:8-10.) Quite so: the law holds that determining the volume of affected commerce "does not require . . . econometric analysis, or expert testimony." *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 91 (2d Cir. 1999).[2]

Mr. Redman claimed to have expert experience with another set of antitrust cases as to which he could not state whether they were in federal or state court, whether they involved Sherman or Clayton Act claims, whether they involved monopolization or cartel claims, or whether he made a calculation of damages. (Borden Decl., Ex. 2, Redman Dep. 42:23-44:11; 45:22-46:20; 48:5-11; 50:9-52:14; 56:4-10; 59:8-60:20; 63:16-64:1.) Mr. Redman also could not state whether he testified in such cases, or whether he merely submitted affidavits. (*Id*. 47:15-24; 56:11-57:20; 58:15-20.) Upon being shown a version of his C.V. that he did not produce in connection with his report, Mr. Redman acknowledged that the "antitrust" cases he had referred to were state law predatory pricing claims, not federal conspiracy or monopolization claims. (*Id*. 67:4-69:9.) After more than an hour of questioning, Mr. Redman was forced to admit that he had never calculated overcharges in an antitrust case before and that he had no training in doing so. (*Id.* 98:10-21.)

---

[2] Mr. Redman also testified that he filed a declaration in the *Eagle Eyes* case. (Borden Decl., Ex. 2, Redman Dep. 77:7-78:15.) Orion's counsel has not, however, been able to locate any declaration filed by Mr. Redman among the files of that case.

Ultimately, Mr. Redman conceded that he has never been retained as an expert to calculate damages in a federal antitrust case:

> Q: Sitting here today, what cases can you remember, in which you were the retained expert and in which you prepared a calculation of damages suffered by a party in a federal Sherman Act or Clayton Act antitrust case? …
>
> A: Without looking at my list, I can't think of any.

(*Id*. 66:7-14.)  Upon looking at his longer list of cases, from the earlier version of his C.V., Mr. Redman confirmed that there were none.  (*Id*. 71:21-72:4.)

While admitting that he "was not qualified to offer opinions . . . from an economic perspective," Mr. Redman insisted at his deposition that "there's a fine line between financial perspective, economic perspective, accounting perspective" and that he was free to rebut Dr. Zona by "analyzing [the data] from a financial perspective, not an economic perspective."  (*Id*. 263:1-14.)  But even if Mr. Redman's financial opinions were a proper rebuttal to Dr. Zona's economic analysis, Mr. Redman is unqualified to perform them in the antitrust context.  Mr. Redman admitted that he had "[n]ever used financial analysis, or any of the forms of financial analysis that you just described, to calculate the overcharge in an antitrust case."  (*Id*. 264:8-13.)

Mr. Redman's lack of relevant experience separately renders him unqualified to serve as a rebuttal expert in this case.  Indeed, courts have excluded expert testimony from witnesses with far better credentials than Mr. Redman where their experience did not qualify them to testify about the economic issues in the case.  *See*, *e.g.*, *Virginia Vermiculite Ltd. v. W.R. Grace &Co-Conn.*, 98 F.Supp.2d 729, 732-34 (W.D. Va. 2000) (economic consultant's extensive experience in analyzing the market for investment purposes did not qualify him to analyze relevant market for antitrust purposes); *In re Worldcom*, 371 B.R. at 41-42 (economist with 30 years of experience was not qualified to analyze damages specific to telecommunications industry because there was "no nexus between his credentials and the subject matter of his testimony.").  Here too, Defendants have failed to establish that Mr. Redman has "special knowledge or training" to critique Dr. Zona's econometric analysis and opine upon the antitrust damages at issue.  As in *Crown*, *Virginia Vermiculite*, and *In re Worldcom*, this Court should reject Defendants' proffer of an unqualified ersatz accountant to rebut econometric analyses proffered by a Ph.D. economist.

## II.    MR. REDMAN'S TESTIMONY IS NOT RELIABLE OR RELEVANT

Given Mr. Redman's lack of any education, training, or experience in the complex econometrics involved in calculating antitrust damages, it should be no surprise that his opinions are not based on reliable and relevant methodologies.  The methodology he argues Dr. Zona should have used runs directly counter to long-settled and widely-accepted principles of economics and antitrust damage calculation.  His report and deposition testimony make clear that he does not understand the regression analysis Defendants hired him to critique.  Further, Mr. Redman's conclusions are cumulative of the testimony of Defendant's other purported expert, Dr. Saravia.

### A.    Mr. Redman's Analysis Is Contrary to Well-Established Antitrust Law and Economic Theory

In his Report, Mr. Redman contends that Dr. Zona should have calculated Sunny and Synta's price overcharges to Orion by comparing the conspirator's prices to those charged by manufacturers of telescopes.  Dr. Zona supposedly "failed to do any analysis of those actual prices … as compared to other non-defendant suppliers."  (Borden Decl., Ex. 1, Redman Report ¶ 11; *id.* ¶ 20 (claiming that "Dr. Zona does no … comparisons to telescope pricing by other suppliers …. Without this type of analysis, Dr. Zona is assuming that Sunny charged excessively high prices throughout the relevant period without actually analyzing those prices"); *id.* ¶ 58 ("Dr. Zona could have compared [Defendants' price changes] to other vendors/suppliers not involved in the alleged collusion.").)

This critique is essential to Mr. Redman's analysis.  At his deposition, Mr. Redman repeatedly fell back on it when challenged to explain what criticisms of Dr. Zona or alternative methods of calculating antitrust damages he was qualified to offer.  (*E.g.*, Borden Decl., Ex. 2, Redman Dep. 126:6-127:7 (proposing "comparable companies" as a way to calculate damages where there is no available clean period); *id.* at 217:11-13 (stating that Dr. Zona erred in his analysis because "he did not compare the prices paid by Orion [for telescopes] from Sunny versus Synta versus other vendors"); *id.* at 221:10-19 (stating that an acceptable methodology for calculating damages is to "compare comparables, right, comparison to other vendors.  So if there's other vendors out there … that are not part of any alleged illegal activity, then that could be a great comparison to determine what should have been happening price-wise"); *id.* at 225:22-226:9

(claiming that if the colluding parties' pricing were no different than other vendors' pricing, "I would say it could suggest there's no damages.").)

Mr. Redman's proposed methodology – and his critique of Dr. Zona for failing to employ it – is *directly contrary* to established and widely-accepted principles of economics and antitrust law. As the leading antitrust treatise explains, in markets where a few dominant firms collude but smaller competitors do not, *all* firms will raise their prices, such that "all buyers pay the same price, and therefore all buyers suffer the same overcharge …. [i]t does not matter whether the buyer purchased from a colluder or a noncolluder – the overcharge is precisely the same." 2A Areeda & Hovenkamp, Antitrust Law ¶ 395, at 448 (4th ed. 2014). The literature emphasizes that "th[is] economic analysis is uncontroversial." *Id.* at 447; *see also* R. Blair & R. Romano, *Distinguishing Participants from Nonparticipants in a Price-Fixing Conspiracy: Liability and Damages*, 28 Am. Bus. L.J. 33, 35 (1990) ("Widely accepted economic theory predicts that *all* firms in an industry will increase price following a price fixing agreement among a *subset* of the firms in that industry") (emphasis in the original). This is known as the "dominant firm" model.

Thus, Mr. Redman's core methodology and primary criticism of Dr. Zona contradicts basic economic theory – something Mr. Redman would have understood if he had the requisite education and experience. Defendants cannot meet their burden to show that Mr. Redman's testimony is the product of "reliable principles and methods," as Rule 702 requires. Rather, Mr. Redman's uninformed and incorrect assumptions are exactly the type of unreliable and irrelevant "evidence" that Rule 702 and *Daubert* are meant to exclude. Indeed, the *Virginia Vermiculite* court specifically cited a purported expert's unfamiliarity with the dominant firm theory as a reason to disqualify him from serving as an expert in an antitrust case. 98 F.Supp.2d at 734 ("Schwartz's inability to recognize the dominant firm theory emphasizes his lack of knowledge of current standards for applying antitrust economics."). Mr. Redman's unfamiliarity with that principle warrants the same result here.

Mr. Redman's lack of knowledge regarding antitrust law and economic theory was not limited to this single issue. He also conceded that he did not have any knowledge of the antitrust concepts of pass-through or Cournot equilibrium or of the private cartel data that he criticizes Dr.

ORION'S MOTION TO PRECLUDE TESTIMONY OF JEFFREY REDMAN

Zona for using (Borden Decl., Ex. 2, Redman Dep. 251:15-252:18; 255:5-7; 257:16-24), and that he did not understand Dr. Zona's structural method (*id.* 258:10-17). These additional gaps in Mr. Redman's knowledge of the basic antitrust concepts that will be at issue in this case confirm his lack of expertise in the relevant subject matter as well as his inability to assist the trier of fact in understanding the evidence.

### B.    Mr. Redman Did Not Understand the Regression Analysis Dr. Zona Performed and Thus Could Not Validly Critique It

Mr. Redman's fundamental misapprehension of antitrust principles is not his only error in analyzing Dr. Zona's report. His rebuttal report and deposition testimony make clear that Mr. Redman simply does not understand regression analysis or econometrics.

For example, Mr. Redman did not even recognize that Dr. Zona used econometric analysis to calculate his damages arising from Defendants' refusal to deal. In his report and initially at his deposition, Mr. Redman opined that Dr. Zona failed to account for the impact of Orion's ability to find replacement suppliers. (Borden Decl., Ex. 1 at ¶¶ 144-45; Borden Decl. Ex. 2, Redman Dep. 351:6-352:11.) After further examination, however, Mr. Redman acknowledged that Dr. Zona had performed "a regression calculation that I did not critique." (Borden Decl., Ex., 2, Redman Dep. 353:7). Claiming that he "forgot" about "this one," Mr. Redman admitted that he did not "make any study of this regression" or "do an analysis of it" and that he did not know whether Dr. Zona's regression "took those factors [i.e., possible replacement suppliers] into account." (Borden Decl., Ex. 2, Redman Dep. 354:9-15, 355:2-25.)

Similarly, Mr. Redman completely misunderstood Dr. Zona's margin calculations. Incremental margin is one of the inputs into Dr. Zona's calculation of damages arising from Defendants' price fixing and market allocation. (Borden Decl., Ex. 5 at ¶¶ 82-83.) Dr. Zona calculated this incremental margin using a regression analysis of Orion's sales data that is described at paragraph 86 of his report. Mr. Redman, misunderstanding Dr. Zona's work, attempted to chastise Dr. Zona for improperly "obtain[ing] a measure of Orion's **gross** [rather than incremental] margin for the relevant products." Borden Decl., Ex. 1, Redman Report at ¶ 55 (emphasis added). Mr. Redman never mentioned Dr. Zona's incremental margin regression or

ORION'S MOTION TO PRECLUDE TESTIMONY OF JEFFREY REDMAN

paragraph 86 of Dr. Zona's report.  After five transcript pages and seven minutes of evading the question and searching through his report, Mr. Redman was ultimately forced to admit that he does not address "paragraph 86 and the regression contained in paragraph 86."  (Borden Decl., Ex. 2, Redman Dep. 194:13-199:3.)  Having discovered that Dr. Zona did in fact calculate an incremental margin, Mr. Redman switched gears and now claims that it is not "important to [his] opinion that Dr. Zona does not arrive at gross margin."  (*Id*. 199:4-7.)

Mr. Redman also could not recognize the computer code by which Dr. Zona performs his calculations and that were disclosed as part of Dr. Zona's backup materials.  When presented with the code file that Dr. Zona uses to reformat and manipulate the key sales data that he uses in much of his subsequent analysis, Mr. Redman thought it was the computer code by which Dr. Zona performs his passthrough regression – even though the file Mr. Redman was shown does not have language to run any regression at all.  (*Id*. 238:2-23 & Borden Decl. Ex. 8.)

Fundamentally, Mr. Redman just does not understand how Dr. Zona calculated damages. The core equation underlying Dr. Zona's damages calculation for price fixing and market allocation can be found at paragraph 83 of Dr. Zona's report.  While she criticized Dr. Zona's inputs, Dr. Saravia acknowledged that equation and the underlying algebra were economically proper and testified that she "do[es]n't see anything economically wrong" with them and "do[es]n't see any errors there."  (Borden Decl., Ex. 4, Saravia Dep. 183:15-184:7.)  Yet, Mr. Redman admits that he cannot "explain that equation" and that he has "never seen that [equation] used in a damage calculation."  (Borden Decl. Ex. 2, Redman Dep. 241:4-8, 242:7-10.)

**C.      Mr. Redman's Testimony Is Separately Unhelpful Because It Is Cumulative**

Even if Mr. Redman had any reliable or relevant evidence to offer, the Court should still reject it on the grounds that it would be cumulative of the testimony offered by Defendants' other expert, Dr. Saravia.  Federal Rule of Evidence 403 provides that a court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of … needlessly presenting cumulative evidence."  Here, Defendants have separately offered the expert opinion of Dr. Saravia

to "rebut the analyses and opinions put forth by Orion's expert Dr. J. Douglas Zona."  (Borden Decl., Ex. 3, Saravia Report ¶ 6).[3]

Unlike Mr. Redman, Dr. Saravia is an economist, holds a Ph.D. in economics, and has at least some relevant antitrust experience.  (*Id.* ¶ 1, Appendix A).  While Orion challenges particular aspects of Dr. Saravia's proffered testimony in a separate motion filed concurrently herewith, and while Orion intends to and reserves its right to contest Dr. Saravia's analysis and conclusions at trial, Orion does not currently challenge Dr. Saravia's qualifications to offer opinion in the area of antitrust damages.

There is no need to duplicate Dr. Saravia's testimony with that of Mr. Redman.  Both Dr. Saravia and Mr. Redman acknowledged at their depositions that their conclusions are largely overlapping, in many cases verbatim.  For example, Dr. Saravia testified that the supposed fact that Dr. Zona "does no analysis of actual telescope pricing" is "definitely one of my critiques of him." (Borden Decl., Ex. 4, Saravia Dep. 41:18-25).  This is also a headline conclusion that Mr. Redman proposes to offer.  (Borden Decl., Ex. 1 at 6.)  Dr. Saravia and Mr. Redman both criticize Dr. Zona (incorrectly) for supposedly "fail[ing] to account for real-world problems," "ignor[ing] Orion's actual financial data," "failing to justify his damages period," and offering opinions regarding price fixing and market allocation that, in Mr. Redman's words, are not "tied to the facts of the case," and in Dr. Saravia's are "untethered to case facts."  (Borden Decl., Ex. 4, Saravia Dep. 43:1-12, 205:1-8, 249:7-17; Borden Decl., Ex. 1, Redman Report ¶¶ 11, 12, 52; Borden Decl., Ex. 2, Redman Dep. 283:1-13; Borden Decl., Ex. 3, Saravia Report at 18.)

Expert testimony is properly excluded where, "if allowed, [it] would be cumulative to and much weaker than that of" another expert proffered by the same party.  *United States ex rel. Jordan v. Northrop Grumman Corp.*, No. CV 95-2985 ABC (EX), 2003 WL 27366247, at *4 (C.D. Cal. Feb. 24, 2003).  Mr. Redman's testimony will do nothing other than waste time and duplicate Dr. Saravia's conclusions without the requisite underlying expertise.  The Court should not permit Defendants to pile the cumulative testimony of a wholly unqualified non-expert on top of Dr. Saravia's opinion.

---

[3] Dr. Saravia also provided an opinion on Dr. Sasian's report.  (Borden Decl., Ex. 3 ¶ 7.)

ORION'S MOTION TO PRECLUDE TESTIMONY OF JEFFREY REDMAN

### III.   MR. REDMAN SHOULD NOT BE ALLOWED TO TESTIFY ABOUT DR. SASIAN'S OPINIONS

The Court should also preclude Mr. Redman's testimony purporting to "rebut" Dr. Sasian's report. Mr. Redman offers *no* rebuttal of Dr. Sasian's opinions. Nor could he. Dr. Sasian's testimony is exclusively limited to telescope manufacturing, a topic about which even Mr. Redman professes to know nothing. For the same reasons as above, *i.e.*, Mr. Redman lacks and training or experience, he cannot rebut any of Dr. Sasian's opinions.

#### A.   The Testimony Mr. Redman Intends to Give Is Not Rebuttal Testimony

Defendants elected not to produce any expert reports on the Court-Ordered cut-off for doing so. Borden Decl., ¶ 2. As such, they waived any right to introduce non-rebuttal expert testimony. Rule 26 of the Federal Rules of Civil Procedure requires parties to provide their expert reports "at least 90 days before the date set for trial," unless otherwise specified by court order. F.R.C.P. 26(a)(2)(D)(i). The only exception is for expert testimony that is "intended solely to contradict or rebut" another party's expert testimony, in which case the party may make such disclosure "within 30 days after the other party's disclosure." F.R.C.P. 26(a)(2)(D)(ii). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

At the May 2, 2019 trial setting conference, Orion raised the issue that Defendants were going to try to sandbag Orion by raising new facts and theories in their so-called rebuttal expert reports. (Borden Decl., Ex. 9 at 8:11-15.) In response, Defendants represented to the Court: "It's not true that we're going to do anything that is not properly within the scope of rebuttal testimony. Under the Federal Rules you're allowed to contradict or rebut evidence *on the same subject matter* identified by another party. That's exactly what we're going to do. We're going to produce *traditional rebuttal reports*[.]" (*Id.* 9:22-10:3 (emphasis added).) Mr. Redman also testified at deposition that his analysis was limited to rebutting the evidence offered by Dr. Zona and Dr. Sasian: "**Q.** [A]re you offering any affirmative opinions in this case? … **A.** No. My analysis in this case is strictly related to analyzing Dr. Zona and Dr. Sasian's analysis, and commenting on those." (Borden Decl., Ex. 2, Redman Dep. 99:15-20.)

ORION'S MOTION TO PRECLUDE TESTIMONY OF JEFFREY REDMAN

In direct contradiction of Defendants' representations to the Court, Mr. Redman's report *does* contain new facts and theories that are *not* a rebuttal of anything in Dr. Sasian's report.  Dr. Sasian is a tenured Professor in the field of Optical Sciences and Astronomy.  (Borden Decl., Ex. 6, Sasian Report ¶ 9.)  Orion retained him "to render an opinion as to whether Sunny and Synta are capable of manufacturing similar consumer telescopes."  (*Id.* ¶ 4.)  Accordingly, Dr. Sasian analyzed whether the two companies had "sufficient technical expertise, manufacturing experience and intellectual property" to manufacture similar products.  (*Id.* ¶ 5.)  Upon reviewing evidence relating to Sunny's and Synta's technical capabilities and intellectual property holdings, he determined that they did.  (*Id.* ¶¶ 36-68.)  At no point in his report did Dr. Sasian offer any financial or business opinion as to whether it would be *feasible or profitable* for Sunny or Synta to produce such products.  At his deposition, Dr. Sasian confirmed that he was not offering any financial or business opinion:

> Q. Are you providing an expert opinion on whether Sunny and Synta are financially capable of manufacturing similar consumer telescopes?
>
> A. No, I am not doing that.  ….
>
> Q. When you are providing an opinion that Sunny and Synta are capable of manufacturing similar technology, you are only talking about the technological or technical side, correct? ….
>
> A. Mostly, yes.
>
> Q. You are not doing it from the business side, correct?
>
> A. That's correct.

(Borden Decl., Ex. 7, Dr. Sasian Dep. 83:11-84:7.)

Despite Dr. Sasian's clear statements and testimony limiting the scope of his expert opinion to Defendants' technical capabilities, Mr. Redman's report attempts to offer entirely new facts and theories in which he opines as to "whether [producing other telescopes] would be financially feasible or profitable."  (Borden Decl., Ex. 1, Redman Report ¶ 151.)  Mr. Redman goes on to offer a list of 22 factors that he contends would determine whether it would have made financial and business sense for Sunny and Synta to offer other products.  (*Id.* ¶ 153 (listing factors a through v).)

These proffered opinions are improper because they do not rebut any aspect of Dr. Sasian's report – a fact that Mr. Redman recognized at his deposition:

Q. Okay. Did Dr. Sasian offer any opinion as to whether it would be financially feasible for Sunny or Synta to manufacture similar consumer telescopes?

A. I don't think so, no. I think he specifically said he didn't.

Q. Okay. And do you have any opinions on Sunny's technical ability to build telescopes manufactured by Synta, and vice versa?

A. On their ability to manufacture telescopes?

Q. Technical ability.

A. Technical ability, no.

(Borden Decl. Ex. 2, Redman Dep. 286:12-24.)  Defendants are not entitled to introduce new affirmative opinions regarding their financial capability to manufacture similar telescopes under the guise of rebuttal testimony so that Orion is deprived of the ability to respond.  That violates the Court's scheduling order, contradicts Defendants' representations to the Court, and is seriously prejudicial to Orion.  As Orion has not had the opportunity to adduce testimony on the supposed financial feasibility on Sunny and Synta's manufacturing identical telescopes, Mr. Redman should not be permitted to do so under the guise of a rebuttal report.

### B.    Redman Lacks the Education and Training to Offer Any Rebuttal Testimony on Telescope Manufacturing

Defendants had the opportunity to retain their own expert in the field of optical sciences to dispute Dr. Sasian's analysis of the firms' technical capabilities, but they were apparently unable to do so.  As Mr. Redman conceded at his deposition, he does not have any expertise whatsoever regarding the technical aspects of telescope manufacture.  (Borden Decl., Ex. 2, Redman Dep. 284:23-285:25 (admitting "I don't have any insight into the different types of telescopes.").)  His C.V. has no relevant qualifications that would enable him to offer "true rebuttal" testimony to Dr. Sasian's opinions.  *See* Fed.R.Civ.Pro. 26(b)(2)(D)(ii) (defining rebuttal expert testimony as "intended solely to contradict or rebut evidence *on the same subject matter*" as another party's expert disclosure (emphasis added); *Attachmate Corp. v. Health Net, Inc.*, Case No. C09-1161 MJP, 2010 WL 11561517 (W.D. Wash. Sept. 27, 2010), at *1 (defendant's expert's report re damages not a proper rebuttal report where the plaintiff's expert did not offer any testimony regarding damages). Mr. Redman's purported "critique" of Dr. Sasian is thus an improper attempt

ORION'S MOTION TO PRECLUDE TESTIMONY OF JEFFREY REDMAN

to smuggle new (and unrebutted) substantive expert opinions before the court, in violation of the Court's scheduling order and Rule 26.

## CONCLUSION

For the foregoing reasons, the Court should preclude Defendant's purported expert Jeffrey Dean Redman from testifying at trial.


Dated:  July 26, 2019                                BRAUNHAGEY & BORDEN LLP


By:   /s/ *Jeffrey Theodore*
                Jeffrey Theodore

Attorneys for Plaintiff OPTRONIC TECHNOLOGIES, INC. d/b/a Orion

ORION'S MOTION TO PRECLUDE TESTIMONY OF JEFFREY REDMAN