J. Noah Hagey, Esq. (SBN: 262331)
    hagey@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
    borden@braunhagey.com
Jeffrey M. Theodore, Esq. (SBN: 324823)
    theodore@braunhagey.com
Ronald J. Fisher, Esq. (SBN: 298660)
    fisher@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone:  (415) 599-0210
Facsimile:  (415) 276-1808

ATTORNEYS FOR PLAINTIFF
OPTRONIC TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC., d/b/a Orion Telescopes & Binoculars ®, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>NINGBO SUNNY ELECTRONIC CO., LTD., SUNNY OPTICS, INC., MEADE INSTRUMENTS CORP., and DOES 1 - 25,<br><br>Defendants. | Case No: 5:16-cv-06370-EJD-VKD<br><br>**PLAINTIFF OPTRONIC TECHNOLOGIES, INC.'S MOTION TO PRECLUDE TESTIMONY BY CELESTE SARAVIA, Ph.D.**<br><br>Date:     September 12, 2019<br>Time:    9:00 a.m.<br>Judge:   Hon. Edward J. Davila<br>Ctrm:    4, 5th Floor<br><br>**Compl. Filed:**         Nov. 1, 2016<br>**First Am. Compl.:**  Nov. 3, 2017<br>**Trial Date:**            October 15, 2019 |

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................. 1

INTRODUCTION ............................................................................................................... 2

ARGUMENT....................................................................................................................... 2

I. THE COURT SHOULD PRECLUDE DR. SARAVIA FROM TESTIFYING TO A 100% PASSTHROUGH ASSUMPTION AND DAMAGES BASED THEREON .......... 3

    A. Dr. Saravia's Analysis Is Inadmissible Because It Is Contrary to Antitrust Law ................................................................................................................. 4

    B. Dr. Saravia's Critique of Dr. Zona's Damages Analysis Is Inadmissible Because It Is Based on a Factual Assumption for which She Has No Factual Support................................................................................................................ 6

II. THE COURT SHOULD PRECLUDE DR. SARAVIA FROM TRYING TO REBUT DR. SASIAN'S TESTIMONY.................................................................... 7

    A. The Testimony Dr. Saravia Intends to Give Is Not Rebuttal Testimony................ 7

    B. Dr. Saravia Lacks the Education and Training to Offer Any Rebuttal Testimony on Telescope Manufacturing .............................................................. 10

CONCLUSION................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**CASES**

*Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*,
   459 U.S. 519 (1983)............................................................................................................... 5
*Bailey v. Allgas*,
   148 F. Supp. 2d 1222 (N.D. Ala. 2000)................................................................................. 4
*Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*,
   175 F.3d 18 (1st Cir. 1999).................................................................................................... 3
*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)............................................................................................................ 2, 3
*Delaware Valley Surg. Supply Inc. v. Johnson & Johnson*,
   523 F.3d 1116 (9th Cir. 2008) .............................................................................................. 5
*GSI Tech., Inc. v. Cypress Semiconductor Corp.*,
   Case No. 5:11-cv-03613-EJD, 2015 WL 364796 (N.D. Cal. Jan. 27, 2015) ................... 3
*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*,
   392 U.S. 481 (1968)........................................................................................................... 2, 5
*In re Worldcom, Inc.*,
   371 B.R. 33 (Bankr. S.D.N.Y. 2007)............................................................................ 3, 4, 5
*Loeffel Steel Prod. v. Delta Brands*,
   387 F. Supp. 2d 794 (N.D. Ill. 2005).................................................................................... 4
*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) ................................................................................................ 6
*Meijer, Inc. v. Abbott Labs*,
   251 F.R.D. 431 (N.D. Cal. 2008)........................................................................................... 5
*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) .............................................................................................. 8

**RULES**

Federal Rule of Evidence 702................................................................................................ 2, 3
Federal Rules of Civil Procedure 26............................................................................... 7, 8, 11

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 12, 2019, in Courtroom 1, 5th Floor, 280 South 1st Street, San Jose, California, before the Honorable Edward J. Davila, Plaintiff Optronic Technologies, Inc., does and hereby moves the Court to exclude the testimony of Celeste Saravia, Ph.D., putative expert for Defendants and preclude him from testifying at trial, as Ms. Saravia is not qualified, her testimony is unreliable, irrelevant, and unnecessary, and her opinions are not proper rebuttal opinions as more fully set forth below.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the declaration of Matthew Borden, the complete files and records in this action, oral argument of counsel, authorities that may be presented at or before the hearing, and such other and further matters as this Court may consider.

Plaintiff Optronic Technologies, Inc. d/b/a Orion Telescopes & Binoculars ("Orion") respectfully submits this Motion to preclude testimony by Celeste Saravia, Ph.D.

## INTRODUCTION

Defendants seek to present purported expert testimony from Celeste Saravia, Ph.D. on three topics that cannot meet the standard for admissibility under the Federal Rules of Evidence. First, Dr. Saravia created a damages analysis in which she asserts that damages Orion incurred would be reduced if Orion passed Defendants' unlawful overcharges on to its customers. Long-standing Supreme Court precedent, however, holds that antitrust defendants cannot assert any such "passing-on defense." *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 494 (1968). Because this opinion is contrary to the law, it cannot help the trier of fact, and it must be excluded.

Second, Dr. Saravia argues that the analysis by Orion's expert economist, J. Douglas Zona, Ph.D., is "wholly unreliable" because he should have taken into account the fact that Defendants' collusion ended when Orion reached a settlement with Defendants' co-conspirator Synta in 2016. Dr. Saravia admits, however, that she has no factual basis for the assumption that Defendants ceased colluding in 2016 – or that they have ceased colluding at all. Because this opinion is not based on any facts, it is invalid and cannot be admitted.

Third, Dr. Saravia seeks to rebut the opinion of Orion's expert on telescope manufacturing, Jose Sasian, Ph.D. ("Dr. Sasian"), which is exclusively limited to the technical aspects of telescope manufacturing. Dr. Saravia, however, does not purport to have any knowledge about lens making, telescope manufacturing, telescopes in general, or anything about which Dr. Sasian opined. She is therefore not qualified to rebut any aspect of Dr. Sasian's opinion.

Pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), this Court serves as a gatekeeper to keep out unreliable expert testimony. The Court should preclude Dr. Saravia from presenting opinions and testimony that are contrary to law and fact and for which she has no expertise or knowledge.

## ARGUMENT

Pursuant to Federal Rule of Evidence 702, expert testimony is inadmissible unless it meets all of the following requirements. First, the witness must be "qualified as an expert by knowledge,

skill, experience, training, or education." Fed. R. Evid. 702.  Second, if the witness is qualified as an expert, he or she may testify only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case." *Id.*

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court provided the framework for the admissibility of expert testimony under Rule 702: Courts must act as "gatekeepers" to determine "whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93.  "Read together, *Daubert* and Rule 702 broadly require that an expert not only be qualified, but also that the expert's testimony be reliable and relevant." *GSI Tech., Inc. v. Cypress Semiconductor Corp.*, Case No. 5:11-cv-03613-EJD, 2015 WL 364796 (N.D. Cal. Jan. 27, 2015), at *1 (Davila, J.) (citing *Daubert*, 509 U.S. at 589-91).  Further, "[t]he court's gatekeeping function on expert evidence extends to economic analysis and the economic expert's conclusions must be arrived at in a scientifically sound and methodologically reliable fashion."  *In re Worldcom, Inc.*, 371 B.R. 33, 41 (Bankr. S.D.N.Y. 2007) (citing *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 175 F.3d 18, 34 & n. 12 (1st Cir. 1999)).

## I. THE COURT SHOULD PRECLUDE DR. SARAVIA FROM TESTIFYING TO A 100% PASSTHROUGH ASSUMPTION AND DAMAGES BASED THEREON

Dr. Saravia's Report (Borden Decl., Ex. 3) contains two opinions that fail to meet the standards for admissibility under Rule 702.  First, she provides a damages analysis based on an assumption of 100% passthrough of Defendants' price overcharges that cannot help the trier of fact because it is *directly contrary* to established antitrust law.  Second, Dr. Saravia criticizes Dr. Zona's analysis for failing to account for the supposed termination of the conspiracy at issue in this case even though she admits she has no idea whether the conspiracy has actually ended and has made no effort to find that out (Rule 702 (b), (c), (d)).  The Court should exclude both of these improper opinions.

### A. Dr. Saravia's Analysis Is Inadmissible Because It Is Contrary to Antitrust Law

An expert witness cannot offer an opinion that runs afoul of the relevant law. *Bailey v. Allgas*, 148 F. Supp. 2d 1222, 1245-46 (N.D. Ala. 2000) (excluding expert because his opinion was "contrary to law"). In *Loeffel Steel Prod. v. Delta Brands*, 387 F. Supp. 2d 794 (N.D. Ill. 2005), the court excluded the testimony of the defendant's damages expert because the expert based his conclusion on an incorrect definition of "economic loss damages," and "expert opinions that are contrary to law are inadmissible." *Id.* at 804-06. Accordingly, courts must preclude expert opinions that present an inaccurate statement of the law.

Here, certain of Dr. Saravia's damages scenarios are directly contrary to long-settled law on antitrust damages because they depend on an assumption that Orion would pass through 100% of any monopolistic overcharge by Sunny and Synta to its own downstream retail customers. (Borden Decl., Ex. 3, Saravia Report at p. 48, Table 7.) In other words, Dr. Saravia diminished the damages Defendants have to pay based on the assumption that Orion would inflict these overcharges on its customers.

Dr. Saravia's damages scenarios are presented as adjustments to Dr. Zona's damages calculation in his Report (Borden Decl., Ex. 5). Dr. Zona calculated that Orion would pass through 24.4% of any overcharge to consumers based on Orion's historical sales data.[1] (*Id.*) To recalculate damages, Dr. Saravia created a series of eight scenarios in which she substituted different variables for Dr. Zona's overcharge rate, passthrough, and elasticity. (Borden Decl., Ex. 3 at p. 48, Table 7.) In four scenarios, Dr. Saravia used the same passthrough rate that Dr. Zona calculated, *i.e.*, 24.4%. In the other four scenarios, Dr. Saravia assumed a passthrough rate of 100%.

Dr. Saravia testified that substituting a 100 percent passthrough rate results in lower damages in each such scenario: "**Q.** And if we look at Exhibit 7, your 100 percent pass-through, replacing Dr. Zona's 24.4 percent pass-through rate with your 100 percent pass-through rate consistently reduces damages, correct? **A.** That's correct." (*Id.*, 84:20-25.) Dr. Saravia did not actually calculate this 100% passthrough parameter; in fact she "did not calculate a[ny] pass-through parameter of [her] own." (*Id.* at 81:19-21.) She "simply put in 100 percent as an

---

[1] The "passthrough" rate is the rate at which Orion theoretically passed Defendants' overcharge on to Orion's customers in the form of higher prices.

alternative" and is "not offering that 100 percent as a -- as the actual pass-through rate that I think would have occurred." (*Id.* at 82:7-11.)

The thrust of Dr. Saravia's opinion – that a higher passthrough rate results in lower damages to Orion – is an improper expert opinion because it is directly contrary to established antitrust law.  Under hornbook law, a defendant cannot evade responsibility for its overcharges based on the possibility that the plaintiff may pass on a portion of the unlawful overcharges to its customers.  The reason for this is simple:  under the indirect-purchaser rule, the customers have no right to sue the defendant.  Thus, a passthrough defense would enable a defendant to escape liability for its wrongdoing.  For this reason, the Supreme Court squarely rejected that argument over fifty years ago in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 489 (1968) ("We hold that the buyer is equally entitled to damages if he raises the price for his own product.  As long as the seller continues to charge the illegal price, he takes from the buyer more than the law allows.  At whatever price the buyer sells, the price he pays the seller remains illegally high, and his profits would be greater were his costs lower.")  Accordingly, a defendant who overcharges as the result of an antitrust violation is "not entitled to assert a passing-on defense." *Id.* at 494; *Delaware Valley Surg. Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120 (9th Cir. 2008) (explaining that *Hanover Shoe* "rejected the pass-on defense"); *Meijer, Inc. v. Abbott Labs*, 251 F.R.D. 431, 433 (N.D. Cal. 2008) (same).

Here, Dr. Zona accurately calculated damages based on an economic model that incorporated a real-world passthrough analysis.  Dr. Zona took into account how much of the overcharges would actually be passed through given interaction between pricing and demand, as is plaintiffs' right.  Defendants are not entitled to respond with a damages analysis that assumes 100 percent passthrough, particularly where that number is not even claimed to bear any relationship to reality.  The Supreme Court has "refused to allow the defendants to discount the plaintiffs' damages claim to the extent that overcharges had been passed on to the plaintiffs' customers." *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 544 (1983).  The Court should therefore exclude Dr. Saravia's opinions and calculations based on an assumption of 100% passthrough.

**B.     Dr. Saravia's Critique of Dr. Zona's Damages Analysis Is Inadmissible Because It Is Based on a Factual Assumption for which She Has No Factual Support**

Just as an expert witness cannot offer an opinion that is contrary to law, she also cannot offer an opinion for which she has no factual support. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 806 (9th Cir. 1988).

Here, Dr. Saravia offers an opinion that improperly rests on an unsupported factual assumption. Dr. Saravia criticizes Dr. Zona's empirical method as "wholly unreliable" because it did not analyze damages under the assumption that the collusion and its effects came to an end when Synta settled with Orion in 2016. (Borden Decl., Ex. 3, Saravia Report ¶ 42.) The basis for Dr. Saravia's opinion is her *assumption* that because Synta agreed in the settlement to "refrain from activity in violation of applicable antitrust law," "any collusion between Synta and Ningbo Sunny that had occurred would have ended in September 2016." (*Id.* ¶ 49.) According to Dr. Saravia, Dr. Zona should therefore have used the period after September 2016 as a competitive benchmark, and it was improper for him to include lost profits after that time in his estimate of damages. (*Id.*) Dr. Saravia goes on to recalculate Dr. Zona's damages numbers based on the notion that the conspiracy – and its effects – came to an end in October 2016.

Dr. Saravia's opinion on this matter should be excluded because she has no factual basis for her assertions that (1) Sunny actually did stop colluding with Synta in September 2016, and (2) Defendants' unlawful pricing also ended at precisely that time (or at any time thereafter). Of course, the fact that Synta agreed in settlement to refrain from violating the antitrust laws does not mean that Synta actually did so, or that Sunny also ceased its unlawful conduct, or that the effects of their long-term antitrust violations immediately ended as of the date of the settlement. Indeed, such assumptions are contrary to the allegations of the First Amended Complaint. (Dkt. No. 41 ¶¶ 127, 129, 137 (alleging, in November 2017, continuing misconduct and injury).)

Dr. Saravia admitted at deposition that she does not know whether Sunny and Synta stopped colluding after Orion settled its claims against Synta: "**Q.** Is it your opinion in this matter that the alleged collusion scheme ended after Synta settled? …. **A.** I have no opinion about – I have not been asked nor have I offered an opinion about the existence or scope of any alleged conspiracy." (Borden Decl., Ex. 4, Saravia Dep. 144:10-17.) She then confirmed that she does not

stand behind her proposed assumption: "I'm not affirmatively offering the opinion that the alleged collusion scheme necessarily ended when the Synta settlement was signed." (*Id*. 145:10-13.) Dr. Saravia also admitted that she did no investigation to determine whether Sunny "stopped colluding with Synta in September of 2016," that she "didn't address that question," and that "whether they had stopped colluding after September 2016 . . . was outside the scope of my assignment." (*Id*. 36:13-15, 149:5-11.).

Without any factual support for her assertion on that Defendants' collusion ended in September 2016, or that their collusion's effect on prices also ended at that time, Dr. Saravia cannot offer an opinion criticizing Dr. Zona's analysis for failing to account for what is no more than a hypothetical scenario, nor can she offer damages scenarios based on her hypothesis that the collusion ceased at that time. The Court should therefore preclude Dr. Saravia from offering any opinions or testimony arising from or relating to her baseless assumption that there was no collusion after October 2016 and no effects of collusion continuing thereafter.

## II.     THE COURT SHOULD PRECLUDE DR. SARAVIA FROM TRYING TO REBUT DR. SASIAN'S TESTIMONY

The Court also should preclude Dr. Saravia's testimony purporting to "rebut" Dr. Sasian's testimony. Dr. Saravia offers *no* rebuttal of Dr. Sasian's opinions. Nor could she. Dr. Sasian's testimony is exclusively limited to telescope manufacturing, a topic about which Dr. Saravia admits she knows nothing. Dr. Saravia therefore cannot offer testimony regarding Dr. Sasian's opinions.

### A.     The Testimony Dr. Saravia Intends to Give Is Not Rebuttal Testimony

Defendants elected not to produce any expert reports on the Court-Ordered cut-off for doing so. As such, they waived any right to introduce non-rebuttal expert testimony. Rule 26 of the Federal Rules of Civil Procedure requires parties to provide their expert reports "at least 90 days before the date set for trial," unless otherwise specified by court order. F.R.C.P. 26(a)(2)(D)(i). The only exception is for expert testimony that is "intended solely to contradict or rebut" another party's expert testimony, in which case the party may make such disclosure "within 30 days after the other party's disclosure." F.R.C.P. 26(a)(2)(D)(ii). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule

26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

At the May 2, 2019 trial setting conference, Orion raised the issue that Defendants were going to try to sandbag Orion by raising new facts and theories in their so-called rebuttal expert reports. (Borden Decl., Ex. 9, 5/2/19 Hearing Tr. at 8:11-15.) In response, Defendants represented to the Court: "It's not true that we're going to do anything that is not properly within the scope of rebuttal testimony. Under the Federal Rules you're allowed to contradict or rebut evidence *on the same subject matter* identified by another party. That's exactly what we're going to do. We're going to produce *traditional rebuttal reports*[.]" (*Id*. at 9:22-10:3 (emphasis added).)

Dr. Saravia's description of her assignment, however, expressly contradicts Defendants' representation that they retained her to rebut Dr. Sasian's report. In Paragraph 7 of her report, she states: "I have also been asked to review and *to provide an economic perspective* on certain opinions offered by Orion's expert Dr. Jose Sasian….I have been asked *to analyze the opinions offered by Dr. Sasian from an economic perspective*." (Borden Decl., Ex. 3 ¶ 7 (emphasis added).) Nowhere in her description of that assignment does she use the word "rebut." By contrast, in Paragraph 6, Dr. Saravia states that Defendants' counsel retained her "*to review and rebut* the analyses and opinions put forth by Orion's expert Dr. J. Douglas Zona." (*Id.* ¶ 6 (emphasis added).) Dr. Saravia herself, then, understood that Defendants intended for her to *rebut* Dr. Zona's opinion, and to "*provide an economic perspective*" on Dr. Sasian's.

In accordance with the purpose for which Defendants hired her, and in contradiction of Defendants' representations to the Court, Dr. Saravia's report *does* contain new facts and theories that are *not* a rebuttal of anything in Dr. Sasian's report. Dr. Sasian is a tenured Professor in the field of Optical Sciences and Astronomy. (Borden Decl., Ex. 6 at ¶ 9.) Orion retained him "to render an opinion as to whether Sunny and Synta are capable of manufacturing similar consumer telescopes." (*Id.* ¶ 4.) Accordingly, Dr. Sasian analyzed whether the two companies had "sufficient technical expertise, manufacturing experience and intellectual property" to manufacture similar products. (*Id.* ¶ 5.) Upon reviewing evidence relating to Sunny's and Synta's technical capabilities and intellectual property holdings, he determined that they did. (*Id.* ¶¶ 36-68.) At no

point in his report did Dr. Sasian offer any financial or business opinion as to whether it would be *feasible or profitable* for Sunny or Synta to produce such products. At his deposition, Dr. Sasian confirmed that he was not offering any financial or business opinion:

> Q. Are you providing an expert opinion on whether Sunny and Synta are financially capable of manufacturing similar consumer telescopes?
>
> A. No, I am not doing that. ….
>
> Q. When you are providing an opinion that Sunny and Synta are capable of manufacturing similar technology, you are only talking about the technological or technical side, correct? ….
>
> A. Mostly, yes.
>
> Q. You are not doing it from the business side, correct?
>
> A. That's correct.

(Borden Decl., Ex. 7, Sasian Dep. 83:11-84:7.)

Despite Dr. Sasian's straightforward report and testimony affirming that his expert opinion is limited to whether Defendants were *technically capable* of manufacturing particular telescopes, Dr. Saravia's report offers addresses an entirely different topic, *i.e.*, whether "it would be *economical or profit maximizing* for them to do so." Borden Decl., Ex. 3 ¶ 36 (emphasis added). She then goes on to opine that

> there is evidence in this case that is consistent with a finding that Ningbo Sunny and Synta have business reasons – unrelated to any alleged conspiracy – for specializing in certain products. For example, [REDACTED]

*Id.*, ¶ 37. Dr. Saravia further argues that Dr. Sasian "ignores evidence that suggests [REDACTED]" *Id.*, ¶ 38.

At her deposition, Dr. Saravia referred to her report and again offered opinion as to whether Sunny and Synta may have decided not to offer competing products for business reasons: "In Paragraph 37, I do note that there is evidence in this case that's inconsistent with a finding – that is consistent with the finding that Ningbo Sunny and Synta have business reasons unrelated to any

alleged conspiracy for specializing in certain products." (Borden Decl., Ex. 4, Saravia Dep. 58:22-59:2.)

These proffered opinions are entirely improper because they do not rebut any aspect of Dr. Sasian's report—a fact that Dr. Saravia recognized at her deposition:

> Q. Okay. Does Dr. Sasian perform any analysis of the economic aspects of Sunny and Synta's ability to manufacture similar consumer telescopes?
> A. I believe he does not. ….
> Q. So Dr. Sasian performs only a technical analysis, correct?
> A. Yes. ….
> Q. And you perform only an economic analysis, correct, no technical analysis?
> A. That's correct. ….
> Q. Do you have any opinions on Sunny's technical abilities to build telescopes manufactured by Synta or vice versa?
> A. No.

(Borden Decl., Ex. 4, Saravia Dep. 270:24-271:18; 273:16-19.)  Dr. Saravia admitted that her business and financial opinions were "responding to something that Sasian doesn't analyze." (*Id.* 291:8-11.)  Defendants are not entitled to introduce new affirmative opinions regarding their "business reasons" for manufacturing different telescopes under the guise of rebuttal testimony to which Orion has no opportunity to respond.  That violates the Court's scheduling order, contradicts Defendants' representations to the Court, and is seriously prejudicial to Orion.  As Orion has not had the opportunity to adduce expert opinion testimony on the supposed "business reasons" hypothesized by Dr. Saravia, Defendants should not be permitted to do so under the guise of a rebuttal report.

**B. Dr. Saravia Lacks the Education and Training to Offer Any Rebuttal Testimony on Telescope Manufacturing**

Defendants had the opportunity to retain their own expert in the field of optical sciences to dispute Dr. Sasian's analysis of the firms' technical capabilities but were apparently unable to do so.  But as Dr. Saravia conceded at her deposition, she does not have any expertise whatsoever regarding the technical aspects of telescope manufacture.  (Borden Decl., Ex. 4, Saravia Dep. 281:21-24 (admitting "I don't have the expertise to respond to his purely technical opinions.").)

Dr. Saravia's purported "critique" of Dr. Sasian is thus an improper attempt to smuggle new (and unrebutted) substantive expert opinions, in violation of the Court's scheduling order and Rule 26.

## CONCLUSION

For the foregoing reasons, Orion respectfully requests that the Court grant its Motion to Preclude Defendant's Expert Celeste Saravia, Ph.D. from testifying at trial as to (1) any damages analysis showing that a 100% passthrough rate would decrease Orion's damages; (2) her critique of Dr. Zona's empirical method on the basis that he purportedly should have excluded any damages from after September 2016; and (3) any opinions regarding Dr. Sasian's Report or testimony or Defendants' supposed business reasons for manufacturing different telescopes.

Dated:  July 26, 2019

BRAUNHAGEY & BORDEN LLP

By:  /s/ *Jeffrey Theodore*
       *Jeffrey Theodore*

Attorneys for Plaintiff OPTRONIC TECHNOLOGIES, INC. d/b/a Orion Telescopes & Binoculars ®