J. Noah Hagey, Esq. (SBN: 262331)
  hagey@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
  borden@braunhagey.com
Jeffrey M. Theodore, Esq. (SBN: 324823)
  theodore@braunhagey.com
Ronald J. Fisher, Esq. (SBN: 298660)
  fisher@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone:  (415) 599-0210
Facsimile:  (415) 276-1808

ATTORNEYS FOR PLAINTIFF
OPTRONIC TECHNOLOGIES, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC., d/b/a Orion Telescopes & Binoculars ®, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>NINGBO SUNNY ELECTRONIC CO., LTD., SUNNY OPTICS, INC., MEADE INSTRUMENTS CORP., and DOES 1 - 25,<br><br>Defendants. | Case No: 5:16-cv-06370-EJD-VKD<br><br>**PLAINTIFF OPTRONIC TECHNOLOGIES, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE TESTIMONY OF ORION'S TELESCOPE TECHNOLOGY EXPERT DR. SASIAN**<br><br>**Date:**  September 12, 2019<br>**Time:**  9:00 a.m.<br>**Judge:**  Hon. Edward J. Davila<br>**Ctrm:**  4, 5th Floor<br><br>**Compl. Filed:**  Nov. 1, 2016<br>**First Am. Compl.:**  Nov. 3, 2017<br>**Trial Date:**  October 15, 2019 |

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

LEGAL STANDARD ............................................................................................................ 2

ARGUMENT .......................................................................................................................... 2

I. THE SASIAN REPORT ............................................................................................ 2

    A. Dr. Sasian's Education and Experience Show That He Is Highly Qualified to Opine on Telescope Manufacturing Capabilities ...................................................... 3

    B. Dr. Sasian's Report Clearly Explains His Process and the Basis for His Conclusion ................................................................................................................. 3

II. WHETHER DR. SASIAN'S METHODOLOGY IS 'REPLICABLE' IS IRRELEVANT BECAUSE HIS OPINION IS BASED UPON HIS EXPERIENCE ........ 4

III. DEFENDANTS' QUIBBLES WITH DR. SASIAN'S DATA SELECTION ARE QUINTESSENTIAL JURY ISSUES ................................................................................... 6

IV. DR. SASIAN DOES NOT OPINE ON "COMMERCIALIZATION" ............................. 8

V. DR. SASIAN'S TESTIMONY IS NOT *IPSE DIXIT* ....................................................... 10

VI. IT WAS ENTIRELY PROPER FOR DR. SASIAN TO RECEIVE ATTORNEY ASSISTANCE IN PREPARING HIS REPORT UNDER THE FEDERAL RULES ...... 10

VII. DR. SASIAN WILL HELP THE JURY UNDERSTAND EVIDENCE SHOWING THAT SUNNY AND SYNTA COULD MAKE SIMILAR PRODUCTS ..................... 12

CONCLUSION ............................................................................................................................. 13

Case 5:16-cv-06370-EJD   Document 274   Filed 08/08/19   Page 3 of 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*640 Octavia, LLC v. Pieper*,
   2019 WL 1201581 (N.D. Cal. Mar. 14, 2019) .................................................................. 5

*Cooper v. Brown*,
   510 F.3d 870 (9th Cir. 2007) ............................................................................................ 2

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ......................................................................................................... 2

*GPNE Corp. v. Apple, Inc.*,
   No. 12-cv-02885-LHK, 2014 WL 1494247 (N.D. Cal Apr. 16, 2014) ........................... 10

*In re Korean Ramen Antitrust Litig.*,
   No. 13-cv-04115-WHO, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017) ............................. 7

*In re Qualcomm Antitrust Litig*,
   328 F.R.D. 280 (N.D. Cal. 2018) ..................................................................................... 7

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   No. 07-MD-01819-CW, 2010 WL 5071694 (N.D. Cal. Dec. 7, 2010) ............................ 7

*Jordan v. Northrop Grumman Corp.*,
   CV 95-2895 ABC (Ex), 2003 WL 27366249 (C.D. Cal. Mar. 10, 2003) .................. 2, 11

*Kennedy v. Collagen Corp.*,
   161 F.3d 1226 (9th Cir. 1998) (reversing ......................................................................... 7

*Manpower, Inc. v. Ins. Co. of Pennsylvania*,
   732 F.3d 796 (7th Cir. 2013) ........................................................................................ 6, 8

*Perez v. State Farm Mut. Auto Ins. Co.*,
   No. C 06-1962 JW, 2012 WL 3116355 (N.D. Cal. Jul. 31, 2012) ............................ passim

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) ............................................................................................ 2

*Ralston v. Mortgage Inv. Group, Inc.*,
   No. 08-536-JF (PSG), 2011 WL 6002640 (N.D. Cal. Nov. 30, 2011) ............................. 5

*U.S v. Hankey*,
   203 F.3d 1160 (9th Cir. 2000) ...................................................................................... 5, 6

*United States v. Cerna*,
   2010 WL 11627594 (N.D. Cal. Dec. 17, 2010) ............................................................... 5

**RULES**

Federal Rule of Evidence 702 .................................................................................................. passim

ii   Case No. 5:16-cv-06370-EJD-VKD
ORION'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE SASIAN TESTIMONY

Plaintiff Optronic Technologies, Inc. d/b/a Orion Telescopes & Binoculars ("Orion") respectfully submits this Opposition to Defendants' Motion to Strike the Testimony of Orion's Telescope Technology Expert Dr. Sasian.

## INTRODUCTION

Orion's telescope technology expert, Professor Jose Sasian, Ph.D., brought his more than 30 years of experience in the field of optical science and design to answer one narrow question: Whether, given the specifications telescope models that Defendant Sunny has manufactured for Orion, Sunny has the technical capability to also manufacture telescope models that Sunny's competitor and co-conspirator Synta has manufactured for Orion. Dr. Sasian prepared a report in which he detailed his extensive background in the field, described the process for manufacturing telescope lenses, explained his review of the telescope specifications at issue, and reached a conclusion on the single issue before him based upon his background and experience. Because the average juror does not possess this expertise and is unlikely to have knowledge of the telescope manufacturing process, and because the question of whether Sunny had the technological capability to make telescopes that competed with Synta's is a key issue in this case, Dr. Sasian's opinions will be helpful to the jury and are a proper subject of expert testimony.

In their Motion to Strike, Defendants raise a host of arguments, none of which applies to Dr. Sasian's experience- and expertise-based opinions. They claim that his "methodology" of reviewing product specifications and drawing upon his knowledge and experience to evaluate it is not "replicable" and "has not been subjected to peer review." Even though his opinion is based on the *fact* of their product specifications, they complain that he did not "seek out inconsistent documents" or "sources that would support a contrary view." These arguments are not relevant here, where his analysis is limited to explaining whether, based upon his three decades of experience, education, and expertise, the equipment that makes Widget X can also make Widget Y.

Finally, Defendants suggest that Dr. Sasian's Report is unreliable because counsel assisted him in preparing it. Not so. The Federal Rules permit the very common practice of counsel assisting experts in preparing reports for the Court, and in any event, Dr. Sasian confirmed that the

Sasian Report accurately sets forth his opinion. None of Defendants' arguments provide any basis for striking Dr. Sasian's reliable and relevant evidence.

## LEGAL STANDARD

Under Federal Rule of Evidence 702, a witness may be "qualified as an expert by knowledge, skill, experience, training, or education." A witness who is so qualified may provide his or her expert opinion where "specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue." *Id*. Expert testimony is therefore appropriate where untrained jury members would be unable to intelligently comprehend the fact evidence and determine the particular issue without the guidance of an expert. Fed. R. Evid. 702 Advisory Committee Note. "The threshold for qualification is low: a minimal foundation of knowledge, skill, and experience suffices." *Perez v. State Farm Mut. Auto Ins. Co.*, No. C 06-1962 JW, 2012 WL 3116355 (N.D. Cal. Jul. 31, 2012) *2 (citation omitted). Further, these requirements "should be liberally construed." *United States ex rel. Jordan v. Northrop Grumman Corp.*, CV 95-2895 ABC (Ex), 2003 WL 27366249 (C.D. Cal. Mar. 10, 2003), *2.

Expert testimony is admissible under Rule 702 if it is relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Testimony is relevant if it will "assist the trier of fact to understand or determine a fact in issue," *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007), and reliable "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). The inquiry into the admissibility of expert testimony is ultimately "a flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.*, 598 F.3d at 564 (citing *Daubert*, 509 U.S. at 596).

## ARGUMENT

**I.    THE SASIAN REPORT**

Dr. Sasian's Report sets forth his qualifications and the process by which he arrived at his opinion in great detail. Among other things, it shows that he did not form his expert opinion by running tests or conducting experiments. Nor did he base his opinion on factors that are specific to Defendants' facilities. Rather, Dr. Sasian examined the specifications of the products Sunny

manufactured for Orion and drew upon his expertise to determine what capabilities an entity would need to have to make products with those specifications. He then considered whether a company that had those capabilities also had the capability to make certain products that Synta manufactures, again based on the product specifications. Nowhere in his Report does Dr. Sasian purport to opine on any aspect of Defendants' business or financial situation beyond that single technical issue.

Given Dr. Sasian's process, and the narrow question on which he was asked to opine, Defendants' arguments completely miss the mark. They attack procedures that Dr. Sasian did not employ, fault him for not using data and documents that were irrelevant to his analysis, and challenge his qualification to give opinions that he does not offer. None of Defendants' arguments provides a basis for striking his testimony.

### A. Dr. Sasian's Education and Experience Show That He Is Highly Qualified to Opine on Telescope Manufacturing Capabilities

As set forth in his Report, Dr. Sasian has extensive education and experience in optical sciences and manufacturing. (Hagey Declaration in Support of Oppo. to Motion to Strike Sasian Testimony ("Hagey Decl."), Ex. 1, Sasian Report, ¶¶ 9-17 and Ex. 1.) Specifically, he has been a full-time tenured Professor of Optical Sciences and Astronomy for the past 17 years, and his work involves "the design, fabrication, and testing of optical devices such as telescopes." (*Id*. ¶ 1.) He has taught numerous university courses on these topics, provided consultation regarding telescope optics, built many telescopes, and published articles on telescope technology. (*Id*. ¶¶ 12-16.) Dr. Sasian's vast knowledge, experience, and education easily satisfies the "low threshold" to qualify as an expert under Rule 702. *Perez*, 2012 WL 3116355 at *2.

### B. Dr. Sasian's Report Clearly Explains His Process and the Basis for His Conclusion

Dr. Sasian's Report lays out the evidence he considered and clearly states how he reached his conclusion. He begins by providing background on the components of consumer telescopes and explains that regardless of the cost of a telescope, "the basic manufacturing equipment and processes for making low-and high-end consumer telescopes are similar." (*Id*. ¶¶ 20-23.) He then defines the two basic types of telescopes, reflectors and refractors, and provides a thorough description of the process for manufacturing each. (*Id*. ¶¶ 24-32.)

Turning to the specific issue on which Dr. Sasian opines—"whether Sunny and Synta were capable of producing telescope products that competed with each other"—Dr. Sasian states that he reviewed Orion's purchasing data to see what products Sunny and Synta offered to Orion. (*Id*. ¶ 37.) He notes that he focused on two of Sunny's telescopes, the StarBlast 4.5 EQ reflector and the AstroView 90 mm EQ refractor, because (1) those provide examples of the two basic types of telescopes, and (2) since these telescopes were once made by both Sunny and Synta, they "are a useful analytical baseline." (*Id.* ¶ 38.)

Next, Dr. Sasian reviews each telescope's specifications and explains what they reveal about Sunny's manufacturing capabilities. He then discusses why that information led him to conclude that if Sunny could manufacture those models, then it could also manufacture other specific models that Synta has made for Orion. (*Id*. ¶¶ 40-45; 48-51; 53.) Finally, Dr. Sasian discusses specifications of products that Meade manufactures and opines that "even if Sunny did not have the ability to make medium- to high-end telescopes before the Meade acquisition, it had such capability afterward." (*Id*. ¶¶ 55-60.) In sum, based on his examination of Sunny's technological capabilities, as evidenced by the specifications of the products it has manufactured for Orion, Dr. Sasian concludes that "Sunny and Synta were capable of producing telescope products that competed with one another." (*Id*. ¶ 68.)

## II. WHETHER DR. SASIAN'S METHODOLOGY IS 'REPLICABLE' IS IRRELEVANT BECAUSE HIS OPINION IS BASED UPON HIS EXPERIENCE

Defendants argue that Dr. Sasian's methodology is "not replicable or supported" because it "consists entirely of reviewing certain products listed on Orion's consumer-facing website[.]" (Mot. at 8.) They contend that his testimony is inadmissible under *Daubert* "because this methodology cannot be tested, has not been subjected to peer review and publication, has an unknown error rate, and is not a generally accepted methodology in the scientific community." (*Id.*) This argument does not make sense. Dr. Sasian's opinion is grounded in his knowledge and experience, as applied to the facts of this case, not a test or calculation that the opposing party must be able to replicate.

Rule 702 "expressly contemplates that an expert may be qualified on the basis of experience." Fed. R. Evid. 702 Advisory Committee Note (2000). "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id*. If an expert satisfies that requirement, then the evidence is admissible. *See*, *e.g.*, *U.S v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (district court properly admitted expert testimony on gang retaliation where expert demonstrated basis for his knowledge and experience); *Ralston v. Mortgage Inv. Group, Inc.*, No. 08-536-JF (PSG), 2011 WL 6002640 (N.D. Cal. Nov. 30, 2011) *4 (mortgage broker with 25 years experience qualified to testify about general practices of mortgage brokers; in evaluating his testimony, "the court's attention must not focus on *what* [the expert] says in his report, but rather, *on what basis* he has to say it" (emphasis in the original)).[1]

In the present case, Dr. Sasian clearly explained how his experience led to his conclusion, why his experience is a sufficient basis for his opinion, and how he reliably applied his experience to the facts, as Rule 702 requires. He discussed his familiarity with the process for manufacturing telescope lenses and how that enabled him to opine on Sunny's ability to make a reflector with a 4.5 inch mirror and an equatorial mount. (Hagey Decl., Ex. 1, Sasian Report ¶¶ 40-41.) Dr. Sasian further explained, from his knowledge and experience, that "the manufacture of optical mirrors does not fundamentally change as the mirror in a reflector telescope gets larger, up until the mirror size exceeds eight inches[.]" (*Id.* ¶ 42.)[2] From these specific facts, Dr. Sasian concluded "that Sunny is capable of manufacturing reflector telescopes of up to eight inches in diameter," or even larger with sufficient human resources, and that there is therefore "no reason why Sunny could not manufacture 4.5 inch, six-inch, and eight-inch reflectors for Orion with either equatorial or

---

[1] Indeed, Defendants' own authorities confirm that expert testimony based on experience is admissible if the expert satisfactorily explains the connection between his or her experience, the facts of the case, and the conclusion reached—although unlike here, the experts in those cases fell far short of that standard. *See United States v. Cerna*, 2010 WL 11627594 (N.D. Cal. Dec. 17, 2010) *6 (cited in Mot. at 9); *640 Octavia, LLC v. Pieper*, 2019 WL 1201581 (N.D. Cal. Mar. 14, 2019) *2 (cited in Mot. at 3).

[2] Dr. Sasian further opined that "grinding mirrors larger than eight inches is possible with similar equipment as that used to grind smaller mirrors, although greater quality controls are required to ensure that the mirrors are not flawed." (Hagey Decl., Ex. 1, Sasian Report ¶ 42.)

Dobsonian mounts" comparable to the models that Synta provides.  (*Id*. ¶¶ 42-45.)  Dr. Sasian then performed the same analysis on Sunny's and Synta's refracting models.  (*Id*. ¶¶ 48-53.)  Because Dr. Sasian explained how his experience applies to the facts and leads to his conclusion, his testimony is proper under Rule 702.

Accordingly, there is no merit to Defendants' argument that Dr. Sasian's opinion is inadmissible because his work "cannot be verified or replicated."  (Mot. at 9.)  The Ninth Circuit explained in *Hankey* that "[t]he *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable" where the testimony depends heavily on the knowledge or experience of the expert, rather than the methodology or theory behind it.  203 F.3d at 1169.  Instead, to "verify and replicate" Dr. Sasian's analysis here, Defendants could have engaged their own telescope manufacturing expert to review the specifications for the telescope models that Dr. Sasian examined, consider the process by which telescopes are made, and reach his or her own conclusion about whether Sunny and Synta could make competing products.  Defendants, however, either chose not to retain an expert on telescope manufacturing or were unable to find one who disagreed with Dr. Sasian.  Instead, Defendants attempted to have a certified fraud examiner and economist present irrelevant challenges to Dr. Sasian's technical opinions – even though those witnesses conceded that they had no knowledge of or experience in telescope manufacturing.  (*See* Dkt. No. 258 at 17-20; Dkt. No. 260 at 7-11.)  Defendants cannot decline to hire a qualified expert to rebut Dr. Sasian's work and then seek to strike his testimony on the purported ground that his work is unverifiable.

### III. DEFENDANTS' QUIBBLES WITH DR. SASIAN'S DATA SELECTION ARE QUINTESSENTIAL JURY ISSUES

Defendants also claim that the process by which Dr. Sasian arrived at his opinion is flawed because he did not confirm the product specifications listed on Orion's website for the Starblast and AstroView telescopes, did not compare other components of the telescopes besides diameter and mount, and examined only certain telescopes.  (Mot. at 8.)  Such arguments about which data an expert chooses to use in his or her analysis, however, go to the *weight* of that evidence, not its admissibility.  *See Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 808 (7th Cir. 2013)

("The reliability of data and assumptions used in applying a methodology is tested by the adversarial process and determined by the jury; the court's role is generally limited to assessing the reliability of the methodology—the framework—of the expert's analysis."); *In re Qualcomm Antitrust Litig*, 328 F.R.D. 280, 305 (N.D. Cal. 2018) (denying *Daubert* motion where defendant argued that plaintiffs' expert used unreliable data because "district courts within and outside this district have often concluded that "experts' decisions about what data to use" in their analysis bear on the weight, not the admissibility, of expert testimony"); *In re Korean Ramen Antitrust Litig.*, No. 13-cv-04115-WHO, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017) *2, *17 (denying *Daubert* motion because, despite defendants' "reasonable criticisms," expert's choice of data and resulting opinion "may be ripe for attack on summary judgment or trial, but they are not too inherently unreliable or untenable to be excludable"); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-01819-CW, 2010 WL 5071694 (N.D. Cal. Dec. 7, 2010) *6 (denying motion to exclude expert's testimony because limitations in the data on which he relied "may impact the weight of Dr. Dwyer's evidence, but they do not clearly indicate that his analysis is unreliable"); *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (reversing summary judgment based on exclusion of expert's testimony as to cause of plaintiff's injury because opposing opinions do not "preclude the admission of the expert's testimony—they go to the *weight*, not the admissibility" (emphasis in the original)).

      For the same reason, Defendants' argument about the documents that Dr. Sasian relied on in his analysis is also unavailing. Dr. Sasian explains in his report that the basis for his opinion is the process by which telescope lenses are made, with which he has decades of experience and is intimately familiar, and the specifications of the particular telescopes at issue. He also testified that "I have the documents, the information that I need to provide the opinion that I gave." (Hagey Decl., Ex. 2, Sasian Dep. at 56:13-14.)

      Defendants complain that Dr. Sasian "did not look at a single document produced by any Defendant in this case, reviewed only one Bates numbered document produced by the plaintiff, and did not seek out any inconsistent documents or testimony[.]" (Mot. at 5 (emphasis in the original).) As an initial matter, that is false; Dr. Sasian relied upon deposition testimony and exhibits from

Defendants' witnesses and discovery responses provided by Defendants. More importantly, he reviewed the relevant dataset: Defendants' own product specifications. But even were that not so, "arguments about how the selection of data inputs affect the merits of the conclusions produced by an accepted methodology should normally be left to the jury." *Manpower*, 732 F.3d at 809. If Defendants believe that Dr. Sasian should have reviewed different documents, they will have an opportunity to cross-examine him with those documents at trial.[3]

### IV. DR. SASIAN DOES NOT OPINE ON "COMMERCIALIZATION"

Defendants devote two pages of their Motion to attempting to prevent Dr. Sasian from testifying about an opinion he is not offering. They argue that he is not qualified to testify about "commercialization" because he has not toured their plants, does not have expertise in large-scale telescope product manufacturing, and is more familiar with optics, mirrors, and lenses than telescope software. (Mot. at 10-11.) This argument is a straw man. Dr. Sasian did not offer any opinions on 'commercialization,' a term never used in Dr. Sasian's report.

He confirmed this at his deposition:

> Q. . . . Are you providing an expert opinion on whether Sunny and Synta are financially capable of manufacturing similar consumer telescopes?
>
> A. No., I am not doing that.
> . . .
> Q. . . . When you are providing an opinion that Sunny and Synta are capable of manufacturing similar technology, you are only talking about the technological or technical side, correct? [Objection.]
>
> THE WITNESS: Mostly, yes.
>
> Q. BY MS. NIKONOVA: You are not doing it from the business side, correct?
>
> A. That's correct.

(Hagey Decl., Ex. 2, Sasian Dep. at 83:8-84:7.)

---

[3] The case on which Defendants rely is equally inapplicable. The expert in *Perez v. State Farm*, 2012 WL 3116355, sought to opine about the likelihood that using certain auto repair parts would affect a car's performance. *Id.* at *3. The court excluded his testimony because he admitted that he relied largely on surveys and reports from counsel that "represented what [he] was trying to put forward," and did not seek out sources that would support a contrary view. *Id.* at *6. That case has no application here; the documents Dr. Sasian relied on here did not put forth any 'viewpoint.' Rather, they list pure facts, in the form of telescope specifications that Defendants do not contend are incorrect. (*See* Hagey Decl., Ex. 1, Sasian Report ¶ 18.)

1 | Defendants' own experts expressly conceded that Dr. Sasian does not opine upon
2 | commercial issues:

> Q. . . . Did Dr. Sasian offer any opinion as to whether it would be financially feasible for Sunny or Synta to manufacture similar consumer telescopes?
>
> A. I don't think so, no. I think he specifically said he didn't.

(Hagey Decl., Ex. 3, Redman Dep. at 286:12-17.)

> Q. . . . Does Dr. Sasian perform any analysis of the economic aspects of Sunny and Synta's ability to manufacture similar consumer telescopes?
>
> A. I believe he does not.

(Hagey Decl., Ex. 4, Saravia Dep. at 270:24-271:3.)

To the extent that Defendants mean to contend that Dr. Sasian does not have expertise to opine on the manufacture of telescopes, that is simply absurd. Dr. Sasian has been a full-time tenured Professor of Optical Sciences and Astronomy for 17 years; his work involves "the design, fabrication, and testing of optical devices such as telescopes"; and he has taught university courses on these topics, provided consultation regarding telescope optics, built many telescopes, and published peer-reviewed articles on telescope technology. (Hagey Decl., Ex. 1, Sasian Report ¶¶ 1, 12-16.)

Dr. Sasian's vast knowledge, experience, and education easily satisfies the "low threshold" to qualify as an expert under Rule 702. *Perez*, 2012 WL 3116355 at *2. The narrow issue on which Dr. Sasian opined can be summed up as follows: Given that the process for creating lenses and mirrors is the same for all lenses and mirrors within a particular range of sizes, Sunny's capability to manufacture the StarBlast 4.5 EQ reflector with a 4.5-inch mirror, and the AstroView 90mm EQ refractor with a 90-millimeter lens, means that it also has the capability to manufacture telescopes with larger lenses and mirrors of the same types, up to a certain size. (Hagey Decl., Ex. 1, Sasian Report ¶¶ 28, 32, 44-45, 51-53.) As shown in his Report, Dr. Sasian derived this opinion from his education, experience, and knowledge of the optical manufacture, not from information specific to Defendants' facilities.

In sum, Defendants are free to raise all of these issues on cross-examination if they believe they are persuasive. They are not, however, entitled to strike Dr. Sasian's testimony on the grounds that he is purportedly not qualified to provide commercial testimony that he does not seek to provide. Nor can Defendants plausibly contend that Dr. Sasian is unqualified to provide the technical opinions that he actually advances.

## V. DR. SASIAN'S TESTIMONY IS NOT *IPSE DIXIT*

Defendants repeatedly argue that the Court should reject Dr. Sasian's testimony as "*ipse dixit*," *i.e.*, "an assertion made but not proved." (Mot. at 2 (quoting Merriam-Webster Dictionary), 7, 9, 11.) They suggest that Dr. Sasian offers nothing more than a conclusory opinion and is asking the Court to simply take him at his word. Not so. *Ipse dixit* would be if Dr. Sasian, as an expert in telescope technology, simply opined that a telescope manufacturer such as Sunny must have the technological capability to make a particular telescope *without analyzing documents or explaining his reasons*. But that is not even close to what he did here. Instead, Dr. Sasian painstakingly explained the basis for his opinion, describing in detail the process of manufacturing particular lenses and why the process and equipment used for the lenses in the two Sunny models he considered is the same as for those in the Synta models to which he compared them. (Hagey Decl., Ex., 1, Sasian Report ¶¶ 19-63.)

This is not a "black box into which data is fed at one end and from which an answer emerges at the other." (Mot. at 2 (quoting *GPNE Corp. v. Apple, Inc.*, No. 12-cv-02885-LHK, 2014 WL 1494247 (N.D. Cal Apr. 16, 2014), at *4-5).) Rather, it is a thoroughly reasoned opinion that provides the entire factual basis supporting it. Such testimony is proper and admissible under Rule 702.

## VI. IT WAS ENTIRELY PROPER FOR DR. SASIAN TO RECEIVE ATTORNEY ASSISTANCE IN PREPARING HIS REPORT UNDER THE FEDERAL RULES

Defendants also argue that Dr. Sasian's testimony "is not relevant or helpful to a jury because counsel or plaintiff wrote 60 percent of his report, and he admits that he parrots the unsupported speculations of Orion's CEO[.]" (Mot. at 1.) Defendants are wrong again. The Federal Rules make clear that it is proper and expected that counsel would help prepare an expert

1  report—particularly where, as here, English is a second language for the expert. In *U.S. ex rel.*
2  *Jordan*, 2003 WL 27366249 at *2, the government sought to exclude expert testimony on the
3  ground that Sheppard Mullin—the same counsel who represent Defendants here—had written the
4  expert's report. The court denied the motion, noting that "[t]he advisory committee notes to the
5  1993 amendments to Rule 26 specifically provide for attorney assistance in the preparation of an
6  expert report." *Id*. at *3. The court therefore concluded that the attorneys' assistance in preparing
7  the report was "not a proper basis upon which to exclude the expert's testimony." *Id*.

8  The *Jordan* court also noted that the expert's adoption of the Sheppard Mullin-written
9  report was "sufficient to meet the requirements of Rule 26(a)(21)(B)." *Id*. Here, Dr. Sasian
10 testified that he stands by everything in his Report: "It may have been counsel who wrote the
11 paragraph, and I have mentioned before where there were some paragraphs which counsel has
12 possibly written them. But all these paragraphs were reviewed and discussed with me to form my
13 opinion." (Hagey Decl., Ex. 2, Sasian Dep. at 192:5-9.) Dr. Sasian further testified that he edited
14 and reviewed the report before it was finalized, that he personally checked the citations within his
15 report, and that he believes the opinions expressed in his report. (*Id.*, Ex. 2, Sasian Dep. at 218:2-
16 24; 223:2-19.) Dr. Sasian's confirmation that his report represents his opinion and analysis is
17 sufficient to satisfy Rule 26—just as Sheppard Mullin's report in the *Jordan* case did.

18 Finally, Dr. Sasian did not "admit that he parrots" Orion's CEO, Peter Moreo. Dr. Sasian
19 testified that his report contains information about the lawsuit and the allegations in order to
20 provide context and background for his opinion. (Hagey Decl., Ex. 2, Sasian Dep. at 154:11-
21 156:1.) He explained that he obtained that background information from Mr. Moreo, and that he
22 took it "as accurate." (*Id.*) The Report makes clear that Dr. Sasian obtained those background
23 statements from a third party, and that he does not intend to opine about them, by qualifying them
24 with the caveat, "I am informed." (*See*, *e.g.*, Hagey Decl., Ex. 1, Sasian Report ¶ 47.) Defendants'
25 characterization of those statements as "unhelpful parroting" is therefore incorrect.

26
27
28

## VII. DR. SASIAN WILL HELP THE JURY UNDERSTAND EVIDENCE SHOWING THAT SUNNY AND SYNTA COULD MAKE SIMILAR PRODUCTS

Rule 702 permits an expert witness to testify if his or her "specialized knowledge will assist the trier of fact to understand the evidence." Fed. R. Evid. 702. Defendants have suggested that it is "an obvious inference" that Sunny and Synta could manufacture the same telescopes, and that Dr. Sasian's proffered testimony therefore will not be helpful to the jury. (Hagey Decl. Ex. 2, Sasian Dep. at 134:8-14.) Orion agrees that Sunny was capable of manufacturing telescope models that competed with Synta—indeed, Orion alleges that the two companies could have competed with each other in the market for consumer telescopes, and that the reason why they did not is that they unlawfully agreed to divide the market between them instead. (Dkt. No. 230 at 2, 3, 5 (Order Denying Motion to Dismiss).) Nevertheless, Defendants appear intent on contesting this point at trial. Orion therefore intends to offer Dr. Sasian's expert testimony to establish that Sunny had the technical capability to make the products in question.

Defendants argue in their Motion that "no specialized knowledge is needed" for the jury to determine whether Sunny had the capability to make these models, because jurors can "read the lens diameter and mount type on a spec sheet, hear from fact witnesses about the actual manufacturing capability, and see actual purchase orders and sales invoices" to determine that question. (Mot. at 11.) That is hardly the case. Dr. Sasian's specialized knowledge of optical manufacture enables him to opine that a company that can make a reflector telescope with a 4.5-inch mirror necessarily can also make a telescope with a six-inch or eight-inch reflector, (Hagey Decl., Ex. 1, Sasian Report ¶¶ 41-45), and a company that can make a telescope with a 90-millimeter refractor necessarily can also make a telescope with a refractor lens up to 120-millimeters in aperture. (*Id*. ¶¶ 48-53.) A layperson who has no education or experience regarding how telescope lenses are made would have no way of determining the extent of a manufacturer's capabilities by "reading the lens diameter" of a particular model.

In short, Dr. Sasian's specialized knowledge, developed over decades of working in the field of optical sciences and "with the design, fabrication, and testing of optical devices such as telescopes" (Hagey Decl., Ex. 1, Sasian Report ¶ 9), will assist the jury in understanding the evidence.

## CONCLUSION

For the foregoing reasons, Orion respectfully requests that the Court deny Defendants' Motion to Strike the Testimony of Orion's Telescope Technology Expert Dr. Sasian.

Dated: August 8, 2019

BRAUNHAGEY & BORDEN LLP

By: /s/ *Matthew Borden*
      Matthew Borden

Attorneys for Plaintiff OPTRONIC TECHNOLOGIES, INC. d/b/a Orion Telescopes & Binoculars