SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
LEO D. CASERIA, Cal. Bar No. 240323
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:    213.620.1780
Facsimile:    213.620.1398
E-mail:       lcaseria@sheppardmullin.com

MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
DYLAN I. BALLARD, Cal. Bar No. 253929
NADEZHDA NIKONOVA, Cal. Bar No. 293728
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:    415.434.9100
Facsimile:    415.434.3947
E-mail:       mscarborough@sheppardmullin.com
              dballard@sheppardmullin.com
              nnikonova@sheppardmullin.com

DAVID R. GARCIA, Cal. Bar No. 151349
1901 Avenue of the Stars, 16th Floor
Los Angeles, California 90067
Telephone:    310.228.3700
Facsimile:    310.228.3701
E-mail:       drgarcia@sheppardmullin.com

Attorneys for Defendants NINGBO SUNNY
ELECTRONIC CO., LTD., SUNNY OPTICS,
INC., and MEADE INSTRUMENTS CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC. d/b/a Orion Telescopes & Binoculars, a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>NINGBO SUNNY ELECTRONIC CO., LTD., SUNNY OPTICS, INC., MEADE INSTRUMENTS CORP., and DOES 1-25,<br><br>        Defendants. | Case No. 5:16-cv-06370-EJD-VKD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO STRIKE TESTIMONY OF ORION'S TELESCOPE TECHNOLOGY EXPERT DR. SASIAN**<br><br>Date:     September 12, 2019<br>Time:     9:00 am<br>Judge:    Hon. Edward J. Davila<br>Location: Courtroom 1 – 5th Floor |

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...................................................................................................1

II.     DR. SASIAN'S REPORT AND TESTIMONY SHOULD BE EXCLUDED
        BECAUSE COUNSEL IMPROPERLY GHOST-WROTE THE MAJORITY
        OF DR. SASIAN'S REPORT ...................................................................................1

III.    PLAINTIFF ADMITS THAT DR. SASIAN WILL NOT OPINE ON
        INFORMATION FROM ORION'S CEO MR. MOREO, SO THE
        TESTIMONY SHOULD BE EXCLUDED ..................................................................8

IV.     DR. SASIAN SHOULD BE PROHIBITED FROM OPINING ON ANY
        ASPECT OF TELESCOPE COMMERCIALIZATION AND HIS
        TESTIMONY SHOULD BE LIMITED TO A "SINGLE TECHNICAL
        ISSUE," AS PLAINTIFF ADMITS ...........................................................................9

V.      EVEN IF THE COURT CHOSES TO ADMIT SOME OF DR. SASIAN'S
        OPINIONS, HIS TESTIMONY SHOULD BE LIMITED TO OPTICS AND
        THE TELESCOPE MODELS HE ACTUALLY REVIEWED ................................12

VI.     *DAUBERT* AND RULE 702 ARE APPLICABLE TO DR. SASIAN, AND
        HIS OPINIONS ARE UNRELIABLE *IPSE DIXIT* .....................................................13

VII.    CONCLUSION ....................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

Cases

*In re Jackson Nat'l Life Ins. Co. Premium Litig.*
2000 U.S. Dist. LEXIS 1318 (W.D. Mich. Feb. 8, 2000) ............................................................3

*James T. Scatuorchio Racing Stable v. Walmac Stud Mgt., LLC*
2014 WL 1744848 (E.D. Ky. Apr. 30, 2014)........................................................................3, 4, 8

*Manning v. Crockett*
1999 WL 342715 (N.D. Ill. May 18, 1999) ...........................................................................2, 7

*McClellan v. I-Flow Corp.*
710 F. Supp. 2d 1092 (D. Or. 2010)........................................................................................3

*Numatics, Inc. v. Balluff, Inc.*
66 F. Supp. 3d 934 (E.D. Mich. 2014) .......................................................................2, 3, 4, 5, 7

*On Track Innovations Ltd. v. T-Mobile USA, Inc.*
106 F. Supp. 3d 369 (S.D.N.Y. 2015) ......................................................................................9

*Ross v. City of Rockford*
2018 U.S. Dist. LEXIS 51398 (N.D. Ill. Mar. 27, 2018) .............................................................7

*Stein v. Foamex Int'l, Inc.*
2001 U.S. Dist. LEXIS 12211 (E.D. Pa. Aug. 15, 2001)..............................................................3

*U.S. ex rel. Jordan v. Northrop Grumman Corp.*
2003 WL 27366249 (C.D. Cal. Mar. 10, 2003) .....................................................................5, 6

Rules

Fed. R. Civ. Pro. 26 .........................................................................................................2, 7

Fed. R. Civ. Proc. 37 ..........................................................................................................7

Fed. R. Evid. 702 .............................................................................................................13

Other Authorities

6 Moore's Federal Practice - Civil § 26.23[5] (2019) .................................................................6

## I.   INTRODUCTION

Discovery has established that Dr. Sasian's report was actually substantially authored by Plaintiff's counsel, not Dr. Sasian.  The involvement of Plaintiff's counsel comfortably exceeded the limited attorney assistance to experts permitted under the Federal Rules.  This impropriety was exacerbated by counsel's selective identification of the only documents and portions of depositions on which Dr. Sasian's opinion is based, and a single conversation with Orion's CEO repeatedly cited as support, in fact, lasted less than an hour, and about which Dr. Sasian has virtually no memory.  Dr. Sasian's report should accordingly be struck in its entirety.

In any event, for the reasons described below, Dr. Sasian should be ordered not to opine on information received solely from Orion's CEO, Mr. Moreo, and all such testimony should be precluded.

Next, if his testimony is not stricken in its entirety, Dr. Sasian should be precluded from testifying about any aspect of the economics of any commercial telescope manufacture beyond his single basic opinion that Ningbo Sunny could theoretically manufacture certain telescopes made by Synta for Orion.  Dr. Sasian's background is entirely academic in optics and he has no experience whatsoever in the manufacture of telescopes in commercial quantities.  Consequently he has no basis for any related testimony that such manufacturing by Ningbo Sunny would have been "easy" or viable.

Finally, if any of Dr. Sasian's opinions are admitted, they must be confined to the limited number of telescope models that he admits he actually reviewed.  He has established no basis for any ability to offer a broader opinion about the purported capacity of Ningbo Sunny to manufacture all of the many different types of telescopes at issue.

## II.   DR. SASIAN'S REPORT AND TESTIMONY SHOULD BE EXCLUDED BECAUSE COUNSEL IMPROPERLY GHOST-WROTE THE MAJORITY OF DR. SASIAN'S REPORT

Defendants demonstrated in the opening brief that Dr. Sasian's testimony should be excluded "because counsel for plaintiff wrote 60 percent of his report, and he admits that he parrots the unsupported speculations of Orion's CEO and relies solely on information cherry-picked by counsel to support his ultimate conclusion."  Dkt. 254, Defs.' Mot. to Strike Dr. Sasian

("Mot."), at 1:7-10, 5:1-7:27.  In its Opposition to Defs.' Mot. to Strike Dr. Sasian, Plaintiff does not deny that counsel wrote most of Dr. Sasian's report, and only relies on one distinguishable case for support, which does not reflect the state of the law.  Dkt. 274, Plf. Opp. to Defs.' Mot. to Strike Dr. Sasian ("Opp.").  Plaintiff's opposition also does not address the remaining two interrelated and contributing issues raised by Defendants: (1) counsel cherry-picking all documents and depositions that form the basis of Dr. Sasian's opinion, and (2) Dr. Sasian blindly relying on a short conversation with Orion's CEO that he has no memory of, and that counsel placed in the report.  Mot. at 1:7-10, 5:1-7:27.  Dr. Sasian's own testimony and admissions show that Plaintiff's counsel crossed the line from permissible assistance to improper ghostwriting.

The Federal Rules anticipate some *limited* attorney assistence, but the expert's written report "must" be "prepared" by the expert, not counsel.  Fed. R. Civ. Pro. 26.  Attorney assistence "generally is limited to ensuring that Rule 26's formal requirements are satisfied.  The Rule does not permit a party to prepare the report for the witness." *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 942-43 (E.D. Mich. 2014) (collecting authorities).  There is no bright-line rule allowing unlimited attorney participation in an expert report — but there is a point at which counsel's participation goes too far.  "Determining whether counsel crosses the line separating permissible assistance from improper participation in the expert's report writing calls for a fact-specific inquiry.  The key question is whether counsel's participation so exceeds the bounds of legitimate assistance as to negate the possibility that the expert actually prepared his own report." *Numatics*, 66 F. Supp. 3d at 942-43.  "[A]bject ghostwriting" is "not allowed under any circumstances." *Manning v. Crockett*, 1999 WL 342715, at *3 (N.D. Ill. May 18, 1999).

Here, it is undisputed that counsel for Plaintiff wrote 60 percent of Dr. Sasian's report, including a number of key facts and conclusions (listed below) which Dr. Sasian admits he lacks memory or understanding.  *See* Mot. at 1:8, 5:3-6, 6:17-20, 7:7-22.  Dr. Sasian does not know if

parts of his report that were drafted by counsel were accurate or correct.  Sasian Dep. Tr.[1] at 169:19-23.  Dr. Sasian spent little time on report writing and did not read many of the documents on his documents considered list.

Courts have excluded expert testimony based on similar facts.  *See*, *e.g.*, *Numatics*, 66 F. Supp. 3d at 941-46; *James T. Scatuorchio Racing Stable v. Walmac Stud Mgt., LLC*, 2014 WL 1744848, at *6 (E.D. Ky. Apr. 30, 2014); *McClellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092, 1124-25 (D. Or. 2010) (excluding expert where counsel provided raw data, identified test subjects, and had expert correct issues in his report); *Stein v. Foamex Int'l, Inc.*, 2001 U.S. Dist. LEXIS 12211, at *16 (E.D. Pa. Aug. 15, 2001) (excluding expert that played no substantial role in preparing the report); *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 2000 U.S. Dist. LEXIS 1318, at *2-3 (W.D. Mich. Feb. 8, 2000) (similarity between expert's purported report and report prepared by counsel in a different case showed that the report was prepared by counsel not expert, and was thus excluded).

In *Numatics, Inc. v. Balluff, Inc.*, "[t]he problems with Justice's [the liability expert] testimony stem from the fact that he did not draft his own report; defense counsel drafted it for him."  66 F. Supp. 3d at 941.  That expert admitted that "he did not draft the report" and that "counsel for the defendants, drafted the report and gave it to Justice to review and sign."  *Id*. at 944.  The court excluded the expert from testifying in the case because he "is merely a party's lawyer's avatar" and called the expert a "highly qualified puppet."  *Id*. at 941-946.  Facts that reinforced the court's conclusion were that the expert did not review all of the depositions that he claimed, and that he "devoted less than 30 hours developing his opinions about the case, nearly half of which was spent at or traveling to the law office of [counsel]."  *Id*. at 944.  The court was not persuaded by the argument that the expert reviewed and assented to the report—even though the expert claimed he "met with counsel for the defendants for about eight hours to review the report, correcting parts of the report that did not reflect Justice's views of the case, and reviewing

---

[1] Excerpts from Dr. Sasian's Deposition Transcript cited herein are attached as **Exhibit A** to the Declaration of Nadezhda Nikonova.

the prior art and patent"—because the report "does not represent [the expert's] own commentary on the evidence." *Id*. at 944.

In *James T. Scatuorchio Racing Stable*, the court excluded an expert because counsel wrote his report and gave it to the expert to review. 2014 WL 1744848, at *6. The expert reviewed the report for 60 to 90 minutes, made some edits, assented to its content, and signed the report. *Id*. at *1, 6. The expert had a difficult time identifying and distinguishing his work from counsel's work. *Id*. The expert spent only 15 to 20 hours on the case in total. *Id*. at *1. "[T]he Court concludes that he did not substantially participate in the creation of his report. Instead, he adopted the opinions of Defendant Jones and signed a copy of the report." *Id*. at *6.

The facts in this case are equally damming and, taken together, weigh heavily toward excluding Dr. Sasian. Dr. Sasian spent only 25 to 30 hours on this case in total, about half of which were spent preparing for his deposition. That is similar to the expert excluded in *Numatics* (less than 30 hours and "nearly half" of that time was not spent writing the report) and the expert excluded in *Scatuorchio* (15 to 20 hours). Sasian Dep. Tr. at 47:17-22; *Numatics*, 66 F. Supp. 3d at 944; *James T. Scatuorchio Racing Stable*, 2014 WL 1744848, *1, 6.

Plaintiff also claims that "Dr. Sasian relied upon deposition testimony and exhibits from Defendants' witnesses and discovery responses provided by Defendants." Opp. at 7:28-8:1. That is not true. "Counsel for Orion" drafted Dr. Sasian's documents considered list, and included documents that Dr. Sasian **never read**. Sasian Dep. Tr. at 51:21-25 (admitting that counsel wrote the list, which he "didn't check for accuracy"); *id*. at 49:21-50:24 (Dr. Sasian did not read *any* of the Plaintiff and Defendant discovery responses listed on his documents reviewed list). He also admitted that he only read the small portions of certain depositions that counsel instructed him to read, and only reviewed one exhibit from one deposition as directed by counsel. *Id*. at 179:7-180:6 (admitting that counsel gave him "a suggestion of some paragraph" to read in the deposition and that he only "read some parts"); *id*. at 224:6-23 (admitting that he did not read every deposition listed on his documents considered list, that he never read an entire deposition and only read "parts," and that he did not look at any deposition exhibit except the one suggested by counsel).

These admissions weigh heavily toward excluding Dr. Sasian's report. *See Numatics,* 66 F. Supp. 3d at 944-45 ("Further reinforcing this conclusion is Justice's inability to discuss any of the depositions listed in his report. Although the report Justice signed asserts that he reviewed twelve deposition transcripts before forming his opinions, Justice conceded at his own deposition that he 'can't definitely' say that he read all of the documents listed in the report. . . . The conclusion is inescapable that Justice is nothing more than a 'highly qualified puppet' and the opinions in his report do not reflect his own reasoned views of the case.").

There is no question that counsel wrote more than half of Dr. Sasian's report. *Id*. at 48:23-49:4. Below are examples of portions of the report that Dr. Sasian admitted ***counsel drafted***:

- All paragraphs that begin with "I am informed" and that rely on Mr. Moreo. "Counsel for Orion" wrote ***all*** of the sentences summarizing the conversation with Mr. Moreo, which begin with "I am informed." Sasian Dep. Tr. at 77:16-78:18.

- Paragraph 22 of Dr. Sasian's report. Dr. Sasian does not recall "who exactly wrote that" paragraph, (*id*. at 98:7-11), and cannot even distinguish portions of his report that he wrote and that counsel wrote.

- Paragraph 47 of Dr. Sasian's report. Dr. Sasian did nothing to verify whether this paragraph was true and had "no idea" if it was correct. *Id*. at 156:7-20, 169:19-23.

- Paragraphs 57 and 60-61 of his report. *Id*. at 187:19-188:6, 191:15-192:19.

- Paragraph 64. *Id*. at 199:8-11.

The only case Plaintiff relies on in an attempt to normalize this practice is distinguishable and has never been cited by another court. Opp. at 11:1-17 (citing *U.S. ex rel. Jordan v. Northrop Grumman Corp.*, 2003 WL 27366249 (C.D. Cal. Mar. 10, 2003)).[2] *Jordan* is a False Claims Act *qui tam* case where the U.S. government challenged Northrop's quality assurance expert because there was considerable dispute over how the expert report was prepared and to what extent Northrop's counsel assisted with the report. Id. at *1-3. At first the expert testified that he dictated the entire report to counsel. *Id.* at *2. Later the expert explained that counsel helped him

---

[2] Plaintiff notes that the case involved "the same counsel who represent Defendants here." Opp. at 11:2-4. First, this information is irrelevant. Second, Plaintiff's irrelevant assertion is false. The case caption shows that co-counsel in the *Jordan* case were associated with the global law firm Sheppard Mullin, but it is not the same attorneys representing Defendants in the current litigation.

with an outline. *Id*. Unlike in this case, there was no express admission by the expert and no other evidence that counsel wrote large swaths of the expert report. The government even argued that the expert destroyed notes that could have shown that counsel wrote the report for him, , but ultimately lacked such evidence. *Id*. at *3. The Court in *Jordan* did not exclude the expert, holding that counsel may "give ***some*** assistance to an expert witness in the preparation of the report" so long as the report is ultimately "adopted by the expert." *Id*. (emphasis added).

Plaintiff seems to contend, based on this single case that has never been cited by another court, that counsel's drafting of an expert report is never a basis for excluding the expert testimony if the expert simply confirms that his report as written by counsel represents his opinion. *See* Opp. at 11:16-17. That is not where the law stands today.

> The better view rejects the contention that a report prepared by counsel is the report of the expert, even if the expert "substantially' agrees with its conclusions. Even though the advisory committee note acknowledges that counsel may provide assistance to experts in preparing the reports, the rule does not contemplate blanket adoption of reports prepared by counsel or others, let alone equivocal adoption. Rather, the rule is intended to facilitate discovery by allowing an examination of the work of the expert. A report prepared by the expert exposes the thought process and method of the expert in advance of an oral examination. Its discipline both reduces the incentives of witnesses to present preliminary or tentative views and to tailor their opinion to an advocates' case. While others may assist in the preparation of the report, the final report must be that of the expert.

6 Moore's Federal Practice - Civil § 26.23[5] (2019).

Plaintiff further unconvincingly claims that "Dr. Sasian confirmed that the Sasian Report accurately sets forth his opinion" and that he "stands by everything in his Report." Opp. at 1:27-2:1; 11:9-10. However, Dr. Sasian essentially disclaimed that large portions of his report are accurate by conceding that he simply assumes the information he received was correct and conducted no independent verification. Mot. at 7:14-27. After admitting that counsel wrote many key paragraphs of his report and not knowing what they mean or understanding the underlying sources, he claimed, toward the end of the deposition right after a break: "these paragraphs were reviewed and discussed with me to form my opinion." But he quickly admitted that he never said this before and agreed that he made this statement right after taking a break with counsel. Sasian Dep. Tr. at 192:10:-19. Dr. Sasian never made this caveat again for the rest of the deposition.

Nor did Dr. Sasian have enough time to fully review the report written by counsel. His report was due January 3, and he only reviewed it "[e]arly in January . . . probably the 2nd or 3rd." Sasian Dep. Tr. at 221:8-21. "***The reality is that there was very little time***." *Id*. at 222:25-223:1 (emphasis added). "Preparation implies involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement." *Manning*, 1999 WL 342715, at *3; *see also Numatics*, 66 F. Supp. 3d at 942-43 ("preparing the expert's opinion from whole cloth and then asking the expert to sign it if he or she wishes to adopt it is not [permissible]").

Plaintiff also fails to address in its opposition Defendants' issues with counsel's cherry-picking of the telescope products for Dr. Sasian. (Instead, Plaintiff focuses on whether it was appropriate for Sasian to compare certain components and not others. Opp. at 6:21-8:6.) Counsel drafting large portions of the report and cherry-picking data for the expert to use make Dr. Sasian's opinions not his own. Plaintiff also fails to address the contributing issue of Dr. Sasian's reliance on Orion's CEO, Mr. Moreo, via the summary and drafting of counsel, as described in the next section.

In summary, counsel wrote most of Dr. Sasian's report, chose the telescope products Dr. Sasian reviewed, and picked the documents, portions of depositions, and specific exhibits that Dr. Sasian reviewed. Dr. Sasian admitted that he only looked at the portions counsel gave him and only one exhibit that counsel told him to review. That is not expert testimony. That is the Plaintiff testifying through an expert. Dr. Sasian "has surrendered his role to [Orion's] counsel, and that is not how the adversary process works." *Numatics*, 66 F. Supp. 3d at 942; *see also Ross v. City of Rockford*, 2018 U.S. Dist. LEXIS 51398, at *14 (N.D. Ill. Mar. 27, 2018) (explaining that "[e]xperts should not be attorneys' puppets who merely parrot opinions ginned up by counsel" and citing the "policy consideration" *against* encouraging counsel to ghost write expert reports).

When the disclosure requirements of Rule 26 are violated, Rule 37 mandates preclusion of the evidence unless the failure was substantially justified or is harmless. Fed. R. Civ. Pro. 37(c). There is no justification for ghostwriting an expert report. See *Numatics*, 66 F. Supp. 3d at 941 ("The Court finds that practice to be a remarkable breach of ethics and protocol, which defense

counsel brazenly attempted to justify at oral argument.").  The failure is not harmless and prejudices Defendants since Plaintiff's counsel cannot be cross examined and Mr. Moreo was already deposed well before Dr. Sasian submitted his report and the fact discovery cutoff.  If allowed to testify, Dr. Sasian "would be offering the opinions of [Plaintiff Orion] under the guise of an expert while simultaneously preventing [Plaintiff's counsel] from being cross-examined on those opinions."  *See James T. Scatuorchio Racing Stable*, 2014 WL 1744848, at \*7.

Accordingly, Dr. Sasian's entire testimony should be excluded.  In the alternative, all portions of Dr. Sasian's report that were written by counsel, and corresponding testimony, should be excluded.

**III.    PLAINTIFF ADMITS THAT DR. SASIAN WILL NOT OPINE ON INFORMATION FROM ORION'S CEO MR. MOREO, SO THE TESTIMONY SHOULD BE EXCLUDED**

Plaintiff claims that Dr. Sasian "does not intend to opine about" facts that came solely from Mr. Moreo.  Opp. at 11:21-24.  That is not what Dr. Sasian said in his deposition.  Sasian Dep. Tr. at 67:9-11 ("Q: You use information provided by Mr. Peter Moreo as a basis for your conclusions?  A. In part, yes."); *see also id*. at 74:22-23 ("I am quoting Mr. Moreo on a number of items in my report"); *id*. at 151:21-25 and 156:7-20 (admitting that Mr. Moreo's information that counsel wrote "supports my conclusion").

Dr. Sasian had a 40 minute conversation with Mr. Moreo a week before his report was due.  *Id*. at 68:10-18.  He admitted: "I barely, barely recall the details of the conversation."  *Id*. at 69:14-19.  He did not take notes, but Orion's counsel was present during this conversation.  *Id*. at 69:23-25, 72:15-24.  In his deposition, Dr. Sasian admitted that "Counsel for Orion" wrote ***all*** of the sentences summarizing the conversation with Mr. Moreo, which begin with "I am informed."  *Id*. at 77:16-78-18 ("Q: Did counsel for Orion write all of the portions of your report that cite to your discussion with Mr. Moreo . . . A: Yes.").

Tellingly, counsel for the Plaintiff now claims in the opposition brief that Dr. Sasian "does not intend to opine about" these facts.  Opp. at 11:21-24.  Plaintiff cannot have it both ways.  The Court should issue an Order prohibiting Dr. Sasian from opining on any fact he received from his interview with Mr. Peter Moreo, as admitted in Plaintiff's opposition.  This is especially important

because Dr. Sasian relies on Mr. Moreo as the sole source (with no independent verification) for the two telescope products he analyzes and basis his entire expert opinion.  Sasian Dep. Tr. at 129:25-131:1; 132:18-133:14 (clarifying that "it may have been Mr. Moreo who suggested these two telescopes," but it may also have been "counsel").  "It is not appropriate to put an expert gloss on this testimony. . . . to the extent the report simply parrots the testimony of Mr. [Moreo] it must be excluded."  *On Track Innovations Ltd. v. T-Mobile USA, Inc.*, 106 F. Supp. 3d 369, 413 (S.D.N.Y. 2015).

**IV.    DR. SASIAN SHOULD BE PROHIBITED FROM OPINING ON ANY ASPECT OF TELESCOPE COMMERCIALIZATION AND HIS TESTIMONY SHOULD BE LIMITED TO A "SINGLE TECHNICAL ISSUE," AS PLAINTIFF ADMITS**

Plaintiff concedes that "Dr. Sasian does not opine on 'commercialization.'"  Opp. at 8-10; *see also id*. at 1:5-16 (describing Dr. Sasian's testimony as answering "one narrow question" and opining on a "single issue").  Plaintiff agrees that "Dr. Sasian's opinions" should be "exclusively limited to telescope manufacturing" because he is not "qualified to offer any such testimony" regarding "any financial or business opinion as to whether it would be *feasible or profitable* for Sunny or Synta to produce such products."  Dkt. 258, Plaintiff's Mot. to Preclude Redman ("Plf. Redman Mot."), at 3:3-4, 3:28-4:2 (emphasis in original).  Dr. Sasian's testimony is thus properly limited to a "single technical issue."  Opp. at 3:5 (admitting that Dr. Sasian does ***not*** "purport to opine on any aspect of Defendants' business or financial situation beyond that single technical issue").  But Dr. Sasian does encroach on Defendants' and Synta's business situation and the feasibility of producing certain telescopes.  That testimony, described below, should be stricken by Plaintiff's own admission.

First, Dr. Sasian goes beyond his stated expertise, as admitted by Plaintiff in its Opposition brief, in contending that "it would have been ***easy*** for Sunny to manufacture the telescopes that Synta made for Orion without ***significantly modifying*** its ***machinery*** and ***operations***."  Dkt. 274 (Sasian Rep.) at ¶ 60 (emphasis added).  But Dr. Sasian admits to having no knowledge about the machinery or the operations of Ningbo Sunny, Synta, Meade, and Celestron.  Sasian Dep. Tr. at 180:13-181:24.  Indeed, "counsel for Orion" wrote that paragraph of Dr. Sasian's report, which explains why Dr. Sasian could not explain what it meant or how he used his expertise to opine that

"it would have been *easy*" for Ningbo Sunny to make certain telescope it never made before. Sasian Dep. Tr. at 188:4-6 ("Q: What about paragraph 60, did you write that or did counsel write that? A: They may have been counsel for Orion."); *id*. at 189:20-24 ("Q: You are not opining on how strenuous or difficult it would have been to actually do it, right? A: Yes.") (objection omitted).   In a separate filing, Plaintiff confirmed that Dr. Sasian is not qualified to offer testimony about "whether it would be *feasible* or *profitable* for Sunny or Synta to produce such products."  Plf. Redman Mot. at 3:28-4:2 (emphasis in original).

Second, Dr. Sasian testifies outside of his area of expertise by claiming that his conclusions apply to non-Orion products that he never analyzed:  "And I also mentioned that my opinion was on the products for Orion, but it is obvious that if Sunny can make products for Orion, well, Sunny can sell them to anyone else. . . . Because if somebody requires the same product and the company, Sunny knows how to make it, *they can easily sell it to someone else*." Sasian Dep. Tr. at 126:16-25.  Dr. Sasian further testified that he concludes that for Ningbo Sunny, "the type of machinery, the type of technology *can be easily extended* to make bigger parts."  *Id*. at 144:19-145:5.

Third, Dr. Sasian oversteps his expertise when he states "that Sunny is capable of manufacturing reflector telescopes of up to eight inches in diameter, or even larger *with the investment of human resources* to ensure proper quality controls."  Sasian Rep. ¶ 44 (emphasis added); *see also* Opp. at 5:21-22 (confirming the term is referring to "sufficient human resources").  Dr. Sasian knows nothing about Ningbo Sunny's human resources or what would need to occur within the company to increase quality controls, if that is even possible.  He knows nothing about large companies or how they manufacture.  This conclusion goes well beyond Dr. Sasian's "sole" technological opinion, as Plaintiff agrees.

Fourth, Dr. Sasian oversteps his expertise when he concludes that there is "*no reason* why Sunny could not manufacture" certain reflector and refractor telescopes.  *See* Opp. at 5:22-6:1 (quoting the Sasian Report) (emphasis added); Sasian Rep. at ¶ 53 ("I perceive no reason why Sunny could not manufacture refractors …"); Sasian Rep. ¶ 45 ("I perceive no reason why Sunny could not manufacture … reflectors"); Sasian Dep. Tr. at 124:6-13 (confirming his conclusion that

"I see no reason why Sunny could not manufacture refractors . . .").  These conclusions do not appear to be limited to theoretical technology topics.  Dr. Sasian has already ventured into the area of human resources, operations, and expanding machinery that he has never seen or knows anything about.  He cannot be allowed to testify that there is "no reason" Defendants could not manufacture each other's telescopes, or how "easy" such manufacturing would be, since there could be many reasons that he has not considered and is not qualified to analyze.

Plaintiff argues that Dr. Sasian is qualified to opine on the manufacture of telescopes without citation.  Opp. at 9:11-17.  Dr. Sasian is a professor of *optics*, not telescope manufacturing.  Plaintiff incorrectly claims that Dr. Sasian built "many telescopes."  *Id*. at 9:15.  But Dr. Sasian has only built two telescopes, one for academia and one for fun, that he does not categorize as "consumer telescopes" (the type of product he is opining on in this case).  Sasian Dep. Tr. at 115:19-116:4.  He also has no experience at all with large-scale telescope manufacturing.  In his deposition, Dr. Sasian admitted that he does not know Ningbo Sunny's machinery and had not requested or reviewed any documents to find out.  Sasian Dep. Tr. at 146:2-11.  He also has no knowledge of Ningbo Sunny's investment in human resources and did nothing to find out.  *Id*. at 146:21-147:9.

Plaintiff seems to concede that Dr. Sasian's methodology and knowledge is limited to "the process for creating lenses and mirrors" and is based on his "knowledge of the optical manufacture."  Opp. at 9:19-27.  Plaintiff also admits that the basis for Dr. Sasian's opinion regarding Defendants' ability to make each other's telescopes is "not from information specific to Defendants' facilities."  *Id*. at 9:25-27.  That is precisely the type of "commercial testimony" that Dr. Sasian is unqualified to provide.

The Court should prohibit Dr. Sasian from offering any opinion relating to commercialization of telescopes, including whether Ningbo Sunny and Synta could profitably, feasibly, efficiently, and/or easily make the same types of telescopes.

**V.    EVEN IF THE COURT CHOSES TO ADMIT SOME OF DR. SASIAN'S OPINIONS, HIS TESTIMONY SHOULD BE LIMITED TO OPTICS AND THE TELESCOPE MODELS HE ACTUALLY REVIEWED**

As Defendants demonstrated in the Motion to Strike, Dr. Sasian is not knowledgeable about several telescope components beyond optics, knows very little about manufacturing (having built only two telescopes – one for a university and one recreationally), and knows nothing about commercial manufacturing of large companies like Ningbo Sunny, Meade, Synta, and Celestron. Mot. at 9:16-11:8. Plaintiff presents no facts or evidence in its opposition to show otherwise. At most, Dr. Sasian is qualified to testify about optics. If the court decides not to exclude Dr. Sasian entirely, his testimony should be limited to optics, rather than all telescope manufacturing.

Furthermore, Dr. Sasian's testimony must be limited to the types of telescope models he actually reviewed — it cannot apply to *all* telescopes that Orion purchased from Ningbo Sunny or Synta. Sasian Dep. Tr. at 96:21-97:1 ("Q: Do you have an expert opinion on telescope products that are not listed in the exhibits of your expert report? A. No, I don't have an opinion of that.").

For example, Dr. Sasian only discusses "two basic types of telescopes, reflectors and refractors." Opp. at 3:27. Dr. Sasian's testimony should be limited only to optics of refractor and reflector telescopes.

Dr. Sasian also admits that his testimony only applies to refracting telescopes with lens sizes between 1 to 5 inches, and reflecting telescopes "from three to eight, ten inches." Sasian Dep. Tr. at 112:5-23. He admits that he is not providing an expert opinion on a telescope with a lens diameter of 12 inches or higher. *Id*. at 112:18-113:5; 114:11-15 ("Q: Are you providing an expert opinion on telescopes containing lens diameters of more than ten inches? A: No."). But Orion sells telescopes at much greater range. Dr. Sasian's testimony should be limited only to telescopes that have a lens diameter of ten inches or smaller. *Id*. at 111:4-6 (for example, "a 16-inch telescope will likely be outside – what we would call the consumer product").

Thus, Dr. Sasian's testimony should be limited to an analysis of optics for reflector and refractor telescopes of a certain size that Orion purchased from the Defendants.

## VI.    *DAUBERT* AND RULE 702 ARE APPLICABLE TO DR. SASIAN, AND HIS OPINIONS ARE UNRELIABLE *IPSE DIXIT*

Under Plaintiff's reading of the case law, only "a test or calculation" needs to meet the reliability standard of *Daubert* and Rule 702.  Opp. at 4:19-27, 5:24-27.  Plaintiff ignores all case law that applies Rule 702 and *Daubert* to industry experts.  And Plaintiff does not attempt to distinguish any of the cases cited in Defendants' opening motion regarding Dr. Sasian's opinion being "ipse dixit" as defined by the case law.  Mot. at 2:11-3:15; Opp. at 10:6-22.  Plaintiff fails to address Defendants' arguments that a "lack of an articulated methodology for choosing which sources to rely upon," like having data cherry-picked by counsel or the client, "is precisely the type of *ipse dixit* that is not permissible under *Daubert*."  Mot. at 3:9-15 (citing *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3505003, at *3 (N.D. Cal. June 2, 2015)); *see also id*. at 7:1-6, 9:6-15.

Dr. Sasian holds himself out to be a *technical* expert, but provides no reliable methodology for testing his technical expertise.  This issue is confounded by the fact that counsel wrote most of Dr. Sasian's report and Dr. Sasian relies on Mr. Moreo's statements that counsel also drafted.

## VII.    CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion and strike Dr. Sasian's expert report and preclude him from offering any opinions or testimony in this case.  In the alternative, the Court should strike portions of Dr. Sasian's testimony that go beyond his expertise, go beyond his assignment and analysis, and that counsel drafted.

Dated:  August 15, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    */s/ David R. Garcia*
_____
DAVID R. GARCIA

Attorneys for Defendants NINGBO SUNNY ELECTRONIC CO., LTD., SUNNY OPTICS, INC., and MEADE INSTRUMENTS CORP.