J. Noah Hagey, Esq. (SBN: 262331)
    hagey@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
    borden@braunhagey.com
Jeffrey M. Theodore, Esq. (SBN: 324823)
    theodore@braunhagey.com
Ronald J. Fisher, Esq. (SBN: 298660)
    fisher@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR PLAINTIFF
OPTRONIC TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC., d/b/a Orion Telescopes & Binoculars ®, a California corporation,<br><br>             Plaintiff,<br><br>     v.<br><br>NINGBO SUNNY ELECTRONIC CO., LTD., SUNNY OPTICS, INC., MEADE INSTRUMENTS CORP., and DOES 1 - 25,<br><br>             Defendants. | Case No: 5:16-cv-06370-EJD-VKD<br><br>**PLAINTIFF OPTRONIC TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF MOTION TO PRECLUDE TESTIMONY BY CELESTE SARAVIA, Ph.D.**<br><br>**Date:**     September 12, 2019<br>**Time:**     9:00 a.m.<br>**Judge:**    Hon. Edward J. Davila<br>**Ctrm:**     4 – 5th Floor<br><br>**Compl. Filed:**       Nov. 1, 2016<br>**First Am. Compl.:**  Nov. 3, 2017<br>**Trial Date:**           October 15, 2019 |

Plaintiff Optronic Technologies, Inc. d/b/a Orion Telescopes & Binoculars ("Orion") respectfully submits this Reply in Support of its Motion to Preclude Testimony of Celeste Saravia.

**INTRODUCTION**

In its Opening Brief, Orion showed that Dr. Saravia has no legal or factual basis for two specific aspects of her alternative damages calculations: (1) a 100% passthrough rate that she admits is not correct and is not based on any calculations or data and (2) her assumption that collusion ended in 2016, for which she has not "done any analysis . . . for purposes of this case." Blackletter law and the plain text of Rule 702 require exclusion of these opinions and any damages calculations based thereon.

Defendants do not deny that these aspects of Dr. Saravia's analysis lack any basis in law or fact – or that those deficiencies normally lead to exclusion. Instead, Defendants insist that Dr. Saravia's opinions can be defended as a "sensitivity" analysis of Dr. Zona's conclusion. But a quick review of her report shows that it contains nothing resembling a proper sensitivity analysis. Defendants cannot introduce baseless and unlawful alternative damages calculations by calling them a sensitivity analysis.

Nor can Defendants introduce new financial and economic opinions on a supposed "critical point" that they failed to address with opening expert opinions at a time when Orion would have an opportunity to respond by framing them as a rebuttal to Orion's technical expert on telescope technology. Dr. Saravia's purported rebuttal of Dr. Sasian has nothing to do with the technical subject matter of his report, as to which Dr. Saravia has no expertise and no ability to opine. Her new opinions are not rebuttal and must be excluded along with her damages opinions that are contrary to law and unsupported by facts. For the reasons set forth in Orion's Motion, Dr. Saravia's testimony on these topics should be precluded.

**I.    DR. SARAVIA'S USE OF A 100% PASSTHROUGH ASSUMPTION TO REDUCE DAMAGES VIOLATES THE LAW AND IS UNSUPPORTED**

In its Opening Brief, Orion explained that Dr. Saravia's re-calculation of damages based on an assumption of a 100% passthrough rate is directly contrary to law. Under *Hanover Shoe v. United Shoe Machinery Corp.*, 392 U.S. 481, 489 (1968), and the long, unbroken line of cases that

have followed it, an antitrust defendant cannot assert any such "pass-on defense" to reduce damages.  (*See* Dkt. 260 ("Mot.") at 4-5.)  Defendants therefore cannot suggest such a reduction of damages to the jury, and Dr. Saravia's opinion and testimony based on such calculations should be excluded to the extent they are based on an assumption of 100% passthrough.

In response, Defendants do not dispute that *Hanover Shoe* prevents them from attempting to reduce damages via a passing-on defense.  Instead, Defendants argue that Dr. Saravia is entitled to use a 100% passthrough input because her testimony is rebuttal to Dr. Zona 24% passthrough rate.[1]  (Dkt. 272 ("Opp.") at 2, 4.)  Defendants assert that Dr. Saravia made an "informed decision to use 100 percent" "based on economic theory, articles, and Dr. Zona's own testimony."  This is simply incorrect.  As Dr. Saravia herself admitted, her 100% number is simply made up:  she "did not calculate a[ny] pass-through parameter of [her] own" and "simply put in 100 percent as an alternative."  (Dkt. 260-1 ("Borden Decl.") Ex. 4, Saravia Dep. at 81:19-82:15.)  She is "not offering that 100 percent as . . . the actual pass-through rate that I think would have occurred" and "ha[s]n't calculated that 100 percent pass-through rate based on any data in this case."  *Id*.; *see also id*. at 73:3-4 ("I have not done an affirmative pass-through analysis so I am not saying what the correct pass-through rate is.").  Contrary to Defendants' representations, Dr. Saravia did not believe that economic theory supports a 100% passthrough rate.  *Id*. at 73:19-21 ("I haven't offered an affirmative pass-through analysis showing that it's necessarily higher.").  Nor does the literature cited in Dr. Saravia's report.  *Id*. at 84:7-16.  And Defendants do not cite any testimony to support their claim that Dr. Zona admitted that there would be a 100% passthrough rate because no such admission exists.  Opp. at 2.

Whether or not Dr. Saravia can calculate an actual alternative passthrough rate with which to criticize Dr. Zona, *Hanover Shoe* and its progeny do not permit her to recalculate damages by inventing the concededly baseless notion that 100% of any price overcharge would be passed on to Orion's customers.  That is not permitted under the law and not supported by any facts or data in the case.

---

[1] Dr. Zona calculated a 24% passthrough rate using econometrics and the principles of economics, including both regression analysis and the Lerner Relationship.

Nor can Defendants save Dr. Saravia's damages calculation by attempting to explain it away as a "sensitivity" analysis. Opp. at 2-3. As even a quick glance at Wikipedia would reveal (https://en.wikipedia.org/wiki/Sensitivity_analysis), a sensitivity analysis requires some actual *analysis* of the degree and manner in which an output varies based on changes to the parameters, with an emphasis on the relative importance of the different inputs. "Sensitivity analysis is the study of how the variation in the output of a model (numerical or otherwise) can be apportioned, qualitatively and quantitatively, to different sources of variation, and how the given model depends on the information fed into it . . . . It allows the analyst to assess the effects on inferences of departures from the assumptions made and the data values, [and] detect outliers or wrong data values . . . ." Enrique Castillo, et al., A general method for local sensitivity analysis with application to regression models and other optimization problems, 46.4 Technometrics 430 (2004), *quoted in In re High-Tech Employee Antitrust Litig.*., No. 11-CV-02509-LHK, 2014 WL 1351040, at *22 n. 53 (N.D. Cal. Apr. 4, 2014).

No such analysis appears anywhere in Dr. Saravia's report. She has not run any simulations, generated any scatterplots, performed any variance analyses, generated any regressions, or done any sort of meaningful sensitivity testing. Instead, she has simply generated a new – and unlawful – passthrough number and used it to recalculate damages downwards. Defendants and Dr. Saravia are not entitled to make up new damages numbers out of whole cloth and call it a sensitivity analysis.

Defendants' reliance on *DPWN Holdings Inc. ("DHL") v. United Airlines, Inc.*, No. 11-cv-564, at *3 (BMC) (PK), 2019 WL 1515231 (E.D.N.Y. Feb. 21, 2019), is equally misplaced. *See* Opp. at 2 (claiming that the *DHL* court upheld an expert's assumption of a 100 percent pass-through as reasonable). The *DHL* court did not permit the defendant's expert to recalculate the plaintiff's damages model with a 100% passthrough to show the jury that passing on overcharges would reduce the plaintiff's damages, as Defendants seek to do here. In *DHL*, the *plaintiff's* expert opted to use a 100% passthrough in *his* affirmative model calculating *overcharge*, not damages, because that assumption was appropriate under the facts of that case. *Id.* at *3. Nothing in *DHL* allows a rebuttal expert to use an unsupported 100% passthrough assumption to hint at a damages

theory that is impermissible under the law. Defendants fail to cite a single authority that actually supports their argument, *i.e.*, that they can offer expert testimony on a legally incorrect damages theory as long as that testimony is offered in rebuttal. That is because there is no such authority. On the contrary, an expert cannot offer an opinion that is contrary to law. *See* Mot. at 4 (citing *Bailey v. Allgas*, 148 F. Supp. 2d 1222, 1245-46 (N.D. Ala. 2000); *Loeffel Steel Prod. v. Delta Brands*, 387 F. Supp. 2d 794, 804-06 (N.D. Ill. 2005).

This is not, as Defendants claim, a "textbook battle of the experts" in which the parties' experts simply disagree about their calculations. Opp. at 3. Dr. Saravia has chosen to recalculate damages based on a complete fabrication that she admits has no support in the record, that she herself does not stand behind, and that is directly contrary to law. Admitting Dr. Saravia's calculations based on a 100% passthrough rate runs afoul of *Hanover Shoe* and ignores Dr. Saravia's obligation to support her opinions. The Court should therefore preclude this testimony, and failure to do so courts reversible error.

**II. DR. SARAVIA CANNOT RECALCULATE DAMAGES BASED ON A THEORY FOR WHICH SHE HAS NO FACTUAL SUPPORT**

As Orion explained in its Opening Brief, Dr. Saravia is not entitled to propose an alternative methodology or recalculate damages based on the unsupported assumption that collusion ceased in September 2016. This criticism is improper and inadmissible, because *Dr. Saravia admits that she has no factual basis for it*: She does not have any information or evidence suggesting that Defendants' unlawful conduct actually ended with the Synta settlement, and she did not even consider whether that assertion was correct. *Id.* at 6-7 (citing *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 806 (9th Cir. 1988)).

Defendants do not dispute that Dr. Saravia has no factual support for the assumption that the collusion stopped in 2016 or that opinions with no factual basis do not satisfy the requirements of Rule 702. Instead, Defendants claim that her opinion is grounded in the "economic theory and economic logic (and common sense)" that when one party to a conspiracy promises not to conspire any more, the conspiracy "often" ends. Opp. at 5. According to Defendants, this "suggests" that the period after September 2016 could "possibly" be a competitive benchmark. *Id.* (citing Borden

Decl., Ex. 3, Saravia Report ¶ 49). But Dr. Saravia disclaimed any effort to investigate or "address" "whether [Sunny and Synta] had stopped colluding after September 2016" and testified that she was not "offering any opinion in this case as to how long the effects of the conspiracy would last" and has not "done any analysis of that for purposes of this case." *Id.*, Ex. 4, Saravia Dep. at 36:13-15, 170:22-171:6.[2] Because Dr. Saravia has no facts and performed no analysis to support her proposed alternative calculation, it is inadmissible.

Rather than defend Dr. Saravia, Defendants contend that Dr. Zona has no basis to assume that the conspiracy continued past 2016. Opp. at 5. On the contrary, that assumption is consistent with the allegations of the Amended Complaint and with the evidence. *See, e.g.*, Dkt. 256-84 at p. 8 (noting that prices did not come down after the settlement); Moreo Decl. Ex. 1. Baseless attacks on Dr. Zona are not grounds to defend alternative damages scenarios for which Dr. Saravia performed no work.

Defendants also cannot save this opinion by recharacterizing it as a "sensitivity test." Opp. at 6. Here again, Dr. Saravia did not perform any actual sensitivity analysis, and none appears in her report. Instead, she has simply recalculated damages according to the unsupported assumption that the collusion ceased in 2016. That is a plain violation of Rule 702's requirement that expert "testimony [be] based on sufficient facts or data." Dr. Saravia has admitted that she has no facts or data to support the notion that collusion ceased in September 2016, and she cannot put forward opinions based on that proposition.

### III.  DR. SARAVIA'S TESTIMONY "CONTEXTUALIZING" DR. SASIAN'S REPORT IS NOT PROPER REBUTTAL

Finally, Dr. Saravia's proposed testimony about Dr. Sasian's opinion must be excluded because it is not proper rebuttal. In its Opening Brief, Orion explained that (1) Dr. Sasian's opinion was strictly limited to whether Sunny and Synta have the *technical* capability to manufacture similar consumer telescopes, and (2) as Dr. Saravia recognized, Dr. Sasian did not offer any opinion on Sunny's *economic* ability to manufacture particular telescopes. *Id.* at 10. Accordingly,

---

[2] Indeed, "common sense" also dictates that parties who conspired to rig the market for years in violation of the antitrust laws to rake in millions of dollars for themselves might continue to do so even after promising to stop.

to be proper rebuttal, Dr. Saravia's proffered testimony must directly address Sunny's technical capability, and it cannot branch off into new topics relating to Sunny's financial situation.

Defendants admit that Dr. Saravia's proposed testimony does not address Dr. Sasian's opinion: "Dr. Saravia, of course, does not opine on the correctness of Dr. Sasian's technical opinion[.]" Opp. at 7. That ends the inquiry. If Dr. Saravia is not offering an opinion on what Dr. Sasian stated in his report, then it is not rebuttal.

Defendants nonetheless argue that Dr. Saravia should nevertheless be allowed to discuss Dr. Sasian "in the context of Dr. Zona's assumptions and damages." Opp. at 7. But this is not what Dr. Saravia does, because Dr. Sasian's opinions go to liability, not damages, and because Dr. Zona did not rely on Dr. Sasian in order to form his damages opinions. Theodore Decl. Ex. 1, Zona Tr. at 34:16-22. Instead, Dr. Saravia is attempting to make an end-run around the strictures of a rebuttal report in order to offer new affirmative opinions as to whether it would be financially feasible for Sunny to manufacture the same telescopes as Synta after the point at which Orion is able to respond.

Defendants assert that "whether defendants would actually have manufactured certain telescopes and could have profitably done so is the critical point." Opp. at 7. If so, Defendants should have put in affirmative expert testimony on that issue. Having failed to do so, they cannot sandbag Orion by offering that testimony at the rebuttal deadline, purportedly in response to opinions regarding their technical manufacturing capabilities – a completely different subject matter. *See Daly v. Far E. Shipping Co.*, 238 F. Supp. 2d 1231, 1238 (W.D. Wash. 2003), *aff'd sub nom. Daly v. Fesco Agencies*, 108 F. App'x 476 (9th Cir. 2004) ("Rebuttal evidence is admissible only where the need for it could not have been foreseen at the time the plaintiff presented its case-in-chief. When a party knows that a contested matter is in the case, yet fails to address it in a timely fashion, he scarcely can be heard to complain that the trial court refused to give him a second nibble at the cherry.").

It is "simply unfair" for a party to disclose its opinions in rebuttal expert reports so that "their work would not be subject to a direct response from any opposing expert." *People v. Kinder Morgan Energy Partners*, 159 F. Supp. 3d 1182, 1192 (S.D. Cal. 2016). That sort of improper

6                                    Case No. 5:16-cv-06370-EJD-VKD
ORION'S REPLY IN SUPPORT OF MOTION TO PRECLUDE TESTIMONY OF CELESTE SARAVIA

rebuttal is "subject to exclusion," *id.* at 1191, because Rule 37 bars the "use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Torres v. City of L.A.*, 548 F.3d 1197, 1212-13 (9th Cir. 2008). "The sanction is automatic and mandatory." *Matthew Enter. v. Chrysler Grp.*, No. 13-CV-04236-BLF, 2016 WL 4272430, at *2 (N.D. Cal. Aug. 15, 2016) (quoting *R & O Const. Co. v. Rox Pro Int'l Grp.*, No. 2:09-CV-01749-LRH-LR, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011)).

Defendants' reliance on *TC Systems Inc. v. Town of Colonie, New York*, 213 F. Supp. 2d 171 (N.D.N.Y. 2002) (Opp. at 8), is misplaced. In that case, the court allowed rebuttal testimony that tracking certain costs was more complex than the plaintiffs suggested. *Id*. The rebuttal expert therefore responded directly to the very question that the plaintiff's expert put at issue, *i.e.*, whether the town could feasibly track its costs. By contrast, Dr. Sasian did not raise any issue relating to Sunny's financial or business reasons for selecting which telescopes to make. All he offered was a single point: that Sunny had the technological capability to make particular telescopes. Because Dr. Saravia's testimony does not respond to that point, it is not proper rebuttal, and it should be precluded.

*Clear-View Technologies, Inc. v. Rasnick*, No. 13-cv-2744-BLF, 2015 WL 3509384 (N.D. Cal. Jun. 3, 2015), rejected the exact argument Defendants make here. In that case, the plaintiff's expert prepared a valuation report, and the defendant's "rebuttal" report attempted to show that the plaintiff's product was technically flawed. The court found that the proffered report was not proper rebuttal because it was not "on the same subject matter" as the initial expert's report. *Id*. at *4. Specifically, the court noted that the initial report contained a sales projection, and the purported rebuttal was a technical analysis of the product. Although the plaintiff's expert's valuation assumed that the product worked, the question of whether it actually did work and could be sold "was not raised by [his] expert report[.]" *Id*. This is exactly the situation here, but in reverse: Dr. Sasian's report contained only a technical evaluation, and Defendants are attempting to submit as "rebuttal" an analysis that is strictly financial.

The *Clear-View* court noted that "permitting Defendants to backdoor such expert testimony under the guise of 'rebuttal' testimony would render Rule 26's limits generally meaningless, and

permit Defendants to engage in substantial gamesmanship – something Rule 26 was designed to combat, not foster." *Id*. It also noted that the defendants could have disclosed their technical expert as an initial expert to offer the same opinions he did, which the plaintiff could then have rebutted. The court therefore granted the motion to strike to avoid allowing the defendants to "sandbag" the plaintiff. *Id*.

The same is true here. Orion respectfully submits that the Court should not permit Defendants to sandbag it with backdoor expert testimony, particularly after Defendants chose not to submit opening expert reports of their own and then successfully sold the Court on their preferred sequencing of reports, depositions, and rebuttal reports by representing that they would stay within the narrow bounds of true rebuttal testimony. At the trial-setting conference, counsel for Defendants represented that:

> It's not true that we're going to do anything that is not properly within the scope of rebuttal testimony. Under the federal rules you're allowed to contradict or rebut evidence on the same subject matter identified by another party. That's exactly what we're going to do. We're going to produce traditional rebuttal reports, and they can depose our experts on the subject matter of the rebuttal testimony.

Dkt. 236 (5/2/19 Hr'g Tr. at 9:22-10-4). Defendants should be held to their word.

## CONCLUSION

For the foregoing reasons, Orion respectfully submits that the Court should preclude Defendants' above-described testimony of Celeste Saravia.

Dated: August 15, 2019

BRAUNHAGEY & BORDEN LLP

By: /s/ *J. Noah Hagey*
J. Noah Hagey

Attorneys for Plaintiff OPTRONIC TECHNOLOGIES, INC. d/b/a Orion Telescopes & Binoculars ®