SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
LEO D. CASERIA, Cal. Bar No. 240323
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:    213.620.1780
Facsimile:    213.620.1398
E-mail:        lcaseria@sheppardmullin.com

MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
DYLAN I. BALLARD, Cal. Bar No. 253929
HELEN C. ECKERT, Cal. Bar No. 240531
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:    415.434.9100
Facsimile:    415.434.3947
E-mail:        mscarborough@sheppardmullin.com
              dballard@sheppardmullin.com
              heckert@sheppardmullin.com

Attorneys for Defendants
NINGBO SUNNY ELECTRONIC CO., LTD., SUNNY OPTICS, INC., and
MEADE INSTRUMENTS CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC. d/b/a Orion Telescopes & Binoculars, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>NINGBO SUNNY ELECTRONIC CO., LTD., SUNNY OPTICS, INC., MEADE INSTRUMENTS CORP., and DOES 1-25,<br><br>Defendants. | Case No. 5:16-cv-06370-EJD-VKD<br>*Assigned to: Honorable Edward J. Davila*<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date: September 12, 2019<br>Time: 9:00 a.m.<br>Ctrm: 4, 5th Floor<br><br>Complaint Filed: November 1, 2016<br>First Amended Complaint Filed: November 3, 2017<br>Trial Date:  October 15, 2019 |

**PUBLIC REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Case No. 5:16-cv-06370-EJD-VKD

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ...................................................................................................... 2

    A.    No Jury Can Reasonably Find that Meade Itself Engaged in Any Unlawful Conduct ........................................................................................2

    B.    No Jury Can Reasonably Find that Defendants Unlawfully Conspired with Suzhou Synta for Suzhou Synta to Price its Telescopes Below Cost ........................4

    C.    No Jury Can Reasonably Find an Unlawful Unilateral Refusal to Deal ...................5

    D.    No Jury Can Reasonably Find a *Per Se* Unlawful Agreement Among Horizontal Competitors to Artificially Inflate Prices to Orion ................................6

    E.    No Jury Can Reasonably Find a Market Allocation Agreement between Defendants and Suzhou Synta ................................................................................8

    F.    No Jury Can Reasonably Find that Defendants Caused Orion's Inability to Acquire Meade ........................................................................................................9

    G.    No Reasonable Jury Can Find that Defendants Derailed Orion's Acquisition of the Hayneedle Assets ........................................................................................12

    H.    No Jury Can Reasonably Find the Scope of Orion's Asserted Relevant Market .....................................................................................................................13

    I.    Orion Cannot Recover Damages Relabeled as Restitution Under the UCL ............15

    J.    Orion Concedes that to the Extent its Damages Expert is Excluded, Summary Judgment Should Also be Granted as to Those Damages Claims...........15

III.   CONCLUSION .................................................................................................. 15

SMRH:4820-2626-7041

Case No. 5:16-cv-06370-EJD-VKD

DEFENDANTS' REPLY ISO CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Amey, Inc. v. Gulf Abstract & Title, Inc.*
   758 F.2d 1486 (11th Cir. 1985)................................................................................................4

*Arandell Corp. v. Centerpoint Energy Serv., Inc.*
   900 F.3d 623 (9th Cir. 2018)................................................................................................2, 3

*Argus Inc. v. Eastman Kodak Co.*
   801 F.2d 38 (2d Cir. 1986)....................................................................................................13

*In re Baby Foods Antitrust Litig.*
   16 F.3d 112 (3d Cir. 1999)......................................................................................................4

*Blomkest Fertilizer v. Potash Saskatchewan*
   203 F.3d 1028 (8th Cir. 2000)..............................................................................................4, 9

*California Dental Ass'n v. FTC*
   526 U.S. 756 (1999) ..............................................................................................................12

*Catlin v. Wash. Energy Co.*
   791 F.2d 1343 (9th Cir. 1986)...........................................................................................12, 13

*City of Vernon v. Southern Cal. Edison Co.*
   955 F.2d 1361 (9th Cir. 1992)................................................................................................11

*In re Dynamic Random Access Memory Antitrust Litig.*
   No. M 02-1486-PJH, 2007 WL 9752971 (N.D. Cal. Feb. 20, 2007)...........................................3

*FTC v. Freeman Hosp.*
   69 F.3d 260 (8th Cir. 1995) ...................................................................................................14

*Helix Milling Co. v. Terminal Flour Mills Co.*
   523 F.3d 1317 (9th Cir. 1975).................................................................................................12

*Korea Supply Co. v. Lockheed Martin Corp.*
   29 Cal. 4th 1134 (2003)..........................................................................................................15

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*
   791 F.2d 1356 (9th Cir. 1986)............................................................................................11, 12

*McClincy v. Shell Chemical Co.*
   845 F.2d 802 (9th Cir. 1988)...................................................................................................15

*Metro Indus., Inc. v. Sammi Corp.*
   82 F.3d 839 (9th Cir. 1996).....................................................................................................14

-iii-

SMRH:4820-2626-7041

DEFENDANTS' REPLY ISO CROSS-MOTION FOR SUMMARY JUDGMENT

*Monsanto Co. v. Spray-Rite Serv. Corp.*
    465 U.S. 752 (1984) ...................................................................................................... 3, 9

*Morgan, Strang, Wheeler Biggs v. Radiology*
    924 F.2d 1484 (9th Cir. 1991) ........................................................................................ 14

*NCAA v. Board of Regents of University of Oklahoma*
    468 U.S. 85 (1984) ........................................................................................................ 12

*Newcal Indus., Inc. v. IKON Office Solution*
    513 F.3d 1038 (9th Cir. 2008) ........................................................................................ 14

*Oreck Corp. v. Whirlpool Corp.*
    639 F.2d 75 (2d Cir. 1980) ............................................................................................... 3

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*
    51 F.3d 1421 (9th Cir. 1995) .......................................................................................... 15

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*
    803 F.3d 1084 (9th Cir. 2015) ...................................................................................... 3, 9

*State v. Safeway, Inc.*
    651 F.3d 1118 (9th Cir. 2011) ........................................................................................ 12

*Wasco Prod. v. Southwall Tech.*
    435 F.3d 989 (9th Cir. 2006) ............................................................................................ 9

Statutes

15 U.S.C. § 15b ........................................................................................................................ 9

SMRH:4820-2626-7041    DEFENDANTS' REPLY ISO CROSS-MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Orion's Opposition further highlights the smoke and mirrors on which Orion's entire case is built.  At this stage, on the eve of trial, Orion must do more than speculate about a convoluted conspiracy of unknown duration in which Defendants sought to destroy Orion (and only Orion) in a multitude of ways that were often conflicting.  It must come forward with sufficient probative evidence from which a jury can reasonably find in Orion's favor, which it is unable to do.

Orion's "evidence" boils down to the same handful of vague, out of context quotes from a handful of documents, which reference "avoiding conflict," not "wanting to disrupt Synta business," "our pricing," "cooperat[ion] for the benefit of the entire group of companies (Sunny, Synta, Meade and Celestron)," and Shen's possible presence at two Meade meetings.[1]  These vague sentence fragments do not establish Orion's claims that each of the Defendants entered into *per se* unlawful agreements with their horizontal competitors to: (1) divide global telescope manufacturing services between low and high-end telescopes so as to not compete for Orion's business; (2) artificially inflate prices to Orion; (3) price below cost; (4) unlawfully acquire Meade; (5) block Orion's acquisition of the Hayneedle assets; and (6) refuse to deal with Orion from 2016 on.  The leap between the "evidence" and the allegations of a multitude of conspiracies is too great for a jury to reasonably make.

As Orion would have it, two companies in the same industry can never communicate or assist one another, and each and every communication between would-be competitors is an antitrust violation.  But this is not the law, particularly when the communications in question are between a manufacturer and its distributors, contract manufacturers, and customers.  It is Plaintiff's burden to establish a *per se* antitrust conspiracy with evidence that gives rise to a genuine dispute; it cannot shift that burden to Defendants simply by musing about what "Coke" and "Pepsi" may not do.

Summary judgment should be granted to Defendants (and denied for Orion) for additional

---

[1] Orion's Reply iso Motion for Summary Judgment and Opposition to Cross-Motion for Summary Judgment (Aug. 15, 2019) (ECF No. 284) ("Orion Opp."), at 5:9 ("avoiding conflict"), 5:8 (not "want[ing] to disrupt Synta business"), 7:9 ("our pricing"), 13:24-26 ("cooperat[ion] for the benefit of the entire group of companies"), 13:21-22 (Shen's presence at Meade meeting").

reasons.  There is no evidence of anticompetitive conduct by Meade itself, and Orion's strenuous arguments that Meade is liable by association because it is Sunny's subsidiary speaks volumes.  The rest of Orion's arguments focus only on alleged conduct by Sunny, which only confirms the appropriateness of summary judgment for Meade.

Orion now concedes that it purchased Sunny-manufactured telescopes from distributor *Synta Technology Corporation* ("Synta Tech") and retreats (as it must) from the false assertion in its opening brief that it purchased Sunny-manufactured telescopes from *telescope manufacturer Suzhou Synta*.  It now argues instead that this fact makes no difference because David Shen also controls Synta Tech.  But this is a conclusory statement with no supporting evidence.  There is no credible evidence from which a jury can find that Synta Tech and Suzhou Synta are the same company or part of the same family of companies under David Shen's control.  Nor does common control (even if established) automatically impute antitrust liability on all within the corporate family.  It is undisputed that Synta Tech is a distributor with no manufacturing capability, and Sunny's communications with its distributor Synta Tech are about as commonplace as any business communication can possibly be.

Finally, Orion's bald assertion that a company cannot provide basic assistance to a supplier or competitor in connection with an acquisition without violating Section 1 under a *per se* or "quick look" analysis is unsupported by law.  Orion cites no case in the Sherman Act's 129-year history reaching such a conclusion under either standard.

## II.   ARGUMENT

### A.   No Jury Can Reasonably Find that Meade Itself Engaged in Any Unlawful Conduct

Orion argues that as Sunny's subsidiary, Meade is liable for all of Sunny's alleged conduct.[2] Orion is wrong and Sunny is not hiding from any Ninth Circuit authority.  In fact, the sole Ninth Circuit decision Orion cites makes clear that "*Copperweld* does not support holding a subsidiary liable for the parent's independent conduct."  *Arandell Corp. v. Centerpoint Energy Serv., Inc.*, 900 F.3d 623, 633 (9th Cir. 2018).  An antitrust plaintiff is "still required to come forward with evidence

---

[2] Orion's Opp. at 13:1-19.

that each defendant independently participated in the enterprise's scheme, to justify holding that defendant liable as part of the enterprise." *Id.*[3] Thus, *Arandell* in fact supports the argument that Defendants made in their opening brief:  Without evidence as to unlawful conduct by Meade itself, summary judgment should be granted as to Meade.

With respect to Meade's alleged independent involvement in any conspiracy, Orion relies on nothing more than a handful of vague, out of context and mischaracterized quotes, including a document that refers to "cooperat[ion] for the benefit of the entire group" discussed in detail below in subsection B.  Each of these snippets have been refuted in Defendants' Cross-Motion and accompanying Response to Orion's Separate Statement,[4] and do not collectively amount to evidence of a "conscious commitment to a common scheme" between horizontal competitors, "designed to achieve an unlawful objective." *See Monsanto Co. v. Spray-Rite Serv. Corp.,* 465 U.S. 752, 768 (1984).  None of the communications cited by Orion evidences agreements, let alone agreements to fix prices, allocate markets, etc. as Orion claims.  Legitimate communications may take place between two companies in the same or similar industries on a variety of topics without violating the antitrust laws.  *See e.g., Stanislaus Food Prods. Co. v. USS-POSCO Indus.,* 803 F.3d 1084, 1092-93 (9th Cir. 2015) (although plaintiff alleged information exchanges and other communications between the supposed conspirators, they were insufficient to support the existence of an unlawful agreement to restrain trade; affirming summary judgment for defendants); *Oreck Corp. v. Whirlpool Corp.*, 639 F.2d 75, 79 (2d Cir. 1980) ("[a] mere showing of close relations or frequent meetings between the alleged competitors, however, will not sustain a plaintiff's burden absent evidence which would permit the inference that those close ties led to an illegal agreement." (collecting

---

[3] *See also id.* (as with any defendant, "[p]laintiffs must put forth evidence that [the subsidiary] engaged in anticompetitive conduct."); *In re Dynamic Random Access Memory Antitrust Litig.,* No. M 02-1486-PJH, 2007 WL 9752971, at *5 (N.D. Cal. Feb. 20, 2007) (granting summary judgment to parent company because plaintiff failed to prove parent's participation in the conspiracy beyond relationship to subsidiary).

[4] Defendants' Cross-Motion for Summary Judgment ("Defendants' Cross-MSJ") (Aug. 8, 2019) (ECF No. 270), at 18:14-19:16; Defendants' Response to Orion's Separate Statement ("Defendants' RSS") (Aug. 8, 2019) (ECF No. 270-1), Facts 12-39.

cases)).[5]

At the summary judgment stage, the burden is on Orion to establish a genuine dispute of material fact as to its claims; it may not assume the conspiracy or seek to make Defendants disprove the conspiracy. *Blomkest Fertilizer v. Potash Saskatchewan,* 203 F.3d 1028, 1033 (8th Cir. 2000) (an antitrust plaintiff "may not proceed by first assuming a conspiracy and then explaining the evidence accordingly"; affirming summary judgment for defendants in part because the "high level of interfirm communications" were too ambiguous to support an inference of conspiracy). Price-fixing requires evidence of an agreement to fix prices, and market allocation requires evidence of an agreement to allocate markets. Talk, let alone talk on other topics, is not enough.

Orion alleges that illegal assistance between Sunny and Suzhou Synta allowed Sunny to acquire Meade. But that is distinct from anticompetitive conduct *by Meade itself.* At best, Orion's case is about Sunny, not Meade. And Orion's opposition only confirms this. Aside from a single subsection devoted specifically to Meade's liability (which primarily argues that Meade is vicariously liable as Sunny's subsidiary), the remainder of Orion's opposition makes no further reference to any alleged anticompetitive conduct by Meade, focusing instead entirely on Sunny alone.[6]

> **B.    No Jury Can Reasonably Find that Defendants Unlawfully Conspired with Suzhou Synta for Suzhou Synta to Price its Telescopes Below Cost**

Orion concedes that there are no competitor communications referencing below-cost pricing

---

[5] *See also In re Baby Foods Antitrust Litig.,* 16 F.3d 112, 126 (3d Cir. 1999) ("communications between competitors do not permit an inference of an agreement to fix prices unless those communications rise to the level of an agreement"); *Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486, 1505 (11th Cir. 1985) ("Absent an agreement to fix prices, there is nothing unlawful about competitors meeting and exchanging price information or discussing problems common in their industry, or even exchanging information as to the cost of their product." (internal citation omitted)).

[6] *E.g.,* Orion's Opp. at section I (discussing Suzhou Synta and Celestron's alleged illegal assistance in Sunny's acquisition of Meade); section II(A) (discussing Sunny and Suzhou Synta's market allocation agreement to "never compete[ ] for Orion's business"); section II(B) (discussing Sunny's and Suzhou Synta's revoking of Orion's credit); section II(C) (Sunny's acquisition of Meade violated Section 7); section III(B) (arguing that Synta Tech was Sunny's co-conspirator); section III(C) (discussing Sunny's refusal to deal with Orion in 2016).

and that Orion's experts did no analysis of costs relative to prices of any telescopes.[7]  And, Orion makes clear that it is not claiming that *Defendants* engaged in any below-cost pricing, but instead seeks to hold Defendants jointly and severally liable for *Suzhou Synta's* alleged below-cost pricing.[8]

If we are to believe Orion, Sunny agreed with Suzhou Synta that Sunny would overcharge for its telescopes while Suzhou Synta would price its telescopes below cost (and thereby lose money).  Why any two companies would agree to this is never explained and no evidence in the case supports the existence of any such agreement or even a discussion remotely relating to such an agreement.  Orion directed *zero* discovery at Suzhou Synta and there is no evidence relating to Suzhou Synta's prices or costs from which a jury can find below-cost pricing by it.  Furthermore, the one document Orion cites in support of below-cost pricing – an internal Meade email written during post-acquisition struggles to turn Meade around – actually establishes that any cooperation between the companies was *not* a realistic option that had even been broached with the other companies' executives:

> I do not believe David Shen has had a similar conversation with [Celestron's executives] Dave Anderson and Corey Lee.  Meade is the company that needs Celestron's help so it is easier for us to understand this strategy.  I am not sure how they would react if David Shen told them they had to cooperate with us because any help they provide to us to improve the quality of our products may reduce Celestron sales of Schmidt Cassegrain telescopes.  How do the executives of Celestron benefit?  This is the major issue if David Shen attempts to convince them to cooperate with us.  Since he hasn't attempted to convince them they don't even consider this option.[9]

Orion cannot proceed to trial on its below-cost pricing claims.

### C.   No Jury Can Reasonably Find an Unlawful Unilateral Refusal to Deal

Orion concedes it is not alleging a concerted refusal to deal.  With respect to the alleged unilateral refusal to deal, Orion fails to address (or even acknowledge) Defendants' argument, based on controlling Ninth Circuit law, that a firm's unilateral refusal to deal with a customer who sues it

---

[7] *See* Orion Opp. at 15:20-25; Orion's Response to Defendants' Moving Separate Statement ("Orion's RSS") (Aug. 15, 2019) (ECF No. 283-34), Fact 8.

[8] Orion's Opp. at 15:25.

[9] Borden Decl. Ex. 66 (Mar. 24, 2014 Meade email), at 1.

is not actionable under *Aspen Skiing*.[10]  These two concessions alone warrant summary judgment on Orion's refusal to deal claim.

There is also no factual basis for Orion's claim that "Sunny had been selling Orion telescopes since at least 2007."[11]  The sole basis for Orion's claim is a *nonexistent* paragraph in Peter Moreo's declaration.[12]  Regardless, Orion already admitted in its Opposition and Reply Separate Statement that Orion has only purchased Sunny-manufactured telescopes indirectly, from Joyce Huang, who does not work for Sunny.[13]

### D. No Jury Can Reasonably Find a *Per Se* Unlawful Agreement Among Horizontal Competitors to Artificially Inflate Prices to Orion

In its Opposition, Orion finally ends the charade that Joyce Huang works for "Synta" the telescope manufacturer, instead admitting (as it must) that Joyce Huang works for Synta Tech the telescope distributor.  Orion argues instead that because Synta Tech is allegedly controlled by David Shen, the distinction between Synta Tech and Suzhou Synta is irrelevant, and Sunny is still liable for *per se* price-fixing with horizontal competitors.[14]

Orion has the burden of coming forward with specific evidence to support its *per se* price-fixing claims.  If its theory now rests on Synta Tech and Suzhou Synta being under the common

---

[10] Defendants' Cross-MSJ, at 10:14-19 (citing *Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 889-90 (9th Cir. 1982) (manufacturer's refusal to deal with a customer who sued it is a legitimate reason which cannot constitute an unreasonable restraint on competition).

[11] Orion's Opp. at 14:20-21.

[12] Orion's Opp. at 14:20-21 cites to paragraph 3 of Peter Moreo's Declaration, but the Moreo declaration does not include a paragraph 3 and makes no mention whatsoever of Sunny selling telescopes to Orion.  *See* Declaration of Peter Moreo iso Orion's Reply (Aug. 15, 2019) (ECF No. 284-22).

[13] *E.g.,* Orion's Opp. at 5:23-6:2, 14:25-26; Orion's RSS, Fact 15 ("Orion has attempted to negotiate directly with Sunny for years, but its emails to Sunny would be responded to by Joyce Huang of Synta.")  Orion's citations to three sporadic emails between Orion and Sunny's James Chiu, Orion's Opp. at 14:22-24, do not establish a prior, profitable course of dealing between Orion and Sunny as those limited communications occurred within the context of Orion purchasing Sunny-made telescopes through Synta Tech rather than directly from Sunny.  Indeed, Orion paid Synta Tech, *not* Sunny.  *See* Defendants' Cross-MSJ, section II(B) ("Sunny and Orion Did Not Have a Direct Business Relationship: Sunny Sold Telescopes to Third-Party Distributor Synta Tech, and Synta Tech Sold Them to Orion").

[14] Orion's Opp. at 5:23-6:5.

SMRH:4820-2626-7041  DEFENDANTS' REPLY ISO CROSS-MOTION FOR SUMMARY JUDGMENT

control of David Shen, it must point to evidence from which a jury can reasonably find such control.[15]  Orion's failure to do so is fatal to its *per se* price-fixing claim.  A general citation to three pages of Orion's Settlement Agreement with eight separate parties – a document that in no way defines or describes any relationship between Synta Tech, Suzhou Synta and David Shen – does nothing to show that David Shen controlled Synta Tech.[16]

Without a provable connection between Synta Tech and Suzhou Synta, communications between Sunny (a manufacturer) and Synta Tech (a distributor) regarding sales to Orion are entirely vertical in nature and indisputably not subject to *per se* liability.  And, even if Orion can establish Shen's common control of separate companies, that does not transform Sunny's communications with one (the distributor) into communications with all the other companies that Shen owns.[17]  This is the same wrong argument Orion makes that Meade is liable for all of Sunny's conduct simply because of the parent-subsidiary relationship.

Lastly, Orion's efforts to show a horizontal price-fixing agreement between Sunny and telescope manufacturer Suzhou Synta is again based on distortions of documents.  *First*, Sunny provided, on one occasion in 2015, the amount of *historic* (not future) sales Synta Tech had made to Orion in 2014 at the request of Sunny's largest customer Celestron.[18]  Sunny does not compete with Synta Tech, nor does it compete with Celestron; *Orion* is Celestron's competitor.[19]  *Second*, David

---

[15] Conversely, although it is not Defendants' burden to prove that Synta Tech and Suzhou Synta are unaffiliated, Defendants have nevertheless put forth substantial evidence in is Cross-MSJ and Separate Statement that Synta Tech and Suzhou Synta were distinct entities which operated on separate tracks, and with whom Orion dealt separately.  Cross-MSJ at 11-13 and fn. 50; Defendants' SS, Facts 18-22.

[16] Orion's Opp. at 6:3-4 (citing Synta/Orion Settlement Agreement, at 1-2, 12).  It is no accident that Orion chose not to quote to specific language in the Settlement Agreement.

[17] Orion similarly has no rebuttal to Defendants' alternative argument that even if one credits Orion's baseless claim that Sunny "agreed to allow [telescope manufacturer Suzhou] Synta to sell Sunny's products to Orion on Sunny's behalf," all that amounts to is a dual distribution arrangement which also is not subject to *per se* liability.  Defendants' Cross MSJ, at 13 fn.52.

[18] Orion's Opp. at 7:5-8 (citing Borden Decl., Exs. 57 and 72 (note that Exs. 57 and 72 are duplicate copies of the same May 2015 email exchange between Corey Lee of Celestron and James Chiu of Sunny)).

[19] Orion's Opp. at 7:8.

Shen's reference to "our pricing" was in an internal email he sent to Celestron, which was then forwarded without comment to 14 other individuals, only two of which (James Chiu and Peter Ni) were with Sunny.[20]  James Chiu repeatedly testified that he had no idea why he was one of 14 people who received this internal email between Shen and Celestron, had no idea what Shen was talking about, and did not discuss it with anyone (either within Sunny or outside of Sunny) because the email was of no concern to him or Sunny.[21]  No one from Sunny ever responded or took any action.

### E.    No Jury Can Reasonably Find a Market Allocation Agreement between Defendants and Suzhou Synta

Orion is pursuing a market allocation theory that is in direct conflict with the evidence. Orion claims that Defendants entered into an unlawful horizontal agreement wherein Defendants would *only* manufacture *low-end* telescopes while Suzhou Synta manufactured *high-end* telescopes, but this makes no sense given the fact – now undisputed by Orion in its Opposition – that defendant Meade did in fact manufacture and even prioritized production of high-end telescopes.[22]  Orion's response that "[m]arket division makes economic sense"[23] ignores Defendants' arguments as to the specific market division theory at issue here and the indisputable facts surrounding Meade.

Orion also ignores Defendants' evidence that one of the main reasons Sunny acquired Meade in the first place was because of Meade's ability to manufacture a full-line of telescopes (something Sunny was not technologically capable of doing), and post-acquisition, Defendants did in fact prioritize and increase Meade's production and sales of high-end telescopes.[24]  Orion does not (because it cannot) explain why Defendants prioritized Meade's production of high-end telescopes if it had unlawfully agreed with Suzhou Synta that Defendants would only manufacture low-end

---

[20] Orion's Opp at 7:8-10 (quoting Borden Decl., Ex. 76).

[21] Ex. 3 (Sept. 14, 2018 J. Chiu Dep.) at 266:16-267:7, 269:13-15, 273:3-20.  Orion did not question Peter Ni about this document.

[22] Defendants' Cross MSJ at 13:17-14:21.

[23] Orion's Opp. at 4:18-19.

[24] Defendants' Cross-MSJ at 14:13-17.

telescopes.[25]  Orion's market division theory makes no sense.

With respect to the handful of documents Orion (again) distorts out of context, they collectively do not rise to the level of a "conscious commitment to a common scheme" to allocate low-end manufacturing to Defendants and high-end manufacturing to Suzhou Synta.  *Monsanto,* 465 U.S. at 768.  *See also, e.g. Stanislaus Food Prods.* 803 F.3d at 1092-93 (although plaintiff alleged information exchanges and other communications between the supposed conspirators, they were insufficient to support the existence of an unlawful agreement to allocate markets; affirming summary judgment for defendants).  Orion is still improperly *assuming* the existence of its alleged conspiracy, and then portraying the "evidence" accordingly.  *Blomkest Fertilizer,* 203 F.3d at 1033.

Lastly, Orion's "threshold" argument that the alleged market allocation conspiracy actually "began much earlier [than 2013] – when Shen introduced Orion to Sunny"[26] requires that its conspiracy claims be dismissed on statute of limitations ground because it is bringing claims based on a conspiracy that started more than four years before the complaint was filed.  15 U.S.C. § 15b. And Orion cannot claim tolling of the statute of limitations because it did not plead fraudulent concealment.  *E.g., Wasco Prod. v. Southwall Tech.,* 435 F.3d 989, 991 (9th Cir. 2006) (fraudulent concealment must be pled with particularity in the complaint; failure to do so waives this equitable tolling defense and it cannot be raised for the first time in opposition to summary judgment (collecting cases)).

### F.    No Jury Can Reasonably Find that Defendants Caused Orion's Inability to Acquire Meade

The fact that Orion would not have acquired Meade under any circumstances, regardless of any alleged anticompetitive conduct, is not "speculati[on]" as Orion would have this Court believe,[27] but an irrefutable fact established by the record in this case, which is fatal to each of Orion's claims

---

[25] Orion also continues to pretend that "Sunny has already had high-end manufacturing capacity" but "[i]t just refused to use it to compete with Synta," Orion's Opp. at 5:3-4, completely ignoring evidence in the record that Sunny did not have the technological capabilities and know-how to manufacture high-end telescopes which were more sophisticated and difficult to produce. Defendants' Cross-MSJ at 15:16-19 and fn. 62.

[26] Orion's Opp. at 4:21-23.

[27] Orion's Opp. at 8:18.

based on the Meade acquisition.

Detailed board meeting minutes maintained by Meade during the time of its sale conclusively establish that Orion would never have acquired Meade under any circumstances.[28]  The minutes establish that once Orion submitted its second indication of interest for $4.5M in February 2013, Meade asked all current bidders (Orion, JOC, and Levenhuk, Inc. ("Levenhuk")) to once again increase their offers.[29]  Orion, however, "***refused to increase its offer above $4.5 million***, while [JOC] and Levenhuk each increased its offer to $5 million."[30] Meade's Board accordingly evaluated the two highest offers by JOC and Levenhuk, determined that JOC's was the better of the two, and entered into a 45-day exclusivity period with JOC on February 25, 2013.[31]  At the end of the exclusivity period, however (on April 22), JOC tried to reduce its $5M offer to $4M, and as a result, Meade decided to once again reach out to the previous bidders (Orion and Levenhuk) to request updated offers.[32]  Orion again "***declined to provide another offer***" and Meade decided at that point to select MITC's most recent offer of $4.6M if JOC did not increase its latest offer.[33]

*Only after* Orion chose not to submit renewed offers on two separate occasions in February and early May 2013 did Meade subsequently sign a merger agreement with JOC on May 16 (after JOC increased its offer again).[34]  And *only then* did Sunny even become aware that Meade was for

---

[28] Orion itself relied on the minutes from the July 2, 2013 meeting of Meade's Board to argue that MITC's offer was inferior to JOC's.  Orion's Opp at 9:12-13 (citing Hagey Decl., Ex. 9).

[29] Declaration of Helen C. Eckert in support of Defendants' Reply in support of their Cross-Motion for Summary Judgment filed concurrently herewith ("Eckert Decl."), Ex. 1 (Feb. 25, 2013 Meade Board Meeting Minutes), at 1.

[30] *Id.* (emphasis added).  Meade's Board Meeting Minutes refer to JOC as "Meade Europe" because JOC was the parent of Meade Instruments Europe GmbH & Co. KG ("Meade Europe") which was also providing financial support to the acquisition.  Caseria Declaration iso Defendants' Cross-MSJ ("Caseria Decl."), Ex. 28 (May 17, 2013 Meade Press Release), at 1.  The minutes also refer to Orion as "Imaginova," Orion's parent in 2013.

[31] *Id.* at 1-2.  On February 26, 2013, Meade informed Orion that it had accepted an offer from another bidder.  Eckert Decl., Ex. 2 (Feb. 26, 2013 Meade Board Meeting Minutes), at 1.

[32] Eckert Decl., Ex. 3 (Apr. 22, 2013 Meade Board Meeting Minutes), at 1; and *id.,* Ex. 4 (May 2, 2013 Meade Board Meeting Minutes).

[33] Eckert Decl., Ex. 5 (May 8, 2013 Meade Board Meeting Minutes), at 1 (emphasis added).

[34] Caseria Decl., Ex. 28 (May 17, 2013 Meade Press Release), at 1.

sale, and submitted its very first offer on June 11.[35]  Nothing Sunny did had any impact on Orion's ability to acquire Meade:  Orion itself had already walked away from the Meade opportunity on its own – not once, *but twice* – all before Sunny even became aware that Meade was for sale.[36]  The undisputed record shows that no anticompetitive conduct by Defendants could have been a "substantial factor" causing Orion to not acquire Meade for itself.  *See, e.g., Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1366 (9th Cir. 1986) (even if plaintiff need not show that the antitrust violation was the sole cause of its injury, recovery will not be permitted for injury "independently caused by something other than the antitrust violation.").[37]

Lastly, Orion fails to cite a single case where a claim that defendant allegedly "received illegal assistance from its horizontal competitor" to complete an acquisition (Orion's Opp. at 8:16-17) was adjudicated under the *per se* standard.  In the absence of such authority, the "presumptive or default" rule of reason standard applies.  *State v. Safeway, Inc.,* 651 F.3d 1118, 1133 (9th Cir.

---

[35] First Amended Complaint ("FAC"), Ex. 1 (Nov. 3, 2017) (ECF No. 41-1) at B-1.

[36] Orion's only other theory of causation is that but for Sunny's anticompetitive conduct, Orion would have had an "additional $11.4 to $30.6 million to invest in purchasing Meade."  Orion's Opp. at 8:24-9:1.  What Orion fails to point out to the Court, however, is that the "additional $11.4 to $30.6 million" is based on price overcharges Orion allegedly suffered between ***November 2013 to May 2018***.  Caseria Decl., Ex. 17 (Zona Rpt.) ¶ 105.  Under what fanciful theory Orion would have had funds from the future when it bid on Meade in ***February 2013*** is unclear.

[37] The only "evidence" Orion puts forward to support its new allegation that Meade's plan of merger with JOC collapsed "on its own accord," and Orion would have thus acquired Meade but for Sunny's conspiracy is insufficient as a matter of law, particularly in light of the indisputable timeline established by Meade's board meeting minutes.  All Orion has in rebuttal is the vague testimony of its CEO more than five years after the events in question – which he "d[id]n't remember a hundred percent" that Orion was asked to rebid.  Orion's Opp. at 9:7-11 (quoting Hagey Decl., Ex. 10 (Moreo 30(b)(6)) at 252:24-253:11).  This is insufficient to meet Orion's burden of proof at summary judgment.  *City of Vernon v. Southern Cal. Edison Co.,* 955 F.2d 1361, 1370 (9th Cir. 1992) (holding that a party cannot oppose summary judgment with only vague testimony in which the witness cannot recall any names, dates, or times; the issue is not one credibility but whether there is sufficient evidence from which a rational jury can find in favor of that party).  Furthermore, this testimony (even if taken at face value) does not demonstrate that Orion would have acquired Meade but for alleged anticompetitive conduct, particularly given that Orion's CEO also testified that despite Meade's solicitation, ***Orion chose not to submit another bid***.  Hagey Ex. 10 (Moreo 30(b)(6)) at 252:12-14 ("And I believe that the Orion response at the time was we would hold with our current offer that was on the table.").

2011).[38]

Orion now argues, for the first time, that receiving assistance from a competitor with respect to an acquisition should be subject to a truncated "quick look" analysis.[39]  But again, there is no supporting authority and Orion fails to explain how this case is akin to those where "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets."[40]  To the contrary, companies, even competitors, enter into many different types of collaborations without giving rise to anticompetitive effects or antitrust issues.  Indeed, the Ninth Circuit in *Safeway* held that a revenue-sharing agreement among competing grocery stores in the event of a labor dispute presented "novel circumstances" inappropriate for "quick look" review.  651 F.3d at 1139.  Accordingly, summary judgment should be granted in Defendants' favor.[41]

**G.      No Reasonable Jury Can Find that Defendants Derailed Orion's Acquisition of the Hayneedle Assets**

As with the Meade acquisition above, Orion cannot recover for its failure to complete the Hayneedle acquisition if it was "independently caused by something other than the antitrust violation."  *Los Angeles Mem'l Coliseum* 791 F.2d at 1366; *see also, e.g., Catlin v. Wash. Energy Co.,* 791 F.2d 1343, 1347-48, 1350 (9th Cir. 1986) (although plaintiff "need not rule out all possible alternative sources of injury, [it] must show that the alleged anticompetitive activity was a material cause of the injury").  The jury "must be able to ascertain causal antitrust injury without engaging in speculation." *Id*. at 1347.

---

[38] Neither this Court's Order Denying the Motion to Dismiss the FAC or *Helix Milling Co. v. Terminal Flour Mills Co.,* 523 F.3d 1317 (9th Cir. 1975), considered the issue of whether *per se* or rule of reason should apply to the alleged conduct.

[39] Orion's Opp. at 9:21-10:7.

[40] Orion's Opp. at 10:2-6 (quoting *California Dental Ass'n v. FTC,* 526 U.S. 756, 770 (1999). Neither *California Dental* nor *NCAA v. Board of Regents of University of Oklahoma*, 468 U.S. 85 (1984), involved facts remotely analogous to the ones Orion alleges here.

[41] Orion's Opposition falsely claims that there are entire sections of its MSJ that Defendants failed to refute.  Defendants actually refuted those facts in painstaking detail in their Cross-MSJ, their Response to Orion's Separate Statement, and their own Separate Statement in support of their Cross-MSJ.  Defendants will not and need not rehash those arguments here.

Speculation is all that Orion has. Orion tries to now distance itself from unambiguous explanations it provided to both its employees and its Board that Hayneedle's refusal to agree to a non-compete was the one and only cause of the deal's demise.[42] A self-serving, post-hoc explanation created during litigation cannot overcome the contemporaneous presentation given to the Board of Directors by Orion's CFO, which explained in depth that after weeks of negotiations, Orion realized that Hayneedle still intended to compete with Orion.[43] Orion responded by offering Hayneedle three choices: (1) sell the assets for a "premium" price and agree not to compete; (2) sell at a reduced price but continue to compete; or (3) terminate the deal.[44] Hayneedle initially chose the first option, but then shortly thereafter, "Hayneedle informed [Orion] that they wished to terminate the process, i.e., choose Track #3."[45]

No other reason for the deal's demise was even hinted at by the CFO, and any post hoc arguments Orion may now assert in the context of litigation cannot defeat summary judgment when they are contradicted by Orion's own contemporaneous documents. *Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 42 (2d Cir. 1986).[46] This is especially true here when: (1) Orion fails to point to a *single* contemporaneous document to substantiate its CEO's self-serving testimony that irrespective of any detailed presentation to the Board on the deal's demise, the Board was otherwise informed that Sunny's revocation of Orion's credit doomed the deal; and (2) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[47]

**H.    No Jury Can Reasonably Find the Scope of Orion's Asserted Relevant Market**

The burden of establishing the relevant market rests with the antitrust plaintiff, and at the summary judgment stage, plaintiff must do more than just plead or define the relevant market; it

---

[42] Orion's Opp. at 8:3-12.

[43] Caseria Decl., Ex. 36 (Sept. 11, 2014 Orion Presentation), slide 4.

[44] *Id.* at slide 4.

[45] *Id.*, slide 5.

[46] Orion's Opposition did not distinguish or even acknowledge the commonsense principle set forth in *Argus* which Defendants highlighted in its Cross-MSJ. Cross-MSJ at 18:6-13 and 21:1-4.

[47] Eckert Decl., Ex. 6 (Sept. 28, 2018 J. Caccavo Dep.) at 134:19-135:7; 136:11-137:6.

must come forward with specific evidence – expert or otherwise – to substantiate and prove its asserted relevant market. *E.g., Metro Indus., Inc. v. Sammi Corp.,* 82 F.3d 839, 848 (9th Cir. 1996) (affirming summary judgment for antitrust defendant because of insufficient evidence in the record to prove plaintiff's relevant market); *Morgan, Strang, Wheeler Biggs v. Radiology,* 924 F.2d 1484, 1489-90 (9th Cir. 1991) (affirming summary judgment for defendant because conclusory assertions of the relevant market are given little weight).  As explained in Defendants' opening brief, Orion has no evidence – expert or non-expert – from which a jury can find the existence of a relevant market.

While Orion's expert, Dr. Zona, offered his *conclusion* that the relevant market is "the market for telescope manufacturing services," he performed no economic analysis or otherwise offered any data, evidence or explanation to substantiate his conclusion such that a jury can reasonably determine the proper relevant market for itself.  Indeed, Dr. Zona's "opinion" or "analysis" as to the bases for his conclusion consists of a single conclusory sentence:

> The narrow product market definition is consistent with the specialized nature of the product – auto manufacturing services (or other types of manufacturing services) are not reasonable substitutes for telescope manufacturing services.[48]

The so-called "detailed analysis" of U.S. customs data, HHI figures and barriers to entry Orion points to opposition goes to the separate issue of market power, *not* the scope of the relevant market, which Dr. Zona simply assumed into existence.  *See Newcal Indus., Inc. v. IKON Office Solution,* 513 F.3d 1038, 1044 (9th Cir. 2008) (an antitrust plaintiff must establish both a relevant market and power within that relevant market).  And, without a relevant market substantiated by the record, any purported examination of anticompetitive effects within that market is similarly "without context or meaning" to be of any help to the jury.  *FTC v. Freeman Hosp.,* 69 F.3d 260, 268 (8th Cir. 1995).  Orion points to no other evidence to substantiate its asserted market, thus warranting summary judgment for Defendants on Orion's Sherman Act Section 2 and Clayton Act Section 7 claims.[49]

---

[48] Ex. 17 (Zona Rpt.) ¶ 45.

[49] The only non-expert "evidence" Orion proffers is testimony from Orion's CEO that Orion "cannot buy telescopes from factories that make things other than telescopes."  Orion's Opp. at 11:19-20. No jury can reasonably determine the appropriateness of Orion's relevant market from this overly-

## I.    Orion Cannot Recover Damages Relabeled as Restitution Under the UCL

Relabeling its expert's calculations of "damages in the form of lost profits from price overcharges"[50] as restitution does not permit Orion to seek monetary relief under the UCL.  The California Supreme Court – the final arbiter on California's UCL – has held that compensation for lost profits, lost value and/or lost customers is a measure of damages, not restitution, not recoverable under the UCL, *Korea Supply Co. v. Lockheed Martin Corp.* 29 Cal. 4th 1134, 1151 (2003), and Orion does not dispute this.  Orion's claim to an as-yet unspecified sum not calculated by its experts which purportedly represents the "difference in value between what it paid due to Defendants' unlawful activities and what it actually received" is precisely the type of nonrestitutionary disgorgement struck down in *Korea Supply.  Id.; see also McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 808-09 (9th Cir. 1988) (plaintiff must present competent evidence from which a jury can fairly estimate damages).

## J.    Orion Concedes that to the Extent its Damages Expert is Excluded, Summary Judgment Should Also be Granted as to Those Damages Claims

The entirety of Orion's opposition to this issue is that "this is premature."[51]  Orion therefore concedes that to the extent its damages expert is excluded under *Daubert*, summary judgment should also be granted as to those damages claims as it would no longer be premature to do so.[52]

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their cross-motion for summary judgment and deny Orion's motion for summary judgment.

---

simplistic statement alone which fails to consider whether manufacturing services for similar products (binoculars and spotting scopes, for example) are reasonably interchangeable with manufacturing services for telescopes. *Rebel Oil Co., Inc. v. Atlantic Richfield Co.,* 51 F.3d 1421, 1436 (9th Cir. 1995) ("If producers of product X can readily shift their production facilities to produce product Y, then the sales of both should be included in the relevant market.").  It also assumes without support that all telescope manufacturers can easily shift production from manufacturing one type of telescope to any other type of telescope.

[50] Caseria Decl., Ex. 17 (Zona Rpt.) at ¶ 8c.

[51] Orion's Opp. at 15:27-28.

[52] Orion is also completely silent on the last point in Defendants' Cross-MSJ that Orion's MSJ should be stricken in its entirety because it was untimely.  Orion does not even attempt to argue "good cause" justifying its failure to meet the Court-imposed deadline or request an extension.

Dated:  August 22, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By    _____
                    */s/ Leo D. Caseria*
                    Leo D. Caseria

Attorneys for Defendants
NINGBO SUNNY ELECTRONIC CO., LTD.,
SUNNY OPTICS, INC. and
MEADE INSTRUMENTS CORP.

Case No. 5:16-cv-06370-EJD-VKD
SMRH:4820-2626-7041    DEFENDANTS' REPLY ISO CROSS-MOTION FOR SUMMARY JUDGMENT