SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
LEO D. CASERIA, Cal. Bar No. 240323
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:    213.620.1780
Facsimile:     213.620.1398
E-mail:         lcaseria@sheppardmullin.com

MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
DYLAN I. BALLARD, Cal. Bar No. 253929
HELEN C. ECKERT, Cal. Bar No. 240531
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:    415.434.9100
Facsimile:     415.434.3947
E-mail:         mscarborough@sheppardmullin.com
                    dballard@sheppardmullin.com
                    heckert@sheppardmullin.com

Attorneys for Defendants NINGBO SUNNY
ELECTRONIC CO., LTD., SUNNY OPTICS,
INC., and MEADE INSTRUMENTS CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC. d/b/a Orion Telescopes & Binoculars, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>NINGBO SUNNY ELECTRONIC CO., LTD., SUNNY OPTICS, INC., MEADE INSTRUMENTS CORP., and DOES 1-25,<br><br>Defendants. | Case No. 5:16-cv-06370-EJD-VKD<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOVING SEPARATE STATEMENT IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date: September 12, 2019<br>Time: 9:00 a.m.<br>Ctrm: 4, 5th Floor<br><br>Complaint Filed: November 1, 2016<br>First Amended Complaint Filed: November 3, 2017<br>Trial Date:  October 15, 2019 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| Defense 1: No Evidence Against Meade | | | |
| 1. There is no allegation or evidence of any anticompetitive conduct by Meade itself | Fact 1. There is no allegation or evidence that Meade itself entered into an unlawful agreement to either prevent Orion from acquiring Meade or have Ningbo Sunny acquire Meade through anticompetitive means. *See* First Amended Complaint ("FAC"), ¶¶ 70-79; Ex. 2[1] (Moreo Dep.) at 178:18-179:11. | Disputed. To recount just some of the evidence: Peter Ni and David Shen conspired to ensure that Sunny would acquire Meade; Peter Ni is CEO of Meade; Meade and Celestron knew that the FTC would block any deal in which Celestron took equity in Meade; Celestron nevertheless took equity in Meade as memorialized in a ledger maintained by Meade and sent to Meade President Victor Aniceto. Hagey Decl. Ex. 1 (P. Ni Dep. 183:25-184:18); *id.* 202:8-24 (re Borden Decl. Ex. 55, Dep. Ex. 203); Borden Decl. Ex. 1 (P. Ni Dep. 113:7-11, 113:24-114:8, 116:11-17, 117:23-118:6, 119:23-120:4 (Shen and Ni form Hong Kong company to wire money | Orion's response does not create a genuine dispute. It is undisputed that there is no allegation or evidence that Meade *directly* participated in a conspiracy to have itself acquired through allegedly collusive means. *E.g.,* FAC ¶ 70 *et seq.* ("Ningbo Sunny and the Settling Coconspirators shared in Ningbo Sunny's acquisition of Meade); Orion's MSJ[2] at 5:11 ("Sunny conspired with its horizontal competitor Synta to ensure that Sunny acquired Meade."); Orion's Opp.[3] at 8:16-17 ("Sunny was able to buy Meade [because] it received illegal assistance from its horizontal competitor"); *id.* at 9:15 ("Sunny and Synta's |

[1] References to "Ex." in the first column ("Moving Party's Undisputed Facts/Supporting Evidence) refer to the exhibits to the Declaration of Leo D. Caseria in Support of Defendants' Cross-Motion for Summary Judgment, Opposition to Plaintiff's Motion for Summary Judgment, and Memorandum of Points and Authorities in Support Thereof ("Caseria Decl.") (Aug. 8, 2019) (ECF No. 270-3).

[2] References to "Orion's MSJ" refer to Orion's Motion for Summary Judgment (July 26, 2019) (ECF No. 256).

[3] References to "Orion's Opp." refer to Orion's Reply iso Motion for Summary Judgment and Opposition to Cross-Motion for Summary Judgment ("Orion Opp.") (Aug. 15, 2019) (ECF No. 284).

-1-

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | for acquisition); *id.* 8:21-10:8)); Borden Decl. Ex. 5 (Lupica Dep. 317:6¬9, 319:19-24); Borden Decl. Ex. 4 (V. Aniceto Dep. 330:14-332:6 (regarding Borden Decl. Ex. 60)) | collusion to outbid Orion"). <br><br> The evidence Orion cites now is evidence *relating* to Meade (which is unremarkable given that Orion alleges a conspiracy as to the acquisition of Meade), but does not create a genuine dispute that Meade *directly* participated in a conspiracy as to its own acquisition. |
| | Fact 2. There is no allegation or evidence that Meade itself entered into an unlawful agreement with Suzhou Synta[4] to fix prices of telescopes sold to Orion. <br><br> *See* FAC ¶¶ 60-69, 86-90; Ex. 2 (Moreo Dep.) at 179:12-18. | Disputed. Meade's former CEO Joe Lupica and current president Victor Aniceto testified that Shen participated in numerous strategic meetings re Meade (including re sales and product), and further testified that Ni and Shen would regularly make verbal agreements. Borden Decl. Ex. 53; Borden Decl. Ex. 62 (November meeting agenda); Borden Decl. Ex. 5 (J. Lupica Dep. 396:2-18 (discussing Borden Decl. Ex. 62)); Borden Decl. Ex. 66 (3/24/14 email by Lupica) (writing that Peter Ni made clear to Meade management that "the | Orion's "evidence" does not create a genuine dispute about whether Meade independently entered into an unlawful agreement with Suzhou Synta *to fix the prices of telescopes sold to Orion.* None of Orion's purported "evidence" has anything to do with an *agreement by Meade to fix prices to Orion*, or even anything to do with Meade, Orion or prices. Even taking Orion's "evidence" at face value, communications among competitors that do not rise to the level of an unlawful *agreement* to restrain trade does not establish an antitrust violation. |

[4] "Suzhou Synta" refers to Suzhou Synta Optical Technology Co. Ltd.

SMRH:4846-2241-5265

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | four companies are to cooperate for the benefit of the entire group of companies (Sunny, Synta, Meade and Celestron)"). Peter Ni told Meade management that Meade promotions should not "disrupt Synta business." Borden Decl. Ex. 79 (11/12/13 email from Meade President Victor Aniceto to Meade CEO Joe Lupica stating that "Mr. Ni discussed with me earlier that . . . he doesn't want to disrupt Synta business. However, this promo will not be disruptive to Celestron business."). David Shen wrote an email to Peter Ni regarding Meade in which he stated that Celestron understood that "Director Ni will not be a competitor and is trustworthy when it comes to business." Borden Decl. Ex. 57 [Exs. 13-14]; *id.* Ex. 78. Lupica admits that he shared Meade's strategy and plans with Shen. Hagey Decl. Ex. 2 (Lupica Dep. 381:11-20). | |
| | Fact 3. There is no allegation or evidence that Meade itself entered into an unlawful market | Disputed. *See* response to Fact 2. | Again, Orion's "evidence" does not create a genuine dispute about whether Meade |

SMRH:4846-2241-5265

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | allocation agreement where it agreed that Suzhou Synta would manufacture high-end telescopes and Meade would manufacture low to medium-end telescopes.<br><br>*See* FAC ¶¶ 2, 80, 86; Ex. 2 (Moreo Dep.) at 180:18-181:15. | | independently entered into an unlawful agreement with Suzhou Synta to allocate the markets wherein Suzhou Synta would manufacture high-end telescopes and Meade would only manufacture low to medium-end telescopes.  None of the "evidence" has anything to do with telescope manufacturing, or an agreement to allocate telescope manufacturing, or an agreement by Meade to allocate manufacturing. |
| | Fact 4. There is no allegation or evidence that Meade itself entered into an unlawful agreement to prevent Orion from acquiring the Hayneedle assets.<br><br>*See* FAC ¶¶ 85, 96-110; Ex. 2 (Moreo Dep.) at 180:4-17. | Disputed. Meade continued to sell through Hayneedle after the Sunny/Synta conspiracy to withdraw credit from Orion and ensure that David Shen's companies acquired it. Hagey Decl. Ex. 3 (Aniceto Dep. 144:4-6).<br><br>Also, immaterial and legally irrelevant. Meade as "a subsidiary . . . as a matter of law cannot innocently advance an anticompetitive scheme . . . for a legitimate business purpose, while its parent and sister companies purposely advance the very same scheme . . . for an | Orion's response does not create a genuine dispute as to whether Meade itself entered into an unlawful agreement to prevent Orion from acquiring the Hayneedle assets. As made clear in the very case Orion cites in its Response, Orion is "still required to come forward with evidence that each defendant independently participated in the enterprise's scheme, to justify holding that defendant liable as part of the enterprise." *Arandell,* 900 F.3d at 633.  To simply assert that Meade continued to sell through Hayneedle |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | illegal, anticompetitive purpose." *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 630-31 (9th Cir. 2018). | says absolutely nothing about whether Meade entered into an unlawful agreement with Suzhou Synta to prevent Orion from acquiring the Hayneedle assets. |
| | Fact 5. There is no allegation or evidence that Meade itself refused to deal with Orion in late 2016. *See* FAC ¶¶ 111-114; Ex. 17 (Zona Rpt.) at ¶ 8(e). | Admitted but immaterial and legally irrelevant. Meade is a beneficiary of Defendants' unlawful refusal to deal and the corresponding harm to Orion, and as a subsidiary and conspirator of Sunny is jointly liable for that conduct. *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 630-31 (9th Cir. 2018); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d 1055, 1056 (N.D. Cal. 2011) ("It is well-established that once a defendant joins a conspiracy it is jointly and severally liable for any actions taken in furtherance of the conspiracy."). | This fact is now undisputed, and Meade should now be dismissed from any cause of action based on a refusal to deal with Orion. As for Orion's extraneous legal argument that Meade is a beneficiary and subsidiary and thus a co-conspirator, the very case Orion relies on makes clear that Orion is "still required to come forward with evidence that each defendant independently participated in the enterprise's scheme, to justify holding that defendant liable as part of the enterprise." *Arandell,* 900 F.3d at 633. To simply argue that Meade was a beneficiary of the wrong and a subsidiary/co-conspirator says absolutely nothing about whether Meade entered into an unlawful agreement to refuse to deal with Orion in 2016. Furthermore, Orion has |

-5-

SMRH:4846-2241-5265

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | | now explicitly confirmed that its refusal to deal case is a *unilateral* refusal to deal by Sunny alone, within the *Aspen Skiing* exception.  Orion's Opp. at 14:16-15:2.  To then argue here that Meade was a co-conspirator to a *unilateral* refusal to deal is nonsensical. |
| | Fact 6. Orion's damages expert, Dr. Zona, analyzed three categories of damages to Orion from Defendants' alleged anticompetitive conduct, none of which involve any alleged unlawful conduct by Meade itself: <br><br> (1) Ningbo Sunny and Suzhou Synta's alleged collusion to fix prices and divide the market for telescope manufacturing; <br><br> (2) Ningbo Sunny and Suzhou Synta's conspiracy to prevent Orion from acquiring Meade or the Hayneedle assets; and <br><br> (3) Ningbo Sunny's alleged refusal to sell products to Orion. Ex. | Disputed. *See* responses to Facts 1-6. <br><br> Moreover, Dr. Zona's overcharge calculations are based upon a but for world in which Meade is an independent manufacturer rather than a member of the Sunny/Synta conspiracy. Zona Decl. Ex. 1[5], Zona Report ¶¶ 99, 105. | Orion's Response does not create a genuine dispute. <br><br> Paragraph 99 of Dr. Zona's Report states in its entirety: "I have analyzed a subset of the PIC data which gives me overcharge rates for price fixing cases with two cartel members and cartel market share greater than 70 percent. There are 21 observations of such cartels and the average overcharge is about 27 percent.  I also considered overcharge rates for price fixing cases with three cartel members and cartel market share greater than 70 percent.  There are 10 observations of such cartels and the |

[5] "Zona Decl." refers to the Declaration of J. Douglas Zona, Ph.D. in support of Plaintiff's Motion for Summary Judgment (filed July 26, 2019) (ECF No 256-90)

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | 17 (Zona Rpt.), at ¶ 8(c)-(e). | | average overcharge is about 35 percent." Paragraph 105 states in its entirety: "I have considered a range of values for some of the factors and I summarize the results in the following table.  Orion incremental profit on Sunny and Synta manufactured products from November 2013 to May 2018 was $14,822 million.  I have used this figure to multiply the Damage Rate to get total Damages under these scenarios." Neither Paragraphs 99 nor 105 remotely support the claim Orion makes here. Moreover, even if it did, assuming a but-for world where Meade was not acquired by Sunny says nothing about whether or not any of Dr. Zona's damages categories are based on any alleged anticompetitive conduct by Meade itself: *Meade's anticompetitive conduct* is separate/distinct from the *acquisition of Meade.* |
| Defense 2: No Evidence of Below-Cost Pricing | | | |

SMRH:4846-2241-5265

Case No. 5:16-cv-06370-EJD-VKD
DEFENDANTS' REPLY TO SEPARATE STATEMENT ISO
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| 1. There is no evidence to support Plaintiff's below-cost pricing allegations against Defendants | Fact 7. Orion's President and CEO confirmed at his deposition that Orion's below-cost pricing allegations had nothing to do with any of the Defendants:<br><br>Q: Are you alleging that Ningbo Sunny had anything to do with any of that [pricing below cost] conduct?<br><br>A: Sitting here today, I'm not aware of them being connected to that conduct.<br><br>Ex. 2 (Moreo Dep.) at 134:1-4. *See also id.* at 134:5-11. | Disputed. Defendants entered into an unlawful horizontal conspiracy with Synta to "cooperate for the benefit of the entire group of companies (Sunny, Synta, Meade, and Celestron)," Borden Decl. Ex. 66 (3/24/14 email by Lupica), and are jointly and severally liable for damages caused by their parent companies and coconspirators. *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 630-31 (9th Cir. 2018); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d 1055, 1056 (N.D. Cal. 2011) ("It is well-established that once a defendant joins a conspiracy it is jointly and severally liable for any actions taken in furtherance of the conspiracy."). Peter Ni told Meade management that Meade promotions should not "disrupt Synta business." Borden Decl. Ex. 79 (11/12/13 email from Meade President Victor Aniceto to Meade CEO Joe Lupica stating that "Mr. Ni discussed with me earlier that . . . he doesn't want to disrupt Synta business. | Orion's Response does not create a genuine dispute.  Orion has no rebuttal to the fact that its own CEO confirmed that there was no connection between Defendants and the below-cost pricing Orion alleged in its FAC.  Stringing together snippets of documents taken out of context which have nothing to do with below-cost pricing, or even pricing generally, and then pinning any and all alleged injury to Orion, in  perpetuity, on Defendants is insufficient as a matter of law to survive summary judgment. None of Orion's purported "evidence" remotely suggests a conspiracy wherein Defendants had a conscious commitment to a common scheme for Suzhou Synta's subsidiary Celestron to price its telescopes below cost.  How Defendants could benefit from such a conspiracy, or why it would enter into such a conspiracy in the first place, makes no sense, and Orion's "evidence" does not come close to establishing that such a |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | However, this promo will not be disruptive to Celestron business."). David Shen wrote an email to Peter Ni regarding Meade in which he stated that Celestron understood that "Director Ni will not be a competitor and is trustworthy when it comes to business." Borden Decl. Ex. 57 [Exs. 13-14]; *id.* Ex. 78. Lupica admits that he shared Meade's strategy and plans with Shen. Hagey Decl. Ex. 2 (Lupica Dep. 381:11-20). Caseria Ex. 38 (Oct. 8, 2015 Orion email), at 1-2 (discussing below-cost dumping by Synta). | conspiracy happened in the first place. |
| | Fact 8. Orion's two experts have done no analysis on the proper measure of the cost of producing a telescope, nor have they opined on the actual cost to produce each of the many types of telescopes manufactured by Defendants and compared those costs to telescope prices. *See generally* Exs. 17 (Zona Rpt.) and 41 (Sasian Rpt.) | Undisputed, but misleadingly incomplete. The reason that Dr. Zona did not analyze Defendants' cost to produce a telescope is because Defendants did not produce that data. Defendants have taken the remarkable position that they do not track their cost data at the product level. (Dkt. No. 242 at 7 ("There is no product or SKU-level labor cost data.").) In other words, Defendants | This material fact is now undisputed. As for Orion's extraneous grievances, they are irrelevant to the material fact and have been the subject of *two* discovery letter briefs (ECF Nos. 208 and 242) which the Honorable DeMarchi has already ruled on (ECF Nos. 221 and 250). Defendants have fully complied with DeMarchi's orders, and this issue is now law of the case which Orion cannot relitigate |

-9-

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | contend that Ningbo Sunny—a telescope manufacturer—does not track how much it pays to manufacture a given telescope model, even though such cost information is essential to understanding whether any given telescope model is profitable or not.<br><br>This is why Dr. Zona did not use Defendants' data, a fact that Dr. Zona explained at length in his deposition. Hagey Decl. Ex. 4 (Zona Dep. at 75:4-76:13).<br><br>The jury is entitled to assess the credibility of Defendants' purported lack of basic product-level profit data and draw their own conclusions in light of the considerable evidence of conspiracy in this case. | in opposition to summary judgment. *United States v. Alexander,* 106 F.3d 874, 876 (9th Cir. 1997). |
| 2. Orion's below-cost pricing allegations instead pertain only to Suzhou Synta and Celestron | Fact 9. Orion's own President and CEO confirmed at his deposition that Orion's allegations of below-cost pricing pertain to Suzhou Synta and Celestron "dumping" Skywatcher Dobsonian | Undisputed that Mr. Moreo testified that Orion was concerned about Defendants' co-conspirators David Shen and Synta's dumping of below-cost telescopes on the market, but immaterial and legally | This material fact is now undisputed.<br><br>*See also* Defendants' Reply to Fact 7. |

SMRH:4846-2241-5265

Case No. 5:16-cv-06370-EJD-VKD

DEFENDANTS' REPLY TO SEPARATE STATEMENT ISO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | telescopes into the U.S. market in October 2015. Ex. 2 (Moreo Dep.) at 132:15-133:25. | irrelevant. *See* response to Fact 7. | |
| | Fact 10. Orion's contemporaneous documents from 2015 confirm that Orion was concerned with below-cost pricing only by Suzhou Synta and its U.S. subsidiary Celestron: "Our largest supplier, Synta, through their US subsidiary Celestron, launched a promotion October 1 in the US on their Skywatcher branded products. These products are similar and in some cases, nearly identical to Orion's core products. The retail pricing offered through this promotion leads me to conclude that Celestron is selling these products below cost and the most likely explanation is their (*Synta/Celestron's*) intent to hurt Orion." Ex. 38 (Oct. 8, 2015 Orion email), at 1-2 (emphasis added). | Undisputed that the document contains the quoted material; disputed as to Defendants' characterization of Orion's concerns as only relating to Synta, which is not stated in the document. Also, immaterial and legally irrelevant. *See* response to Fact 7. | This material fact is now undisputed. *See also* Defendants' Reply to Fact 7. |
| Defense 3: No Evidence of a Refusal to Deal | | | |
| 1. Orion alleges a unilateral refusal to deal | Fact 11. Orion alleges only a unilateral refusal to deal by Sunny alone. | Disputed. Orion has asserted numerous claims, among which is a unilateral refusal to | Orion's Response does not create a genuine dispute. It is now undisputed that Orion is |

-11-

SMRH:4846-2241-5265

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| by Sunny alone | FAC ¶ 111, 114; Ex. 17 (Zona Rpt.), ¶¶ 8(e) and 127. | deal claim against Ningbo Sunny. | only alleging a *unilateral* refusal to deal by Sunny alone (as opposed to a *concerted* refusal to deal among Sunny and a separate/independent entity capable of conspiring with Sunny). |
|  | Fact 12. Orion entered into a settlement agreement with Suzhou Synta (and other entities) which included a long-term Supply Agreement with Suzhou Synta, guaranteeing Orion's supply of telescopes on "most favored customer" terms. Ex. 40 (Sept. 14, 2016 Settlement Agreement); Ex. 18 (Aug. 31, 2016 Supply Agreement) | Disputed in part. Synta indeed settled, as the operative complaint makes clear, but Synta has not honored the terms of the settlement, including those relating to the supply of telescopes. Moreo Decl. Ex. 1 (8/7/19 P. Moreo Ltr. to David Shen). Also, immaterial and legally irrelevant. *See* response to Fact 18. | Orion's Response does not create a genuine dispute.  Whether or not Suzhou Synta has honored the terms of its settlement agreement with Orion is entirely between Suzhou Synta and Orion, and cannot possibly form the basis of any antitrust liability for Sunny, Meade or Sunny Optics. |
| 2. There was no voluntary prior course of dealing between Plaintiff and Sunny | Fact 13. Before October 2016, Orion purchased Sunny- manufactured telescopes from Synta Tech,[6] *not* from Sunny. Ex. 3 (Chiu Dep.) at 144:3-9, 166:24-25, 222:3-5; Ex. 4 (Espinosa Dep.) at 113:11-14 114:5-7, 114:21-115:13; Ex. 5 | Disputed. Ningbo Sunny's 30(b)(6) witness claimed not to know Synta Technology Corporation, contradicting Sunny's assertion – presented for the first time here – that Synta Tech was Sunny's distributor. Hagey Decl. | Orion's Response does not create a genuine dispute.  Orion's Response does not claim that it purchased *directly* from Sunny (because it did not). Indeed, Orion's very response concedes this fact: "Orion made efforts throughout the years to contact Sunny |

[6] "Synta Tech" refers to Synta Technology Corporation, a third-party telescope distributor. Synta Tech appears to also sometimes be referred to as Good Advance Industries Limited ("Good Advance").  For ease of reference, both Synta Tech and Good Advance will be referred to herein as Synta Tech.

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | (Nov. 4, 2016 Orion email); Ex. 6 (Mar. 31, 2016 meeting minutes); Ex. 7 (Sunny Invoice to Synta Tech for PO 45539); Ex. 8 (Synta Tech Invoice to Orion for PO 45539); Ex. 9 (wire transfer from Orion to Synta Tech for PO 45539); Ex. 10 (Sunny Invoice to Synta Tech for PO 45303); Ex. 11 (Synta Tech Invoice to Orion for PO 45303); Ex. 12 (wire transfer from Orion to Synta Tech for PO 45303); Ex. 13 (Apr. 5, 2016 Sunny email); Ex. 14 (Sunny 30(b)(6) Dep.) at 54:9-16. | Ex. 6 (Chiu 30(b)(6) 35:15-21 ("Do you know what Synta Technology Corporation is? [Objection] THE WITNESS: I don't. Because we only have business relationship with Good Advance and Nantong. Same as Suzhou Nantong.")).  Orion made efforts throughout the years to contact Sunny directly, but its contacts were answered by Joyce Huang. Hagey Decl. Ex. 7 (NSE02189963).  This fact is also immaterial and irrelevant. *See* response to fact 18. | directly, but its contacts were answered by Joyce Huang." Orion's deliberate obfuscation of which entity it actually purchases from by arguing about technicalities as to the formal corporate name of Synta Tech and whether Sunny's witness was familiar with the formal corporate name speaks volumes. How Orion can even disclaim any knowledge of Synta Tech when Orion entered into a settlement agreement with Synta Tech in which Orion specifically insisted that "As for the Effective Date, Synta Technology will no longer serve as intermediary between Orion and any other person or entity, including but not limited to Ningbo Sunny" is hard to believe. Caseria Decl., Ex. 40 (Sept. 14, 2016 Settlement Agreement) at ¶ 4; *id.,* Ex. 3 (Chiu Dep.) at 144:3-9, 166:24-25, 222:3-5; *id.,* Ex. 4 (Espinosa Dep.) at 113:11-14 114:5-7, 114:21-115:13; *id.,* Ex. 5 (Nov. 4, 2016 Orion email); *id.,* Ex. 6 (Mar. |

-13-

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | | 31, 2016 meeting minutes); *id.,* Ex. 7 (Sunny Invoice to Synta Tech for PO 45539); *id.,* Ex. 8 (Synta Tech Invoice to Orion for PO 45539); *id.,* Ex. 9 (wire transfer from Orion to Synta Tech for PO 45539); *id.,* Ex. 10 (Sunny Invoice to Synta Tech for PO 45303); *id.,* Ex. 11 (Synta Tech Invoice to Orion for PO 45303); *id.,* Ex. 12 (wire transfer from Orion to Synta Tech for PO 45303); *id.,* Ex. 13 (Apr. 5, 2016 Sunny email); *id.,* Ex. 14 (Sunny 30(b)(6) Dep.) at 54:9-16. |
| | Fact 14. Orion's September 2016 settlement agreement specifically included a provision that "Synta Technology no longer serve as an intermediary between Orion and any other person or entity, including but not limited to Ningbo Sunny." Ex. 40 (Sept. 14, 2016 Settlement Agreement) ¶ 4. | Disputed. Ningbo Sunny's 30(b)(6) witness claimed not to know Synta Technology Corporation, contradicting Sunny's assertion – presented for the first time here – that Synta Tech was Sunny's distributor. Hagey Decl. Ex. 6 (Chiu 30(b)(6) 35:15-21). | *See* Defendants' Reply to Fact 13. Orion's claim that it did not know that the entity it was purchasing Sunny-manufactured telescopes was a distributor for Sunny, and that Sunny is presenting this fact for the first time on summary judgment is nonsensical. The fact that Orion has to resort to citing testimony about whether Sunny's witness was familiar with Synta Tech's formal corporate name speaks volumes. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | Fact 15. In October 2016, Orion was trying to establish a "change" in the prior course of dealing by "start[ing] buying directly from you (Sunny), instead of Joyce (Good Advance)." Ex. 42 (Sept. 26, 2016 Orion email), at 3-4; Ex. 5 (Nov. 4, 2016 Orion email). | Disputed to the extent Defendants are implying that Orion only started to try to deal directly with Sunny in 2016. Orion had attempted to negotiate directly with Sunny for years, but its emails to Sunny would be responded to by Joyce Huang of Synta. *See* Hagey Decl. Ex. 7 (NSE02189963). | Orion's Response does not create a genuine dispute. Rather, Orion's Response directly concedes that it did not have a prior course of dealing with Sunny: "Orion had attempted to negotiate directly with Sunny for years, but its emails to Sunny would be responded to by Joyce Huang of Synta." |
| | Fact 16. No supply agreement existed between Plaintiff and Sunny. Ex. 2 (Moreo Dep.) at 165:5-10 | Disputed. As the cited email chain indicates, Ningbo Sunny had agreed to continue supplying Orion and had abided by that agreement until this email chain. *See also* Hagey Decl. Ex. 15 (Standstill Agreement (Ningbo Sunny "shall not materially change their business practices to the detriment of the other, including, for example, by refusing to supply or purchase or pay for products under existing purchase orders, or refusing to fulfill such future orders that otherwise would have been sold or purchased in the business judgment of the parties and in the normal course of business dealings.")). | Orion's Response does not create a genuine dispute. Telling, Orion fails to cite to an existing supply agreement between Orion and Sunny because none exists. |

Case No. 5:16-cv-06370-EJD-VKD

SMRH:4846-2241-5265

DEFENDANTS' REPLY TO SEPARATE STATEMENT ISO
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | Fact 17. Sunny told Orion that it wanted to resolve Orion's pre-litigation demands and come to terms on a mutually satisfactory supply agreement before entering into a new direct sales relationship with Orion.<br><br>Ex. 42 (Sept. 26, 2016 Orion email), at 2 and 3 | Disputed. What Sunny told Orion is that it would not supply Orion until "we solve[] the unfriendly disputes," *i.e.*, Orion's demand that Sunny cease violating the antitrust laws.<br><br>Caseria Ex. 42 at 3. | Orion's Response does not create a genuine dispute.  There is no material difference between Defendants' and Orion's descriptions of what Sunny told Orion. |
| **Defense 4: No Evidence of a *Per Se* Price-Fixing** | | | |
| 1. Orion purchased Sunny-manufactured telescopes from Synta Tech, not Suzhou Synta | Fact 18. Before October 2016, Orion purchased Sunny- manufactured telescopes from Synta Tech, *not* from Sunny. Ex. 3 (Chiu Dep.) at 144:3-9, 166:24-25, 222:3-5; Ex. 4 (Espinosa Dep.) at 113:11-14 114:5-7, 114:21-115:13; Ex. 5 (Nov. 4, 2016 Orion email); Ex. 6 (Mar. 31, 2016 meeting minutes); Ex. 7 (Sunny Invoice to Synta Tech for PO 45539); Ex. 8 (Synta Tech Invoice to Orion for PO 45539); Ex. 9 (wire transfer from Orion to Synta Tech for PO 45539); Ex. 10 (Sunny Invoice to Synta Tech for PO 45303); Ex. 11 (Synta Tech Invoice to Orion for PO 45303); Ex. 12 (wire transfer from Orion to Synta Tech for PO | Disputed.<br><br>The undisputed evidence shows that Joyce Huang worked for David Shen under the name of multiple companies, and instructed Sunny not to deal with Orion. *See* Borden Decl. Ex. 57 [Ex. 2] (Joyce writing Sunny that "Situation with Orion is serious. Since Mr. Shen is afraid that Orion may check Good Advance account and Synta Taiwan's operation conditions, he has forwarded all clients that I contacted to you and let you handle them directly (Orion must be kept. As per the agreement, the current operation method should not be changed.)"). Borden Decl. Ex. 2 (Chiu 30(b)(6) Dep. 53:22-25) | Orion's Response does not create a genuine dispute.  Nowhere in the lengthy and convoluted response does Orion claim, let alone proffer specific evidence, that Orion purchased Sunny-manufactured telescopes directly from Sunny itself.<br><br>Furthermore, if Orion wants to now retreat from its prior indefensible position that Orion purchased Sunny-made telescopes from telescope manufacturer Suzhou Synta, and now argue that even though Orion purchased from distributor Synta Tech, Orion can still establish a *per se* antitrust violation because David Shen owns Synta Tech, Good Advance, Suzhou Synta, Nantong |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | 45303); Ex. 13 (Apr. 5, 2016 Sunny email); Ex. 14 (Sunny 30(b)(6) Dep.) at 54:9-16. | (Chiu admits that Ms. Huang instructed Sunny not to deal directly with Orion.)). "(Q. And before that time, had Ms. Huang instructed you not to negotiate directly with Orion? A. Of course, because that's business ethics, right, because we received Orion's business through Synta.") Orion made efforts throughout the years to contact Sunny directly, but its contacts were answered by Joyce Huang. Indeed, when Orion President Peter Moreo attempted to negotiate Orion's credit terms with Peter Ni, CEO of Ningbo Sunny, Joyce Huang—rather than Ni— responded to the email. Hagey Decl. Ex. 7 (NSE02189963). Defendants' attempt to hide Joyce Huang's role as a conduit for the Sunny/Synta conspiracy by claiming that 'Synta Tech' was an independent distributor is contradicted by the testimony of Ningbo Sunny's 30(b)(6) witness, who claimed not to know Synta | Schmidt, and Celestron, then Orion has to come forward with *evidence* from which a jury can reasonably conclude that David Shen does in fact own and control those companies and that *per se* liability can be imputed to Defendants on that basis of David Shen's control. Orion is long past the pleading stage where it can make whatever allegations it wants and have been accepted as true. |

SMRH:4846-2241-5265
Case No. 5:16-cv-06370-EJD-VKD
DEFENDANTS' REPLY TO SEPARATE STATEMENT ISO
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | Technology Corporation. Hagey Decl. Ex. 6 (Chiu 30(b)(6) 35:15-21) ("Do you know what Synta Technology Corporation is? [Objection]<br><br>THE WITNESS: I don't. Because we only have business relationship with Good Advance and Nantong. Same as Suzhou Nantong.").<br><br>Ultimately, this purported fact – and the numerous others advanced by Defendants that attempt to play similar shell games – are immaterial and irrelevant because David Shen's companies (including Synta Tech, Good Advance, Suzhou Synta, and Nantong Schmidt) were co-conspirators with Defendants. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d 1055, 1056 (N.D. Cal. 2011) ("It is well-established that once a defendant joins a conspiracy it is jointly and severally liable for any actions taken in furtherance of the conspiracy."). Moreover, unlawful collusion does not become legal simply because a straw | |

-18-

SMRH:4846-2241-5265

DEFENDANTS' REPLY TO SEPARATE STATEMENT ISO
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | subsidiary is set up as the contact point between horizontal competitors. *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 630-31 (9th Cir. 2018) ("a subsidiary . . . as a matter of law cannot innocently advance an anticompetitive scheme . . . for a legitimate business purpose, while its parent and sister companies purposely advance the very same scheme . . . for an illegal, anticompetitive purpose."). | |
| | Fact 19. Orion purchased Sunny-manufactured telescopes through a sales associate named Joyce Huang, and Joyce Huang is an employee of Synta Tech.<br><br>FAC ¶ 61; Orion's MSJ at 14; Ex. 4 (Espinosa Dep.) at 113:11-14, 114:5-7, 15:4-13; Ex. 6 (Mar. 31, 2016 meeting minutes), at 2; Borden Decl. Ex. 86.[7] | Disputed. *See* response to Fact 18. Ningbo Sunny's Vice-President testified that David Shen owns both Suzhou Synta and Taiwan Synta. Borden Decl. Ex. 3 (Chiu Dep. 132:23-133:3). | Orion's Response does not create a genuine dispute. Orion does not dispute that Orion purchased Sunny-manufactured telescopes through a sales associate named Joyce Huang, and that Joyce Huang is an employee of Synta Tech. Now, Orion only disputes who owns Synta Tech, which is not even established by the evidence Orion cites. James Chiu only testified that "I *heard* that he owns, or he's the owner of Suzhou and Nantong factory. And |

[7] "Borden Decl." refers to the Declaration of Matthew Borden in support of Plaintiff's Motion for Summary Judgment (filed July 26, 2019) (ECF No. 256-2).

-19-

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | | also Taiwan Synta." Borden Decl. Ex. 3 (Chiu Dep. 132:23-25). Mr. Chiu does not have personal knowledge of which companies David Shen owns. Indeed, Mr. Chiu also testified, as Sunny's 30(b)(6) representative, that he does *not* know who owns Good Advance and does not know whether David She is involved with Good Advance because the only contact Mr. Chiu ever had with Good Advance was with Joyce Huang. Caseria Decl., Ex. 14 (Sunny 30(b)(6) (J. Chiu) Dep.) at 36:5-16. |
| | Fact 20. Joyce Huang's business card identifies her employee as "Synta Technology Corporation." Borden Decl. Ex. 86. | Admitted that one of Joyce Huang's business cards identifies her as an employee of Synta. Disputed to the extent that Defendants contend that was her only role in David Shen's companies. *See* response to Fact 18. | This fact is now undisputed. As for Orion's extraneous claim that this is only one of Joyce Huang's roles, Orion has to proffer specific evidence of such a fact, which is does not because it cannot. *See also* Defendants' Reply to Fact 18. |
| 2. Orion's purchases of Sunny-manufactured telescopes from Synta Tech were | Fact 21. Orion purchased Suzhou Synta telescopes directly from Suzhou Synta itself, without the use of a | Disputed. *See* response to Fact 18. Ningbo Sunny's Vice-President testified that David Shen owns both Suzhou Synta and Taiwan Synta. Borden Decl. Ex. | Orion's Response does not create a genuine dispute. The undisputed fact at issue here is that Orion purchases Suzhou Synta telescopes from Suzhou Synta itself, and |

-20-

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| completely separate from its purchases directly from Suzhou Synta | third-party distributor such as Synta Tech.<br><br>E.g., Exs. 19 & 20 (Orion's POs to Suzhou Synta); Ex. 21 (Suzhou Synta Invoices to Orion); Ex. 22 (Orion wire transfers to Suzhou Synta). | 3 (Chiu Dep. 132:23-133:3). | Orion's Response about whether David Shen owns both Suzhou Synta and Taiwan Synta is completely irrelevant to the fact at issue.<br><br>*See also* Defendants' Reply to Fact 19. |
| | Fact 22. Orion had separate contacts at Synta Tech and Suzhou Synta; never discussed Suzhou Synta purchases with Synta Tech, and vice versa; negotiated with each separately; was invoiced separately; and paid each separately into separate bank accounts.<br><br>Ex. 4 (Espinosa Dep.) at 99:9-100:7; Ex. 23 (Nov. 6, 2016 Orion email), at 3. *Compare* Ex. 7 (Sunny Invoice to Synta Tech for PO 45539); Ex. 8 (Synta Tech Invoice to Orion for PO 45539); Ex. 9 (wire transfer from Orion to Synta Tech for PO 45539) *with* Exs. 19 & 20 (Orion's POs to Suzhou Synta); Ex. 21 (Suzhou Synta Invoices to Orion); Ex. 22 (Orion wire transfers to Suzhou Synta). | Disputed. *See* response to Fact 18. Ningbo Sunny's Vice-President testified that David Shen owns both Suzhou Synta and Taiwan Synta. Borden Decl. Ex. 3 (Chiu Dep. 132:23-133:3). | Again, Orion's Response does not create a genuine dispute. The undisputed fact at issue here is that Orion purchased Sunny-manufactured telescopes separately from its purchases of Suzhou Synta-manufactured telescopes, and Orion's Response about whether David Shen owns both Suzhou Synta and Taiwan Synta is completely irrelevant to the fact at issue.<br><br>*See also* Defendants' Reply to Fact 19. |
| Defense 5:  No Evidence of Market Allocation | | | |

SMRH:4846-2241-5265

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| 1. Sunny acquired Meade in 2013, and Meade continues to manufacture high-end telescopes. | Fact 23. Sunny acquired Meade in 2013. *E.g.*, FAC, Ex. 1 at B-2. | Undisputed. | This material fact is now undisputed. |
| | Fact 24. Meade manufactured a full line of telescopes, including high-end telescopes, and in 2013, Meade's high-end telescopes accounted for over a third of its net sales. Ex. 32 (Feb. 28, 2013 Meade Form 10-K), at NSE2243459; Ex. 33 (Lupica Dep.) at 382:9-25. | Disputed. Defendants omit portions of the 10-K making clear that much of Meade's telescopes were manufactured by Third Party Chinese manufacturers. | Orion's Response does not create a genuine dispute as to whether Meade manufactures high-end telescopes. Meade's 10-K states: "Parts and components for the advanced telescopes are manufactured and assembled in the Company's Mexico facility. Many of the Company's less-expensive telescopes and its binoculars, as well as certain component parts for its small to midrange telescopes, are manufactured under our proprietary designs by manufacturers located in Asia." Eckert Decl.,[8] Ex. 7 (Feb. 28, 2013 Meade Form 10-K) at NSE2243457. |
| | Fact 25. Defendants did not shut down Meade's | Disputed with respect to any increase of | Orion's Response does not create a genuine |

[8] References to "Eckert Decl." refer to the Declaration of Helen C. Eckert in support of Defendants' Reply in support of Their Cross-Motion for Summary Judgment, filed concurrently herewith.

-22-

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | high-end telescope manufacturing, but instead prioritized and increased Meade's production and sales of high-end telescopes.<br><br>Ex. 34 (Jan. 27, 2014 Meade email); Ex. 33 (Lupica Dep.) at 382:9-25. | production or sales. The evidence cited shows only that a departing executive urged that Meade focus on high-end telescopes, and that Meade at one point sought to increase sales of high-end telescopes. The evidence does not show that either occurred, nor whether Meade was attempting to sell telescopes that had already been manufactured. | dispute.  J. Davila's Standing Order for Civil Cases V(B)(2) requires Orion to cite to *evidence* in the record that it contends establishes a dispute: "If the opposing party contends that a fact is in dispute, the opposing party must cite to evidence in the record establishing the dispute"  Orion does not cite to any evidence (because none exists) showing that Meade did *not* increase/prioritize production and sales of high-end telescopes. |
| | Fact 26. Orion's own industry expert, Dr. Sasian, agrees that when Sunny acquired Meade, it acquired the capabilities to manufacture high-end telescopes and that to this today, Meade continues to manufacture high-end telescopes.<br><br>Ex. 41 (Sasian Rpt.), ¶¶ 5 and 55-60. | Disputed as misleading. Dr. Sasian opines that "even if Sunny did not have the ability to make medium- to high-end telescopes before the Meade acquisition, it had such capability afterward." Sasian Decl. Ex. 1[9], Sasian Report ¶ 60. | Orion's Response does not create a genuine dispute.  There is no material difference between Defendants' and Orion's descriptions of this portion of Dr. Sasian's report. |
| | Fact 27. Dr. Sasian further conceded at his deposition that the evidence in this case "clearly" shows that Sunny and Suzhou | Disputed. This grossly mischaracterizes Dr. Sasian's testimony. Dr. Sasian testified that Paragraph 47 of his report "clearly show[s] | Orion's Response does not create a genuine dispute.  Dr. Sasian did examine two invoices – one from Suzhou Synta and one from Sunny – |

[9] "Sasian Decl." refers to the Declaration of Dr. Jose Sasian, Ph.D. in support of Plaintiff's Motion for Summary Judgment (filed Jul 26 2019) (ECF No 256-92)

-23-

SMRH:4846-2241-5265

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | Synta were simultaneously selling the exact same telescope to Orion – at different prices – during the same time period that Orion alleges the two were allocating the manufacturing market.<br><br>Ex. 46 (Sasian Dep.) at 157:7- 172:14. | that [Sunny and Synta] were capable of making the same product." Hagey Decl. Ex. 8 (Sasian Dep. 172:5-14 (emphasis added)). Paragraph 47 of Dr. Sasian's report states that he was informed that Synta originally made the model in question, and that it was later transitioned to Sunny, and then later back to Synta. At most, the evidence Defendants refer to – which Dr. Sasian could not authenticate, Hagey Decl. Ex. 8 (Sasian Dep. 218:25-219:17) – calls into question the date of the transition from Sunny back to Synta, not the fact of the transition. | selling the exact same SKU telescope to Orion during the same time period, at different prices – which refutes Dr. Sasian's opinion (based on his analysis of just two telescope SKUs) that Suzhou Synta and Sunny did not compete for Orion's business. |
| | | **Additional Facts** | |
| | | David Shen wrote Peter Ni directly to say that Ningbo Sunny should not bid on Costco business, and that if Sunny did, "[C]elestron would not trust [S]unny any longer."<br><br>Borden Decl. Ex. 57 [Exs. 13-14]; *id.* Ex. 78. | Disputed.  The meaning of Shen's long, rambling email is unclear, and Plaintiff has chosen not to depose Shen.  No other testimony helps decipher the meaning of Shen's email, and there is also no evidence that Sunny ever responded to, discussed, agreed or otherwise acted upon Shen's email.  Shen's email also explicitly asks that Sunny "make |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | | every effort to get order from Costco." *See* Borden Decl. Ex. 57 [Exs. 13-14]; *id.* Ex. 78; Caseria Decl., Ex. 3 (J. Chiu Dep.) at 54:21-60:6. |
| | | Peter Ni told Meade management that Meade promotions should not "disrupt Synta business." Borden Decl. Ex. 79. | Disputed in part. Aniceto (who wrote this email) testified that Ni's statement meant that Ni did not want to win business at all costs, *i.e.*, by losing money in the process.  In other words, it was an instruction not to price below  cost. Caseria Decl., Ex. 51 (V. Aniceto Dep.) at 85:20-87:10. |
| | | David Shen wrote an email to Peter Ni in which he stated that Celestron understood that "Director Ni will not be a competitor and is trustworthy when it comes to business." Borden Decl. Ex. 57 [Exs. 13-14]; *id.* Ex. 78. | Disputed.  The meaning of Shen's long, rambling email is unclear, and Plaintiff has chosen not to depose Shen.  No other testimony helps decipher the meaning of Shen's email, and there is also no evidence that Sunny ever responded to, discussed, agreed or otherwise acted upon Shen's email.  Shen's email also explicitly asks that Sunny "make every effort to get order from Costco." *See* Borden Decl. Ex. 57 [Exs. 13-14]; *id.* Ex. 78; Caseria Decl., Ex. 3 (J. |

SMRH:4846-2241-5265

Case No. 5:16-cv-06370-EJD-VKD
DEFENDANTS' REPLY TO SEPARATE STATEMENT ISO
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | | Chiu Dep.) at 54:21-60:6. |
| | | Ningbo Sunny's vice-president sent an email to David Shen with the subject line "re: Sunny's market strategy" which told Shen that "[w]e will take prompt action to avoid conflict in the astronomical market." Borden Decl. Ex. 57 [Exs. 11-12]; *id.* Ex. 80; *id.* Ex. 2 (J. Chiu 30(b)(6) Dep. 107:2-11). | Disputed in part. Sunny testified that this email pertained only to the European market and was in the context of Sunny supplying telescopes to Suzhou Synta as its contract manufacturer in Europe. Moreover, what was discussed in the email was never in fact carried out; in fact, Sunny still supplies Dorr and Ziel to this day. Caseria Decl., Ex. 14 (Sunny 30(b)(6) (J. Chiu) Dep.) at 100:5-107:11, 111:9-11, 112:5-7, 112:14-17. |
| | | Ningbo Sunny's vice-president sent an email to Joyce Huang of Synta with the subject line "re: Sunny's market strategy" which told Huang that Ningbo Sunny was taking actions to "avoid conflict and sustain the astronomical business." Borden Decl. Ex. 57 [Exs. 11-12]; *id.* Ex. 80; *id.* Ex. 2 (J. Chiu 30(b)(6) Dep. 107:2-11). | Disputed in part. Sunny testified that this email pertained only to the European market and was in the context of Sunny supplying telescopes to Suzhou Synta as its contract manufacturer in Europe. Moreover, what was discussed in the email was never in fact carried out; in fact, Sunny still supplies Dorr and Ziel to this day. Also, Sunny sent the email to Joyce Huang who is employed with third-party distributor, Synta Tech (*not* telescope |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | | manufacturer Suzhou Synta).<br><br>Caseria Decl., Ex. 14 (Sunny 30(b)(6) (J. Chiu) Dep.) at 100:5-107:11, 111:9-11, 112:5-7, 112:14-17. |
| | | Former Celestron CEO Joe Lupica testified that Synta began making higher end telescopes and moved lower end telescopes to Sunny after Synta purchased Celestron.<br><br>Borden Decl. Ex. 5 (J. Lupica Dep. 203:16-204:14). | Disputed. Lupica testified that when Suzhou Synta acquired Celestron, it shifted their product mix to focus more on high-end products which meant that it no longer had the capacity to also continue manufacturing low-end. So, Celestron began purchasing low-end telescopes from Sunny, and negotiated with Sunny in the same manner Celestron negotiated with any other supplier.<br><br>Caseria Decl., Ex. 33 (J. Lupica Dep.) at 203:16-205:11. |
| | | Ningbo Sunny's 30(b)(6) witness testified that Ningbo Sunny only quoted Orion on products that were manufactured by Synta on a single occasion.<br><br>Borden Decl. Ex. 2 (J. Chiu 30(b)(6) Dep. 51:23-53:21). | Disputed. Again, Plaintiff misleadingly conflates Synta Tech with Suzhou Synta. Sunny's 30(b)(6) representative testified that Synta Tech (the third-party distributor) quoted and sold products to Orion, except for one occasion involving a unique circumstance. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | | Caseria Decl., Ex. 14 (Sunny 30(b)(6) (J. Chiu) Dep.) at 52:6-54:16. |
| | | Ningbo Sunny's 30(b)(6) witness testified that Ningbo Sunny does not try to sell the same products as Synta. Borden Decl. Ex. 2 (J. Chiu 30(b)(6) Dep. 48:11-23). | Disputed.  Sunny's 30(b)(6) representative testified that because Sunny's factory in China was limited in terms of its technological capabilities, it was not capable of manufacturing the same high-end telescopes that Suzhou Synta manufactured.  Caseria Decl., Ex. 14 (Sunny 30(b)(6) (J. Chiu) Dep.) at 43:18-44:22, 44:12-22, 48:4-24; Ex. 30 (P. Ni Dep.) at 133:2-6 and 134:21-135:2. |
| | | In February 2018, David Shen attended a meeting with Meade's then-VP of Sales Victor Aniceto and Peter Ni during which issues relating to Meade's distribution of telescopes and sales budget were decided. Borden Decl. Exs. 63-65. | Disputed.  Plaintiff's exhibits 63-65 do not establish the meeting described.  Aniceto testified that he did not recall whether or not Shen in fact attended this meeting.  Caseria Decl., Ex. 51 (V. Aniceto Dep.) at 250:25-252:19. |
| Defense 6:  No Standing re Claims Based on Failed Meade Acquisition | | | |
| 1. Orion never would have acquired Meade with the | Fact 28. In February 2013, Orion submitted a preliminary, non-binding indication of | Disputed in part. Defendants mischaracterize the terms of the underlying | Orion's Response does not create a genuine dispute.  Orion also does not dispute that its |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| fourth best offer; there is no causal link between Orion's injury and any alleged anticompetitive conduct. | interest to Meade, offering $3.5-4 million for Meade. Shortly thereafter, Orion submitted a revised bid for approximately $4.5 million, contingent upon Orion's ability to obtain financing for $3.6 million. Ex. 26 (Feb. 13, 2013 Orion Indication of Interest); Ex. 27 (Feb. 21, 2013 Orion Revised Indication of Interest). | offers, but Orion does not dispute that it bid $4.5 million to acquire Meade. Like JOC's offer, that offer would have been paid to Meade in cash. | bid for $4.5M was *contingent* upon its ability to obtain financing for $3.6M. |
| | Fact 29. Meade did not accept either indication of interest from Orion, instead opting for an offer from Jinghua Optics & Electronic ("JOC") for $4.5 million in cash. *See* Ex. 28 (May 17, 2013 Meade Press Release: *Meade Instruments Corp. Announces Merger Agreement; to be acquired by Jinghua Optics & Electronics).* | Admitted that Meade's press release describes accepting an offer from JOC for $4.5 million. Disputed to the extent Defendants are relying on a press release as a definitive statement of the offer's details. *E.g.*, the fact that the press release says the offer would be paid in cash does not mean that JOC would not have obtained that cash through financing—it only means that the acquisition would not be paid in stock. | Orion's Response does not create a genuine dispute.  J. Davila's Standing Order for Civil Cases V(B)(2) requires Orion to cite to *evidence* in the record that it contends establishes a dispute: "If the opposing party contends that a fact is in dispute, the opposing party must cite to evidence in the record establishing the dispute"  Orion does not cite to any evidence of the terms of JOC's offer which would refute what was reported in the press release by Meade's Board of Directors. |
| | Fact 30. Meade announced in or around May 17, 2013 that it had entered into a merger agreement with JOC. | Admitted. | |

SMRH:4846-2241-5265

Case No. 5:16-cv-06370-EJD-VKD
DEFENDANTS' REPLY TO SEPARATE STATEMENT ISO
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | Ex. 28 (May 17, 2013 Meade Press Release: *Meade Instruments Corp. Announces Merger Agreement; to be acquired by Jinghua Optics & Electronics*). | | |
| | Fact 31. Orion summed up in an internal document that JOC won the Meade bid for a number of reasons, including its all-cash offer, its "home field advantage" of having done business with Meade for over twenty years, and its superior expertise in running a post-acquisition Meade. In that same document, Orion identified alternative projects/tracks Orion should pursue "while JOC is distracted digesting the Meade acquisition."<br><br>Ex. 29 (May 19, 2013 Orion document titled "Meade_JOC_051913.doc."), at 1-2. | Disputed in part. The document does not state that JOC's offer was all cash; it merely notes that JOC was capable of bidding all cash. The document does not state that Meade had superior expertise in running a post-acquisition Meade; rather, it says that JOC had "expertise to digest the acquisition." The 'home field advantage' point primarily related to the fact that JOC employed an ex-Meade employee, Scott Roberts. The document indeed identifies other opportunities for Orion, but does not link them to any distraction on JOC's part. | Orion's Response does not create a genuine dispute. There is no material difference between Defendants' and Orion's characterization of this document. |
| | Fact 32. Orion's Complaint acknowledges that JOC would have acquired Meade if Sunny had not acquired Meade and if JOC did not withdraw its bid.<br><br>FAC ¶ 77. | Disputed. The cited material is not a fair and accurate support of the purported fact. Paragraph 77 reads:<br><br>"Further, if JOC did legitimately withdraw its bid, and absent the illegal Ningbo Sunny bid, Orion very likely | Orion's Response does not create a genuine dispute. There is no material difference between Defendants' and Orion's characterization of paragraph 77 of Orion's FAC. |

-30-

SMRH:4846-2241-5265

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | would have prevailed with its bid and acquired the important Meade assets including critical IP, products and manufacturing capabilities that would have allowed Orion to become a larger, independent competitive threat to Ningbo Sunny's and the Settling Coconspirators' businesses." <br><br> Further disputed to the extent Defendants contend that this means that Orion would not have acquired Meade but for Defendants' and Synta's unlawful conspiracy. *See* Additional Facts. | As to Orion's Additional Facts, see Defendants' Reply to those Additional Facts. |
| | Fact 33. Sunny's unsolicited bid to acquire Meade was for $5.5 million (higher than JOC and Orion) and was submitted in May 2013 when Sunny first learned that Meade was for sale. <br><br> FAC, Ex. 1 at B-1. | Undisputed. However, as shown in Orion's motion for summary judgment and the additional facts below, the only reason Sunny was able to submit a bid of $5.5 million was the unlawful Sunny/Synta conspiracy. | This fact is now undisputed, and Orion's allegations as to how Sunny was able to bid $5.5M is irrelevant to the fact at hand of whether Sunny did in fact bid $5.5M. |
| | Fact 34. Another bidder, MIT Capital, Inc. ("MITC") submitted an unsolicited bid in June 2013 with a higher price than JOC and Orion. <br><br> FAC, Ex 1 at B-1. | Admitted, but disputed to the extent Defendants contend this means that Orion would not have acquired Meade but for Defendants' unlawful conspiracy. In fact, the Meade board rejected | Orion's Response does not create a genuine dispute. And, as made clear in other Meade Board Meeting Minutes memorializing the events around Meade's sale, even before June |

SMRH:4846-2241-5265

Case No. 5:16-cv-06370-EJD-VKD
DEFENDANTS' REPLY TO SEPARATE STATEMENT ISO
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | MITC's bid as inferior to JOC's $4.5 million bid—which advanced the same price as Orion's bid—because "the MITC Tender Offer was subject to many conditions." Hagey Decl. Ex. 9 (NSE2299000). | 2013, Orion was already out of the running because "Orion declined to provide another offer" when Meade invited it to bid again. So, by May 8, 2013, the Meade Board evaluated the only two bids it had (JOC and MITC) and "the [Meade] Board decided that due to MIT's offer being significantly higher than [JOC's] current offer of $4 million, the Board would select MIT unless [JOC] increased its offer. Eckert Decl., Ex. 5 (May 8, 2013 Meade Board Meeting Minutes), at 1 |
| | Fact 35. Orion seeks $36.7 million in damages for the "economic injury to Orion from having been prevented from purchasing" Meade for itself. Ex. 17 (Zona Rpt.) at ¶¶ 8(d) and 124. | Disputed. *See* Zona Decl. Ex. 1, Zona Report ¶ 124 ("[T]he lost value to Orion from Sunny and Synta's interference with Orion's purchase of Meade assets resulted in damages in the range of $11.9 million to $26.7 million."). | Orion's Response does not create a genuine dispute. It is now undisputed that Orion seeks damages up to $26.7 million for the "lost value to Orion from Sunny and Synta's interference with Orion's purchase of Meade assets," which is the same as "economic injury to Orion from having been prevented from purchasing" Meade for itself. Caseria Decl., Ex. 17 (Zona Rpt.) at ¶¶ 8(d) and 124. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | **Additional Facts** | |
| | | Meade came back to Orion after the exclusivity period for JOC's offer expired. Meade asked Orion to increase its bid because there was uncertainty with the JOC bid. Hagey Decl. Ex. 10 (P. Moreo 30(b)(6) Dep. 252:1-253:19). Orion reiterated its $4.5 million bid, *id.*, which was beaten by Ningbo Sunny's unlawful bid. | Disputed.  As made clear in Meade's Board Meeting Minutes memorializing the events around Meade's sale, when Meade reached out to Orion to request an updated offer in light of JOC reducing its bid on April 22, 2013, "Orion declined to provide another offer."  So, by May 8, 2013, the Meade Board then evaluated its only possible options – MITC and JOC – and "the [Meade] Board decided that due to MIT's offer being significantly higher than [JOC's] current offer of $4 million, the Board would select MIT unless [JOC] increased its offer.  Eckert Decl., Ex. 3 (Apr. 22, 2013 Meade Board Meeting Minutes), at 1; *id.,* Ex. 4 (May 2, 2013 Meade Board Meeting Minutes); *id.*, Ex. 5 (May 8, 2013 Meade Board Meeting Minutes), at 1. |
| | | Had Orion not been victimized by Defendants' and Synta's conspiracy and unlawful overcharge—which cost | Disputed.  Zona calculated alleged price overcharges Orion suffered during a damages period *from* |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | Orion between $11.4 and $30.6 million dollars—Orion would have had significant additional capital (and access to capital) to complete the Meade acquisition. Zona Decl. Ex. 1, Zona Report ¶ 132. | *November 2013 to May 2018.* Zona Decl., Ex. 1 (Zona Rpt.) ¶ 105 ("Orion['s] incremental profit on Sunny and Synta manufactured products from November 2013 to May 2018 was $14.822 million. I have used this figure to multiply the Damage Rate to get Damages under these scenarios."). Orion cannot in good faith claim that it would have had at its disposal in *February 2013* the additional overcharge Orion was forced to pay during a future period of time from *November 2013 to May 2018.* |
| | | Synta, through its subsidiary Celestron, extended millions of dollars in interest-free loans to its horizontal competitor Ningbo Sunny to subsidize the acquisition of Meade. Borden Decl. Ex. 5 (J. Lupica Dep. 372:12-373:25; 378:18-379:13). | Disputed. Celestron did not extend interest-free loans to Sunny. Celestron was simply making payments for telescopes it had already purchased from Sunny more quickly than before pursuant to requests that Sunny made not only to Celestron but to many other customers. Caseria Decl., Ex. 31 (12/13/2013 emails between Sunny and Celestron); *id,* Ex. 3 (J. Chiu Dep.) at 113:9-20, 118:9-22. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | Defendants maintained a ledger memorializing Celestron's debt and equity interest in Meade's parent company arising from Celestron's funding of Sunny's acquisition of Meade. Borden Decl. Ex. 4 (V. Aniceto Dep. 330:14-332:6 (regarding Borden Decl. Ex. 60)). | Disputed.  First, Aniceto in fact testified that he had never seen this ledger before, had no idea what it meant or what the numbers/columns indicated, and that Celestron did not in fact and has never owned any equity interest in Meade, Sunny, or Sunny Optics.  Second, Celestron did not make any loans to Sunny. Celestron was simply making payments for telescopes it had already purchased from Sunny more quickly than before pursuant to requests that Sunny made not only to Celestron but to many other customers. Caseria Decl., Ex. 51 (V. Aniceto Dep.) at 366:3-367:11; Ex. 31 (12/13/2013 emails between Sunny and Celestron); *id.* Ex. 3 (J. Chiu Dep.) at 113:9-20, 118:9-22. |
| colspan4: **Defense 7:  No Standing re Claims Based on Failed Hayneedle Acquisition** |
| 1. Orion failed to acquire the Hayneedle assets for reasons having nothing to do with any alleged | Fact 36. Orion explained back in 2014 the reason that its deal to purchase certain Hayneedle assets ultimately fell apart: "After weeks of moving forward by both companies, we found a | Disputed. Peter Moreo testified that there were three reasons that the Hayneedle acquisition failed: (1) Defendants' unlawful reduction in credit terms which restricted Orion's cash flow; (2) Celestron's | Orion's Response does not create a genuine dispute.  It is undisputed that the explanation provided by Orion back in 2014 when the events in question occurred was the following: "After weeks |

-35-

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| anticompetitive conduct. | major point of disagreement....we insisted on legal protections in the contract re non-compete provisions that the Seller found unacceptable." <br><br> Ex. 35 (Sept. 9, 2014 Orion email). *See also* Ex. 4 (Espinosa Dep.) at 209:2-210:13. | interference behind the scenes; and (3) the eleventh-hour refusal by Hayneedle to sign a non-compete provision. (Borden Decl. Ex. 7 (P. Moreo 30(b)(6) Dep. 187:3-189:1). | of moving forward by both companies, we found a major point of disagreement....we insisted on legal protections in the contract re non-compete provisions that the Seller found unacceptable." <br><br> Even Orion's CEO's post hoc assertion in the context of litigation, which contradicts Orion's own contemporaneous documents including statements made by the CEO himself, admits "the eleventh-hour refusal by Hayneedle to sign a non-compete provision." <br><br> Ex. 35 (Sept. 9, 2014 Orion email). *See also* Ex. 4 (Espinosa Dep.) at 209:2-210:13. |
| | Fact 37. Orion similarly explained to its Board of Directors back in 2014: "the main point that appears to have derailed the acquisition was the insistence of the Seller to continue to compete in the same business categories that were being sold to us." <br><br> Ex. 36 (Sept. 11, 2014 Orion Presentation), at 1. *See also* Ex. 37 (Sept. | Disputed. The cited presentation page does not contain the attributed statement. *See also* response to Fact 36. | Orion's Response does not create a genuine dispute.  It is telling that Orion deliberately failed to dispute this fact in any substantive manner, instead claiming (falsely) that page 1 of Exhibit 36 somehow "does not contain the attributed statement." Orion dodged disputing this fact because it cannot.  It simply cannot distance itself |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | 9, 2014 Hayneedle letter), at 3. | | from contemporaneous statements that Orion itself made back in 2014, immediately following the Hayneedle deal's demise, which explained in great detail why the deal fell apart. Ex. 36 (Sept. 11, 2014 Orion Presentation), at 1. *See also* Defendants' Reply to Fact 36. |
| **Defense 8:  No Evidence of a Proper Relevant Market** | | | |
| 1. There is no evidence from which a jury can reasonably find the scope of the relevant market for Orion's Sherman Act Section 2 and Clayton Act Section 7 claims. | Fact 38. Orion itself has confirmed during discovery that "[m]arket definition is a quintessential expert discovery issue." Ex. 43 (Orion's Second Confidential Supp. Responses to Meade's First Set of Interrogatories (5/14/2018)), Interrogatory No. 15. | This is not a fact, but a legal conclusion. To the extent that Defendants are construing Orion's limiting objection to an interrogatory as legal authority holding that expert testimony is required to establish a relevant market, that is not the law. *Sidibe v. Sutter Health*, 2019 WL 2078788, at *26 (N.D. Cal. May 9, 2019) ("Sutter has not identified any court in the Ninth Circuit that has held that a plaintiff must base its market definition on expert testimony to withstand summary judgment.") (*citing AFMS LLC v. United Parcel Serv., Inc.*, 696 F. App'x 293, 294 (9th Cir. 2017) (Nguyen, J., concurring | Orion's Response does not create a genuine dispute that Orion itself represented during discovery that "[m]arket definition is a quintessential expert discovery issue." Caseria Decl., Ex. 43 (Orion's Second Confidential Supp. Responses to Meade's First Set of Interrogatories (5/14/2018)), Interrogatory No. 15. As for Orion's claim that Dr. Zona performed econometric analyses, including U.S. customs data, HHI figures, and barriers to entry, those go the separate issue of *market power*, not to the |

SMRH:4846-2241-5265

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | in the result) ("AFMS was not required, as the district court suggested, to provide expert testimony regarding the relevant market.")); *United States v. Pabst Brewing Co.*, 384 U.S. 546, 549 (1966) ("Certainly the failure of the Government to prove by an army of expert witnesses what constitutes a relevant 'economic' or 'geographic' market is not an adequate ground on which to dismiss a [Clayton Act § 7] case.").<br><br>In any event, Dr. Zona performed econometric analyses regarding the telescope manufacturing services market, including a detailed analysis of U.S. Customs data to calculate market share and establish market power using the HHI index. Zona Decl. Ex. 1, Zona Report ¶¶ 43-59. Dr. Zona also identified numerous barriers to entry that prevent new market entrants from challenging the Sunny/Synta conspiracy's dominance, including intellectual property | scope of a proper relevant market. |

SMRH:4846-2241-5265

Case No. 5:16-cv-06370-EJD-VKD
DEFENDANTS' REPLY TO SEPARATE STATEMENT ISO
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | rights, learning by doing, and economies of scale. *Id.* ¶¶ 65-71. Dr. Zona also considered record evidence showing that the Sunny/Synta conspiracy understood that other manufacturers could not replace their supply, and that it takes years for a factory to begin to efficiently produce telescopes. | |
| | Fact 39. Orion's expert Dr. Zona performed no relevant market analysis and simply stated in conclusory fashion that "auto manufacturing services (or other types of manufacturing services) are not reasonable substitutes for telescope manufacturing services," so therefore his proffered "narrow product market definition" is reasonable.<br><br>Ex. 17 (Zona Rpt.) ¶ 45. | Disputed. *See* response to Fact 38.<br><br>Moreover, Orion buys telescopes from telescope manufacturers and sells them to consumers. It cannot buy telescopes from factories that make things other than telescopes. Hagey Decl. Ex. 10 (P. Moreo 30(b)(6) 111:21-112:3 ("We have supplier concentration. Because the telescope market is so small, there are a limited number of manufacturers.")). Dr. Zona's market definition is borne out by record evidence showing that other suppliers could not easily enter the market, Zona Decl. Ex., 1, Zona Report ¶ 65, Borden | *See* Defendants' Response to Fact 38.<br><br>As for Orion's statement that it cannot buy telescopes from factories that make things other than telescopes, such an overly-simplistic statement is not sufficient evidence from which a jury can reasonably determine the scope of the relevant market for itself.  It fails to examine whether manufacturing services for similar products (binoculars and spotting scopes, for example) are reasonably interchangeable with manufacturing services for telescopes. *Rebel Oil Co., Inc. v. Atlantic Richfield Co.,* 51 F.3d 1421, 1436 (9th Cir. 1995) ("If producers of product X can readily |

SMRH:4846-2241-5265

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | Decl. Ex. 82, and record evidence showing the conspirators' belief Orion would be destroyed if they withheld supply. Zona Decl. Ex., 1, Zona Report ¶¶ 69, 71; Borden Decl. 87 [Exs. 15-16]; Borden Decl. 57 [Exs. 23-24]. | shift their production facilities to produce product Y, then the sales of both should be included in the relevant market."). It also assumes without support that all telescope manufacturers can easily shift production from manufacturing one type of telescope to any other type of telescope. Finally, Dr. Zona's "record evidence" and the "record evidence" Orion separately cites are the same two documents which were both internal emails that David Shen wrote to Celestron, and that no Defendant ever agreed with, followed, responded to, or otherwise discussed in any manner, and which are not attributable to Defendants. Substantively, these two emails say nothing about the scope of the proper relevant market. Zona Decl. Ex., 1, Zona Report ¶¶ 69, 71; Borden Decl. 87 [Exs. 15-16]; Borden Decl. 57 [Exs. 23-24]. |
| | Fact 40. Orion's expert failed to consider or explain how, for example, a beginning | Disputed. *See* response to Fact 38. | Orion's Response does not create a genuine dispute as to the fact in question. |

SMRH:4846-2241-5265

Case No. 5:16-cv-06370-EJD-VKD
DEFENDANTS' REPLY TO SEPARATE STATEMENT ISO
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | telescope kit marketed to children for $75.00 belongs in the same relevant market as an expert telescope retailing for $6,0000.00. Ex. 44 (Saravia Rpt.), ¶ 132. | Moreover, Defendants' implicit contention that Dr. Zona's analysis is deficient unless it specifically addresses every model of telescopes manufactured refutes itself. Moreover, the prices Defendants advance are the prices paid by end consumers, not the prices paid by distributors like Orion, which is the relevant consideration here.<br><br>Dr. Zona's market definition is borne out by record evidence showing the conspirator's belief that they could destroy Orion by withholding supply. Borden Decl. 87 [Exs. 15-16]; Borden Decl. 57 [Exs. 23-24]. | *See also* Defendants' Reply to Facts 38-39. |
| | Fact 41. Orion's expert opines that quality and/or quantity differences in manufacturing services distinguishes smaller telescope manufacturers from larger ones, and that many "specialty" manufacturers compete "in a different market in which Sunny and [Suzhou] Synta do not compete."<br>Ex. 17 (Zona Rpt.) ¶ 58. | Admitted, but disputed to the extent that Defendants contend that this is a flaw in Dr. Zona's analysis. Dr. Zona included minor manufacturers in his analyses of the relevant market, including market share and market power. Zona Decl. Ex. 1, Zona Report ¶ 58 and Table 1. If anything, Dr. Zona's conclusions regarding the market share and power of | This fact is now undisputed. |

SMRH:4846-2241-5265

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | Sunny/Synta was conservative because it included the referenced specialty telescope manufacturers, not just those that produce sufficient quantity and quality to meet Orion's needs. *Id.* Even using these expanded data, Dr. Zona's analysis showed that the conspiracy's market share was 70-80%. | |
| | Fact 42. A prior FTC enforcement action in the telescope industry was based on a relevant market of high-performance, Schmidt-Cassegrain telescopes.<br><br>Ex. 45 (May 29, 2002 FTC Press Release: *FTC Authorizes Injunction to Pre-empt Meade Instruments' Purchase of All, or Certain Assets, of Tasco Holdings, Inc.'s Celestron International*). | Disputed, and not a material fact. The cited exhibit references the "performance telescope market," the scope of which is not defined. In any event, it is unsurprising that the FTC might have focused on a narrower market in 2002, *i.e.*, before the telescope manufacturing market writ large was heavily concentrated in the hands of Sunny and Synta via acquisitions. | Orion's Response does not create a genuine dispute. There is no material difference between Defendants' characterization ("high performance, Schmidt-Cassegrain telescopes") and Orion's ("performance telescope market."). Orion also further admits that the FTC "focused on a narrower market." |
| | Fact 43. Orion has previously defined the relevant market here in the following differing ways: (1) the market for "telescopes for beginner to intermediate consumers" in the U.S.; (2) the "market for manufacture of beginner to high-end recreational | Disputed.<br><br>Defendants are intentionally conflating Orion's prior descriptions of an upstream market—the telescope manufacturing services market, in which Sunny/Synta conspired and are monopolists—with its | Orion's Response does not create a genuine dispute. It does not dispute (because it cannot) the various iterations of the relevant market Orion itself has proffered throughout this case. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | telescopes and telescope accessories for import"; (3) "submarkets for low-end and high-end telescope models"; and (4) "the markets for telescope purchases by distributors." FAC ¶ 26; Ex. 43 (Orion's Second Confidential Supp. Responses to Meade's First Set of Interrogatories (5/14/2018)), Interrogatory No. 15. | description of the downstream market in which the effects of Defendants' unlawful conduct are felt, which is the market in which Orion competes. Hagey Decl. Ex. 4 (Zona Dep. 84:6-10). The FAC made clear that both these markets are at issue. *See* FAC ¶¶ 34, 36, 133. Defendants' complaint, such as it is, amounts to semantics. | |
| | Fact 44. Orion's expert has not calculated any injury to Orion from having to compete against Meade after its acquisition by Sunny. Instead, Orion's expert calculated damages in the range of $11.9 million to $26.7 million from "the lost value to Orion"/"the economic injury to Orion from having been prevented from purchasing" Meade itself. Ex. 17 (Zona Rpt.) at ¶¶ 8(d) and 120-124; FAC ¶ 78. | Disputed.<br><br>Dr. Zona's overcharge calculations are based upon a but for world in which Meade is an independent manufacturer rather than a member of the Sunny/Synta conspiracy. Zona Decl. Ex. 1, Zona Report ¶¶ 99, 105. | Orion's Response does not create a genuine dispute.<br><br>Paragraph 99 of Zona's Report states in its entirety: "I have analyzed a subset of the PIC data which gives me overcharge rates for price fixing cases with two cartel members and cartel market share greater than 70 percent. There are 21 observations of such cartels and the average overcharge is about 27 percent. I also considered overcharge rates for price fixing cases with three cartel members and cartel market share greater than 70 percent. There are 10 observations of such cartels and the |

SMRH:4846-2241-5265

Case No. 5:16-cv-06370-EJD-VKD

DEFENDANTS' REPLY TO SEPARATE STATEMENT ISO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| | | | average overcharge is about 35 percent." |
| | | | Paragraph 105 states in its entirety: "I have considered a range of values for some of the factors and I summarize the results in the following table. Orion incremental profit on Sunny and Synta manufactured products from November 2013 to May 2018 was $14.822 million.62 I have used this figure to multiply the Damage Rate to get total Damages under these scenarios." |
| | | | Nothing in either of these paragraphs remotely supports Orion's facts. |
| | | | Furthermore, Orion's disputed fact is nothing but smoke and mirrors. Ultimately, all misleading inferences aside, Orion does not dispute that its expert's damages calculations assumed a but-for world where Orion acquired Meade for itself rather than having to compete against Meade because some other entity (besides Orion, Sunny or Sunny's alleged co-conspirators) acquired Meade. |

SMRH:4846-2241-5265

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Defendant's Reply |
|---|---|---|---|
| **Defense 9: No Available Monetary Relief under UCL** | | | |
| 1. The monetary relief Orion seeks here is not available under the UCL. | Fact 45. Orion's damages expert analyzed the following categories of monetary relief: (1) "damages in the form of lost profits from price overcharges"; (2) damages in the form of "economic injury" and "lost value"; and (3) damages in the form of "lost sales." Ex. 17 (Zona Rpt.) at ¶¶ 8(c)-(e), 124, 131. | Admitted, but disputed to the extent that Defendants contend that this fact means that restitution under the UCL is unavailable. Price overcharges are proper subjects of restitution under the UCL. *See, e.g., Chowning v. Kohl's Dep't Stores, Inc.*, 735 F. App'x 924, 925 (9th Cir. 2018) ("Under California law, where a plaintiff obtains value from the product, the proper measure of restitution is "[t]he difference between what the plaintiff paid and the value of what the plaintiff received."") (*quoting In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 103 Cal.Rptr.3d 83, 96 (2009)). | This fact is now undisputed. Orion's extraneous legal argument that price overcharges qualify as "restitution" is further (and more appropriately addressed) in Defendants' Reply iso Their Cross-MSJ. |

*I attest that the evidence cited herein fairly and accurately supports or disputes the facts as asserted.*

Dated:  August 22, 2019                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                                        By      _____
                                                    */s/ Leo D. Caseria*
                                                LEO D. CASERIA
                                            Attorneys for Defendants
                                    NINGBO SUNNY ELECTRONIC CO., LTD.,
                                        SUNNY OPTICS, INC. and
                                        MEADE INSTRUMENTS CORP.

SMRH:4846-2241-5265

Case No. 5:16-cv-06370-EJD-VKD
DEFENDANTS' REPLY TO SEPARATE STATEMENT ISO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT