UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC, <br><br> Plaintiff, <br><br> v. <br><br> NINGBO SUNNY ELECTRONIC CO., LTD., et al., <br><br> Defendants. | Case No. 5:16-cv-06370-EJD <br><br> **ORDER RE MOTIONS TO EXCLUDE EXPERT TESTIMONY** <br><br> Re: Dkt. Nos. 252, 254, 258, 260 |

Both parties have filed motions to strike the testimony of two of the other party's expert witnesses pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The court presently considers those motions. This order assumes familiarity with the facts and legal claims of this litigation, which are discussed in the court's order on the parties' summary judgment motions. Dkt. No. 313. The court has considered the parties' briefing on the motions. For the reasons discussed below, the court denies Defendants' motions to exclude the testimony of Dr. Sasian and Dr. Zona, grants in part and defers ruling on in part Orion's motion to exclude the testimony of Mr. Redman, and grants in part and denies in part Orion's motion to exclude the testimony of Dr. Saravia.[1]

**I.  Legal Standard**

Federal Rule of Evidence 702 provides that once an expert has been qualified on their "knowledge, skill, experience, training, or education," they may testify as to their opinions if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

---

[1] The court has filed this order under seal because it contains material subject to sealing orders. Within seven days of the filing date of this order, the parties shall provide the court a stipulated redacted version of this order, redacting only those portions of the order containing or referring to material for which the court has granted a motion to seal and for which the parties still request the material be sealed. The court will then issue a redacted version of the order.

Case No.: 5:16-cv-06370-EJD
ORDER RE MOTIONS TO EXCLUDE EXPERT TESTIMONY
1

> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

When considering motions to exclude expert testimony, "the trial court acts as a gatekeeper" by "making a preliminary determination that the expert's testimony is reliable." *Fed. Trade Comm'n v. Qualcomm Inc.*, 2018 WL 6615050, at *1 (N.D. Cal. Dec. 17, 2018) (citation and internal quotations omitted). Thus, "*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010) *aff'd*, 564 U.S. 91 (2011)). "The test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology . . . . When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010) (citation and internal quotations omitted). Thus, "district courts within and outside this district have often concluded that experts' decisions about what data to use in their analysis bear on the weight, not the admissibility, of expert testimony." *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 305 (N.D. Cal. 2018) (collecting cases). "[T]he case law—particularly Ninth Circuit case law—emphasizes that a trial judge should not exclude an expert opinion merely because he thinks it's shaky, or because he thinks the jury will have cause to question the expert's credibility. So long as an opinion is premised on reliable scientific principles, it should not be excluded by the trial judge." *In re Roundup Prods. Liab. Litig.*, 2018 WL 3368534 (N.D. Cal. July 20, 2018). "The Supreme Court also made clear that the reliability inquiry is a flexible one, and 'whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine.'" *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 8949299, at *1 (N.D. Cal. June 15, 2018) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999)).

Bearing these principles in mind, the court now addresses each motion to exclude expert testimony.

## II. Defendants' Motion to Exclude Testimony of Dr. Sasian (Dkt. No. 254)

Orion retained Dr. Jose Sasian to offer his opinion as to whether Sunny has the technical

capability to manufacture the same telescopes as Synta. Defendants challenge the entirety of his testimony on the grounds that (a) his opinions are conclusory statements unsupported by proof, (b) his methodology is not replicable or supported, (c) he is not qualified to testify regarding Sunny's manufacturing capabilities, and (d) his testimony usurps the role of the jury.

Defendants argue that Dr. Sasian's opinions are not supported because he did not review a sufficient breadth of documents and he did not personally write a sufficient amount of his report. Thus, they argue, his methodology is neither "articulated" nor "reliable." Mot. at 3. The fundamental flaw in this argument is that Defendants never discuss the conclusions that Dr. Sasian reached nor explain show how those conclusions are unsupported by the methodology he used. Rather, they attack his report because he reviewed only one document with a production stamp.[2] It is possible that, in some circumstances, such a review of the available evidence would be insufficient. However, Defendants do not explain why reviewing more produced documents would be necessary to support Dr. Sasian's methodology or his conclusions. Rather, Dr. Sasian's report explains that in reaching his conclusions he needed to analyze the product specifications of Synta and Defendants' telescopes. Sasian Rep. ¶¶ 37-54. Because those specifications are publicly available on Orion's website, it was not necessary to review more documents produced by either party. *See, e.g.*, *id.* nn. 4-7. Any issues with the data that Dr. Sasian used go to the weight that the jury might give to his testimony—not to the admissibility of his testimony. This argument does not warrant excluding Dr. Sasian's testimony.

Defendants also argue that his testimony must be excluded because he conceded that he wrote only about 40 percent of the report, while Orion's counsel wrote the rest. Federal Rule of Civil Procedure 26(a)(2)(B) "does not preclude counsel from providing assistance to experts in preparing the reports." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment. "Determining whether counsel crosses the line separating permissible assistance from improper participation in the expert's report writing calls for a fact-specific inquiry. "The key question is

---

[2] The court notes that Orion contests the factual accuracy of this point.

Case No.: 5:16-cv-06370-EJD
ORDER RE MOTIONS TO EXCLUDE EXPERT TESTIMONY
3

whether counsel's participation so exceeds the bounds of legitimate assistance as to negate the possibility that the expert actually prepared his own report." *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 942 (E.D. Mich. 2014) (citations and internal quotations omitted). In *Numatics*, the court excluded the expert's report because counsel wrote the entire report, and the expert then made only "fairly minor" changes and signed it. *Id.* at 944 (internal quotations omitted). The facts here are different. First, Dr. Sasian wrote a significant portion of his report. The paragraphs that Defendants identify as having been written by counsel largely consist of background information that Dr. Sasian qualifies by stating "I am informed that" or "I understand that." Those paragraphs concern the data he used, not his methodology. They do not indicate that counsel dictated his methodology and conclusions. *See Numatics*, 66 F. Supp. 3d at 942. Indeed, Dr. Sasian testified that these paragraphs "were reviewed and discussed with me to form my opinion." Sasian Dep. at 192:5-9. He further testified that he reviewed and edited the report, and that the report captures his opinions and analysis. *Id.* at 218:2-24. The court finds that this argument does not warrant excluding his testimony.

Defendants next argue that Dr. Sasian's methodology is not replicable, is not subject to peer review, and has no known error rate—in short, that it is "unsupported" and is therefore *ipse dixit*. However, as Orion argues, Federal Rule of Evidence 702 permits an expert to testify based on their experience. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note to 2000 amendments. It is well established that "the relevant reliability concerns may focus upon personal knowledge or experience." *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (quoting *Kumho Tire Co.*, 526 U.S. at 150 (1999)). This is what Dr. Sasian does here. He first describes the processes for telescope manufacturing (Sasian Rep. ¶¶ 19-35), and then applies that discussion to his analysis of Synta and Sunny's manufacturing capabilities (*id.* ¶¶ 36-60). That this sort of analysis is not subject to peer review or exact replication is not disqualifying. Because Dr. Sasian provides a sufficient basis for understanding how he reached his opinions and to show that they are supported, the requirements

of Rule 702 have been satisfied.

Defendants' third argument is that Dr. Sasian is not qualified as an expert on Defendants' manufacturing capabilities. The applicable threshold for qualification is "low: a minimal foundation of knowledge, skill, and experience suffices." *Perez v. State Farm Mut. Auto Ins. Co.*, 2012 WL 3116355, at *2 (N.D. Cal. Jul. 31, 2012) (citations omitted). But, the witness's expertise must be related to the subject matter of their testimony. "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *In re Worldcom, Inc.*, 371 B.R. 33, 42 (Bankr. S.D.N.Y. 2007) (citation and quotations omitted). Thus, where an expert lacks relevant training, education, knowledge, skill, and experience, they are "plainly unqualified to testify as an expert" or offer rebuttal testimony. *Rothe Dev., Inc. v. Dep't of Def.*, 107 F. Supp. 3d 183, 203 (D.D.C. 2015), *aff'd sub nom*, *Rothe Dev., Inc. v. United States Dep't of Def.*, 836 F.3d 57 (D.C. Cir. 2016), *cert. denied*, *Rothe Dev. Inc. v. Dep't of Def.*, 138 S. Ct. 354 (2017).

Here, Dr. Sasian is qualified as an expert on the manufacturing of telescopes. He holds a master's degree and a Ph.D. in Optical Sciences. Sasian Rep. ¶ 11. He has consulted on topics including telescope optics. *Id.* ¶ 14. Since 2002, he has been a full-time tenured Professor of Optical Sciences and Astronomy at the College of Optical Sciences at the University of Arizona in Tucson, Arizona. *Id.* ¶ 9. His research includes "the design, fabrication, and testing of optical devices such as telescopes." *Id.* He has many years of experience teaching students "to design, fabricate, and test the mirrors for Newtonian and Cassegrain type telescopes." *Id.* ¶ 16. He has published several papers on telescope technology. *Id.* He has also built telescopes himself. *Id.* Dr. Sasian is qualified to testify as to the technical feasibility of manufacturing certain telescopes by Synta and Sunny. In their reply, Defendants raise several areas where they contend that his testimony goes beyond his area of expertise because he does not possess knowledge of the specific circumstances of Sunny's machinery, human resources and operations, and because he only examined two types of telescopes. However, these challenges are better left to the consideration of the jury through "vigorous cross-examination." *Johns v. Bayer Corp.*, 2013 WL 1498965, at

Case No.: 5:16-cv-06370-EJD
ORDER RE MOTIONS TO EXCLUDE EXPERT TESTIMONY
5

*10 (S.D. Cal. Apr. 10, 2013).

Defendants' last argument is that Dr. Sasian's opinion is unnecessary because the jury can examine the same product specifications and invoices and reach their own conclusions. The court disagrees. The manufacture of telescopes requires specialized knowledge. For example, whether a company that can make a reflector telescope with a 4.5-inch mirror can necessarily also make a telescope with a six-inch or eight-inch reflector is not a question that lay jurors can readily be expected to understand. Dr. Sasian's expertise and opinions are relevant and will assist the jury with understanding the evidence.

In their reply, Defendants ask the court to exclude Dr. Sasian's testimony to the extent that it is based on his conversation with Orion's CEO. They contend that this request is based on an admission in Orion's opposition. However, this question is not properly before the court. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). If their understanding of Orion's opposition aligns with Orion's intent, then the parties should be able to reach an agreement on this point. If the parties are not in agreement, then Orion is entitled to defend its position.

Defendants' motion to exclude the testimony of Dr. Sasian is denied.

### III. Defendants' Motion to Exclude Testimony of Dr. Zona (Dkt. No. 252)

Dr. J. Douglas Zona is Orion's damages expert. Defendants move to exclude portions of his testimony on the grounds that (1) his empirical and structural models are too far removed from the facts of the case, (2) his other calculations are based on speculation by Orion's CEO, and (3) his conclusion that Defendants' data is not usable does not excuse his burden under Federal Rule of Evidence 702.

The court first considers Defendants' argument to exclude Dr. Zona's empirical model. They challenge two of its four inputs: price elasticity and overcharges. Beginning with price elasticity, Defendants represent that Dr. Zona's analysis "rel[ies] entirely" on an FTC report from 2002. Mot. at 6. The paper was compiled when the FTC reviewed and challenged Celestron's proposed merger with Meade. Zona Rep. ¶ 96. However, Dr. Zona's report shows that Defendants' representation is not accurate. Rather, Dr. Zona first calculated Orion's margin based on its income statements and an Ordinary Least Squares regression analysis. *Id.* ¶¶ 85-86. Then,

Case No.: 5:16-cv-06370-EJD
ORDER RE MOTIONS TO EXCLUDE EXPERT TESTIMONY
6

according to the inverse elasticity rule, he estimated the elasticity of demand as the inverse of Orion's margin, coming to an estimate of -3.8. *Id.* ¶ 96. He then compared his -3.8 to the range of -4.8 through -10.0 in the FTC paper and concluded that his -3.8 estimate was conservative. *Id.* ¶ 99. In their reply, Defendants implicitly acknowledge Dr. Zona's analysis, and reframe their argument as challenging the application of the -4.8 to -10.0 elasticity range in the report. Reply at 3-4. However, such a challenge to the data that Dr. Zona used for a portion of the report goes to weight, not admissibility.

On the overcharge issue, Defendants argue that Dr. Zona's overcharge analysis should be excluded because it relies on a study by another author that analyzed overcharges in other cartel cases instead of data from this case. Dr. Zona used the study by applying a subset of the data therein that most closely resembles this case—cartels with three members that control more than 70 percent of the market—to his model. Zona Rep. ¶ 99. In a 2013 antitrust matter in the Northern District, another court considered a challenge regarding an expert's testimony as to typical cartel overcharges that was based on an earlier study by the same author of the study upon which Dr. Zona relies. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 12311008, at *2 (N.D. Cal. June 14, 2013). There, the court declined to exclude the testimony on the grounds that they went to the weight not the admissibility of the evidence. *Id.* Defendants argue that the decision is distinguishable because that court also allowed a party's experts to use a certain proxy for manufacturing costs. Reply at 2-3 (citing *In re TFT-LCD*, 2013 WL 12311008, at *1). However, that part of the court's decision is distinct from the analysis of the typical cartel overcharges. If Defendants disagree with the data that Dr. Zona used in his overcharge analysis, they may cross-examine him, but that disagreement is not grounds to exclude his testimony. *In re TFT-LCD*, 2013 WL 12311008, at *1; *In re Qualcomm Antitrust Litig.*, 328 F.R.D. at 305.

Defendants also challenge Dr. Zona's structural model because it does not use Orion's or Defendants' prices and costs to reach the conclusion that Orion's profits would be 77 percent higher in a duopoly than a monopoly. Thus, they contend, the structural model is not sufficiently tethered to the facts of the case. This argument, though, overlooks how Dr. Zona reached his conclusion. The structural model is designed to predict the behavior of efficient companies that

Case No.: 5:16-cv-06370-EJD
ORDER RE MOTIONS TO EXCLUDE EXPERT TESTIMONY
7

aim to maximize their profits. Zona Rep. ¶¶ 109-13. He applied the Courtnot Nash equilibrium to determine equations for what Orion's per unit profit would be if Orion's upstream suppliers (*i.e.*, Synta and Sunny) were competing and what it would be if they were colluding. *Id.* ¶¶ 113-14. From there, he calculates that if the upstream suppliers were competitive, Orion's per unit profit would be 77 percent higher than if they were monopolistic. *Id.* ¶ 118. Defendants do not dispute that the methods and analysis employed by the model are widely accepted by economists. *See* Zona Dep. at 144:11-22 (testifying that the linear demand relationships are "probably the most prevalent assumption about demand curves that" and "very conventional"), 146:15-147:5 (testifying his model uses a "sort of a textbook type of analysis for an industrial organizations and tuned to this specific circumstance").

The acceptance of Dr. Zona's methods within the economics world distinguishes this case from Defendants' primary authority, *Laumann v. Nat'l Hockey League*, 117 F. Supp. 3d 299 (S.D.N.Y. 2015). In *Laumann*, the court found that the challenged expert's model was fundamentally flawed because it was trying to predict the behavior, tastes and preferences of sports fans without sufficient data supporting the models. *Id.* at 315. The court noted that the expert had not conducted a consumer survey, which the opposing expert described as "almost a standard in market research where this problem of estimating demand for new product arises." *Id.* at 312. Dr. Zona is not analyzing the effect a new or nonexistent product on a broad universe of consumers' preferences—he is applying a "textbook" analysis of efficient companies who endeavor to maximize their profits. The court finds that the methodology underlying the structural model meets the standards for reliability; Defendants, of course, are free to challenge the weight of his testimony at trial.

Defendants Next argue that his testimony should be excluded because it relies on conversations with Orion's CEO regarding the CEO's projections of what Orion's performance would have been in a but-for world where Orion had acquired Meade and the Hayneedle assets. Such projections, according to Defendants, are too speculative to inform Dr. Zona's testimony. Defendants contend that Dr. Zona accepted these projections merely because they were not inconsistent with his experience. Dr. Zona, though, relied on more than solely his conversations

Case No.: 5:16-cv-06370-EJD
ORDER RE MOTIONS TO EXCLUDE EXPERT TESTIMONY

8

with Mr. Moreo. Dr. Zona testified that he validated and checked those projections on his own. *Id.* 206:19-207:9. The court finds that Dr. Zona is not merely relying on the "self-serving projections of his client." *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3505003, at *3 (N.D. Cal. June 2, 2015). To the extent that Defendants' motion applies to the Meade assets, the motion is moot because the court has ruled that Orion cannot recover damages arising from its failure to acquire Meade. Dkt. No. 313 at 4-5. The motion is denied as to the Hayneedle assets.

Defendants next object to Dr. Zona's testimony that he found data produced by Defendants to be unusable. This testimony, they argue, is *ipse dixit*. Defendants, though, appear to abandon this argument in their reply, thereby conceding it. *Wilfong v. Tharco Packaging, Inc.*, 2014 WL 12850532, at *2 (C.D. Cal. Aug. 21, 2014). But, even if they had not, the court would not be persuaded. Dr. Zona explained in his deposition that Defendants' production did not include data that he needed to calculate Sunny's margin on the products it sold to Orion and that the data Sunny did produce was not useful for that calculation. Zona Dep. at 75:19-76:13.

Finally, Defendants raise an argument in their reply that Dr. Zona should be precluded from testifying as to liability. Defendants characterize one paragraph of Orion's opposition as conceding that he is "only a damages expert." Reply at 6. As with their reply argument concerning Dr. Sasian, this argument is not properly before the court.

The court denies Defendants' motion to exclude the testimony of Dr. Zona.

**IV. Orion's Motion to Exclude Testimony of Mr. Redman (Dkt. No. 258)**

Defendants have retained Mr. Jeffrey Dean Redman as an expert witness to rebut Dr. Zona's damages testimony and Dr. Sasian's testimony to the extent Dr. Sasian implicates damages. Orion challenges Mr. Redman's rebuttal testimony of both experts.

First, as to Orion's motion to exclude Mr. Redman's rebuttal testimony of Dr. Zona, the court requests further argument on Mr. Redman's qualifications to offer rebuttal testimony in cartel antitrust cases, and on his understanding of the damages analysis that he purports to rebut. The parties shall be prepared for oral argument at the pretrial conference set for October 10, 2019. The parties shall not file any further briefing on the matter. The court defers ruling on Orion's motion to exclude Mr. Redman's testimony as it pertains to Dr. Zona until then.

Turning to Orion's motion to exclude Mr. Redman's rebuttal of Dr. Sasian's testimony, the court finds that Mr. Redman's testimony should be excluded because it goes beyond rebuttal testimony to offering affirmative testimony on a subject matter that Dr. Sasian does not address. Rebuttal experts, like Mr. Redman, are allowed "solely to contradict or rebut evidence on the same subject matter identified" by the opposing expert witness. Fed. R. Civ. P. 26(a)(2)(D)(ii). Here, Mr. Redman offers testimony to "contextualize" Dr. Sasian's testimony "from a damages perspective." Opp'n at 8-9. Mr. Redman opines, "What Dr. Sasian fails to address related to the defendant's capability to produce other telescopes is more telling than what he does address. Capability to produce says nothing about whether doing so would be financially feasible or profitable." Redman Rep. ¶ 151. He then testifies about several financial factors that could influence a company's decision to manufacture a given product. None of this analysis relates to Dr. Sasian's testimony. Dr. Sasian did not offer any testimony concerning damages—he testified solely as to the technical aspects of telescope manufacturing. And, as Defendants have acknowledged, Dr. Zona did not rely on Dr. Sasian for his damages testimony. Reply (Dkt. No. 279) at 2 n.2. Defendants argue that Dr. Sasian's testimony may confuse the jury as to damages, but their only example of a potentially confusing statement plainly concerns manufacturing, not damages. Mr. Redman's opinions simply do not concern the same subject matter as Dr. Sasian's testimony. "Permitting Defendants to backdoor such expert testimony under the guise of 'rebuttal' testimony would render Rule 26's limits generally meaningless." *Clear-View Techs., Inc.*, 2015 WL 3509384, at *4. Mr. Redman's testimony offered in rebuttal of Dr. Sasian shall be excluded from trial.

**V.     Orion's Motion to Exclude Testimony of Dr. Saravia (Dkt. No. 260)**

Defendants have designated Dr. Celeste Saravia as an expert to offer rebuttal opinions as to the testimony of Dr. Zona and Dr. Sasian. Orion seeks to exclude portions of her testimony as to Dr. Zona on the grounds that her analysis is contrary to antitrust law and that she relies on factual assumptions that lack factual support. Orion seeks to preclude her testimony as to Dr. Sasian's testimony because her testimony goes beyond rebuttal testimony and she is not qualified to testify on telescope manufacturing.

Case No.: 5:16-cv-06370-EJD
ORDER RE MOTIONS TO EXCLUDE EXPERT TESTIMONY
10

Orion's argument that her testimony is contrary to law turns on her sensitivity testing of Dr. Zona's empirical model that set the pass-through input 100 percent, instead of the 24.4 percent that Dr. Zona calculated. Saravia Rep. ¶ 90. She used the 100 percent input in four of eight scenarios in the sensitivity test. *Id.* Ex. 7. Dr. Saravia's testing suggests that a higher pass-through rate would lead to lower damages to Orion. *Id.* Orion argues that this analysis conflicts with established law that prohibits an antitrust defendant from arguing that the plaintiff suffered no cognizable injury because the plaintiff did, or could, pass the overcharge through to the consumers. *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968); *see also Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120 (9th Cir. 2008) ("[A] party c[an]not defend an antitrust suit brought by a middleman by showing that the actual injury caused by the overcharge was suffered by the end user."). However, *Hanover* and its progeny all concern a specific defense to liability—not a method for analyzing or estimating damages. Dr. Saravia's application of a 100 percent pass-through rate as part of her analysis will not preclude the jury from finding Defendants liable. Rather, she offers a rebuttal of the testimony of Orion's damages expert by testing an input that Orion—through Dr. Zona—put at issue. It is appropriate for Dr. Saravia to use such a sensitivity test on Dr. Zona's own model. Such "testing of an expert's methodology—by applying that methodology to different data or with different assumptions and examining the results produced by the methodology so applied—is not an impermissible challenge to the expert's results." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 468 (S.D.N.Y. 2018). "Rather, this robustness and sensitivity testing relates directly to two of the *Daubert* factors articulated by the Supreme Court: whether the methodology 'can be (and has been) tested' and the methodology's 'known or potential rate of error.'" *Id.* (citing and quoting *Daubert*, 509 U.S. at 594). Orion's challenge to Dr. Saravia's testimony on this basis is denied.

Next, Orion argues that Dr. Saravia's testimony should be excluded to the extent she offers an opinion based on the assumption that once Orion and Synta entered into the 2016 settlement agreement, Synta's collusion with Sunny ended. Orion characterizes this opinion as factually "unsupported," but by the terms of the settlement, Synta agreed to cease violating antitrust laws.

Case No.: 5:16-cv-06370-EJD
ORDER RE MOTIONS TO EXCLUDE EXPERT TESTIMONY
11

Saravia Rep. ¶ 49. That alone provides sufficient factual grounding for this testimony. To the extent Orion seeks to show that her testimony rests on a weak factual foundation, it may do so at trial.

Lastly, Dr. Saravia, like Mr. Redman, offers testimony to provide an economic context for Dr. Sasian's testimony. She opines, for example, that "Dr. Sasian does not analyze whether it would have been profitable for Ningbo Sunny to produce and sell high-end telescopes using the Meade assets. Moreover, he ignores evidence that suggests it may not have been profitable for Ningbo Sunny to do so. Prior to the acquisition, Meade sold both high-end and low-end telescopes, but experienced 'declining revenues, recurring losses, [and] weakened financial position. . . .' Given that Meade was not profitable before the acquisition, there is no reason to assume that Ningbo Sunny would have been able to use the Meade assets to successful produce high-end telescopes." Saravia Rep. ¶ 38 (footnotes omitted). This testimony goes far afield from rebutting Dr. Sasian's testimony into offering new testimony on a different subject matter. Dr. Saravia' testimony concerning Dr. Sasian's conclusions must be excluded. *Clear-View Techs., Inc.*, 2015 WL 3509384, at *4.

## VI. Conclusion

For the reasons discussed above, Defendants' motion to exclude the testimony of Dr. Sasian is denied; Defendants' motion to exclude the testimony of Dr. Zona is denied; Orion's motion to exclude the testimony of Mr. Redman is granted in part and deferred in part; and Orion's motion to exclude the testimony of Dr. Saravia is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated: September 20, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-06370-EJD
ORDER RE MOTIONS TO EXCLUDE EXPERT TESTIMONY
12