1  J. Noah Hagey, Esq. (SBN: 262331)
       hagey@braunhagey.com
2  Matthew Borden, Esq. (SBN: 214323)
       borden@braunhagey.com
3  Jeffrey M. Theodore, Esq. (SBN: 324823)
       theodore@braunhagey.com
4  Ronald J. Fisher, Esq. (SBN: 298660)
       fisher@braunhagey.com
5  BRAUNHAGEY & BORDEN LLP
   351 California Street, Tenth Floor
6  San Francisco, CA 94104
   Telephone:  (415) 599-0210
7  Facsimile:  (415) 276-1808

8  ATTORNEYS FOR PLAINTIFF
   OPTRONIC TECHNOLOGIES, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC., d/b/a Orion Telescopes & Binoculars ®, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>NINGBO SUNNY ELECTRONIC CO., LTD., SUNNY OPTICS, INC., MEADE INSTRUMENTS CORP., and DOES 1 - 25,<br><br>Defendants. | Case No: 5:16-cv-06370-EJD-VKD<br><br>**PLAINTIFF OPTRONIC TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL DEFENDANTS' CEO PETER NI TO APPEAR AT TRIAL**<br><br>**Date:** October 10, 2019<br>**Time:** 11:00 a.m.<br>**Judge:** Hon. Edward J. Davila<br>**Ctrm:** 4, 5th Floor<br><br>**Compl. Filed:** Nov. 1, 2016<br>**First Am. Compl.:** Nov. 3, 2017<br>**Final Pretrial Conf.:** Oct. 10, 2019<br>**Trial Date:** Oct. 15, 2019 |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 2

I.  MR. NI IS SUBJECT TO THE COURT'S JURISDICTION ............................................ 2

   A.  Defendants Erroneously Rely on Cases Involving Third-Party Witnesses to Argue that the Court Lacks Power to Compel Mr. Ni to Appear .......................... 2

   B.  The Subpoena Was Properly Served Pursuant to the Parties' Express Agreement, and Mr. Ni is Accordingly Estopped From Contesting Service ......... 5

   C.  Defendants Have Waived Their Right to Object to the Subpoena ........................ 6

II. MR. NI IS EMPLOYED IN CALIFORNIA ..................................................................... 7

III. DEFENDANTS' CONDUCT PREJUDICES ORION ...................................................... 9

IV. THE COURT SHOULD ISSUE TERMINATING SANCTIONS .................................. 10

V.  AT MINIMUM, THE COURT SHOULD ISSUE A JURY INSTRUCTION TO TRY TO PARTIALLY AMELIORATE THE PREJUDICE TO ORION ........................ 11

CONCLUSION ................................................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
  262 F.R.D. 293 (S.D.N.Y. 2009). ............................................................................................. 4
*Bolton v. Tesoro Petroleum Corp.*,
  549 F. Supp. 1312 (E.D. Pa. 1982) ........................................................................................... 4
*Brogren v. Pohlad*,
  No. 94 C, 6301, 1994 WL 654917 (N.D. Ill. Nov. 14, 1994) ................................................... 6
*Calder v. Jones*,
  465 U.S. 783 (1984) .............................................................................................................. 4, 5
*Centrifugal Acq. Corp., Inc. v. Moon*,
  849 F. Supp. 2d 814 (E.D. Wisc. 2012) .................................................................................... 6
*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) .................................................................................................................. 11
*Chao v. Aurora Loan Servs., LLC*,
  No. C 10-3118 SBA LB, 2012 WL 5988617 (N.D. Cal. Nov. 26, 2012) ................................. 7
*Clark v. Wilkin*,
  2008 WL 648542 (D. Utah Mar. 10, 2008) ............................................................................ 10
*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*,
  472 F. Supp. 2d 1183 (S.D. Cal. 2007) .................................................................................... 9
*Dietz v. Spangenberg*,
  No. CIV 11-2600 ADM/JJG, 2014 WL 537753 (D. Minn. Feb 11, 2014) .............................. 8
*Finley v. Pulcrano*,
  2008 WL 4500862 (N.D. Cal. Oct. 6, 2008) ............................................................................ 6
*Go-Video, Inc. v. Akai Elec. Co.*,
  885 F.2d 1406 (9th Cir. 1989) .................................................................................................. 4
*In re Magnetic Audiotape Antitrust Litig.*,
  334 F.3d 204 (2d Cir. 2003) ..................................................................................................... 4
*In re Rhodes Cos., LLC*,
  475 B.R. 733 (D. Nev. 2012) .................................................................................................... 7
*In re Vioxx Prods. Liab. Litig.*,
  438 F. Supp. 2d 664 (E.D. La. 2006) ........................................................................................ 8
*Indus. Tech. Research Inst. v. LG Corp.*,
  2012 WL 12883204 (S.D. Cal. Dec. 4, 2012) .......................................................................... 4
*Johnson v. Big Lots Stores, Inc.*,
  251 F.R.D. 213 (E.D. La. 2008) ............................................................................................... 9
*Laitram Corp. v. Hewlett-Packard Co.*,
  120 F. Supp. 2d 607 (E.D. La. 2000) ....................................................................................... 9
*Latin Am. Music Co. v. Am. Soc. of Composers Authors & Publishers*,
  593 F.3d 95 (1st Cir. 2010) ..................................................................................................... 11
*Marine Lumber Co. v. Precision Moving & Storage, Inc.*,
  2017 WL 3568668 (D. Haw. Aug. 16, 2017) ......................................................................... 10
*Mireskandari v. Daily Mail & Gen. Tr. PLC*,
  2013 WL 12114761 (C.D. Cal. Sept. 23, 2013) ....................................................................... 4

*Newegg, Inc. v. Telecomm. Sys.*,
   No. C 09-0982 JL, 2009 WL 1814461 (N.D. Cal. June 23, 2009) .................................. 9
*Nielsen v. Preap*,
   139 S. Ct. 954 (2019) ....................................................................................................... 8
*Pan Am. Life Ins. Co. v. Louisiana Acquisitions Corp.*,
   2015 WL 4168435 (E.D. La. July 9, 2015) .................................................................... 4
*R.B. Matthews, Inc. v. Transamerica Transp. Servs., Inc.*,
   945 F.2d 269 (9th Cir. 1991) ......................................................................................... 10
*Richter v. Mut. of Omaha Ins. Co.*,
   No., 06-MISC-011, 2006 WL 1277906 (E.D. Wis. May 5, 2006) ................................. 6
*Salyers v. Metro. Life Ins. Co.*,
   871 F.3d 934 (9th Cir. 2017) ........................................................................................... 5
*Tutor-Saliba Corp. v. United States*,
   30 Fed. Cl. 155 (1993) ..................................................................................................... 6
*Wells Fargo and Co. v. ABD Ins.*,
   No. C 12–03856 PJH, 2012 WL 6115612 (N.D. Cal. Dec. 10, 2012) ........................... 6

**RULES**

Fed. R. Civ. P. 37(d) ................................................................................................................ 10
Fed. R. Civ. P. 45 ............................................................................................................. passim

Orion respectfully submits this Reply in Support of its Motion to Compel Defendants' CEO Peter Ni to Appear at Trial.

**INTRODUCTION**

Defendants are owned and controlled by Peter Ni. To help his companies try to evade liability, Mr. Ni has refused to appear at trial. Defendants' Opposition offers various theories as to why they do not have to produce Mr. Ni. These objections, in addition to being waived, lack merit.

First, Defendants assert that Mr. Ni is beyond the subpoena power of the Court. The Court, however, has jurisdiction over Defendants, and can compel Defendants to produce their principal and chief officer on pain of terminating sanctions – which is what happens when a party refuses to appear. This argument also ignores that Defendants explicitly agreed to email service, accepted deposition subpoenas to Sunny and Meade (and to their officers, Mr. Ni and James Chiu) by email service, and have served their own deposition subpoenas by email, pursuant to the parties' agreement. Defendants are estopped from denying the validity of service which they themselves have repeatedly taken advantage of and gave Orion no warning they would ignore.

Second, Defendants argue that Rule 45 somehow limits the Court's power of compulsory process. Their Opposition ignores the plain language of the Rule and seeks to nullify the language "is employed." The limits added to Rule 45 in 2013 were imposed to prevent haling foreign nationals into jurisdictions when they have no connection to the case. The CEO of a California-headquartered and -operated company, however, cannot avoid this Court's reach by conspiring from afar while deliberately availing himself of California's laws and good will by operating his business here. And Defendants cite no authority to the contrary.

Defendants' refusal to produce Mr. Ni is purely strategic. They seek to avoid inculpatory testimony and the admission of critical documents that he authored or received.[1] Their argument that Orion is not prejudiced because he appeared for "over 15 hours" of deposition is disingenuous. Depositions are not live testimony. Moreover, Mr. Ni's deposition (which was done at less than

---

[1] Defendants likewise have refused to produce other principals during the first week of trial, citing the same "inconvenience" grounds – a tactic intended to prevent Orion from calling defense witnesses during the first few days of jury presentation and to dictate Orion's order of proof.

half speed through a translator) was heavily obstructed. Part of the "15 hours" resulted from Judge DeMarchi ordering Mr. Ni to reappear, as sanctions, because of Defendants' discovery misconduct.

The Court should impose terminating sanctions against Defendants. Mr. Ni controls all three Defendants (one of which he bought in his own name and sold to Ningbo Sunny for $1). His refusal to appear is tantamount to his companies declining to show up at trial. It is also an effort to skew the evidence before the Court and the jury. Under these circumstances, terminating sanctions are appropriate. At minimum, the jury should be instructed about Mr. Ni's strategic refusal to participate in this litigation, so as to partially ameliorate the harm to Orion.

## ARGUMENT

### I. MR. NI IS SUBJECT TO THE COURT'S JURISDICTION

Defendants advance two arguments in support of their contention that their CEO is beyond the Court's jurisdiction to compel testimony.

First, Defendants contend that Mr. Ni cannot be compelled to testify because he is a foreign national. (Opp. at 1.) But the authorities Defendants rely upon in support of that argument involve third-party witnesses, and accordingly do not stand for the proposition that Mr. Ni (the principal of each of the Defendant parties before the Court) is outside the reach of the Court's jurisdiction.

Next, Defendants contend that Mr. Ni was not properly served. (Opp. at 6.) This argument fails because Defendants and Orion have an express written standing agreement to accept service via email to the parties' counsel—and indeed, both Orion and Defendants have used that agreement to serve trial subpoenas in this action. (Declaration of Matthew Borden ("Borden Reply Decl.") Ex. 2).

Even if Defendants' technical procedural arguments had any weight—and they do not—by their failure to make a timely objection, Defendants have waived any right to object because the statutory period elapsed.

### A. Defendants Erroneously Rely on Cases Involving Third-Party Witnesses to Argue that the Court Lacks Power to Compel Mr. Ni to Appear

Defendants' argument that Mr. Ni cannot be compelled to testify because he is a foreign national fails because the cases Defendants rely upon all involve *third-party* foreign witnesses.

(Opp. at 1.) These cases do not stand for the proposition that the Court does not have jurisdiction over the Defendants and their principal Peter Ni. The Court is vested with personal jurisdiction sufficient to direct Defendants to produce their principal Peter Ni, who is the chief author of the misconduct at issue in this case.

As Orion demonstrated in its moving papers at 2-3, and Defendants do not address, Peter Ni orchestrated a scheme whereby his competitor David Shen and his companies provided debt and equity financing so that Mr. Ni's company (Defendant Ningbo Sunny Electronic Co. Ltd.) could acquire Meade. The express outline of this conspiracy was that "CELESTRON/SYNTA should be provide the financial support to SUNNY" in order to "prevent [Ni and Shen's competitor] JOC to buy MEADE." (Order Denying Motion for Summary Judgment (ECF No. 338) at 8:2-5.) Mr. Ni directed his lawyers at Sheppard Mullin to "take direction from and communicate directly with [Ni's] advisors, Dave Anderson (President of Celestron, … [and] David Shen (head of Synta)." (Ningbo Sunny/Sheppard Mullin Engagement Letter (ECF No. 304-16) at 5953.) Despite this fact, Mr. Ni directed his lawyers to conceal Celestron and David Shen's involvement in the Meade acquisition from the Federal Trade Commission. (8/13/2013 email from Sheppard Mullin to FTC (ECF No. 304-13) (representing that "except for the limited advice to Peter Ni regarding how to acquire a US company … David Shen has no role in the proposed acquisition of Meade by Sunny").)

Mr. Ni's misleading of U.S. Government officials did not stop there. Mr. Ni directed his counsel to tell the FTC that Ningbo Sunny would not be purchasing Meade, and that Mr. Ni was instead purchasing Meade solely in his personal capacity. (9/10/13 email from Sheppard Mullin to FTC (ECF No. 232-19) (informing the FTC that Peter Ni would own Meade's parent Sunny Optics personally, and the only reason Sunny Optics was listed as an affiliate of Ningbo Sunny was that Peter Ni also owned a significant percentage of Ningbo Sunny).) Then, after the acquisition closed, Mr. Ni transferred his personal interest in Meade to Ningbo Sunny for one dollar. (Ni Dep. 120:11-21 (ECF No. 232-7).)

Mr. Ni now seeks to avoid answering for his misconduct before a jury, contending that he is beyond the Court's authority because he is a foreign national. But the cases Defendants cite for

this proposition do not deal with compelling party witnesses to appear. Rather, they all involve third-party witnesses living abroad who were outside of the parties' control or ability to produce.[2]

Indeed, the lone remaining case Defendants cite is *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, which rejected the very arguments Defendants are making here:

> Having chosen to avail themselves of the many benefits of this forum, it is disingenuous for the [defendants] and their corporate officers to reverse course now and contend that they are beyond the reach of this Court's subpoena power. This view finds support in the purpose behind the Rule's geographic limitation, which 'gives nonparty deponents protection from expending time and money to comply with a subpoena' and is intended to 'protect [nonparty] witnesses from being subjected to excessive discovery burdens in litigation in which they have little or no interest.'

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas,* 262 F.R.D. 293, 302 (S.D.N.Y. 2009) (internal citations omitted).[3]

*Aristocrat* thus only confirms the Court's power to enforce validly served subpoenas on party-witnesses—an inexorable conclusion given that the Court's personal jurisdiction over Defendants is unquestioned. Indeed, courts who have considered the question have routinely held that the Clayton Act and the U.S. Constitution fully support personal jurisdiction over foreign antitrust defendants. *See Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1416 (9th Cir. 1989) (federal court personal jurisdiction over Japanese and Korean antitrust defendants not unfair); *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003) (same) (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)). Given that the Court's personal jurisdiction is

---

[2] Opp. at 1-2 (citing *Pan Am. Life Ins. Co. v. Louisiana Acquisitions Corp.*, 2015 WL 4168435, at *3 (E.D. La. July 9, 2015) (subpoena directed to officer of affiliate entity and not of *either defendant*); *Mireskandari v. Daily Mail & Gen. Tr. PLC*, 2013 WL 12114761, at *2 (C.D. Cal. Sept. 23, 2013) (subpoenas directed toward "seven third party witnesses"); *Indus. Tech. Research Inst. v. LG Corp.*, 2012 WL 12883204, at *2 (S.D. Cal. Dec. 4, 2012) (directed to third-party inventor, who "has not been employed by [defendant] since 2001 and is not, and was not, an officer, director, or managing agent"); *Bolton v. Tesoro Petroleum Corp.*, 549 F. Supp. 1312, 1317 (E.D. Pa. 1982) (discussing whether officials of defendant's *affiliate* abroad could be compelled to appear).

[3] The portion of *Aristocrat* that Defendants cite involved a failure to serve a third-party. But as discussed in Section 1.B below, Mr. Ni was properly served with the trial subpoena in this action pursuant to the parties' express agreement, and is accordingly estopped from contesting service.

unquestioned—an analysis that entirely hinges on whether a party can "reasonably anticipate being haled into court," *Calder*, 465 U.S. at 790—Defendants' citation of inapposite authority to contend that it would be unfair to hale Mr. Ni into this Court necessarily fails.

### B. The Subpoena Was Properly Served Pursuant to the Parties' Express Agreement, and Mr. Ni is Accordingly Estopped From Contesting Service

Defendants next contend that Mr. Ni can avoid testifying at trial because he was not properly served with a subpoena. (Opp. at 6.) This argument fails because Defendants and Orion have an express written standing agreement to accept service via email to the parties' counsel—and indeed, **Defendants themselves have used that agreement to serve trial subpoenas on Orion's CEO and another Orion employee in this action**. (Borden Reply Decl. Ex. 2.)

On April 20, 2018, the parties agreed—at Defendants' behest—that email service would suffice to bind the parties and their employees in this action. (Borden Reply Decl. Ex. 1.) Pursuant to this agreement, Defendants have made and accepted email service on behalf of individuals throughout the pendency of this litigation, including multiple deposition notices sent to Peter Ni and James Chiu—both of whom reside in China. Neither side has ever objected on the basis of improper service. Most tellingly, Defendants themselves served Orion's CEO and another employee with trial subpoenas via email pursuant to the parties' agreement—subpoenas that those witnesses will comply with. (Borden Reply Decl. Ex. 2.)

Defendants are estopped from claiming service was invalid. The federal common law doctrine of estoppel applies where "the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts." *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 941 (9th Cir. 2017). Defendants here seek to repudiate the validity of service that they both accepted and employed throughout this litigation, including as to the very issue that it now seeks special treatment on—trial subpoenas. Defendants' sudden repudiation of the parties' agreement's validity now works a detriment to Orion, who relied on the email service agreement with Defendants in order to issue its trial subpoenas, in the exact same manner that both parties had accepted and served deposition notices *on behalf of individuals under their control*. Defendants are accordingly estopped from disputing valid service.

### C. Defendants Have Waived Their Right to Object to the Subpoena

Even if either of Defendants' procedural technicalities had any merit, Defendants waived their right to advance such arguments by failing to timely object to the subpoena, or indeed make any response at all—all so that Defendants could unfairly surprise Orion on the eve of trial.

Numerous courts have held that a failure to object within 14 days waives objection to a subpoena requiring appearance at deposition or trial. *See Centrifugal Acq. Corp., Inc. v. Moon*, 849 F. Supp. 2d 814, 839 (E.D. Wisc. 2012) ("Rule 45(c)(2) implicitly requires that a motion to quash a subpoena be filed within fourteen days of service, and the Rule 45(c)(3) timeliness requirement appears to refer to that period. The most reasonable construction of the rule is to read these two sections together; thus, motions to quash must be filed within fourteen days of service") (quoting *Tutor-Saliba*); *Richter v. Mut. of Omaha Ins. Co.*, No. 06-MISC-011, 2006 WL 1277906, at *3 (E.D. Wis. May 5, 2006) (denying motion to quash when objection made four days late); *Brogren v. Pohlad*, No. 94 C 6301, 1994 WL 654917, at *1 (N.D. Ill. Nov. 14, 1994); *Tutor-Saliba Corp. v. United States*, 30 Fed. Cl. 155, 156 (1993). Citing a different line of cases, Defendants argue that Rule 45's 14-day period to make objections is inapplicable to them because the 14-day language only applies to objections to subpoenas *duces tecum*. (Opp. at 6-7.) But Defendants cite no case that binds this Court, nor do they (or can they) explain why the Court should facilitate their sharp practice by following that line of cases on the facts presented here.

Nor would doing so serve the purposes of the Rule. The entire purpose for the timeliness command is to prevent parties from lying in the weeds, as Defendants admittedly have, for the strategic purpose of causing a car crash (or asteroid collision) shortly before trial.[4] Thus, in

---

[4] Defendants also assert that service is improper on the basis that Sheppard Mullin represents Defendants, and not Mr. Ni in his individual capacity. (Opp. at 6.) However, by both objecting to the subpoena, and moving to quash (Opp. at 9 n.8 (asking Court to quash "Plaintiff's improperly served trial subpoena" and incompletely citing Fed. R. Civ. P. 45(d)(3)(A)(ii), which states that the court must quash or modify *"on timely motion"*)), Defendants admit that their lawyers represent Mr. Ni as the principal of Defendants. Otherwise, Defendants would lack standing to object or move this Court to quash. *Finley v. Pulcrano*, 2008 WL 4500862, * 1 (N.D. Cal. Oct. 6, 2008) ("A party does not have standing to quash a subpoena on the basis that the non-party recipient of the subpoena would be subjected to an undue burden when the non-party has failed to object"); *Wells Fargo and Co. v. ABD Ins.*, No. C 12–03856 PJH, 2012 WL 6115612 at *2 (N.D. Cal. Dec. 10, 2012) ("A party's objection that a subpoena to a non-party seeks irrelevant information or would

1 deciding whether to excuse the lack of timeliness, courts have required a showing of unusual circumstances, good cause, or lack of prejudice. *See Chao v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA LB, 2012 WL 5988617, at *2 (N.D. Cal. Nov. 26, 2012) (noting the split between courts concerning the 14-day rule, and stating that "[r]egardless of whether the 14–day rule applies here, the court finds that the facts set forth above about the timing of the motions and the timing of discovery demonstrate good cause. The parties contemplate setting depositions in December, and *there is no prejudice* from any delay") (internal parentheses omitted and emphasis added).

In contrast, Defendants offer no explanation as to why they waited until the eve of trial to assert that Mr. Ni will not comply with the trial subpoena; no explanation as to why they took advantage of the service agreement with Orion by serving trial subpoenas by email; no explanation as to why they accepted service of the subpoenas they now claim are invalid without alerting Orion to any objection; and no explanation as to why their lawyers are disavowing representation of Mr. Ni while simultaneously making objections and moving to quash on his behalf. To the contrary, these delays were calculated. As such, even under the most lenient construction of Rule 45, Defendants waived any ability to object to the subpoena.

## II. MR. NI IS EMPLOYED IN CALIFORNIA

As shown in the moving papers, Mr. Ni is required to comply with the subpoena because he is employed in California as the CEO of Defendant Meade. (Mot. at 2.) Defendants claim that since Mr. Ni "works" in China and only conducts yearly visits to California, he is not subject to compulsory process. (Opp. at 3-4.) Defendants ignore the plain language of the Rule. Rule 45 is written in the disjunctive, and allows courts to compel party officers to appear in three distinct types of trials: those "within the state where the person resides, *is employed*, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(B) (emphasis added). Defendants read the language

---

impose an undue burden are not grounds on which a party has standing to move to quash a subpoena when the non-party has not objected"); *In re Rhodes Cos., LLC*, 475 B.R. 733, 738-40 (D. Nev. 2012) (only person subject to subpoena may bring motion to quash under current Rule 45(d)(3)(A)). Mr. Ni, in his individual capacity, has yet to object (or move, or even to respond). He is moving and objecting here, as a party witness and person who controls Defendants. Either Defendants move to quash and thereby accept that service was proper, or they entirely lack standing to challenge the validity of the subpoena. They cannot have it both ways.

"is employed" to mean the exact same thing as "regularly transacts business" without any textual justification.

Defendants' reading of the Rule contravenes the "cardinal rule of statutory interpretation," that "every word and every provision is to be given effect, and that none should needlessly be given an interpretation that causes it to duplicate another provision." *Nielsen v. Preap*, 139 S. Ct. 954, 969 (2019) (internal quotations omitted). Thus, the phrase "is employed" cannot mean where Mr. Ni's office is, because that is already where he "regularly transacts business in person." The term "is employed" only can mean where the employer is located. Otherwise, a party could operate a business in state, make all the decisions for that business—even illegal ones—and nevertheless prevent the jury from evaluating the full scope of his or her conduct at trial. That is exactly what Defendants are attempting to do here.

The cases Defendants cite are either irrelevant, or support the interpretation advanced here. The courts in *Regents of the Univ. of Cal. v. Kohne*, and *Bostian v. Suhor Indus., Inc.*, considered under what circumstances do a person's business trips to a state qualify to invoke the "regularly transact[ing] business in person" prong of the Rule. The only case where the court briefly construed the "is employed" prong (as well as the "transacting business" clause) was *Dietz v. Spangenberg*, No. CIV 11-2600 ADM/JJG, 2014 WL 537753, at *5 (D. Minn. Feb 11, 2014), in which the court found that the former CEO, and current chair of defendant's company was not considered "employed" in Minnesota after submitting an affidavit stating that the company is headquartered in Texas. Peter Ni is the CEO of a California -headquartered and -operated company, is employed in California, and thus is within reach of this Court's power.

Defendants argue that the cases Orion cites predate Rule 45's amendment in 2013. (Opp. at 4-5.) But they offer nothing to show that the Rule was changed to somehow limit the power of Courts to compel the appearance of corporate officers of *in-state* companies. The Rule was amended to resolve a dispute between courts that held that all party witnesses could be compelled to appear under any circumstances, and courts that held that an out-of-state party witness with no other ties to the state could not be compelled to appear. *See* Rule 45 Committee Notes (citing conflict between *In re Vioxx Prods. Liab. Litig.*, 438 F. Supp. 2d 664 (E.D. La. 2006) (representing

majority rule that party officer per se subject to compulsory process) and *Johnson v. Big Lots Stores, Inc.*, 251 F.R.D. 213 (E.D. La. 2008) (out-of-state class members cannot be compelled to appear)). There is no dispute that would suggest that the Rule was amended to take away a court's power to make the officers of in-state companies appear for trial, or any sound basis to imply such a massive incursion into the basic powers of the federal courts.

### III.  DEFENDANTS' CONDUCT PREJUDICES ORION

Defendants assert that Orion will not be prejudiced "merely because Mr. Ni is not physically present in the courtroom," and cite two cases where courts have found no harm due to an inability to procure *non-party* witnesses. (Opp. at 7-8.) Such is not the case here. Mr. Ni is a percipient party-witness, who owns and controls all the Defendants in this case, and who is integral to each of Orion's claims – all of which turn on his agreements with David Shen. (Mot. at 2-3; Borden Decl. Ex. 1 (Ni Dep.) 7:21-23; 8:4-9; 19:14-20:4; 120:11-21; Ex. 2 (Chiu Dep.) 24:7-13; 150:9-12; 167:20-24; Ex. 3; Ex. 6).)

For obvious reasons, and especially with key witnesses, a deposition transcript or video clip is no substitute for live trial testimony. *Newegg, Inc. v. Telecomm. Sys.*, No. C 09-0982 JL, 2009 WL 1814461, at *7 (N.D. Cal. June 23, 2009) ("The location of third-party witnesses is usually the most important convenience and justice factor of all. That is because courts recognize that reading a deposition at trial—even a videotaped deposition—is no substitute for the advantages to the parties, the judge and the jury of having important witnesses appear live at trial"); *Laitram Corp. v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607, 610 (E.D. La. 2000) ("It is essential to the cause of justice itself. Deposition testimony ... is a sterile, inadequate substitute for live testimony on key issues"); *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1194 (S.D. Cal. 2007) ("Offering unavailable witnesses' testimony via videotaped deposition testimony is disfavored because [a] party should not be forced to rely on trial by deposition rather than live witnesses") (internal quotations omitted).

The implications of allowing depositions to replace live trial testimony are "troubling," since: "if made practice, they could skew discovery. Were depositions, for example, to be used to replace live testimony, both plaintiffs and defendants would be forced to elicit the planned

1  testimony of their witnesses during depositions, thus disclosing at that time their entire trial
2  strategy." *R.B. Matthews, Inc. v. Transamerica Transp. Servs., Inc.*, 945 F.2d 269, 272–73 (9th
3  Cir. 1991) (only disallowing defendants from calling a live witness after defendants did not
4  produce a witness for trial testimony at plaintiff's request).  This is especially true here considering
5  Mr. Ni's heavily obstructed deposition testimony. (Borden Reply Decl. Ex. 3 (Ni Deps.) 43:12-
6  46:23; 16:9-16:20; 16:22-23:8; 25:21-30:24; 31:3-35:6.)

7        Orion will also be prejudiced because there are documents that Mr. Ni sent and received
8  that were not copied to the parties who Defendants are bringing to trial.  For example, Orion has
9  discovered that Mr. Ni received memos expressly discussing ███████████████████
10 ████████████████████████████████—but because that document was sent by David
11 Shen's associate Laurence Huen (a third party who is out of the Court's subpoena power) to Mr. Ni
12 without copying James Chiu, Mr. Ni is a key witness regarding the document.  (Borden Reply
13 Decl. Ex. 4.)  The jury is entitled to receive these documents as evidence.

14 **IV.     THE COURT SHOULD ISSUE TERMINATING SANCTIONS**

15       If Mr. Ni persists in refusing to comply with his subpoena, the Court should issue
16 terminating sanctions. (Mot. at 6.)  Because Mr. Ni controls all the Defendants and is the chief
17 executive officer of each of them, his refusal to appear is the same as a party's refusal to show up at
18 trial.  As shown in the moving papers, both Rule 45 and the court's "inherent power" allow a court
19 to order a party-witness to appear, with the consequence of "merits based sanction" should they
20 not. *Clark v. Wilkin*, 2008 WL 648542 at *2 (D. Utah Mar. 10, 2008).  Where a party fails to
21 appear for deposition, a court may impose terminating sanctions, even without violation of any
22 court order.  Fed. R. Civ. P. 37(d).  The lone case Defendants cite is *Marine Lumber Co. v.*
23 *Precision Moving & Storage, Inc.*, 2017 WL 3568668, at *1 (D. Haw. Aug. 16, 2017), which they
24 claim stands for the proposition that "courts are generally reluctant to initiate Rule 45(g) contempt
25 proceedings." (Opp. at 8.)  This decision involved witnesses who failed to appear for deposition.
26 In response, the court ordered the witnesses to appear as a remedy and sanctioned defendant's
27 lawyer. *Id*. at *5 ("the Court ORDERS Precision's counsel, as the attorney advising Precision's
28 conduct, to pay Marine $2,500 in sanctions for the multiple discovery abuses"). *Marine Lumber*

did not involve a party's refusal to appear at trial or how a court should treat a situation where a party decides to stop participating in the case. There was time and the ability to ameliorate the misconduct. Here, trial is about to begin, and if Mr. Ni refuses to appear now, there is no reason to believe he ever would.

In a footnote, Defendants fault Orion for not citing any terminating sanctions decisions under Rule 45(g). This is a distinction without a difference. The Court has the inherent power and power under the Federal Rules to control the conduct of the parties before it and to ensure that the parties participate in the proceedings. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (citations and quotations omitted) ("it is firmly established that the power to punish for contempts is inherent in all courts. This power reaches both conduct before the court and that beyond the court's confines, for the underlying concern that gave rise to the contempt power was not ... merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial."). Here, should Mr. Ni continue his refusal to appear, it will disrupt the trial itself – as Mr. Ni and his businesses intend. Given his undisputed importance to the case (Mot. at 2-3), no lesser relief is warranted.

## V. AT MINIMUM, THE COURT SHOULD ISSUE A JURY INSTRUCTION TO TRY TO PARTIALLY AMELIORATE THE PREJUDICE TO ORION

Defendants argue that the Court should not issue a missing witness instruction because "a missing witness jury instruction based on the fact that a witness does not testify live at trial is not justified where the witness' testimony was available through deposition." (Opp. at 8.) This statement misrepresents the lone case they cite, *Latin Am. Music Co. v. Am. Soc. of Composers Authors & Publishers*, 593 F.3d 95, 101-02 (1st Cir. 2010). In that case, "Both parties stipulated that [witness] would appear by videotape," and no abuse of discretion was thus found. *Id*. at 102. The First Circuit further stated that "When deciding whether to issue a missing witness instruction the 'court must consider the explanation (if any) for the witness's absence and whether the witness, if called, would be likely to provide relevant, non-cumulative testimony.'" *Id*. at 102 (citation omitted). Here, in contrast, Mr. Ni controls the parties at issue, has undisputedly known about the trial for five months, and has been designated the most knowledgeable witness on his agreements

with David Shen – the heart of the case. His refusal to appear is an intentional effort to distort the evidence presented at trial to improperly aid the entities he owns and controls. The jury is entitled to draw an adverse inference from his refusal to appear.

## CONCLUSION

For the foregoing reasons, the Court should order Peter Ni to appear at trial on pain of terminating sanctions against Defendants, all of whom he controls.

Respectfully Submitted,

Dated: October 1, 2019

BRAUNHAGEY & BORDEN LLP

By: /s/ *Matthew Borden*
      Matthew Borden

Attorneys for Plaintiff OPTRONIC TECHNOLOGIES, INC. d/b/a Orion Telescopes & Binoculars ®