J. Noah Hagey, Esq. (SBN: 262331)
    hagey@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
    borden@braunhagey.com
Jeffrey M. Theodore, Esq. (SBN: 324823)
    theodore@braunhagey.com
Ronald J. Fisher, Esq. (SBN: 298660)
    fisher@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR PLAINTIFF
OPTRONIC TECHNOLOGIES, INC

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
LEO D. CASERIA, Cal. Bar No. 240323 333
South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:  213.620.1398
Email:  lcaseria@sheppardmullin.com

MICHAEL W. SCARBOROUGH,
Cal. Bar No. 203524
DYLAN I. BALLARD, Cal. Bar. No. 253929
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:     415.434.9100
Facsimile:     415.434.3947
E-mail: mscarborough@sheppardmullin.com
         dballard@sheppardmullin.com

ATTORNEYS FOR DEFENDANTS
NINGBO SUNNY ELECTRONIC CO., LTD.,
SUNNY OPTICS, INC., and MEADE
INSTRUMENTS CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC. d/b/a Orion Telescopes & Binoculars, a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>NINGBO SUNNY ELECTRONIC CO., LTD., SUNNY OPTICS, INC., MEADE INSTRUMENTS CORP., and DOES 1-25,<br><br>        Defendants. | Case No. 5:16-cv-06370-EJD-VKD<br>*Assigned To:  Honorable Edward J. Davila*<br><br>**JOINT [PROPOSED] JURY INSTRUCTIONS**<br><br>**Compl. Filed:**      Nov. 1, 2016<br>**First Am. Compl.:**  Nov. 3, 2017<br>**Final Pretrial Conf.:** Oct. 10, 2019<br>**Trial Date:**       Oct. 15, 2019 |

1    Pursuant to Section IV.D.8 of the Court's Standing Order for Civil Cases, Plaintiff

2 Optronic Technologies, Inc. ("Orion") and Defendants Ningbo Sunny Electronic Co., Ltd.

3 ("Ningbo Sunny"), Sunny Optics, Inc. ("Sunny Optics") and Meade Instruments, Inc. ("Meade")

4 (collectively, "Defendants") respectfully submit their agreed and respective proposed jury

5 instructions.

6

7 Dated: October 3, 2019

8

9                                   BRAUNHAGEY & BORDEN LLP

10

11

12                   By      /s/ Matthew Borden

13                          MATTHEW BORDEN

14                   Attorneys for Plaintiff OPTRONIC
                     TECHNOLOGIES, INC. d/b/a Orion Telescopes &
15                   Binoculars ®

16

17                   SHEPPARD, MULLIN, RICHTER & HAMPTON

18                   LLP

19

20                   By      /s/ Leo D. Caseria

21                          LEO D. CASERIA

22                   Attorneys for Defendants NINGBO SUNNY
                     ELECTRONIC CO., LTD., SUNNY OPTICS, INC.,
23                   and MEADE INSTRUMENTS CORP.

24

25

26

27

28

1

## <u>ATTESTATION</u>

Pursuant to Civil Local Rule 5-1(i)(3), I, Matthew Borden, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

*/s/ Matthew Borden*

Matthew Borden

## TABLE OF CONTENTS

| NO. | TITLE | SOURCE AND AUTHORITIES | PAGE |
|---|---|---|---|
| **AGREED INSTRUCTIONS ON TRIAL PROCESS** | | | |
| 1 | Duty of Jury (Court Reads and Provides Written Set of Instructions) | 9th Cir. 1.2 | 1 |
| 2 | Duty of Jury (Court Reads Instructions at the Beginning of Trial But Does Not Provide Written Copies) | 9th Cir. 1.3 | 2 |
| 3 | Duty of Jury (Court Reads and Provides Written Instructions at End of Case) | 9th Cir. 1.4 | 3 |
| 4 | Claims and Defenses | 9th Cir. 1.5 | 4 |
| 5 | Burden of Proof—Preponderance of the Evidence | 9th Cir. 1.6 | 5 |
| 6 | Two or More Parties—Different Legal Rights | 9th Cir. 1.8 | 6 |
| 7 | What Is Evidence | 9th Cir. 1.9 | 7 |
| 8 | What Is Not Evidence | 9th Cir. 1.10 | 8 |
| 9 | Evidence for Limited Purpose | 9th Cir. 1.11 | 9 |
| 10 | Direct and Circumstantial Evidence | 9th Cir. 1.12 | 10 |
| 11 | Ruling on Objections | 9th Cir. 1.13 | 11 |
| 12 | Credibility of Witnesses | 9th Cir. 1.14 | 12-13 |
| 13 | Conduct of the Jury | 9th Cir. 1.15 | 14-15 |
| 14 | Publicity During Trial | 9th Cir. 1.16 | 16 |
| 15 | No Transcript Available to Jury | 9th Cir. 1.17 | 17 |
| 16 | Taking Notes | 9th Cir. 1.18 | 18 |
| 17 | Bench Conferences and Recesses | 9th Cir. 1.20 | 19 |
| 18 | Outline of Trial | 9th Cir. 1.21 | 20 |
| 19 | Deposition in Lieu of Live Testimony | 9th Cir. 2.4 | 21 |
| 20 | Transcript of Recording in Foreign Language | 9th Cir. 2.6 | 22 |
| 21 | Foreign Language Testimony | 9th Cir. 2.8 | 23 |
| 22 | Impeachment Evidence | 9th Cir. 2.9 | 24 |
| 23 | Expert Opinion | 9th Cir. 2.13 | 25 |
| 24 | Charts and Summaries Not Received in Evidence | 9th Cir. 2.14 | 26 |
| 25 | Charts and Summaries in Evidence | 9th Cir. 2.15 | 27 |
| 26 | Evidence in Electronic Format | 9th Cir. 2.16 | 28-29 |

SMRH:4832-1239-1592.2

| NO. | TITLE | SOURCE AND AUTHORITIES | PAGE |
|---|---|---|---|
| **AGREED INSTRUCTIONS CONCERNING DELIBERATIONS** | | | |
| 27 | Duty to Deliberate | 9th Cir. 3.1 | 30 |
| 28 | Consideration of Evidence—Conduct of the Jury | 9th Cir. 3.2 | 31-32 |
| 29 | Communication with Court | 9th Cir. 3.3 | 33 |
| 30 | Return of Verdict | 9th Cir. 3.5 | 34 |
| **DISPUTED INSTRUCTIONS ON TRIAL PROCESS** | | | |
| 31 | Orion's Proposed Trial Instruction No. 1<br><br>Special Instruction re Refusal to Appear | *United States v. Noah*, 475 F.2d 688, 691 (9th Cir. 1973); *United States v. Leal-Del Carmen*, 697 F.3d 964, 974-75 (9th. Cir. 2012); *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 212 (9th Cir. 1988). | 35 |
| **INSTRUCTIONS ON CLAIMS AND DAMAGES** | | | |
| **Orion's Proposed Instructions Regarding Price-Fixing** | | | |
| 32 | Orion's Price-Fixing Instruction No. 1<br><br>Price Fixing: The Complaint and the Statute | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-1 (Restraint of Trade) (Matthew Bender, 2015). | 36-38 |
| 33 | Orion's Price-Fixing Instruction No. 2<br><br>Price Fixing: The Purpose of the Statute | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-2 (Restraint of Trade) (Matthew Bender, 2015). | 39-40 |
| 34 | Orion's Price-Fixing Instruction No. 3<br><br>Price Fixing: The Elements of the Offense | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-3 (Restraint of Trade) (Matthew Bender, 2015). | 41-43 |
| 35 | Orion's Price-Fixing Instruction No. 4<br><br>Price-Fixing: First Element—Conspiracy Defined | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-4 (Restraint of Trade) (Matthew Bender, 2015). | 44-46 |
| 36 | Orion's Price-Fixing Instruction No. 5<br><br>Price-Fixing: Credit-Term Fixing | *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 648 (1980. | 47-48 |
| 37 | Orion's Price-Fixing Instruction No. 6<br><br>Price-Fixing: The Possible Parties to the Conspiracy | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-5 (Restraint of Trade) (Matthew Bender, 2015). | 49-52 |

SMRH:4832-1239-1592.2

| NO. | TITLE | SOURCE AND AUTHORITIES | PAGE |
|---|---|---|---|
| 39 | Orion's Price-Fixing Instruction No. 7<br><br>Price Fixing: Proof of the Conspiracy—Proving the Agreement | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-6 (Restraint of Trade) (Matthew Bender, 2015). | 53-55 |
| 40 | Orion's Price-Fixing Instruction No. 8<br><br>Price Fixing: Proof of the Conspiracy—Generally | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-8 (Restraint of Trade) (Matthew Bender, 2015). | 56-58 |
| 41 | Orion's Price-Fixing Instruction No. 9<br><br>Price Fixing: Joining the Conspiracy—Time of Joining | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-9 (Restraint of Trade) (Matthew Bender, 2015). | 59-61 |
| 42 | Orion's Price-Fixing Instruction No. 10<br><br>Price-Fixing: Withdrawal from the Conspiracy | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-10 (Restraint of Trade) (Matthew Bender, 2015). | 62-65 |
| 43 | Orion's Price-Fixing Instruction No. 11<br><br>Price-Fixing: Success Immaterial—Need Only an Overt Act | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-11 (Restraint of Trade) (Matthew Bender, 2015). | 65-68 |
| 44 | Orion's Price-Fixing Instruction No. 12<br><br>Price-Fixing: The Prohibition of Legal Means to an Illegal End | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-12 (Restraint of Trade) (Matthew Bender, 2015). | 69-71 |
| 45 | Orion's Price-Fixing Instruction No. 13<br><br>Price-Fixing: Co-Conspirators Not Named as Defendants | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-13 (Restraint of Trade) (Matthew Bender, 2015). | 72-74 |
| 46 | Orion's Price-Fixing Instruction No. 14<br><br>Price Fixing: Second Element—The Purpose or Effect of the Conspiracy Was to Fix Prices | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-14 (Restraint of Trade) (Matthew Bender, 2015). | 75-78 |
| 47 | Orion's Price-Fixing Instruction No. 15<br><br>Price Fixing: Third Element—Interstate Commerce | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-20 (Restraint of Trade) (Matthew Bender, 2015). | 79-81 |
| | **Defendants' Proposed Instructions Regarding Price-Fixing** | | |
| 48 | Sherman Act Section 1 | ABA Ch. 1, Instruction 2 | 82 |

| NO. | TITLE | SOURCE AND AUTHORITIES | PAGE |
|---|---|---|---|
| 49 | General Elements | ABA Ch. 2, Part B. Instruction 1 | 83-84 |
| 50 | Definition, Existence, and Evidence | ABA Ch. 2, Part A. Instruction 1 | 85-86 |
| 51 | Parallel Conduct | ABA Ch. 2, Part A. Instruction 2 | 87-88 |
| 52 | Corporations | ABA Ch. 2, Part A. Instruction 3 | 89-90 |
| 53 | Participation and Intent | ABA Ch. 2, Part A. Instruction 4 | 91-92 |
| 54 | Withdrawal | ABA Ch. 2, Part A. Instruction 5 | 93 |
| 55 | Interstate Commerce | ABA Ch. 1, Instruction 4 | 94 |
| 56 | Foreign Commerce | ABA Ch. 1, Instruction 5 | 95 |
| 57 | Good Intent Not a Defense | ABA Ch. 2, Part B. Instruction 3 | 96 |
| 58 | Reasonableness of Prices No Excuse | ABA Ch. 2, Part B. Instruction 4 | 97 |
| 59 | Evidence of Competition | ABA Ch. 2, Part B. Instruction 5 | 98 |
| 60 | Evidence of Price Charged | ABA Ch. 2, Part B. Instruction 6 | 99 |
| 61 | Evidence of Similarity | ABA Ch. 2, Part B. Instruction 7 | 100-101 |
| 62 | Evidence of Exchange of Price Information | ABA Ch. 2, Part B. Instruction 8 | 102 |
| 63 | Communications between Suppliers and Distributors | ABA Ch. 2, Part D. Instruction 9 | 104-105 |
| 64 | Rule of Reason-Overview | ABA Ch. 1, Instruction 3A | 105-106 |
| 65 | Rule of Reason-Proof of Competitive Harm | ABA Ch. 1, Instruction 3B | 107-108 |
| 66 | Rule of Reason-Evidence of Competitive Benefits | ABA Ch. 1, Instruction 3C | 109 |
| 67 | Rule of Reason-Balancing the Competitive Effects | ABA Ch. 1, Instruction 3D | 110 |
| **Orion's Proposed Instructions Regarding Market Allocation** | | | |
| 68 | Orion's Market Allocation Instruction No. 1<br><br>Market Allocation: The Complaint and the Statute | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.04, Instr. 79-39 (Restraint of Trade) (Matthew Bender, 2015). | 111-113 |
| 69 | Orion's Market Allocation Instruction No. 2<br><br>Market Allocation: The Purpose of the Statute | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.04, Instr. 79-40 (Restraint of Trade) (Matthew Bender, 2015). | 114-116 |
| 70 | Orion's Market Allocation Instruction No. 3<br><br>Market Allocation: The Elements of the Offense | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.04, Instr. 79-41 (Restraint of Trade) (Matthew Bender, 2015). | 117-119 |
| 71 | Orion's Market Allocation Instruction No. 4 | Refers to prior instructions to avoid duplicative instructions. | 120 |

| NO. | TITLE | SOURCE AND AUTHORITIES | PAGE |
|---|---|---|---|
| | Market Allocation: First Element—Conspiracy | | |
| 80 | Orion's Market Allocation Instruction No. 5  Market Allocation: Second Element—The Purpose or Effect of the Conspiracy Was to Allocate the Market | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.04, Instr. 79-42 (Restraint of Trade) (Matthew Bender, 2015). | 121-123 |
| 81 | Orion's Market Allocation Instruction No. 6  Market Allocation: Vertical Market Allocation—The Rule of Reason | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.04, Instr. 79-43 (Restraint of Trade) (Matthew Bender, 2015). | 124-129 |
| 82 | Orion's Market Allocation Instruction No. 7  Market Allocation: Third Element—Interstate Commerce | Refers to prior instructions to avoid duplicative instructions. | 130 |
| | | | |
| **Defendants' Proposed Instructions Regarding Market Allocation** | | | |
| 83 | Defendants' Proposed Instruction No. 21 Allocation of Product Markets | ABA Ch. 2, Part C. Instruction 3 | 133-134 |
| 84 | Defendants' Proposed Instruction No. 22  Market Allocation—Existence And Elements Of Conspiracy | Defendants propose this instruction to avoid requiring the Court to repeat instructions above regarding the existence and elements of an antitrust conspiracy. | 135 |
| 85 | Defendants' Proposed Instruction No. 23  Market Allocation—Rule Of Reason | Defendants propose this instruction to avoid requiring the Court to repeat instructions above regarding the rule of reason.  Defendants maintain that Orion has alleged its price-fixing and market allocation claims as per se violations of the Sherman Act.  Therefore, if Orion is unable to prove a conspiracy between horizontal competitors under either or both of those theories, the jury must find for Defendants.  Defendants do not waive that argument by submitting this proposed instruction | 132 |
| **Orion's Proposed Instructions Regarding Attempted Monopolization** | | | |
| 86 | Orion's Attempted Monopolization Instruction No. 1 | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. | 133-135 |

| NO. | TITLE | SOURCE AND AUTHORITIES | PAGE |
|---|---|---|---|
| | Attempted Monopolization: The Complaint and the Statute | 80-16 (Monopolization) (Matthew Bender, 2015). | |
| 87 | Orion's Attempted Monopolization Instruction No. 2<br><br>Attempted Monopolization: The Purpose of the Statute | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-17 (Monopolization) (Matthew Bender, 2015). | 136-137 |
| 88 | Orion's Attempted Monopolization Instruction No. 3<br><br>Attempted Monopolization: The Elements of the Offense | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-18 (Monopolization) (Matthew Bender, 2015). | 138-140 |
| 89 | Orion's Attempted Monopolization Instruction No. 4<br><br>Attempted Monopolization: Parent Corporations and Wholly Owned Subsidiaries are a Single Enterprise | *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984); *Arandell Corp. v. Centerpoint Energy Servs.*, Inc., 900 F.3d 623, 631 (9th Cir. 2018). | 141-143 |
| 90 | Orion's Attempted Monopolization Instruction No. 5<br><br>Attempted Monopolization: First Element— Specific Intent to Achieve Monopoly | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-19 (Monopolization) (Matthew Bender, 2015). | 144-146 |
| 91 | Orion's Attempted Monopolization Instruction No. 6<br><br>Attempted Monopolization: Manner of Proof—Direct Evidence | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-20 (Monopolization) (Matthew Bender, 2015). | 147-148 |
| 92 | Orion's Attempted Monopolization Instruction No. 7<br><br>Attempted Monopolization: Manner of Proof—Indirect Evidence | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-21 (Monopolization) (Matthew Bender, 2015). | 149-150 |
| 93 | Orion's Attempted Monopolization Instruction No. 8<br><br>Attempted Monopolization: Monopoly Defined | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-22 (Monopolization) (Matthew Bender, 2015). | 151-154 |
| 94 | Orion's Attempted Monopolization Instruction No. 9<br><br>Attempted Monopolization: Relevant Market Defined | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-23 (Monopolization) (Matthew Bender, 2015). | 155-159 |
| 95 | Orion's Attempted Monopolization Instruction No. 10<br><br>Attempted Monopolization: Second Element—Interstate Commerce | Refers to prior instructions to avoid duplicative instructions. | 160 |

SMRH:4832-1239-1592.2

| NO. | TITLE | SOURCE AND AUTHORITIES | PAGE |
|---|---|---|---|
| 96 | Orion's Attempted Monopolization Instruction No. 11<br><br>Attempted Monopolization: Third Element—Anticompetitive Conduct | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-27 (Monopolization) (Matthew Bender, 2015). | 161-163 |
| 97 | Orion's Attempted Monopolization Instruction No. 12<br><br>Attempted Monopolization: Anticompetitive Conduct Defined | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-28 (Monopolization) (Matthew Bender, 2015). | 164-167 |
| 98 | Orion's Attempted Monopolization Instruction No. 13<br><br>Attempted Monopolization: Dangerous Probability of Success | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-29 (Monopolization) (Matthew Bender, 2015). | 168-170 |
| 99 | Orion's Attempted Monopolization Instruction No. 14<br><br>Attempted Monopolization: Factors in Determining Dangerous Probability | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-30 (Monopolization) (Matthew Bender, 2015). | 171-173 |
| 100 | Defendants' Proposed Instruction No. 24<br><br>Attempt To Monopolize--Elements | ABA, 3.D.1 | 174 |
| **Defendants' Proposed Instructions Regarding Attempted Monopolization** | | | |
| 101 | Defendants' Proposed Instruction No. 25<br><br>Attempt To Monopolize--Anticompetitive Conduct | ABA, 3.D.2, 3.A.9 (modified as instructed by Model Instructions to reflect attempted monopolization theory) | 175-176 |
| 102 | Defendants' Proposed Instruction No. 26<br><br>Attempt To Monopolize—Specific Intent | ABA 3.D.3 | 177 |
| 103 | Defendants' Proposed Instruction No. 27<br><br>Attempt To Monopolize--Relevant Market-General | ABA, 3.A.3 | 178 |
| 104 | Defendants' Proposed Instruction No. 28<br><br>Attempt To Monopolize--Relevant Product Market | ABA, 3.A.4 | 179-180 |
| 105 | Defendants' Proposed Instruction No. 29<br><br>Attempt To Monopolize--Relevant Product Market-Supply Substitutability | ABA, 3.A.5 | 181-182 |
| 106 | Defendants' Proposed Instruction No. 30<br><br>Attempt To Monopolize--Relevant Geographic Market | ABA, 3.A.6 | 183-184 |

| NO. | TITLE | SOURCE AND AUTHORITIES | PAGE |
|---|---|---|---|
| 107 | Defendants' Proposed Instruction No. 31<br><br>Attempt To Monopolize—Specific Intent (Continued) | ABA, 3.D.3 | 185 |
| 108 | Defendants' Proposed Instruction No. 32<br><br>Attempt To Monopolize--Dangerous Probability Of Success | ABA, 3.D.4, 3.A.2 (Combined as instructed by Model Instructions) | 186-187 |
| **Orion's Proposed Instructions Regarding Conspiracy to Monopolize** | | | |
| 109 | Orion's Conspiracy To Monopolize Instruction No. 1<br><br>Conspiracy To Monopolize: The Complaint And The Statute | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.03, Instr. 80-31 (Monopolization) (Matthew Bender, 2015). | 188-192 |
| 110 | Orion's Conspiracy To Monopolize Instruction No. 2<br><br>Conspiracy To Monopolize: The Purpose of The Statute | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.03, Instr. 80-32 (Monopolization) (Matthew Bender, 2015) | 193-194 |
| 111 | Orion's Conspiracy To Monopolize Instruction No. 3<br><br>Conspiracy To Monopolize: Elements Of The Offense | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.03, Instr. 80-34 (Monopolization) (Matthew Bender, 2015 | 195-197 |
| 112 | Orion's Conspiracy To Monopolize Instruction No. 4<br><br>Conspiracy To Monopolize: Parent Corporations And Wholly Owned Subsidiaries Are A Single Enterprise | *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984); *Arandell Corp. v. Centerpoint Energy Servs.*, Inc., 900 F.3d 623, 631 (9th Cir. 2018): | 198-200 |
| 113 | Orion's Conspiracy To Monopolize Instruction No. 5<br><br>Conspiracy To Monopolize: First Element—Conspiracy | Orion proposes this instruction to avoid duplicative instructions and to speed the jury instruction process. | 201 |
| 114 | Orion's Conspiracy To Monopolize Instruction No. 6<br><br>Conspiracy To Monopolize: The Required Object Of The Conspiracy | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.03, Instr. 80-35 (Monopolization) (Matthew Bender, 2015) | 202-207 |
| 115 | Orion's Conspiracy To Monopolize Instruction No. 7<br><br>Conspiracy To Monopolize: Interstate Commerce | Orion proposes this instruction to avoid duplicative instructions and to speed the jury instruction process. | 208 |

| NO. | TITLE | SOURCE AND AUTHORITIES | PAGE |
|-----|-------|------------------------|------|
| 116 | Orion's Conspiracy To Monopolize Instruction No. 8<br><br>Conspiracy To Monopolize: Joining The Conspiracy With The Intent To Monopolize | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.03, Instr. 80-39 (Monopolization) (Matthew Bender, 2015) | 209-213 |
| 117 | Orion's Conspiracy To Monopolize Instruction No. 9<br><br>Conspiracy To Monopolize: Manner Of Proof—Direct Evidence | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.03, Instr. 80-40 (Monopolization) (Matthew Bender, 2015) | 214-215 |
| 118 | Orion's Conspiracy To Monopolize Instruction No. 10<br><br>Conspiracy To Monopolize: Indirect Evidence | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.04, Instr. 80-41 (Monopolization) (Matthew Bender, 2015) | 216-218 |
| 119 | Orion's Conspiracy To Monopolize Instruction No. 11<br><br>Conspiracy To Monopolize: Commission Of An Act In Furtherance Of The Conspiracy | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.03, Instr. 80-42 (Monopolization) (Matthew Bender, 2015) | 219-221 |
| **Defendants' Proposed Instructions Regarding Conspiracy to Monopolize** | | | |
| 120 | Defendants' Proposed Instruction No. 33<br><br>Conspiracy To Monopolize—Elements | ABA Ch. 3, Instruction E1 | 222-223 |
| 121 | Defendants' Proposed Instruction No. 34<br><br>Conspiracy To Monopolize—Existence Of Conspiracy | Defendants propose this instruction to avoid requiring the Court to repeat instructions above regarding the existence of an antitrust conspiracy. | 224 |
| 122 | Defendants' Proposed Instruction No. 35<br><br>Conspiracy To Monopolize—Monopoly Power Defined | ABA, Ch. 3, Instruction 2.A.2 | 225 |
| 123 | Defendants' Proposed Instruction No. 36<br><br>Conspiracy To Monopolize--Relevant Market-General | ABA, 3.A.3 (modified to reflect Conspiracy theory as instructed by Model Instructions) | 226 |
| 124 | Defendants' Proposed Instruction No. 37<br><br>Conspiracy To Monopolize—Relevant Product Market | ABA, 3.A.4 | 227-228 |
| 125 | Defendants' Proposed Instruction No. 38<br><br>Conspiracy To Monopolize—Relevant Product Market-Supply Substitutability | ABA, 3.A.5 | 229-230 |

| NO. | TITLE | SOURCE AND AUTHORITIES | PAGE |
|---|---|---|---|
| 126 | Defendants' Proposed Instruction No. 39<br><br>Conspiracy To Monopolize--Relevant Geographic Market | ABA, 3.A.6 | 231-232 |
| 127 | Defendants' Proposed Instruction No. 40<br><br>Conspiracy To Monopolize—Specific Intent | ABA, Ch. 3, Instruction E.4 | 233-234 |
| **Orion's Proposed Instructions Regarding Clayton Act § 7** | | | |
| 128 | Orion's Clayton Act Instruction No. 1<br><br>Clayton Act: The Complaint and the Statute | 3A Fed. Jury Prac. & Instr. § 150:110 (6th ed.). | 235 |
| 129 | Orion's Clayton Act Instruction No. 2<br><br>Clayton Act: Purpose of the Statute | *California v. Am. Stores Co.*, 495 U.S. 271, 284 (1990). | 237-238 |
| 130 | Orion's Clayton Act Instruction No. 3<br><br>Clayton Act: Elements of the Offense | 3A Fed. Jury Prac. & Instr. § 150:131 (6th ed.). | 239-240 |
| 131 | Orion's Clayton Act Instruction No. 4<br><br>Clayton Act: Violation of Section 7 of the Clayton Act | *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984); *Arandell Corp. v. Centerpoint Energy Servs.*, Inc., 900 F.3d 623, 631 (9th Cir. 2018). | 241-242 |
| 132 | Orion's Clayton Act Instruction No. 5<br><br>Clayton Act: Relevant Market | Refers to prior instructions to avoid duplicative instructions. | 243 |
| 133 | Orion's Clayton Act Instruction No. 6<br><br>Clayton Act: Effect of Acquisition | 3A Fed. Jury Prac. & Instr. § 150:134 (6th ed.). | 244-246 |
| 134 | Orion's Clayton Act Instruction No. 7<br><br>Clayton Act: Mere Acquisition Not Violation | 3A Fed. Jury Prac. & Instr. § 150:135 (6th ed.). | 254 |
| **Defendants' Proposed Instructions Regarding Section 7 of the Clayton Act** | | | |
| 135 | Defendants' Proposed Instruction No. 41<br>Section 7-Essential Elements | 3A Fed. Jury Prac. & Instr. § 150:130 (6th ed.). | 255-256 |
| 136 | Defendants' Proposed Instruction No. 42<br>Violation of Section 7 of the Clayton Act | 3A Fed. Jury Prac. & Instr. § 150:131 (6th ed.). | 258 |
| 137 | Defendants' Proposed Instruction No. 43<br>Section 7 – Relevant Line of Commerce | 3A Fed. Jury Prac. & Instr. § 150:132 (6th ed.). | 259 |
| 138 | Defendants' Proposed Instruction No. 44<br>Section 7 – Section of the Country | 3A Fed. Jury Prac. & Instr. § 150:133 (6th ed.). | 263 |
| 139 | Defendants' Proposed Instruction No. 45<br>Section 7 Effect of Acquisition | 3A Fed. Jury Prac. & Instr. § 150:134 (6th ed.). | 264 |
| 140 | Defendants' Proposed Instruction No. 46<br>Section 7-Mere Acquisition Not Violation | 3A Fed. Jury Prac. & Instr. § 150:135 (6th ed.). | 265 |

| NO. | TITLE | SOURCE AND AUTHORITIES | PAGE |
|---|---|---|---|
| | **Plaintiff's Proposed Instructions Regarding Cartwright Act** | | |
| 141 | Orion's Cartwright Act Instruction No. 1<br><br>Cartwright Act: The Complaint and the Statute | Cal. Bus. & Prof. Code § 16720. | 257-258 |
| 142 | Orion's Cartwright Act Instruction No. 2<br><br>Cartwright Act: Price and Credit Term Fixing | Judicial Council of California Civil Jury Instructions § 3400. | 259-261 |
| 143 | Orion's Cartwright Act Instruction No. 3<br><br>Cartwright Act: Allocation of Trade or Commerce | Judicial Council of California Civil Jury Instructions § 3401. | 262-264 |
| 144 | Orion's Cartwright Act Instruction No. 4<br><br>Cartwright Act: "Agreement" Explained | Judicial Council of California Civil Jury Instructions § 3406. | 265-266 |
| | **Orion's Proposed Instructions Regarding Injury and Damages** | | |
| 145 | Orion's Injury & Damages Instruction No. 1<br>Injury & Damages: Injury | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.04[4] (incorporating *id.* ¶ 79.02 Instr. 79-23) (Restraint of Trade) (Matthew Bender, 2015). | 267-268 |
| 146 | Orion's Injury & Damages Instruction No. 2<br><br>Injury & Damages: Causation | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.04[4] (incorporating *id.* ¶ 79.02 Instr. 79-24) (Restraint of Trade) (Matthew Bender, 2015). | 269-270 |
| 147 | Orion's Injury & Damages Instruction No. 3<br><br>Injury & Damages: Damages—Measure and Purpose | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.04[4] (incorporating *id.* ¶ 79.02 Instr. 79-25) (Restraint of Trade) (Matthew Bender, 2015). | 271-272 |
| 148 | Orion's Injury & Damages Instruction No. 4<br><br>Injury & Damages: Speculation | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.04[4] (incorporating *id.* ¶ 79.02 Instr. 79-26) (Restraint of Trade) (Matthew Bender, 2015). | 273-274 |
| 149 | Orion's Injury & Damages Instruction No. 5<br><br>Injury & Damages: Lost Profits | Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.04[4] (incorporating *id.* ¶ 79.02 Instr. 79-27) (Restraint of Trade) (Matthew Bender, 2015). | 275-276 |

| NO. | TITLE | SOURCE AND AUTHORITIES | PAGE |
|---|---|---|---|
| 150 | Orion's Injury & Damages Instruction No. 6<br><br>Injury & Damages: Punitive Damages | Judicial Council of California Civil Jury Instructions § 3946 | 277-279 |
| **Defendants' Proposed Instructions Regarding Causation and Damages** | | | |
| 151 | Injury and Causation | ABA Ch. 6, Part A. Instruction 1 | 280-281 |
| 152 | Business or Property | ABA Ch. 6, Part A. Instruction 2 | 282 |
| 153 | Antitrust Damages--Introduction and Purpose | ABA Ch. 6, Part B. Instruction 1 | 283 |
| 154 | Basis for Calculating Damages | ABA Ch. 6, Part B. Instruction 3 | 284 |
| 155 | Causation and Disaggregation | ABA Ch. 6, Part B. Instruction 4 | 285-286 |
| 156 | Damages for Purchasers-Overcharges Based on Horizontal Price Fixing, Output Restriction, Market A/location, or Other Agreements Not to Compete | ABA Ch. 6, Part B. Instruction 5 | 297 |
| 157 | Damages for Competitors-Lost Profits | ABA Ch. 6, Part B. Instruction 8 | 288 |
| 158 | Damages for Competitors-Future Lost Profits | ABA Ch. 6, Part B. Instruction 9 | 289-290 |
| 159 | Damages for Competitors-Going Concern Value or Goodwill | ABA Ch. 6, Part B. Instruction 10 | 291-292 |
| 160 | Damages for Competitors-Preparedness to Enter Business | ABA Ch. 6, Part B. Instruction 11 | 293-294 |
| 161 | Expert Testimony | ABA Ch. 6, Part B. Instruction 13 | 295 |
| 162 | Mitigation | ABA Ch. 6, Part B. Instruction 14 | 296-297 |
| 163 | Joint and Several Liability | ABA Ch. 6, Part B. Instruction 17 | 298-299 |

SMRH:4832-1239-1592.2

**PROPOSED INSTRUCTION NO. 1**

**DUTY OF JURY (COURT READS AND PROVIDES WRITTEN SET OF INSTRUCTIONS)**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

**AUTHORITY: 9th Cir. 1.2**

## PROPOSED INSTRUCTION NO. 2

## DUTY OF JURY (COURT READS INSTRUCTIONS AT THE BEGINNING OF TRIAL BUT DOES NOT PROVIDE WRITTEN COPIES)

Members of the jury: You are now the jury in this case.  It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions.  It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**AUTHORITY: 9th Cir. 1.3**

# PROPOSED INSTRUCTION NO. 3

## DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE)

Members of the jury: You are now the jury in this case.  It is my duty to instruct you on the law.

Members of the Jury: Now that you have heard all of the evidence [and the arguments of the attorneys], it is my duty to instruct you on the law that applies to this case.

[A copy of these instructions will be sent to the jury room for you to consult during your deliberations.]

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**AUTHORITY: 9th Cir. 1.4**

1

2

**PROPOSED INSTRUCTION NO. 4**

**CLAIMS AND DEFENSES**

3

4

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

5

6

7

8

9

10

11

12

The plaintiff asserts that Defendants violated the antitrust laws in three ways.  First, the plaintiff claims that the Defendants participated in a conspiracy with Suzhou Synta to fix the price of telescopes.  Second, the plaintiff claims that the Defendants participated in a conspiracy with Suzhou Synta to allocate product markets for telescopes.  Third, the plaintiff claims that the Defendants unreasonably conspired with Suzhou Synta to prevent the plaintiff from acquiring certain assets, which you will hear referred to in this trial as the Hayneedle Assets.  The plaintiff claims that each of these three alleged violations caused injury to its business, resulting in damages.  The plaintiff has the burden of proving each of these claims.

13

14

15

16

17

Defendants deny that they committed any of these violations.  They deny that there was a conspiracy to fix the prices of telescopes.  They deny that there was a conspiracy to allocate product markets for telescopes.  And they deny that there was a conspiracy to prevent the plaintiff from acquiring the Hayneedle Assets.  They also argue that there was no injury to the plaintiff's business, and that the plaintiff is not entitled to any damages.

18

19

**AUTHORITY: 9th Cir. 1.5**

20

21

22

23

24

25

26

27

28

**PROPOSED INSTRUCTION NO. 5**

**BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**AUTHORITY: 9th Cir. 1.6**

## PROPOSED INSTRUCTION NO. 6

## TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS

You should decide the case as to each defendant separately. Unless otherwise stated, the instructions apply to all parties.

**AUTHORITY: 9th Cir. 1.8**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PROPOSED INSTRUCTION NO. 7**

### **WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I may instruct you to accept as proved.

**AUTHORITY: 9th Cir. 1.9**

# PROPOSED INSTRUCTION NO. 8

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)      Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)      Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)      Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered.  In addition some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)      Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**AUTHORITY: 9th Cir. 1.10**

## PROPOSED INSTRUCTION NO. 9

## EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [describe purpose] and not for any other purpose.

**AUTHORITY: 9th Cir. 1.11**

**PROPOSED INSTRUCTION NO. 10**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

**AUTHORITY: 9th Cir. 1.12**

## PROPOSED INSTRUCTION NO. 11

## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**AUTHORITY: 9th Cir. 1.13**

## PROPOSED INSTRUCTION NO. 12

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

SMRH:4832-1239-1592.2

1

**<u>AUTHORITY: 9th Cir. 1.14</u>**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROPOSED INSTRUCTION NO. 13

## CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:  do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it[,although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the

1   trial.  Also, do not do any research about this case, the law, or the people involved—including the

2   parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read

3   or hear anything touching on this case in the media, turn away and report it to me as soon as

4   possible.

5        These rules protect each party's right to have this case decided only on evidence that has

6   been presented here in court.  Witnesses here in court take an oath to tell the truth, and the

7   accuracy of their testimony is tested through the trial process.  If you do any research or

8   investigation outside the courtroom, or gain any information through improper communications,

9   then your verdict may be influenced by inaccurate, incomplete or misleading information that has

10  not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial

11  jury, and if you decide the case based on information not presented in court, you will have denied

12  the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very

13  important that you follow these rules.

14       A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a

15  mistrial could result that would require the entire trial process to start over].  If any juror is

16  exposed to any outside information, please notify the court immediately.

17

18  **<u>AUTHORITY: 9th Cir. 1.15</u>**

19

20

21

22

23

24

25

26

27

28

## PROPOSED INSTRUCTION NO. 14

## PUBLICITY DURING TRIAL

If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

**AUTHORITY: 9th Cir. 1.16**

1

## **PROPOSED INSTRUCTION NO. 15**

2

## **NO TRANSCRIPT AVAILABLE TO JURY**

3        I urge you to pay close attention to the trial testimony as it is given.  During deliberations

4    you will not have a transcript of the trial testimony.

5

6    **AUTHORITY: 9th Cir. 1.17**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROPOSED INSTRUCTION NO. 16

2

## TAKING NOTES

3      If you wish, you may take notes to help you remember the evidence.  If you do take notes,

4  please keep them to yourself until you go to the jury room to decide the case.  Do not let

5  notetaking distract you.  When you leave, your notes should be left in the jury room.  No one will

6  read your notes.

7      Whether or not you take notes, you should rely on your own memory of the evidence.

8  Notes are only to assist your memory. You should not be overly influenced by your notes or those

9  of other jurors.

10

11  **AUTHORITY: 9th Cir. 1.18**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROPOSED INSTRUCTION NO. 17

### BENCH CONFERENCES AND RECESSES

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be

**AUTHORITY: 9th Cir. 1.20**

## PROPOSED INSTRUCTION NO. 18

## OUTLINE OF TRIAL

Trials proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross examine.  Then the defendant may present evidence, and counsel for the plaintiff may cross examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

**AUTHORITY: 9th Cir. 1.21**

**PROPOSED INSTRUCTION NO. 19**

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

**AUTHORITY: 9th Cir. 2.4**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROPOSED INSTRUCTION NO. 20

## TRANSCRIPT OF RECORDING IN FOREIGN LANGUAGE

You are about to watch a recording in Mandarin Chinese.  Each of you has been given a transcript of the recording that has been admitted into evidence.  The transcript is an English-language translation of the recording.

Although some of you may know Mandarin Chinese, it is important that all jurors consider the same evidence.  The transcript is the evidence, not the foreign language spoken in the recording.  Therefore, you must accept the interpreter's translation contained in the transcript and disregard any different meaning of the non-English words.

**AUTHORITY: 9th Cir. 2.6**

**PROPOSED INSTRUCTION NO. 21**

**FOREIGN LANGUAGE TESTIMONY**

You are about to hear testimony of a witness who will be testifying in Mandarin Chinese. Witnesses who do not speak English or are more proficient in another language testify through an official court interpreter. Although some of you may know Mandarin Chinese, it is important that all jurors consider the same evidence. Therefore, you must accept the interpreter's translation of the witness's testimony. You must disregard any different meaning.

You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or party.

**AUTHORITY: 9th Cir. 2.8**

## PROPOSED INSTRUCTION NO. 22

## IMPEACHMENT EVIDENCE

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**AUTHORITY: 9th Cir. 2.9**

## PROPOSED INSTRUCTION NO. 23

## EXPERT OPINION

You are about to hear testimony from **[name]** who will testify to opinions and the reasons for **[his] [her]** opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**AUTHORITY: 9th Cir. 2.13**

1

## PROPOSED INSTRUCTION NO. 24

2

## CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

3      Certain charts and summaries not admitted into evidence may be shown to you in order to

4  help explain the contents of books, records, documents, or other evidence in the case.

5      Charts and summaries are only as good as the underlying evidence that supports them.

6  You should, therefore, give them only such weight as you think the underlying evidence deserves.

7

8  **AUTHORITY: 9th Cir. 2.14**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED INSTRUCTION NO. 25**

**CHARTS AND SUMMARIES IN EVIDENCE**

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

**AUTHORITY: 9th Cir. 2.15**

**PROPOSED INSTRUCTION NO. 26**

**EVIDENCE IN ELECTRONIC FORMAT**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room.  A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits.  You will also be provided with a paper list of all exhibits received in evidence.  You may request a paper copy of any exhibit received in evidence by sending a note through the bailiff.)  If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the bailiff, signed by your foreperson or by one or more members of the jury.  Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands on maintenance or instruction, a court technician may enter the jury room with bailiff present for the sole purpose of assuring that the only matter that is discussed is the technical problem.  When the court technician or any nonjuror is in the jury room, the jury shall not deliberate.  No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment.  Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case.  You may not use the computer for any other purpose. At  my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material.  Do not attempt to alter the computer to obtain access to such materials.  If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials.  Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

SMRH:4832-1239-1592.2

**AUTHORITY: 9th Cir. 2.16**

Case No. 5:16-cv-06370-EJD-VKD
DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**PROPOSED INSTRUCTION NO. 27**

**DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**AUTHORITY: 9th Cir. 3.1**

**PROPOSED INSTRUCTION NO. 28**

**CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications,

then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

**AUTHORITY: 9th Cir. 3.2**

## PROPOSED INSTRUCTION NO. 29

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**AUTHORITY: 9th Cir. 3.3**

1

2

## PROPOSED INSTRUCTION NO. 30

## RETURN OF VERDICT

3

A verdict form has been prepared for you.  After you have reached unanimous agreement

4

on a verdict, your foreperson should complete the verdict form according to your deliberations,

5

sign and date it, and advise the bailiff that you are ready to return to the courtroom.

6

7

**AUTHORITY: 9th Cir. 3.5**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ORION'S PROPOSED TRIAL INSTRUCTION NO. 1
## <u>SPECIAL INSTRUCTION RE REFUSAL TO APPEAR</u>

Peter Ni, the Chief Executive Officer of Ningbo Sunny Electronic Co., Ltd., Sunny Optics, Inc., and Meade Instruments Corp. has refused to appear to testify.  You may presume that his testimony would have been unfavorable to Defendants.

Sources and Authority:  *United States v. Noah*, 475 F.2d 688, 691 (9th Cir. 1973) ("The failure of a party to produce a material witness who could elucidate matters under investigation gives rise to a presumption that the testimony of that witness would be unfavorable to that party if the witness is peculiarly within the party's control."); *United States v. Leal-Del Carmen*, 697 F.3d 964, 974-75 (9th. Cir. 2012) (defendant entitled to adverse inference instruction where government deported key witness); *Miller v. Rykoff-Sexton, Inc*., 845 F.2d 209, 212 (9th Cir. 1988) (District Court did not abuse discretion in issuing missing witness instruction regarding witness within party's control).

**Defendants' Objection:** Plaintiff has created a bespoke and unnecessary "special" instruction that is not based on any set of model instructions (much less a model instruction approved by the Ninth Circuit).  Plaintiff does not identify any previous instance of its proposed instruction being given in a civil antitrust case (or any case).  Such an instruction is not proper under the circumstances.  *See* Def.s' Mot. in Limine 9 to Prohibit Pl. from Attempting to Draw an Adverse Inference from the Absence at Trial of Mr. Peter Ni, ECF No. 325; Def.s' Opp. to Pl.'s Mot. to Compel Def.s' CEO Peter Ni to Appear at Trial, ECF No. 336 at 8-9.

**Orion's Response:**  Contrary to Defendants' objection, Orion has provided cases where missing witness instructions have been given, including in civil cases.  Defendants do not explain why such an instruction would be inappropriate in the specific context of an antitrust case, and none is apparent.  Orion's request for this instruction is the subject of a pending motion before the Court (ECF No. 311), and Orion need not repeat its briefing on that motion here.

1

## ORION'S PRICE-FIXING INSTRUCTION NO. 1

2

## PRICE-FIXING: THE COMPLAINT AND THE STATUTE

3      Orion claims that Defendants have fixed prices. More specifically, Orion claims that

4   Defendants' CEO Peter Ni conspired with his competitor David Shen, the principal of Suzhou

5   Synta Optical Technology Co. Ltd., Synta Technology Corp., Nantong Schmidt Opto-Electrical

6   Technology Co., Ltd., Good Advance Industries Ltd., Celestron Acquisition LLC, Atlas E-

7   Commerce LLC, and SW Technology Corp. to (1) share pricing information and fix the price of

8   telescope manufacturing services, and (2) jointly withdraw credit from Orion to undermine

9   Orion's efforts to acquire the website Telescopes.com.

10      Defendants deny these allegations.

11      The law Orion has charged Defendants with violating is called Section 1 of the Sherman

12   Antitrust Act. That law says that "[e]very contract, combination . . . or conspiracy in restraint of

13   trade or commerce . . . is illegal."

14

15   **Redline:**

16

17   ~~The plaintiff~~ Orion claims that ~~the d~~Defendants have fixed prices. More specifically, ~~the~~

18   ~~plaintiff~~ Orion claims that ~~the d~~Defendants' CEO Peter Ni ~~(summarize price-fixing allegations in~~

19   ~~the complaint]~~conspired with his competitor David Shen, the principal of Suzhou Synta Optical

20   Technology Co. Ltd., Synta Technology Corp., Nantong Schmidt Opto-Electrical Technology Co.,

21   Ltd., Good Advance Industries Ltd., Celestron Acquisition LLC, Atlas E-Commerce LLC, and

22   SW Technology Corp. to (1) share pricing information and fix the price of telescope

23   manufacturing services, and (2) jointly withdraw credit from Orion to undermine Orion's efforts

24   to acquire the website Telescopes.com.

25      Defendant deny these allegations.

26      The law ~~the plaintiff~~ Orion has charged ~~the d~~Defendants with violating is called ~~s~~Section 1

27   of the Sherman Antitrust Act. That law says that "[e]very contract, combination . . . or conspiracy

28   in restraint of trade or commerce . . . is illegal."

1

2          **Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

3    Civil ¶ 79.02, Instr. 79-1 (Restraint of Trade) (Matthew Bender, 2015).

4

5          **Defendants' Objection:**  This proposed instruction is argumentative and does not

6    articulate a neutral and accurate summary of the claims in this case as defined by Orion's own

7    complaint.  For example, Orion does not allege a price-fixing conspiracy between two individuals,

8    Peter Ni and David Shen; it alleges a conspiracy between corporate entities.  Similarly, Orion's

9    assertion that David Shen is the "principal" of various entities is argument, not fact, and one

10   Defendants intend to oppose at trial.  Moreover, Orion does not allege a conspiracy to "share

11   pricing information."

12          Further, it does not make sense to mix and match between two different sets of model

13   instructions, because model instructions are designed to be used together.  Defendants have

14   proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of

15   model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as

16   the authoritative source for this purpose among antitrust practitioners—with no substantive

17   modifications or argument.  Defendants submit that the ABA instructions are both more complete

18   statements of the law, and presented more efficiently in fewer instructions, than the "Modern

19   Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover,

20   the model instructions used by Orion include certain instructions that are demonstrably improper

21   as a matter of law, as explained in several of Defendants' other objections.

22

23          **Orion's Response:** The model instruction requires that it be modified to "summarize

24   price-fixing allegation in the complaint."  The proposed instruction does so, and the portion

25   Defendants complain about clearly qualifies the complaint's allegation as just that: "Orion claims .

26   . . ."

27          Defendants' conclusory assertion that the ABA model instructions are "the authoritative

28   source" of jury instructions—advanced without any citation supporting the claim—is not true.

1   The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

2   by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

3   the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

4   Indeed, instructions from the Modern Federal Jury Instructions source have been used in

5   significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

6   *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

7   "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

8   *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pg. 2-3

9   "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

10        The model instructions provided by the Modern Federal Jury Instructions treatise are

11   superior because they communicate the law to the jury in far simpler and more efficient manner

12   than the ABA model instructions.  The jury is going to be presented a significant number of

13   instructions, which counsels in favor of brevity and simplicity.

14        Defendants' failure to modify the ABA instructions to fit the facts of this case where the

15   ABA model instructions themselves direct that such modification should be made does not

16   counsel in favor of selecting Defendants' proposed instructions.

17        Finally, Defendant's assertion that "it does not make sense to mix and match between two

18   different sets of model instructions" is belied by the fact that Defendants' own proposed

19   instructions use multiple model instruction sources.  The fact is that none of the sources approved

20   by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

21   Orion is asserting.

22

23

24

25

26

27

28

## ORION'S PRICE-FIXING INSTRUCTION NO. 2
## PRICE-FIXING: THE PURPOSE OF THE STATUTE

The purpose of the Sherman Act is to preserve and encourage free and open business competition so that the public may receive better goods and services at a lower cost. Congress has determined that price restraints among competitors are bad for commerce and therefore that arrangements among competitors which attempt to fix prices are illegal. It does not matter whether the prices agreed upon are reasonable. Nor does it matter whether prices are actually affected by the agreement. Nor does it matter that the prices are fixed in order to achieve some socially desirable goal.

Thus, a price-fixing conspiracy cannot be justified on the ground that it was formed to prevent or halt ruinous competition, or to eliminate the evils of price-cutting, or to give each competitor what he conspirators think is its fair share of the market. The law forbids competitors from entering into any agreement which has as its purpose or predictable effect the fixing or restraining of prices.

Source and Authorities: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-2 (Restraint of Trade) (Matthew Bender, 2015) (unmodified).

**Defendants' Objection:** It does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together. Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as the authoritative source for this purpose among antitrust practitioners—with no substantive modifications or argument. Defendants submit that the ABA instructions are both more complete statements of the law, and presented more efficiently in fewer instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's proposed instructions. Moreover, the model instructions used by Orion include certain instructions that are demonstrably improper as a matter of law, as explained in several of Defendants' other objections.

1    **Orion's Response**: Defendants' conclusory assertion that the ABA model instructions are

2    "the authoritative source" of jury instructions—advanced without any citation supporting the

3    claim—is not true.  The Modern Federal Jury Instructions treatise Orion has used in preparing is

4    specifically approved by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury

5    Instructions, and the fact that the ABA model instruction appears first—in a list organized by

6    alphabetical order—is immaterial.  Indeed, instructions from the Modern Federal Jury Instructions

7    source have been used in significant antitrust cases in this District.  *See* Jury Instructions, *In Re:*

8    *TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8,

9    ("Bias of Witnesses", "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury

10   Instructions, *Smithkline Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24,

11   2011), pg. 2-3 "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485)

12   (Wilken, J.).

13       The model instructions provided by the Modern Federal Jury Instructions treatise are

14   superior because they communicate the law to the jury in far simpler and more efficient manner

15   than the ABA model instructions.  The jury is going to be presented a significant number of

16   instructions, which counsels in favor of brevity and simplicity.

17       Defendants' failure to modify the ABA instructions to fit the facts of this case where the

18   ABA model instructions themselves direct that such modification should be made does not

19   counsel in favor of selecting Defendants' proposed instructions.

20       Finally, Defendant's assertion that "it does not make sense to mix and match between two

21   different sets of model instructions" is belied by the fact that Defendants' own proposed

22   instructions use multiple model instruction sources.  The fact is that none of the sources approved

23   by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

24   Orion is asserting.

25

26

27

28

1

2

**ORION'S PRICE-FIXING INSTRUCTION NO. 3**

**PRICE-FIXING: ELEMENTS OF THE OFFENSE**

3      In order to prove its claim that Defendants engaged in illegal price-fixing, Orion must

4  prove, by a preponderance or greater weight of the evidence, each of the following four elements:

5           First, that Defendants entered into an agreement or conspiracy;

6           Second, that the purpose or predictable effect of this agreement or conspiracy was to fix

7  prices;

8           Third, that the agreement or conspiracy restrained or affected interstate or foreign

9  commerce; and

10          Fourth, that Orion was injured in its business or property as a result of Defendants' actions.

11          I will explain each of these elements to you.  Because Orion must show injury for all of its

12  claims, I will explain injury and damages to you at the end of these instructions.

13

14     **Redline:**

15

16      In order to prove its claim that ~~the d~~Defendants engaged in illegal price-fixing, ~~the plaintiff~~

17  Orion must prove, by a preponderance or greater weight of the evidence, each of the following

18  four elements:

19           First, that ~~the d~~Defendants entered into an agreement or conspiracy;

20           Second, that the purpose or predictable effect of this agreement or conspiracy was to fix

21  prices;

22           Third, that the agreement or conspiracy restrained or affected interstate ~~(or foreign)~~

23  commerce; and

24           Fourth, that ~~the plaintiff~~Orion was injured in its business or property as a result of ~~the~~

25  ~~d~~Defendants' actions.

26           I will explain each of these elements to you.  Because Orion must show injury for all of its

27  claims, I will explain injury and damages to you at the end of these instructions.

28

1      **Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

2      Civil ¶ 79.02, Instr. 79-3 (Restraint of Trade) (Matthew Bender, 2015).

3

4      **Defendants' Objection:**  It does not make sense to mix and match between two different

5      sets of model instructions, because model instructions are designed to be used

6      together.  Defendants have proposed the ABA Section of Antitrust model instructions on this

7      issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

8      antitrust cases and recognized as the authoritative source for this purpose among antitrust

9      practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

10     instructions are both more complete statements of the law, and presented more efficiently in fewer

11     instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

12     proposed instructions.  Moreover, the model instructions used by Orion include certain

13     instructions that are demonstrably improper as a matter of law, as explained in several of

14     Defendants' other objections.

15

16     **Orion's Response**: Defendants' conclusory assertion that the ABA model instructions are

17     "the authoritative source" of jury instructions—advanced without any citation supporting the

18     claim—is not true.  The Modern Federal Jury Instructions treatise Orion has used in preparing is

19     specifically approved by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury

20     Instructions, and the fact that the ABA model instruction appears first—in a list organized by

21     alphabetical order—is immaterial.  Indeed, instructions from the Modern Federal Jury Instructions

22     source have been used in significant antitrust cases in this District.  *See* Jury Instructions, *In Re:*

23     *TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8,

24     ("Bias of Witnesses", "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury

25     Instructions, *Smithkline Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24,

26     2011), pg. 2-3 "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485)

27     (Wilken, J.).

28

1    The model instructions provided by the Modern Federal Jury Instructions treatise are

2 superior because they communicate the law to the jury in far simpler and more efficient manner

3 than the ABA model instructions.  The jury is going to be presented a significant number of

4 instructions, which counsels in favor of brevity and simplicity.

5    Defendants' failure to modify the ABA instructions to fit the facts of this case where the

6 ABA model instructions themselves direct that such modification should be made does not

7 counsel in favor of selecting Defendants' proposed instructions.

8    Finally, Defendant's assertion that "it does not make sense to mix and match between two

9 different sets of model instructions" is belied by the fact that Defendants' own proposed

10 instructions use multiple model instruction sources.  The fact is that none of the sources approved

11 by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

12 Orion is asserting.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4832-1239-1592.2

## ORION'S PRICE-FIXING INSTRUCTION NO. 4

### <u>PRICE-FIXING: FIRST ELEMENT—CONSPIRACY DEFINED</u>

As I have just told you, the first element that Orion must prove is that Defendants entered into an unlawful agreement or conspiracy. This is important because the part of the Sherman Act we are concerned with outlaws certain joint activities by competitors, but not actions taken by a single firm or corporation.

Indeed, the word "conspiracy," which is used in the Sherman Act, means "together with" someone else. A conspiracy is formed when two or more people or corporations join together to accomplish some unlawful purpose by acting together. The essence of a conspiracy is an agreement between two or more people or corporations to violate or disregard the law.

Thus, in order to meet its burden of proof on the first element, Orion must prove that Defendants came to a common and mutual understanding with others to fix or attempt to fix prices.

**Redline:**

As I have just told you, the first element that ~~the plaintiff~~ Orion must prove is that ~~the d~~Defendants entered into an unlawful agreement or conspiracy. This is important because the part of the Sherman Act we are concerned with outlaws certain joint activities by competitors, but not actions taken by a single firm or corporation.

Indeed, the word "conspiracy," which is used in the Sherman Act, means "together with" someone else. A conspiracy is formed when two or more people or corporations join together to accomplish some unlawful purpose by acting together. The essence of a conspiracy is an agreement between two or more people or corporations to violate or disregard the law.

Thus, in order to meet its burden of proof on the first element, ~~the plaintiff~~ Orion must prove that ~~the d~~Defendants~~, either among themselves or with others,~~ came to a common and mutual understanding with others to ~~(~~fix or attempt to fix prices ~~or accomplish or attempt to accomplish an unlawful purpose)~~.

1     **Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

2     Civil ¶ 79.02, Instr. 79-4 (Restraint of Trade) (Matthew Bender, 2015).

3

4     **Defendants' Objection:**  This proposed instruction leaves out much of the content of the

5     analogous model instruction proposed by the ABA Section of Antitrust (the first source for

6     antitrust jury instructions recommended by the Ninth Circuit.  Defendants' proposed instruction,

7     which is simply the ABA model instruction without substantive modification, contains a more

8     complete statement of the law on this issue.

9     Further, it does not make sense to mix and match between two different sets of model

10    instructions, because model instructions are designed to be used together.  Defendants have

11    proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of

12    model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as

13    the authoritative source for this purpose among antitrust practitioners—with no substantive

14    modifications or argument.  Defendants submit that the ABA instructions are both more complete

15    statements of the law, and presented more efficiently in fewer instructions, than the "Modern

16    Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover,

17    the model instructions used by Orion include certain instructions that are demonstrably improper

18    as a matter of law, as explained in several of Defendants' other objections.

19

20    **Orion's Response:** The fact that the Modern Federal Jury Instructions are simpler and

21    briefer is a feature, not a bug.  Defendants do not identify any proposition of law that they contend

22    is missing.

23    Defendants' conclusory assertion that the ABA model instructions are "the authoritative

24    source" of jury instructions—advanced without any citation supporting the claim—is not true.

25    The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

26    by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

27    the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

28    Indeed, instructions from the Modern Federal Jury Instructions source have been used in

1   significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

2   *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

3   "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

4   *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pg. 2-3

5   "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

6      The model instructions provided by the Modern Federal Jury Instructions treatise are

7   superior because they communicate the law to the jury in far simpler and more efficient manner

8   than the ABA model instructions.  The jury is going to be presented a significant number of

9   instructions, which counsels in favor of brevity and simplicity.

10      Defendants' failure to modify the ABA instructions to fit the facts of this case where the

11   ABA model instructions themselves direct that such modification should be made does not

12   counsel in favor of selecting Defendants' proposed instructions.

13      Finally, Defendant's assertion that "it does not make sense to mix and match between two

14   different sets of model instructions" is belied by the fact that Defendants' own proposed

15   instructions use multiple model instruction sources.  The fact is that none of the sources approved

16   by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

17   Orion is asserting.

**ORION'S PRICE-FIXING INSTRUCTION NO. 5**

**PRICE-FIXING: CREDIT TERM FIXING**

The law considers credit terms—that is, the amount of interest charged on a purchase—to be an indispensable part of the price of a good or service terms because credit terms determine how much money is actually paid for the good or service.  An agreement between horizontal competitors to terminate the practice of giving credit is therefore automatically illegal.

Accordingly, Orion may meet its burden of proof on the first element by proving, by a preponderance of the evidence, that Defendants came to a common and mutual understanding with others to fix or attempt to fix credit terms.

**Source and Authorities**: *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 648 (1980):

> It is virtually self-evident that extending interest-free credit for a period of time is equivalent to giving a discount equal to the value of the use of the purchase price for that period of time. Thus, credit terms must be characterized as an inseparable part of the price. An agreement to terminate the practice of giving credit is thus tantamount to an agreement to eliminate discounts, and thus falls squarely within the traditional per se rule against price fixing. While it may be that the elimination of a practice of giving variable discounts will ultimately lead in a competitive market to corresponding decreases in the invoice price, that is surely not necessarily to be anticipated. It is more realistic to view an agreement to eliminate credit sales as extinguishing one form of competition among the sellers. In any event, when a particular concerted activity entails an obvious risk of anticompetitive impact with no apparent potentially redeeming value, the fact that a practice may turn out to be harmless in a particular set of circumstances will not prevent its being declared unlawful per se.
> . . .
> Thus, under the reasoning of our cases, an agreement among competing wholesalers to refuse to sell unless the retailer makes payment in cash either in advance or upon delivery is "plainly anticompetitive." Since it is merely one form of price fixing, and since price-fixing agreements have been adjudged to lack any "redeeming virtue," it is conclusively presumed illegal without further examination under the rule of reason.

*Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 648–50 (1980)) (per curium).

**Defendants' Objection:**  Orion has created this instruction from whole cloth.  Defendants have proposed a model ABA Antitrust instruction, without modification, that expressly identifies

credit term fixing as a species of price-fixing.  *See* Defendants' Proposed Instruction (Price-Fixing—General Elements).  Orion's special instruction is unnecessary and inappropriate.

  **Orion's Response:**  Orion has not created this instruction from whole cloth, but rather from binding Supreme Court precedent.  Credit term fixing is uniquely at issue in this case, and it is not apparent to the layperson that fixing credit terms is the same as price-fixing.  An instruction on this issue is therefore warranted. The inclusion of the word 'credit' in Defendants' proposed instructions is not sufficient to clarify the issue.

## ORION'S PRICE-FIXING INSTRUCTION NO. 6

## <u>PRICE-FIXING: THE POSSIBLE PARTIES TO THE CONSPIRACY</u>

The first thing that is required for a conspiracy is at least two separate parties. This means that in order to find a conspiracy, you must find that at least one defendant agreed with one or more other parties, including but not necessarily limited to the other defendants, to carry out the illegal acts that the plaintiff claims they carried out.

A corporation cannot conspire with its own officers or employees. Nor can a corporation's employees conspire among themselves. This is because a corporation, its officers and employees are so closely related that they are deemed to share a common purpose and are considered by the law to be one actor. And, as I have told you, a single actor cannot violate this part of the Sherman Act. For similar reasons, a corporation cannot conspire with its wholly owned subsidiary. Like a corporation and its employees, a corporation and its wholly owned subsidiary share the same purpose and are, therefore, one actor under the law.

Because a wholly owned subsidiary and its parent company are one actor under the law, a wholly owned subsidiary is liable for the conduct of its conspiring parent company and sister companies, as well as or other members of the conspiracy, if it engages in coordinated activity in furtherance of the conspiracy.

**Redline:**

The first thing that is required for a conspiracy is at least two separate parties. This means that in order to find a conspiracy, you must find that at least one defendant agreed with one or more other parties, including but not necessarily limited to the other defendants, to carry out the illegal acts that the plaintiff claims they carried out.

A corporation cannot conspire with its own officers or employees. Nor can a corporation's employees conspire among themselves. This is because a corporation, its officers and employees are so closely related that they are deemed to share a common purpose and are considered by the law to be one actor. And, as I have told you, a single actor cannot violate this part of the Sherman

1  Act. For similar reasons, a corporation cannot conspire with its wholly owned subsidiary. Like a

2  corporation and its employees, a corporation and its wholly owned subsidiary share the same

3  purpose and are, therefore, one actor under the law.

4  Because a wholly owned subsidiary and its parent company are one actor under the law, a

5  wholly owned subsidiary is liable for the conduct of its conspiring parent company and sister

6  companies, as well as or other members of the conspiracy, if it engages in coordinated activity in

7  furtherance of the conspiracy.

8  (Where There Is a Factual Intra-Corporate Conspiracy Dispute)

9  In this case, however, there is a dispute whether _____ and _____ are in fact a

10  single business enterprise or are instead separate corporate entities capable of conspiring with each

11  other. It is for you to determine, on the basis of all the facts and circumstances, whether

12  _____ and _____ are separate and distinct corporate entities or a single, integrated

13  business enterprise.

14  In making this determination you may, of course, consider the extent of common

15  ownership of the firms. You may also consider the nature of their management. For example, do

16  the firms enjoy independent, day-to-day control of their businesses? Are they run by separate

17  managements? To what extent do they share a unity of purpose?

18  (Even if you find that _____ and _____ operated as a single entity, if you also

19  find that the purpose of integrating the firms was to eliminate competition between them, then you

20  must treat the firms as separate entities which are capable of conspiring with each other.)

21  **Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

22  Civil ¶ 79.02, Instr. 79-5 (Restraint of Trade) (Matthew Bender, 2015). (updated to reflect present

23  state of the law pursuant to *Arandell Corp. v. Centerpoint Energy Services, Inc*., 900 F.3d 623,

24  632 (9th Cir. 2018) ("A wholly owned subsidiary that engages in coordinated activity in

25  furtherance of the anticompetitive scheme of its parent and/or commonly owned affiliates is

26  deemed to engage in such coordinated activity with the purposes of the single "economic unit" of

27  which it is a part.")).

28

1     **Defendants' Objection:** Orion argues that as Sunny's subsidiary, Meade is liable for all of

2     Sunny's alleged conduct.  Orion is wrong as a matter of law.   The case Orion cites makes clear

3     that "*Copperweld* does not support holding a subsidiary liable for the parent's independent

4     conduct."  *Arandell Corp. v. Centerpoint Energy Serv., Inc.*, 900 F.3d 623, 633 (9th Cir. 2018).

5     An antitrust plaintiff is "still required to come forward with evidence that each defendant

6     independently participated in the enterprise's scheme, to justify holding that defendant liable as

7     part of the enterprise." *Id.*; *see also id.* (as with any defendant, "[p]laintiffs must put forth

8     evidence that [the subsidiary] engaged in anticompetitive conduct."); *In re Dynamic Random*

9     *Access Memory Antitrust Litig.*, No. M 02-1486-PJH, 2007 WL 9752971, at *5 (N.D. Cal. Feb. 20,

10    2007) (granting summary judgment to parent company because plaintiff failed to prove parent's

11    participation in the conspiracy beyond relationship to subsidiary).  Thus, this proposed instruction

12    is not an accurate statement of the law.

13         Further, it does not make sense to mix and match between two different sets of model

14    instructions, because model instructions are designed to be used together.  Defendants have

15    proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of

16    model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as

17    the authoritative source for this purpose among antitrust practitioners—with no substantive

18    modifications or argument.  Defendants submit that the ABA instructions are both more complete

19    statements of the law, and presented more efficiently in fewer instructions, than the "Modern

20    Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover,

21    the model instructions used by Orion include certain instructions that are demonstrably improper

22    as a matter of law, as explained in several of Defendants' other objections.

23         **Orion's Response**: Defendants are mischaracterizing the proposed modification to the

24    model instruction.  As Orion's citation in the Sources and Authorities section shows, Orion has

25    faithfully characterized the holding of *Arandell*, including its requirement that each subsidiary

26    must act in furtherance of the conspiracy to be liable.

27

28

1    *Arandell* was decided 2018.  Each of the model instructions approved by the Ninth Circuit

2    were published before *Arandell* was decided.  Defendants' contention that the jury should not be

3    instructed on *Arandell*'s holding invites error.

4         Defendants' citation of a district court opinion decided eleven years before the Ninth

5    Circuit issued its opinion in *Arandell* is not relevant to this issue.

6         Defendants' conclusory assertion that the ABA model instructions are "the authoritative

7    source" of jury instructions—advanced without any citation supporting the claim—is not true.

8    The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

9    by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

10   the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

11   Indeed, instructions from the Modern Federal Jury Instructions source have been used in

12   significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

13   *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

14   "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

15   *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pg. 2-3

16   "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

17        The model instructions provided by the Modern Federal Jury Instructions treatise are

18   superior because they communicate the law to the jury in far simpler and more efficient manner

19   than the ABA model instructions.  The jury is going to be presented a significant number of

20   instructions, which counsels in favor of brevity and simplicity.

21        Defendants' failure to modify the ABA instructions to fit the facts of this case where the

22   ABA model instructions themselves direct that such modification should be made does not

23   counsel in favor of selecting Defendants' proposed instructions.

24        Finally, Defendant's assertion that "it does not make sense to mix and match between two

25   different sets of model instructions" is belied by the fact that Defendants' own proposed

26   instructions use multiple model instruction sources.  The fact is that none of the sources approved

27   by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

28   Orion is asserting.

## ORION'S PRICE-FIXING INSTRUCTION NO. 7

## PRICE-FIXING: PROOF OF THE CONSPIRACY—PROVING THE AGREEMENT

In order to prove the conspiracy, it is not necessary for Orion to present direct proof of oral or written agreements. Very often in cases like this, such evidence is not available. You may find that the required agreement or conspiracy existed from the course of dealing between and among Defendants and their alleged co-conspirators, through the words they exchanged, or from their acts alone. What Orion must prove, by the preponderance of the evidence, is that the members of the conspiracy, in some manner, came to a mutual understanding to try to fix or attempt to fix prices or credit terms.

Orion does not have to show that all of the means or methods which were agreed upon to accomplish this goal were actually used. Nor does Orion have to show that all of the persons alleged to have been members of the claimed conspiracy were in fact members. What Orion must prove is that the claimed conspiracy was knowingly formed; that it was formed with the intention to accomplish, by joint action, price-fixing or credit-term fixing; and that two or more persons were knowingly members of that conspiracy.

**Redline:**

In order to prove the conspiracy, it is not necessary for ~~the plaintiff~~ Orion to present direct proof of oral or written agreements. Very often in cases like this, such evidence is not available. You may find that the required agreement or conspiracy existed from the course of dealing between ~~and (~~among~~) the d~~Defendants and their alleged co-conspirators, through the words they exchanged, or from their acts alone. What ~~the plaintiff~~ Orion must prove, by the ~~greater weight~~ preponderance of the evidence, is that the members of the conspiracy, in some manner, came to a mutual understanding to try to ~~(~~fix or attempt to fix prices or credit terms ~~or accomplish or try to accomplish a common and unlawful objective)~~.

~~The plaintiff~~ Orion does not have to show that all of the means or methods which were agreed upon to accomplish this goal were actually used. Nor does ~~the plaintiff~~ Orion have to show

that all of the persons alleged to have been members of the claimed conspiracy were in fact

members. What ~~the plaintiff~~ Orion must prove is that the claimed conspiracy was knowingly

formed; that it was formed with the intention to accomplish, by joint action, ~~(~~price-fixing or credit-

term fixing ~~or some unlawful purpose or some lawful purpose by unlawful means)~~; and that two or

more persons were knowingly members of that conspiracy.

**Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

Civil ¶ 79.02, Instr. 79-6 (Restraint of Trade) (Matthew Bender, 2015).

**Defendants' Objection:** It does not make sense to mix and match between two different

sets of model instructions, because model instructions are designed to be used

together.  Defendants have proposed the ABA Section of Antitrust model instructions on this

issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

antitrust cases and recognized as the authoritative source for this purpose among antitrust

practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

instructions are both more complete statements of the law, and presented more efficiently in fewer

instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

proposed instructions.  Moreover, the model instructions used by Orion include certain

instructions that are demonstrably improper as a matter of law, as explained in several of

Defendants' other objections.

**Orion's Response**: Defendants' conclusory assertion that the ABA model instructions are

"the authoritative source" of jury instructions—advanced without any citation supporting the

claim—is not true.  The Modern Federal Jury Instructions treatise Orion has used in preparing is

specifically approved by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury

Instructions, and the fact that the ABA model instruction appears first—in a list organized by

alphabetical order—is immaterial.  Indeed, instructions from the Modern Federal Jury Instructions

source have been used in significant antitrust cases in this District.  *See* Jury Instructions, *In Re:

TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8,

("Bias of Witnesses", "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury

1    Instructions, *Smithkline Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24,

2    2011), pg. 2-3 "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485)

3    (Wilken, J.).

4         The model instructions provided by the Modern Federal Jury Instructions treatise are

5    superior because they communicate the law to the jury in far simpler and more efficient manner

6    than the ABA model instructions.  The jury is going to be presented a significant number of

7    instructions, which counsels in favor of brevity and simplicity.

8         Defendants' failure to modify the ABA instructions to fit the facts of this case where the

9    ABA model instructions themselves direct that such modification should be made does not

10   counsel in favor of selecting Defendants' proposed instructions.

11        Finally, Defendant's assertion that "it does not make sense to mix and match between two

12   different sets of model instructions" is belied by the fact that Defendants' own proposed

13   instructions use multiple model instruction sources.  The fact is that none of the sources approved

14   by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

15   Orion is asserting.

16

17

18

19

20

21

22

23

24

25

26

27

28

## ORION'S PRICE-FIXING INSTRUCTION NO. 8
## PRICE-FIXING: JOINING THE CONSPIRACY—GENERALLY

In determining whether Orion has proved the first element, namely that a conspiracy existed of which Defendants were members, you should first determine, according to the instructions I have just given you, whether the conspiracy existed. If you conclude that the conspiracy did exist, you should next determine whether each defendant was a knowing member of the conspiracy.

Your determination whether each defendant knowingly joined the conspiracy must be based solely on the actions of each particular defendant. You should not consider what others may have said or done.

The membership of each defendant in the conspiracy must be established by evidence of its own conduct-by what it said or did.

In order to find that a defendant joined the conspiracy, you must find that it participated in the conspiracy and that it did so with knowledge of at least some of the conspiracy's unlawful purposes.

One may become a member of a conspiracy without full knowledge of all the details of the conspiracy. It is not necessary that a defendant be fully informed as to all the details of the conspiracy or its scope in order to be a member. However, a person who has no knowledge of a conspiracy, but who happens to act in a way which furthers some object or purpose of the conspiracy, is not a member of the conspiracy.

On the other hand, knowledge of the existence of a conspiracy without participation in the conspiracy is also insufficient to make a person a member of the conspiracy.

**Redline:**

In determining whether ~~the plaintiff~~ Orion has proved the first element, namely that a conspiracy existed of which ~~the d~~Defendants were members, you should first determine, according to the instructions I have just given you, whether the conspiracy existed. If you conclude that the

1    conspiracy did exist, you should next determine whether each defendant was a knowing member

2    of the conspiracy.

3         Your determination whether each defendant knowingly joined the conspiracy must be

4    based solely on the actions of each particular defendant. You should not consider what others may

5    have said or done.

6         The membership of each defendant in the conspiracy must be established by evidence of its

7    own conduct-by what it said or did.

8         In order to find that a defendant joined the conspiracy, you must find that it participated in

9    the conspiracy and that it did so with knowledge of at least some of the conspiracy's unlawful

10   purposes.

11        One may become a member of a conspiracy without full knowledge of all the details of the

12   conspiracy. It is not necessary that a defendant be fully informed as to all the details of the

13   conspiracy or its scope in order to be a member. However, a person who has no knowledge of a

14   conspiracy, but who happens to act in a way which furthers some object or purpose of the

15   conspiracy, is not a member of the conspiracy.

16        On the other hand, knowledge of the existence of a conspiracy without participation in the

17   conspiracy is also insufficient to make a person a member of the conspiracy.

18        Source and Authorities: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil

19   ¶ 79.02, Instr. 79-8 (Restraint of Trade) (Matthew Bender, 2015).

20

21        **Defendants' Objection:** It does not make sense to mix and match between two different

22   sets of model instructions, because model instructions are designed to be used

23   together.  Defendants have proposed the ABA Section of Antitrust model instructions on this

24   issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

25   antitrust cases and recognized as the authoritative source for this purpose among antitrust

26   practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

27   instructions are both more complete statements of the law, and presented more efficiently in fewer

28   instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

1   proposed instructions.  Moreover, the model instructions used by Orion include certain

2   instructions that are demonstrably improper as a matter of law, as explained in several of

3   Defendants' other objections.

4        **Orion's Response**: Defendants' conclusory assertion that the ABA model instructions are

5   "the authoritative source" of jury instructions—advanced without any citation supporting the

6   claim—is not true.  The Modern Federal Jury Instructions treatise Orion has used in preparing is

7   specifically approved by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury

8   Instructions, and the fact that the ABA model instruction appears first—in a list organized by

9   alphabetical order—is immaterial.  Indeed, instructions from the Modern Federal Jury Instructions

10  source have been used in significant antitrust cases in this District.  *See* Jury Instructions, *In Re:*

11  *TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8,

12  ("Bias of Witnesses", "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury

13  Instructions, *Smithkline Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24,

14  2011), pg. 2-3 "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485)

15  (Wilken, J.).

16       The model instructions provided by the Modern Federal Jury Instructions treatise are

17  superior because they communicate the law to the jury in far simpler and more efficient manner

18  than the ABA model instructions.  The jury is going to be presented a significant number of

19  instructions, which counsels in favor of brevity and simplicity.

20       Defendants' failure to modify the ABA instructions to fit the facts of this case where the

21  ABA model instructions themselves direct that such modification should be made does not

22  counsel in favor of selecting Defendants' proposed instructions.

23       Finally, Defendant's assertion that "it does not make sense to mix and match between two

24  different sets of model instructions" is belied by the fact that Defendants' own proposed

25  instructions use multiple model instruction sources.  The fact is that none of the sources approved

26  by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

27  Orion is asserting.

28

## ORION'S PRICE-FIXING INSTRUCTION NO. 9

### PRICE-FIXING: JOINING THE CONSPIRACY—TIME OF JOINING

A defendant who knowingly and voluntarily joins an existing conspiracy is charged with the same responsibility as if the defendant had been one of the originators or instigators of the conspiracy. Thus, any one of Defendants who you may find to have joined the conspiracy would be liable for any actions of other co-conspirators which were in furtherance of the conspiracy and which occurred during the existence of the conspiracy, regardless of the time that the particular defendant became a member of the conspiracy or the extent to which it participated in the conspiracy.

**Redline:**

A defendant who knowingly and voluntarily joins an existing conspiracy is charged with the same responsibility as if the defendant had been one of the originators or instigators of the conspiracy. Thus, any one of ~~the d~~Defendants who you may find to have joined the conspiracy would be liable for any actions of other co-conspirators which were in furtherance of the conspiracy and which occurred during the existence of the conspiracy, regardless of the time that the particular defendant became a member of the conspiracy or the extent to which it participated in the conspiracy.

**Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-9 (Restraint of Trade) (Matthew Bender, 2015).

**Defendants' Objection:** It does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together. Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as the authoritative source for this purpose among antitrust practitioners—with no substantive modifications or argument. Defendants submit that the ABA

1   instructions are both more complete statements of the law, and presented more efficiently in fewer

2   instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

3   proposed instructions.  Moreover, the model instructions used by Orion include certain

4   instructions that are demonstrably improper as a matter of law, as explained in several of

5   Defendants' other objections.

6       **Orion's Response**: Defendants' conclusory assertion that the ABA model instructions are

7   "the authoritative source" of jury instructions—advanced without any citation supporting the

8   claim—is not true.  The Modern Federal Jury Instructions treatise Orion has used in preparing is

9   specifically approved by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury

10  Instructions, and the fact that the ABA model instruction appears first—in a list organized by

11  alphabetical order—is immaterial.  Indeed, instructions from the Modern Federal Jury Instructions

12  source have been used in significant antitrust cases in this District.  *See* Jury Instructions, *In Re:*

13  *TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8,

14  ("Bias of Witnesses", "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury

15  Instructions, *Smithkline Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24,

16  2011), pg. 2-3 "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485)

17  (Wilken, J.).

18      The model instructions provided by the Modern Federal Jury Instructions treatise are

19  superior because they communicate the law to the jury in far simpler and more efficient manner

20  than the ABA model instructions.  The jury is going to be presented a significant number of

21  instructions, which counsels in favor of brevity and simplicity.

22      Defendants' failure to modify the ABA instructions to fit the facts of this case where the

23  ABA model instructions themselves direct that such modification should be made does not

24  counsel in favor of selecting Defendants' proposed instructions.

25      Finally, Defendant's assertion that "it does not make sense to mix and match between two

26  different sets of model instructions" is belied by the fact that Defendants' own proposed

27  instructions use multiple model instruction sources.  The fact is that none of the sources approved

28

1    by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

2    Orion is asserting.

SMRH:4832-1239-1592.2

1
2

**ORION'S PRICE-FIXING INSTRUCTION NO. 10**

**PRICE-FIXING: WITHDRAWAL FROM THE CONSPIRACY**

3   If you find that a defendant joined the alleged conspiracy, then you should presume that

4   the defendant remained a member of the conspiracy and therefore responsible for all actions in

5   furtherance of the conspiracy until the conspiracy was abandoned or the defendant withdrew from

6   it.

7   Defendants have introduced evidence that their alleged co-conspirators David Shen,

8   Suzhou Synta Optical Technology Co. Ltd., Synta Technology Corp., Nantong Schmidt Opto-

9   Electrical Technology Co., Ltd., Good Advance Industries Ltd., Celestron Acquisition LLC, Atlas

10  E-Commerce LLC, and SW Technology Corp. withdrew from the alleged conspiracy. Defendants

11  have the burden of convincing you, by the preponderance of the evidence, that these co-

12  conspirators so withdrew. In order for you to find that the co-conspirators withdrew from the

13  conspiracy, the evidence must show that the co-conspirators did some affirmative act inconsistent

14  with the object of the conspiracy, and that the co-conspirators communicated that they wwere

15  withdrawing in a manner reasonably designed to reach Defendants.

16  Even if a defendant withdraws from a conspiracy, it remains liable for any illegal acts it or

17  any other member of the conspiracy committed while the defendant was a member of the

18  conspiracy, up until the time of its withdrawal.

19

20  **Redline:**

21

22  If you find that a defendant joined the alleged conspiracy, then you should presume that

23  the defendant remained a member of the conspiracy and therefore responsible for all actions in

24  furtherance of the conspiracy until the conspiracy was abandoned or the defendant withdrew from

25  it.

26  The dDefendants [name of the defendant] haves introduced evidence that it their alleged

27  co-conspirators David Shen, Suzhou Synta Optical Technology Co. Ltd., Synta Technology Corp.,

28  Nantong Schmidt Opto-Electrical Technology Co., Ltd., Good Advance Industries Ltd., Celestron

1   Acquisition LLC, Atlas E-Commerce LLC, and SW Technology Corp. withdrew from the alleged

2   conspiracy. ~~The d~~Defendant~~s~~ ha~~s~~ve the burden of convincing you, by the ~~greater weight~~

3   preponderance of the evidence, that ~~it~~ these co-conspirators so withdrew. In order for you to find

4   that the ~~defendant~~ co-conspirators withdrew from the conspiracy, the evidence must show that the

5   ~~defendant~~ co-conspirators did some affirmative act inconsistent with the object of the conspiracy,

6   and that the ~~defendant~~ co-conspirators communicated that ~~it~~ they w~~ere~~as withdrawing in a

7   manner reasonably designed to reach ~~its co-conspirators~~Defendants.

8        Even if a defendant withdraws from a conspiracy, it remains liable for any illegal acts it or

9   any other member of the conspiracy committed while the defendant was a member of the

10  conspiracy, up until the time of its withdrawal. ~~However, if you find that the defendant withdrew~~

11  ~~from the conspiracy before [insert date four years before the filing of the complaint] and also find~~

12  ~~that the defendant did not later~~re-enter the conspiracy, then you must find in favor of that

13  ~~defendant.~~

14      **Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

15  Civil ¶ 79.02, Instr. 79-10 (Restraint of Trade) (Matthew Bender, 2015).

16

17      **Defendants' Objection:**  This proposed instruction has been substantially modified from

18  the model instruction to contain argument, including the identification of supposed "co-

19  conspirators" whom Orion has never alleged to be co-conspirators.  Orion has deleted an entire

20  paragraph explaining the effect of a withdrawal argument on liability.  The instruction also

21  misstates Defendants' arguments.  Defendants proposed instruction regarding withdrawal is the

22  unmodified ABA model and contains no argument.

23      Further, it does not make sense to mix and match between two different sets of model

24  instructions, because model instructions are designed to be used together.  Defendants have

25  proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of

26  model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as

27  the authoritative source for this purpose among antitrust practitioners—with no substantive

28  modifications or argument.  Defendants submit that the ABA instructions are both more complete

1   statements of the law, and presented more efficiently in fewer instructions, than the "Modern

2   Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover,

3   the model instructions used by Orion include certain instructions that are demonstrably improper

4   as a matter of law, as explained in several of Defendants' other objections.

5       **Orion's Response**: Orion listed all of the Synta Entities based upon an earlier objection

6   raised by Defendants in the parties' meet and confer that merely stating "Synta" would confuse the

7   jury.  Defendants cannot have it both ways, and Orion is entitled to have its claims presented to

8   the jury.

9       Contrary to Defendants' assertion, the only deleted material from the withdrawal paragraph

10  relates to circumstances where a defendant claims it withdrew from a conspiracy at a time before

11  the statute of limitations period begins.  Defendants have never asserted such an argument and

12  there are no facts to support instructing the jury on that theory.

13      Defendants' conclusory assertion that the ABA model instructions are "the authoritative

14  source" of jury instructions—advanced without any citation supporting the claim—is not true.

15  The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

16  by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

17  the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

18  Indeed, instructions from the Modern Federal Jury Instructions source have been used in

19  significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

20  *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

21  "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

22  *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pp. 2-3

23  "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

24      The model instructions provided by the Modern Federal Jury Instructions treatise are

25  superior because they communicate the law to the jury in far simpler and more efficient manner

26  than the ABA model instructions.  The jury is going to be presented a significant number of

27  instructions, which counsels in favor of brevity and simplicity.

28

1      Defendants' failure to modify the ABA instructions to fit the facts of this case where the

2   ABA model instructions themselves direct that such modification should be made does not

3   counsel in favor of selecting Defendants' proposed instructions.

4      Finally, Defendant's assertion that "it does not make sense to mix and match between two

5   different sets of model instructions" is belied by the fact that Defendants' own proposed

6   instructions use multiple model instruction sources.  The fact is that none of the sources approved

7   by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

8   Orion is asserting.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

## ORION'S PRICE-FIXING INSTRUCTION NO. 11

## PRICE-FIXING: SUCCESS IMMATERIAL—NEED ONLY AN OVERT ACT

3   If Orion proves, by a preponderance of the evidence, that a conspiracy existed and that one

4   or more of Defendants were members of it, then it is not necessary for Orion to prove that the

5   conspiracy was successful, so long as Orion proves that it suffered some damage because of the

6   conspiracy.

7   All Orion must show in terms of the actual carrying out of the conspiracy is that one of the

8   conspirators took some identifiable action to bring about the aims of the conspiracy. This action to

9   carry out the conspiracy need not be unlawful in and of itself, nor is it necessary that the action

10  accomplish the objective of the conspiracy. What Orion must show is that one of the conspirators

11  took some concrete action in furtherance of the conspiracy.

12

13  **Redline:**

14

15  If ~~the plaintiff~~ Orion proves, by a preponderance of the evidence, that a conspiracy existed

16  and that one or more of ~~the d~~Defendants were members of it, then it is not necessary for ~~the~~

17  ~~plaintiff~~ Orion to prove that the conspiracy was successful, so long as ~~the plaintiff~~ Orion proves

18  that it suffered some damage because of the conspiracy.

19  All ~~the plaintiff~~ Orion must show in terms of the actual carrying out of the conspiracy is

20  that one of the conspirators took some identifiable action to bring about the aims of the

21  conspiracy. This action to carry out the conspiracy need not be unlawful in and of itself, nor is it

22  necessary that the action accomplish the objective of the conspiracy. What ~~the plaintiff~~ Orion must

23  show is that one of the conspirators took some concrete action in furtherance of the conspiracy.

24  **Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

25  Civil ¶ 79.02, Instr. 79-11 (Restraint of Trade) (Matthew Bender, 2015).

26

27  **Defendants' Objection:**  It does not make sense to mix and match between two different

28  sets of model instructions, because model instructions are designed to be used

together.  Defendants have proposed the ABA Section of Antitrust model instructions on this

issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

antitrust cases and recognized as the authoritative source for this purpose among antitrust

practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

instructions are both more complete statements of the law, and presented more efficiently in fewer

instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

proposed instructions.  Moreover, the model instructions used by Orion include certain

instructions that are demonstrably improper as a matter of law, as explained in several of

Defendants' other objections.

**Orion's Response:** Defendants' conclusory assertion that the ABA model instructions are

"the authoritative source" of jury instructions—advanced without any citation supporting the

claim—is not true.  The Modern Federal Jury Instructions treatise Orion has used in preparing is

specifically approved by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury

Instructions, and the fact that the ABA model instruction appears first—in a list organized by

alphabetical order—is immaterial.  Indeed, instructions from the Modern Federal Jury Instructions

source have been used in significant antitrust cases in this District.  *See* Jury Instructions, *In Re:*

*TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8,

("Bias of Witnesses", "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury

Instructions, *Smithkline Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24,

2011), pp. 2-3 "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485)

(Wilken, J.).

The model instructions provided by the Modern Federal Jury Instructions treatise are

superior because they communicate the law to the jury in far simpler and more efficient manner

than the ABA model instructions.  The jury is going to be presented a significant number of

instructions, which counsels in favor of brevity and simplicity.

Defendants' failure to modify the ABA instructions to fit the facts of this case where the

ABA model instructions themselves direct that such modification should be made does not

counsel in favor of selecting Defendants' proposed instructions.

1    Finally, Defendant's assertion that "it does not make sense to mix and match between two

2  different sets of model instructions" is belied by the fact that Defendants' own proposed

3  instructions use multiple model instruction sources.  The fact is that none of the sources approved

4  by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

5  Orion is asserting.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ORION'S PRICE-FIXING INSTRUCTION NO. 12

## **PRICE-FIXING: THE PROHIBITION OF LEGAL MEANS TO AN ILLEGAL END**

The Sherman Act condemns every means to accomplish the objectives of a conspiracy to fix prices. It is not necessary that the acts committed to carry out this unlawful end be illegal themselves. Legal acts cannot be used to achieve an illegal end.

An act, harmless when done by one, may become a wrong when done together by two or more. A series of acts, each of which may be innocent in itself, may be wrongful if the direct result of them is to carry into effect an agreement whereby prices or credit terms are fixed. So a conspiracy to fix prices or credit terms is not lawful simply because it is carried into effect by a series of acts, each one of which is not objectionable.

**Redline:**

The Sherman Act condemns every means to accomplish the objectives of a conspiracy to (fix prices ~~or unreasonably restrain trade)~~. It is not necessary that the acts committed to carry out this unlawful end be illegal themselves. Legal acts cannot be used to achieve an illegal end.

An act, harmless when done by one, may become a wrong when done together by two or more. A series of acts, each of which may be innocent in itself, may be wrongful if the direct result of them is to carry into effect an agreement whereby (prices or credit terms are fixed ~~or the free flow of commerce is unreasonably obstructed)~~. So a conspiracy to (fix prices or credit terms~~or restrain trade)~~ is not lawful simply because it is carried into effect by a series of acts, each one of which is not objectionable.

**Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-12 (Restraint of Trade) (Matthew Bender, 2015).

**Defendants' Objection:**  Orion has substantively modified the model instruction to refer to "credit terms."  As noted Defendants have proposed a single model instruction explaining that credit terms can sometimes be a species of price-fixing.  See Defendants' Proposed Instruction

(PRICE-FIXING—GENERAL ELEMENTS).  Orion will be free to make that argument to the jury.  Constant modification of model instructions to reflect the idiosyncrasies of Orion's theories is unnecessary and inappropriate.

Further, it does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together.  Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as the authoritative source for this purpose among antitrust practitioners—with no substantive modifications or argument.  Defendants submit that the ABA instructions are both more complete statements of the law, and presented more efficiently in fewer instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover, the model instructions used by Orion include certain instructions that are demonstrably improper as a matter of law, as explained in several of Defendants' other objections.

**Orion's Response:** Defendants do not dispute that modifying this instruction to make clear that it applies to credit-term fixing as well as price-fixing is legally correct.  It is not clear to a layperson that credit-term fixing and price fixing are identical under the law, and the modest modification to the instruction is an appropriate clarification.

Defendants' conclusory assertion that the ABA model instructions are "the authoritative source" of jury instructions—advanced without any citation supporting the claim—is not true.  The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.  Indeed, instructions from the Modern Federal Jury Instructions source have been used in significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses", "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pp. 2-3 "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

1    The model instructions provided by the Modern Federal Jury Instructions treatise are

2 superior because they communicate the law to the jury in far simpler and more efficient manner

3 than the ABA model instructions.  The jury is going to be presented a significant number of

4 instructions, which counsels in favor of brevity and simplicity.

5    Defendants' failure to modify the ABA instructions to fit the facts of this case where the

6 ABA model instructions themselves direct that such modification should be made does not

7 counsel in favor of selecting Defendants' proposed instructions.

8    Finally, Defendant's assertion that "it does not make sense to mix and match between two

9 different sets of model instructions" is belied by the fact that Defendants' own proposed

10 instructions use multiple model instruction sources.  The fact is that none of the sources approved

11 by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

12 Orion is asserting.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ORION'S PRICE-FIXING INSTRUCTION NO. 13

## **PRICE-FIXING: CO-CONSPIRATORS NOT NAMED AS DEFENDANTS**

It is not necessary for a plaintiff to name as a defendant every person whom he claims participated in the unlawful agreement or conspiracy. A plaintiff injured by such an agreement may recover against one or all who participated. He may enforce his right of recovery against one, or some or all. However, in order to recover against any particular member of the conspiracy, the plaintiff must name that member as a defendant.

It does not matter that Orion did not join as a defendant someone who may have participated in causing the injury Orion claims. This is true even if it appears that the role of the unnamed participant may have been greater than that of those Orion did name as defendants.

**Redline:**

It is not necessary for a plaintiff to name as a defendant every person whom he claims participated in the unlawful agreement or conspiracy. A plaintiff injured by such an agreement may recover against one or all who participated. He may enforce his right of recovery against one, or some or all. However, in order to recover against any particular member of the conspiracy, the plaintiff must name that member as a defendant.

It does not matter that ~~the plaintiff~~ Orion did not join as a defendant someone who may have participated in causing the injury ~~the plaintiff~~ Orion claims. This is true even if it appears that the role of the unnamed participant may have been greater than that of those ~~the plaintiff~~ Orion did name as defendants.

Source and Authorities: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-13 (Restraint of Trade) (Matthew Bender, 2015).

**Defendants' Objection:** It does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together. Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

1  antitrust cases and recognized as the authoritative source for this purpose among antitrust

2  practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

3  instructions are both more complete statements of the law, and presented more efficiently in fewer

4  instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

5  proposed instructions.  Moreover, the model instructions used by Orion include certain

6  instructions that are demonstrably improper as a matter of law, as explained in several of

7  Defendants' other objections.

8      **Orion's Response:** Defendants' conclusory assertion that the ABA model instructions are

9  "the authoritative source" of jury instructions—advanced without any citation supporting the

10  claim—is not true.  The Modern Federal Jury Instructions treatise Orion has used in preparing is

11  specifically approved by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury

12  Instructions, and the fact that the ABA model instruction appears first—in a list organized by

13  alphabetical order—is immaterial.  Indeed, instructions from the Modern Federal Jury Instructions

14  source have been used in significant antitrust cases in this District.  *See* Jury Instructions, *In Re:*

15  *TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8,

16  ("Bias of Witnesses", "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury

17  Instructions, *Smithkline Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24,

18  2011), pp. 2-3 "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485)

19  (Wilken, J.).

20      The model instructions provided by the Modern Federal Jury Instructions treatise are

21  superior because they communicate the law to the jury in far simpler and more efficient manner

22  than the ABA model instructions.  The jury is going to be presented a significant number of

23  instructions, which counsels in favor of brevity and simplicity.

24      Defendants' failure to modify the ABA instructions to fit the facts of this case where the

25  ABA model instructions themselves direct that such modification should be made does not

26  counsel in favor of selecting Defendants' proposed instructions.

27      Finally, Defendant's assertion that "it does not make sense to mix and match between two

28  different sets of model instructions" is belied by the fact that Defendants' own proposed

1   instructions use multiple model instruction sources.  The fact is that none of the sources approved

2   by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

3   Orion is asserting.

**ORION'S PRICE-FIXING INSTRUCTION NO. 14**

**PRICE-FIXING: SECOND ELEMENT—THE PURPOSE OR EFFECT OF THE**

**CONSPIRACY WAS TO FIX PRICES**

If you find that an unlawful agreement or conspiracy existed, and that at least one of the named defendants was a member of the conspiracy, then you must consider the second element of the price-fixing charge, namely whether the purpose or predictable effect of the agreement was to fix prices or credit terms. Orion must prove, by a preponderance of the evidence, that the purpose or predictable effect of the conspiracy was to fix prices or credit terms-that is, to raise, lower, stabilize or conform prices or credit terms.

In considering whether Orion has met this burden, you should bear in mind that the antitrust laws are concerned with substance rather than form. Orion does not have to show that the arrangement explicitly fixed prices or credit terms. What Orion must show is that, given the context in which the agreement was made and its relationship to the pricing process, the agreement had the purpose or predictable effect of fixing prices or credit terms.

A conspiracy to fix prices or credit terms cannot be defended on the ground that the members of the conspiracy did not have the ability to affect prices or credit terms-that is, that they did not have enough power in their industry to have an effect on the industry's pricing scheme. Similarly, a price or credit term fixing agreement cannot be justified by showing that it actually worked to the public's benefit. The effect of a price-fixing arrangement on the public welfare is irrelevant. In short, any agreement having the purpose or predictable effect of fixing prices is automatically unlawful under the antitrust laws.


**Redline:**


If you find that an unlawful agreement or conspiracy existed, and that at least one of the named defendants was a member of the conspiracy, then you must consider the second element of the price-fixing charge, namely whether the purpose or predictable effect of the agreement was to fix prices or credit terms. ~~The plaintiff~~Orion must prove, by a preponderance ~~or greater weight~~ of

the evidence, that the purpose or predictable effect of the conspiracy was to fix prices or credit terms that is, to raise, lower, stabilize or conform prices or credit terms.

In considering whether the plaintiff Orion has met this burden, you should bear in mind that the antitrust laws are concerned with substance rather than form. The plaintiff Orion does not have to show that the arrangement explicitly fixed prices or credit terms. What the plaintiff Orion must show is that, given the context in which the agreement was made and its relationship to the pricing process, the agreement had the purpose or predictable effect of fixing prices or credit terms.

A conspiracy to fix prices or credit terms can not be defended on the ground that the members of the conspiracy did not have the ability to affect prices or credit terms that is, that they did not have enough power in their industry to have an effect on the industry's pricing scheme. Similarly, a price or credit term fixing agreement cannot be justified by showing that it actually worked to the public's benefit. The effect of a price-fixing arrangement on the public welfare is irrelevant. In short, any agreement having the purpose or predictable effect of fixing prices is automatically unlawful under the antitrust laws.

**Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-14 (Restraint of Trade) (Matthew Bender, 2015).

**Defendants' Objection:** Orion has substantively modified the model instruction to refer to "credit terms." As noted Defendants have proposed a single model instruction explaining that credit terms can sometimes be a species of price-fixing. *See* Defendants' Proposed Instruction (PRICE-FIXING—GENERAL ELEMENTS). Orion will be free to make that argument to the jury. Constant modification of other model instructions to reflect the idiosyncrasies of Orion's theories is unnecessary and inappropriate.

Further, it does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together. Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as

1   the authoritative source for this purpose among antitrust practitioners—with no substantive

2   modifications or argument.  Defendants submit that the ABA instructions are both more complete

3   statements of the law, and presented more efficiently in fewer instructions, than the "Modern

4   Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover,

5   the model instructions used by Orion include certain instructions that are demonstrably improper

6   as a matter of law, as explained in several of Defendants' other objections.

7

8        **Orion's Response:** Defendants do not dispute that modifying this instruction to make

9   clear that it applies to credit-term fixing as well as price-fixing is legally correct.  It is not clear to

10  a layperson that credit-term fixing and price fixing are identical under the law, and the modest

11  modification to the instruction is an appropriate clarification.

12       Defendants' conclusory assertion that the ABA model instructions are "the authoritative

13  source" of jury instructions—advanced without any citation supporting the claim—is not true.

14  The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

15  by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

16  the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

17  Indeed, instructions from the Modern Federal Jury Instructions source have been used in

18  significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

19  *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

20  "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

21  *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pp. 2-3

22  "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

23       The model instructions provided by the Modern Federal Jury Instructions treatise are

24  superior because they communicate the law to the jury in far simpler and more efficient manner

25  than the ABA model instructions.  The jury is going to be presented a significant number of

26  instructions, which counsels in favor of brevity and simplicity.

27

28

1    Defendants' failure to modify the ABA instructions to fit the facts of this case where the

2  ABA model instructions themselves direct that such modification should be made does not

3  counsel in favor of selecting Defendants' proposed instructions.

4    Finally, Defendant's assertion that "it does not make sense to mix and match between two

5  different sets of model instructions" is belied by the fact that Defendants' own proposed

6  instructions use multiple model instruction sources.  The fact is that none of the sources approved

7  by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

8  Orion is asserting.

SMRH:4832-1239-1592.2

## ORION'S PRICE-FIXING INSTRUCTION NO. 15

## <u>PRICE-FIXING: THIRD ELEMENT—INTERSTATE COMMERCE</u>

The third element Orion must prove, by a preponderance of the evidence, is that the restraint of trade complained of involved interstate or foreign commerce. Orion may prove this element in either one of two ways. First, Orion may show that Defendants' unlawful activities were imposed directly upon goods or services in the flow of interstate or foreign commerce. Second, and alternatively, Orion may show that the defendants' unlawful activities had a substantial effect on interstate commerce. Either method is sufficient, by itself, to establish that the defendants' activities involved interstate commerce. I will now explain the difference between these two ways of proving the interstate commerce element.

**Redline:**

The third element ~~the plaintiff~~ <u>Orion</u> must prove, by a preponderance of the evidence, is that the restraint of trade complained of involved interstate (<u>or foreign</u>) commerce. ~~The plaintiff~~ <u>Orion</u> may prove this element in either one of two ways. First, ~~the plaintiff~~ <u>Orion</u> may show that ~~the D~~<u>d</u>efendants' unlawful activities were imposed directly upon goods or services in the flow of interstate (<u>or foreign</u>) commerce. Second, and alternatively, ~~the plaintiff~~ <u>Orion</u> may show that the defendants' unlawful activities had a substantial effect on interstate commerce. Either method is sufficient, by itself, to establish that the defendants' activities involved interstate commerce. (<u>I will now explain the difference between these two ways of proving the interstate commerce element.</u>)

**Source and Authorities**: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.02, Instr. 79-20 (Restraint of Trade) (Matthew Bender, 2015).

**Defendants' Objection:**  It does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together.  Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

1   antitrust cases and recognized as the authoritative source for this purpose among antitrust

2   practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

3   instructions are both more complete statements of the law, and presented more efficiently in fewer

4   instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

5   proposed instructions.  Moreover, the model instructions used by Orion include certain

6   instructions that are demonstrably improper as a matter of law, as explained in several of

7   Defendants' other objections.

8

9        **Orion's Response:** Defendants do not dispute that modifying this instruction to make

10  clear that it applies to credit-term fixing as well as price-fixing is legally correct.  It is not clear to

11  a layperson that credit-term fixing and price fixing are identical under the law, and the modest

12  modification to the instruction is an appropriate clarification.

13       Defendants' conclusory assertion that the ABA model instructions are "the authoritative

14  source" of jury instructions—advanced without any citation supporting the claim—is not true.

15  The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

16  by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

17  the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

18  Indeed, instructions from the Modern Federal Jury Instructions source have been used in

19  significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

20  *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

21  "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

22  *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pp. 2-3

23  "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

24       The model instructions provided by the Modern Federal Jury Instructions treatise are

25  superior because they communicate the law to the jury in far simpler and more efficient manner

26  than the ABA model instructions.  The jury is going to be presented a significant number of

27  instructions, which counsels in favor of brevity and simplicity.

28

-80-

1   Defendants' failure to modify the ABA instructions to fit the facts of this case where the
2   ABA model instructions themselves direct that such modification should be made does not
3   counsel in favor of selecting Defendants' proposed instructions.

4   Finally, Defendant's assertion that "it does not make sense to mix and match between two
5   different sets of model instructions" is belied by the fact that Defendants' own proposed
6   instructions use multiple model instruction sources.  The fact is that none of the sources approved
7   by the Ninth Circuit Model Instructions provides model instructions for all of the claims that
8   Orion is asserting.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:16-cv-06370-EJD-VKD
SMRH:4832-1239-1592.2
DEFENDANTS' PROPOSED JURY INSTRUCTIONS

## DEFENDANTS' PROPOSED INSTRUCTION NO. 1
## SHERMAN ACT—PURPOSE

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.


**AUTHORITY: American Bar Association Antitrust Section, *Model Jury Instructions in Civil Antitrust Cases* (2016) (hereafter, "ABA"), Ch. 1, Part A. Instruction 1**


**Orion's Position:** Orion's instructions should be issued.  The model instructions provided by the Modern Federal Jury Instructions treatise are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

**DEFENDANTS' PROPOSED INSTRUCTIONS REGARDING PRICE-FIXING**

**DEFENDANTS' PROPOSED INSTRUCTION NO. 2**

**PRICE-FIXING--GENERAL ELEMENTS**

Now I am going to read you some instructions that apply specifically to Plaintiff's claim that it was injured because defendants conspired to fix the prices for telescopes.

Under the Sherman Act, it is illegal for competitors, regardless of their size or amount of sales, to agree on the prices to be charged for their competing products.

An agreement between competing firms can violate this rule even if there is not an agreement on the exact price to be charged. For example, it is illegal for competing companies to agree on maximum or minimum prices, a range within which prices will fall, a formula to set prices, or a component of prices, such as a shipping charge or an interest rate.

Any agreement among competitors to set a specific price or to set credit terms or other conditions of sale relating to price is illegal.

To prevail against a defendant on a price-fixing claim, plaintiff must prove, as to that particular defendant, each of the following elements by a preponderance of the evidence:

(1)    that an agreement to fix the prices of telescopes existed;

(2)    that defendant knowingly-that is, voluntarily and intentionally- became a party to that agreement;

(3)    that such agreement occurred in or affected interstate commerce; and

(4)    that the agreement caused plaintiff to suffer an injury to its business or property.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular defendant, then you must find for that defendant and against plaintiff on plaintiff's price-fixing claim. If you find that the evidence is sufficient to prove all four elements as to a particular defendant, then you must find for plaintiff and against that defendant on plaintiff's price-fixing claim.

**AUTHORITY: ABA Ch. 2, Part B. Instruction 1**

**Orion's Position:**

Defendants have failed to provide the Court with a redline to evaluate Defendants' alterations to the model instruction. For example, Defendants' unjustifiably delete the word "foreign" from the interstate commerce element, but fail to advise the Court of that deletion.

Defendants have failed to propose the inserts called for by the model instruction that would apply this instruction to the facts. For example, the model instruction includes brackets calling for description of Defendants' conspiracy: "[*describe the price-fixing conspiracy alleged by plaintiff*]." Defendants' proposal, fails to do so; instead, it merely inserts leaves the exemplars for description—set a specific price, to set credit terms—without any description as called for by the instruction.

The Court should issue Orion's proposed instructions on price-fixing, which adequately describe the allegation in this complex case to contextualize the issues for the jury. Orion has also provided redlines with its instructions so that the Court knows what it is ordering and how Orion's model instructions are modified.

Finally, the model instructions provided by the Modern Federal Jury Instructions and used by Orion treatise are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions. The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

**DEFENDANTS' PROPOSED INSTRUCTION NO. 3**

**CONSPIRACY--DEFINITION, EXISTENCE, AND EVIDENCE**

A conspiracy is an agreement or understanding between two or more persons to restrain trade in the ways alleged by Plaintiff.

Plaintiff must prove both of the following elements by a preponderance of the evidence:

(1)  that the alleged conspiracy existed; and

(2)  that defendant knowingly became a member of that conspiracy. To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

The basis of a conspiracy is an agreement or understanding between two or more persons. An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time such as where competitors  separately  accept invitations to participate in a plan to restrain trade. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by plaintiff were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor all the persons alleged to be members of the conspiracy were actually members. It is the agreement or understanding to restrain trade in the way alleged by plaintiff that constitutes a

1  conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or

2  failed.

3      Plaintiff may prove the existence of the alleged conspiracy through direct evidence,

4  circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish

5  the existence of the alleged conspiracy.

6      Direct evidence of an agreement may not be available, and therefore a conspiracy also may

7  be shown through circumstantial evidence. You may infer the existence of a conspiracy from the

8  circumstances, including what you find the alleged members actually did and the words they used.

9  Mere similarity of conduct among various persons, however, or the fact that they may have

10  associated with one another and may have met or assembled together, does not by itself establish

11  the existence of a conspiracy. If they acted similarly but independently of one another, without any

12  agreement among them, then there would not be a conspiracy.

13      In determining whether an agreement or understanding between two or more persons has

14  been proved, you must view the evidence as a whole and not piecemeal.

15

16  **AUTHORITY: ABA Ch. 2, Part A. Instruction 1**

17

18      **Orion's Position:**

19      Defendants have failed to provide the Court with a redline to evaluate Defendants'

20  alterations to the model instruction.  For example, Defendants have failed to propose inserts called

21  for by the model instruction that would apply this instruction to the facts.  For example, the model

22  instruction includes brackets calling for description of Defendants' conspiracy: "Plaintiff alleges

23  that defendant participated in a conspiracy to restrain trade by [*alleged conduct or restraint*]."

24  Defendants' proposal, however merely inserts (without redline alerting the Court to the

25  modification) that "defendant participated in three different conspiracies.")  That does not

26  adequately fulfill the model instruction's mandate.

27      The Court should issue Orion's proposed instructions on price-fixing, which adequately

28  describe the allegation in this complex case to contextualize the issues for the jury.  Orion has also

provided redlines with its instructions so that the Court knows what it is ordering and how Orion's model instructions are modified.

Finally, the model instructions provided by the Modern Federal Jury Instructions and used by Orion treatise are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

### DEFENDANTS' PROPOSED INSTRUCTION NO. 4

### CONSPIRACY--PARALLEL CONDUCT

Plaintiff contends that defendants engaged in similar conduct, namely sending emails to Plaintiff regarding Plaintiff's credit. Plaintiff further contends that this conduct, when considered with other evidence, shows that a conspiracy existed among defendants. The mere fact that defendants have sent similar emails to Plaintiff does not by itself establish the existence of a conspiracy among defendants. Their behavior may be no more than the result of the exercise of independent judgment in response to identical or similar market conditions. For example, everyone might open their umbrellas on a rainy day, but that similar behavior would not necessarily mean that they had agreed or conspired to open their umbrellas. A business may lawfully adopt the same prices, conditions of sale, or other practices, as its competitors as long as it does so independently and not as part of an agreement or understanding with one or more of its competitors. If defendants acted similarly but independently of one another, without any agreement or understanding between two or more of them, then there would not be a conspiracy.

You must decide whether defendants' similar conduct was, more probably than not, the result of an agreement or understanding among them. In doing so, you may consider defendants' similar conduct along with other evidence. You may infer that a conspiracy existed only if you find that the evidence, when viewed as a whole, makes it more likely that defendants had an agreement or understanding with one another than that they acted independently of one another, In making this determination, you should consider the similar conduct against the entire background in which it took place. The evidence, when viewed all together, must satisfy you that it is more likely that defendants' similar actions were the product of an agreement or understanding with one another than their own independent decisions.

If after considering all of the evidence, you conclude that plaintiff has shown that it was more likely than not that defendants' similar conduct was the result of an agreement or understanding among them than their independent decisions, you must find for plaintiff on the question of whether defendants participated in a conspiracy. If, after considering all of the evidence, you conclude that plaintiff failed to prove that a defendant's similar conduct was more

1    likely than not the result of an agreement or understanding with one or more of the other

2    defendants, then you must find against plaintiff and in favor of that defendant on the question of

3    whether that defendant participated in a conspiracy.

4

5    **AUTHORITY: ABA Ch. 2, Part A. Instruction 2**

6         **Orion's Position:**

7         Orion objects to this instruction.  As the notes to this instruction state, "[t]his instruction is

8    instruction is appropriate for a case in which plaintiff is attempting to prove the existence of a

9    conspiracy solely through ambiguous circumstantial evidence of parallel conduct. It may be

10   inappropriate for cases where unambiguous, direct evidence of a conspiracy is present."

11        In this case, Orion has adduced considerable direct evidence of conspiracy, including

12   emails discussing colluding to prevent competitors to acquire Meade, and emails discussing how

13   Sunny, Synta, Meade, and Celestron were to cooperate for the benefit of all of the companies.  The

14   instruction is therefore inappropriate.

15        Finally, the model instructions provided by the Modern Federal Jury Instructions and used

16   by Orion treatise are superior because they communicate the law to the jury in far simpler and

17   more efficient manner than the ABA model instructions.  The jury is going to be presented a

18   significant number of instructions, which counsels in favor of brevity and simplicity.

19

20

21

22

23

24

25

26

27

28

## **DEFENDANTS' PROPOSED INSTRUCTION NO. 5**

## **CORPORATIONS**

Under the law, a corporation is a person, but it acts only through its agents. A corporation's agents include its directors, officers, employees, or others acting on its behalf. A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries. Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.

Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties the agent has general authority to perform. Apparent authority is the authority that persons outside the corporation could reasonably believe the agent would have, judging from his or her position with the company, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct. An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, or anticompetitive manner.

To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment with apparent authority.

The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.

A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence. All persons, including corporations, are equal before the law.

**AUTHORITY: ABA Ch. 2, Part A. Instruction 3**

**Orion's Position:** Orion objects to this instruction as unnecessary because the issue is covered by instructions specifically set forth in the Ninth Circuit Model Instructions.  If Defendants want the jury instructed on the rights of Corporations, the Court should issue Ninth Circuit Model Instructions 4.1 and 4.2, which are specifically approved by the Ninth Circuit. Orion would not object to the inclusion of these instructions.

Finally, the model instructions provided by the Modern Federal Jury Instructions and used by Orion treatise are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

1
2

## DEFENDANTS' PROPOSED INSTRUCTION NO. 6
## CONSPIRACY--PARTICIPATION AND INTENT

3    Before you can find that defendant was a member of the conspiracy alleged by plaintiff,

4    the evidence must show that defendant knowingly joined in the unlawful plan at its inception, or at

5    some later time, with the intent to further the purpose of the conspiracy.

6    To act knowingly means to participate deliberately and not because of mistake, accident, or

7    other innocent reason. A person may become a member of a conspiracy without full knowledge of

8    all the details of the conspiracy, the identity of all its members, or the parts they played.

9    Knowledge of the essential nature of the plan is enough. On the other hand, a person who has no

10   knowledge of a conspiracy, but happens to act in a way that helps the conspiracy succeed, does not

11   thereby become a conspirator.

12   A person who knowingly joins an existing conspiracy, or who participates only in part of a

13   conspiracy with knowledge of the overall conspiracy, is just as responsible as if he or she had been

14   one of those who formed or began the conspiracy and participated in every part of it.

15   In determining whether a defendant was a member of the alleged conspiracy, you should

16   consider only the evidence about that particular defendant's statements and conduct, including any

17   evidence of that defendant's knowledge and participation in the events involved and any other

18   evidence of that particular defendant's participation in the conspiracy alleged.

19   You may not find that a defendant was a member of a conspiracy based only on its

20   association with or knowledge of wrongdoing, but it is a factor you may consider to determine

21   whether a defendant was a member of the alleged conspiracy.

22   If you find that the alleged conspiracy existed, then the acts and statements of the

23   conspirators are binding on all of those whom you find were members of the conspiracy.

24   Once you have found that a defendant is a member of a conspiracy, he, she, or it is

25   presumed to remain a member and is responsible for all actions taken by all coconspirators during

26   and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or

27   abandoned or that the person has withdrawn from the conspiracy.

28

**AUTHORITY: ABA Ch. 2, Part A. Instruction 4**

**Orion's Position:**

Defendants have failed to provide the Court with a redline to evaluate Defendants' alterations to the model instruction.  For example, Defendants' deleted the final paragraph of the model instruction without advising the Court, which is a material edit.  Indeed, the deleted paragraph is clearly warranted on the facts of this case:

> [*Although a defendant who was a member of a conspiracy may withdraw from and abandon the conspiracy, that defendant is still liable with all other coconspirators for any illegal acts committed by that defendant or by any coconspirator while that defendant was a member of the conspiracy up until the time of that defendant's withdrawal from the conspiracy.*]

Defendants' omission of a redline disclosing this material edit is an attempt to gain a litigation advantage.  Orion has repeatedly insisted that redlines should be provided throughout the pretrial period, meaning that Defendants' refusal to provide a redline is knowing and intentional.

Finally, the model instructions provided by the Modern Federal Jury Instructions and used by Orion treatise are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

# DEFENDANTS' PROPOSED INSTRUCTION NO. 7

## CONSPIRACY—WITHDRAWAL

To find that a defendant has withdrawn from or abandoned a conspiracy, the evidence must show that defendant:

(1)     undertook affirmative steps, inconsistent with the object of the conspiracy, to disavow or defeat the goal or purposes of the conspiracy; and

(2)     either acted in a manner reasonably calculated to notify coconspirators that it was no longer participating in the conspiracy, or disclosed the conspiracy to law enforcement authorities.

Mere inactivity is not proof of withdrawal. Furthermore, even if a defendant tells others of its intention to withdraw, it has not withdrawn if it continues to act in furtherance of the object of the conspiracy. If you have concluded that a defendant was a member of a conspiracy, that defendant bears the burden of proving, by a preponderance of the evidence, that it withdrew from the conspiracy; there must be evidence of some affirmative act of withdrawal.

**AUTHORITY: ABA Ch. 2, Part A. Instruction 5**

Orion objects to this instruction.  Defendants have not identified any fact in the record that would support a jury finding that Defendants withdrew from the conspiracy reflected in the documents.  The identification of such facts are necessary for this instruction to issue given that Defendants bear the burden of production and persuasion on this issue.

Finally, the model instructions provided by the Modern Federal Jury Instructions and used by Orion treatise are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 8

## INTERSTATE COMMERCE

The Sherman Act applies only to conduct that affects interstate or foreign commerce. In this case, plaintiff contends that defendant's conduct affects interstate commerce. Interstate commerce refers to transactions in goods or services between one or more persons in one state and one or more persons in another state.

To affect interstate commerce, it is not necessary that defendant's conduct itself occurs in multiple states or directly affects transactions that span across multiple states. It is enough if some activities of defendant that were affected by the conduct had some effect on interstate commerce.

**AUTHORITY: ABA Ch. 1, Instruction 4**

**Orion's Position:**

Defendants have failed to provide the Court with a redline to evaluate Defendants' alterations to the model instruction.  For example, Defendants' have deleted the word 'restraint' from the model instruction without informing the Court.

The model instructions provided by the Modern Federal Jury Instructions treatise and used by Orion are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 9

## FOREIGN COMMERCE

The Sherman Act applies only to conduct that affects interstate or foreign commerce. In this case, plaintiff contends that defendant's conduct affects foreign commerce. Foreign commerce refers to transactions in goods or services between one or more persons in the United States and one or more persons in a foreign nation.

To sustain its claim, plaintiff must prove that the challenged conduct had a direct, substantial, and reasonably foreseeable effect on commerce within the United States, on imports into the United States, or on the export opportunities of a United States person. It is not necessary that the challenged conduct occurs within the United States. It is necessary, however, that the effect of the challenged conduct be felt by persons or firms within the United States.  It also is necessary that the effect within the United States be more than indirect, remote, or unpredictable. An effect on the exports or export opportunities of a United States person, however, may be sufficient even if the effect was felt mostly by persons outside the United States.

In determining whether the effect within the United States of the challenged conduct was reasonably foreseeable, you may consider a number of factors, including defendant's intent and the likely or probable consequences of the challenged conduct. No one factor, however, is conclusive on this issue.


**AUTHORITY: ABA Ch. 1, Instruction 5**

**Orion's Position:**

Defendants have failed to provide the Court with a redline to evaluate Defendants' alterations to the model instruction.  For example, Defendants' have deleted the word 'restraint' from the model instruction without informing the Court.

The model instructions provided by the Modern Federal Jury Instructions treatise and used by Orion are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

# DEFENDANTS' PROPOSED INSTRUCTION NO. 10

## GOOD INTENT NOT A DEFENSE

If you find that defendant engaged in a price-fixing conspiracy, it is not a defense that defendant acted with good motives, thought its conduct was legal, or that the conduct may have had some good results.

**AUTHORITY: ABA Ch. 2, Part B. Instruction 3**

**Orion's Position:**

The model instructions provided by the Modern Federal Jury Instructions treatise and used by Orion are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions. The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 11

## REASONABLENESS OF PRICES NO EXCUSE

The Sherman Act prohibits agreements among competitors to fix prices, regardless of whether the agreed-upon prices are reasonable. Therefore, if you find that a price-fixing conspiracy existed, it does not matter whether the prices agreed upon were high or low or reasonable or unreasonable.

**AUTHORITY: ABA Ch. 2, Part B. Instruction 4**

**Orion's Position:**

The model instructions provided by the Modern Federal Jury Instructions treatise and used by Orion are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions. The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 12

## EVIDENCE OF COMPETITION

Evidence that defendants actually engaged in price competition with each other in some manner has been admitted to assist you in deciding whether they entered into the alleged conspiracy to fix the prices of telescopes. If you find that such a conspiracy existed, it is no defense that defendants actually competed in some respects with each other or failed to eliminate all competition between them. Similarly, a price-fixing conspiracy is unlawful even if it did not extend to all products sold by defendants or did not affect all of their customers or transactions.

**AUTHORITY: ABA Ch. 2, Part B. Instruction 5**

**Orion's Position:**

Orion objects to instructions such as this purporting to tell the jury how to construe evidence. These are issues for attorney argument, not jury instructions. The jury is already going to be heavily burdened with numerous instructions regarding the actual elements of the claims it will be deciding, and these kind of instructions unnecessarily increase that burden.

The model instructions provided by the Modern Federal Jury Instructions treatise and used by Orion are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions. The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 13

## EVIDENCE OF PRICE CHARGED

Evidence of the prices actually charged by defendants for telescopes has been admitted to assist you in deciding whether they agreed to fix prices, as claimed by plaintiffs. Such evidence may lead you to conclude that defendants never entered into the alleged price-fixing conspiracy. Or it may lead you to conclude that defendants made an agreement but undercut one another, offered prices different from those agreed upon to certain customers, or at certain times failed to live up to the agreement. If you find that defendants agreed to fix prices, the fact that they did not stick to their agreement on every occasion or for every customer is not a defense.

**AUTHORITY: ABA Ch. 2, Part B. Instruction 6**

**Orion's Position:**

Orion objects to instructions such as this purporting to tell the jury how to construe evidence.  These are issues for attorney argument, not jury instructions.  The jury is already going to be heavily burdened with numerous instructions regarding the actual elements of the claims it will be deciding, and these kind of instructions unnecessarily increase that burden.

The model instructions provided by the Modern Federal Jury Instructions treatise and used by Orion are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

SMRH:4832-1239-1592.2

## DEFENDANTS' PROPOSED INSTRUCTION NO. 14

## EVIDENCE OF SIMILARITY

In support of its allegation of a conspiracy, plaintiff has alleged that defendants sent similar emails to Plaintiff regarding Plaintiff's credit.  Evidence that defendants may have charged identical prices for the same goods, or engaged in identical or similar business practices, does not alone establish an agreement to fix prices. Such practices may be consistent with lawful, ordinary, and proper competitive behavior in a free and open market.

The Sherman Act prohibits conspiracies between two or more competitors to fix prices. It does not prohibit independent behavior even  if such behavior is similar or identical to that of competitors; such behavior may be no more than the result of the exercise of independent judgment in response to identical or similar market conditions. Thus, a defendant may charge prices identical to those charged by its competitors without violating the Sherman Act. A defendant may even copy the prices of a competitor or follow and conform exactly to the price policies and price changes of its competitors. Likewise, a defendant does not violate the Sherman Act by taking some action in the hope or belief that its competitors will follow, so long as it has not reached an agreement with its competitors. Parallel conduct, without more, does not violate the law.

You should consider all of the evidence as a whole in determining whether any similarity or identity of prices or conduct resulted from the independent business judgment of the individual defendants freely competing in the open market, or whether it resulted from an agreement between two or more of them.

**AUTHORITY: ABA Ch. 2, Part B. Instruction 7**

**Orion's Position:**

Orion objects to this instruction because Defendants are attempting to use an instruction meant to address innocent, non-collusive parallel pricing to explain sending identical emails to withdraw Orion's credit.  This mischaracterizes the law that the model instruction is based on and

1  will lead to jury confusion.  Defendants edits to this proposed instruction are highly material, but

2  Defendants are not providing the Court with a redline.

3     Orion further objects to instructions such as this purporting to tell the jury how to construe

4  evidence.  These are issues for attorney argument, not jury instructions.  The jury is already going

5  to be heavily burdened with numerous instructions regarding the actual elements of the claims it

6  will be deciding, and these kind of instructions unnecessarily increase that burden.

7     The model instructions provided by the Modern Federal Jury Instructions treatise and used

8  by Orion are superior because they communicate the law to the jury in far simpler and more

9  efficient manner than the ABA model instructions.  The jury is going to be presented a significant

10 number of instructions, which counsels in favor of brevity and simplicity.

11

12    Orion believes that the Court should issue Orion's proposed instructions regarding

13 interstate commerce derived from the Modern Federal Jury Instructions source approved by the

14 Ninth Circuit Model Jury Instructions.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANTS' PROPOSED INSTRUCTION NO. 15

## EVIDENCE OF EXCHANGE OF PRICE INFORMATION

Evidence has been introduced concerning the exchange of information among defendants and other persons about their prices for telescopes.  Plaintiff has alleged that such exchanges were made in furtherance of a conspiracy to fix prices.

The fact that defendants exchanged price information does not necessarily establish an agreement to fix prices. There may be other, legitimate reasons that would lead competitors to exchange price information, and the law recognizes that exchanges of price information may enhance competition and benefit consumers. On the other hand, if you find that price information was exchanged and that defendants offer no reasonable explanation as to why they were exchanging that information, you may consider whether it was being exchanged as part of an agreement to fix prices, along with all of the other evidence bearing on whether there was an agreement to fix prices.


**AUTHORITY: ABA Ch. 2, Part B. Instruction 8**

**Orion's Position:**

Orion objects to instructions such as this purporting to tell the jury how to construe evidence.  These are issues for attorney argument, not jury instructions.  The jury is already going to be heavily burdened with numerous instructions regarding the actual elements of the claims it will be deciding, and these kind of instructions unnecessarily increase that burden.

The model instructions provided by the Modern Federal Jury Instructions treatise and used by Orion are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

1

## DEFENDANTS' PROPOSED INSTRUCTION NO. 16

2

## COMMUNICATIONS BETWEEN SUPPLIERS AND DISTRIBUTORS

3      The fact that a supplier and its distributors speak or write frequently about resale prices,

4   credit terms, or product markets does not, by itself, show that there is an agreement between the

5   supplier and the distributors regarding resale prices, credit terms, or product markets. A supplier

6   and its distributor have legitimate reasons to exchange information about prices, credit terms, and

7   how their products are doing in the market. For instance, a distributor can tell the supplier how

8   customers are reacting to the price of the product. Similarly, the supplier may discuss resale prices

9   with its distributors because the supplier has a legitimate interest in ensuring that its distributors

10   earn sufficient profit to pay for the sales and market support that they provide for the supplier's

11   products. You may not infer an agreement between a supplier and a distributor to fix prices or

12   credit terms, or allocate product markets, or monopolize a market, solely from the fact that they

13   discussed resale prices, credit terms, or product markets.

14

15   **AUTHORITY: ABA Ch. 2, Part D. Instruction 9**

16      **Orion's Position:**

17      Orion objects to this instruction on multiple grounds.  The jury is entitled to credit or not

18   credit Defendants' view of the market as the evidence may show at trial, and should not be

19   instructed that Defendants' view of the market prevails.  *See* Order Denying Summary Judgment

20   at 12:4-10 (ECF No. 338) ("Here, Orion has presented evidence that Synta Tech is one of several

21   shell companies run by David Shen and is, thusly, part of the alleged conspiracy. . . . This

22   evidence shows that there are triable issues as to which Synta Entity distributed Sunny's

23   telescopes to Orion and whether that entity was part of the alleged conspiracy.").  If this

24   instruction is given, a limiting instruction making clear that it is for the jury to decide whether

25   Defendants and the Synta Entities were horizontal competitors is necessary.

26      Moreover, Defendants modify the instruction in impermissible ways that would lead the

27   Court to error.  For example, none of the cases cited by the model instruction stand for the

28   proposition that there are legitimate reasons for suppliers and distributors to make agreements as

1   to price terms, credit terms offered to third parties, allocation of markets, or efforts to monopolize

2   a market.  *See Business Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 735-36 (1988) ("In sum,

3   economic analysis supports the view, and no precedent opposes it, that a vertical restraint is not

4   illegal *per se* **unless** it includes some agreement on price or price levels.") (bolded added);

5   *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984); *Burlington Coat Factory*

6   *Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919 (2d Cir. 1985).  Defendants' proposed

7   instruction gives the jury the erroneous impression that it cannot find liability if it credits

8   Defendants' contention that the Synta Entities should not be treated as a single entity for purposes

9   of conspiracy analysis.  **Again, Defendants provide no redline disclosing these edits.**

10          The Court should issue Orion's proposed instructions, which avoid these errors and

11   properly instructs the jury on the analysis they must undertake if they credit Defendants' view of

12   the market.

13          Orion further objects to instructions such as this purporting to tell the jury how to construe

14   evidence.  These are issues for attorney argument, not jury instructions.  The jury is already going

15   to be heavily burdened with numerous instructions regarding the actual elements of the claims it

16   will be deciding, and these kind of instructions unnecessarily increase that burden.

17          The model instructions provided by the Modern Federal Jury Instructions treatise and used

18   by Orion are superior because they communicate the law to the jury in far simpler and more

19   efficient manner than the ABA model instructions.  The jury is going to be presented a significant

20   number of instructions, which counsels in favor of brevity and simplicity.

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION NO. 17**

**RULE OF REASON—OVERVIEW**

If you find that there was an agreement to fix prices or credit terms, but the agreement was not between competitors, then the agreement is illegal only if you find that the agreement was unreasonable.

In making this determination, you must first determine whether plaintiff has proven that the challenged restraint has resulted in a substantial harm to competition in a relevant product and geographic market. If you find that plaintiff has proven that the challenged restraint results in a substantial harm to competition in a relevant market, then you must consider whether the restraint produces countervailing competitive benefits. If you find that it does, then you must balance the competitive harm against the competitive benefit. The challenged restraint is illegal under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit.

I will now review each step of the analysis in more detail.

**AUTHORITY: ABA Ch. 1, Instruction 3A. Defendants maintain that Orion has alleged its price-fixing and market allocation claims as per se violations of the Sherman Act. Therefore, if Orion is unable to prove a conspiracy between horizontal competitors under either or both of those theories, the jury must find for Defendants. Defendants do not waive that argument by submitting this proposed instruction.**

**Orion's Position:**

Orion object to this instruction on multiple grounds.

Defendants' request that the Court instruct the jury that, as a matter of law, their conduct regarding the Telescopes.com/Hayneedle credit-fixing conspiracy must be analyzed under the rule of reason invites error.

Credit-term fixing is per se illegal. *See Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 648 (1980) (It is virtually self-evident that extending interest-free credit for a period of time is equivalent to giving a discount equal to the value of the use of the purchase price for that period of time. Thus, credit terms must be characterized as an inseparable part of the price. . . . Since it is merely one form of price fixing, and since price-fixing agreements have been adjudged to lack any

"redeeming virtue," it is conclusively presumed illegal without further examination under the rule of reason.).  If the jury finds that Defendants fixed credit terms offered to Orion in connection with the potential Telescopes.com acquisition, (and that doing so was a substantial cause of injury to Orion) then Defendants have per se violated the antitrust laws and no rule of reason analysis is required.

Similarly, Defendants' proposed instruction asks the Court to instruct the jury that, as a matter of law, the Meade acquisition must be analyzed under the rule of reason.  That is also error.  The Court has held that "a conspiracy to unlawfully select or limit [Defendants'] competition" is not only unlawful, but "do[es] not 'just as easily suggest rational, legal business behavior.'"  Order Denying First Amended Complaint 5:3-8 (ECF No. 230) (citing *Helix Milling Co. v. Terminal Flour Mills Co.*, 523 F.2d 1317, 1320 (9th Cir. 1975)).  That holding is now law of the case.  The Court should issue Orion's proposed instructions, which would insulate this trial from error by instructing the jury as to both the per se and rule of reason analyses and leave the determination of which is the proper analysis to the jury.  *See* Orion Proposed Instruction No. 49.

Finally, Defendants' proposed instructions regarding the rule of reason—there are four of them—are needlessly cumulative and burdensome for the jury.  The Court should issue Orion's proposed instructions, which correctly explain the law regarding the rule of reason in a single cogent instruction.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 18

## RULE OF REASON—PROOF OF COMPETITIVE HARM

As I mentioned, to prove that the challenged restraint is unreasonable, plaintiff first must demonstrate that the restraint has resulted in a substantial harm to competition. Although it may be relevant to the inquiry, harm that occurs merely to the individual business of plaintiff is not sufficient, by itself, to demonstrate harm to competition generally. That  is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

Furthermore, plaintiff must show that the harm to competition occurred in an identified market, known as a relevant market. There are two aspects to a relevant market. The first aspect is known as the relevant product market. The second aspect is known as the relevant geographic market. It is plaintiffs burden to prove the existence of a relevant market.

If you find that plaintiff has proven the existence of a relevant market, then you must determine whether plaintiff also has proven that the challenged restraint has a substantial harmful effect on competition in that market. A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, or higher product quality. If the challenged conduct has not resulted in higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.

In determining whether the challenged restraint has produced competitive harm, you may look at the following factors:

- the effect of the restraint on prices, output, product quality, and service;

- the purpose and nature of the restraint;

- the nature and structure of the relevant market;

- the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and

- whether the defendant possesses market power.

1    The last factor mentioned, market power, has been defined as an ability to profitably raise

2    prices, for a sustained period of time, above those that would  be charged  in a competitive

3    market. A firm  that possesses market power generally can charge higher prices for the same goods

4    or services than a firm in the same market that does not possess market power. The ability to

5    charge higher prices for better products or services, however, is not market power. An important

6    factor in determining whether defendant possesses market power is defendant's market share, that

7    is, its percentage of the products or services sold in the relevant market by all competitors. Other

8    factors that you may consider in determining whether defendant has market power include the

9    existence or non-existence of barriers to entry, the existence of potential competitors, and other

10   market factors.  If defendant does not possess a substantial  market share, it  is less likely that

11   defendant possesses market power. If defendant does not possess market power, it is less likely

12   that the challenged restraint has resulted in a substantial harmful effect on competition in the

13   market.

14

15   **AUTHORITY: ABA Ch. 1, Instruction 3B.  Defendants maintain that Orion has alleged its**
     **price-fixing and market allocation claims as per se violations of the Sherman Act.**
16   **Therefore, if Orion is unable to prove a conspiracy between horizontal competitors under**
     **either or both of those theories, the jury must find for Defendants.  Defendants do not waive**
17   **that argument by submitting this proposed instruction.**

18        **Orion's Position:**

19        Orion objects to Defendants' self-serving deletions of bracketed portions of the model

20   instruction that make clear that the jury should consider whether Defendants' acts were *likely* to

21   harm competition, as well as whether they actually did. **Again, Defendants provide no redlines**

22   **disclosing these material edits.**

23        Orion also objects to Defendants' list of factors, which do not reflect the factors considered

24   by Dr. Zona in making his market power determination.

25        Finally, Defendants' proposed instructions regarding the rule of reason are needlessly

26   cumulative and burdensome for the jury.  The Court should issue Orion's proposed instructions,

27   which correctly explain the law regarding the rule of reason in a single cogent instruction.

28

1    The model instructions provided by the Modern Federal Jury Instructions treatise and used

2 by Orion are superior because they communicate the law to the jury in far simpler and more

3 efficient manner than the ABA model instructions.  The jury is going to be presented a significant

4 number of instructions, which counsels in favor of brevity and simplicity.

1

<u>**DEFENDANTS' PROPOSED INSTRUCTION NO. 19**</u>

2

<u>**RULE OF REASON—EVIDENCE OF COMPETITIVE BENEFITS**</u>

3    If you find that plaintiff has proven that the challenged restraint resulted in substantial

4  harm to competition in a relevant market, then you next must determine whether the restraint also

5  benefits competition in other ways. If you find that the challenged restraint does result in

6  competitive benefits, then you also must consider whether the restraint was reasonably necessary

7  to achieve the benefits. If plaintiff proves that the same benefits could have been readily achieved

8  by other, reasonably available alternative means that create substantially less harm to competition,

9  then they cannot be used to justify the restraint.

10

11  <u>**AUTHORITY: ABA Ch.1, Instruction 3C.  Defendants maintain that Orion has alleged its**</u>
<u>**price-fixing and market allocation claims as per se violations of the Sherman Act.**</u>

12  <u>**Therefore, if Orion is unable to prove a conspiracy between horizontal competitors under**</u>
<u>**either or both of those theories, the jury must find for Defendants.  Defendants do not waive**</u>

13  <u>**that argument by submitting this proposed instruction.**</u>

14    **Orion's Position:**

15    Orion objects to this instruction.  Defendants have not put on any affirmative expert case.

16  As the notes to this model instruction state, "Defendants bear the burden of producing evidence

17  regarding the existence of competitive benefits."  Because Defendants have not offered any expert

18  testimony regarding competitive benefits, they cannot meet their burden of production to justify

19  the issuance of this instruction.

20    Finally, Defendants' proposed instructions regarding the rule of reason are needlessly

21  cumulative and burdensome for the jury.  The Court should issue Orion's proposed instructions,

22  which correctly explain the law regarding the rule of reason in a single cogent instruction.

23

24

25

26

27

28

1    <u>**DEFENDANTS' PROPOSED INSTRUCTION NO. 20**</u>

2    <u>**RULE OF REASON—BALANCING THE COMPETITIVE EFFECTS**</u>

3    If you find that the challenged restraint was reasonably necessary to achieve competitive

4    benefits, then you must balance those competitive benefits against the competitive harm resulting

5    from the same restraint.

6    If the competitive harm substantially outweighs the competitive benefits, then the

7    challenged restraint is unreasonable. If the competitive harm does not substantially outweigh the

8    competitive benefits, then the challenged restraint is not unreasonable. In conducting this analysis,

9    you must consider the benefits and harm to competition and consumers, not just to a single

10   competitor or group of competitors. Plaintiff bears the burden of proving that the anticompetitive

11   effect of the conduct substantially outweighs its benefits.

12

13   <u>**AUTHORITY: ABA Ch. 1, Instruction 3D. Defendants maintain that Orion has alleged its**</u>
     <u>**price-fixing and market allocation claims as per se violations of the Sherman Act.**</u>
14   <u>**Therefore, if Orion is unable to prove a conspiracy between horizontal competitors under**</u>
     <u>**either or both of those theories, the jury must find for Defendants. Defendants do not waive**</u>
15   <u>**that argument by submitting this proposed instruction.**</u>

16   **Orion's Position:**

17   Orion objects to this instruction. Defendants have not put on any affirmative expert case.

18   As the notes to this model instruction state, "Defendants bear the burden of producing evidence

19   regarding the existence of competitive benefits." Because Defendants have not offered any expert

20   testimony regarding competitive benefits, they cannot meet their burden of production to justify

21   the issuance of this instruction.

22   Finally, Defendants' proposed instructions regarding the rule of reason are needlessly

23   cumulative and burdensome for the jury. The Court should issue Orion's proposed instructions,

24   which correctly explain the law regarding the rule of reason in a single cogent instruction.

25

26

27

28

SMRH:4832-1239-1592.2

1

## ORION'S PROPOSED MARKET ALLOCATION INSTRUCTIONS

2

## ORION'S MARKET ALLOCATION INSTRUCTION NO. 1

3

## MARKET & CUSTOMER ALLOCATION: THE COMPLAINT AND THE STATUTE

4   ~~The plaintiff~~ Orion claims that ~~the d~~Defendants entered into an agreement that unlawfully

5   divided up what telescope manufacturing services they would provide and to whom they would

6   sell.  ~~the territories in which various competitors in the _____ business would compete~~.

7   More specifically, ~~the plaintiff~~ Orion claims that ~~the d~~Defendants' CEO Peter Ni ~~(summarize~~

8   ~~market allocation allegations in the complaint]~~conspired with his competitor David Shen, the

9   principal of Suzhou Synta Optical Technology Co. Ltd., Synta Technology Corp., Nantong

10   Schmidt Opto-Electrical Technology Co., Ltd., Good Advance Industries Ltd., Celestron

11   Acquisition LLC, Atlas E-Commerce LLC, and SW Technology Corp. to not compete against one

12   another for certain customers or on the manufacture of certain types of telescopes, and that as a

13   result of these actions the ~~plaintiff~~ Orion suffered injury to its business or property. The law ~~the~~

14   ~~plaintiff~~ Orion has charged ~~the d~~Defendants with violating is called ~~S~~section 1 of the Sherman

15   Antitrust Act. That law says that "[e]very contract, combination ... or conspiracy in restraint of

16   trade or commerce ... is illegal."

17       Source and Authorities: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil

18   ¶ 79.04, Instr. 79-39 (Restraint of Trade) (Matthew Bender, 2015) (modified to replace division of

19   "territories" with division of "services" and "customers").

20

21       **Defendants' Objection:**  This proposed instruction is argumentative does not articulate a

22   neutral and accurate summary of the claims in this case as defined by Orion's own complaint.  For

23   example, Orion does not allege a price-fixing conspiracy between two individuals, Peter Ni and

24   David Shen; it alleges a conspiracy between corporate entities.  Similarly, Orion's assertion that

25   David Shen is the "principal" of various entities is argument, not fact, and one Defendants intend

26   to oppose at trial.  This instruction is also unnecessarily vague about the nature of Orion's "market

27   allocation" theory—which is that there was a conspiracy for Suzhou Synta to only manufacture

28

1  "high-end" telescopes and Ningbo Sunny to only manufacture "low-end" telescopes.  Defendants

2  have simply proposed the ABA Model Instruction (Allocation of Product Markets).

3       Further, it does not make sense to mix and match between two different sets of model

4  instructions, because model instructions are designed to be used together.  Defendants have

5  proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of

6  model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as

7  the authoritative source for this purpose among antitrust practitioners—with no substantive

8  modifications or argument.  Defendants submit that the ABA instructions are both more complete

9  statements of the law, and presented more efficiently in fewer instructions, than the "Modern

10  Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover,

11  the model instructions used by Orion include certain instructions that are demonstrably improper

12  as a matter of law, as explained in several of Defendants' other objections.

13       **Orion's Response**: Orion listed all of the Synta Entities based upon an earlier objection

14  raised by Defendants in the parties' meet and confer that merely stating "Synta" would confuse the

15  jury.  Defendants cannot have it both ways, and Orion is entitled to have its claims presented to

16  the jury.

17       Defendants' also mischaracterize Orion's market division theory.  As the Court's Order

18  Denying Motion for Summary Judgment expressly referenced, there are emails in the record

19  "wherein David Shen wrote that Peter 'Ni will not be a competitor and is trustworthy when it

20  comes to business' and that if Defendants '[b]id[] with Costco between May and June (compete

21  with Celestron for the price) . . . celestron would not trust sunny any longer.'"  10:5-8 (ECF No.

22  338).  Orion is entitled to present its market division theory as it has evolved with discovery, and

23  Defendants' implicit contention to the contrary is wrong.

24       Defendants' conclusory assertion that the ABA model instructions are "the authoritative

25  source" of jury instructions—advanced without any citation supporting the claim—is not true.

26  The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

27  by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

28  the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

1    Indeed, instructions from the Modern Federal Jury Instructions source have been used in

2    significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

3    *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

4    "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

5    *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pp. 2-3

6    "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

7        The model instructions provided by the Modern Federal Jury Instructions treatise are

8    superior because they communicate the law to the jury in far simpler and more efficient manner

9    than the ABA model instructions.  The jury is going to be presented a significant number of

10   instructions, which counsels in favor of brevity and simplicity.

11       Defendants' failure to modify the ABA instructions to fit the facts of this case where the

12   ABA model instructions themselves direct that such modification should be made does not

13   counsel in favor of selecting Defendants' proposed instructions.

14       Finally, Defendant's assertion that "it does not make sense to mix and match between two

15   different sets of model instructions" is belied by the fact that Defendants' own proposed

16   instructions use multiple model instruction sources.  The fact is that none of the sources approved

17   by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

18   Orion is asserting.

19

20

21

22

23

24

25

26

27

28

SMRH:4832-1239-1592.2

## ORION'S MARKET ALLOCATION INSTRUCTION NO. 2
## <u>MARKET & CUSTOMER ALLOCATION: THE PURPOSE OF THE STATUTE</u>

The purpose of the Sherman Act is to preserve and encourage free and open business competition so that the public may receive better goods and services at a lower cost. Congress has determined that agreements which unreasonably restrain the flow of interstate commerce are bad for business competition, and therefore has made such arrangements illegal. Bear in mind, however, that the Sherman Act was not meant to ensure that any particular business would succeed in the competitive marketplace. The law was meant to protect the process of competition-the open market. It was not meant to protect an individual business competitor that did not, or could not, succeed in the open market.

**Redline:**

The purpose of the Sherman Act is to preserve and encourage free and open business competition so that the public may receive better goods and services at a lower cost. Congress has determined that agreements which unreasonably restrain the flow of interstate commerce are bad for business competition, and therefore has made such arrangements illegal. Bear in mind, however, that the Sherman Act was not meant to ~~i~~ensure that any particular business would succeed in the competitive marketplace. The law was meant to protect the process of competition-the open market. It was not meant to protect an individual business competitor that did not, or could not, succeed in the open market.

**Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.04, Instr. 79-40 (Restraint of Trade) (Matthew Bender, 2015).

**Defendants' Objection:** It does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together.  Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

1   antitrust cases and recognized as the authoritative source for this purpose among antitrust

2   practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

3   instructions are both more complete statements of the law, and presented more efficiently in fewer

4   instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

5   proposed instructions.  Moreover, the model instructions used by Orion include certain

6   instructions that are demonstrably improper as a matter of law, as explained in several of

7   Defendants' other objections.

8       **Orion's Response**: Orion listed all of the Synta Entities based upon an earlier objection

9   raised by Defendants in the parties' meet and confer that merely stating "Synta" would confuse the

10  jury.  Defendants cannot have it both ways, and Orion is entitled to have its claims presented to

11  the jury.

12      Defendants' also mischaracterize Orion's market division theory.  As the Court's Order

13  Denying Motion for Summary Judgment expressly referenced, there are emails in the record

14  "wherein David Shen wrote that Peter 'Ni will not be a competitor and is trustworthy when it

15  comes to business' and that if Defendants '[b]id[] with Costco between May and June (compete

16  with Celestron for the price) . . . celestron would not trust sunny any longer.'"  10:5-8 (ECF No.

17  338).  Orion is entitled to present its market division theory as it has evolved with discovery, and

18  Defendants' implicit contention to the contrary is wrong.

19      Defendants' conclusory assertion that the ABA model instructions are "the authoritative

20  source" of jury instructions—advanced without any citation supporting the claim—is not true.

21  The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

22  by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

23  the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

24  Indeed, instructions from the Modern Federal Jury Instructions source have been used in

25  significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

26  *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

27  "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

28

1  *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pp. 2-3

2  "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

3      The model instructions provided by the Modern Federal Jury Instructions treatise are

4  superior because they communicate the law to the jury in far simpler and more efficient manner

5  than the ABA model instructions.  The jury is going to be presented a significant number of

6  instructions, which counsels in favor of brevity and simplicity.

7      Defendants' failure to modify the ABA instructions to fit the facts of this case where the

8  ABA model instructions themselves direct that such modification should be made does not

9  counsel in favor of selecting Defendants' proposed instructions.

10      Finally, Defendant's assertion that "it does not make sense to mix and match between two

11  different sets of model instructions" is belied by the fact that Defendants' own proposed

12  instructions use multiple model instruction sources.  The fact is that none of the sources approved

13  by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

14  Orion is asserting.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORION'S MARKET ALLOCATION INSTRUCTION NO. 3**

**MARKET & CUSTOMER ALLOCATION: ELEMENTS OF THE OFFENSE**

In order to prove its claim that Defendants illegally allocated the market in and customers for which various competitors in the telescope manufacturing services business would compete, Orion must prove, by a preponderance or greater weight of the evidence, each of the following four elements:

First, that Defendants entered into an agreement or conspiracy;

Second, that this agreement or conspiracy was an unreasonable restraint of trade;

Third, that the agreement or conspiracy restrained or affected interstate or foreign commerce; and

Fourth, that Orion was injured in its business or property as a result of Defendants' actions.

I will explain each of these elements to you.  Because Orion must show injury for all of its claims, I will explain injury and damages to you at the end of these instructions.

Source and Authorities: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.04, Instr. 79-41 (Restraint of Trade) (Matthew Bender, 2015).

**Redline**

In order to prove its claim that ~~the d~~Defendants illegally allocated the ~~territories~~ market in and customers for ~~in~~ which various competitors in the ——————telescope manufacturing services business would compete, ~~the plaintiff~~ Orion must prove, by a preponderance or greater weight of the evidence, each of the following four elements:

First, that ~~the d~~Defendants entered into an agreement or conspiracy;

Second, that this agreement or conspiracy was an unreasonable restraint of trade;

Third, that the agreement or conspiracy restrained or affected interstate ~~(~~or foreign~~)~~ commerce; and

Fourth, that ~~the plaintiff~~ Orion was injured in its business or property as a result of ~~the d~~Defendants' actions.

1    I will explain each of these elements to you.  Because Orion must show injury for all of its

2    claims, I will explain injury and damages to you at the end of these instructions.

3    **Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

4    Civil ¶ 79.04, Instr. 79-41 (Restraint of Trade) (Matthew Bender, 2015).

5

6    **Defendants' Objection:**  Defendants have proposed the ABA Model Instruction

7    (Allocation of Product Markets), which more fully sets forth and explains these elements in a

8    single instruction.

9        Further, it does not make sense to mix and match between two different sets of model

10   instructions, because model instructions are designed to be used together.  Defendants have

11   proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of

12   model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as

13   the authoritative source for this purpose among antitrust practitioners—with no substantive

14   modifications or argument.  Defendants submit that the ABA instructions are both more complete

15   statements of the law, and presented more efficiently in fewer instructions, than the "Modern

16   Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover,

17   the model instructions used by Orion include certain instructions that are demonstrably improper

18   as a matter of law, as explained in several of Defendants' other objections.

19

20   **Orion's Response:** The fact that the Modern Federal Jury Instructions are simpler and

21   briefer than the ABA instructions is a feature, not a bug.  Defendants do not identify any

22   proposition of law that they contend is missing.  And the jury does not need to have identical

23   elements re-explained to them.  Orion's proposed instructions are thus more efficient and will

24   reduce the burden on the Court and jury.

25       Defendants' conclusory assertion that the ABA model instructions are "the authoritative

26   source" of jury instructions—advanced without any citation supporting the claim—is not true.

27   The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

28   by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial. Indeed, instructions from the Modern Federal Jury Instructions source have been used in significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses", "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pg. 2-3 "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

The model instructions provided by the Modern Federal Jury Instructions treatise are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

Defendants' failure to modify the ABA instructions to fit the facts of this case where the ABA model instructions themselves direct that such modification should be made does not counsel in favor of selecting Defendants' proposed instructions.

Finally, Defendant's assertion that "it does not make sense to mix and match between two different sets of model instructions" is belied by the fact that Defendants' own proposed instructions use multiple model instruction sources.  The fact is that none of the sources approved by the Ninth Circuit Model Instructions provides model instructions for all of the claims that Orion is asserting.

**ORION'S MARKET ALLOCATION INSTRUCTION NO. 4**

**MARKET & CUSTOMER ALLOCATION: FIRST ELEMENT—CONSPIRACY**

 The instructions I read you previously regarding the existence and formation of a conspiracy as to Orion's Section 1 price and credit term fixing claim apply equally to Orion's Section 1 market and customer allocation claim.

 **Source and Authorities:** Orion proposes this instruction to avoid duplicative instructions and to speed the jury instruction process.

SMRH:4832-1239-1592.2
DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**ORION'S MARKET ALLOCATION INSTRUCTION NO. 5**

**MARKET & CUSTOMER ALLOCATION: SECOND ELEMENT—THE PURPOSE OR**

**EFFECT OF THE CONSPIRACY WAS TO ALLOCATE THE MARKET**

If you find, in accordance with the instructions I have just given you, that the defendants did enter into an unlawful agreement or conspiracy, then you must consider whether that agreement unreasonably restrained trade.

"Market allocation" is an arrangement which limits or restricts the customers to which products may be sold, or the kind of products each conspirator makes. An agreement between or among competitors to divide, allocate, share, or split up the markets in or customers for which they compete is always an unreasonable restraint of trade; that is, it is automatically illegal. So, if you find that there was an agreement among Defendants and their alleged co-conspirators, and if you also find that Defendants and their alleged co-conspirators were competitors in the relevant market, then you must find that the agreement was an unreasonable restraint of trade.

If, however, you find that Defendants were not competitors, then the agreement is not automatically an unlawful restraint of trade; and you must determine whether the agreement unreasonably restrained trade by assessing all the facts and circumstances of the case.


**Redline:**


If you find, in accordance with the instructions I have just given you, that the defendants did enter into an unlawful agreement or conspiracy, then you must consider whether that agreement unreasonably restrained trade.

"Market allocation" is an arrangement which limits or restricts the ~~geographical areas in (or~~ customers ~~to)~~ which products may be sold, or the kind of products each conspirator makes. An agreement between or ~~(~~among~~)~~ competitors to divide, allocate, share, or split up the markets in ~~(or customers for)~~ which they compete is always an unreasonable restraint of trade; that is, it is automatically illegal. So, if you find that there was an agreement among ~~the d~~Defendants and their alleged co-conspirators, and if you also find that ~~the d~~Defendants and their alleged co-conspirators

were competitors in the relevant market, then you must find that the agreement was an unreasonable restraint of trade.

If, however, you find that ~~the d~~Defendants were not competitors, then the agreement is not automatically an unlawful restraint of trade; and you must determine whether the agreement unreasonably restrained trade by assessing all the facts and circumstances of the case.

**Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.04, Instr. 79-42 (Restraint of Trade) (Matthew Bender, 2015).

**Defendants' Objection:**  Orion has substantively modified this model instruction's definition of market allocation.  Defendants have proposed a single ABA Model instruction on this issue with no substantive modifications.  *See* Defendants' Proposed Instruction (ALLOCATION OF PRODUCT MARKETS).

Further, it does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together.  Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as the authoritative source for this purpose among antitrust practitioners—with no substantive modifications or argument.  Defendants submit that the ABA instructions are both more complete statements of the law, and presented more efficiently in fewer instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover, the model instructions used by Orion include certain instructions that are demonstrably improper as a matter of law, as explained in several of Defendants' other objections.

**Orion's Response:** Defendants do not dispute that modifying this instruction to make clear that it applies to market division is legally correct.  The modest modification to the instruction is an appropriate clarification.

Defendants' conclusory assertion that the ABA model instructions are "the authoritative source" of jury instructions—advanced without any citation supporting the claim—is not true.  The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

1   by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

2   the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

3   Indeed, instructions from the Modern Federal Jury Instructions source have been used in

4   significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

5   *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

6   "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

7   *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pg. 2-3

8   "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

9        The model instructions provided by the Modern Federal Jury Instructions treatise are

10   superior because they communicate the law to the jury in far simpler and more efficient manner

11   than the ABA model instructions.  The jury is going to be presented a significant number of

12   instructions, which counsels in favor of brevity and simplicity.

13        Defendants' failure to modify the ABA instructions to fit the facts of this case where the

14   ABA model instructions themselves direct that such modification should be made does not

15   counsel in favor of selecting Defendants' proposed instructions.

16        Finally, Defendant's assertion that "it does not make sense to mix and match between two

17   different sets of model instructions" is belied by the fact that Defendants' own proposed

18   instructions use multiple model instruction sources.  The fact is that none of the sources approved

19   by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

20   Orion is asserting.

21

22

23

24

25

26

27

28

SMRH:4832-1239-1592.2

**ORION'S MARKET ALLOCATION INSTRUCTION NO. 6**

**MARKET & CUSTOMER ALLOCATION: VERTICAL MARKET ALLOCATION—THE**

**RULE OF REASON**

As I have said, if you find that Defendants and the alleged co-conspirators were not competitors, but rather occupied different levels on the same line of production and distribution, then, you must examine all of the facts and circumstances of the case in order to determine whether the market allocation complained of was an unreasonable restraint of trade. Bear in mind that in making this determination, you should focus on the effect of the challenged market allocation on the overall competition in the relevant market-not the effect on Orion alone.

As common sense would tell you, antitrust law does not prohibit every business agreement which affects trade or every agreement which may restrain or influence competition. That law prohibits only unreasonable restraints of trade. The goal of the antitrust laws is to prevent restraints of trade which tend, or are intended, to control prices, to restrict production, or otherwise affect or control the market so as to deprive purchasers and consumers of the benefits of free and open competition.

No one factor of control should dictate your determination whether the challenged agreement is an unreasonable restraint of trade. You should consider all the facts and circumstances relating to the agreement's impact on competition.

You should consider the nature of the agreement, its actual immediate effect, and its probable future effect. You should consider the history of the agreement and the context in which it was entered into.

You should also consider the nature of the particular industry in which the agreement was made, and the condition of that industry both before and after the agreement.

You should consider the purpose of the agreement and the reasons why it was made. The fact that Defendants or the alleged co-conspirators had a good motive or sound business purpose for making the agreement does not prevent you from finding that the agreement was an unreasonable restraint of trade. But examining the purpose of the agreement may assist you in determining the effects of the agreement on competition.

You should consider the relative size and economic strength of Defendants and the alleged co-conspirators in the market. If you find that Defendants and the alleged co-conspirators, separately or together, possessed monopoly power, then any action taken by them for the purpose or with the probable effect of excluding competition, gaining a competitive advantage or destroying a competitor would be an unreasonable restraint of trade.

You should also consider the duration of the agreement. An agreement may restrain trade somewhat but not unreasonably-if it lasts for some reasonable period, but the agreement may become unreasonable if it lasts for an unreasonable time.

You may also consider the total effect of similar agreements. The restraining effect of one agreement may not be unreasonable; but if there are several similar agreements each of which has a somewhat restrictive effect on competition, their total effect may be an unreasonable restraint of trade.

If, after considering all these facts and circumstances, you find that the agreement does impose some unreasonable restraint on competition, you should then determine whether the agreement has any positive or pro-competitive effects on competition. If you find that it does, then your final determination whether the agreement is an unreasonable restraint of trade must be made by balancing its restrictive or anti-competitive effects against its pro-competitive effects. If the anti-competitive effects of the agreement outweigh its pro-competitive effects, then you should find that the agreement is an unreasonable restraint of trade.

**Redline:**

(As I have said, if you find that ~~the d~~Defendants and the alleged co-conspirators were not competitors, but rather occupied different levels on the same line of production and distribution, then,~~)~~ ~~Y~~you must examine all of the facts and circumstances of the case in order to determine whether the market allocation ~~[or insert type of other restraint to be analyzed under the rule of reason]~~ complained of was an unreasonable restraint of trade. Bear in mind that in making this

1  determination, you should focus on the effect of the challenged market allocation on the overall

2  competition in the relevant market-not the effect on ~~the plaintiff~~ Orion alone.

3      As common sense would tell you, antitrust law does not prohibit every business agreement

4  which affects trade or every agreement which may restrain or influence competition. That law

5  prohibits only unreasonable restraints of trade. The goal of the antitrust laws is to prevent

6  restraints of trade which tend, or are intended, to control prices, to restrict production, or otherwise

7  affect or control the market so as to deprive purchasers and consumers of the benefits of free and

8  open competition.

9      No one factor of control should dictate your determination whether the challenged

10  agreement is an unreasonable restraint of trade. You should consider all the facts and

11  circumstances relating to the agreement's impact on competition.

12      You should consider the nature of the agreement, its actual immediate effect, and its

13  probable future effect. You should consider the history of the agreement and the context in which

14  it was entered into.

15      You should also consider the nature of the particular industry in which the agreement was

16  made, and the condition of that industry both before and after the agreement.

17      You should consider the purpose of the agreement and the reasons why it was made. The

18  fact that ~~the d~~Defendants or the alleged co-conspirators had a good motive or sound business

19  purpose for making the agreement does not prevent you from finding that the agreement was an

20  unreasonable restraint of trade. But examining the purpose of the agreement may assist you in

21  determining the effects of the agreement on competition.

22      You should consider the relative size and economic strength of ~~the d~~Defendants and the

23  alleged co-conspirators in the market. (If you find that ~~the d~~Defendants and the alleged co-

24  conspirators, separately or together, possessed monopoly power, then any action taken by them for

25  the purpose or with the probable effect of excluding competition, gaining a competitive advantage

26  or destroying a competitor would be an unreasonable restraint of trade.)

27

28

1    You should also consider the duration of the agreement. An agreement may restrain trade

2  somewhat but not unreasonably-if it lasts for some reasonable period, but the agreement may

3  become unreasonable if it lasts for an unreasonable time.

4    You may also consider the total effect of similar agreements. The restraining effect of one

5  agreement may not be unreasonable; but if there are several similar agreements each of which has

6  a somewhat restrictive effect on competition, their total effect may be an unreasonable restraint of

7  trade.

8    If, after considering all these facts and circumstances, you find that the agreement does

9  impose some unreasonable restraint on competition, you should then determine whether the

10  agreement has any positive or pro-competitive effects on competition. If you find that it does, then

11  your final determination whether the agreement is an unreasonable restraint of trade must be made

12  by balancing its restrictive or anti-competitive effects against its pro-competitive effects. If the

13  anti-competitive effects of the agreement outweigh its pro-competitive effects, then you should

14  find that the agreement is an unreasonable restraint of trade.

15    **Source and Authorities**: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

16  Civil ¶ 79.04, Instr. 79-43 (Restraint of Trade) (Matthew Bender, 2015).

17

18    **Defendants' Objection:**  Defendants maintain that Orion has alleged its price-fixing and

19  market allocation claims as horizontal per se violations of the Sherman Act.  Therefore, if Orion is

20  unable to prove a conspiracy between horizontal competitors under either or both of those

21  theories, the jury must find for Defendants.  Without waiving that argument, however, Defendants

22  agree that rule of reason instructions should be given in the alternative with respect to Orion's

23  price-fixing and market allocation claims.  Accordingly, Defendants have proposed the ABA

24  Model instructions outlining the steps in the rule of reason analysis.  Defendants submit that those

25  instructions are more complete and easier to understand than Orion's proposal here.

26    Moreover, Orion's proposed instruction incorrectly suggests that the issue is whether

27  "Defendants" are in a "vertical" relationship.  The issue is whether there was a vertical

28  relationship between the alleged co-conspirators, not all of whom are named as Defendants.

1   Orion's proposal also incorrectly limits this point to the market allocation claim, when the same

2   point applies equally to Orion's price-fixing claim.

3          Further, it does not make sense to mix and match between two different sets of model

4   instructions, because model instructions are designed to be used together.  Defendants have

5   proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of

6   model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as

7   the authoritative source for this purpose among antitrust practitioners—with no substantive

8   modifications or argument.  Defendants submit that the ABA instructions are both more complete

9   statements of the law, and presented more efficiently in fewer instructions, than the "Modern

10  Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover,

11  the model instructions used by Orion include certain instructions that are demonstrably improper

12  as a matter of law, as explained in several of Defendants' other objections.

13         **Orion's Response:**

14         Defendants' objections are illogical.  Defendants cannot claim that Orion is not entitled to

15  prevail on a rule of reason analysis while simultaneously agreeing that the jury should be

16  instructed on the rule of reason.

17         The ABA model instruction's description of the rule of reason is unnecessarily convoluted

18  and confusing for the jury.  Indeed, it spans <u>four different instructions</u>.  Again, the Modern Federal

19  Jury Instructions provide the jury the law in a brief and concise manner, which is a feature, not a

20  bug.

21         Defendants' conclusory assertion that the ABA model instructions are "the authoritative

22  source" of jury instructions—advanced without any citation supporting the claim—is not true.

23  The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

24  by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

25  the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

26  Indeed, instructions from the Modern Federal Jury Instructions source have been used in

27  significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

28  *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

1   "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

2   *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pg. 2-3

3   "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

4     The model instructions provided by the Modern Federal Jury Instructions treatise are

5   superior because they communicate the law to the jury in far simpler and more efficient manner

6   than the ABA model instructions.  The jury is going to be presented a significant number of

7   instructions, which counsels in favor of brevity and simplicity.

8     Defendants' failure to modify the ABA instructions to fit the facts of this case where the

9   ABA model instructions themselves direct that such modification should be made does not

10   counsel in favor of selecting Defendants' proposed instructions.

11     Finally, Defendant's assertion that "it does not make sense to mix and match between two

12   different sets of model instructions" is belied by the fact that Defendants' own proposed

13   instructions use multiple model instruction sources.  The fact is that none of the sources approved

14   by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

15   Orion is asserting.

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:16-cv-06370-EJD-VKD
DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**ORION'S MARKET ALLOCATION INSTRUCTION NO. 7**

**<u>MARKET & CUSTOMER ALLOCATION: THIRD ELEMENT—INTERSTATE</u>**

**<u>COMMERCE</u>**

The instructions I read you previously regarding the interstate commerce element as to Orion's Section 1 price and credit term fixing claim apply equally to Orion's Section 1 market and customer allocation claim.

**Source and Authorities**: Orion proposes this instruction to avoid duplicative instructions and to speed the jury instruction process.

**DEFENDANTS' PROPOSED INSTRUCTION NO. 21**

**ALLOCATION OF PRODUCT MARKETS**

Plaintiff claims that defendants and Suzhou Synta are competitors and have violated the Sherman Act by agreeing to allocate product markets between themselves. Allocate means to limit, divide up, or not to compete.

A business has the right to select on its own the products that it will manufacture or sell. Likewise, a business may decide not to make or sell a product, provided that the decision results from the exercise of an independent business judgment and not from any agreement with a competitor. The Sherman Act, however, prohibits agreements between competitors that allocate product markets.

A conspiracy to allocate product markets is an agreement between two or more competitors to agree not to compete in making or selling a product that they would have otherwise competed in making or selling. By way of example, this includes an agreement by two or more competitors that a product sold by one of them will not be sold by the other, to confine their manufacturing efforts to particular or different products, or to require one to discontinue sales or production of a product that the other will continue to sell.

To prevail on this claim against a defendant, plaintiff must prove, as to that defendant, each of the following elements by a preponderance of the evidence:

    (1)     defendants and Suzhou Synta are competitors or potential competitors;

    (2)     defendants and Suzhou Synta entered into an agreement;

    (3)     defendants and Suzhou Synta agreed they would not compete with each other in the manufacture or sale of a product by having Suzhou Synta manufacture only "high-end" telescopes and having Ningbo Sunny manufacture only "low-end" telescopes;

    (4)     the agreement occurred in or affected interstate or foreign commerce; and

    (5)     plaintiff was injured in its business or property because of the agreement.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular defendant, then you must find for that defendant and against plaintiff on plaintiff's product market allocation claim. If you find that the evidence is sufficient to prove all five

1   elements as to that defendant, then you must find for plaintiff and against that defendant on

2   plaintiff's product market allocation claim.

3

4   **AUTHORITY: ABA Ch. 2, Part C. Instruction 3**

5         Orion object to this instruction on multiple grounds.

6         First, Defendants' strategic deletion of "potential competitors" from the model instruction

7   is improper.

8         Second, Defendants' characterization of Orion's claim in Section 3 of the instruction is

9   inaccurate.  Orion is entitled to instructions that conform to the proof adduced at trial rather than

10  merely parroting Orion's complaint, which was filed before the vast majority of discovery in this

11  litigation took place.  As the Court's summary judgment order recognized, Orion's market

12  allocation claim rests on three pillars: (1) that the Synta Entities and Defendants have the capacity

13  to manufacture the same telescopes, (2) that they have never competed for Orion's business, and

14  (3) that they cooperate in other facets of their business.

15        The Court should issue Orion's proposed instructions, which fairly and accurately state

16  both Defendants' and Orion's contentions.

17

18

19

20

21

22

23

24

25

26

27

28

1

**DEFENDANTS' PROPOSED INSTRUCTION NO. 22**

2

**MARKET ALLOCATION—EXISTENCE AND ELEMENTS OF CONSPIRACY**

3

     The instructions I read you previously regarding the existence and formation of a price-

4

fixing conspiracy under Section 1 of the Sherman Act apply equally to Plaintiff's claim of market

5

allocation conspiracy under Section 1 of the Sherman Act.

6

7

**AUTHORITY:  Defendants propose this instruction to avoid requiring the Court to repeat instructions above regarding the existence and elements of an antitrust conspiracy.**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4832-1239-1592.2                                          DEFENDANTS' PROPOSED JURY INSTRUCTIONS

## DEFENDANTS' PROPOSED INSTRUCTION NO. 23

## MARKET ALLOCATION--RULE OF REASON

As I just explained, to prove a conspiracy to allocate markets, Plaintiff must prove that the agreement was between competitors or potential competitors.  If you find that there was an agreement to allocate markets,  but the agreement was not between competitors or potential competitors, then the agreement is illegal only if you find that the agreement was unreasonable.

In making this determination, you must apply the same instructions I gave you earlier regarding how to determine if a price-fixing agreement was unreasonable.

**AUTHORITY: Defendants propose this instruction to avoid requiring the Court to repeat instructions above regarding the rule of reason.  Defendants maintain that Orion has alleged its price-fixing and market allocation claims as per se violations of the Sherman Act. Therefore, if Orion is unable to prove a conspiracy between horizontal competitors under either or both of those theories, the jury must find for Defendants.  Defendants do not waive that argument by submitting this proposed instruction.**

**Orion's Position:**

Defendants' reservation of rights is illogical.  Defendants cannot claim that Orion is not entitled to prevail on a rule of reason analysis while simultaneously agreeing that the jury should be instructed on the rule of reason.

The Court should issue Orion's proposed instructions on market allocation.  Orion also provided redlines with its instructions so that the Court knows what it is ordering and how Orion's model instructions are modified.

The model instructions provided by the Modern Federal Jury Instructions and used by Orion treatise are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

SMRH:4832-1239-1592.2

**ORION'S PROPOSED ATTEMPTED MONOPOLIZATION INSTRUCTIONS**

**ORION'S ATTEMPTED MONOPOLIZATION INSTRUCTION NO. 1**
**ATTEMPTED MONOPOLIZATION: THE COMPLAINT AND THE STATUTE**

Orion claims that Defendants have attempted to monopolize the telescope manufacturing services market. More specifically, the plaintiff claims that Defendants unlawfully acquired Defendant Meade Instruments Corp. and its manufacturing facility in an attempt to monopolize the telescope manufacturing market. The law Defendants are charged with violating is called Section 2 of the Sherman Antitrust Act. That law, in pertinent part, provides: "Every person who shall ... attempt to monopolize part of the commerce among the several states, or with foreign nations [has committed an unlawful act]."

~~The plaintiff~~Orion claims that ~~the d~~Defendant~~s~~ ha~~s~~ve attempted to monopolize ~~[name the targeted business and market]~~the telescope manufacturing services market. More specifically, the plaintiff claims that ~~the d~~Defendant~~s~~ ~~[summarize allegations of the complaint~~unlawfully acquired Defendant Meade and its manufacturing facility in order to monopolize the telescope manufacturing market~~]~~. The law ~~the d~~Defendant~~s~~ ~~is~~are charged with violating is called ~~s~~Section 2 of the Sherman Antitrust Act. That law, in pertinent part, provides: "Every person who shall ... attempt to monopolize part of the commerce among the several states, or with foreign nations [has committed an unlawful act]."

Source and Authorities: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-16 (Monopolization) (Matthew Bender, 2015).

**Defendants' Objection:** It does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together. Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as the authoritative source for this purpose among antitrust practitioners—with no substantive modifications or argument. Defendants submit that the ABA

instructions are both more complete statements of the law, and presented more efficiently in fewer instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover, the model instructions used by Orion include certain instructions that are demonstrably improper as a matter of law, as explained in several of Defendants' other objections.

**Orion's Response**:

Defendants' attempt to turn the jury instruction process into a motion for summary judgment on Orion's attempted monopolization claim—a claim that Defendants did not even seek summary judgment on—is improper and should be rejected on that basis alone.

In any case, Defendants' argument is pure sophistry.  The Defendants in this action, while nominally distinct entities, are a single economic unit in the eyes of the law because they are all wholly owned subsidiaries of Defendant Ningbo Sunny Electronic Co., Ltd.  *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) ("A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one. They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver.").  This key fact distinguishes this case from the authorities and commentary cited by Defendants—all of which address co-defendants that are not wholly owned subsidiaries within the same corporate family, as in this case.

Because the law views Defendants as a single economic unit, the jury must look to the acts of the entire economic unit—*i.e.*, all of the Defendants—for purposes of Orion's attempted monopolization claim.  *Arandell Corp. v. Centerpoint Energy Servs.*, Inc., 900 F.3d 623, 631 (9th Cir. 2018) ("[The] burden of establishing any individual defendant's liability required showing only that the defendant's conduct played a 'role' in the overall anticompetitive scheme perpetrated by the enterprise as a whole." . . . [U]nder *Copperweld*, the plaintiff did not need to prove that "'specific Defendants' independently satisfied each necessary element of the claims," because "in a single-enterprise situation, it is the affiliated corporations' collective conduct—i.e., the conduct of the enterprise they jointly compose—that matters; it is the enterprise which must be shown to

1    satisfy the elements of a Section 2 claim.") (quoting *Lenox MacLaren Surgical Corp. v.*

2    *Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017).

3    　　　If Defendants were correct, a single holding company could monopolize an entire industry

4    of widgets and yet immune itself from Section 2 liability simply by placing each widget factory

5    within a separate subsidiary corporation.  That kind of corporate organization is called a trust.

6    Outlawing trusts is the purpose of the antitrust laws.

7    　　　Defendants' contention is a factual one, not a legal one.  If Defendants wish to argue to the

8    jury that Orion cannot prove that Defendants had a dangerous probability of monopolizing the

9    telescope manufacturing services market because the Synta Entities had too much market share,

10   they will be free to do so.  But Orion is entitled to present its claim, and this instruction, to the

11   jury.

12   　　　Orion will not repeat its rebuttal to Defendants' erroneous contention that the ABA model

13   instructions are superior here, but incorporates it by reference.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **ORION'S ATTEMPTED MONOPOLIZATION INSTRUCTION NO. 2**

2    **ATTEMPTED MONOPOLIZATION: THE PURPOSE OF THE STATUTE**

3        The purpose of the Sherman Antitrust Act is to preserve and encourage free and open

4    business competition so that the public may receive better goods and services at a lower cost.

5    Congress has determined that monopolies are bad for commerce and has declared that attempting

6    to monopolize interstate trade is illegal. Whether the defendant actually acquired or exercised

7    monopoly power is not important. The attempt to acquire monopoly power is itself a violation of

8    the law.

9        **Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

10   Civil ¶ 80.02, Instr. 80-17 (Monopolization) (Matthew Bender, 2015) (unmodified).

11       **Defendants' Objection:**  It does not make sense to mix and match between two different

12   sets of model instructions, because model instructions are designed to be used

13   together.  Defendants have proposed the ABA Section of Antitrust model instructions on this

14   issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

15   antitrust cases and recognized as the authoritative source for this purpose among antitrust

16   practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

17   instructions are both more complete statements of the law, and presented more efficiently in fewer

18   instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

19   proposed instructions.  Moreover, the model instructions used by Orion include certain

20   instructions that are demonstrably improper as a matter of law, as explained in several of

21   Defendants' other objections.

22       **Orion's Response:** Defendants' conclusory assertion that the ABA model instructions are

23   "the authoritative source" of jury instructions—advanced without any citation supporting the

24   claim—is not true.  The Modern Federal Jury Instructions treatise Orion has used in preparing is

25   specifically approved by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury

26   Instructions, and the fact that the ABA model instruction appears first—in a list organized by

27   alphabetical order—is immaterial.  Indeed, instructions from the Modern Federal Jury Instructions

28   source have been used in significant antitrust cases in this District.  *See* Jury Instructions, *In Re:*

1   *TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8,
2   ("Bias of Witnesses", "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury
3   Instructions, *Smithkline Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24,
4   2011), pg. 2-3 "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485)
5   (Wilken, J.).

6         The model instructions provided by the Modern Federal Jury Instructions treatise are
7   superior because they communicate the law to the jury in far simpler and more efficient manner
8   than the ABA model instructions.  The jury is going to be presented a significant number of
9   instructions, which counsels in favor of brevity and simplicity.

10        Defendants' failure to modify the ABA instructions to fit the facts of this case where the
11  ABA model instructions themselves direct that such modification should be made does not
12  counsel in favor of selecting Defendants' proposed instructions.

13        Finally, Defendants' assertion that "it does not make sense to mix and match between two
14  different sets of model instructions" is belied by the fact that Defendants' own proposed
15  instructions use multiple model instruction sources.  The fact is that none of the sources approved
16  by the Ninth Circuit Model Instructions provides model instructions for all of the claims that
17  Orion is asserting.

## ORION'S ATTEMPTED MONOPOLIZATION INSTRUCTION NO. 3

### ATTEMPTED MONOPOLIZATION: ELEMENTS OF THE OFFENSE

In order to prove the attempt to monopolize charge against Defendants, Orion must prove by a preponderance of the evidence each one of the following elements:

First, that Defendants had a specific intent to achieve a monopoly in a relevant market;

Second, that Defendants' attempted monopoly concerned goods and/or services in interstate or foreign commerce;

Third, that Defendants engaged in anticompetitive conduct to accomplish their intended goal of achieving a monopoly;

Fourth, that there was a dangerous probability that Defendants would sooner or later achieve their goal of a monopoly; and

Fifth, that Orion was injured in its business or property as a result of Defendants' actions.

I will explain each of these elements to you.  Because Orion must show injury for all of its claims, I will explain injury and damages to you at the end of these instructions.

**Redline:**

In order to prove the attempt to monopolize charge against ~~the d~~Defendants, ~~the plaintiff~~ Orion must prove by a preponderance of the evidence each one of the following elements:

First, that ~~the d~~Defendants had a specific intent to achieve a monopoly in a relevant market;

Second, that ~~the d~~Defendant~~'s~~' attempted monopoly concerned goods and/or services in interstate ~~(~~or foreign~~)~~ commerce;

Third, that ~~the d~~Defendants engaged in anticompetitive conduct to accomplish ~~its~~ their intended goal of achieving a monopoly;

Fourth, that there was a dangerous probability that ~~the d~~Defendants would sooner or later achieve ~~its~~ their goal of a monopoly; and

Fifth, that ~~the plaintiff~~ Orion was injured in its business or property as a result of ~~the d~~Defendant~~'s~~' actions.

1    I will explain each of these elements to you.  Because Orion must show injury for all of its

2    claims, I will explain injury and damages to you at the end of these instructions.

3    **Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

4    Civil ¶ 80.02, Instr. 80-18 (Monopolization) (Matthew Bender, 2015).

5

6    **Defendants' Objection**:  It does not make sense to mix and match between two different

7    sets of model instructions, because model instructions are designed to be used

8    together.  Defendants have proposed the ABA Section of Antitrust model instructions on this

9    issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

10   antitrust cases and recognized as the authoritative source for this purpose among antitrust

11   practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

12   instructions are both more complete statements of the law, and presented more efficiently in fewer

13   instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

14   proposed instructions.  Moreover, the model instructions used by Orion include certain

15   instructions that are demonstrably improper as a matter of law, as explained in several of

16   Defendants' other objections.

17   **Orion's Response**:  Defendants' attempt to turn the jury instruction process into a motion

18   for summary judgment on Orion's attempted monopolization claim—a claim that Defendants did

19   not even seek summary judgment on—is improper and should be rejected on that basis alone.

20      In any case, Defendants' argument is pure sophistry.  The Defendants in this action, while

21   nominally distinct entities, are a single economic unit in the eyes of the law because they are all

22   wholly owned subsidiaries of Defendant Ningbo Sunny Electronic Co., Ltd.  *Copperweld Corp. v.*

23   *Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) ("A parent and its wholly owned subsidiary have a

24   complete unity of interest. Their objectives are common, not disparate; their general corporate

25   actions are guided or determined not by two separate corporate consciousnesses, but one. They are

26   not unlike a multiple team of horses drawing a vehicle under the control of a single driver.").  This

27   key fact distinguishes this case from the authorities and commentary cited by Defendants—all of

28

1   which address co-defendants that are not wholly owned subsidiaries within a single corporate

2   family, as in this case.

3       Because the law views Defendants as a single economic unit, the jury must look to the acts

4   of the entire economic unit—*i.e.*, all of the Defendants—for purposes of Orion's attempted

5   monopolization claim.  *Arandell Corp. v. Centerpoint Energy Servs.*, Inc., 900 F.3d 623, 631 (9th

6   Cir. 2018) ("[The] burden of establishing any individual defendant's liability required showing

7   only that the defendant's conduct played a 'role' in the overall anticompetitive scheme perpetrated

8   by the enterprise as a whole." . . . [U]nder *Copperweld*, the plaintiff did not need to prove that

9   "'specific Defendants' independently satisfied each necessary element of the claims," because "in

10  a single-enterprise situation, it is the affiliated corporations' collective conduct—i.e., the conduct

11  of the enterprise they jointly compose—that matters; it is the enterprise which must be shown to

12  satisfy the elements of a Section 2 claim.") (quoting *Lenox MacLaren Surgical Corp. v.*

13  *Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017).

14      If Defendants were correct, a single holding company could monopolize an entire industry

15  of widgets and yet immune itself from Section 2 liability simply by placing each widget factory

16  within a separate subsidiary corporation.  That kind of corporate organization is called a trust.

17  Outlawing trusts is the purpose of the antitrust laws.

18      Defendants' contention is a factual one, not a legal one.  If Defendants wish to argue to the

19  jury that Orion cannot prove that Defendants had a dangerous probability of monopolizing the

20  telescope manufacturing services market because the Synta Entities had too much market share,

21  they will be free to do so.  But Orion is entitled to present its claim, and this instruction, to the

22  jury.

23      Orion will not repeat its rebuttal to Defendants' erroneous contention that the ABA model

24  instructions are superior here, but incorporates it by reference.

25

26

27

28

SMRH:4832-1239-1592.2                          DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**ORION'S MARKET ALLOCATION INSTRUCTION NO. 4**

**<u>ATTEMPTED MONOPOLIZATION: PARENT CORPORATIONS AND WHOLLY</u>**

**<u>OWNED SUBSIDIARIES ARE A SINGLE ENTERPRISE</u>**

Because Defendants Sunny Optics, Inc. and Meade Instrument Corp. are wholly owned subsidiaries of Defendant Ningbo Sunny Electronic. Co., Ltd., the law views Defendants as a single enterprise for purposes of the antitrust laws.  Thus, to prevail on its attempted monopolization claim, Orion must prove, by a preponderance of the evidence, that the Defendants' collective conduct—that is, the conduct of the enterprise they jointly compose—satisfy each of the elements I have explained to you.

In other words, Orion does not need to prove that each specific Defendant independently satisfied each element of the claim.  If you find that Orion has proven by a preponderance of evidence that the Defendants have collectively satisfied each element of the claim, then you must find each Defendant liable so long as that Defendant had a role in the overall anticompetitive scheme perpetrated by the enterprise as a whole.

<u>Sources and Authorities</u>:  *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) ("A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one. They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver."); *Arandell Corp. v. Centerpoint Energy Servs.*, Inc., 900 F.3d 623, 631 (9th Cir. 2018) ("[The] burden of establishing any individual defendant's liability required showing only that the defendant's conduct played a 'role' in the overall anticompetitive scheme perpetrated by the enterprise as a whole." . . . [U]nder *Copperweld*, the plaintiff did not need to prove that "'specific Defendants' independently satisfied each necessary element of the claims," because "in a single-enterprise situation, it is the affiliated corporations' collective conduct—i.e., the conduct of the enterprise they jointly compose—that matters; it is the enterprise which must be shown to satisfy the elements of a Section 2 claim.") (quoting *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017).

1   **Defendants' Objection:**  Orion has created this instruction out of whole cloth.  As Orion's

2   own instructions above make clear, Orion is attempting to instruct the jury to find that Defendant

3   Meade attempted to monopolize the telescopes market because ***it was acquired*** by another

4   company, Ningbo Sunny.  That makes no sense.  The case Orion cites makes clear that

5   "*Copperweld* does not support holding a subsidiary liable for the parent's independent conduct."

6   *Arandell Corp. v. Centerpoint Energy Serv., Inc.*, 900 F.3d 623, 633 (9th Cir. 2018).  An antitrust

7   plaintiff is "still required to come forward with evidence that each defendant independently

8   participated in the enterprise's scheme, to justify holding that defendant liable as part of the

9   enterprise." *Id.*; *see also id.* (as with any defendant, "[p]laintiffs must put forth evidence that [the

10  subsidiary] engaged in anticompetitive conduct."); *In re Dynamic Random Access Memory*

11  *Antitrust Litig.*, No. M 02-1486-PJH, 2007 WL 9752971, at *5 (N.D. Cal. Feb. 20, 2007) (granting

12  summary judgment to parent company because plaintiff failed to prove parent's participation in

13  the conspiracy beyond relationship to subsidiary).  If Orion wants to argue that Defendant Meade

14  attempted to monopolize the telescopes market, then it must come forward with evidence of

15  Meade's conduct.  Because this Orion-created instruction suggests otherwise, it is not an accurate

16  statement of the law.

17      **Orion's Response**:

18      Orion did not create this instruction out of whole cloth, but rather binding Supreme Court

19  and Ninth Circuit precedent.  Indeed, the *Arandell* case was decided after any of the model

20  instruction sources approved by the Ninth Circuit were published.  Drafting a new instruction is

21  thus required.

22      Defendants' attempt to turn the jury instruction process into a motion for summary

23  judgment on Orion's attempted monopolization claim—a claim that Defendants did not even seek

24  summary judgment on—is improper and should be rejected on that basis alone.

25      In any case, Defendants' argument is pure sophistry.  The Defendants in this action, while

26  nominally distinct entities, are a single economic unit in the eyes of the law because they are all

27  wholly owned subsidiaries of Defendant Ningbo Sunny Electronic Co., Ltd.  *Copperweld Corp. v.*

28  *Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) ("A parent and its wholly owned subsidiary have a

1   complete unity of interest. Their objectives are common, not disparate; their general corporate

2   actions are guided or determined not by two separate corporate consciousnesses, but one. They are

3   not unlike a multiple team of horses drawing a vehicle under the control of a single driver.").  This

4   key fact distinguishes this case from the authorities and commentary cited by Defendants—all of

5   which address co-defendants that are not wholly owned subsidiaries within a single corporate

6   family, as in this case.

7          Because the law views Defendants as a single economic unit, the jury must look to the acts

8   of the entire economic unit—*i.e.*, all of the Defendants—for purposes of Orion's attempted

9   monopolization claim.  *Arandell Corp. v. Centerpoint Energy Servs.*, Inc., 900 F.3d 623, 631 (9th

10  Cir. 2018) ("[The] burden of establishing any individual defendant's liability required showing

11  only that the defendant's conduct played a 'role' in the overall anticompetitive scheme perpetrated

12  by the enterprise as a whole." . . . [U]nder *Copperweld*, the plaintiff did not need to prove that

13  "'specific Defendants' independently satisfied each necessary element of the claims," because "in

14  a single-enterprise situation, it is the affiliated corporations' collective conduct—i.e., the conduct

15  of the enterprise they jointly compose—that matters; it is the enterprise which must be shown to

16  satisfy the elements of a Section 2 claim.") (quoting *Lenox MacLaren Surgical Corp. v.*

17  *Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017).

18         If Defendants were correct, a single holding company could monopolize an entire industry

19  of widgets and yet immune itself from Section 2 liability simply by placing each widget factory

20  within a separate subsidiary corporation.  That kind of corporate organization is called a trust.

21  Outlawing trusts is the purpose of the antitrust laws.

22         Defendants' contention is a factual one, not a legal one.  If Defendants wish to argue to the

23  jury that Orion cannot prove that Defendants had a dangerous probability of monopolizing the

24  telescope manufacturing services market because the Synta Entities had too much market share,

25  they will be free to do so.  But Orion is entitled to present its claim, and this instruction, to the

26  jury.

27         Orion will not repeat its rebuttal to Defendants' erroneous contention that the ABA model

28  instructions are superior here, but incorporates it by reference.

## ORION'S ATTEMPTED MONOPOLIZATION INSTRUCTION NO. 5
## ATTEMPTED MONOPOLIZATION: FIRST ELEMENT—SPECIFIC INTENT TO ACHIEVE MONOPOLY

The first element Orion must prove by a preponderance of the evidence is that Defendants acted with the intention of achieving a monopoly in the relevant market. I will explain what a monopoly is, in some detail, in a moment. Essentially, what Orion must prove to meet its burden on the first element, is that Defendants acted with the purpose or conscious object of acquiring the power to control prices or exclude competition in the relevant market.

**Redline:**

The first element ~~the plaintiff~~ Orion must prove by a preponderance of the evidence is that ~~the d~~Defendant~~s~~ acted with the intention of achieving a monopoly in the relevant market. I will explain what a monopoly is, in some detail, in a moment. Essentially, what ~~the plaintiff~~ Orion must prove to meet its burden on the first element, is that ~~the d~~Defendant~~s~~ acted with the purpose or conscious object of acquiring the power to control prices or exclude competition in the relevant market.

Source and Authorities: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-19 (Monopolization) (Matthew Bender, 2015).

**Defendants' Objection**: It does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together. Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as the authoritative source for this purpose among antitrust practitioners—with no substantive modifications or argument. Defendants submit that the ABA instructions are both more complete statements of the law, and presented more efficiently in fewer instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's proposed instructions. Moreover, the model instructions used by Orion include certain

1 instructions that are demonstrably improper as a matter of law, as explained in several of

2 Defendants' other objections.

3        **Orion's Response**:

4        Defendants' attempt to turn the jury instruction process into a motion for summary

5 judgment on Orion's attempted monopolization claim—a claim that Defendants did not even seek

6 summary judgment on—is improper and should be rejected on that basis alone.

7        In any case, Defendants' argument is pure sophistry.  The Defendants in this action, while

8 nominally distinct entities, are a single economic unit in the eyes of the law because they are all

9 wholly owned subsidiaries of Defendant Ningbo Sunny Electronic Co., Ltd.  *Copperweld Corp. v.*

10 *Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) ("A parent and its wholly owned subsidiary have a

11 complete unity of interest. Their objectives are common, not disparate; their general corporate

12 actions are guided or determined not by two separate corporate consciousnesses, but one. They are

13 not unlike a multiple team of horses drawing a vehicle under the control of a single driver.").  This

14 key fact distinguishes this case from the authorities and commentary cited by Defendants—all of

15 which address co-defendants that are not wholly owned subsidiaries within a single corporate

16 family, as in this case.

17        Because the law views Defendants as a single economic unit, the jury must look to the acts

18 of the entire economic unit—*i.e.*, all of the Defendants—for purposes of Orion's attempted

19 monopolization claim.  *Arandell Corp. v. Centerpoint Energy Servs.*, Inc., 900 F.3d 623, 631 (9th

20 Cir. 2018) ("[The] burden of establishing any individual defendant's liability required showing

21 only that the defendant's conduct played a 'role' in the overall anticompetitive scheme perpetrated

22 by the enterprise as a whole." . . . [U]nder *Copperweld*, the plaintiff did not need to prove that

23 "'specific Defendants' independently satisfied each necessary element of the claims," because "in

24 a single-enterprise situation, it is the affiliated corporations' collective conduct—i.e., the conduct

25 of the enterprise they jointly compose—that matters; it is the enterprise which must be shown to

26 satisfy the elements of a Section 2 claim.") (quoting *Lenox MacLaren Surgical Corp. v.*

27 *Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017).

28

1    If Defendants were correct, a single holding company could monopolize an entire industry

2  of widgets and yet immune itself from Section 2 liability simply by placing each widget factory

3  within a separate subsidiary corporation.  That kind of corporate organization is called a trust.

4  Outlawing trusts is the purpose of the antitrust laws.

5    Defendants' contention is a factual one, not a legal one.  If Defendants wish to argue to the

6  jury that Orion cannot prove that Defendants had a dangerous probability of monopolizing the

7  telescope manufacturing services market because the Synta Entities had too much market share,

8  they will be free to do so.  But Orion is entitled to present its claim, and this instruction, to the

9  jury.

10    Orion will not repeat its rebuttal to Defendants' erroneous contention that the ABA model

11  instructions are superior here, but incorporates it by reference.

1

2       **ORION'S ATTEMPTED MONOPOLIZATION INSTRUCTION NO. 6**

3     **ATTEMPTED MONOPOLIZATION: MANNER OF PROOF—DIRECT EVIDENCE**

4       Orion may prove that Defendants had the specific intent to monopolize by presenting

5 evidence of direct statements of Defendant's intent to obtain a monopoly in the relevant market.

6 Such proof of specific intent may consist of documents prepared by responsible officers or

7 employees of Defendants at or about the time in question, or of statements made by responsible

8 officers or employees of Defendants.

9

10     **Redline:**

11

12     ~~The plaintiff~~ Orion may prove that ~~the d~~Defendants had the specific intent to monopolize

13 by presenting evidence of direct statements of ~~the d~~Defendant's intent to obtain a monopoly in the

14 relevant market. Such proof of specific intent may consist of documents prepared by responsible

15 officers or employees of ~~the d~~Defendants at or about the time in question, or of statements made

16 by responsible officers or employees of ~~the d~~Defendants.

17     **Source and Authorities**: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

18 Civil ¶ 80.02, Instr. 80-20 (Monopolization) (Matthew Bender, 2015).

19     **Defendants' Objection:**  It does not make sense to mix and match between two different

20 sets of model instructions, because model instructions are designed to be used

21 together.  Defendants have proposed the ABA Section of Antitrust model instructions on this

22 issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

23 antitrust cases and recognized as the authoritative source for this purpose among antitrust

24 practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

25 instructions are both more complete statements of the law, and presented more efficiently in fewer

26 instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

27 proposed instructions.  Moreover, the model instructions used by Orion include certain

28

1   instructions that are demonstrably improper as a matter of law, as explained in several of

2   Defendants' other objections.

3          **Orion's Response:**

4          Defendants' conclusory assertion that the ABA model instructions are "the authoritative

5   source" of jury instructions—advanced without any citation supporting the claim—is not true.

6   The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

7   by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

8   the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

9   Indeed, instructions from the Modern Federal Jury Instructions source have been used in

10  significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

11  *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

12  "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

13  *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pg. 2-3

14  "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

15         The model instructions provided by the Modern Federal Jury Instructions treatise are

16  superior because they communicate the law to the jury in far simpler and more efficient manner

17  than the ABA model instructions.  The jury is going to be presented a significant number of

18  instructions, which counsels in favor of brevity and simplicity.

19         Defendants' failure to modify the ABA instructions to fit the facts of this case where the

20  ABA model instructions themselves direct that such modification should be made does not

21  counsel in favor of selecting Defendants' proposed instructions.

22         Finally, Defendants' assertion that "it does not make sense to mix and match between two

23  different sets of model instructions" is belied by the fact that Defendants' own proposed

24  instructions use multiple model instruction sources.  The fact is that none of the sources approved

25  by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

26  Orion is asserting.

27

28

**ORION'S ATTEMPTED MONOPOLIZATION INSTRUCTION NO. 7**

**ATTEMPTED MONOPOLIZATION: MANNER OF PROOF—INDIRECT EVIDENCE**

Orion may also prove that Defendants had the specific intent to monopolize through evidence of Defendants' actions. For example, if the evidence shows that the natural and predictable result of Defendants' conduct in the relevant market was to give Defendants control over prices or to exclude or destroy competition, and that this outcome was so plainly predictable that Defendants must have had that as its purpose, then you may find that Defendants specifically intended to acquire monopoly power.

**Redline:**

~~The plaintiff~~ Orion may also prove that ~~the d~~Defendants had the specific intent to monopolize through evidence of ~~the d~~Defendant~~'s~~s' actions. For example, if the evidence shows that the natural and predictable result of ~~the d~~Defendant~~'s~~s' conduct in the relevant market was to give ~~the d~~Defendants control over prices or to exclude or destroy competition, and that this outcome was so plainly predictable that ~~the d~~Defendants must have had that as its purpose, then you may find that ~~the d~~Defendants specifically intended to acquire monopoly power.

**Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-21 (Monopolization) (Matthew Bender, 2015).

**Defendants' Objection:** It does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together. Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as the authoritative source for this purpose among antitrust practitioners—with no substantive modifications or argument. Defendants submit that the ABA instructions are both more complete statements of the law, and presented more efficiently in fewer instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

1    proposed instructions.  Moreover, the model instructions used by Orion include certain

2    instructions that are demonstrably improper as a matter of law, as explained in several of

3    Defendants' other objections.

4

5        **Orion's Response:**

6        Defendants' conclusory assertion that the ABA model instructions are "the authoritative

7    source" of jury instructions—advanced without any citation supporting the claim—is not true.

8    The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

9    by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

10   the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

11   Indeed, instructions from the Modern Federal Jury Instructions source have been used in

12   significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

13   *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

14   "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

15   *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pg. 2-3

16   "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

17       The model instructions provided by the Modern Federal Jury Instructions treatise are

18   superior because they communicate the law to the jury in far simpler and more efficient manner

19   than the ABA model instructions.  The jury is going to be presented a significant number of

20   instructions, which counsels in favor of brevity and simplicity.

21       Defendants' failure to modify the ABA instructions to fit the facts of this case where the

22   ABA model instructions themselves direct that such modification should be made does not

23   counsel in favor of selecting Defendants' proposed instructions.

24       Finally, Defendants' assertion that "it does not make sense to mix and match between two

25   different sets of model instructions" is belied by the fact that Defendants' own proposed

26   instructions use multiple model instruction sources.  The fact is that none of the sources approved

27   by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

28   Orion is asserting.

SMRH:4832-1239-1592.2

## ORION'S ATTEMPTED MONOPOLIZATION INSTRUCTION NO. 8
## **ATTEMPTED MONOPOLIZATION: MONOPOLY DEFINED**

As I have told you, Orion must prove that Defendants had a specific intent or purpose to obtain a monopoly in the relevant market. It is therefore important for you to understand what a monopoly is. A firm has a monopoly when it has the power to dominate or control a market. More specifically, a firm has a monopoly when it has the power to control prices or to exclude competition in the relevant market.

The power to control prices is simply the power of a company to establish significantly higher prices for its goods than those charged by competitors for equivalent goods without suffering a substantial loss of business to competitors. Thus, if a company that has raised prices eventually has to lower its prices to the level charged by its competitors, it may not have a monopoly in the sense of the power to control prices.

The power to exclude competition means the power of a company to dominate a market by eliminating existing competition from the market or by preventing new competition from entering that market. In other words, the power to exclude competition is the power to place major barriers in the way of other companies trying to remain in or enter the particular area of trade and compete for customers. It may be shown by evidence of a company's reducing or restricting the share of the market held by competitors by means other than the normal process of competition.

To prove the charge of attempted monopolization, Orion does not have to show that Defendants achieved a monopoly. That is, Orion does not have to prove that Defendants actually gained the power to control prices or exclude competition. Instead, Orion must show, by a preponderance of the evidence, that Defendants purposefully attempted to gain such power.

Source and Authorities: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-22 (Monopolization) (Matthew Bender, 2015).

**Redline:**

1    As I have told you, ~~the plaintiff~~ Orion must prove that ~~the d~~Defendants had a specific

2  intent or purpose to obtain a monopoly in the relevant market. It is therefore important for you to

3  understand what a monopoly is. A firm has a monopoly when it has the power to dominate or

4  control a market. More specifically, a firm has a monopoly when it has the power to control prices

5  or to exclude competition in the relevant market.

6    The power to control prices is simply the power of a company to establish significantly

7  higher prices for its goods than those charged by competitors for equivalent goods without

8  suffering a substantial loss of business to competitors. Thus, if a company that has raised prices

9  eventually has to lower its prices to the level charged by its competitors, it may not have a

10  monopoly in the sense of the power to control prices.

11    The power to exclude competition means the power of a company to dominate a market by

12  eliminating existing competition from the market or by preventing new competition from entering

13  that market. In other words, the power to exclude competition is the power to place major barriers

14  in the way of other companies trying to remain in or enter the particular area of trade and compete

15  for customers. It may be shown by evidence of a company's reducing or restricting the share of the

16  market held by competitors by means other than the normal process of competition.

17    To prove the charge of attempted monopolization, ~~the plaintiff~~ Orion does not have to

18  show that ~~the d~~Defendants achieved a monopoly. That is, ~~the plaintiff~~ Orion does not have to

19  prove that ~~the d~~Defendants actually gained the power to control prices or exclude competition in

20  order to satisfy this element. Instead, ~~the plaintiff~~ Orion must show, by a preponderance of the

21  evidence, that ~~the d~~Defendants purposefully attempted to gain such power.

22    **Source and Authorities**: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

23  Civil ¶ 80.02, Instr. 80-22 (Monopolization) (Matthew Bender, 2015).

24    **Defendants' Objection:** Defendants object to the last sentence of the last paragraph of this

25  proposed instruction on grounds that it purports to state Plaintiff's evidentiary obligations in

26  substantiating this claim, but provides an incomplete list of the essential elements. Such omission

27  could result in juror confusion and prejudice to Defendants.

28

1      **Defendants' Objection:** It does not make sense to mix and match between two different

2   sets of model instructions, because model instructions are designed to be used

3   together.  Defendants have proposed the ABA Section of Antitrust model instructions on this

4   issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

5   antitrust cases and recognized as the authoritative source for this purpose among antitrust

6   practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

7   instructions are both more complete statements of the law, and presented more efficiently in fewer

8   instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

9   proposed instructions.  Moreover, the model instructions used by Orion include certain

10  instructions that are demonstrably improper as a matter of law, as explained in several of

11  Defendants' other objections.

12

13      **Orion's Response:**

14      Orion's modification to the proposed instruction makes clear that the instruction is

15  discussing this element alone.

16      Defendants' conclusory assertion that the ABA model instructions are "the authoritative

17  source" of jury instructions—advanced without any citation supporting the claim—is not true.

18  The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

19  by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

20  the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

21  Indeed, instructions from the Modern Federal Jury Instructions source have been used in

22  significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

23  *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

24  "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

25  *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pg. 2-3

26  "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

27      The model instructions provided by the Modern Federal Jury Instructions treatise are

28  superior because they communicate the law to the jury in far simpler and more efficient manner

than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

Defendants' failure to modify the ABA instructions to fit the facts of this case where the ABA model instructions themselves direct that such modification should be made does not counsel in favor of selecting Defendants' proposed instructions.

Finally, Defendants' assertion that "it does not make sense to mix and match between two different sets of model instructions" is belied by the fact that Defendants' own proposed instructions use multiple model instruction sources.  The fact is that none of the sources approved by the Ninth Circuit Model Instructions provides model instructions for all of the claims that Orion is asserting.

1    **ORION'S ATTEMPTED MONOPOLIZATION INSTRUCTION NO. 9**

2    <u>**ATTEMPTED MONOPOLIZATION: RELEVANT MARKET DEFINED**</u>

3    As I have told you, Orion must prove that Defendants acted with the purpose of acquiring

4    the power to control prices or exclude competition in the relevant market. There are two aspects

5    that must be considered in defining a relevant market: the products that are in competition, and the

6    geographic area within which the competition takes place. For convenience, we refer to the first

7    aspect as the relevant product market, and to the second as the relevant geographic market.

8    The basic idea of a relevant product market is that the products within it are reasonable

9    substitutes from a buyer's point of view. This does not mean that products must be identical to be

10    in the same relevant market. It means that, as a matter of practical fact and the actual behavior of

11    buyers, the products must be reasonable substitutes for the buyer's needs.

12    One way you may be able to tell whether products are reasonable substitutes for each other

13    is by considering whether changes in the price of one product have fairly direct and substantial

14    effects upon the prices or sales of the other product. If so, the products are in the same market.

15    You may also consider how people in the industry and the public at large view the products;

16    whether the products have the same or similar characteristics or uses; whether the products have

17    similar prices; whether the products are sold to similar customers; and whether they are distributed

18    and sold by the same kinds of distributors or dealers.

19    In sum, to determine the relevant product market, you must decide which products

20    compete with each other. This is a practical determination. Products do not have to be identical to

21    be in the same relevant market, but they must be sufficiently similar in the respects I have

22    mentioned to compete meaningfully with each other.

23    The other aspect of relevant market to be considered is the geographic area within which

24    the products compete. This area of effective competition need not be of any particular size. The

25    relevant geographic market is the area in which Defendants are constrained by competition they

26    face from suppliers of competing products. To determine the proper geographic market, you may

27    consider if changes in prices at one location have fairly direct or substantial effects on prices or

28    sales at other locations, and if the people in the industry and the public at large view sellers in the

1  different locations as being in competition with each other. You may also consider how readily the

2  seller can shift from selling in one location to selling in another. In addition, you may consider

3  where purchasers, as a practical matter, can buy the product; that is, whether buyers residing in

4  one location buy from the same sources as buyers residing in another location or if they find it

5  more practical or convenient to buy from local sources rather than more distant sources. In this

6  regard, you may consider whether a slight increase in prices charged by suppliers in one location

7  would cause a substantial number of purchasers to turn to more remote suppliers. To the extent

8  that it would, the relevant market may include those more remote suppliers.

9

10  **Redline:**

11

12  As I have told you, ~~the plaintiff~~ Orion must prove that ~~the d~~Defendant~~s~~ acted with the

13  purpose of acquiring the power to control prices or exclude competition in the relevant market.

14  There are two aspects that must be considered in defining a relevant market: the products that are

15  in competition, and the geographic area within which the competition takes place. For

16  convenience, we refer to the first aspect as the relevant product market, and to the second as the

17  relevant geographic market.

18  The basic idea of a relevant product market is that the products within it are reasonable

19  substitutes from a buyer's point of view. This does not mean that products must be identical to be

20  in the same relevant market. It means that, as a matter of practical fact and the actual behavior of

21  buyers, the products must be reasonable substitutes for the buyer's needs.

22  ~~[If submarkets or cluster-of-products markets are at issue, then this instruction must be~~

23  ~~tailored to accommodate such issues.]~~

24  One way you may be able to tell whether products are reasonable substitutes for each other

25  is by considering whether changes in the price of one product have fairly direct and substantial

26  effects upon the prices or sales of the other product. If so, the products are in the same market.

27  You may also consider how people in the industry and the public at large view the products;

28  whether the products have the same or similar characteristics or uses; whether the products have

1  similar prices; whether the products are sold to similar customers; and whether they are distributed

2  and sold by the same kinds of distributors or dealers.

3          In sum, to determine the relevant product market, you must decide which products

4  compete with each other. This is a practical determination. Products do not have to be identical to

5  be in the same relevant market, but they must be sufficiently similar in the respects I have

6  mentioned to compete meaningfully with each other.

7          The other aspect of relevant market to be considered is the geographic area within which

8  the products compete. This area of effective competition need not be of any particular size. The

9  relevant geographic market is the area in which ~~the d~~Defendant~~s~~ ~~is~~ are constrained by competition

10  ~~he~~ they face~~s~~ from suppliers of competing products. To determine the proper geographic market,

11  you may consider if changes in prices at one location have fairly direct or substantial effects on

12  prices or sales at other locations, and if the people in the industry and the public at large view

13  sellers in the different locations as being in competition with each other. You may also consider

14  how readily the seller can shift from selling in one location to selling in another. In addition, you

15  may consider where purchasers, as a practical matter, can buy the product; that is, whether buyers

16  residing in one location buy from the same sources as buyers residing in another location or if they

17  find it more practical or convenient to buy from local sources rather than more distant sources. In

18  this regard, you may consider whether a slight increase in prices charged by suppliers in one

19  location would cause a substantial number of purchasers to turn to more remote suppliers. To the

20  extent that it would, the relevant market may include those more remote suppliers.

21          **Source and Authorities**: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

22  Civil ¶ 80.02, Instr. 80-23 (Monopolization) (Matthew Bender, 2015).

23          **Defendants' Objection:**  It does not make sense to mix and match between two different

24  sets of model instructions, because model instructions are designed to be used

25  together.  Defendants have proposed the ABA Section of Antitrust model instructions on this

26  issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

27  antitrust cases and recognized as the authoritative source for this purpose among antitrust

28  practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

1   instructions are both more complete statements of the law, and presented more efficiently in fewer

2   instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

3   proposed instructions.  Moreover, the model instructions used by Orion include certain

4   instructions that are demonstrably improper as a matter of law, as explained in several of

5   Defendants' other objections.

6          **Orion's Response:**

7          The ABA model instruction's description of the rule of reason is unnecessarily convoluted

8   and confusing for the jury.  Indeed, it spans <u>four different instructions</u>.  Again, the Modern Federal

9   Jury Instructions provide the jury the law in a brief and concise manner, which is a feature, not a

10  bug.

11         Defendants' conclusory assertion that the ABA model instructions are "the authoritative

12  source" of jury instructions—advanced without any citation supporting the claim—is not true.

13  The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

14  by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

15  the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

16  Indeed, instructions from the Modern Federal Jury Instructions source have been used in

17  significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

18  *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

19  "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

20  *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pg. 2-3

21  "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

22         The model instructions provided by the Modern Federal Jury Instructions treatise are

23  superior because they communicate the law to the jury in far simpler and more efficient manner

24  than the ABA model instructions.  The jury is going to be presented a significant number of

25  instructions, which counsels in favor of brevity and simplicity.

26         Defendants' failure to modify the ABA instructions to fit the facts of this case where the

27  ABA model instructions themselves direct that such modification should be made does not

28  counsel in favor of selecting Defendants' proposed instructions.

1    Finally, Defendant's assertion that "it does not make sense to mix and match between two

2  different sets of model instructions" is belied by the fact that Defendants' own proposed

3  instructions use multiple model instruction sources.  The fact is that none of the sources approved

4  by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

5  Orion is asserting.

SMRH:4832-1239-1592.2
DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**ORION'S ATTEMPTED MONOPOLIZATION INSTRUCTION NO. 10**

**ATTEMPTED MONOPOLIZATION: SECOND ELEMENT—INTERSTATE**

**COMMERCE**

The instructions I read you previously regarding the interstate commerce element as to Orion's Section 1 price and credit term fixing claim apply equally to Orion's Section 2 attempted monopolization claim.

**Source and Authorities:** Orion proposes this instruction to avoid duplicative instructions and to speed the jury instruction process.

**ORION'S ATTEMPTED MONOPOLIZATION INSTRUCTION NO. 11**

**ATTEMPTED MONOPOLIZATION: THIRD ELEMENT—ANTICOMPETITIVE**

**CONDUCT**

The third element Orion must prove, by a preponderance of the evidence, is that Defendants engaged in anticompetitive conduct to accomplish their goal of obtaining a monopoly.

Attempt to monopolize violations are not designed to regulate every act that might be considered unfair competition. There are other laws that deal directly with unfair means of competition. Attempt to monopolize violations are concerned only with unfair or unreasonable practices that have the actual or reasonably foreseeable effect of substantially impairing or destroying competition in a relevant market.

As I have told you, the reason Congress passed the antitrust laws was to encourage honest and vigorous competition. The fact that one company is successful does not mean that its conduct is anticompetitive.

**Redline:**

The third element ~~the plaintiff~~ Orion must prove, by a preponderance of the evidence, is that ~~the d~~Defendant~~s~~ engaged in anticompetitive conduct to accomplish ~~its~~ their goal of obtaining a monopoly.

Attempt to monopolize violations are not designed to regulate every act that might be considered unfair competition. There are other laws that deal directly with unfair means of competition. Attempt to monopolize violations are concerned only with unfair or unreasonable practices that have the actual or reasonably foreseeable effect of substantially impairing or destroying competition in a relevant market.

As I have told you, the reason Congress passed the antitrust laws was to encourage honest and vigorous competition. The fact that one company is successful does not mean that its conduct is anticompetitive.

1    Source and Authorities: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil

2    ¶ 80.02, Instr. 80-27 (Monopolization) (Matthew Bender, 2015).

3    **Defendants' Objection:**  It does not make sense to mix and match between two different

4    sets of model instructions, because model instructions are designed to be used

5    together.  Defendants have proposed the ABA Section of Antitrust model instructions on this

6    issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

7    antitrust cases and recognized as the authoritative source for this purpose among antitrust

8    practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

9    instructions are both more complete statements of the law, and presented more efficiently in fewer

10   instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

11   proposed instructions.  Moreover, the model instructions used by Orion include certain

12   instructions that are demonstrably improper as a matter of law, as explained in several of

13   Defendants' other objections.

14

15   **Orion's Response:**

16   Defendants' objection lacks merit.  The Defendants in this action, while nominally distinct

17   entities, are a single economic unit in the eyes of the law because they are all wholly owned

18   subsidiaries of Defendant Ningbo Sunny Electronic Co., Ltd.  *Copperweld Corp. v. Indep. Tube*

19   *Corp.*, 467 U.S. 752, 771 (1984) ("A parent and its wholly owned subsidiary have a complete

20   unity of interest. Their objectives are common, not disparate; their general corporate actions are

21   guided or determined not by two separate corporate consciousnesses, but one. They are not unlike

22   a multiple team of horses drawing a vehicle under the control of a single driver.").  This key fact

23   distinguishes this case from the authorities and commentary cited by Defendants—all of which

24   address co-defendants that are not wholly owned subsidiaries within the same corporate family, as

25   in this case.

26   Because the law views Defendants as a single economic unit, the jury must look to the acts

27   of the entire economic unit—*i.e.*, all of the Defendants—for purposes of Orion's attempted

28   monopolization claim.  *Arandell Corp. v. Centerpoint Energy Servs.*, Inc., 900 F.3d 623, 631 (9th

-166-

1  Cir. 2018) ("[The] burden of establishing any individual defendant's liability required showing

2  only that the defendant's conduct played a 'role' in the overall anticompetitive scheme perpetrated

3  by the enterprise as a whole." . . . [U]nder *Copperweld*, the plaintiff did not need to prove that

4  "'specific Defendants' independently satisfied each necessary element of the claims," because "in

5  a single-enterprise situation, it is the affiliated corporations' collective conduct—i.e., the conduct

6  of the enterprise they jointly compose—that matters; it is the enterprise which must be shown to

7  satisfy the elements of a Section 2 claim.") (quoting *Lenox MacLaren Surgical Corp. v.*

8  *Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017).

9      If Defendants were correct, a single holding company could monopolize an entire industry

10  of widgets and yet immune itself from Section 2 liability simply by placing each widget factory

11  within a separate subsidiary corporation.  That kind of corporate organization is called a trust.

12  Outlawing trusts is the purpose of the antitrust laws.

13      Defendants' contention is a factual one, not a legal one.  If Defendants wish to argue to the

14  jury that Orion cannot prove that Defendants had a dangerous probability of monopolizing the

15  telescope manufacturing services market because the Synta Entities had too much market share,

16  they will be free to do so.  But Orion is entitled to present its claim, and this instruction, to the

17  jury.

18      Orion will not repeat its rebuttal to Defendants' erroneous contention that the ABA model

19  instructions are superior here, but incorporates it by reference.

20

21

22

23

24

25

26

27

28

SMRH:4832-1239-1592.2                                    DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1    **ORION'S ATTEMPTED MONOPOLIZATION INSTRUCTION NO. 12**

2    **ATTEMPTED MONOPOLIZATION: ANTICOMPETITIVE CONDUCT DEFINED**

3          Anticompetitive conduct is conduct that has the effect of preventing or excluding

4    competition or frustrating or hurting the efforts of other firms to compete for customers within the

5    relevant market. It is conduct that does not benefit consumers by making a better product or

6    service available, or in other ways, but instead has the effect of hurting competition. To be

7    anticompetitive, it is not necessary that such conduct be unlawful in and of itself, so long as it has

8    the effect of achieving monopoly power.

9          However, it is important to remember that not all behavior that injures competitors is

10   "anticompetitive." Every business has the right to increase its success by using legitimate good

11   business practices, such as increasing efficiency or offering a superior product. A monopoly

12   achieved as a result of such legitimate good business practices is not unlawful.

13         It can sometimes be difficult to determine whether an act is a good business practice or an

14   anticompetitive action. Some conduct may both help customers and hurt competitors. If this seems

15   to be the case to you, you must ask yourselves whether the conduct hurts competitors precisely

16   because it appeals to consumers. That is, you must ask yourselves whether the harm to competitors

17   was caused by customers' preference for the defendant's products. If it was, then the conduct

18   involved is not anticompetitive because the goal of the antitrust laws is to protect competition

19   itself rather than any particular competitor's right to succeed.

20         So, if a business does poorly because it is faced with legitimate, vigorous competition, this

21   is not unlawful. However, if the harm to competitors is caused by something other than

22   Defendants' success in competing on the merits of its products and operations—in other words, if

23   the harm is caused mainly by Defendants' deliberate efforts to injure or block competition—then

24   you may find that the conduct was anticompetitive.

25

26         **Redline:**

27

28

Anticompetitive conduct is conduct that has the effect of preventing or excluding competition or frustrating or hurting the efforts of other firms to compete for customers within the relevant market. It is conduct that does not benefit consumers by making a better product or service available, or in other ways, but instead has the effect of hurting competition. To be anticompetitive, it is not necessary that such conduct be unlawful in and of itself, so long as it has the effect of achieving monopoly power.

However, it is important to remember that not all behavior that injures competitors is "anticompetitive." Every business has the right to increase its success by using legitimate good business practices, such as increasing efficiency or offering a superior product. A monopoly achieved as a result of such legitimate good business practices is not unlawful.

It can sometimes be difficult to determine whether an act is a good business practice or an anticompetitive action. Some conduct may both help customers and hurt competitors. If this seems to be the case to you, you must ask yourselves whether the conduct hurts competitors precisely because it appeals to consumers. That is, you must ask yourselves whether the harm to competitors was caused by customers' preference for the defendant's products. If it was, then the conduct involved is not anticompetitive because the goal of the antitrust laws is to protect competition itself rather than any particular competitor's right to succeed.

So, if a business does poorly because it is faced with legitimate, vigorous competition, this is not unlawful. However, if the harm to competitors is caused by something other than ~~the d~~Defendant~~'s~~' success in competing on the merits of its products and operations—in  other words, if the harm is caused mainly by ~~the d~~Defendant~~'s~~' deliberate efforts to injure or block competition—then you may find that the conduct was anticompetitive.

**Source and Authorities**: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-28 (Monopolization) (Matthew Bender, 2015).

**Defendants' Objection:**  It does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together.  Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

1  antitrust cases and recognized as the authoritative source for this purpose among antitrust

2  practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

3  instructions are both more complete statements of the law, and presented more efficiently in fewer

4  instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

5  proposed instructions.  Moreover, the model instructions used by Orion include certain

6  instructions that are demonstrably improper as a matter of law, as explained in several of

7  Defendants' other objections.

8        **Orion's Response**

9        Defendants' conclusory assertion that the ABA model instructions are "the authoritative

10  source" of jury instructions—advanced without any citation supporting the claim—is not true.

11  The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

12  by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

13  the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

14  Indeed, instructions from the Modern Federal Jury Instructions source have been used in

15  significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

16  *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

17  "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

18  *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pg. 2-3

19  "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

20        The model instructions provided by the Modern Federal Jury Instructions treatise are

21  superior because they communicate the law to the jury in far simpler and more efficient manner

22  than the ABA model instructions.  The jury is going to be presented a significant number of

23  instructions, which counsels in favor of brevity and simplicity.

24        Defendants' failure to modify the ABA instructions to fit the facts of this case where the

25  ABA model instructions themselves direct that such modification should be made does not

26  counsel in favor of selecting Defendants' proposed instructions.

27        Finally, Defendant's assertion that "it does not make sense to mix and match between two

28  different sets of model instructions" is belied by the fact that Defendants' own proposed

1  instructions use multiple model instruction sources.  The fact is that none of the sources approved

2  by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

3  Orion is asserting.

**ORION'S ATTEMPTED MONOPOLIZATION INSTRUCTION NO. 13**

**ATTEMPTED MONOPOLIZATION: DANGEROUS PROBABILITY OF SUCCESS**

The fourth element that Orion must prove, by a preponderance of the evidence, is that there was a dangerous probability that Orion would sooner or later succeed in achieving its intended monopoly if it continued to engage in anticompetitive conduct that is the same or similar to that charged.

In order to prove this element, Orion does not have to prove that success was nearly certain. What Orion must prove is that the chance of success was substantial and real; in other words, that there was a reasonable likelihood that Orion would ultimately achieve its goal of monopoly power. Thus, even if you find that Defendants intended to create a monopoly, you may not find that Defendants attempted to monopolize if you find that it was not possible for Defendants to achieve its goal.

**Redline:**

The fourth element that ~~the plaintiff~~ Orion must prove, by a preponderance of the evidence, is that there was a dangerous probability that ~~the defendant~~ Orion would sooner or later succeed in achieving its intended monopoly if it continued to engage in anticompetitive conduct that is the same or similar to that charged.

In order to prove this element, ~~the plaintiff~~ Orion does not have to prove that success was nearly certain. What ~~the plaintiff~~ Orion must prove is that the chance of success was substantial and real; in other words, that there was a reasonable likelihood that ~~the defendant~~ Orion would ultimately achieve its goal of monopoly power. Thus, even if you find that ~~the d~~Defendants intended to create a monopoly, you may not find that ~~the d~~Defendants attempted to monopolize if you find that it was not possible for ~~the d~~Defendants to achieve its goal.

**Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-29 (Monopolization) (Matthew Bender, 2015).

**Defendants' Objection:**  It does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together.  Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as the authoritative source for this purpose among antitrust practitioners—with no substantive modifications or argument.  Defendants submit that the ABA instructions are both more complete statements of the law, and presented more efficiently in fewer instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover, the model instructions used by Orion include certain instructions that are demonstrably improper as a matter of law, as explained in several of Defendants' other objections.

**Orion's Response:** Defendants' conclusory assertion that the ABA model instructions are "the authoritative source" of jury instructions—advanced without any citation supporting the claim—is not true.  The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.  Indeed, instructions from the Modern Federal Jury Instructions source have been used in significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses", "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pg. 2-3 "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

The model instructions provided by the Modern Federal Jury Instructions treatise are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

Defendants' failure to modify the ABA instructions to fit the facts of this case where the ABA model instructions themselves direct that such modification should be made does not counsel in favor of selecting Defendants' proposed instructions.

Finally, Defendant's assertion that "it does not make sense to mix and match between two different sets of model instructions" is belied by the fact that Defendants' own proposed instructions use multiple model instruction sources.  The fact is that none of the sources approved by the Ninth Circuit Model Instructions provides model instructions for all of the claims that Orion is asserting.

**ORION'S ATTEMPTED MONOPOLIZATION INSTRUCTION NO. 14**

<u>**ATTEMPTED MONOPOLIZATION: FACTORS IN DETERMINING DANGEROUS**</u>

<u>**PROBABILITY**</u>

In determining whether there was a dangerous probability of success, you should consider the following factors:

1.      The size and power of Defendants in the market as compared with their competitors: While size does not indicate whether Defendants are likely to attempt to monopolize, a large company may have a greater dangerous probability of success in achieving monopoly power than a small competitor;

2.      The size and number of competitors in the market: A defendant is more likely to present a dangerous probability of monopolizing a small market than a large market;

3.      Defendants' share of the relevant market and whether it was increasing or decreasing: Generally, where a defendant's market share is declining, that defendant's dangerous probability of success is also declining; and

4.      The impact on competition of Defendants' anticompetitive act or practice: Where Defendants' activities have begun to control prices or exclude competition, that may indicate that Defendants have a dangerous probability of achieving its goal of monopolization.

**Redline:**

In determining whether there was a dangerous probability of success, you should consider the following factors:

1.      The size and power of ~~the D~~defendant~~s~~ in the market as compared with ~~its~~ their competitors: While size does not indicate whether ~~the d~~Defendant~~s~~ ~~is~~ are likely to attempt to monopolize, a large company may have a greater dangerous probability of success in achieving monopoly power than a small competitor;

2.      The size and number of competitors in the market: A defendant is more likely to present a dangerous probability of monopolizing a small market than a large market;

-175-

3.   ~~The d~~Defendant~~'~~s~~'~~ share of the relevant market and whether it was increasing or decreasing: Generally, where a defendant's market share is declining, that defendant's dangerous probability of success is also declining; and

4.   The impact on competition of ~~the d~~Defendant~~'~~s~~'~~ anticompetitive act or practice: Where ~~the d~~Defendant~~'~~s~~'~~ activities have begun to control prices or exclude competition, that may indicate that ~~the d~~Defendant~~s ha~~sve a dangerous probability of achieving its goal of monopolization.

**Source and Authorities**: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.02, Instr. 80-30 (Monopolization) (Matthew Bender, 2015).

**Defendants' Objection:**  It does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together.  Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as the authoritative source for this purpose among antitrust practitioners—with no substantive modifications or argument.  Defendants submit that the ABA instructions are both more complete statements of the law, and presented more efficiently in fewer instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover, the model instructions used by Orion include certain instructions that are demonstrably improper as a matter of law, as explained in several of Defendants' other objections.

**Orion's Response:** Defendants' conclusory assertion that the ABA model instructions are "the authoritative source" of jury instructions—advanced without any citation supporting the claim—is not true.  The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.  Indeed, instructions from the Modern Federal Jury Instructions source have been used in significant antitrust cases in this District.  *See* Jury Instructions, *In Re:*

1   *TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8,

2   ("Bias of Witnesses", "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury

3   Instructions, *Smithkline Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24,

4   2011), pg. 2-3 "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485)

5   (Wilken, J.).

6           The model instructions provided by the Modern Federal Jury Instructions treatise are

7   superior because they communicate the law to the jury in far simpler and more efficient manner

8   than the ABA model instructions.  The jury is going to be presented a significant number of

9   instructions, which counsels in favor of brevity and simplicity.

10          Defendants' failure to modify the ABA instructions to fit the facts of this case where the

11  ABA model instructions themselves direct that such modification should be made does not

12  counsel in favor of selecting Defendants' proposed instructions.

13          Finally, Defendant's assertion that "it does not make sense to mix and match between two

14  different sets of model instructions" is belied by the fact that Defendants' own proposed

15  instructions use multiple model instruction sources.  The fact is that none of the sources approved

16  by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

17  Orion is asserting.

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTIONS REGARDING ATTEMPTED MONOPOLIZATION**

**DEFENDANTS' PROPOSED INSTRUCTION NO. 24**

**ATTEMPT TO MONOPOLIZE--ELEMENTS**

Plaintiff alleges that it was injured by Ningbo Sunny's unlawful attempt to monopolize the market for all telescope manufacturing. To prevail on its claim of attempted monopolization, plaintiff must prove each of the following elements by a preponderance of the evidence:

(1)     Ningbo Sunny engaged in anticompetitive conduct;

(2)     Ningbo Sunny had a specific intent to achieve monopoly power in a relevant market;

(3)     there was a dangerous probability that defendant would achieve its goal of monopoly power in the relevant market;

(4)     defendant's conduct occurred in or affected interstate or foreign commerce; and

(5)     plaintiff  was injured  in its business  or  property  by defendant's anticompetitive conduct.

If you find that the evidence is insufficient to prove any one or more of these elements, then you must find for defendant and against plaintiff on plaintiffs claim of attempted monopolization. If you find that the evidence is sufficient to prove all five elements as to defendant, then you must find for plaintiff and against defendant on plaintiffs claim of attempted monopolization.

**AUTHORITY: ABA, 3.D.1**

**Orion's Position:**

The Court should issue Orion's proposed instructions on attempted monopolization.  Orion also provided redlines with its instructions so that the Court knows what it is ordering and how Orion's model instructions are modified.

The model instructions provided by the Modern Federal Jury Instructions and used by Orion treatise are superior because they communicate the law to the jury in far simpler and more

efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

Orion objects to this instruction because Defendants have not provided a redline against the model instruction for Orion or the Court to review.

**<u>DEFENDANTS' PROPOSED INSTRUCTION NO. 25</u>**

**<u>ATTEMPT TO MONOPOLIZE--ANTICOMPETITIVE CONDUCT</u>**

It is not sufficient for plaintiff to prove that defendant intended to monopolize the relevant market. Plaintiff must also show that defendant engaged in anticompetitive conduct, coupled with an intent to monopolize and a dangerous probability that defendant would succeed. Generally, a firm engages in anticompetitive conduct when it attempts to exclude rivals without an efficiency-enhancing justification for its conduct.

Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute hmm to competition. Some examples of harm to competition include increased prices, decreased production levels, and reduced quality.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals-or the achievement of these goals-unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether defendant's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.  The acts or practices used in attempting to achieve a monopoly must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or impossible for competitors to compete and that was taken for no legitimate business reason.

**AUTHORITY: ABA, 3.D.2, 3.A.9 (modified as instructed by Model Instructions to reflect attempted monopolization theory)**

**Orion's Position:**

The Court should issue Orion's proposed instructions on attempted monopolization.  Orion provided redlines with its instructions so that the Court knows what it is ordering and how Orion's model instructions are modified.

The model instructions provided by the Modern Federal Jury Instructions and used by Orion treatise are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

Orion objects to this instruction because Defendants have not provided a redline against the model instruction for Orion or the Court to review.

**DEFENDANTS' PROPOSED INSTRUCTION NO. 26**

**ATTEMPT TO MONOPOLIZE—SPECIFIC INTENT**

The second element that plaintiff must prove is that Ningbo Sunny had a specific intent to monopolize a relevant market. To do so, plaintiff must first prove that the market it is talking about-the market for all telescope manufacturing-is a relevant market for antitrust purposes. Plaintiff must then prove that defendant had a specific intent to monopolize that market. The court will begin by instructing you on the relevant market, and the court will then discuss specific intent. If plaintiff proves both that the market for all telescope manufacturing is a relevant market and that defendant had a specific intent to monopolize that market, you must find that plaintiff has proven this element of its attempted monopolization claim and you should consider the other elements of the claim. If you find that plaintiff fails to prove either of these points, then you must find for defendant on plaintiffs attempted monopolization claim.

**AUTHORITY:  ABA 3.D.3**

**Orion's Position:**

The Court should issue Orion's proposed instructions on attempted monopolization.  Orion provided redlines with its instructions so that the Court knows what it is ordering and how Orion's model instructions are modified.

Orion objects to Defendants' misstatement of the relevant market advanced by Orion and Dr. Zona.  It is the telescope manufacturing services industry.

The model instructions provided by the Modern Federal Jury Instructions and used by Orion treatise are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

Orion further objects to this instruction because Defendants have not provided a redline against the model instruction for Orion or the Court to review.

<u>**DEFENDANTS' PROPOSED INSTRUCTION NO. 27**</u>

<u>**ATTEMPT TO MONOPOLIZE--RELEVANT MARKET-GENERAL**</u>

Plaintiff must prove by a preponderance of the evidence that defendant had monopoly power in a relevant market.  Defining the relevant market is essential because you are required to make a judgment about whether defendant has monopoly power in a properly defined economic market. To make this judgment, you must be able to determine what, if any, economic forces restrain defendant's freedom to set prices for or to restrict the production level of all telescope manufacturing.

The most likely and most important restraining force will be actual and potential competition from other firms and their products. This includes all firms and products that act or likely could act as restraints on defendant's power to set prices as it pleases because customers could switch to them if defendant sets its own prices too high.  All the firms and products that exert such restraining force are within what is called the relevant market.

There are two aspects you must consider in determining whether plaintiff has met its burden to prove the relevant market by a preponderance of the evidence. The first is the relevant product market. The second is the relevant geographic market.


<u>**AUTHORITY: ABA, 3.A.3**</u>

**Orion's Position:**

The Court should issue Orion's proposed instructions on attempted monopolization.  Orion provided redlines with its instructions so that the Court knows what it is ordering and how Orion's model instructions are modified.

Orion objects to Defendants' misstatement of the relevant market advanced by Orion and Dr. Zona.  It is the telescope manufacturing services industry.

The model instructions provided by the Modern Federal Jury Instructions and used by Orion treatise are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

1    Orion further objects to this instruction because Defendants have not provided a redline

2 against the model instruction for Orion or the Court to review.

1 **DEFENDANTS' PROPOSED INSTRUCTION NO. 28**

2 **ATTEMPT TO MONOPOLIZE--RELEVANT PRODUCT MARKET**

3      The basic idea of a relevant product market is that the products within it are reasonable

4 substitutes for each other from the buyer's point of view; that is, the products compete with each

5 other. In other words, the relevant product market includes the products that a consumer believes

6 are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with

7 reference to the actual behavior of buyers and marketing efforts of sellers. Products need not be

8 identical or precisely interchangeable as long as they are reasonable substitutes. Thus, for

9 example, if consumers seeking to cover leftover food for storage considered certain types of

10 flexible wrapping material-such as aluminum foil, cellophane, or even plastic containers-to be

11 reasonable alternatives, then all those products may be in the same relevant product market.

12      To determine whether products are reasonable substitutes for each other, you must

13 consider whether a small but significant and non-transitory increase in the price of one product

14 would result in enough customers switching from that product to another product such that the

15 price increase would not be profitable.[2] In other words, will customers accept the price increase or

16 will so many switch to alternative products that the price increase will be withdrawn? Generally

17 speaking, a small but significant and non-transitory increase in price is approximately a 5 percent

18 increase in price not due to cost factors.  If you find that customers would switch and that the price

19 increase would not be profitable, then you must conclude that the products are in the product

20 market. If, on the other hand, you find that customers would not switch, then you must conclude

21 that the products are not in the product market.

22      In evaluating whether various products are reasonably interchangeable or reasonable

23 substitutes for each other under the price increase test I have just given you, you may also

24 consider:

25         •    consumers' views on whether the products are  interchangeable;

26         •    the relationship between the price of one product and sales of another;

27         •    the presence or absence of specialized vendors;

28

1        •      the perceptions of either industry or the public as to whether the products are in

2   separate markets;

3        •      the views of plaintiff and defendant regarding who their respective competitors are;

4   and

5        •      the existence or absence of different customer groups or distribution channels.[4]

6        In this case, plaintiff contends that the relevant product market is the market for all

7   telescope manufacturing.  By contrast, defendant contends that plaintiff has failed to allege the

8   proper relevant product market.  If you find that plaintiff has proven a relevant product market,

9   then you should continue to evaluate the remainder of plaintiff's claim. However, if you find that

10  plaintiff has failed to prove such a market, then you must find in defendant's favor on this claim.

11

12  **<u>AUTHORITY: ABA, 3.A.4</u>**

13       **Orion's Position:**

14       The Court should issue Orion's proposed instructions on attempted monopolization.  Orion

15  provided redlines with its instructions so that the Court knows what it is ordering and how Orion's

16  model instructions are modified.

17       Orion objects to Defendants' misstatement of the relevant market advanced by Orion and

18  Dr. Zona.  It is the telescope manufacturing services industry.

19       The model instructions provided by the Modern Federal Jury Instructions and used by

20  Orion treatise are superior because they communicate the law to the jury in far simpler and more

21  efficient manner than the ABA model instructions.  The jury is going to be presented a significant

22  number of instructions, which counsels in favor of brevity and simplicity.

23       Orion further objects to this instruction because Defendants have not provided a redline

24  against the model instruction for Orion or the Court to review.

25

26

27

28

SMRH:4832-1239-1592.2

### DEFENDANTS' PROPOSED INSTRUCTION NO. 29

### ATTEMPT TO MONOPOLIZE--RELEVANT PRODUCT MARKET-SUPPLY SUBSTITUTABILITY

In deciding whether plaintiff has proven a relevant product market, you may also consider what the law refers to as "the cross-elasticity of supply" or, in other words, the extent to which the producers of one product would be willing to shift their resources, such as intellectual property, manufacturing facilities, or personnel to producing another product in response to an increase in the price of the other product. Such producers, to the extent that they exist, can increase supply and, therefore, drive prices back to competitive levels, defeating any effort by a would-be monopolist to charge significantly higher prices.

Take two shoe manufacturers, for example. The first manufacturer produces shoes for women, while the second manufacturer produces shoes for men. Generally speaking, men's and women's shoes are not reasonably interchangeable and, therefore, might be thought of as being in a separate product markets. However, it is possible that the men's shoe manufacturer could quickly shift its resources to start producing women's shoes if the women's shoe manufacturer raised its prices significantly and vice versa. Although women would not buy men's shoes, nor would men buy women's shoes, the ability of each manufacturer to alter its production could prevent the other manufacturer from raising prices significantly. Thus, in this example, men's and women's shoes would be included in the same market.

If, in determining the products in the relevant product market you find that there are manufacturers that have the ability to alter their production to manufacture products that can reasonably be substituted with defendant's-even though they do not presently compete with defendant-you may consider whether the existence of these potential alternative suppliers can influence the prices that defendant charges for its product and, if so, that amount of the product that these suppliers are likely to produce. However, if you find that there are no others who would switch production to products that would compete with defendant's, you may define the market solely on your evaluation of whether the existing allegedly competing products are reasonable substitutes for each other.

**AUTHORITY: ABA, 3.A.5**

**Orion's Position:**

The Court should issue Orion's proposed instructions on attempted monopolization.  Orion provided redlines with its instructions so that the Court knows what it is ordering and how Orion's model instructions are modified.

Orion objects to Defendants' misstatement of the relevant market advanced by Orion and Dr. Zona.  It is the telescope manufacturing services industry.

The model instructions provided by the Modern Federal Jury Instructions and used by Orion treatise are superior because they communicate the law to the jury in far simpler and more efficient manner than the ABA model instructions.  The jury is going to be presented a significant number of instructions, which counsels in favor of brevity and simplicity.

Orion further objects to this instruction because Defendants have not provided a redline against the model instruction for Orion or the Court to review.

<u>**DEFENDANTS' PROPOSED INSTRUCTION NO. 30**</u>

<u>**ATTEMPT TO MONOPOLIZE--RELEVANT GEOGRAPHIC MARKET**</u>

The relevant geographic market is the area in which defendant faces competition from other firms that compete in the relevant product market and to which customers can reasonably turn for purchases. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one geographic area have substantial effects on prices or sales in another geographic area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or neighborhood.

Plaintiff has the burden of proving the relevant geographic market by a preponderance of the evidence. In this case, plaintiff claims that the relevant geographic market is the world. By contrast, defendant asserts that plaintiff has failed to prove a relevant geographic market. In determining whether plaintiff met its burden and demonstrated that its proposed geographic market is proper, you may consider several factors, including:

- the geographic area in which defendant sells and where defendant's customers are located;

- the geographic area to which customers tum for supply of the product;

- the geographic area to which customers have turned or have seriously considered turning;[5]

- the transportation cost differences between areas;

- the geographic areas that suppliers view as potential sources of competition; and

- whether governmental licensing requirements, taxes, or quotas have the effect of limiting competition in certain areas.

<u>**AUTHORITY: ABA, 3.A.6**</u>

**Orion's Position:**

1        The Court should issue Orion's proposed instructions on attempted monopolization.  Orion

2   provided redlines with its instructions so that the Court knows what it is ordering and how Orion's

3   model instructions are modified.

4        Orion objects to Defendants' misstatement of the relevant market advanced by Orion and

5   Dr. Zona.  It is the telescope manufacturing services industry.

6        The model instructions provided by the Modern Federal Jury Instructions and used by

7   Orion treatise are superior because they communicate the law to the jury in far simpler and more

8   efficient manner than the ABA model instructions.  The jury is going to be presented a significant

9   number of instructions, which counsels in favor of brevity and simplicity.

10        Orion further objects to this instruction because Defendants have not provided a redline

11   against the model instruction for Orion or the Court to review.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANTS' PROPOSED INSTRUCTION NO. 31

## ATTEMPT TO MONOPOLIZE—SPECIFIC INTENT (CONTINUED)

If you find that plaintiff has proven a relevant market, you must then decide whether defendant had the specific intent to monopolize that market. In other words, you must decide if the evidence shows that defendant acted with the conscious aim of acquiring the power to control prices and to exclude or destroy competition in the relevant market.

There are several ways in which plaintiff may prove that defendant had the specific intent to monopolize. There may be evidence of direct statements of defendant's intent to obtain a monopoly in the relevant market. Such proof of specific intent may be established by documents prepared by responsible officers or employees of defendant at or about the time of the conduct in question or by testimony concerning statements made by responsible officers or employees of defendant. You must be careful, however, to distinguish between a defendant's lawful intent to compete aggressively, which may be accompanied by aggressive language, and a true intent to acquire monopoly power by using anticompetitive means.

Even if you decide that the evidence does not prove directly that defendant actually intended to obtain a monopoly, specific intent may be inferred from what defendant did. For example, if the evidence shows that defendant lacked a legitimate business justification and the natural and probable consequence of defendant's conduct in the relevant market was to give defendant control over prices and to exclude or destroy competition, and that this was plainly foreseeable by defendant, then you may (but are not required to) infer that defendant specifically intended to acquire monopoly power.

## AUTHORITY: ABA, 3.D.3

**Orion's Position:**

The Court should issue Orion's proposed instructions on attempted monopolization. Orion provided redlines with its instructions so that the Court knows what it is ordering and how Orion's model instructions are modified.

1          Orion objects to Defendants' misstatement of the relevant market advanced by Orion and

2   Dr. Zona.  It is the telescope manufacturing services industry.

3          The model instructions provided by the Modern Federal Jury Instructions and used by

4   Orion treatise are superior because they communicate the law to the jury in far simpler and more

5   efficient manner than the ABA model instructions.  The jury is going to be presented a significant

6   number of instructions, which counsels in favor of brevity and simplicity.

7          Orion further objects to this instruction because Defendants have not provided a redline

8   against the model instruction for Orion or the Court to review.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:16-cv-06370-EJD-VKD
SMRH:4832-1239-1592.2
DEFENDANTS' PROPOSED JURY INSTRUCTIONS

## DEFENDANTS' PROPOSED INSTRUCTION NO. 32

## ATTEMPT TO MONOPOLIZE--DANGEROUS PROBABILITY OF SUCCESS

If you find that defendant had the specific intent to achieve a monopoly and engaged in significant anticompetitive conduct, you also must determine if the evidence shows the next element of attempt to monopolize: namely, that there was a dangerous probability that defendant would succeed in achieving monopoly power if it continued to engage in the same or similar conduct.

Monopoly power is the power to control prices, restrict output, and exclude competition in a relevant antitrust market. More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time. However, possession of monopoly power, in and of itself, is not unlawful.

In determining whether there was a dangerous probability that defendant would acquire the ability to control price in the market, you should consider such factors as:

- defendant's market share;

- the trend in defendant's market share;

- whether the barriers to entry into the market made it difficult for competitors to enter the market; and

- the likely effect of any anticompetitive conduct on defendant's share of the market.

Again, the purpose of looking at these and other factors is to determine whether there was a dangerous probability that defendant would ultimately acquire monopoly power. A dangerous probability of success need not mean that success was nearly certain, but it does mean that there was a substantial and real likelihood that defendant would ultimately acquire monopoly power.

**AUTHORITY: ABA, 3.D.4, 3.A.2 (Combined as instructed by Model Instructions)**

1      **Orion's Position:**

2        The Court should issue Orion's proposed instructions on attempted monopolization.  Orion

3 provided redlines with its instructions so that the Court knows what it is ordering and how Orion's

4 model instructions are modified.

5        Orion objects to Defendants' misstatement of the relevant market advanced by Orion and

6 Dr. Zona.  It is the telescope manufacturing services industry.

7        The model instructions provided by the Modern Federal Jury Instructions and used by

8 Orion treatise are superior because they communicate the law to the jury in far simpler and more

9 efficient manner than the ABA model instructions.  The jury is going to be presented a significant

10 number of instructions, which counsels in favor of brevity and simplicity.

11 Orion further objects to this instruction because Defendants have not provided a redline against the

12        model instruction for Orion or the Court to review.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2      **ORION'S CONSPIRACY TO MONOPOLIZE INSTRUCTION NO. 1**

3      <u>**CONSPIRACY TO MONOPOLIZE: THE COMPLAINT AND THE STATUTE**</u>

4          Orion claims that Defendants have participated in a conspiracy to monopolize interstate or

5   foreign trade or commerce. More specifically, Orion claims that Defendants conspired with their

6   competitors to prevent another viable competitor from acquiring Meade and its factory, and to

7   prevent Orion from acquiring assets (including the website Telescopes.com) from a third-party

8   company, Hayneedle, so that Defendants could monopolize the telescope manufacturing services

9   market.

10         The law Defendants are charged with violating is called Section 2 of the Sherman Antitrust

11  Act. That law, in pertinent part, provides: "Every person who shall ... combine or conspire with

12  any other person or persons to monopolize any part of the trade or commerce among the several

13  states, or with foreign nations [has committed an unlawful act]."

14

15      **Redline:**

16

17          ~~The plaintiff~~ Orion claims that ~~the d~~Defendants ~~ha~~ve participated in a conspiracy to

18  monopolize interstate ~~(~~or foreign~~)~~ trade or commerce. More specifically, ~~the plaintiff~~ Orion claims

19  that ~~the D~~defendants conspired with their competitors to prevent another viable competitor from

20  acquiring Meade and its factory, and to prevent Orion from acquiring assets (including the website

21  Telescopes.com) from a third-party company, Hayneedle~~[summarize conspiracy allegations of the~~

22  ~~complaint]~~, so that Defendants could monopolize the telescope manufacturing services market.

23          The law ~~the d~~Defendants ~~is~~ are charged with violating is called ~~s~~Section 2 of the Sherman

24  Antitrust Act. That law, in pertinent part, provides: "Every person who shall ... combine or

25  conspire with any other person or persons to monopolize any part of the trade or commerce among

26  the several states, or with foreign nations [has committed an unlawful act]."

27          Source and Authorities: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil

28  ¶ 80.03, Instr. 80-31 (Monopolization) (Matthew Bender, 2015).

1      **Defendants' Objection:**  This instruction does not describe a conspiracy to monopolize

2   claim.  Instead, it describes Orion's claims that Defendants conspired with Synta as alleged under

3   its Section 1 claims and dealt with in the proposed instructions above.  Orion's attempt to conflate

4   its Section 1 conspiracy claims and its Section 2 conspiracy to monopolize claim give the

5   impression that the jury can find that Defendants and Synta conspired to *jointly* monopolize the

6   telescopes market.

7      There is no such "shared monopoly" or "joint monopolization" claim under the antitrust

8   laws.  *See, e.g., Harkins Amusement Ent. v. General Cinema Corp.*, 850 F.2d 477, 490 (9th Cir.

9   1988) (internal citation omitted) (citing *Consolidated Terminal Systems, Inc. v. ITT World*

10   *Communications, Inc.*, 535 F. Supp. 225, 228-29 (S.D.N.Y. 1982)) (rejecting "novel" theory of

11   "shared monopoly":  "Professors Areeda and Turner admit that 'no case has held the § 2

12   monopolization provision applicable to shared monopoly.' . . . . One court directly addressing the

13   issue stated bluntly, 'an oligopoly, or a shared monopoly, does not in itself violate § 2 of the

14   Sherman Act.'"); *RxUSA Wholesale v. Alcon Labs.*, 391 Fed. Appx 59, 61 (2d Cir. 2010)

15   (characterizing plaintiff's shared monopoly claim as a recapitulation of its failed § 1 arguments);

16   *Midwest Gas Servs. v. Ind. Gas Co.*, 317 F.3d 703, 713 (7th Cir. 2003) (ruling that under § 2 only

17   one firm can be a monopolist); *In re Credit Default Swaps Antitrust Litig.*, 2014 U.S. Dist. LEXIS

18   123784, at *40 (S.D.N.Y. 2014) (dismissing conspiracy claim for not alleging "that the aim of

19   defendants' conspiracy was to form a single entity to possess monopoly power"); *United Food &*

20   *Commer. Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku*

21   *Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1076-77 (N.D. Cal. 2014) (finding plaintiffs failed to

22   allege that either party possessed market power and "cite any case where a court held a

23   manufacturer and its distributor jointly liable for violating Section 2"); *Precision CPAP, Inc. v.*

24   *Jackson Hosp.*, 2010 U.S. Dist. LEXIS 20336, at *43 (M.D. Ala. 2010) (rejecting "any claim of

25   violation of Section 2 . . . predicated on a theory of shared monopoly"); *City of Moundridge v.*

26   *Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 42 (D.D.C. 2007) (holding that claim of monopolization

27   must be supported by allegations of market domination by each defendant and that allegations that

28   a group of defendants together possess market power do not satisfy § 2); *Arista Records v. Lime*

1  *Grp.*, 532 F. Supp. 2d 556, 579-80 (S.D.N.Y. 2007) (dismissing § 2 claims premised on shared

2  monopoly theory); *In re Mushroom Direct Purchaser Antitrust Litig.*, 514 F. Supp. 2d 683, 700-02

3  (E.D. Pa. 2007) (rejecting "concerted monopolization" theory aggregating monopoly power of

4  individual defendants); *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 256-57 (S.D.N.Y.

5  1995) (rejecting theory); *Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n*, 861 F. Supp. 1498,

6  1514 (D. Or. 1994) (reasoning that since shared monopoly cannot support an actual

7  monopolization claim, then conspiracy to achieve shared monopoly cannot be an unlawful

8  conspiracy to monopolize).

9       Thus, under binding Ninth Circuit law, to establish its Section 2 conspiracy claim Orion

10  must prove a conspiracy for a single entity to acquire monopoly power, not a conspiracy for a

11  combination of different firms to jointly acquire monopoly power.  *Harkins Amusement Ent.*, 850

12  F.2d at 490.  This proposed instruction therefore dramatically misstates the law and it would be

13  reversible error to read it to the jury.

14       Further, it does not make sense to mix and match between two different sets of model

15  instructions, because model instructions are designed to be used together.  Defendants have

16  proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of

17  model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as

18  the authoritative source for this purpose among antitrust practitioners—with no substantive

19  modifications or argument.  Defendants submit that the ABA instructions are both more complete

20  statements of the law, and presented more efficiently in fewer instructions, than the "Modern

21  Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover,

22  the model instructions used by Orion include certain instructions that are demonstrably improper

23  as a matter of law, as explained in several of Defendants' other objections.

24       Plaintiff's proposed instruction also improperly characterizes the alleged facts, particularly

25  with respect to the term "viable competitor."

26       **Orion's Response**:

27

28

1    Defendants' attempt to turn the jury instruction process into a motion for summary

2  judgment on Orion's attempted monopolization claim—a claim that Defendants did not even seek

3  summary judgment on—is improper and should be rejected on that basis alone.

4    In any case, Defendants' argument is pure sophistry.  The Defendants in this action, while

5  nominally distinct entities, are a single economic unit in the eyes of the law because they are all

6  wholly owned subsidiaries of Defendant Ningbo Sunny Electronic Co., Ltd.  *Copperweld Corp. v.*

7  *Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) ("A parent and its wholly owned subsidiary have a

8  complete unity of interest. Their objectives are common, not disparate; their general corporate

9  actions are guided or determined not by two separate corporate consciousnesses, but one. They are

10  not unlike a multiple team of horses drawing a vehicle under the control of a single driver.").  This

11  key fact distinguishes this case from the authorities and commentary cited by Defendants—all of

12  which address co-defendants that are not wholly owned subsidiaries within the same corporate

13  family, as in this case.

14    Because the law views Defendants as a single economic unit, the jury must look to the acts

15  of the entire economic unit—*i.e.*, all of the Defendants—for purposes of Orion's conspiracy to

16  monopolize claim.  *Arandell Corp. v. Centerpoint Energy Servs.*, Inc., 900 F.3d 623, 631 (9th Cir.

17  2018) ("[The] burden of establishing any individual defendant's liability required showing only

18  that the defendant's conduct played a 'role' in the overall anticompetitive scheme perpetrated by

19  the enterprise as a whole." . . . [U]nder *Copperweld*, the plaintiff did not need to prove that

20  "'specific Defendants' independently satisfied each necessary element of the claims," because "in

21  a single-enterprise situation, it is the affiliated corporations' collective conduct—i.e., the conduct

22  of the enterprise they jointly compose—that matters; it is the enterprise which must be shown to

23  satisfy the elements of a Section 2 claim.") (quoting *Lenox MacLaren Surgical Corp. v.*

24  *Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017).

25    If Defendants were correct, a single holding company could monopolize an entire industry

26  of widgets and yet immune itself from Section 2 liability simply by placing each widget factory

27  within a separate subsidiary corporation.  That kind of corporate organization is called a trust.

28  Outlawing trusts is the purpose of the antitrust laws.

1    Defendants' contention is a factual one, not a legal one.  If Defendants wish to argue to the

2  jury that Orion cannot prove that the conspiracy had the object of monopolizing the telescope

3  manufacturing services market because the Synta Entities had too much market share, they will be

4  free to do so.  But Orion is entitled to present its claim, and this instruction, to the jury.

5    Orion will not repeat its rebuttal to Defendants' erroneous contention that the ABA model

6  instructions are superior here, but incorporates it by reference.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **ORION'S CONSPIRACY TO MONOPOLIZE INSTRUCTION NO. 2**

2    <u>**CONSPIRACY TO MONOPOLIZE: THE PURPOSE OF THE STATUTE**</u>

3    The purpose of the Sherman Antitrust Act is to preserve and encourage free and open

4    business competition so that the public may receive better goods and services at a lower cost.

5    Congress has determined that monopolies are bad for commerce and that conspiring to

6    monopolize interstate trade is illegal. Whether the conspiracy ultimately succeeds is not important.

7    Conspiring to monopolize interstate trade is itself a violation of the law.

8    **Source and Authorities**: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

9    Civil ¶ 80.03, Instr. 80-32 (Monopolization) (Matthew Bender, 2015) (unmodified).

10

11    **Defendants' Objection:**  It does not make sense to mix and match between two different

12    sets of model instructions, because model instructions are designed to be used

13    together.  Defendants have proposed the ABA Section of Antitrust model instructions on this

14    issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

15    antitrust cases and recognized as the authoritative source for this purpose among antitrust

16    practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

17    instructions are both more complete statements of the law, and presented more efficiently in fewer

18    instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

19    proposed instructions.  Moreover, the model instructions used by Orion include certain

20    instructions that are demonstrably improper as a matter of law, as explained in several of

21    Defendants' other objections.

22    **Orion's Response:**

23    Defendants' conclusory assertion that the ABA model instructions are "the authoritative

24    source" of jury instructions—advanced without any citation supporting the claim—is not true.

25    The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

26    by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

27    the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

28    Indeed, instructions from the Modern Federal Jury Instructions source have been used in

1  significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

2  *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

3  "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

4  *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pg. 2-3

5  "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

6      The model instructions provided by the Modern Federal Jury Instructions treatise are

7  superior because they communicate the law to the jury in far simpler and more efficient manner

8  than the ABA model instructions.  The jury is going to be presented a significant number of

9  instructions, which counsels in favor of brevity and simplicity.

10     Defendants' failure to modify the ABA instructions to fit the facts of this case where the

11  ABA model instructions themselves direct that such modification should be made does not

12  counsel in favor of selecting Defendants' proposed instructions.

13     Finally, Defendant's assertion that "it does not make sense to mix and match between two

14  different sets of model instructions" is belied by the fact that Defendants' own proposed

15  instructions use multiple model instruction sources.  The fact is that none of the sources approved

16  by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

17  Orion is asserting.

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:16-cv-06370-EJD-VKD

DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**ORION'S CONSPIRACY TO MONOPOLIZE INSTRUCTION NO. 3**

**<u>CONSPIRACY TO MONOPOLIZE: ELEMENTS OF THE OFFENSE</u>**

In order to prove the conspiracy to monopolize charge against Defendants, Orion must prove by a preponderance of the evidence each one of the following five elements:

First, that a conspiracy to obtain (or maintain) a monopoly in the telescope manufacturing services market existed;

Second, that this conspiracy to monopolize concerned goods and/or services in interstate commerce;

Third, that Defendants entered into the conspiracy with the specific intention or purpose of monopolizing the telescope manufacturing services industry market;

Fourth, that at least one of the conspirators committed an overt act to further the conspiracy; and

Fifth, that Orion was injured in its business or property as a result of Defendants' actions.

I will explain each of these elements to you.  Because Orion must show injury for all of its claims, I will explain injury and damages to you at the end of these instructions.

**Redline:**

In order to prove the conspiracy to monopolize charge against ~~the d~~Defendant~~s~~, ~~the plaintiff~~ Orion must prove by a preponderance of the evidence each one of the following five elements:

First, that a conspiracy to obtain (or maintain) a monopoly in ~~[describe the industry or segment of commerce that the conspiracy allegedly affected]~~the telescope manufacturing services market existed;

Second, that this conspiracy to monopolize concerned goods ~~(~~and/or services~~)~~ in interstate commerce;

Third, that ~~the d~~Defendant~~s~~ entered into the conspiracy with the specific intention or purpose of monopolizing the telescope manufacturing services industry market;

1      Fourth, that at least one of the conspirators committed an overt act to further the

2 conspiracy; and

3      Fifth, that ~~the plaintiff~~ Orion was injured in its business or property as a result of ~~the~~

4 ~~d~~Defendant~~'~~s~~'~~ actions.

5      I will explain each of these elements to you.  Because Orion must show injury for all of its

6 claims, I will explain injury and damages to you at the end of these instructions.

7      Source and Authorities: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil

8 ¶ 80.03, Instr. 80-34 (Monopolization) (Matthew Bender, 2015).

9

10      **Defendants' Objection:  I**t does not make sense to mix and match between two different

11 sets of model instructions, because model instructions are designed to be used

12 together.  Defendants have proposed the ABA Section of Antitrust model instructions on this

13 issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

14 antitrust cases and recognized as the authoritative source for this purpose among antitrust

15 practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

16 instructions are both more complete statements of the law, and presented more efficiently in fewer

17 instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

18 proposed instructions.  Moreover, the model instructions used by Orion include certain

19 instructions that are demonstrably improper as a matter of law, as explained in several of

20 Defendants' other objections.

21      **Orion's Response**:

22      Defendants' attempt to turn the jury instruction process into a motion for summary

23 judgment on Orion's attempted monopolization claim—a claim that Defendants did not even seek

24 summary judgment on—is improper and should be rejected on that basis alone.

25      In any case, Defendants' argument is pure sophistry.  The Defendants in this action, while

26 nominally distinct entities, are a single economic unit in the eyes of the law because they are all

27 wholly owned subsidiaries of Defendant Ningbo Sunny Electronic Co., Ltd.  *Copperweld Corp. v.*

28 *Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) ("A parent and its wholly owned subsidiary have a

1   complete unity of interest. Their objectives are common, not disparate; their general corporate

2   actions are guided or determined not by two separate corporate consciousnesses, but one. They are

3   not unlike a multiple team of horses drawing a vehicle under the control of a single driver.")  This

4   key fact distinguishes this case from the authorities and commentary cited by Defendants—all of

5   which address co-defendants that are not wholly owned subsidiaries within the same corporate

6   family, as in this case.

7           Because the law views Defendants as a single economic unit, the jury must look to the acts

8   of the entire economic unit—*i.e.*, all of the Defendants—for purposes of Orion's conspiracy to

9   monopolize claim.  *Arandell Corp. v. Centerpoint Energy Servs.*, Inc., 900 F.3d 623, 631 (9th Cir.

10  2018) ("[The] burden of establishing any individual defendant's liability required showing only

11  that the defendant's conduct played a 'role' in the overall anticompetitive scheme perpetrated by

12  the enterprise as a whole." . . . [U]nder *Copperweld*, the plaintiff did not need to prove that

13  "'specific Defendants' independently satisfied each necessary element of the claims," because "in

14  a single-enterprise situation, it is the affiliated corporations' collective conduct—i.e., the conduct

15  of the enterprise they jointly compose—that matters; it is the enterprise which must be shown to

16  satisfy the elements of a Section 2 claim.") (quoting *Lenox MacLaren Surgical Corp. v.*

17  *Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017).

18          If Defendants were correct, a single holding company could monopolize an entire industry

19  of widgets and yet immune itself from Section 2 liability simply by placing each widget factory

20  within a separate subsidiary corporation.  That kind of corporate organization is called a trust.

21  Outlawing trusts is the purpose of the antitrust laws.

22          Defendants' contention is a factual one, not a legal one.  If Defendants wish to argue to the

23  jury that Orion cannot prove that the conspiracy had the object of monopolizing the telescope

24  manufacturing services market because the Synta Entities had too much market share, they will be

25  free to do so.  But Orion is entitled to present its claim, and this instruction, to the jury.

26          Orion will not repeat its rebuttal to Defendants' erroneous contention that the ABA model

27  instructions are superior here, but incorporates it by reference.

28

1  **ORION'S CONSPIRACY TO MONOPOLIZE INSTRUCTION NO. 4**

2  **CONSPIRACY TO MONOPOLIZE: PARENT CORPORATIONS AND WHOLLY**

3  **OWNED SUBSIDIARIES ARE A SINGLE ENTERPRISE**

4      Because Defendants Sunny Optics, Inc. and Meade Instrument Corp. are wholly owned

5  subsidiaries of Defendant Ningbo Sunny Electronic. Co., Ltd., the law views Defendants as a

6  single enterprise for purposes of the antitrust laws.  Thus, to prevail on its conspiracy to

7  monopolize claim, Orion must prove, by a preponderance of the evidence, that the Defendants'

8  collective conduct—that is, the conduct of the enterprise they jointly compose—satisfies each of

9  the elements I have explained to you.

10      In other words, Orion does not need to prove that each specific Defendant independently

11  satisfied each element of its conspiracy to monopolize claim in order to prevail on that claim.  If

12  you find that Orion has proven by a preponderance of evidence that the Defendants have

13  collectively satisfied each element of the claim, then you must find each defendant liable so long

14  as that defendant had a role in the overall anticompetitive scheme perpetrated by the enterprise as

15  a whole.

16      **Sources and Authorities:**  *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771

17  (1984) ("A parent and its wholly owned subsidiary have a complete unity of interest. Their

18  objectives are common, not disparate; their general corporate actions are guided or determined not

19  by two separate corporate consciousnesses, but one. They are not unlike a multiple team of horses

20  drawing a vehicle under the control of a single driver."); *Arandell Corp. v. Centerpoint Energy*

21  *Servs.*, Inc., 900 F.3d 623, 631 (9th Cir. 2018):

22

23          [The] burden of establishing any individual defendant's liability
            required showing only that the defendant's conduct played a 'role' in
            the overall anticompetitive scheme perpetrated by the enterprise as

24          a whole." . . . [U]nder *Copperweld*, the plaintiff did not need to prove
            that "'specific Defendants' independently satisfied each necessary

25          element of the claims," because "in a single-enterprise situation, it is
            the affiliated corporations' collective conduct—*i.e.*, the conduct of

26          the enterprise they jointly compose—that matters; it is the enterprise
            which must be shown to satisfy the elements of a Section 2 claim.

27  (quoting *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017)).

28

1    **Defendants' Objection:**  Orion has created an unnecessary "special" instruction that is not

2    based on any set of model instructions (much less a model instruction approved by the Ninth

3    Circuit).  Orion does not identify any previous instance of its proposed instruction being given in a

4    civil antitrust case:  unsurprising as Orion's proposed instruction is incorrect as a matter of law.

5    Because Defendants are separately incorporated, their independence must be presumed.  *E. & J.*

6    *Gallo Winery v. EnCana Energy Servs., Inc.*, No. 03-5412 AWI LJO, 2008 WL 2220396, at *5

7    (E.D. Cal. May 27, 2008).  That presumption of independence means that "Plaintiffs will need to

8    provide evidence of *each* Defendant's participation in the conspiracy."  *In re Static Random*

9    *Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008) (emphasis

10   added).  The very case Orion cites makes this clear:  "*Copperweld* does not support holding a

11   subsidiary liable for the parent's independent conduct."  *Arandell Corp. v. Centerpoint Energy*

12   *Serv., Inc.*, 900 F.3d 623, 633 (9th Cir. 2018).  An antitrust plaintiff is "still required to come

13   forward with evidence that each defendant independently participated in the enterprise's scheme,

14   to justify holding that defendant liable as part of the enterprise."  *Id.*; *see also id.* (as with any

15   defendant, "[p]laintiffs must put forth evidence that [the subsidiary] engaged in anticompetitive

16   conduct."); *In re Dynamic Random Access Memory Antitrust Litig.*, No. M 02-1486-PJH, 2007

17   WL 9752971, at *5 (N.D. Cal. Feb. 20, 2007) (granting summary judgment to parent company

18   because plaintiff failed to prove parent's participation in the conspiracy beyond relationship to

19   subsidiary).  Thus, this proposed instruction is not an accurate statement of the law.

20         **Orion's Response**:

21         Orion did not create this instruction out of whole cloth, but rather binding Supreme Court

22   and Ninth Circuit precedent.  Indeed, the *Arandell* case was decided after any of the model

23   instruction sources approved by the Ninth Circuit were published.  Drafting a new instruction is

24   thus required, and the fact that *Arandell* is not reflected in the model instructions is of no surprise

25   or consequence.  Similarly, Defendants' citation of district court cases decided before *Arandell* are

26   immaterial.

27         The proposed instruction makes clear that a particular defendant can only be held liable "so

28   long as that defendant had a role in the overall anticompetitive scheme perpetrated by the

1   enterprise as a whole."  That formulation is taken directly from *Arandell*'s Section 2 discussion.

2   The proposed instruction accurately states the law.

3         Defendants' contention that the jury should not be instructed on *Arandell* invites reversible

4   error.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORION'S CONSPIRACY TO MONOPOLIZE INSTRUCTION NO. 5**

**CONSPIRACY TO MONOPOLIZE: FIRST ELEMENT—CONSPIRACY**

The instructions I read you previously regarding the existence and formation of a conspiracy as to Orion's Section 1 price and credit term fixing claim apply equally to Orion's Section 2 conspiracy to monopolize claim.

**Source and Authorities:** Orion proposes this instruction to avoid duplicative instructions and to speed the jury instruction process.

**ORION'S CONSPIRACY TO MONOPOLIZE INSTRUCTION NO. 6**

**CONSPIRACY TO MONOPOLIZE: THE REQUIRED OBJECT OF THE CONSPIRACY**

In order to meet its burden of proof on the first element, the plaintiff must prove not only that a conspiracy existed, but that the object of the conspiracy was to obtain or maintain a monopoly in the telescope manufacturing services market. It is therefore important for you to understand what a monopoly is. A group of firms has a monopoly when, acting together, the firms have the power to dominate or control a market. More specifically, a group of firms has a monopoly when, acting together, the firms have the power to control prices or to exclude competition in the relevant market.

The power to control prices is simply the power of a group of companies, acting together, to establish significantly higher prices for their goods than those charged by competitors for equivalent goods without the group suffering a substantial loss of business to competitors. Thus, if a group of companies that has raised prices eventually has to lower prices to the level charged by competitors, the group may not have a monopoly in the sense of the power to control prices.

The power to exclude competition means the power of a group of companies to dominate a market by eliminating existing competition from the market or by preventing new competition from entering that market. In other words, the power to exclude competition is the power to place major barriers in the way of other companies trying to remain in or enter the particular area of trade and compete for customers. The plaintiff may show that the object of the conspiracy was to exclude competition by evidence that the conspirators agreed to reduce or restrict, by joint action, the share of the market held by competitors that were not members of the charged conspiracy by means other than the normal process of competition.

To prove the charge of conspiracy to monopolize, Orion does not have to show that the conspirators achieved a monopoly. That is, Orion does not have to prove that the conspirators actually gained the power to control prices or exclude competition. Instead, Orion must show, by a preponderance of the evidence, that the conspirators entered into an agreement to acquire or maintain the power to control prices or exclude competition. It is the agreement to achieve such ends which is a conspiracy to monopolize.

1

2    **Redline:**

3

4         In order to meet its burden of proof on the first element, the plaintiff must prove not only

5    that a conspiracy existed, but that the object of the conspiracy was to obtain (or maintain) a

6    monopoly in [describe the segment of trade or commerce alleged)the telescope manufacturing

7    services market. It is therefore important for you to understand what a monopoly is. A group of

8    firms has a monopoly when, acting together, the firms have the power to dominate or control a

9    market. More specifically, a group of firms has a monopoly when, acting together, the firms have

10   the power to control prices or to exclude competition in the relevant market.

11        The power to control prices is simply the power of a group of companies, acting together,

12   to establish significantly higher prices for their goods than those charged by competitors for

13   equivalent goods without the group suffering a substantial loss of business to competitors. Thus, if

14   a group of companies that has raised prices eventually has to lower prices to the level charged by

15   competitors, the group may not have a monopoly in the sense of the power to control prices.

16        The power to exclude competition means the power of a group of companies to dominate a

17   market by eliminating existing competition from the market or by preventing new competition

18   from entering that market. In other words, the power to exclude competition is the power to place

19   major barriers in the way of other companies trying to remain in or enter the particular area of

20   trade and compete for customers. The plaintiff may show that the object of the conspiracy was to

21   exclude competition by evidence that the conspirators agreed to reduce or restrict, by joint action,

22   the share of the market held by competitors that were not members of the charged conspiracy by

23   means other than the normal process of competition.

24        To prove the charge of conspiracy to monopolize, the plaintiff Orion does not have to

25   show that the conspirators achieved a monopoly. That is, the plaintiff Orion does not have to

26   prove that the conspirators actually gained the power to control prices or exclude competition.

27   Instead, the plaintiff Orion must show, by a preponderance of the evidence, that the conspirators

28

1  entered into an agreement to acquire (or maintain) the power to control prices or exclude

2  competition. It is the agreement to achieve such ends which is a conspiracy to monopolize.

3  **Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

4  Civil ¶ 80.03, Instr. 80-35 (Monopolization) (Matthew Bender, 2015).

5

6  **Defendants' Objection:** The "shared monopoly" or "joint monopolization" theory

7  outlined in this proposed instruction—under which a group of firms that collectively possess

8  monopoly power can be found liable for joint monopolization—is invalid as a matter of law and

9  has been consistently rejected by the courts, including the Ninth Circuit. *See, e.g., Harkins*

10 *Amusement Ent. v. General Cinema Corp.*, 850 F.2d 477, 490 (9th Cir. 1988) (internal citation

11 omitted) (citing *Consolidated Terminal Systems, Inc. v. ITT World Communications, Inc.*, 535 F.

12 Supp. 225, 228-29 (S.D.N.Y. 1982)) (rejecting "novel" theory of "shared monopoly": "Professors

13 Areeda and Turner admit that 'no case has held the § 2 monopolization provision applicable to

14 shared monopoly.' . . . . One court directly addressing the issue stated bluntly, 'an oligopoly, or a

15 shared monopoly, does not in itself violate § 2 of the Sherman Act.'"); *RxUSA Wholesale v. Alcon*

16 *Labs.*, 391 Fed. Appx 59, 61 (2d Cir. 2010) (characterizing plaintiff's shared monopoly claim as a

17 recapitulation of its failed § 1 arguments); *Midwest Gas Servs. v. Ind. Gas Co.*, 317 F.3d 703, 713

18 (7th Cir. 2003) (ruling that under § 2 only one firm can be a monopolist); *In re Credit Default*

19 *Swaps Antitrust Litig.*, 2014 U.S. Dist. LEXIS 123784, at *40 (S.D.N.Y. 2014) (dismissing

20 conspiracy claim for not alleging "that the aim of defendants' conspiracy was to form a single

21 entity to possess monopoly power"); *United Food & Commer. Workers Local 1776 &*

22 *Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d

23 1052, 1076-77 (N.D. Cal. 2014) (finding plaintiffs failed to allege that either party possessed

24 market power and "cite any case where a court held a manufacturer and its distributor jointly liable

25 for violating Section 2"); *Precision CPAP, Inc. v. Jackson Hosp.*, 2010 U.S. Dist. LEXIS 20336,

26 at *43 (M.D. Ala. 2010) (rejecting "any claim of violation of Section 2 . . . predicated on a theory

27 of shared monopoly"); *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 42 (D.D.C.

28 2007) (holding that claim of monopolization must be supported by allegations of market

1    domination by each defendant and that allegations that a group of defendants together possess

2    market power do not satisfy § 2); *Arista Records v. Lime Grp.*, 532 F. Supp. 2d 556, 579-80

3    (S.D.N.Y. 2007) (dismissing § 2 claims premised on shared monopoly theory); *In re Mushroom*

4    *Direct Purchaser Antitrust Litig.*, 514 F. Supp. 2d 683, 700-02 (E.D. Pa. 2007) (rejecting

5    "concerted monopolization" theory aggregating monopoly power of individual defendants);

6    *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 256-57 (S.D.N.Y. 1995) (rejecting theory);

7    *Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n*, 861 F. Supp. 1498, 1514 (D. Or. 1994)

8    (reasoning that since shared monopoly cannot support an actual monopolization claim, then

9    conspiracy to achieve shared monopoly cannot be an unlawful conspiracy to monopolize).

10          Thus, under binding Ninth Circuit law, to establish any of its Section 2 theories Orion must

11    show monopoly power, or likelihood of it, as to a single specific Defendant, not a combination of

12    different firms. *Harkins Amusement Ent.*, 850 F.2d at 490. This proposed instruction therefore

13    dramatically misstates the law and it would be reversible error to read it to the jury.

14          Further, it does not make sense to mix and match between two different sets of model

15    instructions, because model instructions are designed to be used together. Defendants have

16    proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of

17    model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as

18    the authoritative source for this purpose among antitrust practitioners—with no substantive

19    modifications or argument. Defendants submit that the ABA instructions are both more complete

20    statements of the law, and presented more efficiently in fewer instructions, than the "Modern

21    Federal Jury Instructions" used as the starting point for Orion's proposed instructions. Moreover,

22    the model instructions used by Orion include certain instructions that are demonstrably improper

23    as a matter of law, as explained in several of Defendants' other objections.

24

25          **Orion's Response**:

26          Defendants' attempt to turn the jury instruction process into a motion for summary

27    judgment on Orion's attempted monopolization claim—a claim that Defendants did not even seek

28    summary judgment on—is improper and should be rejected on that basis alone.

1    In any case, Defendants' argument is pure sophistry.  The Defendants in this action, while

2  nominally distinct entities, are a single economic unit in the eyes of the law because they are all

3  wholly owned subsidiaries of Defendant Ningbo Sunny Electronic Co., Ltd.  *Copperweld Corp. v.*

4  *Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) ("A parent and its wholly owned subsidiary have a

5  complete unity of interest. Their objectives are common, not disparate; their general corporate

6  actions are guided or determined not by two separate corporate consciousnesses, but one. They are

7  not unlike a multiple team of horses drawing a vehicle under the control of a single driver.").  This

8  key fact distinguishes this case from the authorities and commentary cited by Defendants—all of

9  which address co-defendants that are not wholly owned subsidiaries within the same corporate

10  family, as in this case.

11    Because the law views Defendants as a single economic unit, the jury must look to the acts

12  of the entire economic unit—*i.e.*, all of the Defendants—for purposes of Orion's conspiracy to

13  monopolize claim.  *Arandell Corp. v. Centerpoint Energy Servs.*, Inc., 900 F.3d 623, 631 (9th Cir.

14  2018) ("[The] burden of establishing any individual defendant's liability required showing only

15  that the defendant's conduct played a 'role' in the overall anticompetitive scheme perpetrated by

16  the enterprise as a whole." . . . [U]nder *Copperweld*, the plaintiff did not need to prove that

17  "'specific Defendants' independently satisfied each necessary element of the claims," because "in

18  a single-enterprise situation, it is the affiliated corporations' collective conduct—i.e., the conduct

19  of the enterprise they jointly compose—that matters; it is the enterprise which must be shown to

20  satisfy the elements of a Section 2 claim.") (quoting *Lenox MacLaren Surgical Corp. v.*

21  *Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017).

22    If Defendants were correct, a single holding company could monopolize an entire industry

23  of widgets and yet immune itself from Section 2 liability simply by placing each widget factory

24  within a separate subsidiary corporation.  That kind of corporate organization is called a trust.

25  Outlawing trusts is the purpose of the antitrust laws.

26    Defendants' contention is a factual one, not a legal one.  If Defendants wish to argue to the

27  jury that Orion cannot prove that the conspiracy had the object of monopolizing the telescope

28

1    manufacturing services market because the Synta Entities had too much market share, they will be

2    free to do so.  But Orion is entitled to present its claim, and this instruction, to the jury.

3         Orion will not repeat its rebuttal to Defendants' erroneous contention that the ABA model

4    instructions are superior here, but incorporates it by reference.

SMRH:4832-1239-1592.2

**ORION'S CONSPIRACY TO MONOPOLIZE INSTRUCTION NO. 7**

**CONSPIRACY TO MONOPOLIZE: INTERSTATE COMMERCE**

The instructions I read you previously regarding the interstate commerce element as to Orion's Section 1 price and credit term fixing claim apply equally to Orion's Section 2 conspiracy to monopolize claim.

**Source and Authorities:** Orion proposes this instruction to avoid duplicative instructions and to speed the jury instruction process.

**ORION'S CONSPIRACY TO MONOPOLIZE INSTRUCTION NO. 8**

**CONSPIRACY TO MONOPOLIZE: JOINING THE CONSPIRACY WITH THE INTENT TO MONOPOLIZE**

If you decide that a conspiracy to monopolize the telescope manufacturing services market did exist and that it concerned goods and/or services in interstate commerce, then you must decide whether Defendants joined the conspiracy with the necessary state of mind. The third element that Orion must prove is that Defendants joined the conspiracy with the specific intention that the conspiracy would acquire or maintain a monopoly in the telescope manufacturing services market. In other words, Orion must prove that Defendants entered into the agreement with the other conspirators with the conscious object of acquiring or maintaining the power, together with the other members of the conspiracy, to control prices or exclude competition.

**Redline:**

If you decide that a conspiracy to monopolize the [describe the industry or segment of commerce alleged]telescope manufacturing services market did exist and that it concerned goods (and/or services) in interstate commerce, then you must decide whether the dDefendants joined the conspiracy with the necessary state of mind. The third element that the plaintiff Orion must prove is that the dDefendants joined the conspiracy with the specific intention that the conspiracy would acquire (or maintain) a monopoly in [describe the industry or segment of commerce alleged)the telescope manufacturing services market. In other words, the plaintiff Orion must prove that the dDefendants entered into the agreement with the other conspirators with the conscious object of acquiring (or maintaining) the power, together with the other members of the conspiracy, to control prices or exclude competition.

**Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.03, Instr. 80-39 (Monopolization) (Matthew Bender, 2015).

**Defendants' Objection:** The "shared monopoly" or "joint monopolization" theory suggested by this proposed instruction—under which a group of firms that collectively possess

1   monopoly power can be found liable for joint monopolization—is invalid as a matter of law and

2   has been consistently rejected by the courts, including the Ninth Circuit.  *See, e.g., Harkins*

3   *Amusement Ent. v. General Cinema Corp.*, 850 F.2d 477, 490 (9th Cir. 1988) (internal citation

4   omitted) (citing *Consolidated Terminal Systems, Inc. v. ITT World Communications, Inc.*, 535 F.

5   Supp. 225, 228-29 (S.D.N.Y. 1982)) (rejecting "novel" theory of "shared monopoly":  "Professors

6   Areeda and Turner admit that 'no case has held the § 2 monopolization provision applicable to

7   shared monopoly.' . . . . One court directly addressing the issue stated bluntly, 'an oligopoly, or a

8   shared monopoly, does not in itself violate § 2 of the Sherman Act.'"); *RxUSA Wholesale v. Alcon*

9   *Labs.*, 391 Fed. Appx 59, 61 (2d Cir. 2010) (characterizing plaintiff's shared monopoly claim as a

10  recapitulation of its failed § 1 arguments); *Midwest Gas Servs. v. Ind. Gas Co.*, 317 F.3d 703, 713

11  (7th Cir. 2003) (ruling that under § 2 only one firm can be a monopolist); *In re Credit Default*

12  *Swaps Antitrust Litig.*, 2014 U.S. Dist. LEXIS 123784, at *40 (S.D.N.Y. 2014) (dismissing

13  conspiracy claim for not alleging "that the aim of defendants' conspiracy was to form a single

14  entity to possess monopoly power"); *United Food & Commer. Workers Local 1776 &*

15  *Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d

16  1052, 1076-77 (N.D. Cal. 2014) (finding plaintiffs failed to allege that either party possessed

17  market power and "cite any case where a court held a manufacturer and its distributor jointly liable

18  for violating Section 2"); *Precision CPAP, Inc. v. Jackson Hosp.*, 2010 U.S. Dist. LEXIS 20336,

19  at *43 (M.D. Ala. 2010) (rejecting "any claim of violation of Section 2 . . . predicated on a theory

20  of shared monopoly"); *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 42 (D.D.C.

21  2007) (holding that claim of monopolization must be supported by allegations of market

22  domination by each defendant and that allegations that a group of defendants together possess

23  market power do not satisfy § 2); *Arista Records v. Lime Grp.*, 532 F. Supp. 2d 556, 579-80

24  (S.D.N.Y. 2007) (dismissing § 2 claims premised on shared monopoly theory); *In re Mushroom*

25  *Direct Purchaser Antitrust Litig.*, 514 F. Supp. 2d 683, 700-02 (E.D. Pa. 2007) (rejecting

26  "concerted monopolization" theory aggregating monopoly power of individual defendants);

27  *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 256-57 (S.D.N.Y. 1995) (rejecting theory);

28  *Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n*, 861 F. Supp. 1498, 1514 (D. Or. 1994)

1   (reasoning that since shared monopoly cannot support an actual monopolization claim, then

2   conspiracy to achieve shared monopoly cannot be an unlawful conspiracy to monopolize).

3       Thus, under binding Ninth Circuit law, to establish any of its Section 2 theories Orion must

4   show monopoly power, or likelihood of it, as to a single specific Defendant, not a combination of

5   different firms. *Harkins Amusement Ent.*, 850 F.2d at 490.  This proposed instruction therefore

6   dramatically misstates the law and it would be reversible error to read it to the jury.

7       In addition, Plaintiff's proposed instruction uses the term "Defendants" in a manner that

8   effectively eliminates Plaintiff's burden to prove liability as to each defendant and would only

9   confuse and mislead the jury.  *See* Def.s' Mot. in Limine No. 2 to Exclude Improper

10  Characterizations of or References to Defendants and Alleged Co-Conspirators, ECF No. 317.

11  Defendants respectfully request that the Court use Defendants' Proposed Instruction No. 59

12  instead, which makes clear that Plaintiff must prove each element of the offense as to each

13  individual defendants, and streamlines the three instructions on this issue proposed by Plaintiff

14  (Nos. 84-86) into one, comprehensive instruction.

15      Further, it does not make sense to mix and match between two different sets of model

16  instructions, because model instructions are designed to be used together.  Defendants have

17  proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of

18  model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as

19  the authoritative source for this purpose among antitrust practitioners—with no substantive

20  modifications or argument.  Defendants submit that the ABA instructions are both more complete

21  statements of the law, and presented more efficiently in fewer instructions, than the "Modern

22  Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover,

23  the model instructions used by Orion include certain instructions that are demonstrably improper

24  as a matter of law, as explained in several of Defendants' other objections.

25

26      **Orion's Response**:  Defendants' attempt to turn the jury instruction process into a motion

27  for summary judgment on Orion's attempted monopolization claim—a claim that Defendants did

28  not even seek summary judgment on—is improper and should be rejected on that basis alone.

1    In any case, Defendants' argument is pure sophistry.  The Defendants in this action, while

2   nominally distinct entities, are a single economic unit in the eyes of the law because they are all

3   wholly owned subsidiaries of Defendant Ningbo Sunny Electronic Co., Ltd.  *Copperweld Corp. v.*

4   *Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) ("A parent and its wholly owned subsidiary have a

5   complete unity of interest. Their objectives are common, not disparate; their general corporate

6   actions are guided or determined not by two separate corporate consciousnesses, but one. They are

7   not unlike a multiple team of horses drawing a vehicle under the control of a single driver.").  This

8   key fact distinguishes this case from the authorities and commentary cited by Defendants—all of

9   which address co-defendants that are not wholly owned subsidiaries within the same corporate

10  family, as in this case.

11    Because the law views Defendants as a single economic unit, the jury must look to the acts

12  of the entire economic unit—*i.e.*, all of the Defendants—for purposes of Orion's conspiracy to

13  monopolize claim.  *Arandell Corp. v. Centerpoint Energy Servs.*, Inc., 900 F.3d 623, 631 (9th Cir.

14  2018) ("[The] burden of establishing any individual defendant's liability required showing only

15  that the defendant's conduct played a 'role' in the overall anticompetitive scheme perpetrated by

16  the enterprise as a whole." . . . [U]nder *Copperweld*, the plaintiff did not need to prove that

17  "'specific Defendants' independently satisfied each necessary element of the claims," because "in

18  a single-enterprise situation, it is the affiliated corporations' collective conduct—i.e., the conduct

19  of the enterprise they jointly compose—that matters; it is the enterprise which must be shown to

20  satisfy the elements of a Section 2 claim.") (quoting *Lenox MacLaren Surgical Corp. v.*

21  *Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017).

22    If Defendants were correct, a single holding company could monopolize an entire industry

23  of widgets and yet immune itself from Section 2 liability simply by placing each widget factory

24  within a separate subsidiary corporation.  That kind of corporate organization is called a trust.

25  Outlawing trusts is the purpose of the antitrust laws.

26    Defendants' contention is a factual one, not a legal one.  If Defendants wish to argue to the

27  jury that Orion cannot prove that the conspiracy had the object of monopolizing the telescope

28

1  manufacturing services market because the Synta Entities had too much market share, they will be

2  free to do so.  But Orion is entitled to present its claim, and this instruction, to the jury.

3          Orion will not repeat its rebuttal to Defendants' erroneous contention that the ABA model

4  instructions are superior here, but incorporates it by reference.

**ORION'S CONSPIRACY TO MONOPOLIZE INSTRUCTION NO. 9**

**CONSPIRACY TO MONOPOLIZE: MANNER OF PROOF—DIRECT EVIDENCE**

Orion may prove that Defendants joined the conspiracy with the specific intent to achieve or maintain a monopoly by presenting evidence of direct statements of Defendants' intent to enter into an agreement to acquire or maintain a monopoly. Such proof of Defendants' purpose may consist of documents prepared by responsible officers or employees of Defendants at or about the time in question, or of statements made by responsible officers or employees of Defendants.

**Redline:**

~~The plaintiff~~ Orion may prove that ~~the d~~Defendants joined the conspiracy with the specific intent to achieve ~~(~~or maintain~~)~~ a monopoly by presenting evidence of direct statements of ~~the d~~Defendant~~'~~s' intent to enter into an agreement to acquire ~~(~~or maintain~~)~~ a monopoly. Such proof of ~~the d~~Defendant~~'~~s' purpose may consist of documents prepared by responsible officers or employees of ~~the d~~Defendants at or about the time in question, or of statements made by responsible officers or employees of ~~the d~~Defendants.

**Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.03, Instr. 80-40 (Monopolization) (Matthew Bender, 2015).

**Defendants' Objection:** It does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together. Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as the authoritative source for this purpose among antitrust practitioners—with no substantive modifications or argument. Defendants submit that the ABA instructions are both more complete statements of the law, and presented more efficiently in fewer instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's proposed instructions. Moreover, the model instructions used by Orion include certain

1   instructions that are demonstrably improper as a matter of law, as explained in several of

2   Defendants' other objections.

3       **Orion's Response:**

4       Defendants' conclusory assertion that the ABA model instructions are "the authoritative

5   source" of jury instructions—advanced without any citation supporting the claim—is not true.

6   The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

7   by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

8   the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

9   Indeed, instructions from the Modern Federal Jury Instructions source have been used in

10  significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

11  *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

12  "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

13  *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pg. 2-3

14  "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

15      The model instructions provided by the Modern Federal Jury Instructions treatise are

16  superior because they communicate the law to the jury in far simpler and more efficient manner

17  than the ABA model instructions.  The jury is going to be presented a significant number of

18  instructions, which counsels in favor of brevity and simplicity.

19      Defendants' failure to modify the ABA instructions to fit the facts of this case where the

20  ABA model instructions themselves direct that such modification should be made does not

21  counsel in favor of selecting Defendants' proposed instructions.

22      Finally, Defendant's assertion that "it does not make sense to mix and match between two

23  different sets of model instructions" is belied by the fact that Defendants' own proposed

24  instructions use multiple model instruction sources.  The fact is that none of the sources approved

25  by the Ninth Circuit Model Instructions provides model instructions for all of the claims that

26  Orion is asserting.

27

28

### ORION'S CONSPIRACY TO MONOPOLIZE INSTRUCTION NO. 10
### **CONSPIRACY TO MONOPOLIZE: INDIRECT EVIDENCE**

Orion may also prove that Defendants had the specific intent to monopolize through evidence of Defendants' actions. For example, if the evidence shows that the natural and predictable result of the conspirators' agreement was to exclude or destroy competition, and that this was so plainly predictable that the conspiracy must have had that as its purpose, then if you find that Defendants willingly joined the conspiracy, you may find that Defendants joined the conspiracy with the specific intent of monopolizing the telescope manufacturing services market.

**Redline:**

~~The plaintiff~~ Orion may also prove that ~~the d~~Defendants had the specific intent to monopolize through evidence of ~~the d~~Defendant~~'s~~' actions. For example, if the evidence shows that the natural and predictable result of the conspirators' agreement was to exclude or destroy competition, and that this was so plainly predictable that the conspiracy must have had that as its purpose, then if you find that ~~the d~~Defendants willingly joined the conspiracy, you may find that ~~the d~~Defendants joined the conspiracy with the specific intent of monopolizing ~~[describe the industry or segment of commerce alleged]~~the telescope manufacturing services market.

**Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions– Civil ¶ 80.04, Instr. 80-41 (Monopolization) (Matthew Bender, 2015).

**Defendants' Objection:** This is not an accurate statement of the law regarding the specific intent necessary to establish a conspiracy to monopolize claim. As set forth in the ABA model instruction submitted by Defendants, the requisite intent is not merely to "exclude or destroy competition" but a specific intent "that one of the parties to the agreement would obtain or maintain monopoly power." *See* Defendants' Proposed Instruction (CONSPIRACY TO MONOPOLIZE); *Howard Hess Dental Labs v. Dentsply Int'l*, 602 F. 3d 237, 257 (3d Cir. 2010).

1    Further, it does not make sense to mix and match between two different sets of model

2 instructions, because model instructions are designed to be used together.  Defendants have

3 proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of

4 model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as

5 the authoritative source for this purpose among antitrust practitioners—with no substantive

6 modifications or argument.  Defendants submit that the ABA instructions are both more complete

7 statements of the law, and presented more efficiently in fewer instructions, than the "Modern

8 Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover,

9 the model instructions used by Orion include certain instructions that are demonstrably improper

10 as a matter of law, as explained in several of Defendants' other objections.

11    **Orion's Response:**

12    Defendants' conclusory assertion that the ABA model instructions are "the authoritative

13 source" of jury instructions—advanced without any citation supporting the claim—is not true.

14 The Modern Federal Jury Instructions treatise Orion has used in preparing is specifically approved

15 by the Ninth Circuit in Chapter 14 of the Model Ninth Circuit Jury Instructions, and the fact that

16 the ABA model instruction appears first—in a list organized by alphabetical order—is immaterial.

17 Indeed, instructions from the Modern Federal Jury Instructions source have been used in

18 significant antitrust cases in this District.  *See* Jury Instructions, *In Re: TFT-LCD (Flat Panel)*

19 *Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. June 28, 2012), pp. 6-8, ("Bias of Witnesses",

20 "Conflicting Expert Testimony", and "Inferences") (Illston, J.); Final Jury Instructions, *Smithkline*

21 *Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-05702 (N.D. Cal. March 24, 2011), pg. 2-3

22 "Summary of Dispute and the Parties' Claims and Defenses" (ECF No. 485) (Wilken, J.).

23    The model instructions provided by the Modern Federal Jury Instructions treatise are

24 superior because they communicate the law to the jury in far simpler and more efficient manner

25 than the ABA model instructions.  The jury is going to be presented a significant number of

26 instructions, which counsels in favor of brevity and simplicity.

27

28

Defendants' failure to modify the ABA instructions to fit the facts of this case where the ABA model instructions themselves direct that such modification should be made does not counsel in favor of selecting Defendants' proposed instructions.

Finally, Defendant's assertion that "it does not make sense to mix and match between two different sets of model instructions" is belied by the fact that Defendants' own proposed instructions use multiple model instruction sources.  The fact is that none of the sources approved by the Ninth Circuit Model Instructions provides model instructions for all of the claims that Orion is asserting.

**ORION'S CONSPIRACY TO MONOPOLIZE INSTRUCTION NO. 11**

<u>**CONSPIRACY TO MONOPOLIZE: COMMISSION OF AN ACT IN FURTHERANCE**</u>

<u>**OF THE CONSPIRACY**</u>

The fourth element that Orion must prove in order to show that Defendants engaged in a conspiracy to monopolize is that some member of the conspiracy-not necessarily Defendants-took some identifiable action to bring about the monopolization. This action to carry out the conspiracy need not be unlawful in and of itself, nor is it necessary that the action accomplish the objective of the conspiracy. What Orion must show, by a preponderance of the evidence, is that one of the conspirators took some concrete action in furtherance of the conspiracy.

**Redline:**

The fourth element that ~~the plaintiff~~ Orion must prove in order to show that ~~the dD~~efendant~~s~~ engaged in a conspiracy to monopolize is that some member of the conspiracy-not necessarily ~~the dD~~efendant~~s~~-took some identifiable action to bring about the monopolization. This action to carry out the conspiracy need not be unlawful in and of itself, nor is it necessary that the action accomplish the objective of the conspiracy. What ~~the plaintiff~~ Orion must show, by a preponderance of the evidence, is that one of the conspirators took some concrete action in furtherance of the conspiracy.

**Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 80.03, Instr. 80-42 (Monopolization) (Matthew Bender, 2015).

**Defendants' Objection:** It does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together. Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as the authoritative source for this purpose among antitrust practitioners—with no substantive modifications or argument. Defendants submit that the ABA

1    instructions are both more complete statements of the law, and presented more efficiently in fewer

2    instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

3    proposed instructions.  Moreover, the model instructions used by Orion include certain

4    instructions that are demonstrably improper as a matter of law, as explained in several of

5    Defendants' other objections.

6

7         **Orion's Response**:

8         Defendants' attempt to turn the jury instruction process into a motion for summary

9    judgment on Orion's attempted monopolization claim—a claim that Defendants did not even seek

10   summary judgment on—is improper and should be rejected on that basis alone.

11        In any case, Defendants' argument is pure sophistry.  The Defendants in this action, while

12   nominally distinct entities, are a single economic unit in the eyes of the law because they are all

13   wholly owned subsidiaries of Defendant Ningbo Sunny Electronic Co., Ltd.  *Copperweld Corp. v.*

14   *Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) ("A parent and its wholly owned subsidiary have a

15   complete unity of interest. Their objectives are common, not disparate; their general corporate

16   actions are guided or determined not by two separate corporate consciousnesses, but one. They are

17   not unlike a multiple team of horses drawing a vehicle under the control of a single driver.").  This

18   key fact distinguishes this case from the authorities and commentary cited by Defendants—all of

19   which address co-defendants that are not wholly owned subsidiaries within the same corporate

20   family, as in this case.

21        Because the law views Defendants as a single economic unit, the jury must look to the acts

22   of the entire economic unit—*i.e.*, all of the Defendants—for purposes of Orion's conspiracy to

23   monopolize claim.  *Arandell Corp. v. Centerpoint Energy Servs.*, Inc., 900 F.3d 623, 631 (9th Cir.

24   2018) ("[The] burden of establishing any individual defendant's liability required showing only

25   that the defendant's conduct played a 'role' in the overall anticompetitive scheme perpetrated by

26   the enterprise as a whole." . . . [U]nder *Copperweld*, the plaintiff did not need to prove that

27   "'specific Defendants' independently satisfied each necessary element of the claims," because "in

28   a single-enterprise situation, it is the affiliated corporations' collective conduct—i.e., the conduct

of the enterprise they jointly compose—that matters; it is the enterprise which must be shown to satisfy the elements of a Section 2 claim.") (quoting *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017).

If Defendants were correct, a single holding company could monopolize an entire industry of widgets and yet immune itself from Section 2 liability simply by placing each widget factory within a separate subsidiary corporation.  That kind of corporate organization is called a trust. Outlawing trusts is the purpose of the antitrust laws.

Defendants' contention is a factual one, not a legal one.  If Defendants wish to argue to the jury that Orion cannot prove that the conspiracy had the object of monopolizing the telescope manufacturing services market because the Synta Entities had too much market share, they will be free to do so.  But Orion is entitled to present its claim, and this instruction, to the jury.

Orion will not repeat its rebuttal to Defendants' erroneous contention that the ABA model instructions are superior here, but incorporates it by reference.

**DEFENDANTS' PROPOSED INSTRUCTIONS REGARDING CONSPIRACY TO MONOPOLIZE**

**DEFENDANTS' PROPOSED INSTRUCTION NO. 33**

**CONSPIRACY TO MONOPOLIZE—ELEMENTS**

The complaint alleges a conspiracy to monopolize in violation of Section 2 of the Shennan Act, which declares unlawful every conspiracy to monopolize interstate or foreign commerce.

To prevail against a defendant on its claim of conspiracy to monopolize, plaintiff must prove, by a preponderance of the evidence as to that defendant, each of the following elements:

(1)     two or more persons knowingly enter into an agreement or mutual understanding between two or more persons to obtain or maintain monopoly power in the market for all telescope manufacturing;

(2)     defendant specifically intended that one of the parties to the agreement would obtain or maintain monopoly power in the market for all telescope manufacturing;

(3)     defendant committed an overt act in furtherance of the conspiracy;

(4)     defendant's activities occurred in or affected interstate or foreign commerce; and

(5)     plaintiff was injured in its business or property because of the conspiracy to monopolize.

If you find that the evidence is insufficient to prove any one or more of these elements as to a defendant, then you must find for that defendant and against plaintiff on plaintiff's conspiracy to monopolize claim. If you find that the evidence is sufficient to prove each element as to a defendant, then you must find for plaintiff and against that defendant on plaintiff's conspiracy to monopolize claim.


**AUTHORITY: ABA Ch. 3, Instruction E1**

**Orion's Position:**

The Court should issue Orion's proposed instructions on conspiracy to monopolize.  Orion provided redlines with its instructions so that the Court knows what it is ordering and how Orion's model instructions are modified.

1    Orion objects to Defendants' misstatement of the relevant market advanced by Orion and

2    Dr. Zona.  It is the telescope manufacturing services industry.

3    The model instructions provided by the Modern Federal Jury Instructions and used by

4    Orion treatise are superior because they communicate the law to the jury in far simpler and more

5    efficient manner than the ABA model instructions.  The jury is going to be presented a significant

6    number of instructions, which counsels in favor of brevity and simplicity.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4832-1239-1592.2
Case No. 5:16-cv-06370-EJD-VKD
DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1

2      **DEFENDANTS' PROPOSED INSTRUCTION NO. 34**

3      **CONSPIRACY TO MONOPOLIZE—EXISTENCE OF CONSPIRACY**

4           The instructions I read you previously regarding the existence and formation of a

5   conspiracy under Section 1 of the Sherman Act apply equally to Plaintiff's claim of a conspiracy

6   to monopolize under Section 2 of the Sherman Act.

7

8

9   **AUTHORITY:  Defendants propose this instruction to avoid requiring the Court to repeat**

10  **instructions above regarding the existence of an antitrust conspiracy.**

11

12      **Orion's Position:**

13          Orion objects to Defendants' misstatement of the relevant market advanced by Orion and

14  Dr. Zona.  It is the telescope manufacturing services industry.

15          Orion does not philosophically object to an instruction by reference to avoid cumulative

16  instructions, provided that all repetitious elements are treated in this manner and not just

17  conspiracy.  However, Defendants seek to repeatedly instruct the jury on relevant market and

18  anticompetitive intent.  What is good for the goose must be good for the gander.

19          Orion further objects to this instruction because Defendants have not provided a redline

20  against the model instruction for Orion or the Court to review.

21          The Court should issue Orion's proposed instructions on conspiracy to monopolize.  Orion

22  provided redlines with its instructions so that the Court knows what it is ordering and how Orion's

23  model instructions are modified.

24          The model instructions provided by the Modern Federal Jury Instructions and used by

25  Orion treatise are superior because they communicate the law to the jury in far simpler and more

26  efficient manner than the ABA model instructions.  The jury is going to be presented a significant

27  number of instructions, which counsels in favor of brevity and simplicity.

28

**DEFENDANTS' PROPOSED INSTRUCTION NO. 35**

**CONSPIRACY TO MONOPOLIZE—MONOPOLY POWER DEFINED**

Monopoly power is the power to control prices, restrict output, and exclude competition in a relevant antitrust market.  More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time.  However, possession of monopoly power, in and of itself, is not unlawful.

**ABA, Ch. 3, Instruction 2.A.2**

**Orion's Position:**

Orion objects to Defendants' misstatement of the relevant market advanced by Orion and Dr. Zona.  It is the telescope manufacturing services industry.

Orion does not philosophically object to an instruction by reference to avoid cumulative instructions, provided that all repetitious elements are treated in this manner and not just conspiracy.  However, Defendants seek to repeatedly instruct the jury on relevant market and anticompetitive intent.  What is good for the goose must be good for the gander.

Orion further objects to this instruction because Defendants have not provided a redline against the model instruction for Orion or the Court to review.

The Court should issue Orion's proposed instructions on conspiracy to monopolize.  Orion provided redlines with its instructions so that the Court knows what it is ordering and how Orion's model instructions are modified.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 36

## CONSPIRACY TO MONOPOLIZE--RELEVANT MARKET-GENERAL

Plaintiff must prove by a preponderance of the evidence that Ningbo Sunny joined a conspiracy to give Ningbo Sunny monopoly power in a relevant  market.  Defining the relevant market is essential because you are required to make a judgment about whether defendant has conspired to acquire monopoly power in a properly defined economic market. To make this judgment, you must be able to determine what, if any, economic forces restrain defendant's freedom to set prices for or to restrict the production level of all telescope manufacturing.

The most likely and most important restraining force will be actual and potential competition from other firms and their products. This includes all firms and products that act or likely could act as restraints on defendant's power to set prices as it pleases because customers could switch to them if defendant sets its own prices too high.  All the firms and products that exert such restraining force are within what is called the relevant market.

There are two aspects you must consider in determining whether plaintiff has met its burden to prove the relevant market by a preponderance of the evidence. The first is the relevant product market. The second is the relevant geographic market.


**AUTHORITY: ABA, 3.A.3 (modified to reflect Conspiracy theory as instructed by Model Instructions)**

**Orion's Position:**

Orion objects to Defendants' misstatement of the relevant market advanced by Orion and Dr. Zona.  It is the telescope manufacturing services industry.

Orion does not philosophically object to an instruction by reference to avoid cumulative instructions, provided that all repetitious elements are treated in this manner and not just conspiracy.  However, Defendants seek to repeatedly instruct the jury on relevant market and anticompetitive intent.  What is good for the goose must be good for the gander.

Orion further objects to this instruction because Defendants have not provided a redline against the model instruction for Orion or the Court to review.

1    The Court should issue Orion's proposed instructions on conspiracy to monopolize.  Orion

2    provided redlines with its instructions so that the Court knows what it is ordering and how Orion's

3    model instructions are modified.

4    The model instructions provided by the Modern Federal Jury Instructions and used by

5    Orion treatise are superior because they communicate the law to the jury in far simpler and more

6    efficient manner than the ABA model instructions.  The jury is going to be presented a significant

7    number of instructions, which counsels in favor of brevity and simplicity.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 37

## CONSPIRACY TO MONOPOLIZE—RELEVANT PRODUCT MARKET

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material-such as aluminum foil, cellophane, or even plastic containers-to be reasonable alternatives, then all those products may be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant and non-transitory increase in the price of one product would result in enough customers switching from that product to another product such that the price increase would not be profitable.  In other words, will customers accept the price increase or will so many switch to alternative products that the price increase will be withdrawn? Generally speaking, a small but significant and non-transitory increase in price is approximately a 5 percent increase in price not due to cost factors.  If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the product market. If, on the other hand, you find that customers would not switch, then you must conclude that the products are not in the product market.

In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other under the price increase test I have just given you, you may also consider:

- consumers' views on whether the products are  interchangeable;
- the relationship between the price of one product and sales of another;
- the presence or absence of specialized vendors;

1      •      the perceptions of either industry or the public as to whether the products are in

2  separate markets;

3      •      the views of plaintiff and defendant regarding who their respective competitors are;

4  and

5      •      the existence or absence of different customer groups or distribution channels.[4]

6      In this case, plaintiff contends that the relevant product market is the market for all

7  telescope manufacturing.  By contrast, defendant contends that plaintiff has failed to allege the

8  proper relevant product market.  If you find that plaintiff has proven a relevant product market,

9  then you should continue to evaluate the remainder of plaintiff's claim. However, if you find that

10  plaintiff has failed to prove such a market, then you must find in defendant's favor on this claim.

11

12  **AUTHORITY: ABA, 3.A.4**

13      **Orion's Position:**

14      Orion objects to Defendants' misstatement of the relevant market advanced by Orion and

15  Dr. Zona.  It is the telescope manufacturing services industry.

16      Orion does not philosophically object to an instruction by reference to avoid cumulative

17  instructions, provided that all repetitious elements are treated in this manner and not just

18  conspiracy.  However, Defendants seek to repeatedly instruct the jury on relevant market and

19  anticompetitive intent.  What is good for the goose must be good for the gander.

20      Orion further objects to this instruction because Defendants have not provided a redline

21  against the model instruction for Orion or the Court to review.

22      The Court should issue Orion's proposed instructions on conspiracy to monopolize.  Orion

23  provided redlines with its instructions so that the Court knows what it is ordering and how Orion's

24  model instructions are modified.

25      The model instructions provided by the Modern Federal Jury Instructions and used by

26  Orion treatise are superior because they communicate the law to the jury in far simpler and more

27  efficient manner than the ABA model instructions.  The jury is going to be presented a significant

28  number of instructions, which counsels in favor of brevity and simplicity.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 38

## CONSPIRACY TO MONOPOLIZE—RELEVANT PRODUCT MARKET-SUPPLY SUBSTITUTABILITY

In deciding whether plaintiff has proven a relevant product market, you may also consider what the law refers to as "the cross-elasticity of supply" or, in other words, the extent to which the producers of one product would be willing to shift their resources, such as intellectual property, manufacturing facilities, or personnel to producing another product in response to an increase in the price of the other product. Such producers, to the extent that they exist, can increase supply and, therefore, drive prices back to competitive levels, defeating any effort by a would-be monopolist to charge significantly higher prices.

Take two shoe manufacturers, for example. The first manufacturer produces shoes for women, while the second manufacturer produces shoes for men. Generally speaking, men's and women's shoes are not reasonably interchangeable and, therefore, might be thought of as being in a separate product markets. However, it is possible that the men's shoe manufacturer could quickly shift its resources to start producing women's shoes if the women's shoe manufacturer raised its prices significantly and vice versa. Although women would not buy men's shoes, nor would men buy women's shoes, the ability of each manufacturer to alter its production could prevent the other manufacturer from raising prices significantly. Thus, in this example, men's and women's shoes would be included in the same market.

If, in determining the products in the relevant product market you find that there are manufacturers that have the ability to alter their production to manufacture products that can reasonably be substituted with defendant's-even though they do not presently compete with defendant-you may consider whether the existence of these potential alternative suppliers can influence the prices that defendant charges for its product and, if so, that amount of the product that these suppliers are likely to produce. However, if you find that there are no others who would switch production to products that would compete with defendant's, you may define the market solely on your evaluation of whether the existing allegedly competing products are reasonable substitutes for each other.

1    **AUTHORITY: ABA, 3.A.5**

2         **Orion's Position:**

3         Orion objects to Defendants' misstatement of the relevant market advanced by Orion and

4    Dr. Zona.  It is the telescope manufacturing services industry.

5         Orion does not philosophically object to an instruction by reference to avoid cumulative

6    instructions, provided that all repetitive elements are treated in this manner and not just

7    conspiracy.  However, Defendants seek to repeatedly instruct the jury on relevant market and

8    anticompetitive intent.  What is good for the goose must be good for the gander.

9         Orion further objects to this instruction because Defendants have not provided a redline

10   against the model instruction for Orion or the Court to review.

11        The Court should issue Orion's proposed instructions on conspiracy to monopolize.  Orion

12   provided redlines with its instructions so that the Court knows what it is ordering and how Orion's

13   model instructions are modified.

14        The model instructions provided by the Modern Federal Jury Instructions and used by

15   Orion treatise are superior because they communicate the law to the jury in far simpler and more

16   efficient manner than the ABA model instructions.  The jury is going to be presented a significant

17   number of instructions, which counsels in favor of brevity and simplicity.

18

19

20

21

22

23

24

25

26

27

28

## **DEFENDANTS' PROPOSED INSTRUCTION NO. 39**

## **CONSPIRACY TO MONOPOLIZE--RELEVANT GEOGRAPHIC MARKET**

The relevant geographic market is the area in which defendant faces competition from other firms that compete in the relevant product market and to which customers can reasonably turn for purchases. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one geographic area have substantial effects on prices or sales in another geographic area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or neighborhood.

Plaintiff has the burden of proving the relevant geographic market by a preponderance of the evidence. In this case, plaintiff claims that the relevant geographic market is the world. By contrast, defendant asserts that plaintiff has failed to prove a relevant geographic market. In determining whether plaintiff met its burden and demonstrated that its proposed geographic market is proper, you may consider several factors, including:

   • the geographic area in which defendant sells and where defendant's customers are located;

   • the geographic area to which customers tum for supply of the product;

   • the geographic area to which customers have turned or have seriously considered turning;[5]

   • the transportation cost differences between areas;

   • the geographic areas that suppliers view as potential sources of competition; and

   • whether governmental licensing requirements, taxes, or quotas have the effect of limiting competition in certain areas.

**AUTHORITY: ABA, 3.A.6**

   **Orion's Position:**

Orion objects to Defendants' misstatement of the relevant market advanced by Orion and Dr. Zona. It is the telescope manufacturing services industry.

1    Orion does not philosophically object to an instruction by reference to avoid cumulative

2    instructions, provided that all repetitious elements are treated in this manner and not just

3    conspiracy.  However, Defendants seek to repeatedly instruct the jury on relevant market and

4    anticompetitive intent.  What is good for the goose must be good for the gander.

5    Orion further objects to this instruction because Defendants have not provided a redline

6    against the model instruction for Orion or the Court to review.

7    The Court should issue Orion's proposed instructions on conspiracy to monopolize.  Orion

8    provided redlines with its instructions so that the Court knows what it is ordering and how Orion's

9    model instructions are modified.

10    The model instructions provided by the Modern Federal Jury Instructions and used by

11    Orion treatise are superior because they communicate the law to the jury in far simpler and more

12    efficient manner than the ABA model instructions.  The jury is going to be presented a significant

13    number of instructions, which counsels in favor of brevity and simplicity.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEFENDANTS' PROPOSED INSTRUCTION NO. 40**

## **CONSPIRACY TO MONOPOLIZE—SPECIFIC INTENT**

If you determine that there was an agreement among defendants to monopolize the market for all telescope manufacturing, you must then decide, as to each defendant, whether plaintiff has proven that that defendant had specifically intended that the members of the conspiracy would acquire or maintain monopoly power in the market for all telescope manufacturing.  In other words, you must decide whether the evidence shows that defendant entered into the agreement with the conscious aim of using anticompetitive conduct to acquire or maintain the power to control prices and exclude competition in the market for all telescope manufacturing.  Neither proof of use of the power to exclude, nor proof of actual exclusion of existing or potential competitors, is essential to sustain the charge of conspiracy to monopolize.

There are several ways in which a plaintiff may prove that a defendant had the specific intent to monopolize. There may be evidence of direct statements of defendant's intent to use anticompetitive means to acquire monopoly power in the market. Such proof of specific intent may be established by documents prepared by responsible officers or employees of defendant at about the time of the agreement or by testimony concerning statements of responsible officers or employees of defendant.  However, you should be careful to distinguish between a lawful intent to compete vigorously, which may be accompanied by aggressive language, and a specific intent to monopolize by using anticompetitive conduct.

Even if you decide that the evidence does not prove directly that a defendant actually intended to exercise monopoly power by using anticompetitive conduct, specific intent may be inferred from what defendant did. For example, if the evidence shows that the natural and probable consequence of the agreement or of the conduct of the parties to the agreement was to exclude or destroy competition in the market for all telescope manufacturing, that there was no legitimate business justification but the destruction or damage to competition, and that this was plainly foreseeable by defendant, then you may (but are not required to) infer that defendant specifically intended to acquire monopoly power by using anticompetitive conduct.

1    In determining whether each defendant had a specific intent to monopolize, you should

2   take into consideration the extent of competition all defendants would face from producers of

3   identical or equivalent goods and whether they had or probably could have acquired sufficient

4   power, acting together as a group, to control prices in and to exclude competition from the market

5   for all telescope manufacturing. If you find that it is unlikely that defendants could have achieved

6   the power to exclude competition from an appreciable segment of commerce, then you may

7   consider this as circumstantial evidence that none of them had the required specific intent to

8   monopolize.

9

10   **AUTHORITY:  ABA, Ch. 3, Instruction E.4**

11       **Orion's Position:**

12       Orion objects to Defendants' misstatement of the relevant market advanced by Orion and

13   Dr. Zona.  It is the telescope manufacturing services industry.

14       Orion further objects to this instruction because Defendants have not provided a redline

15   against the model instruction for Orion or the Court to review.

16       The Court should issue Orion's proposed instructions on conspiracy to monopolize.  Orion

17   provided redlines with its instructions so that the Court knows what it is ordering and how Orion's

18   model instructions are modified.

19       The model instructions provided by the Modern Federal Jury Instructions and used by

20   Orion treatise are superior because they communicate the law to the jury in far simpler and more

21   efficient manner than the ABA model instructions.  The jury is going to be presented a significant

22   number of instructions, which counsels in favor of brevity and simplicity.

23

24

25

26

27

28

## ORION'S CLAYTON ACT INSTRUCTION NO. 1

## <u>CLAYTON ACT: THE COMPLAINT AND THE STATUTE</u>

Orion claims that Defendant Ningbo Sunny Electronic Co., Ltd.'s and Defendant Sunny Optics, Inc.'s acquisition of Defendant Meade Instrument Corp.  violated an antitrust law popularly known as the Clayton Act because it unlawfully concentrated the market for telescope manufacturing services.

Section 7 of the Clayton Act provides: "[N]o [corporation] . . . shall acquire the whole or any part of the assets of another corporation engaged also in commerce . . . where in any line of commerce . . . in any section of the country, the effect of such acquisition may be substantially to lessen competition."

**Redline:**

~~Plaintiff~~ Orion ~~brings this action~~ claims that ~~against d~~Defendant Ningbo Sunny Electronic Co., Ltd.'s and Defendant Sunny Optics, Inc.'s acquisition of Defendant Meade Instrument Corp. violated ~~under the~~ an antitrust law~~s of the United States, specifically under an act~~ popularly known as the Clayton Act because it unlawfully concentrated the market for telescope manufacturing services.

Section 7 of the Clayton Act provides: "[N]o [corporation] . . . shall acquire the whole or any part of the assets of another corporation engaged also in commerce . . . where in any line of commerce . . . in any section of the country, the effect of such acquisition may be substantially to lessen competition."

**Source and Authorities:** 3A Fed. Jury Prac. & Instr. § 150:110 (6th ed.) (modified). Section 16 of the Clayton Act is not mentioned because the issuance of an injunction ordering divestment of the Meade assets is a question of law for the Court, not a question of fact or mixed question of law and fact for a jury.

**Defendants' Objection:**  Orion does not seek any damages with respect to its Section 7 claim.  *See* Zona Report ("Summary and Conclusions").  Because Orion seeks only equitable

1  relief, this claim should be decided by the Court.  Accordingly, Defendants object to including

2  instructions with respect to this claim, because such instructions could only serve to confuse the

3  jury into awarding damages for a claim as to which no damages are sought.  Further, Plaintiff has

4  created a bespoke and unnecessary "special" instruction that is not based on any set of model

5  instructions (much less a model instruction approved by the Ninth Circuit).  Plaintiff does not

6  identify any previous instance of its proposed instruction being given in a civil antitrust case.

7         **Orion's Response:**  Defendants again attempt to subvert the jury instruction process into

8  an additional bite at the summary judgment apple.

9         Defendants mischaracterize Dr. Zona's report.  As the Court recognized in its summary

10  judgment order, Dr. Zona calculated damages arising from the concentration of the telescope

11  manufacturing services caused by the Meade acquisition, the subject of Orion's Clayton Act

12  claim:

13
          > Orion's motion does not state that its failure to acquire Meade is the
14        > only harm caused by the alleged conspiracy. Rather, Orion claims
          > that the conspiracy to enact the merger harmed it by increasing
15        > market concentration. Pl.'s Mot. at 11; Pl.'s Reply at n.5. Here,
          > Orion's motion relies on Dr. Zona's calculation of the Herfindahl–
16        > Hirschman Index ("HHI") for the proposed relevant market.

17  Order Denying Motion for Summary Judgment 5:19-24 (ECF No. 338). Moreover, Dr. Zona

18  calculated his damages by utilizing the Cournot Nash equilibrium to determine equations for what

19  Orion's per unit profit would be if the telescope manufacturing services market were not

20  concentrated by the Meade acquisition, and thereby derived Orion's damages.

21         As to the proposed instruction, Orion proposes it to conform the Clayton Act instructions

22  with the instructions as to the Sherman Act, which set forth Orion's complaint and the relevant

23  statutory language.  Orion has utilized the text of the statute itself to do so.  There is no risk of

24  error from this instruction.

25

26

27

28

1    **ORION'S CLAYTON ACT INSTRUCTION NO. 2**

2    **CLAYTON ACT: PURPOSE OF THE STATUTE**

3    The purpose of the Clayton Act is to preserve and encourage free and open business

4    competition so that the public may receive better goods and services at a lower cost. Congress has

5    determined that mergers between companies whose effect may be to substantially lessen

6    competition or tend to create a monopoly are bad for commerce and are therefore illegal.

7    **Source and Authorities**: *California v. Am. Stores Co.*, 495 U.S. 271, 284 (1990) ("The

8    [Clayton] Act's other provisions manifest a clear intent to encourage vigorous private litigation

9    against anticompetitive mergers. Section 7 itself creates a relatively expansive definition of

10    antitrust liability: To show that a merger is unlawful, a plaintiff need only prove that its effect

11    "may be substantially to lessen competition.").

12    **Defendants' Objection:** Orion does not seek any damages with respect to its Section 7

13    claim.  *See* Zona Report ("Summary and Conclusions").  Because Orion seeks only equitable

14    relief, this claim should be decided by the Court.  Accordingly, Defendants object to including

15    instructions with respect to this claim, because such instructions could only serve to confuse the

16    jury into awarding damages for a claim as to which no damages are sought.  Further, Plaintiff has

17    created a bespoke and unnecessary "special" instruction that is not based on any set of model

18    instructions (much less a model instruction approved by the Ninth Circuit).  Plaintiff does not

19    identify any previous instance of its proposed instruction being given in a civil antitrust case.

20    **Orion's Response:**  Defendants again attempt to subvert the jury instruction process into

21    an additional bite at the summary judgment apple.

22    Defendants mischaracterize Dr. Zona's report.  As the Court recognized in its summary

23    judgment order, Dr. Zona calculated damages arising from the concentration of the telescope

24    manufacturing services caused by the Meade acquisition, the subject of Orion's Clayton Act

25    claim:

26

27    > Orion's motion does not state that its failure to acquire Meade is the
>     only harm caused by the alleged conspiracy. Rather, Orion claims
>     that the conspiracy to enact the merger harmed it by increasing

28    > market concentration. Pl.'s Mot. at 11; Pl.'s Reply at n.5. Here,

Orion's motion relies on Dr. Zona's calculation of the Herfindahl–Hirschman Index ("HHI") for the proposed relevant market.

Order Denying Motion for Summary Judgment 5:19-24 (ECF No. 338). Moreover, Dr. Zona calculated his damages by utilizing the Cournot Nash equilibrium to determine equations for what Orion's per unit profit would be if the telescope manufacturing services market were not concentrated by the Meade acquisition, and thereby derived Orion's damages.

As to the proposed instruction, Orion proposes it to conform the Clayton Act instructions with the instructions as to the Sherman Act, which inform the jury as to the purpose of the Sherman Act. Orion has utilized the Supreme Court's pronouncements regarding the purpose of the Clayton Act to do so. There is no risk of error from this instruction.

## ORION'S CLAYTON ACT INSTRUCTION NO. 3

## <u>CLAYTON ACT: ELEMENTS OF THE OFFENSE</u>

Orion seeks recovery of money damages for Defendants' alleged violation of the Clayton Act. In order to recover such damages, Orion must prove four elements by a preponderance of the evidence:

First: Defendants violated Section 7 of the Clayton Act;

Second: Orion has been injured in its business or property;

Third: the antitrust violation was the direct and proximate cause of the injury to Orion's business or property; and

Fourth: Orion has been damaged in an amount that is reasonably ascertainable in dollars and cents.

I will now explain each of these elements.

I will explain each of these elements to you.  Because Orion must show injury for all of its claims, I will explain injury and damages to you at the end of these instructions.

**Redline:**

~~This is a civil action for the~~Orion seeks recovery of money damages for ~~an~~ Defendants' alleged violation of the Clayton Act. In order to recover such damages ~~on the acquisition phase of the case~~, ~~plaintiff~~ Orion must ~~, under the applicable law,~~ prove four elements by a preponderance of the evidence:

First: ~~d~~Defendant~~s~~ violated Section 7 of the Clayton Act;

Second: ~~plaintiff~~Orion has been injured in ~~plaintiff's~~its business or property;

Third: the antitrust violation was the direct and proximate cause of the injury to ~~plaintiff's~~Orion's business or property; and

Fourth: ~~plaintiff~~Orion has been damaged in an amount that is reasonably ascertainable in dollars and cents.

1    I will explain each of these elements to you.  Because Orion must show injury for all of its

2    claims, I will explain injury and damages to you at the end of these instructions.

3    ~~I will now explain each of these elements.~~

4    **Source and Authorities**: 3A Fed. Jury Prac. & Instr. § 150:130 (6th ed.) (modified).

5    **Defendants' Objection:** Orion does not seek any damages with respect to its Section 7

6    claim.  *See* Zona Report ("Summary and Conclusions").  Because Orion seeks only equitable

7    relief, this claim should be decided by the Court.  Accordingly, Defendants object to including

8    instructions with respect to this claim, because such instructions could only serve to confuse the

9    jury into awarding damages for a claim as to which no damages are sought.

10    **Orion's Response:**  Defendants again attempt to subvert the jury instruction process into

11    an additional bite at the summary judgment apple.

12    Defendants mischaracterize Dr. Zona's report.  As the Court recognized in its summary

13    judgment order, Dr. Zona calculated damages arising from the concentration of the telescope

14    manufacturing services caused by the Meade acquisition, the subject of Orion's Clayton Act

15    claim:

16

17    > Orion's motion does not state that its failure to acquire Meade is the
>     only harm caused by the alleged conspiracy. Rather, Orion claims
>     that the conspiracy to enact the merger harmed it by increasing

18    > market concentration. Pl.'s Mot. at 11; Pl.'s Reply at n.5. Here,
>     Orion's motion relies on Dr. Zona's calculation of the Herfindahl–

19    > Hirschman Index ("HHI") for the proposed relevant market.

20    Order Denying Motion for Summary Judgment 5:19-24 (ECF No. 338). Moreover, Dr.

21    Zona calculated his damages by utilizing the Cournot Nash equilibrium to determine equations for

22    what Orion's per unit profit would be if the telescope manufacturing services market were not

23    concentrated by the Meade acquisition, and thereby derived Orion's damages.

24

25

26

27

28

**ORION'S CLAYTON ACT INSTRUCTION NO. 4**

**CLAYTON ACT: VIOLATION OF SECTION 7 OF THE CLAYTON ACT**

There are three elements involved in determining whether Defendants violated Section 7 of the Clayton Act:

(1) determination of the relevant line or lines of commerce—the relevant product market (the term "product market" includes a service market as well as a product market in which the parties compete);

(2) determination of the relevant section of the country—the relevant geographic market; and

(3) determination of the likely anticompetitive effects of the acquisition of Defendant Meade Instruments, Corp. by Defendants Ningbo Sunny Electronic Co., Ltd. and Sunny Optics, Inc. in the relevant product and geographic markets.

**Redline:**

There are three elements involved in determining whether ~~d~~Defendant~~s~~ violated Section 7 of the Clayton Act:

(1) determination of the relevant line or lines of commerce—the relevant product market (the term "product market" includes a service market as well as a product market in which the parties compete);

(2) determination of the relevant section of the country—the relevant geographic market; and

(3) determination of the likely anticompetitive effects of the acquisition of ~~[specify]~~ Defendant Meade Instruments, Corp. by ~~d~~Defendant~~s~~ Ningbo Sunny Electronic Co., Ltd. and Sunny Optics, Inc. in the relevant product and geographic markets.

**Source and Authorities**: 3A Fed. Jury Prac. & Instr. § 150:131 (6th ed.).

**Defendants' Objection:** Orion does not seek any damages with respect to its Section 7 claim. *See* Zona Report ("Summary and Conclusions"). Because Orion seeks only equitable

1   relief, this claim should be decided by the Court.  Accordingly, Defendants object to including

2   instructions with respect to this claim, because such instructions could only serve to confuse the

3   jury into awarding damages for a claim as to which no damages are sought.

4       **Orion's Response:**  Defendants again attempt to subvert the jury instruction process into

5   an additional bite at the summary judgment apple.

6       Defendants mischaracterize Dr. Zona's report.  As the Court recognized in its summary

7   judgment order, Dr. Zona calculated damages arising from the concentration of the telescope

8   manufacturing services caused by the Meade acquisition, the subject of Orion's Clayton Act

9   claim:

10

11          Orion's motion does not state that its failure to acquire Meade is the
            only harm caused by the alleged conspiracy. Rather, Orion claims
            that the conspiracy to enact the merger harmed it by increasing

12          market concentration. Pl.'s Mot. at 11; Pl.'s Reply at n.5. Here,
            Orion's motion relies on Dr. Zona's calculation of the Herfindahl–

13          Hirschman Index ("HHI") for the proposed relevant market.

14       Order Denying Motion for Summary Judgment 5:19-24 (ECF No. 338). Moreover, Dr.

15   Zona calculated his damages by utilizing the Cournot Nash equilibrium to determine equations for

16   what Orion's per unit profit would be if the telescope manufacturing services market were not

17   concentrated by the Meade acquisition, and thereby derived Orion's damages.

18

19

20

21

22

23

24

25

26

27

28

**ORION'S CLAYTON ACT INSTRUCTION NO. 5**

**<u>CLAYTON ACT: RELEVANT MARKET</u>**

The instructions I read you previously regarding the relevant market element as to Orion's Section 2 attempted monopolization claim apply equally to Orion's Clayton Act Section 7 claim.

**Source and Authorities**: Orion proposes this instruction to avoid duplicative instructions and to speed the jury instruction process.

**ORION'S CLAYTON ACT INSTRUCTION NO. 6**

**CLAYTON ACT: EFFECT OF ACQUISITION**

Having determined the relevant product market and the relevant geographic market you must decide whether the effect of the acquisition of Defendant Meade Instruments Corp. by Defendants may be substantially to lessen competition or may tend to create a monopoly in that "line of commerce" and "section of the country."

The determination of this question will establish whether or not this acquisition was a violation of Section 7 of the Clayton Act. This determination must be made in light of several factors: (1) the primary index of legality is the market share of the acquired and acquiring companies and (2) the extent of concentration in the industry. An acquisition that produces a firm controlling an undue percentage of the relevant market and resulting in a significant increase in concentration is presumptively unlawful, unless the defendants can overcome this presumption by other evidence to establish the vigor of competition or affirmative justifications in support of the acquisition.

While market shares are not determinative of legality of an acquisition, I instruct you that high market shares and significant increases in concentration may be sufficient in itself to establish a violation of Section 7. Section 7 of the Clayton Act may be violated either by showing a reasonable probability of a substantial lessening of competition in the future or by showing a substantial lessening of competition that has already occurred.

**Redline:**

Having determined the "line of commerce" relevant product market and the "section of the country," relevant geographic market you must decide whether the effect of the acquisition of [specify] Defendant Meade Instruments Corp. by dDefendants may be substantially to lessen competition or may tend to create a monopoly in that "line of commerce" and "section of the country."

1      The determination of this question will establish whether or not this acquisition was a

2  violation of Section 7 of the Clayton Act. This determination must be made in light of several

3  factors: (1) the primary index of legality is the market share of the acquired and acquiring

4  companies and (2) the extent of concentration in the industry. An acquisition that produces a firm

5  controlling an undue percentage of the relevant market and resulting in a significant increase in

6  concentration is presumptively unlawful, unless the defendants can overcome this presumption by

7  other evidence to establish the vigor of competition or affirmative justifications in support of the

8  acquisition.

9      While market shares are not determinative of legality of an acquisition, I instruct you that

10  high market shares and significant increases in concentration may be sufficient in itself to establish

11  a violation of Section 7. Section 7 of the Clayton Act may be violated either by showing a

12  reasonable probability of a substantial lessening of competition in the future or by showing a

13  substantial lessening of competition that has already occurred.

14  ~~As I shall instruct you later, it is plaintiff's burden to establish that whatever injury~~

15  ~~plaintiff claims to have suffered is the direct and proximate result of such violation of law, if any,~~

16  ~~that you may find—namely, that plaintiff was injured by the actual or by the probable lessening~~

17  ~~of competition.~~

18      Source and Authorities: 3A Fed. Jury Prac. & Instr. § 150:134 (6th ed.).

19      **Defendants' Objection:**  Orion does not seek any damages with respect to its Section 7

20  claim.  *See* Zona Report ("Summary and Conclusions").  Because Orion seeks only equitable

21  relief, this claim should be decided by the Court.  Accordingly, Defendants object to including

22  instructions with respect to this claim, because such instructions could only serve to confuse the

23  jury into awarding damages for a claim as to which no damages are sought.  Further, Plaintiff's

24  proposed instruction materially alters the relevant model instruction to include improper legal

25  argument, effectively creating a bespoke and unnecessary "special" instruction that has not been

26  approved by the Ninth Circuit or any other court.  Accordingly, to the extent the Court is inclined

27  to instruct the jury on this issue, Defendants respectfully request that the Court use Defendants'

28  Proposed instruction SECTION 7 – EFFECT OF ACQUISITION instead.

1    **Orion's Response:**  Defendants again attempt to subvert the jury instruction process into

2    an additional bite at the summary judgment apple.

3    Defendants mischaracterize Dr. Zona's report.  As the Court recognized in its summary

4    judgment order, Dr. Zona calculated damages arising from the concentration of the telescope

5    manufacturing services caused by the Meade acquisition, the subject of Orion's Clayton Act

6    claim:

7

8    > Orion's motion does not state that its failure to acquire Meade is the
     > only harm caused by the alleged conspiracy. Rather, Orion claims

9    > that the conspiracy to enact the merger harmed it by increasing
     > market concentration. Pl.'s Mot. at 11; Pl.'s Reply at n.5. Here,
     > Orion's motion relies on Dr. Zona's calculation of the Herfindahl–

10   > Hirschman Index ("HHI") for the proposed relevant market.

11   Order Denying Motion for Summary Judgment 5:19-24 (ECF No. 338). Moreover, Dr.

12   Zona calculated his damages by utilizing the Cournot Nash equilibrium to determine equations for

13   what Orion's per unit profit would be if the telescope manufacturing services market were not

14   concentrated by the Meade acquisition, and thereby derived Orion's damages.

15   Orion's modification of the proposed instruction simply reflects the fact that Orion

16   proposes to give a single set of instructions as to injury, which are common to all causes of action

17   here.

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTIONS REGARDING SECTION 7 OF THE**

**CLAYTON ACT**

**DEFENDANTS' PROPOSED INSTRUCTION NO. 41**

**SECTION 7—ESSENTIAL ELEMENTS**

Plaintiff claims that defendants have violated the Clayton Act.  To prove this claim, plaintiff  must, under the applicable law, prove four elements:

First: defendants violated Section 7 of the Clayton Act;

Second: plaintiff  has been injured in plaintiff 's business or property;

Third: the antitrust violation was the direct and proximate cause of the injury to plaintiff 's business or property; and

Fourth: plaintiff  has been damaged in an amount that is reasonably ascertainable in dollars and cents.

I will now explain each of these elements.

**AUTHORITY:  Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, § 150:130.**

**DEFENDANTS' POSITION:  Plaintiff does not seek any damages under Section 7 of the Clayton Act; its only conceivable remedy under Section 7 is equitable relief.  As a result, as with Plaintiff's claim under California's Unfair Competition Law, Plaintiff's equitable Section 7 claim should be decided by the Court after resolution of the jury trial of Plaintiff's damages claims.  See Fjord v. AMR Corp. (In re AMR Corp.), 506 B.R. 368, 376 (S.D.N.Y. 2014) ("[A]ctions for injunctive relief under Section 16 of the Clayton Act are equitable in nature and create no right to a trial by jury….[T]here is no right to a jury trial when the only remedy sought is an injunction") (internal quotations and punctuation omitted).  Nevertheless, in the event the Court is inclined to include instructions regarding Plaintiff's Section 7 claim, Defendants have proposed the only available model instructions regarding Section 7 claims, with no substantive modifications.**

1

**Orion's Position:**

2

Orion notes that Defendants are indeed mixing their model instructions here, and indeed

3

Orion's proposed instructions use the same model instruction.

4

Orion accordingly does not object to the substance of this instruction.  The instructions

5

issued by the Court, however, should identify the parties.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **DEFENDANTS' PROPOSED INSTRUCTION NO. 42**

2    **VIOLATION OF SECTION 7 OF THE CLAYTON ACT**

3    There are three elements involved in determining whether defendant  violated Section 7 of

4    the Clayton Act:

5    (1) determination of the relevant line or lines of commerce—the product market (the term

6    "product market" includes a service market as well as a product market in which the parties

7    compete);

8    (2) determination of the relevant section of the country—the geographic market; and

9    (3) determination of the likely anticompetitive effects of the acquisition of Meade by

10   Ningbo Sunny in the relevant product and geographic markets.

11

12

13   **AUTHORITY:  Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, §**

14   **150:131.   DEFENDANTS' POSITION::  Plaintiff does not seek any damages under Section**

15   **7 of the Clayton Act; its only conceivable remedy under Section 7 is equitable relief.  As a**

16   **result, as with Plaintiff's claim under California's Unfair Competition Law, Plaintiff's**

17   **equitable Section 7 claim should be decided by the Court after resolution of the jury trial of**

18   **Plaintiff's damages claims.  *See Fjord v. AMR Corp. (In re AMR Corp.)*, 506 B.R. 368, 376**

19   **(S.D.N.Y. 2014) ("[A]ctions for injunctive relief under Section 16 of the Clayton Act are**

20   **equitable in nature and create no right to a trial by jury….[T]here is no right to a jury trial**

21   **when the only remedy sought is an injunction") (internal quotations and punctuation**

22   **omitted).  Nevertheless, in the event the Court is inclined to include instructions regarding**

23   **Plaintiff's Section 7 claim, Defendants have proposed the only available model instructions**

24   **regarding Section 7 claims, with no substantive modifications.**

25   **Orion's Position:**

26   Orion notes that Defendants are indeed mixing their model instructions here, and indeed

27   Orion's proposed instructions use the same model instruction.

28

1    Orion accordingly does not object to the substance of this instruction, but respectfully

2  submits that the instruction should be modified as Orion proposes in its Proposed Instructions in

3  order to bring the terminology used in line with the other instructions to be issued by the Court.

4  (*I.e.*, "relevant product market" instead of "relevant line of commerce", and "relevant geographic

5  market."  Orion is puzzled as to why Defendants will not agree to this.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2 **DEFENDANTS' PROPOSED INSTRUCTION NO. 43**

3 **SECTION 7--RELEVANT LINE OF COMMERCE**

4      Section 7 of the Clayton Act is directed toward the preservation of competition and

5 competition can be measured only within the confines of an economically meaningful market.

6 Determination of the relevant product market is a necessary predicate to determination of the

7 legality of an acquisition under Section 7 of the Clayton Act.

8      Accordingly, at the outset, it is necessary for you to determine the area of effective

9 competition within which to appraise the acquisition. The outer boundaries of this market must be

10 determined with sufficient breadth to include products or services that compete with those of

11 plaintiff  and defendant  and to recognize competition where in fact it exists.

12      The broad product market should encompass all reasonably interchangeable products.

13 However, the existence of a broad product market does not preclude you from simultaneously

14 finding one or more product submarkets, or subsidiary lines of commerce, based upon such

15 practical indicia as industry or public recognition of the submarket as a separate economic entity,

16 the product's peculiar characteristics and uses, unique production facilities, distinct customers,

17 distinct prices, sensitivity to price changes and specialized vendors.

18      Plaintiff contends the relevant line of commerce is the market for all telescope

19 manufacturing.

20

21

22

23

24

25

26

27

28

1   **AUTHORITY:  Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, §**

2   **150:132, DEFENDANTS' POSITION::  Plaintiff does not seek any damages under Section 7**

3   **of the Clayton Act; its only conceivable remedy under Section 7 is equitable relief.  As a**

4   **result, as with Plaintiff's claim under California's Unfair Competition Law, Plaintiff's**

5   **equitable Section 7 claim should be decided by the Court after resolution of the jury trial of**

6   **Plaintiff's damages claims.  *See Fjord v. AMR Corp. (In re AMR Corp.),* 506 B.R. 368, 376**

7   **(S.D.N.Y. 2014) ("[A]ctions for injunctive relief under Section 16 of the Clayton Act are**

8   **equitable in nature and create no right to a trial by jury….[T]here is no right to a jury trial**

9   **when the only remedy sought is an injunction") (internal quotations and punctuation**

10  **omitted).  Nevertheless, in the event the Court is inclined to include instructions regarding**

11  **Plaintiff's Section 7 claim, Defendants have proposed the only available model instructions**

12  **regarding Section 7 claims, with no substantive modifications.**

13      **Orion's Position:**

14      Orion notes that Defendants are indeed mixing their model instructions here, and indeed

15  Orion's proposed instructions use the same model instruction.

16      Orion objects to the use of this relevant market instruction as cumulative of prior relevant

17  market instructions.  As the law relating to relevant market is the same with respect to the Clayton

18  Act as Orion's other claims, the prior relevant market instructions should be incorporated by

19  reference. Defendants use this strategy to reduce the number of conspiracy instructions, but insist

20  that every relevant market instruction should be given.  Orion is not philosophically opposed to

21  incorporating prior instructions by reference, but what is good for the good must be good for the

22  gander.

23      Moreover, the instruction should be revised to use the same terminology as used in other

24  relevant market instructions. (*I.e.*, "relevant product market" instead of "relevant line of

25  commerce", and "relevant geographic market").

26

27

28

SMRH:4832-1239-1592.2

1
2

<u>**DEFENDANTS' PROPOSED INSTRUCTION NO. 44**</u>

<u>**SECTION 7--SECTION OF THE COUNTRY**</u>

3   After you have determined the relevant line of commerce, you must next determine the

4   geographic market or section of the country. This means you must determine the geographic area

5   of the United States in which to appraise whether the acquisition in question may substantially

6   lessen competition.

7   You must consider whether the acquired and acquiring companies compete in a national

8   market, or whether they also compete in separate local markets. In this connection, you will have

9   to consider the patterns of distribution of these companies.

10   In brief, the question is whether there is any part of the United States within which these

11   two companies compete and within which that competition may be substantially lessened as a

12   result of the acquisition.

13

14

15   **AUTHORITY:  Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, §**

16   **150:133.  DEFENDANTS' POSITION::  Plaintiff does not seek any damages under Section 7**

17   **of the Clayton Act; its only conceivable remedy under Section 7 is equitable relief.  As a**

18   **result, as with Plaintiff's claim under California's Unfair Competition Law, Plaintiff's**

19   **equitable Section 7 claim should be decided by the Court after resolution of the jury trial of**

20   **Plaintiff's damages claims.  *See Fjord v. AMR Corp. (In re AMR Corp.)*, 506 B.R. 368, 376**

21   **(S.D.N.Y. 2014) ("[A]ctions for injunctive relief under Section 16 of the Clayton Act are**

22   **equitable in nature and create no right to a trial by jury….[T]here is no right to a jury trial**

23   **when the only remedy sought is an injunction") (internal quotations and punctuation**

24   **omitted).  Nevertheless, in the event the Court is inclined to include instructions regarding**

25   **Plaintiff's Section 7 claim, Defendants have proposed the only available model instructions**

26   **regarding Section 7 claims, with no substantive modifications.**

27

28

**Orion's Position:**

Orion notes that Defendants are indeed mixing their model instructions here, and indeed Orion's proposed instructions use the same model instruction.

Orion objects to the use of this relevant market instruction as cumulative of prior relevant market instructions.  As the law relating to relevant market is the same with respect to the Clayton Act as Orion's other claims, the prior relevant market instructions should be incorporated by reference. Defendants use this strategy to reduce the number of conspiracy instructions, but insist that every relevant market instruction should be given.  Orion is not philosophically opposed to incorporating prior instructions by reference, but what is good for the good must be good for the gander.

Moreover, the instruction should be revised to use the same terminology as used in other relevant market instructions. (*I.e.*, "relevant product market" instead of "relevant line of commerce", and "relevant geographic market").

## DEFENDANTS' PROPOSED INSTRUCTION NO. 45
## SECTION 7—EFFECT OF ACQUISITION

Having determined the "line of commerce" and the "section of the country," you must decide whether the effect of the acquisition of Meade by defendant may be substantially to lessen competition or may tend to create a monopoly in that "line of commerce" and "section of the country."

The determination of this question will establish whether or not this acquisition was a violation of Section 7 of the Clayton Act. This determination must be made in light of several factors: (1) the primary index of legality is the market share of the acquired and acquiring companies and (2) the extent of concentration in the industry. An acquisition that produces a firm controlling an undue percentage of the relevant market and resulting in a significant increase in concentration is presumptively unlawful, unless the defendants can overcome this presumption by other evidence to establish the vigor of competition or affirmative justifications in support of the acquisition.

While market shares are not determinative of legality of an acquisition, I instruct you that high market shares and significant increases in concentration may be sufficient in itself to establish a violation of Section 7. Section 7 of the Clayton Act may be violated either by showing a reasonable probability of a substantial lessening of competition in the future or by showing a substantial lessening of competition that has already occurred.

As I shall instruct you later, it is plaintiff's burden to establish that whatever injury plaintiff claims to have suffered is the direct and proximate result of such violation of law, if any, that you may find—namely, that plaintiff was injured by the actual or by the probable lessening of competition.

1  **AUTHORITY:  Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, §**

2  **150:134.  DEFENDANTS' POSITION::  Plaintiff does not seek any damages under Section 7**

3  **of the Clayton Act; its only conceivable remedy under Section 7 is equitable relief.  As a**

4  **result, as with Plaintiff's claim under California's Unfair Competition Law, Plaintiff's**

5  **equitable Section 7 claim should be decided by the Court after resolution of the jury trial of**

6  **Plaintiff's damages claims.  *See Fjord v. AMR Corp. (In re AMR Corp.)*, 506 B.R. 368, 376**

7  **(S.D.N.Y. 2014) ("[A]ctions for injunctive relief under Section 16 of the Clayton Act are**

8  **equitable in nature and create no right to a trial by jury….[T]here is no right to a jury trial**

9  **when the only remedy sought is an injunction") (internal quotations and punctuation**

10  **omitted).  Nevertheless, in the event the Court is inclined to include instructions regarding**

11  **Plaintiff's Section 7 claim, Defendants have proposed the only available model instructions**

12  **regarding Section 7 claims, with no substantive modifications.**

13
14         **Orion's Position:**

15         Orion notes that Defendants are indeed mixing their model instructions here.

16         Orion does not object to the use of this model instruction as a starting point, but the

17  discussion of injury should be removed because the parties agree that the Court should instruct on

18  injury and damages at the close of the instructions.

19
20
21
22
23
24
25
26
27
28

1

2    **DEFENDANTS' PROPOSED INSTRUCTION NO. 46**

3    **SECTION 7—MERE ACQUISITION NOT VIOLATION**

4         The mere acquisition by one corporation of the assets of another, even though it results in

5    some lessening of competition, is not forbidden. The Clayton Act prohibits only such acquisitions

6    as in reasonable likelihood will result in a substantial lessening of competition in the relevant

7    market.

8

9

10

11   **AUTHORITY:  Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, §**

12   **150:135.  DEFENDANTS' POSITION::  Plaintiff does not seek any damages under Section 7**

13   **of the Clayton Act; its only conceivable remedy under Section 7 is equitable relief.  As a**

14   **result, as with Plaintiff's claim under California's Unfair Competition Law, Plaintiff's**

15   **equitable Section 7 claim should be decided by the Court after resolution of the jury trial of**

16   **Plaintiff's damages claims.  *See Fjord v. AMR Corp. (In re AMR Corp.)*, 506 B.R. 368, 376**

17   **(S.D.N.Y. 2014) ("[A]ctions for injunctive relief under Section 16 of the Clayton Act are**

18   **equitable in nature and create no right to a trial by jury….[T]here is no right to a jury trial**

19   **when the only remedy sought is an injunction") (internal quotations and punctuation**

20   **omitted).  Nevertheless, in the event the Court is inclined to include instructions regarding**

21   **Plaintiff's Section 7 claim, Defendants have proposed the only available model instructions**

22   **regarding Section 7 claims, with no substantive modifications.**

23       **Orion's Position:**

24        This instruction is cumulative of the prior recitation of the elements and should not be

25   given.

26

27

28

## ORION'S CARTWRIGHT ACT INSTRUCTION NO. 1

## **CARTWRIGHT ACT: COMPLAINT AND THE STATUTE**

Orion claims that Defendants violated California's antitrust statute—popularly known as the Cartwright Act—by fixing prices or credit terms and by allocating the market and customers.

The Cartwright Act prohibits any "combination of capital, skill or acts by two or more persons for any of the following purposes:

(a)   To create or carry out restrictions in trade or commerce.

(b)   To limit or reduce the production, or increase the price of merchandise or of any commodity.

(c)   To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity.

(d)   To fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption in this State.

(e)   To make or enter into or execute or carry out any contracts, obligations or agreements of any kind or description, by which they do all or any or any combination of any of the following:

(1)   Bind themselves not to sell, dispose of or transport any article or any commodity or any article of trade, use, merchandise, commerce or consumption below a common standard figure, or fixed value.

(2)   Agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure.

(3)   Establish or settle the price of any article, commodity or transportation between them or themselves and others, so as directly or indirectly to preclude a free and unrestricted competition among themselves, or any purchasers or consumers in the sale or transportation of any such article or commodity.

(4)     Agree to pool, combine or directly or indirectly unite any interests that they may have connected with the sale or transportation of any such article or commodity, that its price might in any manner be affected.

**Source and Authorities**: Based upon Cal. Bus. & Prof. Code § 16720.

**Defendants' Objection:**  There is no reason for the Court to provide separate instructions regarding Orion's Cartwright Act claims, because the elements of those claims are identical to those of Orion's Sherman Act Section 1 claims already dealt with in other instructions.  *See People v. Nat'l Ass'n of Realtors*, 120 Cal. App. 3d 459, 469 n.3 (1981) (courts look to cases interpreting the Sherman and Clayton Acts when deciding cases under the Cartwright Act).  Reading the jury two sets of instructions regarding a single underlying legal theory could only serve to confuse the jury into awarding duplicative damages for a single alleged wrong.

**Orion's Response:**

Defendants' reading of the *Nat'l Ass'n of Realtors* case is overbroad.  "[T]he California Supreme Court has stated that 'the Cartwright Act is broader in range and deeper in reach than the Sherman Act." *Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224, 1242 (1993) (declining to dismiss a Cartwright cause of action for treble damages to a person injured by reason of a price-fixing conspiracy, even when those prices were approved as reasonable by a regulatory agency) (quoting *Cianci v. Sup. Ct.*, 40 Cal. 3d 903, 920 (1985)); *see also State ex rel. Van de Kamp v. Texaco, Inc*. (1988) 46 Cal.3d 1147, 1164 (superseded by statute on other grounds) (stating that "a historical and textual analysis reveals that the [Cartwright] Act was patterned after the 1889 Texas act and the 1899 Michigan act, and not the Sherman Act. Hence judicial interpretation of the Sherman Act, while often helpful, is not directly probative of the Cartwright drafters' intent, given the different genesis of the provision under review).

In sum, the fact that California law is informed by federal interpretation of the Sherman Act does not mean that the Sherman Act is co-extensive with the Cartwright Act.  Quite the contrary, and Orion is accordingly entitled to have the jury instructed on its Cartwright Act claim.

**ORION'S CARTWRIGHT ACT INSTRUCTION NO. 2**

**<u>CARTWRIGHT ACT: PRICE AND CREDIT TERM FIXING</u>**

Orion claims Defendants were involved in price or credit term fixing. Price or credit term fixing is an agreement to set, raise, lower, maintain, or stabilize the prices or other terms of trade (including credit terms) charged or to be charged for a product or service, whether the prices agreed on were high or low, reasonable or unreasonable. To establish this claim, Orion must prove all of the following:

1. That Defendants and their competitors agreed to fix prices or credit terms charged or to be charged for telescope manufacturing services;

2. That Orion was harmed; and

3. That Defendants' conduct was a substantial factor in causing Orion's harm.

**Redline:**

[Name of plaintiff]Orion claims [name of defendant]Defendants was were involved in price or credit term fixing. Price or credit term fixing is an agreement to set, raise, lower, maintain, or stabilize the prices or other terms of trade (including credit terms) charged or to be charged for a product or service, whether the prices agreed on were high or low, reasonable or unreasonable. To establish this claim, [name of plaintiff]Orion must prove all of the following:

1. That [name of defendant] [and [name(s) of alleged coparticipant(s)]]Defendants and their competitors agreed to fix [or] [set/raise/lower/maintain/stabilize] prices [or other credit terms of trade] charged or to be charged for [product/service]telescope manufacturing services;

2. That [name of plaintiff]Orion was harmed; and

3. That [name of defendant]Defendants's conduct was a substantial factor in causing [name of plaintiff]Orion's harm.

**Source and Authorities**: Judicial Council of California Civil Jury Instructions § 3400.

1    **Defendants' Objection:**  There is no reason for the Court to provide separate instructions

2    regarding Orion's Cartwright Act claims, because the elements of those claims are identical to

3    those of Orion's Sherman Act Section 1 claims already dealt with in other instructions.  *See*

4    *People v. Nat'l Ass'n of Realtors*, 120 Cal. App. 3d 459, 469 n.3 (1981) (courts look to cases

5    interpreting the Sherman and Clayton Acts when deciding cases under the Cartwright

6    Act).  Reading the jury two sets of instructions regarding a single underlying legal theory could

7    only serve to confuse the jury into awarding duplicative damages for a single alleged wrong.

8    **Orion's Response:**

9    Defendants' reading of the *Nat'l Ass'n of Realtors* case is overbroad.  "[T]he California

10   Supreme Court has stated that 'the Cartwright Act is broader in range and deeper in reach than the

11   Sherman Act." *Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224, 1242 (1993)

12   (declining to dismiss a Cartwright cause of action for treble damages to a person injured by reason

13   of a price-fixing conspiracy, even when those prices were approved as reasonable by a regulatory

14   agency) (quoting *Cianci v. Sup. Ct.*, 40 Cal. 3d 903, 920 (1985)); *see also State ex rel. Van de*

15   *Kamp v. Texaco, Inc*. (1988) 46 Cal.3d 1147, 1164 (superseded by statute on other grounds)

16   (stating that "a historical and textual analysis reveals that the [Cartwright] Act was patterned after

17   the 1889 Texas act and the 1899 Michigan act, and not the Sherman Act. Hence judicial

18   interpretation of the Sherman Act, while often helpful, is not directly probative of the Cartwright

19   drafters' intent, given the different genesis of the provision under review).

20        In sum, the fact that California law is informed by federal interpretation of the Sherman

21   Act does not mean that the Sherman Act is co-extensive with the Cartwright Act.  Quite the

22   contrary, and Orion is accordingly entitled to have the jury instructed on its Cartwright Act claim.

23        With respect to Defendants' complaint regarding the use of the term "Defendants", it is

24   misplaced.  The Defendants in this action, while nominally distinct entities, are a single economic

25   unit in the eyes of the law because they are all wholly owned subsidiaries of Defendant Ningbo

26   Sunny Electronic Co., Ltd.  *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984)

27   ("A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are

28   common, not disparate; their general corporate actions are guided or determined not by two

1   separate corporate consciousnesses, but one. They are not unlike a multiple team of horses

2   drawing a vehicle under the control of a single driver.").  This key fact distinguishes this case from

3   the authorities and commentary cited by Defendants—all of which address co-defendants that are

4   not wholly owned subsidiaries within the same corporate family, as in this case.

5       Because the law views Defendants as a single economic unit, the jury must look to the acts

6   of the entire economic unit—*i.e.*, all of the Defendants—for purposes of Orion's conspiracy to

7   monopolize claim.  *Arandell Corp. v. Centerpoint Energy Servs.*, Inc., 900 F.3d 623, 631 (9th Cir.

8   2018) ("[The] burden of establishing any individual defendant's liability required showing only

9   that the defendant's conduct played a 'role' in the overall anticompetitive scheme perpetrated by

10   the enterprise as a whole." . . . [U]nder *Copperweld*, the plaintiff did not need to prove that

11   "'specific Defendants' independently satisfied each necessary element of the claims," because "in

12   a single-enterprise situation, it is the affiliated corporations' collective conduct—i.e., the conduct

13   of the enterprise they jointly compose—that matters; it is the enterprise which must be shown to

14   satisfy the elements of a Section 2 claim.") (quoting *Lenox MacLaren Surgical Corp. v.*

15   *Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017).

16       If Defendants were correct, a single holding company could monopolize an entire industry

17   of widgets and yet immune itself from Section 2 liability simply by placing each widget factory

18   within a separate subsidiary corporation.  That kind of corporate organization is called a trust.

19   Outlawing trusts is the purpose of the antitrust laws.

20

21

22

23

24

25

26

27

28

## ORION'S CARTWRIGHT ACT INSTRUCTION NO. 3

## **CARTWRIGHT ACT: ALLOCATION OF TRADE OR COMMERCE**

Orion claims Defendants agreed to allocate or divide customers and products. An agreement to allocate customers and products is an agreement between two or more competitors not to compete for the business of particular customers or in the sale of a particular product. To establish this claim, Orion must prove all of the following:

1. That Defendants and David Shen, the principal of Suzhou Synta Optical Technology Co. Ltd., Synta Technology Corp., Nantong Schmidt Opto-Electrical Technology Co., Ltd., Good Advance Industries Ltd., Celestron Acquisition LLC, Atlas E-Commerce LLC, and SW Technology Corp. were or are competitors in the same or related markets;

2. That Defendants and David Shen, the principal of Suzhou Synta Optical Technology Co. Ltd., Synta Technology Corp., Nantong Schmidt Opto-Electrical Technology Co., Ltd., Good Advance Industries Ltd., Celestron Acquisition LLC, Atlas E-Commerce LLC, and SW Technology Corp. agreed to allocate or divide customers and products;

3. That Orion was harmed; and

4. That Defendants' conduct was a substantial factor in causing Orion's harm.

**Redline:**

[Name of plaintiff]Orion claims [name of defendant]Defendants agreed to allocate or divide [customers/territories/ and products]. An agreement to allocate [customers/territories/ and products] is an agreement between two or more competitors not to compete [for the business of particular customers/with each other in particular territories/ or in the sale of a particular product]. To establish this claim, [name of plaintiff]Orion must prove all of the following:

4.   That [name of defendant]Defendants and David Shen, the principal of Suzhou Synta Optical Technology Co. Ltd., Synta Technology Corp., Nantong Schmidt Opto-Electrical Technology Co., Ltd., Good Advance Industries Ltd., Celestron Acquisition LLC, Atlas E-Commerce LLC, and SW Technology Corp.[name of alleged coparticipant] were or are competitors in the same or related markets;

5.   That [name of defendant]Defendants and David Shen, the principal of Suzhou Synta Optical Technology Co. Ltd., Synta Technology Corp., Nantong Schmidt Opto-Electrical Technology Co., Ltd., Good Advance Industries Ltd., Celestron Acquisition LLC, Atlas E-Commerce LLC, and SW Technology Corp.[name alleged coparticipant] agreed to allocate or divide [customers/territories/ and products];

6.   That [name of plaintiff]Orion was harmed; and

4.   That Defendants'[name of defendant]'s [and [name of alleged coparticipant]'s] conduct was a substantial factor in causing [name of plaintiff]Orion's harm.

**Source and Authorities**: Judicial Council of California Civil Jury Instructions § 3401.

**Defendants' Objection:**  There is no reason for the Court to provide separate instructions regarding Orion's Cartwright Act claims, because the elements of those claims are identical to those of Orion's Sherman Act Section 1 claims already dealt with in other instructions.  *See People v. Nat'l Ass'n of Realtors*, 120 Cal. App. 3d 459, 469 n.3 (1981) (courts look to cases interpreting the Sherman and Clayton Acts when deciding cases under the Cartwright Act).  Reading the jury two sets of instructions regarding a single underlying legal theory could only serve to confuse the jury into awarding duplicative damages for a single alleged wrong.

**Orion's Response:**

Defendants' reading of the *Nat'l Ass'n of Realtors* case is overbroad.  "[T]he California Supreme Court has stated that 'the Cartwright Act is broader in range and deeper in reach than the

1  Sherman Act." *Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224, 1242 (1993)

2  (declining to dismiss a Cartwright cause of action for treble damages to a person injured by reason

3  of a price-fixing conspiracy, even when those prices were approved as reasonable by a regulatory

4  agency) (quoting *Cianci v. Sup. Ct.*, 40 Cal. 3d 903, 920 (1985)); *see also State ex rel. Van de*

5  *Kamp v. Texaco, Inc*. (1988) 46 Cal.3d 1147, 1164 (superseded by statute on other grounds)

6  (stating that "a historical and textual analysis reveals that the [Cartwright] Act was patterned after

7  the 1889 Texas act and the 1899 Michigan act, and not the Sherman Act. Hence judicial

8  interpretation of the Sherman Act, while often helpful, is not directly probative of the Cartwright

9  drafters' intent, given the different genesis of the provision under review).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ORION'S CARTWRIGHT ACT INSTRUCTION NO. 4

## **CARTWRIGHT ACT: "AGREEMENT" EXPLAINED**

An agreement exists if two or more persons or companies combine or join together for a common purpose. No written document or specific understanding is necessary for an agreement to exist. For Defendants to be part of an agreement, they must have known they were joining in an agreement, even if they were not aware of all of its aspects.

In deciding whether Defendants' conduct was the result of an agreement, you may consider, among other factors, the following:

(a)     The nature of the acts;

(b)     The relationship between the parties;

(c)     Whether the conduct was contrary to the best interests of some of the persons or companies in question;

(d)     Whether the conduct lacked a legitimate business purpose; and

(e)     Whether the conduct occurred following communications concerning the subject of the conduct.

**Redline:**

An agreement exists if two or more persons or companies combine or join together for a common purpose. No written document or specific understanding is necessary for an agreement to exist. For ~~[name of d~~D~~efendant~~s~~]~~ to be part of an agreement, ~~[he/she/it]~~they must have known ~~[he/she/it]~~they w~~as~~ere joining in an agreement, even if ~~[he/she/it] was~~they were not aware of all of its aspects.

~~[An agreement also may exist if a [person/company] unwillingly participates—that is, if another person coerces [him/her/it] to join the agreement against [his/her/its] wishes.]~~

~~[To prove the existence of an agreement, [name of plaintiff] must show more than a similarity between [name of defendant]'s conduct and the conduct of others. Independent business judgment in response to market forces sometimes leads competitors to act in a similar way~~

1   [because of their individual self-interests. That conduct alone is not enough to prove an agreement.

2   However, similar behavior, along with other evidence suggesting joint conduct, may be used to

3   decide whether there was an agreement.]

4         In deciding whether [name of defendant]'Defendants' conduct was the result of an

5   agreement, you may consider, among other factors, the following:

6
          (a)     The nature of the acts;

7
          (b)     The relationship between the parties;

8
          (c)     Whether the conduct was contrary to the best interests of

9                         some of the persons or companies in question;

10             (d)     Whether the conduct lacked a legitimate business purpose;

11                         and

12             (e)     Whether the conduct occurred following communications
                      concerning the subject of the conduct.

13        **Source and Authorities**: Judicial Council of California Civil Jury Instructions § 3406.

14
15        **Defendants' Objection:**  There is no reason for the Court to provide separate instructions

16   regarding Orion's Cartwright Act claims, because the elements of those claims are identical to

17   those of Orion's Sherman Act Section 1 claims already dealt with in other instructions.  *See*

18   *People v. Nat'l Ass'n of Realtors*, 120 Cal. App. 3d 459, 469 n.3 (1981) (courts look to cases

19   interpreting the Sherman and Clayton Acts when deciding cases under the Cartwright

20   Act).  Reading the jury two sets of instructions regarding a single underlying legal theory could

21   only serve to confuse the jury into awarding duplicative damages for a single alleged wrong.

22
23
24
25
26
27
28

## <u>ORION'S INJURY AND DAMAGES INSTRUCTION NO. 1</u>

## <u>INJURY AND DAMAGES: INJURY</u>

For each of Orion's claims, if you find that Orion has met its burden on the other elements of the claim, as I have described them to you, then you must finally decide whether Orion has been injured. Orion must prove, by a preponderance of the evidence, that it was injured in its business or property by the activities Orion claims are unlawful. That is, Orion must show that it was injured because of the anticompetitive effects of the unlawful agreement among Defendants.

"Injury" differs from "damages," which are the means of measuring the injury in dollars and cents. Orion meets its burden of showing injury if it shows some damages from the unlawful activities complained of. Injury beyond this minimum point goes only to the amount of damage and not to the question of injury.

**Redline:**

For each of Orion's claims, ~~I~~if you find that ~~the plaintiff~~ Orion has met its burden on the other elements of the claim, as I have described them to you, then you must finally decide whether ~~the plaintiff~~ Orion has been injured. ~~The plaintiff~~ Orion must prove, by a preponderance of the evidence, that it was injured in its business or property by the activities ~~the plaintiff~~ Orion claims are unlawful. That is, ~~the plaintiff~~ Orion must show that it was injured because of the anticompetitive effects of the unlawful agreement among ~~the d~~Defendants.

"Injury" differs from "damages," which are the means of measuring the injury in dollars and cents. ~~The plaintiff~~ Orion meets its burden of showing injury if it shows some damages from the unlawful activities complained of. Injury beyond this minimum point goes only to the amount of damage and not to the question of injury.

**Source and Authorities:** Leonard B. Sand, et al., 4 Modern Federal Jury Instructions– Civil ¶ 79.04[4] (incorporating *id.* ¶ 79.02 Instr. 79-23) (Restraint of Trade) (Matthew Bender, 2015).

1    **Defendants' Objection:**  It does not make sense to mix and match between two different

2  sets of model instructions, because model instructions are designed to be used

3  together.  Defendants have proposed the ABA Section of Antitrust model instructions on this

4  issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

5  antitrust cases and recognized as the authoritative source for this purpose among antitrust

6  practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

7  instructions are both more complete statements of the law, and presented more efficiently in fewer

8  instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

9  proposed instructions.  Moreover, the model instructions used by Orion include certain

10  instructions that are demonstrably improper as a matter of law, as explained in several of

11  Defendants' other objections.

12    **Orion's Response:**

13    As the proposed instruction makes clear, this instruction applies to all of Orion's claims.

1    **ORION'S INJURY AND DAMAGES INSTRUCTION NO. 2**

2    **INJURY AND DAMAGES: CAUSATION**

3    Standing alone, the fact that Defendants engaged in anticompetitive conduct and the fact

4    that Orion's business suffered is not sufficient to show injury. Orion must show that its business

5    suffered because of Defendants' unlawful activity. To show this, Orion must show first that the

6    unlawful agreement or conspiracy played a substantial part in bringing about or causing the injury,

7    and second that the injury was either a direct result of the unlawful activity, or at least a

8    predictable consequence of it.

9    There may, of course, be a number of causes for a particular injury. Defendants contend

10   that any injury Orion may have suffered was not caused by their activities but by other causes.

11   Orion does not have to prove that the unlawful activity that Defendants' allegedly engaged in was

12   the sole cause of its injury. Orion meets its burden if it shows that Defendants' unlawful acts

13   substantially contributed to its injury, even though other factors may also have contributed

14   significantly. Orion is not required to show that Defendants' acts were a greater cause of the injury

15   than other factors.

16

17   **Redline:**

18

19   Standing alone, the fact that ~~the d~~Defendants engaged in anticompetitive conduct and the

20   fact that ~~the plaintiff's~~ Orion's business suffered is not sufficient to show injury. ~~The plaintiff~~

21   Orion must show that its business suffered because of ~~the d~~Defendants' unlawful activity. To show

22   this, ~~the plaintiff~~ Orion must show first that the unlawful agreement or conspiracy played a

23   substantial part in bringing about or causing the injury, and second that the injury was either a

24   direct result of the unlawful activity, or at least a predictable consequence of it.

25   There may, of course, be a number of causes for a particular injury. ~~The d~~Defendants

26   contend that any injury ~~the plaintiff~~ Orion may have suffered was not caused by their activities but

27   by ~~[summarize the defendants' contentions concerning the cause of the plaintiff's injury]~~other

28   causes. ~~The plaintiff~~ Orion does not have to prove that the unlawful activity that ~~the d~~Defendants'

1   allegedly engaged in was the sole cause of its injury. ~~The plaintiff~~ Orion meets its burden if it

2   shows that ~~the d~~Defendants' unlawful acts substantially contributed to its injury, even though other

3   factors may also have contributed significantly. ~~The plaintiff~~ Orion is not required to show that ~~the~~

4   ~~d~~Defendants' acts were a greater cause of the injury than other factors.

5   **Source and Authorities**: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–

6   Civil ¶ 79.04[4] (incorporating *id.* ¶ 79.02 Instr. 79-24) (Restraint of Trade) (Matthew Bender,

7   2015).

8   **Defendants' Objection:**  It does not make sense to mix and match between two different

9   sets of model instructions, because model instructions are designed to be used

10  together.  Defendants have proposed the ABA Section of Antitrust model instructions on this

11  issue—which is the first set of model instructions recommended by the Ninth Circuit for use in

12  antitrust cases and recognized as the authoritative source for this purpose among antitrust

13  practitioners—with no substantive modifications or argument.  Defendants submit that the ABA

14  instructions are both more complete statements of the law, and presented more efficiently in fewer

15  instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

16  proposed instructions.  Moreover, the model instructions used by Orion include certain

17  instructions that are demonstrably improper as a matter of law, as explained in several of

18  Defendants' other objections.

19  **Orion's Response:**

20  As the proposed instruction makes clear, this instruction applies to all of Orion's claims.

## ORION'S INJURY AND DAMAGES INSTRUCTION NO. 3

## INJURY AND DAMAGES: DAMAGES—MEASURE AND PURPOSE

If you should find that Orion has been injured to some extent by the unlawful activities of Defendants, then you must measure the extent of that injury in dollars and cents. This measurement in dollars and cents is what I shall refer to as damages. The purpose of awarding damages in a case like this one is to put Orion in as good a position as it would have been in had the unlawful activity not occurred. You should take into consideration, therefore, the actual injury to Orion's business or property.

**Redline:**

If you should find that ~~the plaintiff~~ Orion has been injured to some extent by the unlawful activities of ~~the d~~Defendants, then you must measure the extent of that injury in dollars and cents. This measurement in dollars and cents is what I shall refer to as damages. The purpose of awarding damages in a case like this one is to put ~~the plaintiff~~ Orion in as good a position as it would have been in had the unlawful activity not occurred. You should take into consideration, therefore, the actual injury to ~~the plaintiff's~~ Orion's business or property.

**Source and Authorities**: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.04[4] (incorporating *id.* ¶ 79.02 Instr. 79-25) (Restraint of Trade) (Matthew Bender, 2015).

**Defendants' Objection:** It does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together. Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as the authoritative source for this purpose among antitrust practitioners—with no substantive modifications or argument. Defendants submit that the ABA instructions are both more complete statements of the law, and presented more efficiently in fewer instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's

1   proposed instructions.  Moreover, the model instructions used by Orion include certain

2   instructions that are demonstrably improper as a matter of law, as explained in several of

3   Defendants' other objections.

4       **Orion's Response:**

5       As the proposed instruction makes clear, this instruction applies to all of Orion's claims.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORION'S INJURY AND DAMAGES INSTRUCTION NO. 4**

**INJURY AND DAMAGES: DAMAGES—SPECULATION**

It might be difficult for you to measure Orion's damages in this case. However, the fact that it might be difficult to determine the amount of Orion's damages should not affect Orion's recovery. The law allows a party injured by conduct which violates the Sherman Act to collect damages even if the evidence does not reflect how those damages are to be calculated with mathematical precision.

This does not mean, however, that you may determine Orion's damages on the basis of mere speculation or guesswork. Rather you must look to the evidence presented to you and make a fair and reasonable estimate of Orion's damages based on that evidence.

**Redline:**

It might be difficult for you to measure ~~the plaintiff's~~ Orion's damages in this case. However, the fact that it might be difficult to determine the amount of ~~the plaintiff's~~ Orion's damages should not affect ~~the plaintiff's~~ Orion's recovery. The law allows a party injured by conduct which violates the Sherman Act to collect damages even if the evidence does not reflect how those damages are to be calculated with mathematical precision.

This does not mean, however, that you may determine ~~the plaintiff's~~ Orion's damages on the basis of mere speculation or guesswork. Rather you must look to the evidence presented to you and make a fair and reasonable estimate of ~~the plaintiff's~~ Orion's damages based on that evidence.

**Source and Authorities**: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.04[4] (incorporating *id.* ¶ 79.02 Instr. 79-26) (Restraint of Trade) (Matthew Bender, 2015).

**Defendants' Objection:** It does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together.  Defendants have proposed the ABA Section of Antitrust model instructions on this

issue—which is the first set of model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as the authoritative source for this purpose among antitrust practitioners—with no substantive modifications or argument.  Defendants submit that the ABA instructions are both more complete statements of the law, and presented more efficiently in fewer instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover, the model instructions used by Orion include certain instructions that are demonstrably improper as a matter of law, as explained in several of Defendants' other objections.

**Orion's Response:**

As the proposed instruction makes clear, this instruction applies to all of Orion's claims.

**ORION'S INJURY AND DAMAGES INSTRUCTION NO. 5**

**INJURY AND DAMAGES: DAMAGES—LOST PROFITS**

One measure of Orion's damages is the profits it has lost as a result of the defendant's unlawful activities. Lost profits for which Orion can recover are the net profits Orion would have earned, both in the past and in the future, had it not suffered injury as a result of the violation of the antitrust laws. Thus your award of lost profits should be your reasonable estimate of the amounts Orion would have earned in the past and in the future less the amount Orion actually earned and can be expected to earn. I remind you that your award of damages must be fairly based on the evidence which has been presented to you. You may not simply speculate as to the past or future profits Orion may have lost.

**Redline:**

One measure of ~~the plaintiff's~~ Orion's damages is the profits it has lost as a result of the defendant's unlawful activities. Lost profits for which ~~the plaintiff~~ Orion can recover are the net profits ~~the plaintiff~~ Orion would have earned, both in the past and in the future, had it not suffered injury as a result of the violation of the antitrust laws. Thus your award of lost profits should be your reasonable estimate of the amounts ~~the plaintiff~~ Orion would have earned in the past and in the future less the amount ~~the plaintiff~~ Orion actually earned and can be expected to earn. I remind you that your award of damages must be fairly based on the evidence which has been presented to you. You may not simply speculate as to the past or future profits ~~the plaintiff~~ Orion may have lost.

~~The fact that the plaintiff's business is new or not yet established does not prevent you from determining its lost earnings. In making this determination, you may consider the risks of the business world, the experience and performance of the plaintiff's officers, the performance of the plaintiff as it conducted its business, the competition which the plaintiff would have encountered in the area, and the general market conditions of the area of business.~~

**Source and Authorities**: Leonard B. Sand, et al., 4 Modern Federal Jury Instructions–Civil ¶ 79.04[4] (incorporating *id.* ¶ 79.02 Instr. 79-27) (Restraint of Trade) (Matthew Bender, 2015) **(**modified to exclude inapplicable language about new businesses**)**.

**Defendants' Objection:**  It does not make sense to mix and match between two different sets of model instructions, because model instructions are designed to be used together.  Defendants have proposed the ABA Section of Antitrust model instructions on this issue—which is the first set of model instructions recommended by the Ninth Circuit for use in antitrust cases and recognized as the authoritative source for this purpose among antitrust practitioners—with no substantive modifications or argument.  Defendants submit that the ABA instructions are both more complete statements of the law, and presented more efficiently in fewer instructions, than the "Modern Federal Jury Instructions" used as the starting point for Orion's proposed instructions.  Moreover, the model instructions used by Orion include certain instructions that are demonstrably improper as a matter of law, as explained in several of Defendants' other objections.

**Orion's Response:**

As the proposed instruction makes clear, this instruction applies to all of Orion's claims.

**ORION'S INJURY AND DAMAGES INSTRUCTION NO. 6**

**<u>INJURY AND DAMAGES: PUNITIVE DAMAGES</u>**

If you decide that Defendants' conduct caused Orion harm, you must decide whether that conduct justifies an award of punitive damages.  In making this determination, you may only consider conduct that you found violated the Cartwright Act, if you so found.  This is because the law does not allow for punitive damages for Orion's other claims.  The amount, if any, of punitive damages will be an issue decided later.

At this time, you must decide whether Orion has proved that Defendants engaged in that conduct with malice, oppression, or fraud. To do this, Orion must prove one of the following by clear and convincing evidence:

> 1.  That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Defendants' who acted on behalf of Defendants;
>
> or
>
> 2.  That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Defendants;
>
> or
>
> 3.  That one or more officers, directors, or managing agents of Defendants knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Defendants acted with intent to cause injury or that Defendants' conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that Defendants' conduct was despicable and subjected Orion to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

SMRH:4832-1239-1592.2

1    "Fraud" means that Defendants intentionally misrepresented or concealed a material fact

2    and did so intending to harm Orion.

3        An employee is a "managing agent" if he or she exercises substantial independent

4    authority and judgment in his or her corporate decision making such that his or her decisions

5    ultimately determine corporate policy.

6

7        **Redline:**

8

9        If you decide that [*name of defendant*]Defendants's conduct caused [*name of*

10   *plaintiff*]Orion harm, you must decide whether that conduct justifies an award of punitive

11   damages. In making this determination, you may only consider conduct that you found violated

12   the Cartwright Act, if you so found. This is because the law does not allow for punitive damages

13   for Orion's other claims. The amount, if any, of punitive damages will be an issue decided later.

14       At this time, you must decide whether [*name of plaintiff*]Orion has proved that [*name of*

15   *defendant*]Defendants engaged in that conduct with malice, oppression, or fraud. To do this,

16   [*name of plaintiff*]Orion must prove [one of] the following by clear and convincing evidence:

17

18            1.    [That the conduct constituting malice, oppression, or fraud
                    was committed by one or more officers, directors, or
19                  managing agents of [*name of defendant*]Defendants' who
                    acted on behalf of [*name of defendant*]Defendants;

20                              [or]

21            2.    [That the conduct constituting malice, oppression, or fraud
                    was authorized by one or more officers, directors, or
22                  managing agents of [*name of defendant*]Defendants;

23                              [or]

24            3.    [That one or more officers, directors, or managing agents of
25                  [*name of defendant*]Defendants knew of the conduct
                    constituting malice, oppression, or fraud and adopted or
26                  approved that conduct after it occurred.]

27       "Malice" means that [*name of defendant*]Defendants acted with intent to cause injury or

28   that [*name of defendant*]Defendants's conduct was despicable and was done with a willful and

knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that [*name of defendant*]'Defendants' conduct was despicable and subjected [*name of plaintiff*]Orion to cruel and unjust hardship in knowing disregard of [his/her]its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that [*name of defendant*]Defendants intentionally misrepresented or concealed a material fact and did so intending to harm [*name of plaintiff*]Orion.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision making such that his or her decisions ultimately determine corporate policy.

**Source and Authorities**: Judicial Council of California Civil Jury Instructions § 3946.

**Defendants' Objection:**  Punitive damages are not available in connection with Plaintiff's federal antitrust law claims, because violations of federal antitrust laws are automatically trebled under 15 U.S.C. §15(a), which encompasses the full scope of compensatory and punitive damages available to an antitrust plaintiff under federal and state law.  *See* Def.s' Mot. in Limine 6 to Preclude Evidence or Argument Relating to Punitive Damages, ECF No. 321.

**Orion's Response:**

Tellingly, Defendants do not cite a single California or federal case precluding a party from seeking punitive damages under the Cartwright Act.  Instead, Defendants ask the Court to assume that because federal law prohibits recovery of punitive damages in antitrust cases, California law also must prohibit punitive damages in Cartwright Act cases.  But that is not California law, which this Court applies to this claim pursuant to its supplement jurisdiction.

1    Under California law, punitive damages are available unless expressly precluded by

2  statute.  "When a statute recognizes a cause of action for violation of a right, all forms of relief

3  granted to civil litigants generally, including appropriate punitive damages, are available unless a

4  contrary legislative intent appears."  *Commodore Home Sys. v. Superior Court*, 32 Cal. 3d 211,

5  215 (1982) (citing *Orloff v. Los Angeles Turf Club*, 30 Cal. 2d 110, 113 (1947)); *see also, e.g.,*

6  *Freund v. Nycomed Amersham*, 347 F.3d 752, 760 (9th Cir. 2003); *Daly v. Exxon Corp.*, 55 Cal.

7  App. 4th 39, 45 (1997); *Hentzel v. Singer Co.*, 138 Cal. App. 3d 290, 301-03 (1982); *Greenberg v.*

8  *Western Turf Assn.*, 140 Cal. 357, 363-64 (1904).

9    Federal law interpreting the Sherman Act is not relevant to the question.  In fact, several

10  California decisions have expressly departed from federal Sherman Act decisions when

11  interpreting California's own antitrust laws.  *See, e.g.*, *Cellular Plus, Inc. v. Superior Court*, 14

12  Cal. App. 4th 1224, 1240, 1242 (1993) (declining to dismiss Cartwright Act price fixing claim,

13  even though a regulatory agency had approved the prices as reasonable (which would preclude a

14  Sherman Act claim), and noting that (1) federal decisions interpreting the Sherman Act are "an

15  aid" in interpreting the Cartwright Act, not "controlling precedent," and (2) "the California

16  Supreme Court has stated that 'the Cartwright Act is broader in range and deeper in reach than the

17  Sherman Act'") (internal citations omitted); *State ex rel. Van de Kamp v. Texaco, Inc.* (1988) 46

18  Cal.3d 1147, 1164 (superseded by statute on other grounds) ("judicial interpretation of the

19  Sherman Act, while often helpful, is not directly probative of the Cartwright drafters' intent, given

20  the different genesis of the provision under review").

21

22

23

24

25

26

27

28

1  **DEFENDANTS' PROPOSED INSTRUCTIONS REGARDING CAUSATION AND**

2  **DAMAGES**

3  **DEFENDANTS' PROPOSED INSTRUCTION NO. 47**

4  **INJURY AND CAUSATION**

5   If you find that defendant has violated Section 1 or Section 2 of the Sherman Act, or

6  Section 7 of the Clayton Act, then you must decide if plaintiff is entitled to recover damages

7  from defendant.

8   Plaintiff is entitled to recover damages for an injury to its business or property if it can

9  establish three elements of injury and causation:

10   (1)   plaintiff was in fact injured as a result of defendants' alleged violation of the

11  antitrust laws;

12   (2)   defendants' alleged illegal conduct was a material cause of plaintiff's injury; and

13   (3)   plaintiff's injury is an injury of the type that the antitrust laws were intended to

14  prevent.

15   The first element is sometimes referred to as "injury in fact" or "fact of damage." For

16  plaintiff to establish that it is entitled to recover damages, it must prove that it was injured as a

17  result of defendant's alleged violation of the antitrust laws. Proving the fact of damage does not

18  require plaintiff to prove the dollar value of its injury. It requires only that plaintiff prove that it

19  was in fact injured by defendant's alleged antitrust violation. If you find that plaintiff has

20  established that it was in fact injured, you may then consider the amount of plaintiff's damages. It

21  is important to understand, however, that injury and amount of damage are different concepts and

22  that you cannot consider the amount of damage unless and until you have concluded that plaintiff

23  has established that it was in fact injured.

24   Plaintiff must also offer evidence that establishes by a preponderance of the evidence that

25  defendant's alleged illegal conduct was a material cause of plaintiff's injury. This means that

26  plaintiff must have proved that some damage occurred to it as a result of defendant's alleged

27  antitrust violation, and not some other cause. Plaintiff is not required to prove that defendant's

28  alleged antitrust violation was the sole cause of its injury; nor need plaintiff eliminate all other

possible causes of injury. It is enough if plaintiff has proved that the alleged antitrust violation was a material cause of its injury.

Finally, plaintiff must establish that its injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If plaintiffs injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then plaintiffs injuries are antitrust injuries. On the other hand, if plaintiffs injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then plaintiffs injuries are not antitrust injuries and plaintiff may not recover damages for those injuries under the antitrust laws.

You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against-such as where a competitor offers better products or services, or where a competitor is more efficient and can charge lower prices and still earn a profit. The antitrust laws do not permit a plaintiff to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

In summary, if plaintiff can establish that it was in fact injured by defendant's conduct, that defendant's conduct was a material cause of plaintiffs injury, and that defendant's injury was the type that the antitrust laws were intended to prevent, then plaintiff is entitled to recover damages for the injury to its business or property.


**AUTHORITY: ABA Ch. 6, Part A. Instruction 1**

**Orion' Response**

Defendants' proposed instructions are unduly complicated and burdensome for the jury. The Court should issue Orion's proposed instructions derived from the Modern Federal Jury Instructions source approved by the Ninth Circuit Model Jury Instructions, which correctly explain the law in a much simpler and cogent fashion.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 48

## BUSINESS OR PROPERTY

Plaintiff must establish that the injury it claims to have suffered was an injury to its business or property. The term "business" includes any commercial interest or venture. Plaintiff has been injured in its business  if you find that it has suffered injury to any of its commercial interests or enterprises as a result of defendant's alleged antitrust violation. The term property includes anything of value plaintiff owns, possesses, or in which plaintiff has a protectable legal interest. Plaintiff has been injured in its property if you find that anything of value that it owns, possesses, or has a legal interest in has been damaged as a result of defendant's alleged antitrust violation. Plaintiff has been injured in its property if you find that it has paid an inflated price for goods, services, any legal interest of value, or has lost money as a result of defendant's alleged antitrust violation.

## AUTHORITY: ABA Ch. 6, Part A. Instruction 2

**Orion' Response**

Defendants' proposed instructions are unduly complicated and burdensome for the jury. The Court should issue Orion's proposed instructions derived from the Modern Federal Jury Instructions source approved by the Ninth Circuit Model Jury Instructions, which correctly explain the law in a much simpler and cogent fashion.

# DEFENDANTS' PROPOSED INSTRUCTION NO. 49

## ANTITRUST DAMAGES—INTRODUCTION AND PURPOSE

If you find that defendant violated the antitrust laws and that this violation caused injury to plaintiff, then you must determine the amount of damages, if any, plaintiff is entitled to recover. The fact that I am giving you instructions concerning the issue of plaintiffs damages does not mean that I believe plaintiff should, or should not, prevail in this case. If you reach a verdict for defendant on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.

The law provides that plaintiff should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been had the alleged antitrust violation not occurred. The law does not permit you to award damages to punish a wrongdoer-what we sometimes refer to as punitive damages-or to deter particular conduct in the future. Furthermore, you are not permitted to award to plaintiff an amount for attorneys' fees or the costs of maintaining this lawsuit.

**AUTHORITY: ABA Ch. 6, Part B. Instruction 1**

**Orion' Response**

Defendants' proposed instructions are unduly complicated and burdensome for the jury. The Court should issue Orion's proposed instructions derived from the Modern Federal Jury Instructions source approved by the Ninth Circuit Model Jury Instructions, which correctly explain the law in a much simpler and cogent fashion.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 50

## BASIS FOR CALCULATING DAMAGES

You are permitted to make just and reasonable estimates in calculating plaintiffs damages. You are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates. Damages may not be based on guesswork or speculation. Plaintiff must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that plaintiff has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that plaintiff has failed to carry its burden of providing a reasonable basis for determining damages, then you may not award damages.

## AUTHORITY: ABA Ch. 6, Part B. Instruction 3

**Orion' Response**

Orion objects to Defendants removal of the nominal damages provision in the model instruction. Once again, Defendants make a material change to the model instruction without alerting the Court via redline.

Defendants' proposed instructions are unduly complicated and burdensome for the jury. The Court should issue Orion's proposed instructions derived from the Modern Federal Jury Instructions source approved by the Ninth Circuit Model Jury Instructions, which correctly explain the law in a much simpler and cogent fashion.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 51

## CAUSATION AND DISAGGREGATION

If you find that defendant violated the antitrust laws and that plaintiff was injured by that violation, plaintiff is entitled to recover for such injury that was the direct result or likely consequence of the unlawful acts of defendant. Plaintiff bears the burden of showing that its injuries were caused by defendant's antitrust violation, as opposed to any other factors. If you find that plaintiffs alleged injuries were caused in part by defendant's alleged antitrust violation and in part by other factors, then you may award damages only for that portion of plaintiffs alleged injuries that was caused by defendant's alleged antitrust violation.

Plaintiff claims that it suffered injury because it paid higher prices for telescopes than it would have paid if the alleged antitrust violation had not occurred. Defendant claims that any higher prices, if any, occurred as a result of other factors that have nothing to do with the alleged antitrust violation. Plaintiff is not entitled to recover for changes in price that resulted solely from these or other causes arising from the normal course of business activity. The presence of these factors does not mean plaintiff did not suffer antitrust injury, but plaintiff is not entitled to recover for damages caused by them. Plaintiff only may recover for damages caused by the alleged antitrust violation.

Plaintiff claims that it suffered injury because it lost sales and profits as a result of defendant's conduct. Defendant claims that any profits or sales lost by plaintiff occurred as a result of other factors that have nothing to do with the alleged antitrust violation. Plaintiff is not entitled to recover for lost profits that resulted solely from these or other causes arising from the normal course of business activity. The presence of these factors does not mean plaintiff did not suffer antitrust injury, but plaintiff is not entitled to recovery for damages caused by them. Plaintiff only may recover for damages caused by the alleged antitrust violation.

Plaintiff bears the burden of proving damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes. If you find that plaintiff was injured by defendant's alleged antitrust violation, and there is a reasonable basis to apportion plaintiff's alleged injury between lawful and unlawful causes, then you may award damages.

1   If you find that plaintiffs alleged injuries were caused by factors other than defendant's

2   alleged antitrust violation, then you must return a verdict for defendant. If you find that there is no

3   reasonable basis to apportion plaintiff's alleged injury between lawful and unlawful causes, or that

4   apportionment can only be accomplished through speculation or guesswork, then you may not

5   award any damages at all.

6

7   **AUTHORITY: ABA Ch. 6, Part B. Instruction 4**

8   **Orion's Response:**

9   Orion objects to this instruction, which does not reflect the law because it conspicuously omits

10  that Orion need only show that Defendants' misconduct is a substantial factor or material cause of
    Orion's injury. *See Blanton v. Mobil Oil Corp.*, 721 F.2d 1207, 1215 (9th Cir. 1983):

11          The jury was properly instructed:

12

13          If you find that plaintiffs were injured by these causes, and that the
            alleged antitrust violations, if proven, were not a substantial factor

14          in causing the injury, plaintiffs' injury would not have been
            proximately caused by the alleged conduct, and your verdict would

15          have to be in favor of the defendants.

16  Indeed, the Court's summary judgment order agreed that Orion "is not required to show that

17  Defendants' conduct was the only cause, but only that it was a substantial factor in bringing about
    the injury."  Order Denying Motion for Summary Judgment 13:12-13 (ECF No. 338) (citing *Los*

18  *Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1366 (9th Cir. 1986)).
    That holding is now the law of the case.

19

20  Orion also notes that this instruction is cumulative of other causation instruction proposed by
    Defendants.

21  Orion respectfully requests that the Court issue Orion's proposed instructions, which accurately

22  reflect the law on this point. *See* Orion's Proposed Instruction No. 86.

23

24

25

26

27

28

1
2

## DEFENDANTS' PROPOSED INSTRUCTION NO. 52

## DAMAGES FOR PURCHASERS

3   If you have determined that there was an unlawful agreement among competitors to fix
4   prices, allocate markets, or give one of the competitors a monopoly, that caused some injury to
5   plaintiff, you must now determine the amount of damages to award to plaintiff. The proper way to
6   calculate those damages is to determine the difference between the prices plaintiff actually paid for
7   telescopes and the prices plaintiff would have paid had there been no unlawful agreement. This is
8   referred to as the overcharge.

9
10  **AUTHORITY: ABA Ch. 6, Part B. Instruction 5**

11   **Orion's Response:**

12   Orion objects to these instructions as duplicative and cumulative of the basis for
13  calculating damages instructions set forth above.

14   Orion believes that the Court should issue Orion's proposed instructions regarding
15  conspiracy derived from the Modern Federal Jury Instructions source approved by the Ninth
16  Circuit Model Jury Instructions, which accurately and cogently describe the law of damages in a
17  much simpler fashion..

18
19
20
21
22
23
24
25
26
27
28

## DEFENDANTS' PROPOSED INSTRUCTION NO. 53

## DAMAGES FOR COMPETITORS-LOST PROFITS

Plaintiff claims that it was harmed because it lost profits as a result of defendant's alleged antitrust violation. If you find that defendant committed an antitrust violation and that this violation caused injury to plaintiff, you now must calculate the profits, if any, that plaintiff lost as a result of defendant's antitrust violation. To calculate lost profits, you must calculate net profit: the amount by which plaintiffs gross revenues would have exceeded all of the costs and expenses that would have been necessary to produce those revenues.

## AUTHORITY: ABA Ch. 6, Part B. Instruction 8

**Orion's Response:**

Orion objects to these instructions as duplicative and cumulative of the basis for calculating damages instructions set forth above.

Orion believes that the Court should issue Orion's proposed instructions regarding conspiracy derived from the Modern Federal Jury Instructions source approved by the Ninth Circuit Model Jury Instructions, which accurately and cogently describe the law of damages in a much simpler fashion..

## DEFENDANTS' PROPOSED INSTRUCTION NO. 54

## DAMAGES FOR COMPETITORS-FUTURE LOST PROFITS

Plaintiff claims that it was harmed because, had it not been for defendant's alleged antitrust violation, plaintiff would have earned profits for [X] years into the future. If you find that defendant committed an antitrust violation and that this violation caused injury to plaintiff, you now must calculate the future profits, if any, that plaintiff lost as a result of defendant's antitrust violation.

To calculate future lost profits, you must make a reasonable estimate of (1) the amount of profits, if any, that plaintiff would have earned in future years, and (2) the length of time for which it would have earned those profits. In making this calculation, you are not required to calculate future lost profits with absolute mathematical certainty or precision, but you must not engage in guesswork or speculation. In making this determination, you must consider the various factors that could affect the future success of plaintiff's business, such as general market or economic conditions, lawful competition plaintiff would face in the future, plaintiff's management of business, changes in technology or other business conditions, and other factors affecting plaintiff's future performance.

Your determination of future lost profits must have a reasonable basis in the evidence and cannot be speculative. If there is no evidence from which you can make a reasonable estimate of lost future profits, you may not award damages for future lost profits.

In calculating future lost profits, you must calculate net profit. In simple terms, net profit is gross revenues minus all of the costs and expenses that would be necessary to produce those revenues.

If you award damages for future lost profits, you must discount the amount to its present value, using a discount rate of interest that you find reasonable. This is because the right to receive a certain sum of money at a future date is worth less than the same amount of money in hand today- this is known as the time value of money. For example, if you had a choice to receive $1,000 today or a year from now, you would be better off receiving the money today and earning interest on it for a year-you would then have something more than $1,000 in a year from now.

1   Similarly, if you had a right to $1,000 a year from now and you asked for the money today, the

2   person owing you the money a year from now could properly give you a lower amount, reflecting

3   the value that could be earned on that money over the next year. This lower amount is known as an

4   amount discounted to present value.

5

6   **AUTHORITY: ABA Ch. 6, Part B. Instruction 9**

7          **Orion's Response:**

8          Orion objects to these instructions as duplicative and cumulative of the basis for

9   calculating damages instructions set forth above.

10          Orion believes that the Court should issue Orion's proposed instructions regarding

11   conspiracy derived from the Modern Federal Jury Instructions source approved by the Ninth

12   Circuit Model Jury Instructions, which accurately and cogently describe the law of damages in a

13   much simpler fashion..

14          Orion further objects to this instruction because Dr. Zona's damages analysis discounted

15   future lost profits to present value, and Defendants have not offered an affirmative expert opinion

16   that could justify the choice of another discount rate.

17          If a version of this instruction is issued, it must make clear that Dr. Zona has already

18   discounted to present value so that the jury is not confused and led to discount Dr. Zona's figures a

19   second time.

20

21

22

23

24

25

26

27

28

1

### DEFENDANTS' PROPOSED INSTRUCTION NO. 55

2

### DAMAGES FOR COMPETITORS-GOING CONCERN VALUE OR GOODWILL

3    Plaintiff claims that it was harmed because, had it not been for defendant's alleged antitrust

4 violation, the "going concern" or "goodwill" value of its business would have been higher than it

5 actually was. If plaintiff was forced to sell, shut down, or otherwise terminate its business because

6 of defendant's alleged antitrust violation, plaintiff is entitled to damages for any resulting loss to

7 its business's going concern value. Going concern value is the value of a company as an operating

8 venture to a prospective buyer. Going concern damages are designed to compensate plaintiff for

9 the value that plaintiff's business would have had at the point plaintiff went out of business, but for

10 defendant's alleged antitrust violation.

11    Going concern damages are measured by determining the loss of goodwill suffered by

12 plaintiffs business as a result of defendant's alleged antitrust violation. Goodwill consists of the

13 intangible assets of a business, including customer relationships, an established location,

14 employees and their skill sets, and other elements that lead to profits over and above an amount

15 fairly attributable to the return on capital investment and the labor of the owner. Goodwill also

16 includes the reasonable prospect of continued additional profit in the future.

17    If you find that defendant committed an antitrust violation and that this violation caused

18 damage to the amount for which plaintiff was able to sell its business, you may award damages for

19 loss of goodwill. You may include both lost past profits and the loss of goodwill in calculating a

20 total damages award. You may not, however, award damages for both loss of goodwill and future

21 lost profits, so in considering future damages in this case you should not add or combine these

22 figures together. But you may consider the anticipated future profits of a business as a factor in

23 determining the goodwill of that business.

24    The most important element of goodwill is the expectation of future profitable operations.

25 Calculate (1) the reasonable expectation of future profits minus (2) an amount attributable to a

26 reasonable return on the capital investment. If that number is positive, that is the goodwill value;

27 otherwise there is no goodwill value. In determining whether goodwill exists, and how much it is

28 if it exists, you should consider how far into the future the profitable operations of the business

might have been expected to continue, considering all of the circumstances existing at the time, had it not been for defendant's alleged antitrust violation.

If plaintiff sold its business for more than the value of its tangible assets, plaintiff likely received some compensation for goodwill, and you should take this amount into account in determining plaintiffs lost goodwill.

**AUTHORITY: ABA, 6.B.10**

**Orion's Response:**

Orion objects to these instructions as duplicative and cumulative of the basis for calculating damages instructions set forth above.

Orion believes that the Court should issue Orion's proposed instructions regarding conspiracy derived from the Modern Federal Jury Instructions source approved by the Ninth Circuit Model Jury Instructions, which accurately and cogently describe the law of damages in a much simpler fashion..

## **DEFENDANTS' PROPOSED INSTRUCTION NO. 56**

## **DAMAGES FOR COMPETITORS-PREPAREDNESS TO ENTER BUSINESS**

Plaintiff claims that it was harmed because defendant's alleged antitrust violation prevented it from entering a new business. To recover damages, it is not necessary that plaintiff actually have entered into this business if you find that defendant's alleged antitrust violation prevented plaintiff from entering into this business. Plaintiff must prove, however, that it had an intention to enter into this business and that it had taken concrete steps to prepare to do so.

In determining whether or not plaintiff has demonstrated the intention and preparedness to enter this new business, you may consider such elements as the following: the background and experience of the principals and employees of plaintiff; the ability of plaintiff to finance the business and to purchase the necessary facilities and equipment; and concrete and discernible steps taken by plaintiff to enter into this new business. Ultimately, to award plaintiff damages related to its failure to enter this business, you must determine that had it not been for defendant's alleged antitrust violation, plaintiff would have entered that business.

## **AUTHORITY: ABA, 6.B.11**

**Orion's Response:**

Orion objects to these instructions as duplicative and cumulative of the basis for calculating damages instructions set forth above.

Orion believes that the Court should issue Orion's proposed instructions regarding conspiracy derived from the Modern Federal Jury Instructions source approved by the Ninth Circuit Model Jury Instructions, which accurately and cogently describe the law of damages in a much simpler fashion..

Orion further objects to this instruction because its damages theory does not depend upon Orion entering a new line of business. As the notes to the model instruction explain, "A plaintiff is entitled to recover damages if defendant's violations thwart plaintiff's attempt to enter into a new business venture or line of business. More is required, however, than a bona fide intent to enter, and it is not sufficient that plaintiff might, at some future time, have marshaled the resources

and capacity to have entered that business. Plaintiff must demonstrate that it had taken some steps to prepare actually to enter this business for which damages are claimed."

There is no dispute that Orion has been in the telescope business for decades, and thus no call for this instruction.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 57

## EXPERT TESTIMONY

Certain testimony has been given in this case by experts. An expert is someone who is specially qualified by experience or training and possesses knowledge on matters not common to jurors in general. In a trial, an expert is permitted to give his or her opinions regarding such matters. The testimony of experts is to be considered like any other testimony, is to be tried by the same tests, and should receive such weight and credit as you deem it entitled to, when viewed in connection with all the other facts and circumstances. Its weight and value are questions for you.

**AUTHORITY: ABA Ch. 6, Part B. Instruction 13**

**Orion's Response:**

Orion objects to this instruction as cumulative of Ninth Circuit Model Instruction 2.14, which the parties have stipulated should be issued.

## **DEFENDANTS' PROPOSED INSTRUCTION NO. 58**

## **MITIGATION**

Plaintiff may not recover damages for any portion of its injuries that it could have avoided through the exercise of reasonable care and prudence. Plaintiff is not entitled to increase any damages through inaction. The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss. If plaintiff failed to take reasonable steps available to it, and the failure to take those steps resulted in greater harm to plaintiff than it would have suffered had it taken those steps, then plaintiff may not recover any damages for that part of the injury it could have avoided.

Defendant has the burden of proof on this issue. Defendant must prove by a preponderance of the evidence that plaintiff:

(1)     acted unreasonably in failing to take specific steps to minimize or limit its losses;

(2)     that the failure to take those specific steps resulted in its losses being greater than they would have been had it taken such steps; and

(3)     the amount by which plaintiff's loss would have been reduced had plaintiff taken those steps.

In determining whether plaintiff failed to take reasonable measures to limit its damages, you must remember that the law does not require plaintiff to take every conceivable step that might reduce its damages. The evidence must show that plaintiff failed to take commercially reasonable measures that were open to it. Commercially reasonable measures mean those measures that a prudent businessperson in plaintiff's position would likely have adopted, given the circumstances as they appeared at that time. Plaintiff should be given wide latitude in deciding how to handle the situation, so long as what plaintiff did was not unreasonable in light of the existing circumstances.


**AUTHORITY: ABA Ch. 6, Part B. Instruction 14**

**Orion's Response:**

1    Orion objects to this instruction because Defendants have not met their burden of

2 production necessary to support the issuance of a mitigation instruction.  Defendants have not

3 offered any substantive expert damages testimony.  Rather, their proffered experts' testimony is

4 limited to rebutting the testimony of Orion's expert Dr. J. Douglas Zona.

5    As the proposed instruction explains, Defendants bear the burden on mitigation, but

6 Defendants cannot meet that burden because they have not offered any affirmative expert

7 testimony that could support a jury finding that Orion failed to mitigate its damages.  Nor can

8 Defendants advance a mitigation theory based upon lay testimony given the antitrust overcharge

9 context of Orion's damages case.  Widely accepted principles of economics and antitrust law hold

10 that where a few dominant firms collude but smaller competitors do not, all firms will raise their

11 prices, such that "all buyers pay the same price, and therefore all buyers suffer the same

12 overcharge …. [i]t does not matter whether the buyer purchased from a colluder or a noncolluder –

13 the overcharge is precisely the same." 2A Areeda & Hovenkamp, Antitrust Law ¶ 395, at 448 (4th

14 ed. 2014). The literature emphasizes that "th[is] economic analysis is uncontroversial." *Id*. at 447;

15 see also R. Blair & R. Romano, Distinguishing Participants from Nonparticipants in a Price-Fixing

16 Conspiracy: Liability and Damages, 28 Am. Bus. L.J. 33, 35 (1990) ("Widely accepted economic

17 theory predicts that all firms in an industry will increase price following a price fixing agreement

18 among a subset of the firms in that industry") (emphasis in the original).  Thus, lay witnesses

19 cannot meet the burden of production by testifying that Orion should have bought telescopes from

20 non-colluding firms.

21    This instruction therefore should not be given.

22

23

24

25

26

27

28

1
2

<u>**DEFENDANTS' PROPOSED INSTRUCTION NO. 59**</u>

<u>**JOINT AND SEVERAL LIABILITY**</u>

3   Each participant in a conspiracy that violates the antitrust laws is jointly and severally

4 liable for all of the damages resulting from the conspiracy. This means that each conspirator is

5 fully liable for all of the damages caused by the conspiracy and not solely for damages caused by

6 an individual conspirator. One who knowingly joins an ongoing conspiracy is liable for the

7 previous acts of the other conspirators in furtherance of the conspiracy.

8   If you find that plaintiff has proven the existence of the alleged conspiracy, that defendant

9 participated in the conspiracy, and that plaintiff is entitled to recover damages based on the other

10 instructions in this case, then defendant would be liable for all damages caused by the conspiracy

11 including any overcharges on purchases of the product.

12   Thus, in that event, defendant would be liable for overcharges on all purchases of [the

13 product] by plaintiff from all members of the conspiracy, and not merely on purchases from

14 defendant. If, however, you find that any of the other alleged conspirators were not a member of

15 the conspiracy, then defendant would not be liable for damages based on plaintiff's purchases

16 from those alleged conspirators.

17   <u>**AUTHORITY: ABA Ch. 6, Part B. Instruction 17**</u>

18   **Orion's Response: Orion objects to this instruction as contrary to economic**

19 **principles.**

20   Widely accepted principles of economics and antitrust law hold that where a few dominant

21 firms collude but smaller competitors do not, all firms will raise their prices, such that "all buyers

22 pay the same price, and therefore all buyers suffer the same overcharge …. [i]t does not matter

23 whether the buyer purchased from a colluder or a noncolluder – the overcharge is precisely the

24 same." 2A Areeda & Hovenkamp, Antitrust Law ¶ 395, at 448 (4th ed. 2014). The literature

25 emphasizes that "th[is] economic analysis is uncontroversial." Id. at 447; see also R. Blair & R.

26 Romano, Distinguishing Participants from Nonparticipants in a Price-Fixing Conspiracy: Liability

27 and Damages, 28 Am. Bus. L.J. 33, 35 (1990) ("Widely accepted economic theory predicts that all

28

1    firms in an industry will increase price following a price fixing agreement among a subset of the

2    firms in that industry") (emphasis in the original).

3          Given that understanding, it would be error for the Court to instruct the jury that purchases

4    from non-colluders who were infected by Defendants' overcharge are somehow outside of Orion's

5    damages.  To the contrary, Orion is entitled to all injury substantially or materially caused by

6    Defendants' unlawful conduct. Orion notes that neither of the two cases cited by the model

7    instruction were issued in this Circuit.

8          Defendants' proposed instructions are unduly complicated and burdensome for the jury.

9    The Court should issue Orion's proposed instructions derived from the Modern Federal Jury

10   Instructions source approved by the Ninth Circuit Model Jury Instructions, which correctly explain

11   the law in a much simpler and cogent fashion.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:16-cv-06370-EJD-VKD

DEFENDANTS' PROPOSED JURY INSTRUCTIONS

SMRH:4832-1239-1592.2