UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC, <br> Orion, <br> v. <br> NINGBO SUNNY ELECTRONIC CO., LTD., et al., <br> Defendants. | Case No. 5:16-cv-06370-EJD <br><br> **SECOND ORDER RE MOTION IN LIMINE AND OTHER PRETRIAL MOTIONS** <br><br> Re: Dkt. Nos. 258, 321, 324, 329 |

After holding the final pretrial conference on October 10 and 11, 2019, the court issued an order addressing certain of the motions *in limine* and other pretrial motions (Dkt. No. 403) and continued the conference to October 16, 2019. This order addresses the four motions that remain pending: Orion's Motion to Exclude the Testimony of Mr. Redman (Dkt. No. 258), Defendants' Motion *In Limine* No. 6 (Dkt. No. 321), Defendants' Motion *In Limine* No. 8 (Dkt. No. 324), and Orion's Motion *In Limine* No. 1 (Dkt. No. 329).

### I. *Orion's Motion to Exclude the Testimony of Mr. Redman (Dkt. No. 258)*

Orion seeks to exclude the testimony of Defendants' expert Mr. Jeffrey Dean Redman to the extent that he seeks to rebut the testimony of Dr. J. Douglas Zona, Orion's damages expert. In an earlier order, the court excluded his testimony offered in rebuttal of Orion's technical expert Dr. José Sasian. Dkt. No. 314 at 9-10. While Mr. Redman may be well qualified to testify as a damages expert in some cases, the court finds that he is not qualified to offer rebuttal testimony to Dr. Zona's specific analyses. The court grants Orion's motion for the reasons discussed below. Defendants, of course, may still rely on the rebuttal testimony of their other damages expert, Dr. Celeste Saravia.

Case No.: 5:16-cv-06370-EJD
SECOND ORDER RE MOTIONS IN LIMINE AND OTHER PRETRIAL MOTIONS
1

Dr. Zona's testimony is based on econometric analyses that employ regression models to calculate Orion's purported damages. The methodology Dr. Zona uses is known as the "dominant firm" model. Defendants do not dispute that the dominant firm model is a noncontroversial means of calculating antitrust damages. However, these analyses are outside of Mr. Redman's experience and training. He has 35 years of experience as an expert related to financial matters, has a B.S. in Management, and is a certified fraud examiner. He currently leads his own financial forensics firm and has previously worked at the financial consulting and accounting firm Ernst & Young. However, Mr. Redman has no training in econometrics and is neither an economist nor an accountant. Redman Dep. 29:6-11. He testified that for antitrust cases he could not remember ever calculating damages, running a regression, or calculating price elasticity or overcharges. *Id*. at 29:6-11, 48:12-19, 49:6-19, 55:8-10, 66:7-14, 98:10-21.

Mr. Redman's general lack of relevant experience and training is apparent in his failure to understand Dr. Zona's specific calculations and analyses. Mr. Redman does not run his own regression nor criticize Dr. Zona's application of the model. Rather, he criticizes Dr. Zona for not using certain, case-specific data to calculate damages for overcharges. Redman Rep. ¶¶ 11, 19-24, 58. But, Mr. Redman does not appear to understand the methods and models that Dr. Zona used. Mr. Redman concedes that prior to this case he had not heard of the dominant firm model, that he could not explain the equation Dr. Zona used to calculate the damages rate used in the empirical model, that he does not understand what "pass through" means, that he is unfamiliar with the private cartel data Dr. Zona used, and that Dr. Zona's structural model are "outside [his] area of expertise." Redman Dep. at 231:1-13; 241:4-242:13; 251:15-252:18; 255:5-7; 257:16-24; 258:10-17. Without understanding Dr. Zona's models and methods, Mr. Redman's rebuttal cannot be reliable. Fed. R. Evid. 702.

In *Virginia Vermiculite Ltd. v. W.R. Grace & Co.–Conn*, a district court excluded damages testimony in an antitrust case because the expert lacked the requisite expertise. 98 F. Supp. 2d 729, 732 (W.D. Va. 2000). The court noted that the witness at issue had experience with determining markets for investment purposes, but that did not transfer to determining markets for antitrust analyses: "Though related to a relevant market determination in an antitrust issue, there

Case No.: 5:16-cv-06370-EJD
SECOND ORDER RE MOTIONS IN LIMINE AND OTHER PRETRIAL MOTIONS
2

are differences between an analysis for business investment and an analysis for antitrust purposes." *Id*. The court further noted that the at-issue witness "lack[ed] a clear understanding of basic economic principles. For instance, [the witness] admitted he was unfamiliar with the dominant firm theory in economics." *Id*. at 734. In *Rothe Dev., Inc. v. Dep't of Def.*, the district court excluded the testimony of a witness seeking to rebut two expert reports from economists, one of which used regression analyses. 107 F. Supp. 3d 183, 203 (D.D.C. 2015), *aff'd sub nom. Rothe Dev., Inc. v. United States Dep't of Def.*, 836 F.3d 57 (D.C. Cir. 2016). The court noted that the witness had never run a regression before, and found that "[b]ased on [the witness's] own admissions regarding his lack of training, education, knowledge, skill, and experience in any statistical or econometric methodology, [he] is plainly unqualified to testify as an expert with respect to [the opposing experts'] reports." *Id*.; *see also In re Worldcom, Inc.*, 371 B.R. 33, 42 (Bankr. S.D.N.Y. 2007) (excluding testimony of a witness because "[t]here is no nexus between his credentials and the subject matter of his testimony.").

Mr. Redman has impressive credentials, but he is not qualified to rebut Dr. Zona's testimony because it addresses issues outside of Mr. Redman's expertise and understanding. The court grants the motion to exclude Mr. Redman's testimony offered in rebuttal of Dr. Zona.

## II. Defendants' Motion In Limine No. 6 (Dkt. No. 321)

Defendants seek an order to prevent Orion from offering evidence or argument related to punitive damages. Orion does not dispute that it may not seek punitive damages on its claims under federal law or California's Unfair Competition Law. The parties disagree as to whether punitive damages are available to Orion on its claim under California's Cartwright Act.

As an initial matter, Orion objects to this motion on the ground that it is a motion for summary judgment masquerading as a motion *in limine*. Federal courts in California, though, have considered whether to allow the introduction of evidence going to remedies—including punitive damages—in motions *in limine*. *See, e.g.*, *Carpenter v. Forest Meadows Owners Ass'n*, 2011 WL 3207778, at *15-19 (E.D. Cal. July 27, 2011). The court finds this motion is properly before the court.

The Cartwright Act allows a victorious plaintiff to obtain treble damages, injunctive relief,

and reasonable attorneys' fees. Cal. Bus. & Prof. Code § 16750(a). This array of remedies arises from the Cartwright Act's "focus[] on the punishment of violators for the larger purpose of promoting free competition." *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 783 (2010). "Private damage awards are just a tool by which the[] procompetitive purposes [of the Cartwright Act] are carried out: The main purpose of the anti-trust laws is to protect the public from monopolies and restraints of trade, and the individual right of action for treble damages is incidental and subordinate to that main purpose." *Id.* (citations and quotations omitted).Under the Cartwright Act, the award of treble damages is "mandatory." *Uneedus v. Cal. Shoppers, Inc.*, 86 Cal. App. 3d 932, 942 (1978).

The court finds that because treble damages are mandatory, punitive damages are precluded under the Cartwright Act. Under California law, punitive damages, like treble damages, are a "way of punishing the defendant." Cal. Civ. Code § 3294(a). "[W]here a statute provides a remedy that is punitive in nature, a plaintiff may not recover punitive damages in addition to the punitive statutory damages." *Doran v. Embassy Suites Hotel*, 2002 WL 1968166, at *2 (N.D. Cal. Aug. 26, 2002). In *Turnbull & Turnbull v. ARA Transp., Inc.*, the Court of Appeal held that where a plaintiff was entitled to mandatory treble damages on predatory pricing claims based on California's Unfair Practices Act, that plaintiff was "not entitled to both remedies," —*i.e.*, punitive and treble damages—and could only receive the mandatory treble damages. 219 Cal. App. 3d 811, 826-27 (1990), *reh'g denied and opinion modified* (May 19, 1990). If Orion prevails on its Cartwright Act claim, then it will be entitled to mandatory treble damages; thus, punitive damages would not be available to Orion. Defendants' motion *in limine* No. 6 is granted.

### III. Defendants' Motion In Limine No. 8 (Dkt. No. 324)

Defendants style their *Limine* Motion No. 8 as a motion to "preclude questioning or testimony that simply reads a document into the record," but their intention appears to be to preclude the examination of the President of Defendant Meade, Victor Aniceto, on a particular document. Orion contends that an alleged third-party coconspirator has taken equity in Meade and that Mr. Aniceto received a document created by Meade's finance director that shows this equity interest. Orion questioned Mr. Aniceto about this document during his deposition. When

Case No.: 5:16-cv-06370-EJD
SECOND ORDER RE MOTIONS IN LIMINE AND OTHER PRETRIAL MOTIONS
4

Defendants' counsel questioned him about the document, Mr. Aniceto testified that he had not read the document in question prior to his deposition. Now Defendants seek an order precluding Orion from introducing the portions of his deposition testimony relating to the document and prohibiting both parties from eliciting live testimony from a witness regarding documents of which the witness has no personal knowledge.

This motion is premature and overly broad. "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. Orion may call Mr. Aniceto and Orion may attempt to lay a foundation to support questioning him on the document at issue. The court will consider any objections to this line of questioning at trial.

### IV. Orion's Motion In Limine No. 1 (Dkt. No. 329)

Before initiating this litigation, Orion entered into a Settlement Agreement with a collection of businesses (the "Synta Entities"), which manufacture and distribute telescopes. On the same day that they executed the Settlement Agreement, September 14, 2016, they also executed a Supply Agreement for Orion to purchase telescopes from the Synta Entities with the benefit of "Most Favored Customer Pricing." Ex A at 12; Ex. B at 5, 18. In this litigation, Orion alleges the Synta Entities conspired with Defendants to violate antitrust laws. Orion seeks an order that (1) the parties may discuss the fact of the Settlement Agreement and may identify the parties to the Settlement Agreement, and (2) the parties may not discuss the terms or substance of the Settlement Agreement. Defendants agree that the existence and signatories of the Settlement Agreement should be admitted, but they oppose the motion so far as the motion seeks to exclude the substance of the Settlement Agreement and the Supply Agreement. The court has considered the parties' papers and heard two days of oral argument on this issue. The court orders as follows.

To begin, at the hearing on October 16, 2019, the parties agreed that they would stipulate to a statement that the court will read to the jury that will disclose the fact of the Settlement Agreement, the parties to the Settlement Agreement, and the date of the Settlement Agreement. The parties shall file this stipulation with the court on or before noon on October 21, 2019. The

Case No.: 5:16-cv-06370-EJD
SECOND ORDER RE MOTIONS IN LIMINE AND OTHER PRETRIAL MOTIONS
5

purpose of this statement is to prevent and/or cure any juror confusion as to why the Synta Entities are not at trial.

Before the court, Defendants largely abandoned their position that the court should admit almost all of the Settlement Agreement, in addition to the Supply Agreement. Instead, they argue that the Supply Agreement—specifically section 4—should be admitted. Orion contends that the Supply Agreement cannot escape the gravitational pull of Rule 408. Rule 408 provides:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Defendants seek to introduce the Supply Agreement as evidence showing that the alleged conspiracy between them and the Synta Entities ended on its effective date because the Supply Agreement provides for Orion to purchase telescopes directly from the Synta Entities at "Most Favored Customer Pricing," as detailed in Section 4 of the Supply Agreement.

Defendants argue that the Supply Agreement does not fall within the scope of Rule 408 because it is a forward-looking business contract. This is a close issue, but after thoughtful consideration, the court agrees with Defendants. The Supply Agreement does not fall within the scope of the plain text of Rule 408. The Settlement Agreement and the Supply Agreement are separate documents. The Settlement Agreement was executed by ten separate entities, while the Supply Agreement applies only to Orion, Suzhou Synta Optical Technology Co. Ltd., and Nantong Schmidt Opto-Electrical Technology Co. Ltd. *Compare* Ex. A at 11-13 *with* Ex. B. at 18. The Supply Agreement, standing alone, is only a business document. It makes no reference to the Settlement Agreement, nor any legal threats or disputes between the Synta Entities and Orion. Admitting the Supply Agreement therefore would not be admitting "[e]vidence of . . . furnishing,

Case No.: 5:16-cv-06370-EJD
SECOND ORDER RE MOTIONS IN LIMINE AND OTHER PRETRIAL MOTIONS
6

promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration *in compromising or attempting to compromise the claim*." Fed. R. Evid. 408(a)(1) (emphasis added); *cf. Union Carbide Corp. v. Montell N.V.*, 28 F. Supp. 2d 833, 841 (S.D.N.Y. 1998) (finding Rule 408 did not apply because, in part, "[s]uch discussions and documents comprised business communications rather than settlement negotiations."). Orion contends that the Settlement Agreement incorporates the Supply Agreement so that "the execution and performance" of the Supply Agreement is a "material term and condition" of the Settlement Agreement and is "consideration to Orion." Ex. A at 1. But that provision *of the Settlement Agreement* neither transforms the *Supply Agreement* into evidence of the compromise, nor integrates the two documents to the extent that they are inseparable. The jury may consider the Supply Agreement as part of the business relationship between Orion and the Synta Entities—which existed prior to the Settlement Agreement—without it acting as evidence of the compromise between Orion and the Synta Entities.

Moreover and as discussed before the court, the practicalities of excluding the Supply Agreement weigh in favor of its admission. Orion agreed that, should the Supply Agreement be excluded, it would be "fair" for Defendants to question Orion's witnesses as to the historical prices—and any changes thereof—that Orion has paid for telescopes from the Synta Entities—both before and after the execution of the Settlement and Supply Agreements. Orion also agreed that Defendants would be free to admit any pricing documents that are outside of the Settlement Agreement. Defendants argued that Orion's witnesses may testify that they do not remember the details of Orion's pricing and business relationship with the Synta Entities, to which the court observed that Defendants would be able to use the Supply Agreement to refresh their memories without introducing it as evidence. This convoluted process would raise form over substance and would likely confuse the jury.

The court finds that Rule 408 does not bar the introduction of the Supply Agreement as evidence of the historical business relationship between Orion and the Synta Entities. The court, though, finds that Defendants have not presented a permissible reason for introducing the Settlement Agreement or any other evidence of the compromise between Orion and the Synta

Case No.: 5:16-cv-06370-EJD
SECOND ORDER RE MOTIONS IN LIMINE AND OTHER PRETRIAL MOTIONS
7

Entities. The parties shall meet and confer as directed above.

**IT IS SO ORDERED.**

Dated: October 17, 2019

_____
EDWARD J. DAVILA
United States District Judge