**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

OPTRONIC TECHNOLOGIES, INC., d/b/a
Orion Telescopes & Binoculars ®, a California
corporation,

        Plaintiff,

        v.

NINGBO SUNNY ELECTRONIC CO., LTD.,
SUNNY OPTICS, INC., MEADE
INSTRUMENTS CORP., and DOES 1 - 25,

        Defendant.

Case No: 5:16-cv-06370-EJD-VKD

**FINAL JURY INSTRUCTIONS**

DATED: November 22, 2019

EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE
NORTHERN DISTICT OF CALIFORNIA

# **TABLE OF CONTENTS**

I. GENERAL JURY INSTRUCTIONS ................................................................................ 1

    1.    INSTRUCTION NO. 1: DUTY OF JURY ...................................... 2

    2.    INSTRUCTION NO. 2: STATEMENT OF THE CASE ................................. 3

    3.    INSTRUCTION NO. 3: BURDEN OF PROOF—PREPONDERANCE OF
THE EVIDENCE ................................................................................. 4

    4.    INSTRUCTION NO. 4: WHAT IS EVIDENCE ................................. 5

    5.    INSTRUCTION NO. 5: WHAT IS NOT EVIDENCE .................................... 6

    6.    INSTRUCTION NO. 6: DIRECT AND CIRCUMSTANTIAL EVIDENCE . 7

    7.    INSTRUCTION NO. 7: RULING ON OBJECTIONS .................................... 8

    8.    INSTRUCTION NO. 8: CREDIBILITY OF WITNESSES .......................... 9

    9.    INSTRUCTION NO. 9: JUDICIAL NOTICE ................................................. 10

    10.    INSTRUCTION NO. 10: FOREIGN LANGUAGE TESTIMONY .............. 11

    11.    INSTRUCTION NO. 11: IMPEACHMENT EVIDENCE ............................ 12

    12.    INSTRUCTION NO. 12: USE OF INTERROGATORIES ........................... 13

    13.    INSTRUCTION NO. 13: USE OF REQUESTS FOR ADMISSION ........... 14

    14.    INSTRUCTION NO. 14: CHARTS AND SUMMARIES NOT RECEIVED IN
EVIDENCE ........................................................................................ 15

    15.    INSTRUCTION NO. 15: CHARTS AND SUMMARIES RECEIVED IN
EVIDENCE ........................................................................................ 16

    16.    INSTRUCTION NO. 16: EVIDENCE IN ELECTRONIC FORMAT ......... 17

    17.    INSTRUCTION NO. 17: CORPORATIONS ................................................ 18

II. ANTITRUST JURY INSTRUCTIONS ........................................................................ 19

    1.    INSTRUCTION NO. 18: ANTITRUST LAWS—PURPOSE ............ 20

    2.    INSTRUCTION NO. 19: PARENT COMPANIES AND
SUBSIDIARIES ........................................................................ 21

    A.    SHERMAN ACT SECTION 1: PRICE-FIXING ........................................... 23

1      1.     **INSTRUCTION NO. 20: PRICE-FIXING—GENERAL ELEMENTS24**

2      2.     **INSTRUCTION NO. 21: CONSPIRACY—DEFINITION,**

3          **EXISTENCE, AND EVIDENCE** ........................................................ **26**

4      3.     **INSTRUCTION NO. 22: CONSPIRACY—PARTICIPATION AND**

5          **INTENT** ............................................................................................. **28**

6      4.     **INSTRUCTION NO. 23: INTERSTATE COMMERCE** ................... **30**

7      5.     **INSTRUCTION NO. 24: GOOD INTENT NOT A DEFENSE** ........ **31**

8      6.     **INSTRUCTION NO. 25: REASONABLENESS OF PRICES NO**

9          **EXCUSE** ............................................................................................. **32**

10     7.     **INSTRUCTION NO. 26: EVIDENCE OF COMPETITION**............ **33**

11     8.     **INSTRUCTION NO. 27: EVIDENCE OF PRICE CHARGED** ........ **34**

12     9.     **INSTRUCTION NO. 28: EVIDENCE OF SIMILARITY** ................. **35**

13     10.    **INSTRUCTION NO. 29: EVIDENCE OF EXCHANGE OF PRICE**

14         **INFORMATION**.................................................................................. **36**

15   B.     **SHERMAN ACT SECTION 1: MARKET ALLOCATION**.......................... 37

16     1.     **INSTRUCTION NO. 30: ALLOCATION OF CUSTOMERS**........... **38**

17     2.     **INSTRUCTION NO. 31: ALLOCATION OF PRODUCT MARKETS39**

18     3.     **INSTRUCTION NO. 32: EXISTENCE AND ELEMENTS OF**

19         **CONSPIRACY** ................................................................................... **41**

20   C.     **SHERMAN ACT SECTION 1: VERTICAL/RULE OF REASON ANALYSIS**

21       .................................................................................................................... 42

22     1.     **INSTRUCTION NO. 33: RESTRAINTS OF TRADE AMONGST NON-**

23         **COMPETITORS** ............................................................................... **43**

24     2.     **INSTRUCTION NO. 34: COMMUNICATIONS BETWEEN**

25         **SUPPLIERS AND DISTRIBUTORS** ............................................. **45**

26   D.     **SHERMAN ACT SECTION 2: ATTEMPTED MONOPOLIZATION** ....... 46

27     1.     **INSTRUCTION NO. 35: ATTEMPTED MONOPOLIZATION—**

28         **ELEMENTS** ....................................................................................... **47**

2.     **INSTRUCTION NO. 36: ATTEMPTED MONOPOLIZATION— ANTICOMPETITIVE CONDUCT** ........................................................ **48**

3.     **INSTRUCTION NO. 37: ATTEMPTED MONOPOLIZATION— SPECIFIC INTENT** ........................................................................... **50**

4.     **INSTRUCTION NO. 38: ATTEMPTED MONOPOLIZATION— RELEVANT MARKET** ....................................................................... **51**

5.     **INSTRUCTION NO. 39: ATTEMPTED MONOPOLIZATION— SPECIFIC INTENT** ........................................................................... **53**

6.     **INSTRUCTION NO. 40: ATTEMPTED MONOPOLIZATION— DANGEROUS PROBABILITY OF SUCCESS** ................................ **54**

**E.**     **SHERMAN ACT SECTION 2: CONSPIRACY TO MONOPOLIZE** .......... 55

1.     **INSTRUCTION NO. 41: CONSPIRACY TO MONOPOLIZE— ELEMENTS** ............................................................................... 56

2.     **INSTRUCTION NO. 42: CONSPIRACY TO MONOPOLIZE— EXISTENCE OF CONSPIRACY** ................................................. 57

3.     **INSTRUCTION NO. 43: CONSPIRACY TO MONOPOLIZE— RELEVANT MARKET** ....................................................................... 58

**F.**     **CLAYTON ACT** ................................................................................... 59

1.     **INSTRUCTION NO. 44: CLAYTON ACT—THE COMPLAINT AND THE STATUTE** ..................................................................... 60

2.     **INSTRUCTION NO. 45: CLAYTON ACT—ELEMENTS OF THE OFFENSE** ............................................................................... 61

3.     **INSTRUCTION NO. 46: VIOLATION OF SECTION 7 OF THE CLAYTON ACT** .................................................................... 62

4.     **INSTRUCTION NO. 47: CLAYTON ACT—RELEVANT MARKET** 63

5.     **INSTRUCTION NO. 48: CLAYTON ACT—EFFECT OF ACQUISITION** ......................................................................... 64

**G.**     **INJURY AND DAMAGES** ................................................................. 65

1     **1.**     **INSTRUCTION NO. 49: INJURY AND CAUSATION** .................... 66

2     **2.**     **INSTRUCTION NO. 50: BUSINESS OR PROPERTY** .................... 68

3     **3.**     **INSTRUCTION NO. 51: ANTITRUST DAMAGES—**

4               **INTRODUCTION AND PURPOSE** ...................................................... 69

5     **4.**     **INSTRUCTION NO. 52: JOINT AND SEVERAL LIABILITY** ....... 70

6     **5.**     **INSTRUCTION NO. 53: BASIS FOR CALCULATING DAMAGES** 71

7     **6.**     **INSTRUCTION NO. 54: CAUSATION AND DISAGGREGATION** 72

8     **7.**     **INSTRUCTION NO. 55: DAMAGES FOR PURCHASERS** ............ 73

9     **8.**     **INSTRUCTION NO. 56: DAMAGES FOR COMPETITORS-LOST**

10               **PROFITS** ............................................................................................. 74

11   **III. FINAL INSTRUCTIONS** .................................................................... 75

12     **1.**     **INSTRUCTION NO. 57: DUTY TO DELIBERATE** .................... 76

13     **2.**     **INSTRUCTION NO. 58: CONSIDERATION OF EVIDENCE—CONDUCT**

14               **OF THE JURY** ................................................................................... 77

15     **3.**     **INSTRUCTION NO. 59: COMMUNICATION WITH COURT** ................. 79

16     **4.**     **INSTRUCTION NO. 60: RETURN OF VERDICT** ....................................... 80

# I.  GENERAL JURY INSTRUCTIONS

**<u>INSTRUCTION NO. 1:</u>**

**<u>DUTY OF JURY</u>**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

1
2

**INSTRUCTION NO. 2:**

**STATEMENT OF THE CASE**

3   This is a civil antitrust case about telescopes. The antitrust laws are intended to preserve fair

4   competition and to prohibit businesses from agreeing to manipulate the price of goods and services

5   or from engaging in other acts that unreasonably restrain trade or that unlawfully monopolize a

6   market. Antitrust cases, such as this one, can be brought by private parties seeking to recover for

7   the harm to their business.

8   The Plaintiff in this case is Optronic Technologies, Inc., also known as Orion. Orion sells

9   and distributes its Orion-branded telescopes, which are manufactured by third parties.

10   The Defendants in this case are a telescope manufacturer, Ningbo Sunny Electronic Co.,

11   Ltd., and its wholly-owned subsidiaries Sunny Optics, Inc. and Meade Instruments, Inc. Orion

12   claims that Defendants are a leading telescope manufacturer that conspired with another telescope

13   manufacturer to take over the market and to fix the prices and credit terms that Orion paid for

14   telescopes. Orion contends that these actions damaged its business and trade.

15   Defendants deny that they committed any of these violations and deny that Orion suffered

16   any injury.

17
18
19
20
21
22
23
24
25
26
27
28

1

**INSTRUCTION NO. 3:**

2

**BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

3

When a party has the burden of proving any claim by a preponderance of the evidence, it

4

means you must be persuaded by the evidence that the claim is more probably true than not true.

5

You should base your decision on all of the evidence, regardless of which party presented

6

it.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INSTRUCTION NO. 4:**

2

**WHAT IS EVIDENCE**

3

The evidence you are to consider in deciding what the facts are consists of:

4

1.      the sworn testimony of any witness;

5

2.      the exhibits that are admitted into evidence;

6

3.      any facts to which the lawyers have agreed; and

7

4.      any facts that I may instruct you to accept as proved.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 5:**

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)      Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)      Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)      Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)      Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INSTRUCTION NO. 6:**

## **DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

## **INSTRUCTION NO. 7:**

## **RULING ON OBJECTIONS**

There are rules of evidence that controlled what was received into evidence. When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer may have objected. If I overruled the objection, the question was answered or the exhibit received. If I sustained the objection, the question could not be answered, and the exhibit could not be received. Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I ordered that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

1

## INSTRUCTION NO. 8:

2

## CREDIBILITY OF WITNESSES

3          In deciding the facts in this case, you may have to decide which testimony to believe and

4    which testimony not to believe. You may believe everything a witness says, or part of it, or none of

5    it.

6          In considering the testimony of any witness, you may take into account:

7          (1)     the opportunity and ability of the witness to see or hear or know the things testified

8    to;

9          (2)     the witness's memory;

10         (3)     the witness's manner while testifying;

11         (4)     the witness's interest in the outcome of the case, if any;

12         (5)     the witness's bias or prejudice, if any;

13         (6)     whether other evidence contradicted the witness's testimony;

14         (7)     the reasonableness of the witness's testimony in light of all the evidence; and

15         (8)     any other factors that bear on believability.

16         Sometimes a witness may say something that is not consistent with something else he or she

17   said. Sometimes different witnesses will give different versions of what happened.  People often

18   forget things or make mistakes in what they remember.  Also, two people may see the same event

19   but remember it differently.  You may consider these differences, but do not decide that testimony

20   is untrue just because it differs from other testimony.

21         However, if you decide that a witness has deliberately testified untruthfully about

22   something important, you may choose not to believe anything that witness said.  On the other hand,

23   if you think the witness testified untruthfully about some things but told the truth about others, you

24   may accept the part you think is true and ignore the rest.

25         The weight of the evidence as to a fact does not necessarily depend on the number of

26   witnesses who testify.  What is important is how believable the witnesses were, and how much

27   weight you think their testimony deserves.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 9:**

**JUDICIAL NOTICE**

The court has decided to accept as proved the fact that the Houston Rockets played the Los Angeles Lakers at the STAPLES Center on January 17th, 2016. You must accept this fact as true.

1

2

**INSTRUCTION NO. 10:**

**FOREIGN LANGUAGE TESTIMONY**

3      You have heard testimony of witnesses who testified in the Mandarin Chinese language.

4   Witnesses who do not speak English or are more proficient in another language testify through an

5   official court interpreter. Although some of you may know the Mandarin Chinese language, it is

6   important that all jurors consider the same evidence. Therefore, you must accept the interpreter's

7   translation of the witness's testimony. You must disregard any different meaning.

8      You must not make any assumptions about a witness or a party based solely on the use of

9   an interpreter to assist that witness or party.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 11:**

**IMPEACHMENT EVIDENCE**

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INSTRUCTION NO. 12:**

## **USE OF INTERROGATORIES**

Evidence was admitted in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**INSTRUCTION NO. 13:**

**USE OF REQUESTS FOR ADMISSION**

Evidence was admitted in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

## INSTRUCTION NO. 14:

## CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 15:**

**CHARTS AND SUMMARIES RECEIVED IN EVIDENCE**

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**INSTRUCTION NO. 16:**

**EVIDENCE IN ELECTRONIC FORMAT**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the clerk. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the clerk, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the clerk present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

**INSTRUCTION NO. 17:**

**CORPORATIONS**

Under the law, a corporation is a person, but it acts only through its agents. A corporation's agents include its directors, officers, employees, or others acting on its behalf. A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries. Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.

Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties the agent has general authority to perform. Apparent authority is the authority that persons outside the corporation could reasonably believe the agent would have, judging from his or her position with the company, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct. An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, or anticompetitive manner.

To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment with apparent authority.

The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.

A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence. All persons, including corporations, are equal before the law.

1

## II. ANTITRUST JURY INSTRUCTIONS

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INSTRUCTION NO. 18:

## ANTITRUST LAWS—PURPOSE

The purpose of the antitrust laws at issue in this case (the Sherman Act and Clayton Act) is to preserve free and unfettered competition in the marketplace. The antitrust laws rest on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

1

**INSTRUCTION NO. 19:**

2

**PARENT COMPANIES AND SUBSIDIARIES**

3        Subsidiaries and their parent companies are considered a single entity for antitrust purposes

4   when they engage in "coordinated activity."  Coordinated activity occurs where the parent and

5   subsidiary act together in furtherance of the same anticompetitive scheme.  If you first find that

6   coordinated activity in furtherance of the same price-fixing scheme is established, then Orion does

7   not need to prove that each specific Defendant independently satisfied each element of a claim in

8   order to prevail on that claim as to those Defendants.  However, if you find that a subsidiary and its

9   parent company have acted independently of each other, then you cannot find them liable for each

10   other's independent conduct.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL JURY INSTRUCTIONS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A.      **SHERMAN ACT SECTION 1: PRICE-FIXING**

**INSTRUCTION NO. 20:**

**PRICE-FIXING—GENERAL ELEMENTS**

Orion claims that it was injured because Defendants conspired to fix the prices and credit terms for telescopes and accessories.

Under the Sherman Act, it is illegal for competitors, regardless of their size or amount of sales, to agree on the prices or credit terms to be charged for their competing products.

An agreement between competing firms can violate this rule even if there is not an agreement on the exact price to be charged. For example, it is illegal for competing companies to agree on maximum or minimum prices, a range within which prices will fall, a formula to set prices, or a component of prices, such as a shipping charge or an interest rate.

It is also illegal for competitors to agree on a plan or scheme that will tend to stabilize prices.  Orion alleges that Defendants and  third parties  that Orion contends are owned or controlled by David Shen ("the Alleged Synta Entities") conspired to acquire Meade, shared sensitive price and cost information with one another, shared Orion's order volume and price history from Sunny, and forced Orion to purchase Sunny telescopes through the Alleged Synta Entities, all in order to fix prices and advantage Sunny and Synta, along with their wholly owned subsidiaries Meade and Celestron.  Defendants deny all of these allegations.

Any agreement among competitors to set a specific price, to maintain a floor under prices, to increase the stability or firmness of prices, to establish a minimum or maximum price, to eliminate or limit discounts, to establish a fixed spread between the prices of different sellers, to establish a fixed spread between wholesale and retail prices, to establish fixed markups or profit margins, to stabilize prices, or to set credit terms or other conditions of sale relating to price is illegal.

To prevail against a defendant on a price-fixing claim, plaintiff must prove, as to that particular defendant, each of the following elements by a preponderance of the evidence:

(1)     that an agreement to fix the prices of telescopes and accessories existed;

(2)     that defendant knowingly—that is, voluntarily and intentionally—became a party to that agreement;

1  (3)   that such agreement occurred in or affected interstate or foreign commerce; and

2  (4)   that the agreement caused plaintiff to suffer an injury to its business or property.

3  If you find that the evidence is insufficient to prove any one or more of these elements as to

4  Defendants, then you must find for Defendants and against Orion on Orion's price-fixing claim. If

5  you find that the evidence is sufficient to prove all four elements as to Defendants, then you must

6  find for Orion and against Defendants on Orion's price-fixing claim.

**INSTRUCTION NO. 21:**

**CONSPIRACY—DEFINITION, EXISTENCE, AND EVIDENCE**

Orion alleges that Defendants participated in a conspiracy to restrain trade by agreeing with competitors to set prices, divide the market, and attempt to monopolize the telescope and accessories manufacturing market.  A conspiracy is an agreement or understanding between two or more persons to restrain trade in the ways alleged by Orion.

Orion must prove both of the following elements by a preponderance of the evidence:

(1)     that the alleged conspiracy existed; and

(2)     that Defendants knowingly became a member of that conspiracy. To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

The basis of a conspiracy is an agreement or understanding between two or more persons. An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time such as where competitors separately accept invitations to participate in a plan to restrain trade. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by plaintiff were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members. It is the agreement or

1  understanding to restrain trade in the way alleged by Orion that constitutes a conspiracy. Therefore,
2  you may find a conspiracy existed regardless of whether it succeeded or failed.

3      Orion may prove the existence of the alleged conspiracy through direct evidence,
4  circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish
5  the existence of the alleged conspiracy.

6      Direct evidence of an agreement may not be available, and therefore a conspiracy also may
7  be shown through circumstantial evidence. You may infer the existence of a conspiracy from the
8  circumstances, including what you find the alleged members actually did and the words they used.
9  Mere similarity of conduct among various persons, however, or the fact that they may have
10 associated with one another and may have met or assembled together, does not by itself establish
11 the existence of a conspiracy. If they acted similarly but independently of one another, without any
12 agreement among them, then there would not be a conspiracy.

13      It is not necessary for a plaintiff to name as a defendant every person whom he claims
14 participated in the unlawful agreement or conspiracy. A plaintiff injured by such an agreement may
15 recover against one or all who participated. He may enforce his right of recovery against one, or
16 some or all. However, in order to recover against any particular member of the conspiracy, the
17 plaintiff must name that member as a defendant.

18      It does not matter that Orion did not join as a defendant someone who may have
19 participated in causing the injury Orion claims. This is true even if it appears that the role of the
20 unnamed participant may have been greater than that of those Orion did name as defendants.

21      In determining whether an agreement or understanding between two or more persons has
22 been proved, you must view the evidence as a whole and not piecemeal.

23
24
25
26
27
28

**INSTRUCTION NO. 22:**

**CONSPIRACY—PARTICIPATION AND INTENT**

Before you can find that Defendants were a member of the conspiracy alleged by plaintiff, the evidence must show that Defendants knowingly joined in the unlawful plan at its inception, or at some later time, with the intent to further the purpose of the conspiracy.

To act knowingly means to participate deliberately and not because of mistake, accident, or other innocent reason. A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played. Knowledge of the essential nature of the plan is enough. On the other hand, a person who has no knowledge of a conspiracy, but happens to act in a way that helps the conspiracy succeed, does not thereby become a conspirator.

A person who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he or she had been one of those who formed or began the conspiracy and participated in every part of it.

In determining whether a defendant was a member of the alleged conspiracy, you should consider only the evidence about that particular defendant's statements and conduct, including any evidence of that defendant's knowledge and participation in the events involved and any other evidence of that particular defendant's participation in the conspiracy alleged.

You may not find that a defendant was a member of a conspiracy based only on its association with or knowledge of wrongdoing, but it is a factor you may consider to determine whether a defendant was a member of the alleged conspiracy.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy.

Once you have found that a defendant is a member of a conspiracy, he, she, or it is presumed to remain a member and is responsible for all actions taken by all coconspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned or that the person has withdrawn from the conspiracy. Although a defendant who was a

member of a conspiracy may withdraw from and abandon the conspiracy, that defendant is still liable with all other coconspirators for any illegal acts committed by that defendant or by any coconspirator while that defendant was a member of the conspiracy up until the time of that defendant's withdrawal from the conspiracy

1

## INSTRUCTION NO. 23:

2

## INTERSTATE COMMERCE

3      The Sherman Act applies only to conduct or restraints that affect interstate or foreign

4  commerce. This element is not in dispute in this case, and I instruct you that Orion has satisfied this

5  element of its claims.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## INSTRUCTION NO. 24:

2

## GOOD INTENT NOT A DEFENSE

3       If you find that Defendants engaged in a price-fixing conspiracy, it is not a defense that

4   Defendants acted with good motives, thought its conduct was legal, or that the conduct may

5   have had some good results.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3
## INSTRUCTION NO. 25:

4
## REASONABLENESS OF PRICES NO EXCUSE

5
The Sherman Act prohibits agreements among competitors to fix prices, regardless of

6
whether the agreed-upon prices are reasonable. Therefore, if you find that a price-fixing conspiracy

7
existed, it does not matter whether the prices agreed upon were high or low or reasonable or

8
unreasonable.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INSTRUCTION NO. 26:

## EVIDENCE OF COMPETITION

Evidence that Defendants actually engaged in price competition with the Alleged Synta Entities in some manner has been admitted to assist you in deciding whether they entered into the alleged conspiracy to fix the prices and credit terms of telescopes and accessories.  If you find that such a conspiracy existed, it is no defense that Defendants actually competed in some respects with their competitors or failed to eliminate all competition between them. Similarly, a price-fixing conspiracy is unlawful even if it did not extend to all products sold by Defendants or did not affect all of their customers or transactions.

1

2

## INSTRUCTION NO. 27:

## EVIDENCE OF PRICE CHARGED

3

4

Evidence of the prices actually charged by Defendants for telescopes and accessories has

5 been admitted to assist you in deciding whether they agreed to fix prices, as claimed by plaintiffs.

6 Such evidence may lead you to conclude that Defendants never entered into the alleged price-fixing

7 conspiracy. Or it may lead you to conclude that Defendants made an agreement but undercut one

8 another, offered prices different from those agreed upon to certain customers, or at certain times

9 failed to live up to the agreement. If you find that Defendants agreed to fix prices, the fact that they

10 did not stick to their agreement on every occasion or for every customer is not a defense.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 28:**

**EVIDENCE OF SIMILARITY**

In support of its allegation of a conspiracy, plaintiff has alleged that defendants agreed to fix prices and credit terms of telescopes and accessories.  Evidence that Defendants may have charged identical prices for the same goods, or engaged in identical or similar business practices, does not alone establish an agreement to fix prices. Such practices may be consistent with lawful, ordinary, and proper competitive behavior in a free and open market.

The Sherman Act prohibits conspiracies between two or more competitors to fix prices. It does not prohibit independent behavior even if such behavior is similar or identical to that of competitors; such behavior may be no more than the result of the exercise of independent judgment in response to identical or similar market conditions. Thus, a defendant may charge prices identical to those charged by its competitors without violating the Sherman Act. A defendant may even copy the prices of a competitor or follow and conform exactly to the price policies and price changes of its competitors. Likewise, a defendant does not violate the Sherman Act by taking some action in the hope or belief that its competitors will follow, so long as it has not reached an agreement with its competitors. Parallel conduct, without more, does not violate the law.

You should consider all of the evidence as a whole in determining whether any similarity or identity of prices or conduct resulted from the independent business judgment of the individual defendants freely competing in the open market, or whether it resulted from an agreement between two or more of them.

**INSTRUCTION NO. 29:**

**EVIDENCE OF EXCHANGE OF PRICE INFORMATION**

Evidence has been introduced concerning the exchange of information among defendants and other persons about their prices for telescope and accessories.  Plaintiff has alleged that such exchanges were made in furtherance of a conspiracy to fix prices.

The fact that Defendants exchanged price information does not necessarily establish an agreement to fix prices. There may be other, legitimate reasons that would lead competitors to exchange price information, and the law recognizes that exchanges of price information may enhance competition and benefit consumers. On the other hand, if you find that price information was exchanged and that defendants offer no reasonable explanation as to why they were exchanging that information, you may consider whether it was being exchanged as part of an agreement to fix prices, along with all of the other evidence bearing on whether there was an agreement to fix prices.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.**     <u>SHERMAN ACT SECTION 1: MARKET ALLOCATION</u>

## INSTRUCTION NO. 30:

## ALLOCATION OF CUSTOMERS

Orion claims that Defendants and the Alleged Synta Entities violated the Sherman Act by agreeing to allocate customers for whom they would otherwise have competed. Allocate means to divide up.

A business has the right to select its customers on its own and to sell its products to whomever it chooses. Likewise, a business has no legal obligation to sell to a particular customer. A business may decide not to solicit or sell to a customer, provided the decision is an independent judgment. A business may not, however, agree with its competitors to allocate customers.

A conspiracy to allocate customers is an agreement between two or more competitors not to compete with one another for the business of particular customers. Customer allocation exists, for example, where two or more competitors agree that they will not sell or try to sell to one another's existing customers or to certain customers by some other, agreed-upon criteria.

To prevail on this claim against a defendant, Orion must prove, as to that defendant, each of the following elements by a preponderance of the evidence:

(1)     Defendants agreed with a competitor or potential competitor to divide business between them or refrain from bidding on business from potential customers;

(2)     the agreement occurred in or affected interstate or foreign commerce; and

(3)     plaintiff was injured in its business or property because of the agreement.

If you find that the evidence is insufficient to prove any one or more of these elements as to Defendants, then you must find for Defendants and against Orion on Orion's customer allocation claim.
.

**INSTRUCTION NO. 31:**

**ALLOCATION OF PRODUCT MARKETS**

Orion claims that Defendants and the Alleged Synta Entities are competitors or potential competitors and have violated the Sherman Act by agreeing to allocate product markets between themselves. Allocate means to limit, divide up, or not to compete.

A business has the right to select on its own the products that it will manufacture or sell. Likewise, a business may decide not to make or sell a product, provided that the decision results from the exercise of an independent business judgment and not from any agreement with a competitor. The Sherman Act, however, prohibits agreements between competitors or potential competitors that allocate product markets.

A conspiracy to allocate product markets is an agreement between two or more competitors to agree not to compete in making or selling a product that they would have otherwise competed in making or selling. By way of example, this includes an agreement by two or more competitors that a product sold by one of them will not be sold by the other, to confine their manufacturing efforts to particular or different products, or to require one to discontinue sales or production of a product that the other will continue to sell.

To prevail on this claim against a defendant, Orion must prove, as to that defendant, each of the following elements by a preponderance of the evidence:

(1)     Defendants are or were competitors or potential competitors with another person;

(2)     Defendants and a competitor or potential competitor entered into an agreement;

(3)     Defendants and a competitor or potential competitor agreed they would not compete with each other in the manufacture or sale of a product by refraining from manufacturing competing telescopes and accessories;

(4)     the agreement occurred in or affected interstate or foreign commerce; and

(5)     Orion was injured in its business or property because of the agreement.

If you find that the evidence is insufficient to prove any one or more of these elements as to Defendants, then you must find for Defendants and against Orion on Orion's product market allocation claim. If you find that the evidence is sufficient to prove all five elements as to that

1  defendant, then you must find for plaintiff and against that defendant on plaintiff's product market

2  allocation claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 32:

## EXISTENCE AND ELEMENTS OF CONSPIRACY

The instructions I read you previously regarding the existence and formation of a price-fixing conspiracy under Section 1 of the Sherman Act apply equally to Orion's claim of market allocation conspiracy under Section 1 of the Sherman Act.

**C.** <u>**SHERMAN ACT SECTION 1: VERTICAL/RULE OF REASON ANALYSIS**</u>

**INSTRUCTION NO. 33:**

**RESTRAINTS OF TRADE AMONGST NON-COMPETITORS**

If you find that Defendants and the Alleged Synta Entities were not competitors, but rather occupied different levels on the same line of production and distribution, then you must examine all of the facts and circumstances of the case in order to determine whether the market allocation or fixing of price or credit terms complained of was an unreasonable restraint of trade. Bear in mind that in making this determination, you should focus on the effect of the challenged market allocation on the overall competition in the relevant market-not the effect on the plaintiff alone.

As common sense would tell you, antitrust law does not prohibit every business agreement which affects trade or every agreement which may restrain or influence competition. The antitrust laws prohibits only unreasonable restraints of trade. The goal of the antitrust laws is to prevent restraints of trade which tend, or are intended, to control prices, to restrict production, or otherwise affect or control the market so as to deprive purchasers and consumers of the benefits of free and open competition.

No one factor of control should dictate your determination whether the challenged agreement is an unreasonable restraint of trade. You should consider all the facts and circumstances relating to the agreement's impact on competition.

You should consider the nature of the agreement, its actual immediate effect, and its probable future effect. You should consider the history of the agreement and the context in which it was entered into. You should also consider the nature of the particular industry in which the agreement was made, and the condition of that industry both before and after the agreement.

You should consider the purpose of the agreement and the reasons why it was made. The fact that the defendants had a good motive or sound business purpose for making the agreement does not prevent you from finding that the agreement was an unreasonable restraint of trade. But examining the purpose of the agreement may assist you in determining the effects of the agreement on competition.

You should consider the relative size and economic strength of the defendants in the market. If you find that the defendants, separately or together, possessed monopoly power, then any

1  action taken by them for the purpose or with the probable effect of excluding competition, gaining

2  a competitive advantage or destroying a competitor would be an unreasonable restraint of trade.

3       You should also consider the duration of the agreement. An agreement may restrain trade

4  somewhat—but not unreasonably—if it lasts for some reasonable period, but the agreement may

5  become unreasonable if it lasts for an unreasonable time.

6       You may also consider the total effect of similar agreements. The restraining effect of one

7  agreement may not be unreasonable; but if there are several similar agreements each of which has a

8  somewhat restrictive effect on competition, their total effect may be an unreasonable restraint of

9  trade.

10      If, after considering all these facts and circumstances, you find that the agreement does

11  impose some unreasonable restraint on competition, you should then determine whether the

12  agreement has any positive or pro-competitive effects on competition. If you find that it does, then

13  your final determination whether the agreement is an unreasonable restraint of trade must be made

14  by balancing its restrictive or anti-competitive effects against its pro-competitive effects.  If the

15  anti-competitive effects of the agreement outweigh its pro-competitive effects, then you should find

16  that the agreement is an unreasonable restraint of trade.

17

18

19

20

21

22

23

24

25

26

27

28

1      **INSTRUCTION NO. 34:**

2      **COMMUNICATIONS BETWEEN SUPPLIERS AND DISTRIBUTORS**

3      The fact that a supplier and its distributors speak or write frequently about resale prices,

4  credit terms, or product markets does not, by itself, show that there is an agreement between the

5  supplier and the distributors regarding resale prices, credit terms, or product markets. A supplier

6  and its distributor have legitimate reasons to exchange information about prices, credit terms, and

7  how their products are doing in the market. For instance, a distributor can tell the supplier how

8  customers are reacting to the price of the product. Similarly, the supplier may discuss resale prices

9  with its distributors because the supplier has a legitimate interest in ensuring that its distributors

10  earn sufficient profit to pay for the sales and market support that they provide for the supplier's

11  products. You may not infer an agreement between a supplier and a distributor to fix resale prices

12  or credit terms, or allocate product markets solely from the fact that they discussed resale prices,

13  credit terms, or product markets.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.** <u>**SHERMAN ACT SECTION 2: ATTEMPTED MONOPOLIZATION**</u>

**INSTRUCTION NO. 35:**

**ATTEMPTED MONOPOLIZATION—ELEMENTS**

Plaintiff alleges that it was injured by Defendants' unlawful attempt to monopolize the market for telescope and accessory manufacturing services. To prevail on its claim of attempted monopolization, plaintiff must prove each of the following elements by a preponderance of the evidence:

(1)     Defendants engaged in anticompetitive conduct;

(2)     Defendants had a specific intent to achieve monopoly power in a relevant market;

(3)     there was a dangerous probability that defendant would achieve its goal of monopoly power in the relevant market;

(4)     Defendants' conduct occurred in or affected interstate or foreign commerce; and

(5)     Orion was injured in its business or property by Defendants' anticompetitive conduct.

If you find that the evidence is insufficient to prove any one or more of these elements, then you must find for defendant and against plaintiff on plaintiffs claim of attempted monopolization. If you find that the evidence is sufficient to prove all five elements as to defendant, then you must find for plaintiff and against defendant on plaintiffs claim of attempted monopolization.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 36:**

**ATTEMPTED MONOPOLIZATION—ANTICOMPETITIVE CONDUCT**

It is not sufficient for plaintiff to prove that defendant intended to monopolize the relevant market. Plaintiff must also show that defendant engaged in anticompetitive conduct, coupled with an intent to monopolize and a dangerous probability that defendant would succeed. Generally, a firm engages in anticompetitive conduct when it attempts to exclude rivals without an efficiency-enhancing justification for its conduct.

Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. Some examples of harm to competition include increased prices, decreased production levels, and reduced quality.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals-or the achievement of these goals-unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether defendant's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

The acts or practices used in attempting to achieve monopoly power-must represent something more than the conduct of business that is part of the normal competitive process or commercial

1  success. They must represent conduct that has made it very difficult or impossible for competitors to

2  compete and that was taken for no legitimate business reason.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INSTRUCTION NO. 37:**

2

**ATTEMPTED MONOPOLIZATION—SPECIFIC INTENT**

3      The second element that Orion must prove is that Defendants had a specific intent to

4 monopolize a relevant market. To do so, Orion must first prove that the market it is talking about—

5 the market for telescope and accessory manufacturing—is a relevant market for antitrust purposes.

6 Orion must then prove that defendant had a specific intent to monopolize that market. The court

7 will begin by instructing you on the relevant market, and the court will then discuss specific intent.

8 If Orion proves both that the market for telescope and accessory manufacturing is a relevant market

9 and that Defendants had a specific intent to monopolize that market, you must find that Orion has

10 proven this element of its attempted monopolization claim and you should consider the other

11 elements of the claim. If you find that Orion fails to prove either of these points, then you must find

12 for defendant on plaintiffs attempted monopolization claim.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 38:**

**ATTEMPTED MONOPOLIZATION—RELEVANT MARKET**

As I have told you, Orion must prove that Defendants acted with the purpose of acquiring the power to control prices or exclude competition in the relevant market. There are two aspects that must be considered in defining a relevant market: the products that are in competition, and the geographic area within which the competition takes place. For convenience, we refer to the first aspect as the relevant product market, and to the second as the relevant geographic market.

The basic idea of a relevant product market is that the products within it are reasonable substitutes from a buyer's point of view. This does not mean that products must be identical to be in the same relevant market. It means that, as a matter of practical fact and the actual behavior of buyers, the products must be reasonable substitutes for the buyer's needs.

One way you may be able to tell whether products are reasonable substitutes for each other is by considering whether changes in the price of one product have fairly direct and substantial effects upon the prices or sales of the other product. If so, the products are in the same market. You may also consider how people in the industry and the public at large view the products; whether the products have the same or similar characteristics or uses; whether the products have similar prices; whether the products are sold to similar customers; and whether they are distributed and sold by the same kinds of distributors or dealers.

In sum, to determine the relevant product market, you must decide which products compete with each other. This is a practical determination. Products do not have to be identical to be in the same relevant market, but they must be sufficiently similar in the respects I have mentioned to compete meaningfully with each other.

The other aspect of relevant market to be considered is the geographic area within which the products compete. This area of effective competition need not be of any particular size. The relevant geographic market is the area in which Defendants are constrained by competition they face from suppliers of competing products. To determine the proper geographic market, you may consider if changes in prices at one location have fairly direct or substantial effects on prices or

1   sales at other locations, and if the people in the industry and the public at large view sellers in the

2   different locations as being in competition with each other. You may also consider how readily the

3   seller can shift from selling in one location to selling in another. In addition, you may consider

4   where purchasers, as a practical matter, can buy the product; that is, whether buyers residing in one

5   location buy from the same sources as buyers residing in another location or if they find it more

6   practical or convenient to buy from local sources rather than more distant sources. In this regard,

7   you may consider whether a slight increase in prices charged by suppliers in one location would

8   cause a substantial number of purchasers to turn to more remote suppliers. To the extent that it

9   would, the relevant market may include those more remote suppliers.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 39:**

**ATTEMPTED MONOPOLIZATION—SPECIFIC INTENT**

If you find that plaintiff has proven a relevant market, you must then decide whether defendant had the specific intent to monopolize that market. In other words, you must decide if the evidence shows that defendant acted with the conscious aim of acquiring the power to control prices and to exclude or destroy competition in the relevant market.

There are several ways in which plaintiff may prove that defendant had the specific intent to monopolize. There may be evidence of direct statements of defendant's intent to obtain a monopoly in the relevant market. Such proof of specific intent may be established by documents prepared by responsible officers or employees of defendant at or about the time of the conduct in question or by testimony concerning statements made by responsible officers or employees of defendant. You must be careful, however, to distinguish between a defendant's lawful intent to compete aggressively, which may be accompanied by aggressive language, and a true intent to acquire monopoly power by using anticompetitive means.

Even if you decide that the evidence does not prove directly that defendant actually intended to obtain a monopoly, specific intent may be inferred from what defendant did.  For example, if the evidence shows that defendant lacked a legitimate business justification and the natural and probable consequence of defendant's conduct in the relevant market was to give defendant control over prices and to exclude or destroy competition, and that this was plainly foreseeable by defendant, then  you may (but are not required to) infer that defendant specifically intended to acquire monopoly power.

In this case, plaintiff argues that the conduct underlying the claim of attempt to monopolize also constitutes an unreasonable restraint of trade under Section 1 of the Sherman Act. If you find on the basis of this conduct that plaintiff has proven a substantial claim of restraint of trade under the instructions you have received pertaining to Section 1 of the Sherman Act, then you may infer from such conduct that defendant had the specific intent to achieve monopoly power.

# INSTRUCTION NO. 40:

## ATTEMPTED MONOPOLIZATION—DANGEROUS PROBABILITY OF SUCCESS

If you find that Defendants had the specific intent to achieve a monopoly and engaged in significant anticompetitive conduct, you also must determine if the evidence shows the next element of attempt to monopolize: namely, that there was a dangerous probability that Defendants would succeed in achieving monopoly power if they continued to engage in the same or similar conduct.

Monopoly power is the power to control prices, restrict output, and exclude competition in a relevant antitrust market.  More precisely, a firm has monopoly power if it can profitably raise prices substantially above the competitive level for a significant period of time.  However, possession of monopoly power, in and of itself, is not unlawful.

In determining whether there was a dangerous probability that Defendants would acquire the ability to control price in the market, you should consider such factors as:

- Defendants' market share;
- the trend in Defendants' market share;
- whether the barriers to entry into the market made it difficult for competitors to enter the market; and
- the likely effect of any anticompetitive conduct on Defendants' share of the market.

Again, the purpose of looking at these and other factors is to determine whether there was a dangerous probability that defendant would ultimately acquire monopoly power. A dangerous probability of success need not mean that success was nearly certain, but it does mean that there was a substantial and real likelihood that defendant would ultimately acquire monopoly power.

1

**E.**   **SHERMAN ACT SECTION 2: CONSPIRACY TO MONOPOLIZE**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **INSTRUCTION NO. 41:**

2    **CONSPIRACY TO MONOPOLIZE—ELEMENTS**

3        The complaint alleges a conspiracy to monopolize in violation of Section 2 of the Sherman

4    Act, which declares unlawful every conspiracy to monopolize interstate or foreign commerce.

5        To prevail against a defendant on its claim of conspiracy to monopolize, plaintiff must prove,

6    by a preponderance of the evidence as to that defendant, each of the following elements:

7            i.   two or more persons knowingly enter into an agreement or mutual understanding to

8                obtain or maintain monopoly power in the telescope and accessory manufacturing

9                market;

10          ii.   Defendants specifically intended that one of the parties to the agreement would obtain

11               or maintain monopoly power in the telescope and accessory manufacturing market;

12         iii.   Defendants committed an overt act in furtherance of the conspiracy;

13          iv.   Defendants' activities occurred in or affected interstate or foreign commerce; and

14           v.   Orion was injured in its business or property because of the conspiracy to monopolize.

15       However, Orion does not have to show that the conspiracy was successful in giving one

16   member of the conspiracy monopoly power.

17       If you find that the evidence is insufficient to prove any one or more of these elements as to

18   a defendant, then you must find for that defendant and against plaintiff on plaintiff's conspiracy to

19   monopolize claim. If you find that the evidence is sufficient to prove each element as to a defendant,

20   then you must find for plaintiff and against that defendant on plaintiff's conspiracy to monopolize

21   claim.

22

23

24

25

26

27

28

1
2
3
4
5

**INSTRUCTION NO. 42:**

**CONSPIRACY TO MONOPOLIZE—EXISTENCE OF CONSPIRACY**

The instructions I read you previously regarding the existence and formation of a conspiracy under Section 1 of the Sherman Act apply equally to Plaintiff's claim of a conspiracy to monopolize under Section 2 of the Sherman Act.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1.    **INSTRUCTION NO. 43:**

**CONSPIRACY TO MONOPOLIZE—RELEVANT MARKET**

Orion must prove by a preponderance of the evidence that Defendants conspired with the Alleged Synta Entities to obtain monopoly power in a relevant market.  The instructions I read to you previous regarding the relevant market analysis apply equally to Orion's conspiracy to monopolize claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**F.**     **<u>CLAYTON ACT</u>**

# INSTRUCTION NO. 44:

## CLAYTON ACT—THE COMPLAINT AND THE STATUTE

Orion claims that Defendant Ningbo Sunny Electronic Co., Ltd.'s and Defendant Sunny Optics, Inc.'s acquisition of Defendant Meade Instrument Corp. violated an antitrust law popularly known as the Clayton Act because it unlawfully concentrated the market for telescope manufacturing services.

Section 7 of the Clayton Act provides: "[N]o [corporation] . . . shall acquire the whole or any part of the assets of another corporation engaged also in commerce . . . where in any line of commerce . . . in any section of the country, the effect of such acquisition may be substantially to lessen competition."

1

2

3

4

5

6

7

8

9

10

11

12

13

**<u>INSTRUCTION NO. 45:</u>**

**<u>CLAYTON ACT—ELEMENTS OF THE OFFENSE</u>**

Orion seeks recovery of money damages for Defendants' alleged violation of the Clayton Act. In order to recover such damages, Orion must prove four elements by a preponderance of the evidence:

First: Defendants violated Section 7 of the Clayton Act;

Second: Orion has been injured in its business or property;

Third: the antitrust violation was the direct and proximate cause of the injury to Orion's business or property; and

Fourth: Orion has been damaged in an amount that is reasonably ascertainable in dollars and cents.

I will explain each of these elements to you.  Because Orion must show injury for all of its claims, I will explain injury and damages to you at the end of these instructions.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 46:**

**VIOLATION OF SECTION 7 OF THE CLAYTON ACT**

There are three elements involved in determining whether Defendants violated Section 7 of the Clayton Act:

(1) determination of the relevant line or lines of commerce—the relevant product market (the term "product market" includes a service market as well as a product market in which the parties compete);

(2) determination of the relevant section of the country—the relevant geographic market; and

(3) determination of the likely anticompetitive effects of the acquisition of Defendant Meade Instruments, Corp. by Defendants Ningbo Sunny Electronic Co., Ltd. and Sunny Optics, Inc. in the relevant product and geographic markets.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 47:**

**CLAYTON ACT—RELEVANT MARKET**

The instructions I read you previously regarding the relevant market element of Orion's attempted monopolization claim apply equally to Orion's Clayton Act Section 7 claim.

**INSTRUCTION NO. 48:**

**CLAYTON ACT—EFFECT OF ACQUISITION**

Having determined the relevant product market and the relevant geographic market you must decide whether the effect of the acquisition of Defendant Meade Instruments Corp. by Defendants may be substantially to lessen competition or may tend to create a monopoly in that "line of commerce" and "section of the country."

The determination of this question will establish whether or not this acquisition was a violation of Section 7 of the Clayton Act. This determination must be made in light of several factors: (1) the primary index of legality is the market share of the acquired and acquiring companies and (2) the extent of concentration in the industry. An acquisition that produces a firm controlling an undue percentage of the relevant market and resulting in a significant increase in concentration is presumptively unlawful, unless the defendants can overcome this presumption by other evidence to establish the vigor of competition or affirmative justifications in support of the acquisition.

While market shares are not determinative of legality of an acquisition, I instruct you that high market shares and significant increases in concentration may be sufficient in itself to establish a violation of Section 7. Section 7 of the Clayton Act may be violated either by showing a reasonable probability of a substantial lessening of competition in the future or by showing a substantial lessening of competition that has already occurred.

As I shall instruct you later, it is plaintiff's burden to establish that whatever injury plaintiff claims to have suffered is the direct and proximate result of such violation of law, if any, that you may find—namely, that plaintiff was injured by the actual or by the probable lessening of competition.

## G.     <u>INJURY AND DAMAGES</u>

**INSTRUCTION NO. 49:**

**INJURY AND CAUSATION**

If you find that Defendants have violated Section 1 or Section 2 of the Sherman Act, or Section 7 of the Clayton Act, then you must decide if Orion is entitled to recover damages from Defendants.

Orion is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation:

(1)    Orion was in fact injured as a result of Defendants' alleged violation of the antitrust laws;

(2)    Defendants' alleged illegal conduct was a material cause of Orion's injury; and

(3)    Orion's injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Orion to establish that it is entitled to recover damages, it must prove that it was injured as a result of Defendants' alleged violation of the antitrust laws. Proving the fact of damage does not require Orion to prove the dollar value of its injury. It requires only that Orion prove that it was in fact injured by Defendants' alleged antitrust violation. If you find that Orion has established that it was in fact injured, you may then consider the amount of Orion's damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that plaintiff has established that it was in fact injured.

Orion must also offer evidence that establishes by a preponderance of the evidence that defendant's alleged illegal conduct was a material cause of Orion's injury. This means that Orion must have proved that some damage occurred to it as a result of Defendant's alleged antitrust violation, and not some other cause.  Orion is not required to prove that Defendants' alleged antitrust violation was the sole cause of its injury; nor need Orion eliminate all other possible causes of injury. It is enough if Orion has proved that the alleged antitrust violation was a material cause of its injury.

1    Finally, Orion must establish that its injury is the type of injury that the antitrust laws were

2    intended to prevent. This is sometimes referred to as "antitrust injury." If Orion's injuries were

3    caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that

4    would otherwise harm consumers, then Orion's injuries are antitrust injuries. On the other hand, if

5    Orion's injuries were caused by heightened competition, the competitive process itself, or by acts

6    that would benefit consumers, then Orion's injuries are not antitrust injuries and plaintiff may not

7    recover damages for those injuries under the antitrust laws.

8    You should bear in mind that businesses may incur losses for many reasons that the

9    antitrust laws are not designed to prohibit or protect against-such as where a competitor offers

10   better products or services, or where a competitor is more efficient and can charge lower prices and

11   still earn a profit. The antitrust laws do not permit a plaintiff to recover damages for losses that

12   were caused by the competitive process or conduct that benefits consumers.

13   In summary, if Orion can establish that it was in fact injured by defendant's conduct, that

14   Defendants' conduct was a material cause of Orion's injury, and that Orion's injury was the type

15   that the antitrust laws were intended to prevent, then Orion is entitled to recover damages for the

16   injury to its business or property.

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 50:**

**BUSINESS OR PROPERTY**

Orion must establish that the injury it claims to have suffered was an injury to its business or property. The term "business" includes any commercial interest or venture. Orion has been injured in its business if you find that it has suffered injury to any of its commercial interests or enterprises as a result of Defendants' alleged antitrust violation. The term property includes anything of value Orion owns, possesses, or in which Orion has a protectable legal interest. Orion has been injured in its property if you find that anything of value that it owns, possesses, or has a legal interest in has been damaged as a result of Defendants' alleged antitrust violation. Orion has been injured in its property if you find that it has paid an inflated price for goods, services, any legal interest of value, or has lost money or sales as a result of defendant's alleged antitrust violation.

1

2

### INSTRUCTION NO. 51:

### ANTITRUST DAMAGES—INTRODUCTION AND PURPOSE

3     If you find that Defendants violated the antitrust laws and that this violation caused injury

4    to Orion, then you must determine the amount of damages, if any, Orion is entitled to recover. The

5    fact that I am giving you instructions concerning the issue of Orion's damages does not mean that I

6    believe Orion should, or should not, prevail in this case. If you reach a verdict for Defendants on

7    the issue of liability, you should not consider the issue of damages, and you may disregard the

8    damages instruction that I am about to give.

9     The law provides that Orion should be fairly compensated for all damages to its business or

10   property that were a direct result or likely consequence of the conduct that you have found to be

11   unlawful.

12     Antitrust damages are only compensatory, meaning their purpose is to put an injured

13   plaintiff as near as possible in the position in which it would have been had the alleged antitrust

14   violation not occurred.  The law does not permit you to award damages to punish a wrongdoer-

15   what we sometimes refer to as punitive damages-or to deter particular conduct in the future.

16   Furthermore, you are not permitted to award to plaintiff an amount for attorneys' fees or the costs

17   of maintaining this lawsuit.

18

19

20

21

22

23

24

25

26

27

28

1
2

### INSTRUCTION NO. 52:

### JOINT AND SEVERAL LIABILITY

3   Each participant in a conspiracy that violates the antitrust laws is jointly and severally liable

4   for all of the damages resulting from the conspiracy. This means that each conspirator is fully liable

5   for all of the damages caused by the conspiracy and not solely for damages caused by an individual

6   conspirator. One who knowingly joins an ongoing conspiracy is liable for the previous acts of the

7   other conspirators in furtherance of the conspiracy.

8   If you find that Orion has proven the existence of the alleged conspiracy, that defendant

9   participated in the conspiracy, and that plaintiff is entitled to recover damages based on the other

10  instructions in this case, then defendant would be liable for all damages caused by the conspiracy

11  including any overcharges on purchases of the product.

12  Thus, in that event, Defendants would be liable for overcharges on all purchases of

13  telescopes and accessories by Orion from all members of the conspiracy, and not merely on

14  purchases from Defendants. If, however, you find that any of the other alleged conspirators were

15  not a member of the conspiracy, then Defendants would not be liable for damages based on Orion

16  purchases from those alleged conspirators.

17
18
19
20
21
22
23
24
25
26
27
28

1

2

### INSTRUCTION NO. 53:

### BASIS FOR CALCULATING DAMAGES

3    You are permitted to make just and reasonable estimates in calculating Orion's damages.

4  You are not required to calculate damages with mathematical certainty or precision.  However, the

5  amount of damages must have a reasonable basis in the evidence and must be based on reasonable,

6  non-speculative assumptions and estimates.  Damages may not be based on guesswork or

7  speculation.  Plaintiff must prove the reasonableness of each of the assumptions upon which the

8  damages calculation is based.

9    If you find that plaintiff has provided a reasonable basis for determining damages, then you

10  may award damages based on a just and reasonable estimate supported by the evidence.

11    If you find that plaintiff has failed to carry its burden of providing a reasonable basis for

12  determining damages, then you may not award damages or you may award nominal damages, not

13  to exceed one dollar.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INSTRUCTION NO. 54:**

2

**CAUSATION AND DISAGGREGATION**

3

     If you find that Defendants violated the antitrust laws and that Orion was injured by that

4

violation, Orion is entitled to recover for such injury that was the direct result or likely

5

consequence of the unlawful acts of defendant. Orion bears the burden of showing that its injuries

6

were caused by defendant's antitrust violation, as opposed to any other factors. If you find that

7

Orion's alleged injuries were caused in part by Defendants' alleged antitrust violation and in part

8

by other factors, then you may award damages only for that portion of Orion's alleged injuries that

9

was caused by Defendants' alleged antitrust violation.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## INSTRUCTION NO. 55:

2

## DAMAGES FOR PURCHASERS

3      If you have determined that there was an unlawful agreement among competitors to fix

4  prices, allocate customers or products, or give one of the competitors a monopoly that caused some

5  injury to Orion, you must now determine the amount of damages to award to Orion. The proper

6  way to calculate those damages is to determine the difference between the prices Orion actually

7  paid for telescopes and accessories and the prices Orion would have paid had there been no

8  unlawful agreement. This is referred to as the overcharge.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **INSTRUCTION NO. 56:**

2

## **DAMAGES FOR COMPETITORS-LOST PROFITS**

3      Orion claims that it was harmed because it lost profits as a result of Defendants' alleged

4  antitrust violation. If you find that Defendants committed an antitrust violation and that this

5  violation caused injury to Orion, you now must calculate the profits, if any, that Orion lost as a

6  result of Defendants' antitrust violation. To calculate lost profits, you must calculate net profit: the

7  amount by which Orion's gross revenues would have exceeded all of the costs and expenses that

8  would have been necessary to produce those revenues.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **III. FINAL INSTRUCTIONS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INSTRUCTION NO. 57:

## DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**INSTRUCTION NO. 58:**

**CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may

1    be influenced by inaccurate, incomplete or misleading information that has not been tested by the

2    trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the

3    case based on information not presented in court, you will have denied the parties a fair trial.

4    Remember, you have taken an oath to follow the rules, and it is very important that you follow

5    these rules.

6         A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a

7    mistrial could result that would require the entire trial process to start over. If any juror is exposed

8    to any outside information, please notify the court immediately.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### INSTRUCTION NO. 59:

### COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

1

**INSTRUCTION NO. 60:**

2

**RETURN OF VERDICT**

3        A verdict form has been prepared for you. After you have reached unanimous agreement on

4  a verdict, your presiding juror should complete the verdict form according to your deliberations,

5  sign and date it, and advise the clerk that you are ready to return to the courtroom.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28