UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC, <br><br> Plaintiff, <br><br> v. <br><br> NINGBO SUNNY ELECTRONIC CO., LTD., et al., <br><br> Defendants. | Case No. 5:16-cv-06370-EJD <br><br> **ORDER RE MOTION FOR ORDER TO SHOW CAUSE** <br><br> Re: Dkt. No. 578 |

Plaintiff Optronic Technologies, Inc. ("Orion") has moved the Court for an Order to Show Cause why Defendant Ningbo Sunny Electronic Co., Ltd. ("Ningbo Sunny") should not be sanctioned under the Court's inherent authority for making false representations to the Court. The Court has considered the parties' papers and heard their oral arguments. For the reasons discussed below, the Court will exercise its inherent power to sanction Ningbo Sunny to punish its bad faith conduct.

I. Background

On November 26, 2019, and after a six-week trial, the jury entered a verdict in Orion's favor on all counts. The jury found that Ningbo Sunny conspired with horizontal and vertical competitors to fix the price of telescopes, allocate the market for telescopes and accessories, and allocate customers. Dkt. No. 501. It also found that Ningbo Sunny engaged in anticompetitive activity, attempted to monopolize, and conspired to monopolize the market for telescopes and accessories. *Id*. On December 5, 2019, the Court entered a partial judgment on Orion's damages claims awarding Orion $50,400,000 after trebling. Dkt. No 518.

After the jury returned its verdict, Orion orally moved the Court for an order restraining Ningbo Sunny from removing assets—specifically, accounts receivable—from the United States. Trial Tr. 2822. The Court set a briefing schedule, Orion filed an application for a temporary restraining order (the "First TRO Application"), Ningbo Sunny opposed, and Orion filed a reply.

Case No.: 5:16-cv-06370-EJD
ORDER RE MOTION FOR ORDER TO SHOW CAUSE

1

Trial Tr. 2836-37; Dkt. Nos. 509, 510, 513. The Court held a hearing on the matter on December 5, 2019 (the "December 5 Hearing") (Dkt. Nos. 514, 520).

At the December 5 Hearing, the Court repeatedly asked Ningbo Sunny's counsel whether Ningbo Sunny could provide assurance to Orion and the Court that it would not frustrate enforcement of the judgment by transferring its assets outside of the United States. Dkt. No. 520 at 18:23-25 ("Can you give assurances to counsel and the Court that assets aren't going to be shipped offshore such that the relief requested would not be necessary?"), 23:16-18 ("[W]hat kind assurances can your client give to Plaintiff that they're not going to engage in the conduct that [Plaintiff's counsel] suggests and is fearful of, short of a court order?"), 23:24-24:7 ("I think what [Plaintiff's counsel] is saying is that can we just get some assurance that you're not going to engage in . . . any type of shenanigans where you're going to hide assets outside of the country to avoid judgment? . . . The things that a restraining order would accomplish, can your client just say we're not going to do that and we tell the Court we're not going to do that."). Ningbo Sunny's counsel responded that it sought to continue operations "in the ordinary course of business as we have," and that "we may be able to find some way to provide some reassurance to my friends across the aisle here that that's what is happening." Dkt. No. 520 at 26:14-15, 27:3-8. The Court in turn noted that "there's historical evidence of how you do business, your payments et cetera to offsite. . . . As the case goes forward, if there's deviation in that . . . [then] that's a little concern, isn't it? That would draw some eyes." *Id.* at 27:11-17. Less than a week later, Ningbo Sunny filed a declaration from its President Peter Ni, dated December 10, 2019 (the "Ni Declaration"), that stated, in relevant part, "Ningbo [Sunny] will not transfer any of its cash or other assets located in the United States to a location outside of the United States other than in the ordinary course of business while post-trial motions and appeals remain pending." Dkt. No. 521-1. The Court then denied that the First TRO Application. Dkt. No. 524.

During the December 5 Hearing, Ningbo Sunny also expressed concern that the Court would lift the Federal Rule of Civil Procedure 62(a) 30-day stay of enforcement of the judgment. Dkt. No. 520 at 9:12-20. The stay was set to expire on January 5, 2020.

After hearing from the parties the Court did not lift the stay.

Case No.: 5:16-cv-06370-EJD
ORDER RE MOTION FOR ORDER TO SHOW CAUSE
2

At the time that Ningbo Sunny filed the Ni Declaration, it knew that Celestron—one of Defendants' co-conspirators that settled with Orion pre-suit—owed Ningbo Sunny approximately $4 million in accounts receivable. *See* Borden Ex. 1 at 3-7.[1] Per the supply agreements between Celestron and Ningbo Sunny, Celestron has a standard 100-day window to make payments. Borden Exs. 5 at 4, 6 at 8. On January 1, 2020, James Qiu,[2] an executive at Ningbo Sunny, sent an email to Celestron stating, "[o]ur factory has a very tight cash flow at the moment. We are foaced [*sic*] with bank loan collection and suppliers demand payment recently. Could you pay as much payment as possible this week? Thank you in advance for your supports!" Borden Ex. 1 at 2 (the "Qiu Email"). According to a remittance produced by Celestron (the "Remittance"), the next day Celestron paid $4,184,057.70 to Ningbo Sunny's account with the Agricultural Bank of China. *Id.* at 3.

Four days later, Orion brought its second application for an order restraining Ningbo Sunny from removing assets from the United States (the "Second TRO Application"). Dkt. No. 537. Ningbo Sunny opposed the motion arguing that Orion had not shown any need for the TRO and emphasizing the Ni Declaration. Dkt. No. 548 at 6. The Court denied the Second TRO Application finding that Orion had not shown more than speculation that Ningbo Sunny would improperly remove assets from the United States. Dkt. No. 559 at 5.

In the course of post-judgment discovery, Orion propounded a request for "[d]ocuments concerning all payments made to each Defendant by or on behalf of its respective customers or distributors located in the United States." Borden Ex. 4 at 8. On January 30, 2020, Ningbo Sunny produced documents in response. While Ningbo Sunny produced over 70 emails between Qiu and Celestron dated on or after January 1, 2020, it did not produce the Qiu Email or the Remittance. Borden Decl. ¶ 5; Reply Borden Decl. ¶ 2 & Ex. 1. Celestron though produced both documents on February 10, 2020. Borden Decl. ¶ 2.

## II. Discussion

"Federal courts possess certain inherent powers, not conferred by rule or statute, to manage

---

[1] Pincites to the exhibits attached to the Borden Declaration go to the ECF-generated pagination.
[2] Also spelled "Chiu." Opp'n at 2.

Case No.: 5:16-cv-06370-EJD
ORDER RE MOTION FOR ORDER TO SHOW CAUSE
3

their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quotations and citations omitted). The Ninth Circuit has held that a specific finding of "bad faith" is required before a district court imposes sanctions under its inherent authority. *See, e.g.*, *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002); *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). Courts must exercise discretion and restraint when fashioning such a sanction so that the sanction is appropriate for the misconduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). Before exercising its inherent powers to sanction a party, a court must provide that party with the opportunity to explain its conduct. *See In re DeVille*, 361 F.3d 539, 548 (9th Cir. 2004).

As an initial matter, this Court finds that by setting a briefing schedule in advance of a hearing on the instant motion, the Court has provided Ningbo Sunny with sufficient notice of Orion's allegations of misconduct and of the Court's sanctioning authority, and with adequate opportunity—both in writing and through oral argument—to respond. *See id.* Due process is satisfied in this matter, so that the Court now considers whether to issue sanctions rather than whether to issue an order to show cause. *Cf. id.*

Turning to the substance, Orion argues that Ningbo Sunny's request that Celestron pay its $4 million debt just days before the Rule 62(a) stay was set to expire shows that the Ni Declaration was made in bad faith. In opposition, Ningbo Sunny's main argument is that the early payment was within the ordinary course of business so that the Ni Declaration was not false. Ningbo Sunny does not make any arguments concerning the exercise of the Court's inherent authority.

The evidence is contrary to Ningbo Sunny's argument. The "ordinary course of business" means "[t]he normal routine in managing a trade or business." *Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.*, 2011 WL 8955840, at *5 (S.D.N.Y. Apr. 7, 2011) (quoting Black's Law Dictionary 404 (9th ed.2009)). The evidence in this case strongly suggests that the transfer indicated by the Qiu Email and the Remittance was outside the ordinary course of business. First, the very fact that Ningbo Sunny had to request the payment suggests that it was not within "the

normal routine" of Ningbo Sunny and Celestron.  Second, the Remittance shows most of the money paid was not yet due; rather Ningbo Sunny requested *early* payment.  Borden Exs. 1 at 3-7, 5 at 4, 6 at 8.  The declaration of Qiu and the attached exhibits—filed by Ningbo Sunny in support of its opposition—also show that the Qiu Email and the requested early payment was outside the ordinary course of business.  Qiu declares that Celestron paid Ningbo Sunny between $7.7 million and $4.2 million during the months of January and February in 2016, 2017, 2018, and 2019.  Qiu Decl. ¶ 5; Qui Ex. A.  But in those years, the total payments were made through several smaller installments over several weeks going as late as the end of February.  Qiu Decl. ¶ 5; Qui Ex. A.  The Qiu Email directed the entire amount due be paid within a week.  Borden Ex. 1 at 2.  Similarly, in Qiu's January 28, 2019 email to Celestron, he requested partial payment of Celestron's overdue debts.  Qiu Ex. B.  This year, by contrast, he requested full payment of all debts, even those that were not yet due.  Borden Ex. 1.  The evidence indicates that the historical practice between Ningbo Sunny and Celestron did not include requests for full, early payment of all debts within a week of notice.  Ningbo Sunny's conduct was outside the normal course of business.

Significantly and most troubling, Ningbo Sunny's failure to produce both the Qiu Email and the Remittance in discovery is evidence of consciousness of guilt—that Ningbo Sunny understood that the documents would show it's conduct contradicted the Ni Declaration.  In a footnote, Ningbo Sunny argued that it construed the time period encompassed by Orion's document request as ending on the day it was served—December 31, 2019.  Opp'n at 4 n.1.  But that argument is belied by the fact that Ningbo Sunny produced over 70 emails between Qui and Celestron dated after January 1, 2020.  Borden Reply Decl. ¶ 2 & Ex. 1.

The Court finds that the totality of the circumstances and the evidence show that Ningbo Sunny made the Ni Declaration in bad faith.  The Court "does not countenance evasive and misleading representations to the Court." *Madrid v. Woodford*, 2004 WL 2623924, at *13 n.11 (N.D. Cal. Nov. 17, 2004) (issuing order to show cause why party should not be sanctioned under the court's inherent power).  Ningbo Sunny affirmatively relied on the Ni Declaration in opposing the First and Second TRO Applications, and the Court had no reason to question the veracity of

the Ni Declaration nor counsel's representations and filings.  Sanctions are appropriate.

    III.    <u>Conclusion</u>

For the reasons discussed above, the Court will exercise its inherent authority to sanction Ningbo Sunny.  The Court orders as follows:

1. No later than March 23, 2020, Ningbo Sunny shall pay Orion the $4,184,057 Defendant received from Celestron.

2. Ningbo Sunny is enjoined from transferring assets outside the United States until such time as either (1) Orion collects the judgment money owed by Ningbo Sunny, or (2) Ningbo Sunny posts a bond sufficient to satisfy the Court's judgment.

3. No later than March 16, 2020, Ningbo Sunny shall provide to Orion a declaration, which is signed and made under penalty of perjury, describing the actions it has taken to ensure that it complied with its post-judgment discovery obligations.

4. Orion may serve expedited discovery, with responses due one week after service, to determine what, if any, other improper transfers Ningbo Sunny caused or accepted, or whether anyone else aided or abetted these transfers.

5. No later than March 16, 2020, Ningbo Sunny shall identify all planned and actual sales of product made by Ningbo Sunny into the United States, whether directly or through an intermediary such as Celestron.

6. Orion may register the Court's Judgment in federal districts outside of California under 28 U.S.C. § 1963.

7. Ningbo Sunny shall pay reasonable attorney's fees and costs incurred by Orion in connection with this motion.  No later than March 20, 2020, Orion shall submit an application for such fees and costs.

    **IT IS SO ORDERED.**

Dated: March 9, 2020

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-06370-EJD
ORDER RE MOTION FOR ORDER TO SHOW CAUSE
6