United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC,<br><br>Plaintiff,<br><br>v.<br><br>NINGBO SUNNY ELECTRONIC CO., LTD., et al.,<br><br>Defendants. | Case No. 5:16-cv-06370-EJD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR EQUITABLE RELIEF AND JUDGMENT ON UCL CLAIM**<br><br>Re: Dkt. No. 582 |

Pursuant to 15 U.S.C. § 26, Cal Bus. and Prof. Code § 17200, and Federal Rules of Civil Procedure 54(b) and 58(b)(2)(B), Plaintiff Optronic Technologies, Inc. ("Plaintiff" or "Orion") moves this Court for equitable relief and judgment on its claim arising under California's Unfair Competition Law ("UCL"). The Court took the matter under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons below, Plaintiff's motion is **GRANTED**.

**I.  Background**

The basic facts and procedural history underlying this case are well known to the Court and the parties. The Court recounts only the pertinent background here.

On November 26, 2019, and after a six-week jury trial, the jury returned a verdict for Plaintiff and against defendants Ningbo Sunny Electronic Co., LTD ("Ningbo Sunny" or, for the purposes of this motion, "Defendant"), Sunny Optics, Inc. ("Sunny Optics"), and Meade Instruments, Corp. ("Meade") on all claims. Dkt. No. 501. The jury found that the defendants had conspired to fix prices or credit terms in violation of the Sherman Act Section 1 (Claim 1), had

conspired to allocate the market for telescopes in violation of the Sherman Act Section 1 (Claim 2), had attempted to monopolize the market in violation of the Sherman Act Section 2 (Claim 3), had conspired to monopolize the market in violation of the Sherman Act Section 2 (Claim 4), and that the acquisition of Meade by Ningbo Sunny and Sunny Optics harmed competition in violation of the Clayton Act Section 7 (Claim 5). *Ibid*. The jury found that Orion suffered $14 million in damages for each of the Sherman Act claims and $16.8 million for the Clayton Act Claim. *Ibid*.

After the verdict, Sunny Optics and Meade entered bankruptcy and the litigation was stayed as to them. Dkt. Nos. 511, 512. On December 5, 2019, the Court entered a partial judgment against Ningbo Sunny on Plaintiff's damages claims awarding Plaintiff $50,400,000 in accordance with the verdict's award of $16,800,000 as trebled pursuant to 15 U.S.C. §15(a). Dkt. No. 518. On February 21, 2020, Plaintiff filed a motion for equitable relief and judgment on its UCL claim. Dkt. No. 583 ("Motion"). Defendant opposes the motion. Dkt. No. 596 ("Opposition").

On April 3, 2020, the Court partially granted Defendant's Motion to Alter or Amend Judgment (Dkt. No. 534) and simultaneously granted Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. No. 558). On the same day, the Court issued an Amended Partial Judgment (Dkt. No. 630), which amended the damages to $52,030,371.73 plus post-judgment interest, in accordance with the post-trial motions. The Court denied Ningbo Sunny's Renewed Motion for Judgment as a Matter of Law (Dkt. No. 556) and Motion for a New Trial (Dkt. No. 557). The Court now considers Plaintiff's motion for a permanent injunction and its request for judgment on the remaining UCL claim.

## II. Discussion

### A. Plaintiff's Request For a Permanent Injunction Under Section 16

Under Section 16 of the Clayton Act, courts have the power to grant injunctive relief for violations of the antitrust laws. 15 U.S.C. § 26 (authorizing "[a]ny person . . . [to] have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws . . . when and under

the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity"). Where a violation of law has already been established, injunctive relief should be granted if "there exists some cognizable danger of recurrent violation." *Fed. Trade Comm'n v. Qualcomm Inc.*, 411 F. Supp. 3d 658, 812 (N.D. Cal. 2019) (granting injunctive relief under the FTC Act after the court found violations of the FTC and Sherman Acts) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).

In general, "[t]o obtain permanent injunctive relief, a plaintiff must show (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *California ex rel. Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999, 1019–20 (9th Cir. 2009) (internal quotations and citations omitted).

These four elements apply when considering relief under Section 16 of the Clayton Act. The Supreme Court has stated that Section 16, "which was enacted by the Congress to make available equitable remedies previously denied private parties, invokes traditional principles of equity." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 131 (1969); 15 U.S.C. § 26 (injunctive relief is authorized "when and under the same conditions and principles as injunctive relief . . . is granted by courts of equity"). The traditional principles of equity call for the four-step analysis above. *eBay Inc., v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006) ("According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.").

"The party seeking an injunction 'has the general burden of establishing the elements necessary' to obtain relief." *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, No. 5:15-CV-01370-EJD, 2019 WL 1117537, at *2 (N.D. Cal. Mar. 11, 2019) (citing *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009)). Ultimately, "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *eBay, Inc.*,

CASE NO.: 5:16-CV-06370-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR EQUITABLE RELIEF AND JUDGMENT ON UCL CLAIM

3

547 U.S. at 391.

### i. Irreparable Injury and Inadequacy of Monetary Damages

The first two elements are significantly interrelated. "Irreparable harm may be established where there is the fact of an injury, such as that arising from a breach of contract, but where there is an inability to ascertain the amount of damage." *DVD Copy Control Ass'n, Inc.*, 176 Cal. App. 4th at 722. "In other words, to say that the harm is irreparable is simply another way of saying that pecuniary compensation would not afford adequate relief or that it would be extremely difficult to ascertain the amount that would afford appropriate relief." *Ibid*. Therefore, the Court considers the first two elements together.

Plaintiff raises three arguments regarding irreparable harm. First, Plaintiff argues that it "is suffering from irreparable and non-compensable harm because Defendant is engaged in a judgment avoidance scheme." Mot. at 12. Defendant argues that Plaintiff's allegations regarding Defendant's post-judgment conduct are irrelevant to the injunctive relief Plaintiff seeks under Section 16. Opp. at 6-8. The Court agrees that the equitable relief to which Plaintiff is entitled under Section 16 is not meant to provide a remedy for Defendant's post-judgment misconduct. A permanent injunction cannot be ordered merely because the requesting party did not receive the full extent of the legal relief it sought. *See BladeRoom Grp. Ltd.*, No. 15-cv-01370, 2019 WL 1117537, at *3. To the extent that Defendant's post-judgment misconduct demonstrates an unwillingness to cease its anti-competitive behavior, however, such misconduct offers evidence that the legal violations established at trial are ongoing or likely to recur. These allegations thus weigh in favor of finding a threat of irreparable injury.

Plaintiff next argues that Defendant's violations of antitrust laws have caused structural harm to the U.S telescope market and that such injury will become irreparable if Defendant intentionally puts Meade out of business. Defendant does not directly address this argument. The Court agrees with Plaintiff that Defendant's decision to forego profit by refusing to supply products to its own wholly-owned subsidiary evidences Defendant's intent to unlawfully restrain

competition. *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004) ("The unilateral termination of a voluntary *(and thus presumably profitable)* course of dealing suggest[s] a willingness to forsake short-term profits to achieve an anticompetitive end.") (quoting *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 6018, 610-11 (1985) (emphasis in original). The jury found that Defendant's acquisition of Meade created a reasonable likelihood of substantially lessening competition or creating a monopoly, and the Court finds that eliminating Meade as a competitor entirely would achieve a similar result by over-concentrating the telescope market. Such an injury to the market would be irreparable.

Defendant argues that this potential injury to Plaintiff and to the market is merely speculative. To support a permanent injunction under Section 16, however, it is enough to show "threatened loss or damage by a violation of the antitrust laws" if injunctive relief is not granted. 15 U.S.C. § 26; *Zenith Radio Corp.*, 395 U.S. at 130 ("section 16 . . . authorizes injunctive relief upon the demonstration of 'threatened' injury. That remedy is characteristically available even though the plaintiff has not yet suffered actual injury."). In any event, the jury expressly found that Plaintiff did suffer actual injury here. *See, e.g.*, Verdict Form, Dkt. No. 501 at 5. The jury's verdict and the evidence on which it was based are sufficient to demonstrate that the threat of irreparable injury to the market is more than speculative.

Finally, Plaintiff argues that "[i]f the structural problems caused by Defendant go uncorrected, Orion faces the danger of losing its business." Mot. at 12. Defendant contends that Plaintiff has not shown that it actually risks losing its business, and that the loss of Plaintiff's business would be a "purely monetary injury." Opp. at 8 (citing *Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 850-51 (9th Cir. 1985).

The Court finds that Plaintiff has shown sufficient evidence that its business would be threatened with extinction in the absence of injunctive relief. At trial, Orion presented evidence, without objection from Defendant, that if Defendant continues its anticompetitive conduct, Orion would go out of business. *See, e.g.,* Trial Tr. at 1771:21-23 (Q. And do you have any concerns

CASE NO.: 5:16-CV-06370-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR EQUITABLE RELIEF AND JUDGMENT ON UCL CLAIM

5

about what will happen to Orion in the event that you don't receive that relief? A. They're going to kill us.); *id.* at 2499:24-2500:2 (discussing Defendant's lack of objection to evidence of Plaintiff's financial distress). This evidence is sufficient to show that Plaintiff faces the threat of going out of business. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 993 (9th Cir. 2019) (finding "ample support" for the asserting that the survival of the plaintiff's business was threatened absent an injunction, where the plaintiff's CEO made statements that without injunctive relief, the business would have to "lay off most if not all its employees, and shutter its operations.").

The threat to Plaintiff's business is sufficient to establish irreparable harm. *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) ("The threat of being driven out of business is sufficient to establish irreparable harm."). "[T]he loss of . . . an ongoing business representing many years of effort and the livelihood of its . . . owners, constitutes irreparable harm. What plaintiff stands to lose cannot be fully compensated by subsequent monetary damages." *hiQ Labs, Inc.*, 938 F.3d at 993 (quoting *Roso–Lino Beverage Distributors, Inc. v. Coca–Cola Bottling Co. of New York, Inc.*, 749 F.2d 124, 125–26 (2d Cir. 1984) (per curiam)). Defendant cites *Colorado River Indian Tribes* to support its argument that the loss of business would be a purely monetary injury. That case is inapposite. In that case, the plaintiff did not face the threat of being driven out of business, but rather the threat of loss of income due to a tax increase. *Colorado River Indian Tribes*, 776 F.2d at 851.

### ii. Balance of Hardships

In determining whether to grant Plaintiff's motion for a permanent injunction, the Court also considers the balance of the hardships to the parties. *Taleff v. Sw. Airlines Co.*, 828 F. Supp. 2d 1118, 1123 (N.D. Cal. 2011), *aff'd,* 554 F. App'x 598 (9th Cir. 2014). When considering injunctive relief, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Amoco Prod. Co. v. Gambell,* 480 U.S. 531, 542

(1987)).

Plaintiff argues that it "will continue to suffer from the effects of Defendant's continuing unlawful behavior, as well as the structural damage Defendant inflicted on the U.S. telescope market, absent the requested relief." Mot. at 13-14. Plaintiff argues that in contrast, the proposed injunction would impose no hardship on Defendant. *Ibid.* In fact, the relief requested—specifically, selling products to Meade and to Plaintiff on non-discriminatory terms—would be profitable for Defendant. *Ibid.* Defendant does not address this factor directly. In arguing that the proposed injunction is overbroad, however, Defendant argues that the injunction would significantly burden the "everyday functions of its business." Opp. at 6.

As discussed above, Plaintiff stands to lose its business if Defendant's misconduct continues. The primary potential burden that Defendant raises is that it would be unable to communicate with one of its customers, Celestron. The Court addresses this concern in Part C below. In comparison to the potential harm to Plaintiff, the potential burden on Defendant's business operations as a result of the injunction ordered herein is slight. Thus, the Court finds that the balance of hardships tilts in favor of Plaintiff.

### iii. Public Interest

"Whereas the balance of equities focuses on the parties, '[t]he public interest inquiry primarily addresses impact on non-parties rather than parties,' and takes into consideration 'the public consequences in employing the extraordinary remedy of injunction.'" *hiQ Labs, Inc.*, 938 F.3d at 1004 (citing *Bernhardt v. Los Angeles Cty.*, 339 F.3d 920, 931-32 (9th Cir. 2003)). "By its very nature, the determination that [a defendant] has violated the Sherman Act and that 'the wrongs are ongoing or likely to recur' is a finding that an injunction is in the public interest because it will restrain the defendant from further anticompetitive conduct." *Qualcomm Inc.*, 411 F. Supp. 3d at 813 (citing *F.T.C. v. Evans Prod. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985)).

In this case, the jury found that Defendant violated Sections 1 and 2 of the Sherman Act and Section 5 of the Clayton Act. As discussed in Part (i) above, Defendant's refusal to supply

CASE NO.: 5:16-CV-06370-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR EQUITABLE RELIEF AND JUDGMENT ON UCL CLAIM
7

1  Meade is likely to cause over-concentration of the telescope market. Injunctive relief is necessary
2  to protect the market from over-concentration by preventing Defendant from further violating
3  antitrust laws. The Court, therefore, finds that it is in the public interest to issue an injunction
4  prohibiting Defendant from engaging in conduct previously found to violate the law.
5  *See California v. American Stores Co.,* 495 U.S. 271, 284 (1990) ("We have recognized when
6  construing § 16 that it was enacted not merely to provide private relief, but . . . to serve as well the
7  high purpose of enforcing the antitrust laws.").

Because the Court finds that Plaintiff has established the prerequisites for injunctive relief, the Court concludes that a permanent injunction is warranted under Section 16 of the Clayton Act.

### B. Plaintiff's Request for Entry of Judgment On UCL Claim

Plaintiff's third cause of action in its amended complaint alleges that Defendant violated California's Unfair Competition Law ("UCL"). First Am. Compl. ¶¶ 139-141. Before trial, the parties agreed that the claim would not be tried before the jury and that the Court should rule on the claim following the jury verdict. Joint Pretrial Conference Statement, Dkt. No. 331, at 20-21 ("The parties agree that Orion's claim under [the UCL] is an equitable claim that should be tried to the bench and not the jury. The parties also agree that the Court should rule on Orion's UCL claim after the jury has returned its verdict."). Plaintiff now seeks judgment and relief on this claim. Defendant did not raise any arguments in opposition.

"The UCL broadly prohibits 'any unlawful, unfair or fraudulent business act or practice.'" *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 (9th Cir. 2011); quoting Cal. Bus. & Prof. Code § 17200). "By proscribing any unlawful business practice, [the UCL] borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163, 180 (1999) (citation and internal quotation marks omitted). Thus, the "unlawful" prong of the statute prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Ibid.*

"[I]n a case where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are 'based on the same facts,' in deciding the equitable claims 'the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations.'" *Los Angeles Police Protective League v. Gates,* 995 F.2d 1469, 1473 (9th Cir. 1993) (quoting *Miller v. Fairchild Indus.,* 885 F.2d 498, 507 (9th Cir. 1989), *cert. denied,* 494 U.S. 1056 (1990)). The jury in this case concluded that Defendant violated the Sherman Act Sections 1 and 2 as well as the Clayton Act Section 7. The jury's findings as to Defendant's violations of law are sufficient to demonstrate that Defendant's conduct was "unlawful" under the UCL. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 836 (N.D. Cal. 2016) ("[B]ecause I conclude that plaintiffs have adequately alleged violations of other federal and state laws, plaintiffs have adequately pleaded the basis for an unlawful UCL claim.") *aff'd*, 890 F.3d 828 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018), and *aff'd*, 735 F. App'x 241 (9th Cir. 2018).

Plaintiff has adequately proven its UCL claim and the Court will enter judgment in favor of Plaintiff. The UCL empowers a court to issue injunctions for violations of the UCL. Cal. Bus. & Prof. Code § 17203. The standard for injunctive relief under the UCL is less demanding than the standard under Section 16. *See Haas Automation, Inc. v. Denny*, No. 12-cv-4779 (CBM), 2014 WL 2966989, at *9 (C.D. Cal. Jul. 1, 2014) (stating that under the UCL, plaintiff need only show "the elements of a cause of action involving the wrongful act sought to be enjoined and . . . the grounds for equitable relief, such as, inadequacy of the remedy at law.") (quoting *City of S. Pasadena v. Dep't of Transp.*, 29 Cal. App. 4th 1280, 1293 (1994)). The Court finds that injunctive relief is warranted under the UCL for the reasons discussed in Part A above.

### C. The Scope of the Injunction

The Supreme Court instructs "that a remedies decree in an antitrust case must seek to 'unfetter a market from anticompetitive conduct,' to 'terminate the illegal monopoly, deny to the defendant the fruits of its statutory violation, and ensure that there remain no practices likely to

CASE NO.: 5:16-CV-06370-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR EQUITABLE RELIEF AND JUDGMENT ON UCL CLAIM

9

result in monopolization in the future.'" *United States v. Microsoft Corp.*, 253 F.3d 34, 103 (D.C. Cir. 2001) (quoting *Ford Motor Co. v. United States*, 405 U.S. 562, 577 (1972), and *United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 250 (1968)); *see also United States v. U.S. Gypsum Co.*, 340 U.S. 76, 88 (1950) (an antitrust remedy must, "so far as practicable, cure the ill effects of the illegal conduct, and assure the public freedom from its continuance"). Thus, it is "entirely appropriate" for a court to order an injunction "beyond a simple proscription against the precise conduct previously pursued." *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 698 (1978). The relevant question is "whether the relief represents a reasonable method of eliminating the consequences of the illegal conduct." *Ibid.*; *accord Fed. Trade Comm'n v. Grant Connect, LLC*, 763 F.3d 1094, 1105 (9th Cir. 2014).

District courts are "clothed with large discretion to fit the decree to the special needs of the individual case." *Ford*, 405 U.S. at 573 (internal quotations omitted); *see also Zenith Radio Corp.*, 395 U.S. at 131 (1969) ("Section 16 should be construed and applied . . . with the knowledge that the remedy it affords, like other equitable remedies, is flexible and capable of nice 'adjustment and reconciliation between the public interest and private needs as well as between competing private claims.'") (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329-330 (1944)); *California ex rel. Lockyer*, 575 F.3d at 1020 ("In determining the scope of an injunction, a district court has broad latitude, and it must balance the equities between the parties and give due regard to the public interest.") (quoting *Geertson Seed Farms v. Johanns,* 570 F.3d 1130, 1136 (9th Cir.2009)).

Plaintiff requests an order requiring Defendant to:
1. Supply Meade at non-discriminatory (*i.e.*, most-favored-customer) terms for five years;
2. Supply Orion at non-discriminatory terms for five years;
3. Refrain from communicating with Synta about the prices of telescopes and accessories;

CASE NO.: 5:16-CV-06370-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR EQUITABLE RELIEF AND JUDGMENT ON UCL CLAIM

10

4. Refrain from sharing customer information with Synta, including but not limited to statistics about which products Defendant's customers are buying, how much Defendant is charging for those products, and the volume of purchases from Defendant;

5. Refrain from communicating with Synta about which products Defendant and Synta will manufacture; and

6. Refrain from participating in any internal meetings or strategy sessions in which any representative from a competitor, including David Shen or any employee of Synta, is in attendance.

Mot. at 10. The Court considers each request in turn.

Plaintiff requests that Defendant be ordered to supply both Meade and Orion at non-discriminatory terms for a period of five years. Defendant argues that the Court may not impose an injunction forcing it to do business with any entity or dictate the terms of any business transaction. Opp. at 4. Defendant cites *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP ("Trinko")* in support of this argument. 540 U.S. 398 (2004). In *Trinko*, the Supreme Court considered whether the plaintiff had stated a claim under Section 2 of the Sherman Act for refusing to deal with competitors. *Trinko* did not address whether and to what extent a mandatory injunction may be appropriate to remedy an actual violation of law.

In cases that did involve injunctive relief, the Supreme Court has repeatedly "upheld injunctions issued pursuant to § 16 regardless of whether they were mandatory or prohibitory in character." *American Stores Co.,* 495 U.S. at 283-84 (1990) (affirming district court's power to grant divestiture by requiring defendant to sell certain assets); *see also Zenith Radio Corp.,* 395 U.S. at 129–33 (reinstating injunction that required defendants to withdraw from patent pools); *Silver v. New York Stock Exchange,* 373 U.S. 341, 345, 365 (1963) (reinstating judgment for defendants in suit to compel installation of wire services); *Pacific Coast Agricultural Export Ass'n v. Sunkist Growers, Inc.,* 526 F.2d 1196, 1200–01, 1208–09 (9th Cir.1975) (affirming an

injunction enjoining defendant from "refusing to sell [products] to any qualified exporters" and providing a formula for determining the price of those products), *cert. denied,* 425 U.S. 959 (1976).

Defendant also argues that the word "non-discriminatory" renders the relief impermissibly vague and that enforcement of such a term would require extensive oversight by the Court. Opp. at 2. As Plaintiff points out, the Ninth Circuit expressly approved an injunction using the term "non-discriminatory" in *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997) (explaining that "requiring nondiscriminatory pricing" was necessary to end the defendant's monopoly). Plaintiff specifies that the term "non-discriminatory" means that "Defendant should only be able to charge Meade and Orion the same price it charges to Celestron and its other customers." Reply, Dkt. No. 608, at 7. The Court finds that this explanation gives Defendant adequate notice of what the Court intends to require. Fed. R. Civ. Proc. 65(d)(1); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992) ("Injunctions are not set aside under Rule 65(d) unless they are so vague that they have no reasonably specific meaning.").

The Court concludes that requiring Defendant to supply Plaintiff and Meade at non-discriminatory terms for a period of five years is a reasonable method of remedying the harm to Plaintiff caused by Defendant's attempted monopolization and of ensuring that Defendant's violations of antitrust law do not recur. *See Nat'l Soc'y of Prof'l Eng'rs*, 435 U.S. at 698 (District Courts are "empowered to fashion appropriate restraints on [a defendant's] future activities both to avoid a recurrence of the violation and to eliminate its consequences."); *see also Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir. 1987) ("[A]n injunction is not necessarily made over-broad by extending benefit or protection to persons other than prevailing parties in the lawsuit—even if it is not a class action—if such breadth is necessary to give prevailing parties the relief to which they are entitled.").

Plaintiff next requests that Defendant be ordered to refrain from communicating with "Synta" about the prices of telescopes and accessories and about which products Defendant and

CASE NO.: 5:16-CV-06370-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR EQUITABLE RELIEF AND JUDGMENT ON UCL CLAIM

12

Synta will manufacture. Similarly, Plaintiff requests that Defendant be ordered to refrain from sharing customer information with Synta, including information about which products customers are buying at what price and in what volume. Defendant argues that each of these proposed orders would impermissibly limit lawful conversations with its customer, Celestron, and force Defendant to "completely re-alter its business operations." Opp. at 5. For example, Defendant argues that prohibiting it from communicating with Synta about the prices of telescopes and accessories "would effectively mean Defendant can never again conduct business with Celestron." Opp. at 6.

Defendant's argument hinges on the fact that Plaintiff's proposed order would prevent Defendant from communicating with Celestron. The Court agrees with Defendant that prohibiting communications between Defendant and its primary customer, Celestron, would burden lawful conduct unrelated to the underlying offense. *See E. & J. Gallo Winery*, 967 F.2d at 1297 (courts "must insure that [an injunction] is tailored to eliminate only the specific harm alleged."). Neither party clearly defines which of the many entities involved in this case are included when they reference "Synta." The Court will order Defendant to refrain from communicating about the topics outlined below with Suzhou Synta Optical Technology Co. Ltd ("Suzhou Synta") and Synta Technology Corp. ("Synta Tech") only, so as to not unduly restrain Defendant's communications with Celestron.

The Court also shares Defendant's concern that the topics about which it would be prevented from communicating are overbroad. Plaintiff presented evidence at trial that Defendant engaged in improper communications with certain Synta entities regarding the price of telescopes and accessories, customer information, and planned production, among other topics. Nevertheless, the Court can also imagine communications between Defendant and its competitors about the price or sale of products that would be entirely lawful. For the sake of clarity, the Court will enjoin this activity only to the extent it violates, or contributes to a violation of, antitrust laws.

Finally, the Court finds Plaintiff's final request—that Defendant refrain from "internal meetings or strategy sessions in which any representative from a competitor . . . is in

CASE NO.: 5:16-CV-06370-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR EQUITABLE RELIEF AND JUDGMENT ON UCL CLAIM

13

attendance"—to be overbroad. Mot. at 10. While the jury found evidence of a conspiracy between Defendant and Synta, there was no evidence to suggest that Defendant participated in any conspiracy or unlawful activity with other competitors. The Court finds that Defendant should only be restrained from communicating with the competitors for which Plaintiff presented evidence of conspiracy. Moreover, as Defendant points out, the relief requested is unclear as to what constitutes an "internal meeting or strategy session." Opp. at 6. While Defendant should be prohibited from discussing internal business strategy with certain competitors, the Court finds that this result can be achieved by limiting communications instead of meetings.

### III. Conclusion and Order

Based on the foregoing reasons, Plaintiff's motion for a permanent injunction and judgment on its UCL claim is **GRANTED**. Pursuant to Federal Rule of Civil Procedure 65(d), **IT IS HEREBY ORDERED** as follows:

1. Defendant shall supply Meade at non-discriminatory terms for five years;
2. Defendant shall supply Orion at non-discriminatory terms for five years;
3. Defendant shall refrain from communicating with Suzhou Synta and Synta Tech, about the following, to the extent such communication violates, or contributes to the violation of, antitrust laws:
   a. the prices of telescopes and accessories;
   b. customer information, including but not limited to statistics about which products Defendant's customers are buying, how much Defendant is charging for those products, and the volume of purchases from Defendant;
   c. which products Defendant or Synta will manufacture; and
   d. Defendant's or Synta's internal business strategy.

This Court shall retain jurisdiction over any and all issues arising from or related to the enforcement of this permanent injunction, the implementation of this Order or the interpretation of this Order.

CASE NO.: 5:16-CV-06370-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR EQUITABLE RELIEF AND JUDGMENT ON UCL CLAIM

14

Because this Order represents a final resolution of all the claims against Defendant Ningbo Sunny, the Court will enter Final Judgment. The parties are ordered to submit joint status reports every six months regarding the progress of the related bankruptcy proceedings against defendants Sunny Optics and Meade.

**IT IS SO ORDERED.**

Dated: April 9, 2020

EDWARD J. DAVILA
United States District Judge

CASE NO.: 5:16-CV-06370-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR EQUITABLE RELIEF AND JUDGMENT ON UCL CLAIM

15