J. Noah Hagey, Esq. (SBN: 262331)
    hagey@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
    borden@braunhagey.com
Jeffrey M. Theodore, Esq. (SBN: 324823)
    theodore@braunhagey.com
Ronald J. Fisher, Esq. (SBN: 298660)
    fisher@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR PLAINTIFF
OPTRONIC TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPTRONIC TECHNOLOGIES, INC., d/b/a Orion Telescopes & Binoculars ®, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>NINGBO SUNNY ELECTRONIC CO., LTD., SUNNY OPTICS, INC., MEADE INSTRUMENTS CORP., and DOES 1 - 25,<br><br>Defendant. | Case No: 5:16-cv-06370-EJD-VKD<br><br>**PLAINTIFF OPTRONIC TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION FOR CIVIL CONTEMPT AGAINST DEFENDANT NINGBO SUNNY ELECTRONIC CO., LTD.'S CHAIRMAN PETER NI; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

| | |
|---|---|
| **Date:** | June 11, 2020 |
| **Time:** | 9:00 a.m. |
| **Judge:** | Hon. Edward J. Davila |
| **Location:** | Courtroom 4 – 5th Fl. |
| | |
| **Compl. Filed:** | Nov. 1, 2016 |
| **First Am. Compl.:** | Nov. 3, 2017 |
| **Final Pretrial Conf.:** | Oct. 10, 2019 |
| **Trial Date:** | Oct. 15, 2019 |
| | |
| **Final Judgment:** | April 9, 2020 |

1

## NOTICE OF MOTION AND MOTION

2      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that on June 11, 2020, at 9:00 a.m., in Courtroom 4, 5th Floor,

4 280 South 1st Street, San Jose, California, before the Honorable Edward J. Davila, Plaintiff

5 Optronic Technologies, Inc. ("Orion") will and hereby does move this Court for an Order holding

6 Defendant Ningbo Sunny Electronic Co., Ltd.'s Chairman Wenjun "Peter" Ni, and Directors Yin

7 Yiping and Dong Yong Xue in civil contempt for obstructing justice and for Defendant Ningbo

8 Sunny Electronic Co., Ltd.'s willful disobedience of the Court's March 9, 2020 Order re Motion

9 for Order to Show Cause (Dkt. No. 598).

10      This Motion is based upon this Notice of Motion and Motion, the points and authorities in

11 the accompanying Memorandum of Points and Authorities, the Declaration of Matthew Borden

12 filed concurrently herewith, the complete files and records in this action, oral argument of counsel,

13 authorities that may be presented at or before the hearing, and such other and further matters as this

14 Court may consider.

15

16 Dated:  April 23, 2020                                        Respectfully submitted,

17                                                              BRAUNHAGEY & BORDEN LLP

18
                                                              By:   /s/ Matthew Borden
19                                                                    Matthew Borden

20                                                              Attorneys for Plaintiff OPTRONIC
                                                              TECHNOLOGIES, INC. d/b/a Orion
21                                                              Telescopes & Binoculars ®

22

23

24

25

26

27

28

1    Plaintiff Optronic Technologies, Inc., d/b/a Orion Telescopes & Binoculars ® ("Orion")

2  respectfully submits this Memorandum in support of its Motion for Civil Contempt Against

3  Defendant Ningbo Sunny Electronic Co., Ltd.'s Chairman Wenjun "Peter" Ni, and Directors Yin

4  Yiping and Dong Yong Xue (collectively, the "Individual Contemnors").

5                                **INTRODUCTION**

6    Orion respectfully moves the Court to issue an order holding Chairman Ni and Defendant's

7  Directors Yin Yiping and Dong Yong Xue in civil contempt for Defendant's willful disobedience

8  of the Court's Order re Motion for Order to Show Cause (Dkt. No. 598) (the "OSC Order").  In the

9  OSC Order, the Court sought to remedy a fraud Defendant perpetrated on the Court by ordering,

10  *inter alia*, that Defendant return the $4,184,057 it smuggled out of the country with its co-

11  conspirator Celestron's assistance and that it provide a declaration under oath identifying assets and

12  explaining what it had done to comply with post-trial discovery.  Defendant has refused to comply

13  with the Court's orders.  Defendant has not returned the money.  (Declaration of Matthew Borden

14  ("Borden Decl.") ¶ 2.)  Defendant has also filed a "Notice" that expressly defies the Court's OSC

15  Order, stating "Ningbo Sunny will not submit a declaration."  (Dkt. No. 611 at 1:13-14.)

16    Chairman Ni orchestrated the underlying misconduct by submitting a false declaration,

17  which the Court relied on in denying Orion's motions to prevent Defendant from removing assets

18  from the jurisdiction.  He has continued this wrongful course of conduct, along with Defendant's

19  other two owners/directors, by causing Defendant's willful and ongoing noncompliance with the

20  Court's OSC Order to remedy his fraud.

21    Under long-standing U.S. Supreme Court precedent, where (as here) individuals control a

22  corporate contemnor, the individuals can be held personally responsible for the wrongful conduct.

23  *See Wilson v. United States*, 221 U.S. 361, 376 (1911) (recognizing that those responsible for

24  corporation's conduct can be punished for contempt for failing to take appropriate action within

25  their power).  Such an Order is appropriate under the facts and circumstances here because

26  Chairman Ni is Defendant's final decisionmaker and submitted the false declaration in bad faith.

27  Chairman Ni should therefore be held personally responsible for perpetrating a fraud on the Court

28  and for Defendant's willful refusal to comply with the OSC Order.  Similarly, Chairman Ni

1   testified at trial that he needs Ms. Xue's and Mr. Yiping's opinions to make key corporate decisions

2   for Defendant.  If Defendant fails to bring itself into compliance with the Court's OSC Order

3   within 21 days, the Court should permit Orion to execute against the personal assets of Chairman

4   Ni and Directors Xue and Yiping for the amounts owed under the Court's Final Judgment.  At

5   minimum, Orion should be permitted to collect the $4,184,057 that Defendant and its co-

6   conspirator Celestron transferred to China that the Court ordered Defendant to return in the OSC

7   Order.  Orion has no other adequate remedy.

8                                      **FACTUAL BACKGROUND**

9           On November 26, 2019, and after a six-week trial, the jury entered a verdict in Orion's

10  favor on all counts. The jury found that Ningbo Sunny conspired with horizontal and vertical

11  competitors to fix the price of telescopes, allocate the market for telescopes and accessories, and

12  allocate customers.  (Dkt. No. 501.)  It also found that Ningbo Sunny engaged in anticompetitive

13  activity, attempted to monopolize, and conspired to monopolize the market for telescopes and

14  accessories.  (*Id.*)  On December 5, 2019, the Court entered a partial judgment on Orion's damages

15  claims awarding Orion $50,400,000 after trebling. (Dkt. No. 518.)

16          As the Court detailed in its OSC Order, Orion immediately and repeatedly sought to stop

17  Defendant's judgment avoidance plan by asking the Court to enjoin Defendant from transferring

18  accounts receivable to China and to lift the automatic stay on judgment enforcement.  (OSC Order

19  at 1:24-27.)  On December 10, 2019, Defendant filed a declaration from Chairman Ni, representing

20  that "Ningbo will not transfer any of its cash or other assets located in the United States to a

21  location outside of the United States other than in the ordinary course of business while post-trial

22  motions and appeals remain pending."  (Dkt. No. 521-1 ¶ 2.)  In reliance on Ni's Declaration and

23  assurances from Defendant's lawyers, the Court declined to issue the requested relief.  (OSC Order

24  at 2:3-27, 3:15-17.)

25          Notwithstanding Chairman Ni's sworn representation, Defendant asked its co-conspirator

26  Celestron to make early payment of $4,184,057 in accounts receivable to help avoid the Court's

27  Judgment just two days before the judgment enforcement stay expired.  (*Id.* at 3:1-11.)  Defendant

28  then attempted to conceal its misconduct by failing to produce the emails evidencing this

1  transaction.  (*Id.* at 3:18-24.)  Defendant then committed further misconduct by submitting a

2  number of false arguments to the Court in an effort to avoid being sanctioned for defrauding the

3  Court.  For example, Defendant argued that it did not produce the January 2020 emails showing its

4  early payment request to Celestron because it thought the discovery cut-off was December 31,

5  2019 - even though, as the Court pointed out, it had produced 72 documents postdating December

6  31, 2019.  (OSC Order at 5:20-22.)  Similarly, Defendant's Vice-President submitted a declaration

7  claiming that early payment was "ordinary" for Defendant, when his own email requesting early

8  payment and the documents he attached to his declaration showed just the opposite.  (*Id.* at 4:22-

9  5:15.)

10      The Court found this conduct was in bad faith, and warranted the inherent powers sanctions

11  that Defendant continues to defy.  (*Id*. at 5:23.)

12                            **<u>ARGUMENT</u>**

13  **I.   THE COURT IS VESTED WITH BROAD AUTHORITY TO ENFORCE ITS
        ORDERS BY HOLDING CORPORATE OFFICERS IN CIVIL CONTEMPT**

14
15      "A court has the inherent power to punish for civil or criminal contempt any obstruction of

16  justice relating to any judicial proceedings."  *Lambert v. Montana*, 545 F.2d 87, 88 (9th Cir. 1976);

17  *see also Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) ("Sanctions for

18  civil contempt may be imposed to coerce obedience to a court order, or to compensate the party

19  pursuing the contempt action for injuries resulting from the contemptuous behavior, or both.").  To

20  support a finding of civil contempt, the moving party must show, by "clear and convincing"

21  evidence, *Go-Video, Inc. v. Motion Picture Ass'n of Am.*, 10 F.3d 693, 695 (9th Cir. 1993), the

22  contemnor's "willful disobedience of a court order."  *Shuffler v. Heritage Bank*, 720 F.2d 1141,

23  1146 (9th Cir. 1983).  Federal Rule of Civil Procedure 37 similarly empowers courts to "treat[ ] as

24  contempt of court the failure to obey" a court order directly against an officer or director of a

25  corporate party.  Fed. R. Civ. P. 37(b)(2)(A)(vii).

26      Sanctions for civil contempt are properly imposed against non-parties.  *See, e.g.*, *Methven &*

27  *Assocs. Prof'l Corp. v. Kelley*, 669 F. App'x 923, 924 (9th Cir. 2016) (recognizing "findings

28  of civil contempt against non-parties"); *David v. Hooker, Ltd.*, 560 F.2d 412, 416 (9th Cir. 1977)

1   (same).  Also, Federal Rules of Civil Procedure 70 and 71 allow the limited enforcement of

2   judgments against non-parties.  *See, e.g.*, *Westlake North Property Owners Ass'n v. Thousand*

3   *Oaks*, 915 F.2d 1301, 1304 (9th Cir. 1990) ("Rule 71 was intended to assure that process be made

4   available to enforce court orders in favor of and against persons who are properly affected by them,

5   even if they are not parties to the action.").

6          Court have long recognized that contempt sanctions against non-party corporate presidents

7   are appropriate means to address a corporation's willful disobedience of a court order, particularly

8   where - as here - the president aided and abetted the violation of the court order or judgment.  *See*

9   *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998) (holding non-party

10  corporate president in contempt where he "flagrantly and deliberately aided and abetted

11  [Defendants] in violating the express terms of the judgment").  As the U.S. Supreme Court

12  recognized in 1911, those responsible for a corporation's conduct can be punished for contempt for

13  failing to take appropriate action within their power:

14                A command to the corporation is in effect a command to those who
                  are officially responsible for the conduct of its affairs.  If they,

15                apprised of the writ directed to the corporation, prevent compliance
                  or fail to take appropriate action within their power for the

16                performance of the corporate duty, they, no less than the corporation
                  itself, are guilty of disobedience, and may be punished for contempt.

17  *Wilson v. United States*, 221 U.S. 361, 376 (1911).  Federal courts throughout the country hold

18  likewise.[1]  "[T]o be held liable in contempt, it is necessary that a non-party respondent must either

19

20  [1] *Accord Elec. Workers Pension Trust Fund of Local Union 58, IBEW v. Gary's Elec. Serv. Co.*,
    340 F.3d 373, 383 (6th Cir. 2003) ("[B]ecause a civil contempt ruling either attempts to coerce

21  compliance or compensate the complainant for losses, it is fully appropriate to impose judicial
    sanctions on the nonparty corporate officer."); *NLRB v. Hopwood Retinning Co.*, 104 F.2d 302, 305

22  (2d Cir. 1939) ("As an important officer and agent of the Hopwood Company, Hopwood should be
    held in contempt for his company's non-compliance with the court's order."); *Jones v. Regent Asset*

23  *Mgmt. Solutions, Inc.*, 2011 WL 2037626 at *3 (D. Conn. May 24, 2011) (noting that it was proper
    to hold non-party in contempt where "there was a strong degree of identity between Defendant [ ]

24  and its Chairman, CEO, and sole stockholder"); *Bd. of Trustees of the Ohio Carpenters' Pension*
    *Fund v. Eskay Floor Covering, Inc.*, 2010 WL 2990166, at *3 (N.D. Ohio July 29, 2010) ("A

25  corporate officer may be held in contempt personally for the corporation's failure to follow a court
    order when there is knowledge of the court's order, and responsibility combined with the officer's

26  power to take appropriate action, even though the corporate officer is not personally identified in
    the order."); *Thomas Am. Corp. v. Fitzgerald*, 175 F.R.D. 462, 464, 466-67 (S.D.N.Y. 1997)

27  (sanctioning corporate plaintiff's former CEO under Rule 11 for filing declaration that contained
    factual misstatement); *Helmac Products Corp. v. Roth (Plastics) Corp.*, 150 F.R.D. 563, 564-68

28

                                                     4              Case No. 5:16-cv-06370-EJD-VKD

1  abet the defendant [in violating the court's order] or must be legally identified with him," and have

2  "actual notice" of the order.  *NLRB v. Sequoia District Council of Carpenters*, 568 F.2d 628, 633

3  (9th Cir. 1977).

4         Contempt is also a remedy for defying a judgment.  Judge Alsup has given recent guidance

5  concerning the availability of contempt as a remedy for a defendant's failure to satisfy a judgment.

6  *See SEC v. Goldfarb*, No. C 11-00938 WHA, 2012 WL 2343668 (N.D. Cal. June 20, 2012).  "If the

7  party seeking civil contempt makes a prima facie showing that a defendant did not comply with the

8  judgment, the burden of production shifts to the defendant to show inability to comply with the

9  judgment."  *Id.* at *4 (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). "To satisfy this

10  burden, a defendant must show 'categorically and in detail' why it was unable to comply."  *Id.*

11  (citing *NLRB v. Trans. Ocean Export Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973)). "A

12  defendant cannot avoid civil contempt if its inability to pay was self-induced."  *Id.* (citing *United*

13  *States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980)).

14         *Electric Workers Pension Trust Fund v. Gary's Elec. Serv. Co.*, 340 F.3d 373 (6th Cir.

15  2003), is also instructive here.  That case arose from the defendant's "total disregard for [and]

16  cho[ic]e not to comply with the district court's judgment."  *Id.* at 377.  The Court of Appeals noted

17  that "[w]hen a court seeks to enforce its order or supervise its judgment, one weapon in its arsenal

18  is contempt of court,"  *id.* at 378, that the Supreme Court's decision in *Rylander* requires the

19  contemnor to show that his present inability to comply is not his own fault or the result of self-

20  induced inability, and held:

21         [T]aking our cues from the Supreme Court in *Rylander* and *Wilson*,
        we determine that if a corporate officer avoids a court's order to the
22        corporation by failing to take action or attempt compliance, "they, no
        less than the corporation itself, are guilty of disobedience, and may
23        be punished for contempt."  Moreover, we hold that because a civil
        contempt ruling either attempts to coerce compliance or compensate
24        the complainant for losses, it is fully appropriate to impose judicial
        sanctions on the nonparty corporate officer.

25  *Id.* at 383 (quoting *Wilson*, 221 U.S. at 376).  The Court of Appeals instructed the district court that

26  the non-party corporate officer could be held liable for an amount equivalent to the underlying

27  _____

28  (E.D.M.I. 1993) (court has inherent power to sanction non-party not subject to court order if non-
    party had substantial interest in outcome of litigation and substantially participated in proceedings).

judgment even though he was never sued in his individual capacity: "Because one of the purposes of civil contempt is to compensate a complainant for its losses, we note that [the non-party officer] can be fined in an amount equivalent to the original judgment. The district court should consider to what extent [the contemnor] deliberately caused the underlying judgment to remain unpaid and should sanction accordingly." *Id.* at 383 n.13.

In sum, there is no question that the Court is vested with broad authority to hold Chairman Ni and Directors Xue and Yiping in civil contempt - both to coerce Defendant's obedience with the OSC Order and Judgment, and to compensate Orion for injuries caused by Defendant's defiance.

## II.     THE INDIVIDUAL CONTEMNORS SHOULD BE HELD IN CIVIL CONTEMPT

Civil contempt remedies against Defendant's Chairman Peter Ni and Directors Xue and Yiping are necessary to coerce Defendant's obedience with the OSC Order, and to compensate Orion for injuries caused by their contempt. The Court should hold the Individual Contemnors for in civil contempt for at least four reasons: (1) Chairman Ni perpetrated a fraud on this Court by submitting his false declaration; (2) Chairman Ni aided and abetted Defendant's violation of the OSC Order; (3) the Individual Contemnors had the responsibility and power to take appropriate action; and (4) the Individual Contemnors had actual knowledge of the OSC Order and judgment.

First, Chairman Ni perpetrated a fraud on this Court by submitting his false declaration. On December 19, 2019, when Chairman Ni submitted his declaration under penalty of perjury to the Court, he knew that Defendant planned to ask its co-conspirator Celestron to make an early payment of approximately $4.2 million in accounts receivable. And he knew that was not in the ordinary course of business under the relevant supply agreements giving Celestron a 100-day window in which to pay. Those accounts would not have ordinarily become due until at least late January 2020, after the 30-day stay on enforcement of the judgment expired on January 4. (Dkt. No. 598 at 3:1-5.)

With full knowledge of its own Chairman's representations to this Court two weeks earlier, Defendant asked its co-conspirator Celestron to make that early payment. (Dkt. No. 598 at 3:5-9.) Chairman Ni's own testimony establishes that he must have known and approved of Defendant's decision to ask Celestron for early payment. For example, he testified at trial that he personally

1   had to approve all big orders. (Borden Decl. **Ex. 1** Trial Tr. 412:17-22.) He also testified at his

2   deposition that all decisions about customer credit must be approved by him. (Borden Decl. **Ex. 2**

3   Ni Dep. at 20:6-21.) It is highly likely Ms. Xue and Mr. Yiping were aware as well. (*Id.* at 15:11-

4   13 ["I manage the daily operation. Any major decisions have to be decided by the board."].) The

5   next day, Celestron paid $4,184,057.70 to Defendant's account with the Agricultural Bank of

6   China. (Dkt. No. 598 at 3:9-11.) And now those funds are gone and unavailable to satisfy the

7   Judgment or the amount Ningbo Sunny was ordered to return under the Court's OSC Order.

8   Chairman Ni personally enabled this course of conduct by perpetrating a fraud on the Court

9   through the submission of his perjured declaration, which the Court repeatedly relied on in denying

10  Orion's multiple motions for temporary restraining orders. Consequently, he should be held in

11  civil contempt.

12      Second, Chairman Ni also aided and abetted Defendant's violation of the OSC Order. The

13  OSC Order ordered, *inter alia*, Defendant to "pay Orion the $4,184,057 Defendant received from

14  Celestron" by March 23, 2020. Defendant has taken no steps to do so. Chairman Ni intended to

15  facilitate Defendant's willful violation of the OSC Order. He intended that Defendant would

16  exfiltrate nearly $4.2 million outside the U.S. to which Orion is entitled and now may have no way

17  to collect. And he actively participated in and supported the fraud by submitting his false

18  declaration on which the Court relied.

19      Third, the Individual Contemnors had the responsibility and power to take appropriate

20  action, even though they are not personally identified in the OSC Order and judgment. Defendant

21  has represented Chairman Ni's responsibilities to the Court as follows: "Peter Ni: President and

22  general manager. Responsibilities include management and oversight of the entire company."

23  (Dkt. No. 620 at 2.) As noted by the Court, Chairman Ni personally acquired Defendant Sunny

24  Optics, Inc., in his own name, and then sold it to Ningbo Sunny for $1. (*See* Dkt. No. 629 at 11:16-

25  18.) There can be no doubt that Chairman Ni controls - and ultimately profits - from the

26  wrongdoing at issue here, and he should be responsible for stopping it.

27      Similarly, Mr. Yiping and Ms. Xue are both owners and Directors of Defendant. (Borden

28  Decl. **Ex. 3** Chiu 30(b)(6) Dep. at 117:1-5 ["A. There are three owners. Q. Who are they? A. Peter

1  Ni. The second individual is, last name Y-I-N. First name, Y-I. Second word P-I-N-G.  And the

2  third partner or owner is Dong Yong Xue."].)  Chairman Ni testified under oath that they are also

3  responsible for making Defendant's key decisions.  (*Id.* **Ex. 1** Trial Tr. at 764:7-11 [identifying Mr.

4  Yiping and Ms. Xue as the other shareholders of Defendant]; Trial Tr. at 412:5-9 ["Q. Right. And

5  for each of the three defendants, you're the final decision-maker; right?  A. For daily operations,

6  yes. But for major decisions, we would have to get opinions from other shareholders and board

7  members."]; *id*. **Ex. 3** Chiu 30(b)(6) Dep. at 122:3-11 [identifying Chairman Ni, Mr. Yiping and

8  Ms. Xue as being on Defendant's Board of Directors].)

9       "Inability to comply with an order is ordinarily a complete defense to a charge of contempt.

10  *An exception exists when the person charged is responsible for the inability to comply.*"  *United*

11  *States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980) (emphasis added).  Even though Chairman Ni and

12  his partners Directors Yiping and Xue have the power to make Defendant comply with the Court's

13  Orders, Defendant has instead repeatedly stated that they will not do so.  For starters, Defendant

14  has not returned the $4.2 million as the Court has ordered.  (Borden Decl. ¶ 2.)  Even if Defendant

15  claims to have already spent this money, which was fraudulently obtained, Chairman Ni and his

16  partners can and should nevertheless be held in contempt.  Defendant and Chairman Ni knew from

17  the time of the jury verdict that this money was not Defendant's to spend.  So any claimed inability

18  to pay is self-inflicted, based on fraud, and is not a defense for failing to comply with the OSC

19  Order.

20       Further, Defendant has on at least three separate occasions reiterated its refusal to comply

21  with this Court's post-trial Orders.  First, on March 11, Defendant submitted a Notice stating that it

22  would not provide "a declaration describing with specificity how Ningbo Sunny conducted a search

23  for documents responsive to Orion's post-judgment document requests."  (Dkt. No. 603 at 2.)

24  Then, on March 16, Defendant submitted another Notice stating that "Ningbo Sunny will not

25  submit a declaration" and that "to avoid any further troublesome, Ningbo Sunny will not sign any

26

27

28

1  further declaration." (Dkt. No. 611 at 2-3.) Finally, on March 20, Defendant submitted a third

2  Notice stating, *inter alia*, that Defendant would not provide a declaration. (Dkt. No. 620 at 1.)[2]

3          Fourth, the Individual Contemnors have actual knowledge of the OSC Order. It directly

4  involved Chairman Ni's conduct. It was served on Defendant's lawyers. Further, Defendant's

5  lawyers filed a March 16 Notice explaining that Defendant would not comply with the OSC Order,

6  and admitting that "many of Ningbo Sunny's employees are aware of the judgment of this case."

7  (Dkt. No. 611 at 1:13-14, 2:19-20.) And Defendant's Chinese counsel has made clear that

8  Defendant's defiance of this Court's Orders is not only willful, but a considered business decision.

9  (Dkt. No. 602 at 1:13-14 ("According to Ningbo Sunny's Chinese counsel James Zou, Ningbo

10  Sunny will not submit a declaration. Mr. Zou provided the following basis for Ningbo Sunny's

11  decision . . . ."); Dkt. No. 620 at 1:13-16 (Mr. Zou again refusing to provide Court-ordered

12  declaration).

13  **III.    REQUESTED RELIEF**

14          Compensatory sanctions should be awarded to coerce compliance with the OSC Order and

15  to compensate for Orion's injuries resulting from the Individual Contemnors' contempt. Defendant

16  owes Orion over $52 million. Yet Chairman Ni substantially assisted Defendant and co-

17  conspirator Celestron in exfiltrating $4,184,057 of that amount into China from the U.S., and

18  Defendant has refused to comply with the Court's Order requiring it to return the funds. The Court

19  should order the Individual Contemnors, who control Defendant's choice to disobey the Court's

20  Order, to pay at least this $4.2 million until such time as Defendant complies with the OSC Order.

21  To coerce such compliance, the Court should also hold the Individual Contemnors liable for the

22  balance of the Court's Judgment if Defendant fails to bring itself into compliance with the OSC

23

24  [2] Even accepting the various excuses offered by Defendant as true – a presumption that no longer
25  applies to Defendant's submissions – they do not excuse Defendant's repeated failures to comply
     with Court Orders. *See, e.g.*, *Order Imposing Terminating Sanctions* [Dkt. No. 993], *Loop AI Labs*
26  *Inc. v. Gatti*, No. 15-cv-00798, at *22 (N.D. Cal. Mar. 9, 2017) (Gilliam, J.) ("Counsel's [ ]
     contention . . . may explain her documented and repeated failure to comply with Judge
27  Ryu's orders, but in no way excuses that failure."); *Louen v. Twedt*, 2007 WL 915226, at *6 (E.D.
     Cal. Mar. 26, 2007) (holding that counsel's citation to supporting case law justifying his contention
28  did not "excuse [his] repeated failures to comply with court orders").

1  Order within 21 days.  Finally, the award should include Orion's attorneys' fees and costs for

2  bringing this motion.

3       Established precedent allows for these compensatory remedies.  As a preliminary matter, it

4  is well-established that the Individual Contemnors can be punished for contempt for failing to take

5  appropriate action within their power to make Defendant comply with this Court's orders.  *See*

6  *Wilson*, 221 U.S. at 376.  And it is axiomatic that a court may impose fines "to coerce compliance

7  with a court order or to compensate an injured party for the damages caused by the contumacious

8  party's failure to comply."  *Lovell v. Evergreen Res., Inc.*, No. C-88-3467 DLJ, 1995 WL 761269,

9  at *5 (N.D. Cal. Dec. 15, 1995).

10       "If an injured party can show in detail actual losses caused by the violation, then the Court

11  is *required* to impose a fine on the noncomplying party."  *Id.* (emphasis added).  The Court has

12  already held that Orion suffered a $4.2 million loss caused by Defendant's contemptuous conduct.

13  (*See* OSC Order at 4-5.)  Compensatory sanctions in the amount of $4,184,057 are necessary to

14  compensate Orion for the damages caused by Chairman Ni's contempt.

15       The Court also noted recently that "Defendant's post-judgment misconduct . . . weigh[s] in

16  favor of finding a threat of irreparable injury" to Orion.  (*See* Dkt. No. 636 at 4:18-21.)  As

17  Defendant's principals and decisionmakers, the Individual Contemnors can be fined in an amount

18  equivalent to the original judgment.  *See Goldfarb*, 2012 WL 2343668 at *4; *accord Elec. Workers*,

19  340 F.3d 373, 383.  To coerce Defendant's compliance with the OSC Order, an award providing

20  Orion with an alternative route of collecting the judgment amount from the Individual Contemnors

21  until such time as Defendant complies with the OSC Order can, and should, be awarded.

22       Finally, Orion should recover an award of attorneys' fees and costs.  *See Lovell*, 1995 WL

23  761269 at *5 ("An award of attorneys' fees and costs is also an appropriate remedy for civil

24  contempt and is wholly independent of an award of compensatory damages.").  To date, Orion has

25  incurred reasonable attorneys' fees totaling $19,142.50 bringing this motion.  (Borden Decl. ¶ 3.)

26  **<u>CONCLUSION</u>**

27       For the foregoing reasons, Orion respectfully requests that its motion be granted in the form

28  of the attached Proposed Order.

1  Dated:  April 23, 2020                          Respectfully submitted,

2                                                  BRAUNHAGEY & BORDEN LLP

3
                                                   By:   /s/ Matthew Borden
4                                                        MATTHEW BORDEN

5
                                                   Attorneys for Plaintiff OPTRONIC
6                                                  TECHNOLOGIES, INC. d/b/a Orion
                                                   Telescopes & Binoculars ®
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORION'S NOTICE OF MOTION AND MOTION FOR CIVIL CONTEMPT