1

2

3

4                     UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6                          SAN JOSE DIVISION

7

8    OPTRONIC TECHNOLOGIES, INC,           Case No.  5:16-cv-06370-EJD

                    Plaintiff,
9                                          **ORDER GRANTING IN PART AND**
          v.                               **DENYING IN PART MOTION FOR**
10                                         **SANCTIONS FOR CIVIL CONTEMPT**

11   NINGBO SUNNY ELECTRONIC CO.,          Re: Dkt. No. 645
     LTD., et al.,
12                  Defendants.

13         Plaintiff Optronic Technologies, Inc. ("Orion") moves this Court for an Order holding

14   Defendant Ningbo Sunny Electronic Co., Ltd.'s Chairman Wenjun "Peter" Ni, and Directors Yin

15   Yiping ("Mr. Yin") and Dong Yong Xue ("Ms. Dong," and together with Mr. Yin, the

16   "Directors") in civil contempt for Ningbo Sunny's failure to comply with this Court's March 9,

17   2020 Order Re Motion for Order to Show Cause (Dkt. No. 598).  The Court has considered the

18   parties' papers and heard their oral arguments.  For the reasons discussed below, the Court

19   GRANTS the motion in part and DENIES the motion in part.

20   **I.  Background**

21         The facts and history of this case are well known to the Court and the Parties, and the

22   Court recounts only the facts relevant to the present motion.  On November 26, 2019, the jury

23   entered a verdict in Orion's favor on all counts.  On December 5, 2019, the Court entered a partial

24   judgment on Orion's damages claims awarding Orion $50,400,000 after trebling.  Dkt. No 518.

25         After the jury returned its verdict, Orion orally moved the Court for an order restraining

26   Ningbo Sunny from removing assets—specifically, accounts receivable—from the United States.

27   Case No.: 5:16-cv-06370-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS FOR
28   CIVIL CONTEMPT
                                              1

Trial Tr. 2822.  The Parties fully briefed the motion and the Court held a hearing on the matter.

Following the hearing, Ningbo Sunny filed a declaration from its President Peter Ni, dated

December 10, 2019, that stated, in relevant part, "Ningbo [Sunny] will not transfer any of its cash

or other assets located in the United States to a location outside of the United States other than in

the ordinary course of business while post-trial motions and appeals remain pending."  Dkt. No.

521-1 (the "Ni Declaration").  Relying on the Ni Declaration and Ningbo Sunny's representations

at the hearing, he Court denied the First TRO Application.  Dkt. No. 524.

On January 6, 2020, Orion brought its second application for an order restraining Ningbo

Sunny from removing assets from the United States (the "Second TRO Application").  Dkt. No.

537.  Ningbo Sunny opposed the motion arguing that Orion had not shown any need for the TRO

and emphasizing the Ni Declaration.  Dkt. No. 548 at 6.  The Court denied the Second TRO

Application finding that Orion had not shown more than speculation that Ningbo Sunny would

improperly remove assets from the United States.  Dkt. No. 559 at 5.

In the course of post-judgment discovery, Orion learned that on January 1, 2020, Ningbo

Sunny had requested early payment from one of its co-conspirators, Celestron, and that the next

day, Celestron paid $4,184,057.70 to Ningbo Sunny's account with the Agricultural Bank of

China.  Dkt. No. 578-2, Borden Ex. 1.  On February 13, 2020, Orion filed a motion for an Order to

Show Cause why Ningbo Sunny should not be sanctioned for falsely representing to the Court

under oath that Defendant would not transfer any assets outside of the U.S. except in the ordinary

course of business.  Dkt. No. 578.

On March 9, 2020, the Court issued the Order Re Motion for Order to Show Cause levying

certain sanctions against Defendant Ningbo Sunny.  Dkt. No. 598 (the "Sanctions Order").  In the

Sanctions Order, the Court found that Ningbo Sunny had acted in bad faith by submitting the Ni

Declaration, which falsely stated that Ningbo Sunny would not transfer assets out of the country

and by affirmatively relying on that declaration to oppose Orion's first and second applications for

a TRO, despite knowing that its conduct had contradicted the Ni Declaration.  The Court further

United States District Court
Northern District of California

1   found that Ningbo Sunny had attempted to conceal its misconduct by failing to produce the emails

2   evidencing the transaction.  Among other sanctions, the Court ordered Ningbo Sunny to pay Orion

3   the $4,184,057 that it had received from Celestron as well as the attorneys' fees and costs incurred

4   by Orion in connection with the motion for an order to show cause.  The Court further ordered

5   Ningbo Sunny to provide a declaration by March 16, 2020 describing the actions it took to ensure

6   compliance with post-judgment discovery.

7          On March 16, 2020, Ningbo Sunny filed a Notice Regarding Court's Order Re Motion for

8   Order to Show Cause.  Dkt. No. 611 (the "Notice").  The Notice stated that "[a]ccording to

9   Ningbo Sunny's Chinese counsel James Zou, Ningbo Sunny will not submit a declaration."

10  Quoting Mr. Zou, the Notice asserted that Ningbo Sunny had not acted in bad faith, that Ningbo

11  Sunny cannot pay Orion the $4 million because it "returned significant amount of money to its

12  bank," that the Agricultural Bank of China would have sued Ningbo Sunny had it not repaid an

13  outstanding loan using the money Celestron transferred, and that no one was available to make the

14  Court's requested declaration.

15         On April 23, 2020 Orion filed the present motion for civil contempt against non-parties

16  Mr. Ni, Ms. Dong, and Mr. Yin.  Dkt. No 645 (the "Contempt Motion").  Orion seeks to hold Mr.

17  Ni and the Directors personally liable for the $4,184,057 owed to Orion pursuant to the Sanctions

18  Order.  The Contempt Motion further seeks to hold Mr. Ni and the Directors liable for the full

19  $50,400,000 judgment as an additional coercive sanction, and requests $19,142.50 in fees and

20  costs for bringing the Contempt Motion.  After the Contempt Motion was filed, prior counsel to

21  Ningbo Sunny filed an administrative motion to enlarge the time for opposing the motion in order

22  to allow Mr. Ni and the Directors time to obtain independent counsel.  Dkt. No. 652.  In support of

23  that motion, Ningbo Sunny filed the Declaration of Leo Caseria, in which Mr. Caseria stated, in

24  relevant part, that the Contempt Motion had been provided to Mr. Ni and Ningbo Sunny's Chinese

25  Counsel James Zou.  Dkt. No. 652-1 (the "Caseria Decl.") at ¶ 3.

26         Mr. Ni and the Directors filed separate oppositions to the Contempt Motion.  Dkt. Nos. 670

27

28  Case No.: 5:16-cv-06370-EJD
    ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS FOR
    CIVIL CONTEMPT
                                                3

United States District Court
Northern District of California

1   ("Ni Opposition"), 671 ("Directors Opposition").  According to both oppositions, Ningbo Sunny

2   paid Orion's attorneys' fees and costs as ordered in the Court's May 11 Order Granting

3   Application for Attorneys' Fees and Costs pursuant to the Sanctions Order.  *See* Ni Opp., p. 4;

4   Directors Opp. p. 4.  The Oppositions further state that on or about May 23, 3030, Mr. Yin and

5   Ms. Dong resigned from their positions as directors on Ningbo Sunny's board.  *Id.*

6   **II.  Legal Standard**

7   District courts have the inherent power to enforce their orders through civil contempt.

8   *Spallone v. United States*, 493 U.S. 265, 276 (1990); *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d

9   1025, 1033 (9th Cir. 2008).  "Civil contempt . . . consists of a party's disobedience to a specific

10  and definite court order by failure to take all reasonable steps within the party's power to

11  comply."  *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th

12  Cir. 2014) (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th

13  Cir. 1993)); *see also In re Crystal Palace Gambling Hall, Inc.,* 817 F.2d 1361, 1365 (9th Cir.

14  1987) ("A person fails to act as ordered by the court when he fails to take all the reasonable steps

15  within his power to insure compliance with the court's order.") (citation, quotation marks, and

16  alterations omitted).  "The contempt 'need not be willful,' and there is no good faith exception to

17  the requirement of obedience to a court order."  *In re Dual-Deck Video,* 10 F.3d at 695 (citing *In*

18  *re Crystal Palace,* 817 F.2d at 1365).

19  "Civil contempt sanctions . . . are employed for two purposes: to coerce the defendant into

20  compliance with the court's order, and to compensate the complainant for losses sustained."

21  *Whittaker Corp. v. Execuair Corp.,* 953 F.2d 510, 517 (9th Cir. 1992) (citing *United States v.*

22  *United Mine Workers of Am.,* 330 U.S. 258, 303-04 (1947)).  "Generally, the minimum sanction

23  necessary to obtain compliance is to be imposed."  *Id.* (citations omitted).  "Unlike the punitive

24  nature of criminal sanctions, civil sanctions are wholly remedial."  *Id.* (citation omitted).  "A court

25  has wide latitude in determining whether there has been contemptuous defiance of its order."

26  *Gifford v. Heckler,* 741 F.2d 263, 265–66 (9th Cir. 1984) (citing *Neebars, Inc. v. Long Bar*

27  Case No.: 5:16-cv-06370-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS FOR
    CIVIL CONTEMPT

United States District Court
Northern District of California

4

1     *Grinding, Inc.,* 438 F.2d 47, 48 (9th Cir. 1971)).  Trial courts also have power to award reasonable

2     attorneys' fees and costs against the contemnor as a sanction for disobedience of its orders.  *Perry*

3     *v. O'Donnell,* 759 F.2d 702, 705 (9th Cir. 1985).

4        "It is well-settled that a court's contempt power extends to non-parties who have notice of

5     the court's order and the responsibility to comply with it."  *United States v. Montgomery Glob.*

6     *Advisors V LLC*, No. C-04-00733EDL, 2006 WL 950102, at *2 (N.D. Cal. Mar. 2, 2006) (citing

7     *Chicago Truck Drivers v. Brotherhood Labor Leasing,* 207 F.3d 500, 506-07 (8th Cir. 2000)); *see*

8     *also Inst. of Cetacean Research*, 774 F.3d at 949 ("It has long been settled law that a person with

9     notice of an injunction may be held in contempt for aiding and abetting a party in violating it.").

10    In the Ninth Circuit, a non-party can be liable for contempt where the non-party has notice of the

11    order and (1) aids the party in violating the court order or (2) is legally identified with

12    him.  *Montgomery Glob. Advisors V LLC*, 2006 WL 950102, at *2 (citing *Peterson,* 140 F.3d at

13    1323.  "The party alleging civil contempt must demonstrate that the alleged contemnor violated

14    the court's order by 'clear and convincing evidence,' not merely a preponderance of the

15    evidence."  *In re Dual-Deck Video,* 10 F.3d at 695 (citing *Vertex Distrib., Inc. v. Falcon Foam*

16    *Plastics, Inc.,* 689 F.2d 885, 889 (9th Cir. 1982)).

17       The Federal Rules of Civil Procedure specifically "provide for enforcement of judgments

18    against non-parties in limited circumstances."  *Peterson v. Highland Music, Inc.,* 140 F.3d 1313,

19    1323 (9th Cir.1998).  Pursuant to Federal Rule of Civil Procedure 65(d), an injunction is "binding

20    only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and

21    upon those persons in active concert or participation with them who receive actual notice of the

22    order by personal service or otherwise."  Fed. R. Civ. P. 65(d).  This is because "[a] command to a

23    corporation is in effect a command to those who are officially responsible for the conduct of its

24    affairs."  *N.L.R.B. v. Sequoia Dist. Council of Carpenters,* 568 F.2d 628, 633 (9th Cir. 1977).

25   **III.  Discussion**

26       Orion argues that Mr. Ni and the Directors should be held in contempt for four reasons:

27

28

*United States District Court*
*Northern District of California*

1    "(1) Chairman Ni perpetrated a fraud on this Court by submitting his false declaration; (2)

2    Chairman Ni aided and abetted Defendant's violation of the [Sanctions] Order; (3) the Individual

3    Contemnors had the responsibility and power to take appropriate action; and (4) the Individual

4    Contemnors had actual knowledge of the [Sanctions] Order and judgment."  Motion, p. 6.

5    Because Orion's allegations as to the Directors are different than the allegations as to Mr. Ni, the

6    Court address each separately below.

7          **A.  The Directors**

8         In order to hold the Directors in contempt, Orion must present clear and convincing

9    evidence that the Directors had notice of the Sanctions Order and either aided and abetted Ningbo

10    Sunny's violation of it or that they are legally identifiable with the company.

11         With respect to the Directors' notice of the Sanctions Order, Orion argues that it is "highly

12    likely Ms. [Dong] and Mr. [Yin] were aware" of Mr. Ni's representations to this Court and of

13    Ningbo Sunny's decision to ask Celestron for early payment.  Motion, p. 7.  Orion further argues

14    that the Directors must have known of Ningbo Sunny's misconduct because the Sanctions Order

15    was served on Ningbo Sunny's counsel of record, and because according to Ningbo Sunny's

16    Chinese counsel, "many of Ningbo Sunny's employees are aware of the judgment of this case."

17    Dkt. No. 611 at 2:19-20.

18         As an initial matter, Orion's argument that it is "highly likely" that the Directors were

19    aware of the Sanctions Order, even if true, does not rise to the level of clear and convincing

20    evidence of actual notice necessary to hold the Directors in contempt.  *In re Dual-Deck Video,* 10

21    F.3d at 695.  Likewise, the fact that Ningbo Sunny's counsel was served with the Contempt

22    Motion and that other employees are aware of the judgment in this case does not clearly indicate

23    that the Directors had actual notice of the Sanctions Order.

24         Even if the Directors had sufficient notice, however, the Court finds that the facts

25    presented do not amount to clear and convincing evidence that the Directors aided and abetted the

26    violation of the Sanctions Order or were legally identifiable with Ningbo Sunny such that they

27

28    

United States District Court
Northern District of California

1    may be held personally responsible for the company's actions.  Orion argues that the Directors

2    were likely involved in the Celestron transfer because testimony at trial showed that they

3    participated in "major decisions" at Ningbo Sunny.  However, Orion offers no evidence to suggest

4    that requesting early payment from a customer constitutes a "major decision."  Moreover, as the

5    Directors point out in their Opposition, testimony at trial actually suggested that Ningbo Sunny's

6    Deputy General Manager of Sales James Qiu, and not the board, typically handled tasks related to

7    client relationships.  *See* Trial Tr. 412:5-16.  Thus, the evidence does not indicate that the

8    Directors were involved in the Celestron transfer nor any of the misconduct that gave rise to the

9    Sanctions Order.

10        Orion argues that even if the Directors did not participate in Ningbo Sunny's misconduct,

11   they should still be held in contempt for failing to direct Ningbo Sunny to comply with the

12   Sanctions Order because they are legally identifiable with the company.  A non-party is

13   considered legally identified with a corporate defendant for purposes of contempt when the non-

14   party has the ability to act on behalf of the defendant-entity.  *See Montgomery Global Advisors*

15   *LLC,* 2006 WL 950102 at *2 (holding, in case where contempt order was directed solely to a

16   corporate defendant, that managing member could be held personally liable for defendant's

17   contempt because he "had and continues to have the ability to act on behalf of that entity and is

18   therefore legally identified with it."); *Fid. Nat. Fin., Inc. v. Friedman,* 76 Fed. R. Serv.3d 276 at

19   *13 (D. Ariz. 2010) (holding that nonparty was not "legally identified" with the party bound by

20   court order for contempt purposes because the plaintiff had not shown that the non-party was at

21   the very least either "legally responsible for the affairs of" the party bound or that he "had and

22   continues to have the ability to act on [his] behalf").

23        Other than Mr. Ni's testimony that the board opines on "major decisions," there is no clear

24   and convincing evidence that the Directors have the ability to control Ningbo Sunny or exert

25   influence over its compliance with this Court's orders.  The parties dispute whether the Directors

26   collectively own a controlling share of Ningbo Sunny and there is contradicting evidence in the

27

28

United States District Court
Northern District of California

1   record on this point.  *See* Reply, p. 11; Dir. Opposition, p. 14.  This disputed evidence is not clear

2   and convincing proof that the Directors are able to control the Ningbo Sunny, and thus, the Court

3   does not find that they are legally identifiable with the company.

4          Because the evidence is insufficient to show that the Directors aided and abetted the

5   violation of the Sanctions Order or that they are legally identifiable with Ningbo Sunny, the Court

6   need not address the Directors' arguments regarding the jurisdiction of this Court or the

7   effectiveness of the requested sanctions.  The Court **DENIES** the motion for contempt as to the

8   Directors.

9          **B.  Peter Ni**

10         Unlike the evidence against the Directors, the evidence as to Mr. Ni offers a far more

11   compelling argument that Mr. Ni had actual notice of the Sanctions Order and that he is legally

12   identifiable with the company sufficient to hold him in contempt for the company's violation of

13   the Sanctions Order.

14         Mr. Ni was heavily involved in this case—he was deposed, he testified at trial, and he

15   submitted a post-judgment declaration, which the Court ultimately found to have been submitted

16   in bad faith.  *See* Dkt. No. 521-1.  Orion argues that Mr. Ni "must have known" about the

17   Celestron transfer because he testified that he personally had to approve all large orders and all

18   decisions about customer credit.  Borden Decl. Ex. 2, Ni Deposition at 20:6-21.  Not only was Mr.

19   Ni aware of and involved in Ningbo Sunny's misconduct, the evidence also indicates that he was

20   aware of the resulting Sanctions Order.  Ningbo Sunny's prior counsel submitted a declaration

21   stating that "on April 24, 2020, undersigned counsel informed Ningbo Sunny that Orion had filed

22   a motion for civil contempt (Dkt. 645), and provided a copy of the motion to Peter Ni and its

23   outside Chinese counsel James Zou."  Caseria Decl. ¶3.  The Caseria Declaration offers clear and

24   convincing evidence that Mr. Ni received the Contempt Motion.  Even if Mr. Ni was not aware of

25   the Sanctions Order when it was issued on March 9, 2020, the Caseria Declaration indicates that

26   he became aware of it upon receipt of the Contempt Motion, which describes the Sanctions Order.

27

28   Case No.: 5:16-cv-06370-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS FOR
     CIVIL CONTEMPT

United States District Court
Northern District of California

In his Opposition, Mr. Ni concedes that he has notice of the Contempt Motion, but argues that Orion failed to properly serve him with the Sanctions Order under Rule 4 of the Federal Rules of Civil Procedure. Mr. Ni argues that because Orion did not formally serve him this Court lacks jurisdiction to hold him in contempt. Orion argues that formal service under Rule 4 is unnecessary because the Sanctions Order is binding on Mr. Ni under Rule 65(d). In support of his argument, Mr. Ni cites *AF Holdings LLC v. Navasca*, No. 12-cv-2396 EMC, 2013 WL 5701104 (N.D. Cal. Oct. 16, 2013). In *AF Holdings*, the Court held that it lacked jurisdiction to sanction two non-party attorneys who were not properly served with the motion for sanctions, despite the fact that the non-parties had actual notice of the motion. *Id.* at *8. However, *AF Holdings* involved a motion for sanctions under 28 U.S.C. § 1927 and the Court's inherent powers, rather than a motion to hold a nonparty in contempt for violating a prior court order issued pursuant to Rule 65(d). Therefore, the court in that case did not have reason to address Rule 65(d), which this Court finds applicable here.

Rule 65(d) expressly states that an injunctive order is binding upon "the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service *or otherwise*." Fed. R. Civ. P. 65(d) (emphasis added). The "or otherwise" at the end of Rule 65(d) makes clear that personal service is not required to bind non-party officers of a corporation to a court order, as long as the non-party has "actual notice" of the order. Thus, this Court agrees with Orion that because Mr. Ni had actual notice of the Sanctions Order at least as of April 24, 2020, the Court has jurisdiction to enforce the order against Mr. Ni under Rule 65(d), despite the fact that he was not served pursuant to Rule 4.

Mr. Ni also cites *Hilao v. Estate of Marcos*, in support of his argument that Rule 4 service was necessary here. 94 F.3d 539, 545 (9th Cir. 1996). At issue in *Hilao* was whether the district court properly enjoined the Republic of the Philippines, a non-party to the suit, from entering into agreements with the defendant. The plaintiff argued that the injunction was proper as to the

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Republic because the Republic was acting "in active concert or participation with" the defendant

2   under Rule 65(d).  The *Hilao* Court reasoned that despite the fact that the Republic is bound by the

3   injunction under Rule 65(d), the district court would still need personal jurisdiction under the

4   Foreign Sovereign Immunities Act ("FSIA") in order to enforce the injunction.  *Id.* at 545.

5   Because no jurisdiction under the FSIA existed in that case, the injunction was futile and therefore

6   improper.  *Id.* at 549.

7        Unlike in *Hilao*, the non-parties in the present case are not foreign sovereigns.  Whereas

8   "[t]he FSIA is the sole basis for jurisdiction over a foreign state," no such limitation applies in this

9   case.  *Id.* at 545.  Moreover, there is no contention here that the Sanctions Order was improperly

10  issued, and *Hilao* does not suggest that a court is powerless to enforce a properly issued order

11  against the parties bound by that order under Rule 65(d).

12       The Court further finds that Mr. Ni is legally identifiable with Ningbo Sunny such that he

13  may be held in contempt for the company's failure to comply with the Sanctions Order.  Mr. Ni is

14  the President and general manager of Ningbo Sunny.  The company represented to the Court that

15  his responsibilities include "management and oversight of the entire company."  Dkt. No. 620 at 2.

16  Mr. Ni further testified that he manages the "daily operations" of the company, approves all big

17  orders, and reviews decisions about customer credit.  *See* Trial Tr. 412:5-22.

18       The Court finds that these representations from Mr. Ni and Ningbo Sunny provide clear

19  and convincing evidence that Mr. Ni exercises control over and has the ability to act on behalf of

20  the company such that he is legally identifiable with it for the purpose of holding him in contempt.

21  *See Montgomery Global Advisors LLC,* 2006 WL 950102 at *2; *Sequoia Dist. Council of*

22  *Carpenters*, 568 F.2d at 633 ("It can hardly be argued that the principal officers of a[n entity] are

23  not legally identified with it, and thus liable in contempt for disobeying an order directed to the

24  [entity].").

25       Because Mr. Ni is legally identifiable with Ningbo Sunny and had actual notice of the

26  Sanctions Order, the Court **GRANTS** Orion's motion to hold Mr. Ni in contempt.

27

28  Case No.: 5:16-cv-06370-EJD
    ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS FOR
    CIVIL CONTEMPT

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.  Ability to Comply

"In a civil contempt proceeding such as this, of course, a defendant may assert a present inability to comply with the order in question . . . It is settled, however, that in raising this defense, the defendant has a burden of production." *United States v. Rylander*, 460 U.S. 752, 757 (1983); *Stone v. City and County of San Francisco,* 968 F.2d 850, 856 n.9 (9th Cir.1992) (once the party alleging contempt has presented clear and convincing evidence that the alleged contemnor violated a court order, "[t]he burden then shifts to the contemnors to demonstrate why they were unable to comply."). "To satisfy this burden the respondent must show 'categorically and in detail' why he is unable to comply." *N.L.R.B. v. Trans Ocean Exp. Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973). The alleged contemnor "must show they took every reasonable step to comply." *Am. Semiconductor, Inc. v. California Assignments LLC*, No. 12-CV-06138-LHK, 2013 WL 5937968, at *3 (N.D. Cal. Oct. 30, 2013).

Mr. Ni argues that Ningbo Sunny is not able to comply because the money it received from Celestron has been transferred to Ningbo Sunny's bank in satisfaction of a prior debt. None of Mr. Ni, the Directors, or Ningbo Sunny have provided evidence to support this claim. The Court is not convinced that such a transfer would alleviate Ningbo Sunny's obligation to comply with the Sanctions Order, but in any event, Mr. Ni has not met his burden of demonstrating that compliance is impossible. Nor has Ningbo Sunny or any of the non-parties shown that they took "reasonable steps to comply" with the order.

### D.  Appropriate Sanctions

Sanctions for civil contempt are limited to "(1) compel or coerce obedience to a court order, and/or (2) compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance." *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1131 (9th Cir. 2013). "Generally, the minimum sanction necessary to obtain compliance is to be imposed." *Whittaker Corp.*, 953 F.2d at 517 (citing *Spallone v. United States*, 493 U.S. 265, 280 (1990); *Shillitani v. United States*, 384 U.S. 364, 371 (1966)).

1        Orion seeks to hold Mr. Ni personally liable for not only the $4.2 million at issue in the

2   Sanctions Order but also for the full judgment over approximately $52 million.  Given Mr. Ni's

3   involvement in the misconduct that gave rise to the Sanctions Order and his ability to control

4   Ningbo Sunny, the Court finds coercive sanctions appropriate.  Orion has not shown that it is

5   necessary to hold Mr. Ni liable for the entire judgment in order to coerce Ningbo Sunny's

6   compliance with the Sanctions Order.  Rather, the Court finds it appropriate to hold Mr. Ni liable

7   for the $4.2 million that Ningbo Sunny owes Orion unless or until Ningbo Sunny fully complies

8   with the Sanctions Order.

9        Orion additionally seeks $19,142.50 for attorneys' fees and costs incurred in bringing the

10   Contempt Motion.  "An award of attorneys' fees and costs is also an appropriate remedy for civil

11   contempt and is wholly independent of an award of compensatory damages."  *Lovell v. Evergreen*

12   *Res., Inc.*, No. C-88-3467 DLJ, 1995 WL 761269, at *5 (N.D. Cal. Dec. 15, 1995).  This Court has

13   recently approved Orion's counsel's rates (*see* Dkt. Nos. 629, 657) and finds that the hours

14   reportedly expended on the Contempt Motion are reasonable.  Thus, the Court **GRANTS** Orion's

15   requested attorneys' fees and costs in the amount of $19,142.50.

16   **IV.   Conclusion**

17        For the reasons stated above, the Court **DENIES** the motion as to Ms. Dong and Mr. Yin

18   and **GRANTS** the motion as to Mr. Ni.  The Court **ORDERS** Mr. Ni to pay Orion a total of

19   $4,203,200.20, consisting of the $4,184,057.70 due under the Sanctions Order and $19,142.50 in

20   attorneys' fees and costs.  Mr. Ni's obligation to pay Orion shall be purged upon Ningbo Sunny's

21   full compliance with the Sanctions Order, including its payment of the same sum to Orion.

22        **IT IS SO ORDERED.**

23   Dated:  July 2, 2020

24

25                                      EDWARD J. DAVILA
                                   United States District Judge

26

27

28

*United States District Court*
*Northern District of California*